Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; AFGE LOCAL 1216; UNITED NURSES ASSOCIATIONS OF CALIFORNIA/UNION OF HEALTH CARE PROFESSIONALS, AFSCME, AFL-CIO; AFGE LOCAL 2110; MAIN STREET ALLIANCE; COALITION TO PROTECT AMERICA'S NATIONAL PARKS; WESTERN WATERSHEDS PROJECT; VOTE VETS ACTION FUND INC.; and COMMON DEFENSE CIVIC ENGAGEMENT, | Case No. 3:25-cv-01780-WHA<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
|     Plaintiffs, | |
|   v. | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT and CHARLES EZELL, in his official capacity as Acting Director of the U.S. Office of Personnel Management, | |
|             Defendants. | |

1    Plaintiffs American Federation of Government Employees, AFL-CIO ("AFGE"), American

2    Federation of State County and Municipal Employees, AFL-CIO ("AFSCME"), AFGE Local 1216,

3    and United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFL-

4    CIO ("UNAC/UHCP"), AFGE Local 2110 (collectively, "Union Plaintiffs"), Main Street Alliance,

5    Coalition To Protect America's National Parks, Western Watersheds Project, Vote Vets Action Fund

6    Inc., and Common Defense Civic Engagement (collectively, "Plaintiffs"), file this complaint seeking

7    to enjoin the terminations of tens of thousands of federal employees in contravention of federal

8    constitutional and statutory law, against Defendants the United States Office of Personnel

9    Management ("OPM") and Acting OPM Director Charles Ezell, and hereby plead as follows:

10                                   **INTRODUCTION**

11        1.    On February 13, 2025, Defendant OPM and its newly appointed Acting Director,

12    Defendant Charles Ezell, ordered federal agencies across the country to terminate tens of thousands

13    of federal employees by sending them standardized notices of termination, drafted by OPM, that

14    falsely state that the terminations are for performance reasons.

15        2.    Probationary employees are employees of the competitive service in their first year of

16    employment, and employees of the excepted service in their first two years of employment (hereafter

17    collectively "probationary employees").  Probationary employees may include experienced federal

18    employees who have recently become employed in a new position or a new agency.

19        3.    OPM's directive that federal agencies terminate these employees en masse, on

20    pretextual grounds, seeks to further the newly elected Presidential Administration's policy goals of

21    dramatically curtailing the size and spending of the federal government.  But Congress, not OPM,

22    controls and authorizes federal employment and related spending by the federal administrative

23    agencies, and Congress has determined that each agency is responsible for managing its own

24    employees.  OPM lacks the constitutional, statutory, or regulatory authority to order federal agencies

25    to terminate employees in this fashion that Congress has authorized those agencies to hire and

26    manage, and certainly has no authority to require agencies to perpetrate a massive fraud on the

27    federal workforce by lying about federal workers' "performance," to detriment of those workers, their

28

families, and all those in the public and private sectors who rely upon those workers for important services.

4.    OPM is an agency with no statutory authority to make termination decisions for federal employees (other than for OPM's own employees).  Notwithstanding this lack of legal authority, OPM ordered federal agencies throughout the nation, including in this District, to wipe out their ranks of probationary employees without any regard to applicable statutes, including the Administrative Procedure Act ("APA") and statutes governing federal employment and the respective roles of OPM and the agencies.

5.    OPM also ordered the agencies to use a template e-mail to terminate these workers, provided by OPM, that falsely inform employees that their terminations are for performance reasons rather than as part of a government-wide policy to reduce headcount that was authorized by no law.

6.    The federal agencies that followed OPM's directive did not otherwise have plans to terminate the entirety of their probationary workforce, who were employed in authorized positions to perform services that in each agency's judgment were needed to perform their statutorily mandated role.  In fact, some agencies have confirmed to their employees that they did not want to terminate their probationary employees but were directed to do so by OPM.  And they have confirmed that the notices of termination mandated by OPM were false, because the agencies were *not* firing the workers for performance reasons.

7.    As of the filing of this Complaint, tens of thousands of probationary employees across dozens of federal agencies have already been terminated in the summary, assembly-line fashion directed by OPM.  Each day, more such employees receive notice of the termination of their federal employment.  The terminations have been conducted summarily, without any advance notice to the affected employees, throwing their lives, their families' lives, and the entire federal government into chaos.

8.    OPM, the federal agency charged with implementing this nation's employment laws, in one fell swoop has perpetrated one of the most massive employment frauds in the history of this country, telling tens of thousands of workers that they are being fired for performance reasons, when they most certainly were not.

9.      OPM's program is an unlawful *ultra vires* action outside the scope of any statutory or Constitutional authority.  OPM's program also violates the APA's prohibitions of unlawful, arbitrary and capricious, and procedurally improper agency action (including because this government-wide action was taken without notice and comment rule-making).  Where, as here, a federal agency has engaged in unlawful action contrary to the APA, the courts "shall …hold unlawful and set aside" that action.  5 U.S.C. § 702(2).

10.     The APA, was designed to "serve as the fundamental charter of the administrative state." *Kisor v. Wilkie*, 588 U.S. 558, 580 (2019) (plurality opinion) (internal quotation marks omitted).  As the Supreme Court recently explained, "Congress in 1946 enacted the APA 'as a check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391 (2024) (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 644 (1950)).  OPM's actions disrupt the constitutional balance of power and violate numerous federal statutes, running roughshod over fundamental protections against unlawful and arbitrary federal action.

11.     The Court should immediately enjoin OPM and all those acting in concert with it to cease implementation of its unlawful order requiring these mass pretextual terminations of probationary federal employees and to rescind the unlawful terminations that already have occurred.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

13.     Venue is appropriate in this district under 28 U.S.C. § 1391(e).  Plaintiffs AFGE and AFGE Local 1216 represent probationary and trial-period federal employees whose place of employment is within the Northern District of California, and who have been terminated, or are subject to termination, because of OPM's illegal program.

14.     Intradistrict assignment is appropriate in the San Francisco/Oakland division of this Court.

## PARTIES

15.     Plaintiff AFGE, AFL-CIO, is a labor organization and unincorporated association headquarted at 80 F Street N.W., Washington, D.C. 20001.  AFGE, the largest union of federal

employees, represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States, including employees of numerous agencies of the federal government, including the Department of Veterans Affairs ("VA"), Department of Education, National Institutes of Health, Small Business Administration, and others. AFGE represents employees of the VA who are employed in San Francisco, Oakland, San Bruno, Eureka, Ukiah, Clearlake, and Martinez, California.

16.    Plaintiff AFSCME, AFL-CIO, is a labor organization and unincorporated association headquartered at 1625 L Street, N.W., Washington, D.C. 20036. AFSCME is the largest trade union of public employees in the United States, with 1.4 million members organized into approximately 3,400 local unions, 58 councils and affiliates in 46 states, the District of Columbia and Puerto Rico. AFSCME unions represent federal civilian employees in numerous agencies and departments across the federal government, including the Federal Aviation Administration, the Department of Agriculture, the Peace Corps, Americorps, and the Veterans Administration.

17.    Plaintiff AFGE Local 1216 is a labor organization and unincorporated association headquartered at 4150 Clement Street, San Francisco, California 94121. AFGE Local 1216 represents hundreds of VA employees who are employed in San Francisco, California.

18.    Plaintiff United Nurses Association of California/United Health Care Professionals, AFSCME, AFL-CIO ("UNAC"), is a labor organization and an unincorporated association headquartered at 955 Overland Ct., Suite 150, San Dimas, California 91773. UNAC represents employees of the VA who are employed at Pettis Memorial Hospital in Loma Linda, California.

19.    Plaintiff AFGE Local 2110 is a labor organization and unincorporated association headquartered in Palo Alto, California. AFGE Local 2110 represents approximately 4,000 employees of the VA at the VA Palo Alto Health Care System, including its Menlo Park and Livermore Divisions, and at several Community-Based Outpatient Clinics in Fremont, San Jose, Monterey, and Capitola. Those employees work in all non-supervisory classifications, including doctors, nurses, emergency medical services personnel, food service workers, custodial staff, and administrative staff.

20.    Plaintiff Main Street Alliance ("MSA") is a national network of small businesses, with approximately 30,000 members throughout the United States. MSA helps small business owners

realize their full potential as leaders for a just future that prioritizes good jobs, equity, and community through organizing, research, and policy advocacy.  MSA also seeks to amplify the voices of its small business membership by sharing their experiences with the aim of creating an economy where all small business owners have an equal opportunity to succeed.  MSA is nonpartisan and is a §501(c)(3) organization.  MSA has approximately 1,410 small business members in California, including more than 70 small businesses in Alameda, Santa Clara, San Francisco, Sonoma, and Contra Costa Counties.

21.    Plaintiff Coalition to Protect America's National Parks ("Coalition") is a non-profit organization made up of over 3,400 members, all of whom are current, former, and retired employees and volunteers of the National Park Service. Together, they have accumulated over 50,000 years of experience caring for America's most valuable natural and cultural resources.  The Coalition's goal is to support the preservation and protection of the National Park System and the mission-related programs of the National Park Service ("NPS") to ensure the survival of the park system for generations to come.  The Coalition's members are regular and avid users of the National Park System and NPS programs.

22.    Plaintiff Western Watersheds Project ("WWP") is a non-profit environmental conservation group that works to influence and improve public lands management throughout the western United States to protect native species and conserve and restore the habitats they depend on.  WWP's primary focus is on the negative impacts of livestock grazing, including harm to ecological, biological, cultural, historic, archeological, scenic resources, wilderness values, roadless areas, Wilderness Study Areas and designated Wilderness.  WWP was founded in 1993 and has more than 14,000 members and supporters and field offices in Idaho, Montana, Wyoming, Arizona, Nevada, and Oregon.  WWP covers over 250 million acres of public land spanning all of the western states.

23.    Plaintiff Vote Vets Action Fund Inc. ("VoteVets") is a non-partisan, non-profit organization incorporated under the laws of the District of Columbia. Its purpose is to lift up the voices of veterans on matters of national security, veterans' care, and everyday issues that affect the lives of those who served as well as their families including foreign policy, veterans' unemployment,

robust investment in care for veterans, energy security, protecting the rights of those who serve, and upholding the Constitution and democracy that every military member swore to uphold and protect. VoteVets has nearly two million supporters across the country, in all fifty states, with whom it regularly communicates about issues affecting veterans, including the operations, programs, and services available through the VA.  Approximately 417,000 of VoteVets' supporters live in California, including 131,000 in Northern California.

24.     Plaintiff Common Defense Civic Engagement ("Common Defense") is a grassroots membership organization of progressive veterans, military families, and civilian supporters standing up for our communities against the rising tide of racism, hate, and violence.  Common Defense invests in the leadership of its members through training and deployment in campaigns that connect directly to their history of service, including voting rights, climate justice, and anti-militarism. Approximately 33,187 of Common Defense's members live in California, including approximately 2,000 veterans.

25.     Plaintiffs bring the claims in this complaint on their own behalf and on behalf of their members.

26.     Defendant Office of Personnel Management ("OPM") is a federal agency headquartered in Washington, D.C.  OPM is a federal agency within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 551(1).

27.     Defendant Charles Ezell has been the Acting Director of OPM since January 20, 2025. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

## I.      Statutes and Regulations Governing Termination of Federal Employment

### A.      Congressional Authorization to Federal Agencies and OPM

28.     Congress created the federal agencies that employ federal workers through an exercise of its Article I legislative power.  The executive agencies of the federal government are identified in various statutes, including 5 U.S.C. § 101 (listing agencies).

29.     Each agency has its own authorizing statutes that govern its administration, including statutory provisions that authorize one or more individuals to act as the head of the agency.  *See e.g.*,

10 U.S.C. §§ 111, 113 (Defense); 12 U.S.C. § 5491 (CFPB); 16 U.S.C. § 551 (Agriculture/Forest Service); 26 U.S.C. §§ 7801, 7803 (IRS); 38 U.S.C. §§ 301, 303 (VA); 42 U.S.C. §§ 202, 203 (HHS); 42 U.S.C §§ 281, 282 (NIH); 42 U.S.C. §§3411, 3412 (Education); 42 U.S.C. § 7131 (Energy); 51 U.S.C. § 20111 (NASA).

30.    Congress has also authorized, in these agency-specific establishing statutes, each agency head to exercise powers of management over that agency and its employees, including the hiring and firing of employees, consistent with any generally applicable laws.  For example:

- 26 U.S.C. §§ 7803, 7804 (IRS: "the Commissioner of Internal Revenue is authorized to employ such number of persons as the Commissioner deems proper for the administration and enforcement of the internal revenue laws, and the Commissioner shall issue all necessary directions, instructions, orders, and rules applicable to such persons.");

- 42 U.S.C. §§ 7231, 7253 (Energy: "In the performance of his functions the Secretary is authorized to appoint and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out such functions. Except as otherwise provided in this section, such officers and employees shall be appointed in accordance with the civil service laws …"; "the Secretary is authorized to establish, alter, consolidate or discontinue such organizational units or components within the Department as he may deem to be necessary or appropriate.");

- 20 U.S.C. § 3461 (Education: "The Secretary is authorized to appoint and fix the compensation of such officers and employees, including attorneys, as may be necessary to carry out the functions of the Secretary and the Department.  Except as otherwise provided by law, such officers and employees shall be appointed in accordance with the civil service laws …");

- 42 U.S.C. § 203 (HHS: "The Secretary is authorized … to establish within them such divisions, sections, and other units as he may find necessary; and from time to time abolish, transfer, and consolidate divisions, sections, and other units and assign their functions and personnel in such manner as he may find necessary for efficient operation of the Service.");

- 12 U.S.C. § 5492 (CFPB: "The Bureau is authorized to establish the general policies of the Bureau with respect to all executive and administrative functions, including—…(7) the appointment and supervision of personnel employed by the Bureau; (8) the distribution of business among personnel appointed and supervised by the Director and among administrative units of the Bureau");

- *See also, e.g.,* 16 U.S.C. §§ 551, 554a, e (Agriculture; management and employment in Forest Service); 38 U.S.C. §§ 303, 510 (VA: Secretary; "control, direction, and management of the

Department"; "authority to reorganize offices"); 10 U.S.C. § 113 (DOD: Secretary; "authority, direction, and control over the Department of Defense"); 42 U.S.C. § 282 (NIH: Director, management authority); 51 U.S.C. §§ 20111, 20113  (NASA: Administrator "shall have authority and control over all personnel and activities thereof.").

31.     In addition to the specific authority granted to each agency head by these authorizing statutes, Congress also enacted a "General authority to employ" that applies to all federal agencies:

> Each Executive agency, military department, and the government of the District of Columbia may employ such number of employees of the various classes recognized by chapter 51 of this title as Congress may appropriate for from year to year.

5 U.S.C. § 3101.

32.     Besides this specific authority regarding employment decisions, Congress also delegated general authority to each federal agency head to adopt regulations "for the government of his department, the conduct of its employees, the distribution and performance of its business…" 5 U.S.C. § 301; *see also* 5 U.S.C. § 302 (authorizing agency heads to delegate their authority to subordinate employees).

33.     Congress also enacted the Civil Service Reform Act of 1978 ("CSRA") to establish uniform standards for agencies and civil service employment across the federal government.  5 U.S.C. § 2101 (defining "civil service"); § 2015 (defining "employee").  The provisions of the CSRA include statutes governing agency termination of employees for cause based on performance (5 U.S.C. § 4303(a); 5 U.S.C. § 7513(a)), and agency layoffs ("reductions in force, or "RIFs") (5 U.S.C. § 3502).

34.     Congress also established the OPM by statute.  5 U.S.C. § 1101.  Congress did *not* authorize the OPM to hire or fire any federal employees employed by any agency other than OPM itself.  5 U.S.C. §§ 1102, 1103.  Rather, OPM's role, as established by Congress, is to act as the human resources agency for the federal government, including by creating and publishing government-wide rules in compliance with the APA.  5 U.S.C. §§ 1103, 1105.  OPM's authority with respect to the termination of employees of other agencies and departments is limited to providing technical assistance and writing regulations.  5 U.S.C. §§ 4304, 4305, 7514.

35.     As the Acting Solicitor General recently confirmed in a petition to the U.S. Supreme Court on behalf of the President and other federal officials, "*[a]gency heads control hiring and firing decisions for subordinates*—here, an agency of over 100 people who perform important investigative and enforcement functions affecting the entire federal workforce."  Thus, in support of its request to vacate a district court temporary restraining order reinstating the head of the Office of Special Counsel, the federal government argued that the President's inability to remove the head of the agency deprived him of the power to control agency's employees—because *only the agency head* is authorized to hire and fire an agency's employees.[1]

### B.     Probationary and Trial-Period Employees in Federal Service

36.     Approximately 200,000 probationary employees are employed in agencies throughout the federal government nationwide.[2]  Of these, approximately 15,000 are employed in California, providing services that range from fire prevention to veterans' care.

37.     OPM's mass termination program has swept up two categories of federal employees, whose employment is governed by statute and regulation: probationary employees in the "competitive" service, and employees within their first two years of employment in the "excepted" service.  Plaintiffs refer herein to all such employees as "probationary employees."

38.     Probationary employees in the competitive service are, with some exceptions, those who have been employed for less than one year.  5 U.S.C. § 7511(a)(1)(A)(ii); 5 C.F.R. § 315.801.  Employees are appointed as "career" or "career-conditional employees" subject to completing the probationary period.  5 C.F.R. § 315.201(a).

39.     The probationary period provides the opportunity for the federal agency to assess the individual performance of the employee.  Under governing OPM regulations, an agency "shall utilize the probationary period as fully as possible to determine the fitness of the employee and shall

---

[1] Application to Vacate the Order Issued by the U.S. District Court for the District of Columbia and Request for an Immediate Administrative Stay, *Bessent v. Dellinger*, No. 24A790, https://www.documentcloud.org/documents/25536868-dellinger-scotus-emergency-filing/?mode=document at 27 (filed U.S. Supreme Court Feb. 16, 2025).

[2]     https://www.businessinsider.com/trump-administration-fired-probationary-federal-workers-veterans-affairs-agencies-2025-2

terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." 5 C.F.R. § 315.803(a).

40.    Most employees in the excepted service are also subject to a statutory trial period of two years, which, like the probationary period in the competitive service, is intended to permit the agency to evaluate the employee's performance and fitness for long-term employment. 5 U.S.C. § 7511(a)(1)(C)(ii).

**C.    Regulations Governing the Termination of Probationary Employees**

41.    Federal agencies may lawfully terminate probationary employees based on the agency's assessment of the employee's performance during the probationary period, pursuant to 5 C.F.R. § 315.804(a), which is entitled: "Termination of probationers for unsatisfactory performance or conduct."

42.    Under that regulation, "when an agency decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment, it shall terminate his services by notifying him in writing as to why he is being separated and the effective date of the action." 5 C.F.R. § 315.804(a). "The information in the notice as to why the employee is being terminated shall, as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id.* Trial-period employees in the excepted service have the same notice rights when removed from their positions for performance reasons. 5 C.F.R. § 316.304.

43.    Federal agencies may also lawfully terminate a probationary employee "for reasons based in whole or in part in conditions arising before his appointment." 5 C.F.R. § 515.805.

**D.    Statutes and Regulations Governing the Termination of Employees as Part of a RIF**

44.    Federal agencies may also terminate probationary employees as part of an agency RIF. An agency may conduct a RIF "to reduce the size of its workforce." *Tiltti v. Weise*, 155 F.3d 596, 601 (2d Cir. 1998). "RIFs are not aimed at removing particular individuals; rather, they are directed solely at positions." *Grier v. Dep't of Health & Hum. Servs.*, 750 F.2d 944, 945 (Fed. Cir. 1984).

45.     Agencies must follow specific statutory directives in conducting a RIF, including detailed requirements for retention preferences, considerations for veterans, and the consideration of tenure of employment and length of service.  5 U.S.C. § 3502(a)(1), (3).  Congress delegated to OPM the authority to promulgate regulations that agencies must follow in implementing RIFs.  5 U.S.C. § 3502(a).

46.     Pursuant to that statutory authorization, and through notice-and-comment rulemaking, OPM has issued detailed regulations setting forth the procedures by which RIFs must be conducted. *See* 5 C.F.R. Part 351.  These RIF regulations apply whenever an agency determines that it is necessary to release employees "because of lack of work; shortage of funds; insufficient personnel ceiling; reorganization; the exercise of reemployment rights or restoration rights; or reclassification of an employee's position due to erosion of duties … ."  5 C.F.R. § 351.201(a)(2).

47.     All agencies of the federal government are required to comply with the RIF regulations whenever an agency "determines that a reduction force is necessary."  5 C.F.R. § 351.204; *see also* 5 C.F.R. § 351.201(c) ("Each agency is responsible for assuring that the provisions in this part are uniformly and consistently applied in any one reduction in force.").

48.     The RIF regulations apply to employees in the competitive and excepted services.  5 C.F.R. § 351.202(a), (b).  Probationary employees are expressly protected by the RIF regulations.  5 C.F.R. §§ 351.501(b)(2), 351.502(b)(2).  Probationary employees are included in "group II" of three groups of employees, and may only be released, in order of retention, after the release of "group III" employees, a group that includes employees under various temporary, term, and other provisional appointments.  5 C.F.R. § 351.501(b).

49.     Before conducting a RIF, a federal agency must establish "competitive areas in which employees compete for retention."  5 C.F.R. § 351.402.  Thus, RIFs are not conducted based on agency-wide seniority.  Many probationary employees are veterans or would otherwise be entitled to preference in the event of a RIF.

50.     The RIF regulations require that employees receive notice of at least 60 days before being released from employment, or at least 30 days from when the RIF is caused by circumstances that were not reasonably foreseeable.  5 C.F.R. § 351.801(a), (b).

51.     The governing statute and the RIF regulations also require that states and local governments be notified in advance of RIFs of 50 or more employees in an affected geographic area so they can be prepared to assist affected employees.  5 U.S.C. § 3502; 5 C.F.R. § 351.803.

## II.     OPM's Unlawful February 13, 2025 Order to Fire Probationary Employees Across the Nation

52.     Before the first day of the new Presidential Administration, OPM had never taken the position that it had the authority to direct other agencies to terminate employees.  As of early January 2025, the Acting OPM Director was Rob Shriver.  On January 16, 2025, he issued a press release, and gave an interview discussing OPM's work with agencies throughout the federal government on issues ranging from "skills-based federal hiring"; the ""retirement claims backlog"; a "new health insurance program for Postal workers"; and, significantly, "*how agencies recruit and retain early-career employees*." (Emphasis added).[3]  No mention was made of any federal government plan to terminate the employment of probationary employees at any agency, or across the nation.

53.     Before January 20, 2025, OPM had made no public statement regarding any program to terminate probationary employees.  Neither had any agency in the federal government made any public statement regarding any desire to terminate probationary employees.  No union or group of federal employees had been provided any notice of any program or decision to terminate probationary employees.  On information and belief, before January 20, 2025, OPM had no plans to order federal agencies to terminate their probationary employees, and no agency had such a plan.

54.     Before January 20, 2025, no OPM Director had ever taken the position that OPM had the legal authority to direct agencies to terminate the employment of employees of other federal agencies.

55.     On January 20, 2025, the first day of the incoming Presidential Administration, President Donald J. Trump appointed Charles Ezell to serve as Acting OPM Director.

56.     The same day, Acting OPM Director Ezell distributed a memo to "Heads and Acting Heads of Departments and Agencies" regarding "Guidance on Probationary Periods, Administrative

---

[3] https://federalnewsnetwork.com/workforce/2025/01/after-years-of-work-opm-is-hitting-on-all-cylinders-acting-director-says/.

Leave and Details."  In this memo, Acting Director Ezell directed department and agency heads to submit to OPM, no later than January 24, 2025, a report listing all "employees on probationary periods, who have served less than a year in a competitive service appointment, or who have served less than two years in an excepted service appointment."[4]  The memorandum directed agencies to "promptly determine whether these employees should be retained at the agency."[5]

57.    OPM required agencies to adhere to a *200-character limit* in any explanation provided as to why any individual employee should be retained by the agency.[6]

58.    On February 11, 2025, President Trump issued Executive Order 14210, entitled "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative."[7]  The Executive Order instructed that "Agency Heads shall promptly undertake preparations to initiate large-scale reductions in force (RIFs)."[8]

59.    OPM did not wait for agencies to plan for or initiate any RIF.

60.    On February 13, 2025, OPM officials met with agency leaders across the federal government and directed them to begin firing their probationary employees without following RIF procedures.[9]

61.    CBS News has reported that:  "**The decision on probationary workers**, who generally have less than a year on the job, **came from the Office of Personnel Management**, which serves as a human resources department for the federal government.  The notification was confirmed by a person familiar with the matter, who spoke on condition of anonymity because they weren't authorized to discuss it publicly."  (Boldface added.)[10]

---

[4]    https://www.opm.gov/media/yh3bv2fs/guidance-on-probationary-periods-administrative-leave-and-details-1-20-2025-final.pdf

[5]    *Id.*

[6]    https://federalnewsnetwork.com/workforce/2025/02/opm-asks-agencies-to-justify-keeping-probationary-employees/

[7]    https://www.whitehouse.gov/presidential-actions/2025/02/implementing-the-presidents-department-of-government-efficiency-workforce-optimization-initiative/

[8]    *Id.*

[9]    https://thehill.com/homenews/administration/5144113-federal-probationary-employees-fired/

[10]    https://www.cbsnews.com/news/federal-layoffs-probationary-workers-warnings-bigger-cuts-on-way/

62.    On information and belief, as of February 13, 2025, prior to the order from OPM, no federal agency intended to terminate its probationary employees en masse, and no agency intended to terminate probationary employees (other than on an individualized basis for actual performance or conduct reasons) without complying with RIF procedures.

63.    Agencies across the federal government began acting on OPM's February 13 directive immediately through chaotic mass terminations of their probationary employees.[11]

64.    Tens of thousands of probationary employees have already been subjected to mass terminations, with no advance notice, by agencies across the federal government, including employees at the following agencies:

U.S. Forest Service[12]
Department of Veterans Affairs[13]
Department of Education[14]
National Science Foundation[15]
General Services Administration[16]
Small Business Administration[17]
Consumer Financial Protection Bureau[18]
Department of Energy[19]
National Nuclear Security Administration[20]
Housing and Urban Development[21]
Center for Disease Control[22]

---

[11] https://www.washingtonpost.com/politics/2025/02/14/trump-firing-probation-workforce-buyouts-layoffs-doge/f816fbea-eb23-11ef-969b-cfbefacb1eb3_story.html

[12] https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/; https://www.sfgate.com/california-parks/article/joshua-tree-yosemite-locals-protest-mass-layoffs-20174425; https://www.nytimes.com/2025/02/18/climate/trump-layoffs-park-and-forest-service-workers.html

[13] *Id.*; https://www.washingtonpost.com/nation/2025/02/17/trump-fires-federal-workers-performance/

[14] https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/

[15] https://www.wired.com/story/national-science-foundation-february-2025-firings/; https://www.nytimes.com/2025/02/18/us/politics/national-science-foundation-firings.html.

[16] https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/

[17] https://www.businessinsider.com/federal-workers-fired-not-fired-then-terminated-sba-2025-2

[18] https://www.reuters.com/world/us/mass-firings-federal-workers-begin-trump-musk-purge-us-government-2025-02-13/

[19] https://www.eenews.net/articles/doe-to-lay-off-probationary-staff-today/

[20] https://www.npr.org/2025/02/13/nx-s1-5296928/layoffs-trump-doge-education-energy

[21] https://www.nbcnews.com/politics/white-house/trump-administration-federal-agencies-fire-probationary-employees-rcna192149

[22] https://apnews.com/article/trump-firing-probation-workforce-buyouts-layoffs-doge-159a6de411622c2eb651016b1e99da37

FIRST AMENDED COMPLAINT, No. 3:25-cv-01780-WHA                    14

National Park Service[23]
National Institutes of Health[24]
Environmental Protection Agency[25]
Bureau of Reclamation[26]
Department of Interior[27]
Bonneville Power Association[28]
US Department of Agriculture[29]
Bureau of Land Management[30]
US Fish and Wildlife[31]
Cybersecurity and Infrastructure Security Agency[32]
US Citizenship and Immigration Services[33]
Federal Emergency Management Agency[34]
Federal Aviation Administration[35]
Department of Transportation[36]
Food and Drug Administration[37]
National Highway Traffic Safety Administration[38]
Pipelines and Hazardous Materials Safety Administration[39]
Centers for Medicare & Medicaid Services[40]
Substance Abuse and Mental Health Services Administration[41]

---

[23] https://www.nytimes.com/2025/02/18/us/politics/national-science-foundation-firings.html (1000 NPS employees)

[24] https://www.nbcwashington.com/news/president-trump-politics/taking-away-years-of-experience-nih-probationary-employees-fired-friday/3845749/

[25] https://abcnews.go.com/US/agencies-federal-workers-fired/story?id=118901289

[26] https://www.nytimes.com/2025/02/18/us/politics/national-science-foundation-firings.html

[27] *Id.* (1300 Interior Dept employees fired over holiday weekend).

[28] https://www.opb.org/article/2025/02/19/bonneville-power-administration-reverses-30-job-cuts-continues-with-plans-to-eliminate-430-positions/

[29] https://www.npr.org/2025/02/18/nx-s1-5300150/among-the-federal-workers-fired-usda-workers-who-keep-food-safe-and-crops-growing

[30] https://www.nytimes.com/2025/02/18/us/politics/national-science-foundation-firings.html; https://www.cnn.com/2025/02/14/politics/probationary-federal-employees-agencies-firings-doge/index.html

[31] https://www.cnn.com/2025/02/14/politics/probationary-federal-employees-agencies-firings-doge/index.html

[32] https://thehill.com/homenews/5154340-dhs-fires-probationary-employees/

[33] *Id.*

[34] https://www.politico.com/news/2025/02/19/fema-email-firings-affect-majority-staff-00204779

[35] https://apnews.com/article/doge-faa-air-traffic-firings-safety-67981aec33b6ee72cbad8dcee31f3437

[36] https://www.nbcphiladelphia.com/news/national-international/transportation-department-workers-with-exceptional-reviews-told-theyre-fired-for-performance-issues/4111423/?os=iosdF&ref=app

[37] https://www.nytimes.com/2025/02/18/us/politics/fda-food-safety-jim-jones-resignation.html (terminated workers "included people with specialized skills in infant formula safety and food safety response"; FDA food safety chief resigns because "loss of critical employees overseeing the nation's food supply made his work impossible").

[38] https://www.politico.com/news/2025/02/18/layoffs-auto-pipeline-safety-00204715

[39] *Id.*

[40] https://www.fiercehealthcare.com/regulatory/mass-layoffs-hhs-cdc-cuts-1300-probationary-workers-reports-say

[41] *Id.*

Federal Deposit Insurance Corporation[42]

65.    While implementing OPM's orders, numerous federal agencies informed workers that OPM ordered the terminations.  For example, at the National Science Foundation meeting for probationary employees, employees were told the following:

> You've been invited here today because you were either a probationary employee or you are an expert on intermittent appointment.
>
> We've asked you here today to tell you face to face that we will be terminating your employment at the end of the day today.
>
> *We've been directed by the administration to remove all term probationary employees*.
>
> Today at 11 o'clock, each of you will receive a termination letter by email.
>
> At 1 p.m, you will lose access to the network[.]  And at the end of the day today, you'll be terminated.
>
> You ready? You have one more thing.  You have the option to resign in lieu of termination.
>
> That may be beneficial to you.  If you choose to resign, you will not be eligible for unemployment.
>
> However, if asked when you apply for future positions, you will be able to say that you were not terminated.
>
> So for those of you that have federal benefits.  Sorry.  Okay.  For those of you that have federal benefits, your health insurance will be terminated at the end of the pay period.
>
> Your federal dental and vision insurance plan, they will terminate at the end of the pay period. There is no extension for coverage under FedVIP.
> …
> This is in executing Government-wide guidance from the administration.  I'm sure you've read in the news that all agencies are terminating probationary employees.
> …
> So there was no limited discretion.  *This is not a decision the agency made.  This is a direction we received*, first of all.  Second of all, this is the first of many forthcoming workforce reductions.
> …
> *We are following orders*.  We are part of the executive branch.  We follow that.  I apologize for people that have made life-changing career moves.
> …

---

[42] https://www.reuters.com/world/us/fdic-fires-new-employees-part-broader-government-layoffs-2025-02-18/

We were directed last Friday by OPM to terminate all probationers except for a minimal number of mission critical probationers.
Mission critical determination, first of all, it is exceptionally small number that we're permitted to have.
…
There's no negotiation, first of all. *And second of all, the administration has already announced its intention to significantly reduce the workforce*.

It is only a matter of time. It is not today is not the only workforce reduction that we will do.

(Emphasis added.)

66.     The NSF explained that the agency had previously been told that it would have discretion to retain workers, and had in fact made the decision to retain all of its probationary employees, only to have OPM issue a superseding order on February 13, 2025 requiring the agency to terminate everyone:

We did.  In the last two weeks.  Up until Friday.  Yes.  We were told by OPM it was the agency's discretion whether to remove probations or not.

*We chose to retain them all*.  Last Friday night.

They gave direction to there was some direction that was given to cabinet level agencies.  And so you saw those actions taking place at the end of last week.

But the directions we received were it was our discretion.  And late, late Friday night….

*They told us that they directed us to remove probationers*.

(Emphasis added.)

67.     On information and belief, OPM required agencies to use template letters, which OPM created and provided to the agencies, to be sent to those agencies' probationary employees, citing performance as the basis for the termination.

68.     Reflecting that directive, many agencies have used identical or nearly identical text in letters notifying probationary employees of their termination.  For example:

    a.  Termination letters received by probationary employees in multiple agencies,
        including the Departments of Homeland Security, Health and Human Services,
        Agriculture, and Education, included identical introductory language stating as
        follows, with identical footnotes and footnote text:

Guidance from the Office of Personnel Management ("OPM") states, "An appointment is not final until the probationary/trial period is over," and the probationary/trial period is part of "the hiring process for employees."[1] "A probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service."[2] "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual."[3]

b.  Termination letters received by probationary employees in multiple agencies included the following boilerplate language describing the reasons for their termination: "The Agency finds, **based on your performance**, that you have not demonstrated that your further employment at the Agency would be in the public interest."  (Boldface added).

c.  Similarly, termination letters received by probationary employees in multiple agencies included the following boilerplate language describing the reasons for their termination: "Unfortunately, the Agency finds that that you are not fit for continued employment because your ability, knowledge and skills do not fit the Agency's current needs, and **your performance** has not been adequate to justify further employment at the Agency."  (Boldface added).[43]

69.  At the National Science Foundation meeting reference above, employees were told the language in the letters came from the "boilerplate" language from OPM:

"The cause comes from boilerplate we received from OPM.  The cause says that the agency finds based on your performance that you have not demonstrated that your further employment at the agency would be in the public interest."

70.  The termination letters issued to probationary employees cite, as authority for the terminations, the regulations that govern terminations **for performance reasons**:  5 C.F.R. § 315.803 (directing agencies to terminate probationary employees "if the employee fails to demonstrate fully

---

[43] Recent reporting by the Washington Post revealed similar templates and instructions by OPM to agencies in January and February 2025 with respect to employees unlawfully targeted for termination and/or administrative leave because of perceived participation in work related to Diversity, Equity, and Inclusion programs.  Washington Post, Feb. 15, 2025, *Records show how DOGE planned Trump's DEI purge — and who gets fired next,* available at: https://wapo.st/4jVWqEd.

his or her qualifications for continued employment"); 5 C.F.R. § 315.804 (requiring notice of the reasons when an agency "decides to terminate an employee serving a probationary or trial period because his work performance or conduct during this period fails to demonstrate his fitness or his qualifications for continued employment," including a statement of the "agency's conclusions as to the inadequacies of [the employee's] performance or conduct"); and 5 C.F.R. § 316.304 (entitling trial period employees in the excepted service to the same notice rights upon termination for performance reasons as probationary employees in the competitive service).

71.    Despite the citation of these authorities in the template termination letters, the letters fail to provide any individualized reasons why the employees' performance warranted termination. Many termination letters appear to have been created by means of mail merges.  Some termination letters do not even specify the name of the employee being terminated.

72.    The reference to employee performance in the mass termination letters and the citation to the authority for the termination of probationary employees for performance reasons is a pretext. The real reason for the mass terminations, as expressed by the incoming Presidential Administration, is to reduce the size of the federal workforce.

73.    Many terminated probationary employees had received excellent performance reviews from their agencies.  Supervisors were not consulted as to the performance of individual probationary employees before they were terminated.  On information and belief, some probationary employees have subsequently been told by agency representatives that they were terminated solely because their agencies were being restructured, not based on any performance or conduct by the employee.

74.    USA Today recently reported that "Fired probationary employees interviewed by USA TODAY all said they were never told of any performance problems.  One hadn't been in the job long enough to have a performance review.  Another was fired just a month into her job after relocating from more than 1,700 miles away to take it.  And a third employee said his supervisor explicitly told him he wasn't being terminated for performance reasons.[44]

---

[44]https://www.msn.com/en-us/news/us/its-a-lie-federal-workers-incensed-by-performance-language-in-termination-letters/ar-AA1zcrmN?ocid=BingNewsSerp

75.    NBC News reported that although Department of Transportation probationary employees received letters stating that they were being terminated for performance reasons, "most of those employees were rated as being 'exceptional' performers by their supervisors."[45]

76.    The Washington Post reported that: "One well-rated Veterans Affairs staffer texted her boss to complain after she was fired.  In text messages obtained by The Post, he replied, "It states it's due to your performance which is not true. … Your performance has nothing to do with this.'"[46]

77.    On information and belief, Defendants plan further waves of mass pretextual terminations of probationary employees.

### III.    Impact on Plaintiffs, the Federal Government, and the Public

78.    Plaintiffs AFSCME, AFGE, AFGE Local 1216, AFGE Local 2110, and UNAC (hereafter "Union Plaintiffs") each represent probationary employees who have been summarily fired, and falsely informed that their termination was based on performance, as a result of OPM's orders to federal agencies, or who are at risk of summary termination as a result of OPM's orders.

79.    Each Union Plaintiff has the core function of representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions.

80.    Each Union Plaintiff has been prevented, by the surprise mass terminations, from exercising those core functions as employee representative, including because by providing sham reasons for probationary employees' terminations, OPM has undermined the Plaintiffs' ability to effectively assist represented employees in vindicating their rights and seeking appropriate remedies.

81.    Each Union Plaintiff has expended substantial time and resources in the days following the surprise mass terminations addressing member concerns and attempting to provide employees with effective representation.  As a result of the surprise mass terminations, each Plaintiff has been forced to divert resources that would be devoted to representing employees who have experienced adverse employment action for legitimate resources.

---

[45]https://www.nbcnews.com/politics/doge/federal-workers-exceptional-reviews-fired-performance-issues-rcna192347

[46] https://www.washingtonpost.com/nation/2025/02/17/trump-fires-federal-workers-performance/

82.    Each Union Plaintiff has been harmed in multiple other ways by the termination of its members, including by the loss of dues income and bargaining power.

83.    Each Union Plaintiff has organizational standing to sue in its own right and has associational standing to sue on behalf of its members.

84.    Plaintiff Main Street Alliance's members face imminent harm as a result of the anticipated reductions and delays in services provided by the Small Business Administration, on which its members rely for critical services.  Those services include but are not limited to: loan guarantees to enable small businesses to obtain financing to start up or grow; and emergency disaster relief, such as in response to the January 2024 Los Angeles wildfires and Hurricane Helene in Western North Carolina.

85.    Plaintiff Coalition to Protect America's National Parks' members face imminent harm as a result of the anticipated reductions and delays in services provided by the National Park Service. The Coalition's members are regular and avid users of America's national parks who would be adversely affected by any degradation of the parks or the programs of the NPS to preserve and protect the parks and make them available to visitors.  Such degradation in safety and services provided to the public in the National Parks is inevitable based on experience in prior government shutdowns and with reductions in services in those circumstances.

86.    Plaintiff Western Watersheds Project faces imminent harm to its mission to protect and restore wildlife and public lands.  The mass termination is likely to cause further degradation of public lands and wildlife.

87.    Plaintiff VoteVets faces imminent harm to its supporters who are veterans and who rely on the VA medical system and other critical federal services provided to veterans. The VA has dismissed over 1,000 probationary employees across various roles, including those in mental health research, cancer treatment, addiction recovery, prosthetics, and burn pit exposure studies. The mass termination has also hindered the recruitment of essential support staff for the Veterans Crisis Line, which provides critical emergency mental health care (including suicide prevention) and support for military veterans, service members, their families, and caregivers positions such as trainers and quality assurance personnel.  The mass termination of probationary employees is likely to impair the

quality of these essential services.  The mass termination has also directly harmed VoteVets as an organization.  The time of VoteVets' staff and consultants has been diverted from VoteVets' regular activities to field and respond to inquiries from veterans and their families and to connect them with case workers in congressional offices.

88.    Plaintiff Common Defense also faces imminent harm to itself and its members.  Its veteran members also rely on services provided by the VA medical system and other critical mental health services available to veterans. The mass termination creates the risk of severe disruption to those services.  Further, Common Defense has had to devote considerable resources to responding to requests from its members and providing guidance about the mass probationary terminations, diverting resources that Common Defense ordinarily devotes to its other core priorities.

89.    Terminated employees and their families now face an immediate loss of income and benefits (including health benefits); economic insecurity; the immediate need to search for alternative employment; and the future adverse impact of an employment termination falsely predicated on performance.

90.    OPM's actions have already had impacts in California beyond terminated employees, their families, and their representatives.  For example, "the Trump administration has already made the United States more exposed to catastrophic wildfires in ways that will be difficult to reverse, current and former federal employees say….The job cuts, which amount to roughly 10 percent of the agency's work force, could hobble the Forest Service, which was already struggling to remove vegetation across its vast land holdings at a pace that matches the growing threat from fires, according to current and former federal employees, as well as private companies and nonprofit organizations that work on thinning forested lands."[47]  The effects have been immediate:

> In California, the Forest Service's efforts to remove underbrush are on pause, according to a person who manages an organization that runs wildfire prevention projects in the state and who spoke on the condition of anonymity out of concern of reprisals.[48]

**IV.    OPM's February 22, 2025 New Reporting Program for All Federal Workers**

---

[47] https://www.nytimes.com/2025/02/15/climate/us-forest-service-layoffs-wildfires.html

[48] https://www.nytimes.com/2025/02/15/climate/us-forest-service-layoffs-wildfires.html

91.     On February 22, 2025, OPM began to implement a new mandatory reporting program for all federal employees throughout the federal government.  OPM has ordered all federal employees to submit e-mail reports justifying their work.

92.     Prior to February 22, 2025, federal employees were not required to submit any reports regarding their work to OPM.  On information and belief, no OPM rule, regulation, policy, or program has ever, in United States history, purported to require all federal workers to submit reports to OPM.

93.     On February 22, 2025, employees throughout the federal government, employed at many different agencies, received the same email, from the address: hr@opm.gov.

94.     Prior to January 20, 2025, no such email address existed for use by OPM or within the federal government.

95.     On information and belief, this e-mail is being sent under the purported authority of OPM.

96.     On information and belief, this e-mail was sent to over 2 million federal employees.

97.     The message was sent with "High Importance."

98.     The message was not signed by any government official, nor did it identify the head of agency on whose behalf it was sent, the authority or program under which it was sent.

99.     The title of the email was:  "What did you do last week?"

100.    The body of the email stated:

**Please reply to this email with approx. 5 bullets of what you accomplished last week and cc your manager.**

**Please do not send any classified information, links, or attachments.**

**Deadline is this Monday at 11:59 EST.**

101.    On February 22, 2025 a social media account purporting to belong to an individual named Elon Musk (@elonmusk), who has been identified by the President as the head of the federal agency known as Department of Government Efficiency ("DOGE"), posted the following message:

**Consistent with President @realDonaldTrump's instructions, all federal employees will shortly receive an email requesting to understand what they got done last week.**

**Failure to respond will be taken as a resignation.**

102.    Prior to February 22, 2025, no notice was published, in the Federal Register or anywhere else, regarding any OPM program, rule, policy, or regulation requiring all federal employees to provide a report regarding their work to OPM.  Prior to February 22, 2025, no notice was published, in the Federal Register or anywhere else, regarding any program, rule, policy, or regulation under which employees who failed to respond to an email from hr@opm.gov requesting such a report would be considered to have submitted a "resignation" of federal employment.

103.    OPM has not complied with any procedural requirements in the APA, 5 U.S.C. §553, with respect to this new program.  Subsequent to the OPM email notification on February 22, 2025, at least some federal agencies, including the Federal Bureau of Investigation, began telling their employees not to respond to this OPM surprise request.

**CLAIMS FOR RELIEF**

**Claim I: Separation of Powers/*Ultra Vires***

**OPM's Order to Federal Agencies to Terminate Probationary Employees
Unlawfully Conflicts with and Overrides Legislative Power**

104.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

105.    Plaintiffs have a non-statutory right of action to enjoin and declare unlawful official action that is ultra vires.

106.    The Constitution vests the legislative power in Congress.  U.S. Const., art. I.  Federal legislation must be passed by both chambers of Congress before it may be presented to the President, and, if signed, become law.  U.S. Const., art. I.; *I.N.S. v. Chadha*, 462 U.S. 919, 951 (1983).

107.    The Constitution vests executive power in the President.  U.S. Const., art. II, and imposes on the President a duty to "take Care that the Laws be faithfully executed."  U.S. Const. art. II, § 3.

108.    The President and Executive Branch have no constitutional power to unilaterally enact, amend, or repeal parts of duly enacted statutes.  *Clinton v. City of New York*, 524 U.S. 417, 438–39 (1998).  The declared purpose of separating and dividing the powers of government was to

"diffus[e] power the better to secure liberty." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579,
635 (1952) (Jackson, J., concurring); *see also Bowsher v. Synar*, 478 U.S. 714, 721–22 (1986)
("Justice Jackson's words echo the famous warning of Montesquieu, quoted by James Madison in
The Federalist No. 47, that 'there can be no liberty where the legislative and executive powers are
united in the same person, or body of magistrates'...." The Federalist No. 47, p. 325 (J. Cooke ed.
1961).").

109.    Congress exercised its Article I legislative authority to create the agencies of the
federal government. *See generally* United States Code, Title 5 (Government Organization and
Employees). To the agency heads, Congress has also expressly delegated the power to manage the
functions of the agencies, including the right to employ and discharge subordinate employees of the
agencies and to spend appropriated funds on those positions.

110.    In addition to specific authorizing statutes, Congress has also generally authorized the
heads of administrative agencies to make employment decisions (5 U.S.C. § 3101), manage the
employees of that agency (5 U.S.C. § 301), or delegate to subordinate officers the management
decisions, including the hiring and firing of employees (5 U.S.C. § 302).

111.    Congress also made the federal administrative agencies subject to the requirements of
the CSRA, which sets forth uniform rules pertaining to employment for the civil service across
federal agencies. The agencies, led by their agency heads, are obligated by Congress to comply with
the CSRA with respect to their employees.

112.    The OPM Program requiring federal agencies to remove probationary employees
throughout the federal government unlawfully usurps the legislative authority of Congress and is
therefore ultra vires, by overriding the direct Congressional authorization of agency heads to manage
the affairs and employees of their respective agencies, including by overriding each of the following
statutes:

    a.    The authorization to all agencies to employ: 5 U.S.C. § 3101;

    b.    The authorization to all agencies to manage agency affairs via rules, including rules
         for employment: 5 U.S.C. §§ 301, 302;

    c.    The specific authorizing statutes for each federal agency, which create the office of
         agency head to administer the agencies, and enumerate the duties of the agency heads

including with respect to employment: *e.g.*, 26 U.S.C. §§ 7803, 7804 (IRS); 42 U.S.C. §§ 7231, 7253 (DOE); 20 U.S.C. § 3461 (Dept. of Ed.); 42 U.S.C. § 203 (HHS); 12 U.S.C. § 5492 (CFPB); 16 U.S.C. §§ 551, 554a, e (Agr.; Forest Service); 38 U.S.C. § 303, 510 (VA): 10 U.S.C. § 113 (DOD): 42 U.S.C. § 282 (NIH); 51 U.S.C. §§ 20111, 20113 (NASA).

d.    The CSRA authorization to agencies that govern employee removal: 5 U.S.C. §§ 7512, 7513;

e.    The CSRA provisions that apply to agency RIFs, which authorize OPM to create regulations by which agencies may conduct RIFs of their employees: 5 U.S.C. § 3502; *see also* 5 C.F.R. § 351.204 Responsibility of agency ("Each agency covered by this part is responsible for following and applying the regulations in this part when the agency determines that a reduction force is necessary."); *id.* § 351.205 Authority of OPM ("The Office of Personnel Management may establish further guidance and instructions for the planning, preparation, conduct, and review of reductions in force.").

113.    OPM's actions also exceed any statutory authority granted to it by Congress. In creating OPM and delegating duties to its Director, Congress did not authorize OPM or its Director to order the termination of employees at any other federal agency. *See* 5 U.S.C. § 1103 (authorizing Director of OPM to "appoint[] individuals to be employed *by the Office*" and "direct[] and supervis[e] employees *of the Office*, distribut[e] business among employees and organizational units of the Office, and direct[e] the internal management *of the Office*") (emphases added).

114.    OPM's actions were not authorized by any Article II Executive power, because no Article II constitutional power authorizes OPM to order federal agencies created by Congress to discharge subordinate agency employees, or to direct agencies to rely on false statements regarding employee performance to effectuate the discharged ordered by OPM.

115.    Therefore, OPM's order to the federal agencies to terminate probationary employees was issued without legal authority and is ultra vires.

### Claim II: Administrative Procedures Act Section 706(2)(A) and (C) (Action Inconsistent with Law and Exceeding Statutory Authority)

**The OPM Order to Terminate Probationary Employees Government-Wide Violates Statutes Governing Agency Powers and the CSRA**

116.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

117.    Plaintiffs Unions' federal employee members are subject to the requirements of the OPM order that all federal agencies terminate probationary employees, and Plaintiffs and their members and supporters are persons who have suffered legal wrong as a result of, and have been adversely affected or aggrieved by, OPM and Acting OPM Director's actions for purposes of 5 U.S.C. § 702.

118.    OPM is an agency that Congress has made subject to the APA.  5 U.S.C. § 701. OPM's mass termination program and order to federal agencies constitutes final agency action under the APA.  5 U.S.C. § 704.

119.    Under the APA, a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)), or that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right" (5 U.S.C. § 706(2)(C)).

120.    The actions of OPM and its Acting Director, including but not limited to the OPM program requiring federal agencies to terminate probationary employees, violate the Administrative Procedure Act because they are inconsistent with law in violation of 5 U.S.C. § 706(2)(A), and exceed statutory authority, in violation of 5 U.S.C. § 706(2)(C), and are for those reasons also arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A).

121.    The actions of OPM and its Acting Director overriding the direct Congressional authorization of agency heads to manage the affairs and employees of their respective agencies, including by overriding each and every one of the following statutes:

    a.    The authorization to employ: 5 U.S.C. § 3101;

    b.    The authorization to manage agency affairs via rules, including rules for employment: 5 U.S.C. §§ 301, 302;

    c.    The specific authorizing statutes for each federal agency, which create the office of agency head to administer the agencies, and enumerate the duties of the agency heads including with respect to employment: *e.g.*, 26 U.S.C. §§ 7803, 7804 (IRS); 42 U.S.C. §§ 7231, 7253 (DOE); 20 U.S.C. § 3461 (Dept. of Ed.); 42 U.S.C. § 203 (HHS); 12 U.S.C. § 5492 (CFPB); 16 U.S.C. § 551, 554a, e (Agr.; Forest Service); 38 U.S.C. §§ 303, 510 (VA): 10 U.S. C. § 113 (DOD): 42 U.S.C. § 282  (NIH); 51 U.S.C. §§ 20111, 20113 (NASA).

d.     The CSRA authorization to agencies that govern employee removal: 5 U.S.C. §§ 7512, 7513;

e.     The CSRA provisions that apply to agency RIFs, which authorize OPM to promulgate regulations by which agencies may conduct RIFs of their employees: 5 U.S.C. § 3502; *see also* 5 C.F.R. § 351.204 Responsibility of agency ("Each agency covered by this part is responsible for following and applying the regulations in this part when the agency determines that a reduction force is necessary."); *id.*, § 351.205 Authority of OPM ("The Office of Personnel Management may establish further guidance and instructions for the planning, preparation, conduct, and review of reductions in force.").

122.    OPM's actions also exceed any statutory power or duties granted by Congress to OPM. In creating OPM and delegating duties to its Director, Congress did not authorize OPM or its Director to order the removal of employees employed by any other federal agency. See 5 U.S.C. § 1103 (authorizing Director of OPM to "appoint[] individuals to be employed *by the Office*" and "direct[] and supervis[e] employees *of the Office*, distribut[e] business among employees and organizational units *of the Office*, and direct[e] the internal management *of the Office*") (emphases added).

**Claim III: Administrative Procedures Act Section 706(2)(A) (Arbitrary and Capricious)**

**The OPM Order to Terminate Probationary Employees Government-Wide by Falsely Invoking Performance is Arbitrary and Capricious**

123.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

124.    Plaintiff Unions' federal employee members are subject to the requirements of the OPM order to federal agencies to terminate probationary employees, and Plaintiffs and their members and supporters are persons who have suffered legal wrong as a result of, and have been adversely affected or aggrieved by, OPM and Acting OPM Director's actions for purposes of 5 U.S.C. § 702.

125.    OPM is an agency that Congress has made subject to the APA. 5 U.S.C. § 701. OPM's order to federal agencies constitutes final agency action under the APA. 5 U.S.C. § 704.

126.    The actions of OPM and its Acting Director, including but not limited to the OPM program requiring federal agencies to terminate probationary employees, violate the APA because they are arbitrary and capricious, in violation of 5 U.S.C. § 706(2)(A), for reasons that include the following: OPM's actions are based on the fiction that the employees are being terminated for

performance reasons; OPM's actions are intended to deprive terminated employees of an administrative remedy; OPM's actions required agencies to terminate employees immediately, often with only a few hours notice; OPM's actions required agencies to violate commitments made to employees and the agency's own plans for those employees; and OPM's actions had no relationship to agencies' staffing needs or statutory mandates.

### Claim IV: Administrative Procedures Act Section 706(2)(D)
### (Notice and Comment Rulemaking; Mass Termination)

**The OPM Order to Terminate Probationary Employees Government-wide is Void for Failure to Comply with Required Notice and Comment Rulemaking**

127.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth Herein.

128.     Plaintiff Unions' federal employee members are subject to the requirements of the OPM Program requiring federal agencies to terminate probationary employees and Plaintiffs and their members and supporters are persons who have suffered legal wrong as a result of, and have been adversely affected or aggrieved by, OPM and Acting OPM Director's actions for purposes of 5 U.S.C. § 702.  Had OPM followed notice-and-comment procedures required by the APA, Plaintiffs would have provided comments about the OPM Program.

129.     OPM is an agency that Congress has made subject to the APA.  5 U.S.C. § 701. OPM's order to federal agencies constitutes final agency action under the APA.  5 U.S.C. § 704.

130.     Under the APA, a court shall "hold unlawful and set aside agency action …found to be …. without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

131.     The OPM Order directing agencies to terminate probationary employees is a "rule" for purposes of the APA.  5 U.S.C. § 551(4).

132.     Congress assigned to the Director of OPM the duty of "executing, administering, and enforcing—(A) the civil service rules and regulations of the President and the Office and the laws governing the civil service."  5 U.S.C. § 1103(a)(5)(1).  Congress also required that "in the exercise of the functions assigned under this chapter, the Director shall be subject to subsections (b), (c), and (d) of section 553 of this title."  5 U.S.C. § 1105.  Congress expressly made the requirements of section 553 apply to OPM actions "notwithstanding subsection (a) of such section 553," which

otherwise exempts "matter[s] relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a).

133. Notwithstanding the OPM Director's express obligations pursuant to 5 U.S.C. §§ 1103 and 1105 to comply with notice and comment rule-making pursuant to the APA, neither OPM nor its Acting Director complied with the rule-making provisions set forth in 5 U.S.C. § 553 before issuing the OPM order directing agencies to terminate probationary employees.

134. OPM's order directing agencies to terminate probationary employees therefore also violates 5 U.S.C. § 706(2)(D) by failing to observe procedures required by law.

<u>**Claim V: Administrative Procedures Act Section 706(2)(D)**</u>
<u>**(Notice and Comment Rulemaking; Email Reporting Program)**</u>

**The OPM Program Requiring Federal Employees to Submit Reports by Email is Void for Failure to Comply with Required Notice and Comment Rulemaking**

135. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth Herein.

136. Plaintiff Unions' federal employee members are subject to the requirements of the OPM Program requiring federal employees submit e-mail reports to opm.gov reporting on "what you accomplished last week." Plaintiffs and their members and supporters are persons who have suffered legal wrong as a result of, and have been adversely affected or aggrieved by, OPM and Acting OPM Director's actions for purposes of 5 U.S.C. § 702. Had OPM followed notice-and-comment procedures required by the APA, Plaintiffs would have provided comments about the OPM Program.

137. OPM is an agency that Congress has made subject to the APA. 5 U.S.C. § 701. OPM's new program for federal employee reporting constitutes final agency action under the APA. 5 U.S.C. § 704.

138. Under the APA, a court shall "hold unlawful and set aside agency action …found to be …. without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

139. The OPM's new program for federal employee reporting is a "rule" for purposes of the APA. 5 U.S.C. § 551(4).

140. Congress assigned to the Director of OPM the duty of "executing, administering, and enforcing—(A) the civil service rules and regulations of the President and the Office and the laws governing the civil service." 5 U.S.C. § 1103(a)(5)(1). Congress also required that "in the exercise

of the functions assigned under this chapter, the Director shall be subject to subsections (b), (c), and (d) of section 553 of this title." 5 U.S.C. § 1105.  Congress expressly made the requirements of section 553 apply to OPM actions "notwithstanding subsection (a) of such section 553," which otherwise exempts "matter[s] relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a).

141.    Notwithstanding the OPM Director's express obligations pursuant to 5 U.S.C. §§ 1103 and 1105 to comply with notice and comment rule-making pursuant to the APA, neither OPM nor its Acting Director complied with the rule-making provisions set forth in 5 U.S.C. § 553 before commencing OPM's new program for federal employee reporting government-wide.

142.    OPM's new program for federal employee reporting therefore violates 5 U.S.C. § 706(2)(D) by failing to observe procedures required by law.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray that this Court:

1.    Declare that OPM's new programs 1) requiring federal agencies to terminate probationary employees and 2) requiring federal employees to report to OPM are unlawful;

2.    Enter preliminary or permanent injunctive relief setting aside OPM's order as unlawful; requiring Defendants, and all persons acting in concert with them, to cease terminations of probationary employees pursuant to OPM's program and order; and requiring Defendants, and all persons acting in concert with them, to rescind the prior unlawful terminations of probationary employees pursuant to OPM's Order.

3.    Enter preliminary or permanent injunctive relief setting aside OPM's order as unlawful; requiring Defendants, and all persons acting in concert with them, to cease requiring federal employees to report to OPM, and take no action against any employee who fails to respond to OPM's instructions to report;

4.    Award Plaintiffs their costs, reasonable attorneys' fees, and other disbursements as appropriate;

5.    Grant such other and further relief as the Court deems just and proper.

1    DATED:  February 23, 2025                 Scott A. Kronland
2                                              Stacey M. Leyton
                                               Eileen B. Goldsmith
3                                              Danielle E. Leonard
                                               Robin S. Tholin
4                                              James Baltzer
                                               ALTSHULER BERZON LLP
5                                              177 Post St., Suite 300
                                               San Francisco, CA 94108
6                                              Tel: (415) 421-7151

7

8                                       By: */s/ Danielle E. Leonard*

9                                              *Attorneys for Plaintiffs*

10

11                                             Norman L. Eisen (*pro hac vice forthcoming*)
                                               Pooja Chaudhuri (SBN 314847)
12                                             STATE DEMOCRACY DEFENDERS
                                               FUND
13                                             600 Pennsylvania Avenue SE #15180
                                               Washington, DC 20003
14                                             Tel: (202) 594-9958
                                               Norman@statedemocracydefenders.org
15                                             Pooja@statedemocracydefenders.org

16

17

18                                      By: */s/ Norman L. Eisen*

19                                             *Attorneys for Plaintiffs*

20

21                                             Rushab Sanghvi (SBN 302809)
                                               AMERICAN FEDERATION OF GOVERNMENT
22                                             EMPLOYEES
                                               80 F Street, NW
23                                             Washington, DC 20001
                                               Tel: (202) 639-6426
24                                             Sanghr@afge.org

25

26                                      By: */s/ Rushab Sanghvi*

27                                             *Attorneys for Plaintiff American Federation of
                                               Government Employees (AFGE)*

28

1

2                             Teague Paterson (SBN 226659)

                              Matthew Blumin  (*pro hac vice forthcoming*)

3                             AMERICAN FEDERATION OF STATE, COUNTY,

                             AND MUNICIPAL EMPLOYEES

4                             1625 L Street, N.W.

                             Washington, D.C.  20036

5                             Tel: (202) 775-5900

                             TPaterson@afscme.org

6                             MBlumin@afscme.org

7

8                   By: */s/Teague Paterson*

9

10                        *Attorneys for Plaintiff American Federation of State*

                             *County and Municipal Employees (AFSCME)*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28