Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO;  et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 3:25-cv-01780-WHA <br><br> **DECLARATION OF KORY BLAKE** |

Declaration of Kory Blake, No. 3:25-cv-01780-WHA

**DECLARATION OF KORY BLAKE**

I, Kory Blake, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am the Area Field Services Director ("AFSD") for the Eastern Region in the Organizing and Field Services department of the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME"). As AFSD, I am responsible for providing guidance and leadership to the efforts of the International Union and affiliates in mobilizing the membership in support of the union's programs. This includes coordinating and allocating AFSCME resources to affiliates within my assigned region, identifying AFSCME programs and services to meet the needs of affiliates, and engaging directly with council or local union leaders and members on organizing, contract and political campaigns. I am assigned to support AFSCME affiliates located in Washington, D.C., Maryland, and Virginia, including coordinating support and resources to AFSCME's federal government employee affiliates and members. I have been an AFSD for AFSCME since 2020.

3. AFSCME is a national labor organization and unincorporated membership association headquartered at 1625 L Street N.W., Washington, D.C. 20036. AFSCME also maintains offices in the cities of Los Angeles, Oakland and Sacramento, California. AFSCME is the largest trade union of public employees in the United States, with around 1.4 million members organized into approximately 3,400 local unions, 58 councils and other affiliates, including retiree councils and chapters, in 46 states, including California, the District of Columbia, and Puerto Rico. AFSCME has approximately 185,000 members in the State of California. AFSCME, through its affiliate District Council 20 and its 18 constituent federal government local unions, represents more than 6,000 federal civilian employees in agencies and departments across the federal government.

4. AFSCME members include nurses, corrections officers, childcare providers, emergency medical technicians, sanitation workers, school bus drivers, civil engineers, policy analysts, and more.

Its members working for the federal government work to ensure aviation safety at the Federal Aviation Administration (FAA), criminal justice through the Department of Justice (DOJ), food safety and facilitation of international trade for U.S. farmers through the U.S. Department of Agriculture (USDA), civic engagement through service and volunteering through AmeriCorps and the Peace Corps, and more.

5. AFSCME organizes employees and advocates for fairness in the workplace, better wages and working conditions, excellence in public services, and prosperity and opportunity for all working families. AFSCME's core functions include providing support, guidance, and resources to our affiliates, some of which are the officially recognized exclusive representatives of federal employees in various bargaining units.

6. On February 14, 2025, AFSCME bargaining unit members who are probationary federal employees began notifying the union that they were being terminated, effective immediately.

7. At the FAA, for example, affected employees began notifying the union by phone and email messages that the FAA sent these employees an email message with the subject "Notification of Termination During Probationary Period." This email informed these employees that the FAA was terminating their employment, effective February 14, 2025. The email to the affected probationary employees explained to the employees that they were being removed from their position during the "probationary/trial period." The email states: "based on your performance, you have not demonstrated that your further employment at the DOT FAA would be in the public interest." A true and correct copy of an exemplar of one of these notices is attached hereto as Exhibit 1.

8. Similarly, at the USDA, bargaining unit members who are probationary employees began notifying the union by phone, email and text messages on February 14, 2025 that the USDA sent these employees emails containing, as an attachment or within the body of the email, a letter to each employee terminating their employment, effective February 13, 2025, at 7:00 p.m. eastern time. The

Declaration of Kory Blake, No. 3:25-cv-01780-WHA                                                      2

letter to employees, titled "Notification of Termination During Probationary Period," explained to the affected probationary employees that they were being removed from their position during the "probationary/trial period." The letter further states: "based on your performance, further employment at the Agency would be in the public interest." A true and correct copy of an exemplar of one of these notices is attached hereto as Exhibit 2.

9. In my position as AFSD, I have heard from or am aware of AFSCME members who have been terminated as probationary employees. I am also aware of the mass terminations of federal probationary employees across the federal government.

10. As of the time of this declaration, AFSCME has confirmed that at least 79 probationary federal employees who are represented by AFSCME have been terminated by the FAA, USDA, and the DOJ. At the FAA, this includes employees who were Management and Program Analysts in Facility Security, Data Scientists in Safety Analysis, Regulation Attorneys, Enforcement Attorneys, Economists in the Forecast and Performance Analysis Division, Regulation Analysts in various divisions, Computer Scientists, and others. At the USDA, this includes employees working for the USDA's Foreign Agricultural Service who were International Economists, International Trade Specialists, Nutritionists, Trade Policy Analysts, International Science Advisors, Technical Assistance Specialists, International Market Specialists, and others. At the DOJ, this includes employees who were Community Outreach Specialists and Legal Assistants.

11. AFSCME is still unaware of the full scope of the terminations of AFSCME members because some federal agencies have not provided the union lists of the affected bargaining employees.

12. The mass termination of probationary employees in the federal government has harmed AFSCME, its members, and the public by impeding the crucial public services provided by these members

Declaration of Kory Blake, No. 3:25-cv-01780-WHA                                                                 3

13. Immediately following the terminations, bargaining unit members reached out to AFSCME and our federal government employee affiliates en masse to request assistance and provide clarifying information. AFSCME has received hundreds of phone calls, emails, or other communications directly to AFSCME's website from affected members or other concerned federal employee members. This includes affected probationary employees, but also other non-probationary bargaining unit members who are fearful that they will be terminated next. This flood of member inquiries and requests for assistance required AFSCME to quickly divert resources and staff from other work to support our affected members and affiliates.

14. AFSCME's probationary employee members were blindsided by the terminations and their employing agencies did not notify their local unions of this drastic employment action. This lack of transparency from federal agencies made it impossible for employees to prepare for such a devastating employment action and difficult for AFSCME to quickly respond to our members' concerns or provide guidance and information to the affected employees.

15. AFSCME has also devoted significant resources to provide assistance to our federal government employee affiliates and members by directing and assigning International Union staff to provide assistance, counseling, and information to our members about the mass probationary employee terminations in the federal government. Since the mass terminations, affected employees are seeking counseling on their rights and protections, guidance on applying for benefits such as unemployment insurance or the continuation of healthcare coverage that usually comes from agencies after a termination, and any clarifying information about the mass terminations because so little information was shared with employees by their agencies after their terminations.

16. AFSCME has assigned several AFSCME International Union staff, including myself, from various departments to address the issues arising from the mass terminations and to support our members. This includes three attorneys from AFSCME's Office of the General Counsel to assess the

terminations, conduct legal research on how to protect affected members' legal rights, and engage in legal advocacy; staff from AFSCME's Data and Analytics department to help gather and analyze member data to understand the scope of the terminations and engage in member outreach; several additional staff from AFSCME's Organizing and Field Services department not normally assigned to assist our federal sector affiliates who are engaging directly with our affected affiliates and members to provide support and coordinate resources; staff members from AFSCME's Communications department to help affiliates develop and send out communications to their membership and answer media inquiries about the mass terminations affecting their members; and staff from AFSCME's Federal Government Affairs department to advocate for the terminated probationary employees through federal legislative efforts.

17. The AFSCME staff that has been assigned to address the mass terminations of federal probationary employees have been diverted from other duties in furtherance of AFSCME's mission to organize new employees and advocate for better wages and working conditions. For example, in my role as AFSD, I am also responsible for supporting more than 100 other affiliates within my region in Maryland, the District of Columbia and Virgina—the overwhelming majority of which exclusively represent non-federal employees—but I have had to divert a significant amount of my time from my otherwise-core labor relations representation and organizing work to focus on supporting our affected federal employee members and affiliates to address the terminations. AFSCME attorneys have also had to divert their attention from handling core representational matters on behalf of non-federal employees to focus on conducting legal research and legal advocacy about the probationary employee terminations. For example, three out of a total of eight attorneys in the AFSCME Office of the General Counsel are spending an extensive amount of their workday addressing the terminations. One of those AFSCME attorneys is assigned to support AFSCME's organizing efforts in other states but has had to temporarily pause that important representation work—which is work that grows union membership--

Declaration of Kory Blake, No. 3:25-cv-01780-WHA                                                                 5

to focus on addressing the mass terminations on an almost full-time basis. AFSCME has spent hundreds of staff hours on this matter since learning about the terminations from our probationary employee members that they were terminated without justification.

18. Affected members are devastated about losing their livelihoods and are distressed about how they will support themselves and their families to cover their basic needs like housing, healthcare, childcare, and other necessary expenses. Many of these members had recently moved to Washington D.C. at great personal expense to start their careers in the public service and are now left with a great financial and emotional burden that comes with losing their jobs. Some members' physical and mental health is threatened with the loss of healthcare coverage due to the terminations, including a member who was diagnosed with cancer the day after being terminated. Some members are veterans who were transitioning to federal service after serving in the military, and are now being terminated. Some members were hired through the highly competitive Presidential Management Fellow program that helps recruit future leaders in government, but were summarily terminated as probationary employees. Some members sacrificed their careers in the private sector or positions as government contractors to work as civilian federal employees and use their expertise for the benefit of the public, but are now left without a job.

19. Affected employees are also very confused and anxious because the perfunctory termination notices base their termination on "performance" without any specific examples or individualized justifications. Not one of the notices that I have reviewed has included any mention of an individualized assessment of the employee's performance, nor do they include specific examples of any performance issues. In fact, many of the affected employees have indicated, and provided me examples of documents evidencing, that they have received performance reviews, recent commendations, or other communications from their agencies stating that their performance is

outstanding or that their performance meets expectations, and that their performance has never been questioned during their probationary period.

20. The mass terminations of federal probationary employees have also caused AFSCME to lose revenue received from dues paying members because federal employee members pay their dues though voluntary payroll dues deductions from their paychecks, and thus the affected members who have lost their jobs will no longer be able to pay their dues to the union. This will affect AFSCME's ability to provide services to its members and affiliates nationwide, since AFSCME International receives a per capita share of voluntary member dues paid to AFSCME affiliate unions.

21. The injuries suffered by AFSCME and its members are ongoing or imminent and will persist unless this Court intervenes.

22. Membership in AFSCME is voluntary.

23. AFSCME's and its subordinate bodies' leadership is democratically elected by and from among its membership.

24. AFSCME's activities and staff are funded through our members' voluntary dues, which are established by the AFSCME International Constitution and based on the percentage of hours worked for part-time or full-time members.

25. If OPM had publicly disclosed its intention to order agencies to discharge probationary employees en masse and put that program out to notice-and-comment rulemaking, the Union would absolutely have commented. AFSCME regularly comments on rulemaking involving federal employees. We would have weighed in to explain the myriad ways this program violates the law, and to explain the adverse effects on government services and the federal workforce, among other things. The government's failure to provide advance notice and lack of transparency prevented us from performing our statutory duty.

Declaration of Kory Blake, No. 3:25-cv-01780-WHA    7

1  I declare under penalty of perjury under the laws of the United States that the foregoing is true
2  and correct. Executed this 22nd day of February 2025 in Washington, DC.

_____
Kory Blake

Declaration of Kory Blake, No. 3:25-cv-01780-WHA                    8