Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>  Defendants. | Case No. 3:25-cv-01780-WHA<br><br>**DECLARATION OF EVERETT KELLEY** |

Declaration of Everett Kelley No. 3:25-cv-01780-WHA

**DECLARATION OF EVERETT KELLEY**

I, Everett Kelley, declare as follows:

1. I am over 18 years of age and competent to give this declaration. This declaration is based on my personal knowledge, information, and belief.

2. I am the National President of the American Federation of Government Employees, AFL-CIO (AFGE), a labor organization and unincorporated association that represents approximately 800,000 federal civilian employees through its affiliated councils and locals in every state in the United States. AFGE federal employee members include nurses, border patrol agents, correctional officers, scientists, health care workers, civilian employees in the Department of Defense, employees of the Social Security Administration, and more.

3. AFGE advocates on behalf of its members and seeks to promote dignity, safety, and fairness for government employees. Our core functions include providing support, guidance, and resources to our affiliates, which are the officially recognized exclusive representatives of federal employees in various bargaining units.

4. AFGE represents over 50,000 federal employees in the State of California, at agencies including, but not limited to, the Department of Veterans Affairs, the Small Business Administration, the Environmental Protection Agency, and the Department of Defense. AFGE has several affiliates that represent employees in the San Francisco Bay Area, including employees at the San Francisco Veterans Health Care System, the Palo Alto VA Medical Center, and various Social Security Field offices and military installations.

5. Membership in AFGE is voluntary.

6. AFGE's activities and staff are funded through our members' voluntary dues.

7. The unprecedented mass termination of probationary employees has harmed both AFGE and its members.

Declaration of Everett Kelley No. 3:25-cv-01780-WHA   1

8. AFGE has devoted considerable resources to responding to requests and providing guidance about the mass probationary terminations. Demand for AFGE's assistance, and the assistance of its affiliates, has risen substantially since when mass probationary terminations began on or around February 13.

9. AFGE's staff have received several thousand emails since February 9, 2025, from members and federal employees seeking guidance on probationary terminations. Staff in each AFGE department have been inundated with phone calls from members, asking questions about what the mass termination policy will mean for their rights as employees. AFGE must answer these questions to represent our members and affiliates effectively.

10. Altogether, AFGE staff have been forced to spend literally thousands of hours responding to the calls and emails from members and affiliates related to probationary employee terminations that would have otherwise been spent on other matters.

11. The increase in resources devoted to probationary terminations has diverted resources from other AFGE members' needs and other AFGE priorities. For instance, the time spent responding to and addressing probationary terminations have prevented AFGE's field representatives from filing grievances for affiliates, advising affiliates on other pressing matters such as responding to attacks on collective bargaining and organizing unrepresented members.

12. The manner in which the probationary terminations occurred have made it particularly challenging to provide guidance and advice to members and affiliates on this issue. The sheer scale of the mass terminations is unprecedented and requires an unprecedented mobilization of resources in response. Further, the pretextual nature of the termination notices—many of which falsely assert that the probationary employees were terminated for performance reasons (on a time frame within which no serious performance review could have been conducted, and, in any case, after *positive* performance reviews had been given)—has created confusion and fear among our members. These challenges in

providing advice on this matter have resulted in significant resources being spent on this matter. For example, I have assigned at least four attorneys to dedicate most of their time on providing guidance to our affiliates regarding the probationary employee terminations. These attorneys would have otherwise provided counseling and representation to our affiliates on other matters. Other attorneys also have worked on probationary termination issues.

13. In the field, AFGE's field staff has been required to divert their attention from typical representation and organizing work, to respond to inquiries and assist affiliates with addressing the probationary terminations. In particular, AFGE has over sixty National Representatives ("NR") whose primary responsibilities include representing AFGE members and affiliates in various geographic locations throughout the United States. The NRs typically file grievances for affiliates, help them conduct membership meetings, assist with bargaining, and provide general guidance and advice. Due to the surge in probationary terminations, NRs have been overwhelmed with requests for guidance and advice on what our affiliates and members can do for terminated probationary employees.

14. In addition to diverting resources, several AFGE bargaining units have already significantly diminished in size as a result of the mass terminations of probationary employees. For instance, we are aware of over 280 bargaining unit employees being terminated from AFGE's EPA bargaining unit; over 30 bargaining unit employees at the Small Business Administration; over 160 bargaining unit employees at the Department of Education; and hundreds more at other government agencies represented by AFGE. AFGE believes that thousands of employees in its bargaining units have been terminated but has been unable to gather this data because many agencies have failed to provide AFGE's affiliates sufficient information to calculate how many employees were terminated.

15. Based on decades of experience as a union leader, I know that a union's bargaining power derives from the number of employees it represents at an agency. Our voice as an organization is the collective voice of our members and the employees we represent. By significantly reducing the

size of AFGE's bargaining units in such a hurried manner, the mass termination program has effectively limited AFGE's bargaining power.

16. AFGE will likely lose thousands of members as a result of the probationary terminations because the majority of AFGE members retain their membership through automatic dues deduction. When the next payroll cycle occurs, removed employees who pay membership dues through dues deduction may be dropped from AFGE's membership rolls.

17. The loss of thousands of members will significantly affect AFGE's revenue and its ability to provide services to its members and affiliates.

18. Combined, the loss of dues revenue, the reduction in AFGE's bargaining power, and the significant diversion of resources, have impeded AFGE's ability to perform its core mission of serving federal employees.

19. I have heard from or am aware of thousands of federal employees that have been removed during their probationary period.

20. AFGE's members have suffered in ways beyond just financial harm as a result of their termination.

21. For instance, we have heard from several members who will have to relocate and interrupt their children's schooling as a result of their abrupt terminations.

22. Federal employees have also informed us of the severe emotional distress they are suffering from as a result of the sudden, pretextual terminations. As a veteran myself, I am particularly concerned about the impacts of these terminations on the numerous disabled veterans in our membership, many of whom struggle with serious mental health issues.

23. In addition to being personally harmed, our members, our organization, and the community have been harmed by the terminations effect on government agencies provision of services.

24. As an example, I have been informed that several former firefighters involved in the Firefighter Fatality Investigation and Prevention Program and those who maintain the Firefighter Cancer Registry working for Department of Health and Human Services were removed. These dedicated firefighters investigate incidents that led to firefighter deaths to assist in research aimed at decreasing the risk of firefighters dying in the line of duty. The terminations of three of the five firefighters staffing this congressional mandated program will result in the program no longer being able to effectively achieve its goals. AFGE has members that are firefighters at many agencies across the country; these members are directly affected by the impact on a program meant to protect them.

25. Like myself, tens of thousands of AFGE members are veterans. The terminations' impact on the provision of veteran's services will adversely affect veterans, including AFGE members, ability to receive adequate health care. The mass termination of over 1,000 employees of the Department of Veterans Affairs will result in even lower staffing in offices that provide support to veteran health care facilities. We have been told that further terminations of probationary employees will be conducted in the near future.

26. Several members who were terminated from employment have provided me copies of their termination notices. Most of those notices say the employees were removed for performance reasons. However, these same employees have also provided me with *positive* performance evaluations that show, in many instances, that the claim that they were removed for performance reasons is false. None of the termination notices I have seen have provided any specific or individualized performance reasons for any employee's termination.

27. We are also very concerned about the possibility of mass terminations at the Department of Defense. Information from our affiliates and news reporting suggest that thousands of civilian employees at the Department of Defense will be removed next week. I was specifically informed that the Navy will be terminating probationary firefighters across the country in coming days.

Declaration of Everett Kelley No. 3:25-cv-01780-WHA                                 5

28. As a former soldier and civilian employee of the Department of Defense, I know that terminations of civilian employees will adversely affect the Department's mission. In particular, I am concerned about the services received by our military families and state-side soldiers who will receive fewer and less robust services by cuts to the civilian workforce.

29. AFGE and its members will also be harmed by the termination of probationary employees throughout the Department of Defense. AFGE represents approximately 250,000 civilian employees at the Department of Defense and has several DoD affiliates across the country. For instance, AFGE represents the civilian employees at multiple DoD facilities in Northern California, including employees at the Presidio of Monterey and the Defense Logistics Agency in Sunnyvale.

30. If OPM had publicly disclosed its intention to order agencies to discharge probationary employees en masse, and put that program out to notice-and-comment rulemaking, the Union would absolutely have commented. AFGE regularly comments on rulemaking involving federal employees. We would have weighed in to explain the myriad ways this program violates the law, and to explain the adverse effects on government services and the federal workforce, among other things. The government's failure to provide advance notice and lack of transparency prevented us from performing our statutory duty.

31. The pace of the terminations that have happened so far, together with media reports showing that mass termination program is ongoing, makes clear injuries suffered by AFGE and its members are ongoing or imminent and will persist unless this Court intervenes.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 22d day of February 2025, in Washington, DC.

*[Signature: Everett B. Kelley]*
Everett Kelley