PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
(415) 436-7200
kelsey.helland@usdoj.gov

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
james.todd@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, *et al.*

       Plaintiffs,

       v.

UNITED STATES OFFICE OF PERSONEL
MANAGEMENT, *et al.*,

       Defendants.

Case No. 3:25-cv-1780-WHA

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date: February 27, 2025
Time: 1:30 pm
Judge: Hon. William H. Alsup
Place: San Francisco Courthouse
       Courtroom 12

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

BACKGROUND ............................................................................................................2

I.     Statutory and Regulatory Background............................................................................2

II.    Factual Background .........................................................................................................4

       A.    OPM's Guidance Memorandum on Probationary Periods.....................................4

       B.    Executive Order 14210.........................................................................................5

       C.    Terminations of Certain Probationary Employees................................................6

III.   Procedural History...........................................................................................................7

STANDARD OF REVIEW ..............................................................................................9

ARGUMENT ..................................................................................................................9

I.     Plaintiffs Cannot Show Irreparable Harm Absent a TRO.. ............................................9

II.    Plaintiffs Cannot Show a Likelihood of Success on the Merits of their Claims...............11

       A.    Plaintiffs Lack Standing to Pursue Many of Their Claims. ................................11

             1.    The Non-Union Plaintiffs Lack Standing. .................................................12

             2.    Plaintiffs Lack Standing to Pursue their Claim of a Procedural
                   Injury. ........................................................................................................12

       B.    The FSL-MRS and the CSRA Preclude District-Court Jurisdiction Over
             Plaintiffs' Claims. ...............................................................................................13

       C.    Plaintiffs' *Ultra Vires* and Separation of Powers Claims Lack Merit.. ................17

       D.    Plaintiffs' APA Claims are Unlikely to Succeed..................................................21

III.   The Public Interest Does Not Favor an Injunction...........................................................22

IV.    Any Relief Should Be Limited........................................................................................23

CONCLUSION................................................................................................................23

1

# TABLE OF AUTHORITIES

2

**<u>Cases</u>**

3
4

*AFGE v. Sec'y of the Air Force,*
   716 F.3d 633 (D.C. Cir. 2013) ............................................................................................16

5
6

*Allen v. Reid,*
   No. 15-cv-1905, 2016 WL 3136859 (D. Minn. June 3, 2016) .................................................12

7
8

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*
   929 F.3d 748 (D.C. Cir. 2019) .......................................................................................*passim*

9

*Am. Sch. of Magnetic Healing v. McAnnulty,*
   187 U.S. 94 (1902) ............................................................................................................18

10
11

*Arizona v. Biden,*
   40 F.4th 375 (6th Cir. 2022) ............................................................................................23

12
13

*Axon Enters., Inc. v. Fed. Trade Comm'n,*
   598 U.S. 175 (2023) ...........................................................................................15, 16, 17

14
15

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.,*
   502 U.S. 32 (1991) ............................................................................................................18

16

*California v. Azar,*
   911 F.3d 558 (9th Cir. 2018) ............................................................................................23

17
18

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .......................................................................................................11, 12

19
20

*Clark v. Bank of Am. N.A.,*
   No. 14-cv-232, 2015 WL 1433834 (D. Idaho Mar. 27, 2015) ...............................................12

21
22

*Ctr. for Biological Diversity v. Trump,*
   453 F. Supp. 3d 11 (D.D.C. 2020) ................................................................................20, 21

23

*Dalton v. Specter,*
   511 U.S. 462 (1994) .................................................................................................19, 20, 21

24
25

*Dennis v. Thomas,*
   No. 09-1317, 2010 WL 3927488 (D. Or. Oct. 4, 2010) ......................................................12

26
27

*Dresser v. Meba Med. & Benefits Plan,*
   628 F.3d 705 (5th Cir. 2010) ............................................................................................21

28

*E. Bay Sanctuary Covenant v. Barr,*
   934 F.3d 1026 (9th Cir. 2019) ............................................................................................23

*Eagle Tr. Fund v. USPS*,
  365 F. Supp. 3d 57 (D.D.C. 2019), *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020)........... 18-19

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) ..............................................................................*passim*

*FCC v. Prometheus Radio Project*,
  141 S. Ct. 1150 (2021) ...............................................................................21

*Fed. L. Enf't Officers Ass'n v. Ahuja*,
  62 F.4th 551 (D.C. Cir. 2023)................................................ 17, 21, 22

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir.),
  *judgment vac'd on other grounds*, 144 S. Ct. 480 (2023) (mem.)...........................................15

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) .................................................................................11

*Fornaro v. James*,
  416 F.3d 63 (D.C. Cir. 2005).....................................................................21

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
  739 F.2d 466 (9th Cir. 1984) .....................................................................10

*Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*,
  541 F. Supp. 2d 1117 (E.D. Cal. 2008) ...................................................10

*Heckler v. Ringer*,
  466 U.S. 602 (1984) .................................................................................17

*Hindes v. FDIC*,
  137 F.3d 148 (3d Cir. 1998) .....................................................................18

*In re Excel Innovations, Inc.*,
  502 F.3d 1086 (9th Cir. 2007) .................................................................10

*Jarkesy v. SEC*,
  803 F.3d 9 (D.C. Cir. 2015).......................................................................15

*Kirby Corp. v. Pena*,
  109 F.3d 258 (5th Cir. 1997) .....................................................................19

*Lampon-Paz v. OPM*,
  732 F. App'x 158 (3d Cir. 2018) ...............................................................14

*Larson v. Domestic & Foreign Com. Corp.*,
  337 U.S. 682 (1949) .................................................................................19

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................18

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................11

*Lundeen v. Mineta*,
   291 F.3d 300 (5th Cir. 2002) ...........................................................18, 19

*Lyons v. Dep't of Veteran's Affairs*,
   273 F. App'x 929 (Fed. Cir. 2008)........................................................17

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ................................................................................23

*Marshall v. HHS*,
   587 F.3d 1310 (Fed. Cir. 2009) .............................................................16

*Myers v. United States*,
   272 U.S. 52 (1926) ..................................................................................19

*N.Y. Republican State Comm. v. SEC*,
   799 F.3d 1126 (D.C. Cir. 2015) .............................................................15

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................22

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ...............................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ..................................................................................19

*Pom Wonderful LLC v. Hubbard*,
   775 F.3d 1118 (9th Cir. 2014) ...............................................................10

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
   140 S. Ct. 2183 (2020) ...........................................................................19

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ................................................................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ...................................................................9

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .........................................................................14, 15

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
   136 S. Ct. 1807 (2016) ...................................................................................21

*United States v. Fausto*,
   484 U.S. 439 (1988) ........................................................................ 14, 16, 21

*Veit v. Heckler*,
   746 F.2d 508 (9th Cir. 1984) ......................................................................14

*W. Mining Council v. Watt*,
   643 F.2d 618 (9th Cir.1981) ...................................................................... 9-10

*Warth v. Seldin*,
   422 U.S. 490 (1975) ....................................................................................10

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) ......................................................................9

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ......................................................................................9

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ...............................................................................11, 12

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ..........................................................................................9

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) ....................................................................................20

**Constitution**

U.S. Const. art. II, § 1, cl. 1 ...........................................................................19

U.S. Const. art. II, § 1, cl. 3 ...........................................................................19

**Statutes**

5 U.S.C. § 704 ................................................................................................21

5 U.S.C. § 1204 ................................................................................................3

5 U.S.C. § 1212 ................................................................................................4

5 U.S.C. § 1214 ................................................................................................4

5 U.S.C. § 2302 ................................................................................................3

5 U.S.C. § 7105 ..........................................................................................2, 15

5 U.S.C. § 7116 ................................................................................................................2

5 U.S.C. § 7118 ................................................................................................................2

5 U.S.C. § 7123 ..........................................................................................................2, 15

5 U.S.C. § 7511 ................................................................................................................3

5 U.S.C. § 7512 ................................................................................................................3

5 U.S.C. § 7701 ..........................................................................................................4, 15

5 U.S.C. § 7703 ..........................................................................................................4, 15

28 U.S.C. § 1295 .............................................................................................................3

28 U.S.C. § 1331 ...........................................................................................................15

Civil Service Reform Act of 1978,
    Pub. L. No. 95-454, 92 Stat. 1111 (codified at 5 U.S.C. §§ 7101-35) ......................2

**Rules**

Fed. R. Civ. P. 65 ............................................................................................................9

**Administrative & Executive Materials**

5 C.F.R. § 315.801 ...........................................................................................................3

5 C.F.R. § 315.802 ...........................................................................................................3

5 C.F.R. § 315.803 ...........................................................................................................3

5 C.F.R. § 315.804 ...........................................................................................................3

5 C.F.R. § 315.806 ...........................................................................................................3

Executive Order 14210 (Feb. 11, 2025), ("EO 14210"),
    https://public-inspection.federalregister.gov/2025-02762.pdf ................... 5, 6, 14, 19

**Other Authorities**

Mem. from Charles Ezell, Acting Director, U.S. Office of Personnel Management, to Heads
    and Acting Heads of Departments and Agencies, titled "Guidance on Probationary
    Periods, Administrative Leave and Details," (Jan. 20, 2025) ("OPM Mem.") .........4

1

**INTRODUCTION**

2        Upon his reelection to office, President Trump set to work to transform the federal work

3  force. Among other things, he issued directives to require a return to in-person work, restore

4  accountability for federal workers who have policy-making authority, and reform the federal

5  hiring process to focus on merit. Animating these and other critical reforms is the recognition

6  that the federal workforce must be streamlined to be more efficient and to better serve the

7  American people. In furtherance of those objectives, the U.S. Office of Personnel Management

8  ("OPM") issued a January 20, 2025 memorandum to the heads and acting heads of Executive

9  Branch departments and agencies directing them to identify all employees on "probationary"

10  periods—generally, those members of the Competitive Service with less than one year of federal

11  service and those members of the Excepted Service with less than two years of federal service—

12  and directing each agency to "promptly determine whether those employees should be retained at

13  the agency." Following further OPM guidance over the following weeks, several federal

14  agencies (none named in this suit, other than OPM) began removing certain probationary

15  employees on February 13, 2025.

16        This action followed. Plaintiffs—five federal labor unions and five non-union

17  organizations—allege that OPM's guidances to federal agencies constitute an "order" to agencies

18  "requiring them to terminate all probationary workers" and now seek a temporary restraining

19  order that would (1) halt any further terminations of probationary federal employees; (2) identify

20  the employees who have been fired under this program; and (3) rescind OPM's termination

21  directive and restore agencies and their employees to their status prior to this order.

22        Plaintiffs' TRO request should be denied on multiple grounds. First, despite making six

23  separate assertions of irreparable harm, they fail to establish any of them sufficient to obtain the

24  extraordinary remedy of immediate temporary relief. Second, Plaintiffs fail to establish a

25  likelihood of success on the merits of their claims. Plaintiffs lack standing to pursue many of

26  their claims because their asserted harms are far too speculative and they cannot seek injunctive

27  relief on behalf of third-party federal employees who are not before this Court. Nor can Plaintiffs

28  pursue their claims in federal district court; instead Congress has provided the Federal Labor

Relations Authority and the Merit Systems Protection Board as the sole administrative avenues before which challenges to federal employee terminations may be brought. Plaintiffs also fail to show that OPM's challenged actions are ultra vires or violate the separation of powers. Plaintiffs additionally fail to show that their APA claims would succeed on the merits.

Likewise, the balance of equities and the public interest favor Defendants, as Plaintiffs' requested TRO would interfere with the President's ability to manage, shape, and streamline the federal workforce to more closely reflect policy preferences and the needs of the American public.

Finally, if the Court is inclined to enter injunctive relief, it should be limited in scope to only these Plaintiffs, rather than constitute the essentially nationwide injunction Plaintiffs seek.

At bottom, Plaintiffs fail to establish any of the requirements entitling them to a temporary restraining order, and Plaintiffs' motion should be denied; failing that, any injunctive relief should be narrowly tailored to encompass Plaintiffs only.

## BACKGROUND

### I.    Statutory and Regulatory Background

The Federal Service Labor-Management Relations Statute ("the Statute" or "FSLMRS"), set forth in Title VII of the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, § 701, 92 Stat. 1111, 1191-1216 (codified at 5 U.S.C. §§ 7101-35), governs labor relations between the executive branch and its employees. The Statute further "establishes a scheme of administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE v. Trump*"). Under that scheme, the Federal Labor Relations Authority ("FLRA"), a three-member agency charged with adjudicating federal labor disputes, reviews matters including "negotiability" and "unfair labor practice[]" disputes or claims. *See* 5 U.S.C. § 7105(a). When reviewing unfair labor practice complaints, it is "the FLRA [that] resolves whether an agency must bargain over a subject, violated the duty to bargain in good faith, or otherwise failed to comply with the Statute." *AFGE v. Trump*, 929 F.3d at 752 (citing 5 U.S.C. §§ 7105(a)(2)(G), 7116(a), 7118)). Direct review of the FLRA's decisions on unfair labor practice and negotiability issues is available in the courts of appeals. 5 U.S.C. § 7123(a).

The CSRA "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012) (citation omitted). If an agency takes a final adverse action against an employee no longer in his or her probationary period—including removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less, 5 U.S.C. § 7512—the employee may appeal to the Merit Systems Protection Board ("MSPB"). *Id.* § 7513(d). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. *Id.* §§ 1204(a)(2), 7701(g). Non-probationary employees may appeal final MSPB decisions to the Federal Circuit, which has "exclusive jurisdiction" over such appeals. 28 U.S.C. § 1295(a)(9). This statutory review scheme, too, is "exclusive, even for employees who bring constitutional challenges to federal statutes." *Elgin*, 567 U.S. at 13. Federal employees employed during their probationary period generally do not enjoy a right to appeal to the MSPB, as they are not considered "employee[s]" for purposes of the CSRA's Chapter 75, 5 U.S.C. § 7511(a)(1), but remain properly considered as "applicants" for employment under an extended hiring and evaluation period. *See* 5 U.S.C. § 7511(a)(1)(A)-(B) (one-year trial period), (C) (two-year trial period); 5 C.F.R. § 315.801, 301.806. However, many of the protections of the CSRA's Chapter 23 extend to both "applicants and employees." *See*, *e.g.*, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency").

CSRA regulations set out the terms and conditions for an initial appointment to a career position in the federal government. *See* 5 C.F.R. subpart H. In particular, the regulations provide that, for such employees, the first year or first two years for certain employees is a probationary or trial period. *See id.* § 315.801, 315.802. Those regulations further provide for employing agencies to use the probationary period "as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." *Id.* § 315.803(a). When an agency decides to terminate an employee covered by these regulations because his or her work performance or conduct during the probationary or trial period fails to demonstrate his or

her fitness or his qualifications for continued employment, it must notify the employee and provide "the agency's conclusions as to the inadequacies of his [or her] performance or conduct." *Id*. § 315.804(a).

Covered employees may appeal their removals to the MSPB if they allege that the removal was based upon one of the reasons set forth in the regulations. *See id.* § 315.806. Generally, employees may appeal adverse MSPB decisions to the Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703. Probationary employees do not have a right to appeal removals to the MSPB under the CSRA's Chapter 75, but may in appropriate circumstances pursue relief by filing complaints alleging certain prohibited personnel practices with the Office of Special Counsel, which may in turn pursue administrative relief before the MSPB.[1]

## II. Factual Background

### A. OPM's Guidance Memorandum on Probationary Periods

On January 20, 2025, OPM Acting Director Charles Ezell transmitted a guidance memo to Executive Branch agencies directing them, in pertinent part, to "identify all employees on probationary periods, who have served less than a year in a competitive service appointment, or who have served less than two years in an excepted service appointment, and send a report to OPM listing all such employees[.]" Mem. from Charles Ezell, Acting Director, U.S. Office of Personnel Management, to Heads and Acting Heads of Departments and Agencies, titled "Guidance on Probationary Periods, Administrative Leave and Details," at 1 (Jan. 20, 2025) ("OPM Mem."); *see also* Decl. of Charles Ezell ¶ 3, attached as Ex. 1 (a copy of the Memorandum is attached as Ex. A to the Ezell Declaration). Further, the OPM Memorandum directed agencies to "promptly determine whether those employees should be retained at the agency." OPM Mem. at 1.

On February 14, 2025, OPM provided additional information to agencies through the Chief Human Capital Officers (CHCO) Council, an interagency forum to advise and coordinate

---

[1] Congress also created the Office of Special Counsel to, among other things, protect employees, applicants for employment, and former employees. 5 U.S.C. § 1212. The Special Counsel may receive and investigate complaints of prohibited personnel practices and may petition the MSPB for a stay of the personnel actions pending investigation, and based on the results of an investigation, seek corrective action from the Board. *Id.* § 1214.

on federal human resources matters. *See id.* ¶ 4 (a copy of that message is attached as Ex. B to the Ezell Declaration). Citing publicly available guidance from OPM and the MSPB, that message explained that "[a]n appointment is not final until the probationary period is over," and the probationary period is part of "the hiring process for employees." *Id.* The message further explained that a probationer is still an applicant for a finalized appointment to a particular position as well as to the Federal service. *Id.* "Until the probationary period has been completed," a probationer has "the burden to demonstrate why it is in the public interest for the Government to finalize an appointment to the civil service for this particular individual." *Id.*

On February 24, 2025, OPM issued guidance on evaluating performance of an employee during probationary periods. *See id.* ¶ 5 (a copy of the FAQs on Probationary Periods is attached as Exs. C & D to the Ezell Declaration]. The FAQs guidance explained that an employee's performance "must be viewed through the current needs and best interest of the government, in light of the President's directive to dramatically reduce the size of the federal workforce." *Id.* ¶ 6.

**B. Executive Order 14210**

On February 11, 2025, the President issued an Executive Order, "Implementing the President's 'Department of Government Efficiency' Workforce Optimization Initiative." Exec. Order No. 14210, https://public-inspection.federalregister.gov/2025-02762.pdf ("EO 14210"). Section 3, titled "Reforming the Federal Workforce to Maximize Efficiency and Productivity," identified directives under the headings "*Hiring Ratio*" (subpart a), "*Hiring Approval*" (subpart b), "*Reductions in Force*" (subpart c), and "*Rulemaking*" (subpart d). *Id.* Subpart c directs "Agency Heads [to] promptly undertake preparations to initiate large-scale reductions in force (RIFs), consistent with applicable law, and to separate from Federal service temporary employees and reemployed annuitants working in areas that will likely be subject to the RIFs." *Id.* Further, it directs that "[a]ll offices that perform functions not mandated by statute or other law shall be prioritized in the RIFs, including all agency diversity, equity, and inclusion initiatives; all agency initiatives, components, or operations that my Administration suspends or closes; and all components and employees performing functions not mandated by statute or other law who are not typically designated as essential during a lapse in appropriations as provided in

the Agency Contingency Plans on the Office of Management and Budget website." *Id*. Finally, it directs that "[t]his subsection shall not apply to functions related to public safety, immigration enforcement, or law enforcement." *Id*. EO 14210 further provides that agency heads "may exempt from this order any position they deem necessary to meet national security, homeland security, or public safety responsibilities[,]" *id*. § 4(b), and that it "shall be implemented consistent with applicable law and subject to the availability of appropriations." *Id*. § 5(b).

## C. Terminations of Certain Probationary Employees

Beginning on February 13, 2025, OPM, as well as some other federal agencies who are not named parties to this action, terminated a number of federal employees serving in their probationary or trial periods. *See, e.g.*, Mem. Op. & Order at 3, *Nat'l Treasury Emps. Union v. Trump*, No. 1:25-cv-420 (D.D.C. Feb. 20, 2025), ECF No. 28 (noting the termination of certain other probationary employees working at other federal agencies). OPM did not direct agencies to terminate any particular probationary employees based on performance or misconduct, and did not create a "mass termination program." Ezell Decl. ¶ 7. Rather, OPM asked agencies to engage in a focused review of probationers based on how their performance was advancing the agencies' mission, and allowed them at all times to exclude whomever they wanted. *See id*. Agencies made their own decisions about which probationary employees they wished to keep and which probationary employees they wished to terminate, and agencies took their own actions to terminate employees the agencies did not wish to retain. *See id*. Additionally, it was the responsibility of each agency to apply OPM and MSPB guidance, as well as applicable laws and regulations, as they made their own determinations to terminate or retain their probationary employees. *See id*.

On February 21, 2025, the Special Counsel requested a stay of the termination of six probationary employees. *See* Special Counsel's Initial Request for Stay or Personnel Action, *Special Counsel ex rel. Doe v. OPM*, No. CB-1208-25-17-U-1 (MSPB) (attached as Ex. 2) On February 25, 2025, the MSPB granted that request for a stay. *See* Non-Precedential Stay Oder, *Special Counsel ex rel. Doe v. OPM*, No. CB-1208-25-17-U-1 (MSPB) (attached as Ex. 3).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III. Procedural History

Plaintiffs, five employee unions and five organizations, sued on February 19, 2025, *see* Compl., ECF No. 1, and filed an amended complaint and a motion for temporary restraining order and to show cause of on February 23, 2025. *See* First Am. Compl, ECF No. 17 ("Am. Compl."); *Ex Parte* Mot. for TRO and Order to Show Cause, ECF No. 18 (Pls.' TRO Mot."). Plaintiffs challenge the termination of certain probationary employees. *See generally* Am. Compl. The union Plaintiffs allege that the terminations have prevented them from representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions. *Id*. ¶¶ 79-80. The union Plaintiffs further allege that have had to divert resources as a result of the terminations. *Id*. ¶ 81. The non-union Plaintiffs allege that they face imminent harm as a result of anticipated reductions and delays in services, or otherwise impair or disrupt the quality of services . *See, e.g., id.* ¶¶ 84–85, 87–88.

Plaintiffs allege that the termination of certain probationary employees violates: (i) the separation of power and is ultra vires; (ii) the APA because it is contrary to law and exceeds statutory authority; (iii) the APA because it is arbitrary and capricious; and (iv) the APA because OPM did not engage in notice and comment rulemaking. *See id.* ¶¶ 104–42 (Counts I – V). Plaintiffs seek declaratory and injunctive relief, including an order setting aside OPM's alleged order as unlawful, requiring OPM and others acting in concert with the agency to cease terminating probationary employees, and requiring OPM to rescind prior terminations of probationary employees. *See id*., Prayer for Relief.

Plaintiffs' TRO motion alleges an additional harm to the union Plaintiffs not contained in their amended complaint—that OPM's terminations have "precluded the Unions from performing their authorized role to represent employees in RIF proceedings." *Compare* Pls.' TRO Mot. at 22 *with generally* Am. Compl.

On February 25, 2025, this Court issued a Request for Information to Defendants. *See* Request for Info., ECF No. 26. In that request, the Court posed a number of questions and asked

Defendants to respond in this Opposition. The Court's questions and Defendants' answers are provided below:

> To what extent did OPM or individuals within OPM direct other agencies to terminate probationary employees based on performance or misconduct? If any such direction (or advice) is in writing, please provide the documents to the Court.

*Id.* ¶ 1.

OPM did not direct agencies to terminate probationary employees, based either on performance or misconduct. *See* Ezell Decl. ¶ 10. Rather, OPM reminded agencies of the importance of the probationary period in evaluating applicants' continued employment and directed agencies to identify all employees on probationary periods and promptly determine whether those employees should be retained at the agency. *See id.* Agencies were responsible for reviewing probationers' performance, and agencies were responsible for deciding which probationary employees to keep and to terminate. *See id.* Agencies were responsible for taking action to terminate their own employees they no longer wished to retain, and agencies were responsible for taking that action in accordance with all applicable laws and regulations. *See id.* The documents relevant to this question are described above and are attached to the Ezell Declaration as Exhibits A–D.

> How can an agency lawfully terminate a probationary employee on the basis of "performance" if that employee's performance was in fact satisfactory?

Request for Info. ¶ 2.

Probationers are applicants for employment with the burden to demonstrate their fitness for continued employment; there is no presumption that they will be retained. *See* Ezell Decl. ¶ 11. Agencies are obligated to use the probationary period to determine the fitness of probationary employees and must terminate employees' services if they fail to demonstrate fully their qualifications for continued employment. *See id.* This determination must take into account the existing needs and interests of government. *See id.* The probationary period is part of the hiring process; agencies are not required to hire every employee whose performance is "satisfactory." *Id.* An agency may determine, and OPM has determined, that only the highest-

performing probationers in mission-critical areas demonstrate the necessary fitness or qualifications for continued employment. *See id.*

## STANDARD OF REVIEW

Fed. R. Civ. P. 65 empowers district courts to issue temporary restraining orders. *See* Fed. R. Civ. P. 65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (standards applicable to TROs and preliminary injunctions "substantially identical" (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001)). A court should not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

## ARGUMENT

Plaintiffs ask for a temporary restraining order on the theory that OPM's actions are causing them irreparable harm by forcing them to divert resources. But that alleged injury does not constitute irreparable harm. Nor can Plaintiffs show that their claims fall within district-court jurisdiction or that they would prevail even if so, and thus they cannot establish the requisite likelihood of success to warrant relief. This Court should accordingly deny their motion.

## I.    Plaintiffs Cannot Show Irreparable Harm Absent a TRO.

Plaintiffs fail to establish that, absent a TRO, they will suffer irreparable harm. They first claim that the deprivation of a constitutional right constitutes irreparable harm. *See* Pls.' TRO Mot. at 27. But Plaintiffs fail to show that their claimed deprivation of rights is in any way a harm personally happening to them rather than the general public. *Accord W. Mining Council v.*

*Watt*, 643 F.2d 618, 623 (9th Cir.1981) (Article III injury in fact requires the plaintiff to have a "personal stake in the outcome of the controversy.").

Second, Plaintiffs claim irreparable harm based on the terminated federal employees' loss of employer-provided health benefits. *See* Pls.' TRO Mot. at 28. Again, this is not a harm to Plaintiffs, and they cannot maintain claims on behalf of third parties not before this Court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] [party] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Additionally, neither loss of employment nor resulting effects constitute irreparable harm. *See, e.g., Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1125 (E.D. Cal. 2008); *see also Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) ("[m]ere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.").

Third, Plaintiffs claim irreparable harm based on the supposedly impending loss of critical government services. *See* Pls.' TRO Mot. at 28. This claim is far too speculative to support a finding of irreparable harm. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014) (plaintiff "must establish a likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm."); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."). Plaintiffs have produced no credible evidence that terminations of federal employees have caused a disruption in critical government services; nor have they established a right to receive such services.

Fourth, Plaintiffs allege an irreparable injury to their organizational missions because they have not been able to comment on forthcoming RIF notices. *See* Pls.' TRO Mot. at 29. But, as Plaintiffs themselves admit, the terminations thus far were not undertaken pursuant to RIFs; nor have Plaintiffs come forward with any evidence that OPM will in fact deny them their right to comment on any such notices. This claim is also too speculative to support a finding of irreparable harm.

Finally, Plaintiffs contend that their claimed monetary harms are irreparable because they seek relief under the APA. *See id.* at 30. But Plaintiffs fails to show how those claimed violations have caused any personal injury to them.

## II.  Plaintiffs Cannot Show a Likelihood of Success on the Merits of their Claims.

Likewise, Plaintiffs cannot establish likelihood of success on the merits for at least three reasons: they lack standing; their claims are statutorily channeled away from district-court review; and they are unlikely to prevail on the merits in any event.

### A.  Plaintiffs Lack Standing to Pursue Many of Their Claims.

Plaintiffs lack standing because their claimed injuries are far too speculative to satisfy Article III's standing elements. To establish standing, a plaintiff must show: (i) an "injury in fact," that is, a violation of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). As the party invoking federal jurisdiction, Plaintiffs "bear[] the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

To establish injury in fact, a plaintiff must show that the defendant's action affects him or her in a "personal and individual way," *Lujan*, 504 U.S. at 560 n.1, rather than being a "generalized grievance," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). A plaintiff must show more than a "possible future injury"; he or she must show that harm has actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). And "threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

1. **The Non-Union Plaintiffs Lack Standing.**

The non-union Plaintiffs fail to show injury in fact. Their claims of injury are instead based on nothing more than a chain of unsupported and conclusory inferences that the termination of probationary employees will somehow lead to "anticipated reductions and delays in services," Am. Compl. ¶¶ 84–85, "imminent harm to [their] mission to protect and restore wildlife and public lands," *id.* ¶ 86, "likely . . . impair[ment of] the quality of . . . services," *id.* ¶ 87, or "the risk of severe disruptions to . . . services," *id.* ¶ 88. None of these speculative and conclusory assertions is sufficient to show that a harm has actually occurred or is "certainly impending." *Accord Whitmore*, 495 U.S. at 158 (citation omitted). Absent such a showing, the non-union Plaintiffs lack standing to maintain this action and therefore will not be able to succeed on their claims.

2. **Plaintiffs Lack Standing to Pursue their Claim of a Procedural Injury.**

Plaintiffs lack standing to pursue their procedural injury claim. As a preliminary matter, they assert that that they have been deprived of a right to comment on a notice of proposed RIFs. *See* Pls.' TRO Mot. at 29. But their complaint includes no such allegations. *See generally* Am. Compl. Courts have repeatedly denied TRO motions based on allegations and claims for relief unrelated to the underlying complaint. *See, e.g., Allen v. Reid*, No. 15-cv-1905, 2016 WL 3136859, at *4 (D. Minn. June 3, 2016) ("[T]o the extent that [plaintiff] seeks injunctive relief for alleged mistreatment and retaliation that are unrelated to the claims in his Amended Complaint, he is not entitled to such relief."); *Clark v. Bank of Am. N.A.*, No. 14-cv-232, 2015 WL 1433834, at *8 (D. Idaho Mar. 27, 2015); *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or. Oct. 4, 2010). This Court should do so here as to this theory.

Additionally, Plaintiffs lack standing to pursue such a claim. Plaintiffs fail to make any showing, beyond their own say so, that the termination of probationary employees thus far was carried out pursuant to a RIF. Likewise, Plaintiffs fail to make any showing that, when RIF notices are issued, they will be denied the opportunity to comment then. Their procedural injury claim arising from an alleged deprivation of any right to comment on future RIFS thus is too speculative to support standing. *Accord Clapper*, 568 U.S. at 409.

1    Finally, Plaintiffs lack standing because they cannot show that their claimed injuries are

2    redressable. They ask the Court to order agencies to rescind probationary removals and reinstate

3    removed employees. But, apart from OPM, no other federal agency is a party here, leaving the

4    Court without the power to order those agencies to take any action. Thus, Plaintiffs cannot show

5    that an order of this Court would likely grant their requested relief, rendering their claimed

6    injuries non-redressable here.

7    **B.  The FSL-MRS and the CSRA Preclude District-Court Jurisdiction Over Plaintiffs'**
     **Claims.**

8    Neither the union Plaintiffs nor the non-union Plaintiffs can show that their challenge to

9    

10   the termination of certain probationary employees can be heard in federal district court.

11   1. The union Plaintiffs cannot show that district courts have jurisdiction over their claims.

12   *See AFGE v. Trump*, 929 F.3d at 752; Mem. Op. at 10–16, *Nat'l Treasury Emps. Union*

13   *("NTEU") et al. v. Trump et al.,* No. 25-cv-420 (D.D.C. Feb. 20, 2025); Mem. Op. at 2-5,

14   *AFGE, et al., v. Ezell, et al.*, No. 25-cv-10276 (D. Mass. Feb. 12, 2025), ECF No. 66.

15   In *AFGE v. Trump*, numerous federal unions asserted broad constitutional and statutory

16   challenges to a set of three Executive Orders issued by President Trump during his first

17   administration that would have enacted substantial changes to the way federal unions operated.

18   On the government's appeal from a district court decision largely in the unions' favor, the D.C.

19   Circuit reversed the underlying decision on jurisdictional grounds, holding that the FSL-MRS's

20   comprehensive, reticulated administrative-judicial review scheme channeled jurisdiction entirely

21   away from the federal district courts, requiring that federal labor disputes be heard through the

22   Federal Labor Relations Authority ("FLRA") review scheme, with judicial review to be provided

23   in a federal court of appeals following the conclusion of administrative proceedings before the

24   FLRA. *See AFGE v. Trump*, 929 F.3d at 754–61. Applying the logic of that holding, two district

25   courts addressing challenges to almost these exact same presidential and agency actions as those

26   before this Court have concluded that the courts the FSL-MRS likewise channeled jurisdiction

27   away from federal district courts and instead required the unions to pursue their claims before the

28   FLRA. *See NTEU v. Trump, supra*, at 10–16; *AFGE v. Trump*, *supra*, at 2–5.

The same jurisdictional outcome should obtain here. Similar to the plaintiff unions' broad challenge to the three labor EOs at issue in *AFGE v. Trump*, the union Plaintiffs here contend that the OPM actions and EO 14210 have caused them to divert resources. *See* Pls.' TRO Mot. at 13. But Plaintiffs make no effort to distinguish *AFGE v. Trump*, *see id.*, which should amount to an effective concession that its holding applies with full force here.

2. The non-union Plaintiffs also fail to show that their claims can be heard in federal district court. The CSRA provides the exclusive means of redressing employment disputes involving federal employees, *see United States v. Fausto*, 484 U.S. 439, 455 (1988)), even when those disputes involve constitutional claims. *See Elgin*, 567 U.S. at 10–15. Even if the non-union Plaintiffs could establish standing to challenge probationary removals, such claims must be pursued before the MSPB (if at all). The CSRA thus imposes an "implied preclusion of district court jurisdiction," *id.* at 12, and "precludes courts from providing supplemental remedies," *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018). This is the exact conclusion the Ninth Circuit reached in *Veit v. Heckler*, 746 F.2d 508, 510-11 (9th Cir. 1984). Instead of trying to distinguish the facts of their case from those of *AFGE v. Trump*, *Fausto* or *Elgin*, Plaintiffs suggest that *Veit* is no longer controlling after the Supreme Court's opinion in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). *See* Pls.' TRO Mot. at 26. Plaintiffs' contention is without merit.

Plaintiffs first contend that the claims of their non-union members cannot be channeled before the FLRA because they are not unions. *See* Pls.' TRO Mot. at 25. But Plaintiffs ignore the fact that, under the CSRA, Congress has provided for all challenges to federal agency employment proceed before the FLRA *or* the MSPB, unless a more specific statutory scheme applies. Thus, even if the non-union Plaintiffs have standing and can maintain a cause of action challenging the termination of probationary employees, Congress has, contrary to Plaintiffs' assertion, *see id.*, established an agency to hear such claims.

Plaintiffs also contend that their claims cannot be channeled before the FLRA or the MSPB because they are not suing the agencies that terminated the probationary employees. *See id.* But that suggests nothing more than that Plaintiffs have brought suit against the wrong party.

Plaintiffs' reliance on *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir.) (en banc), *judgment vac'd on other grounds*, 144 S. Ct. 480 (2023) (mem.), *see* Pls.' TRO Mot. at 25, is thus inapposite.

In arguing that their federal labor claims can be heard in district court notwithstanding the *Thunder Basin* doctrine—and the squarely on-point *AFGE v. Trump*—Plaintiffs try to analogize their claims to the sort of "structural" constitutional challenge the Supreme Court held in *Axon Enters., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 180, 195-96 (2023), not to be channeled away from district court jurisdiction. But that attempt fundamentally misses the mark; even post-*Axon*, the sort of claims that Plaintiffs raise remain properly channeled away from district court.

Congress has broadly empowered the judiciary to hear "claims 'arising under' federal law" "by way of 28 U.S.C. § 1331's grant of jurisdiction[.]" *Axon*, 598 U.S. at 185. Nonetheless, "[a] special statutory review scheme, … may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Id.* Thus, when a statute sets out "a particular procedure and time period" for challenging agency actions, a plaintiff may be precluded from relying on a district court suit. *See N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1135–36 (D.C. Cir. 2015). Where Congress has done so implicitly, courts determine whether it intended to preclude particular claims by assessing whether "(i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'" *Jarkesy v. SEC*, 803 F.3d 9, 15 (D.C. Cir. 2015) (quoting *Thunder Basin*, 510 U.S. at 207, 212).

The first step under *Thunder Basin*—Congress's intent to preclude—is satisfied here: Congress established a detailed statutory scheme for adjudicating federal labor disputes. The FSL-MRS provides for "administrative and judicial review" regarding disputes between employees and their federal employers and disputes between unions representing those employees and the federal government. *AFGE*, 929 F.3d at 752. Congress decided, through the FSL-MRS, that federal labor disputes must first be administratively exhausted before the FLRA. Judicial review, if any, is available only in a court of appeals. *See id.* (citing 5 U.S.C. §§ 7105, 7123(a), (c)); *see also* 5 U.S.C. § 7703(b) (judicial review in Federal Circuit or other court of

appeals). "Congress typically chooses . . . review in a court of appeals following the agency's own review process" when designing an implicit preclusion scheme. *Axon*, 598 U.S. at 185. That is exactly what this scheme includes. Accordingly, as the D.C. Circuit has repeatedly recognized, the FSL-MRS precludes jurisdiction in the district courts over federal union disputes. *See AFGE*, 929 F.3d at 754. This "enormously complicated and subtle scheme to govern employee relations in the federal sector" does not permit a district court runaround. *See id.* at 755 (quoting *AFGE v. Sec'y of the Air Force* ("*Air Force*"), 716 F.3d 633, 636 (D.C. Cir. 2013)). The same is true for the CSRA. *See Elgin*, 567 U.S. at 10–15; *Fausto*, 484 U.S. at 455.

Turning to the second *Thunder Basin* step—whether particular claims are of the type Congress intended to be reviewed in this scheme—the Court must consider "three considerations designed to aid in that inquiry, commonly known now as the *Thunder Basin* factors." *Axon*, 598 U.S. at 900. The factors are: (i) "could precluding district court jurisdiction foreclose all meaningful judicial review of the claim"; (ii) "is the claim wholly collateral to the statute's review provisions"; and (iii) "is the claim outside the agency's expertise?" *Id.* (internal quotation marks, citation, and alteration omitted). These "considerations" are ultimately merely guideposts to "best [] understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question." *Id.*

All three *Thunder Basin* factors are satisfied here. Both statutory schemes provide meaningful judicial review over Plaintiffs' claims. This is so even if the schemes do not allow the unions "to obtain 'pre-implementation' review" "or immediate relief barring all agencies from implementing" probationary removals. *See, e.g., AFGE v. Trump*, 929 F.3d at 755; *NTEU v. Trump, supra*. Indeed, meaningful judicial review is still available for purposes of this prong even if the scheme "ma[kes] it *impossible* to obtain particular forms of review or relief." *AFGE v. Trump*, 929 F.3d at 756. Here, as in *AFGE v. Trump*, parties can bring certain claims through the administrative process "in the context of concrete . . . disputes." *Id.* at 757.

Similarly, if any Plaintiff thinks that probationary removals conflict with any federal rule, guidance, or statute, it may assert that within one of the review schemes. *See, e.g., Marshall v. HHS*, 587 F.3d 1310, 1318 (Fed. Cir. 2009) (reversing based on an erroneous statutory

interpretation); *Lyons v. Dep't of Veteran's Affairs*, 273 F. App'x 929, 931 (Fed. Cir. 2008) (considering whether a regulation was violated); *Fed. L. Enf't Officers Ass'n v. Ahuja* ("*FLEOA*"), 62 F.4th 551, 560 (D.C. Cir. 2023) (noting challenges to OPM guidance through the MSPB system).

Additionally, contrary to Plaintiffs' suggestion, their asserted claims are not wholly collateral. This Court must "examine whether the action 'at bottom' seeks a substantive determination that falls within the statutory regime's exclusive scope." *FLEOA*, 62 F.4th at 563 (D.C. Cir. 2023) (quoting *Heckler v. Ringer*, 466 U.S. 602, 614 (1984)). As the Supreme Court recently explained, a claim may be sufficiently collateral when the "claims do not relate to the subject of the [administrative] actions[.]" *Axon*, 598 U.S. at 193. There, the Court noted that "separation-of-powers claims" brought against the administrative agency were entirely unrelated to the "auditing practices," and "business merger" that constituted the subject matter of the agency actions. *See id.* Nor were they related to the "procedural or evidentiary matters an agency often resolves on its way to a merits decision." *Id.* No such separation exists here. Plaintiffs challenge certain probationary removals. But those are all the kinds of federal labor issues that lie at the heart of the FSL-MRS and the CSRA.

Third, and for similar reasons, the agency may bring its expertise to bear on many of the questions raised. Indeed, *Elgin* directly addresses the point in the adjacent CSRA context. As the Court noted: "preliminary questions unique to the employment context" include fact questions about a "resignation" (there whether it "amounted to a constructive discharge") as well as "statutory or constitutional claims that the MSPB routinely considers[.]" *Elgin*, 567 U.S. at 22–23. Even if some of the claims could move beyond the administrative expertise of the FLRA or the MSPB, these "threshold questions" may "alleviate [the other] concerns." *Id.*

## C.  Plaintiffs' *Ultra Vires* and Separation of Powers Claims Lack Merit.

Plaintiffs' ultra vires and separation of powers claims lack merit. Plaintiffs assert that certain probationary removals are ultra vires because OPM has no constitutional or statutory authority to undertake such terminations. *See* Pls.' TRO Mot. at 15.  They also assert that the challenged actions violate the separation of powers. *See id.* Neither assertion has merit.

Courts have recognized that an equitable cause of action for *ultra vires* review may be available in instances where, because Congress has failed to provide a cause of action, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also Leedom v. Kyne*, 358 U.S. 184, 189 (1958). That cause of action is not available, however, where there is some other "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny . . . District Court jurisdiction[.]" *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991).

These principles apply straightforwardly here to make *ultra vires* review unavailable to Plaintiffs. First, the FSL-MRS and CSRA establish exclusive procedures for review of employment claims against the federal government. *See Elgin*, 567 U.S. at 10; *AFGE*, 929 F.3d at 756. This precludes courts from providing supplemental remedies, including through ultra vires review. And second, the exclusive review procedures of the FSL-MRS and CSRA will provide Plaintiffs with a meaningful and adequate opportunity for judicial review of their claims. *See Elgin*, 567 U.S. at 21 (finding "constitutional claims can receive meaningful review within the CSRA scheme"); *AFGE*, 929 F.3d at 757 ("[U]nions here are not cut off from review and relief. Rather, they can ultimately obtain review of and relief from the executive orders by litigating their claims through the statutory scheme in the context of concrete bargaining disputes."). Thus, there is no basis for this Court to entertain Plaintiffs' claim for non-statutory *ultra vires* review in this case.

Even if Plaintiffs could surmount those problems, their *ultra vires* claim would still fail. To prevail on an *ultra vires* claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *accord Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) (noting that ultra vires action must involve "a plain violation of an unambiguous and mandatory provision of the statute" that "is of a summa or magna quality"). Allegations of constitutional error do not establish ultra vires action. *See Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 68 n.6

(D.D.C. 2019) (Jackson, J.), *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ("[A] constitutional claim is separate from an ultra vires claim."). Neither do claims that "simply involve a dispute over statutory interpretation." *Lundeen*, 291 F.3d at 312 (quoting *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997)). Rather, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege that official is "not doing the business which the sovereign has empowered him to do"). This is a "very stringent standard," rendering ultra vires claims "essentially a Hail Mary pass" that "in court as in football, . . . rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).

Plaintiffs cannot meet this high bar because the Executive Order and OPM's guidance do not violate any clear statutory restriction on the President's or OPM's authority, and instead constitute a lawful exercises of the President's and OPM's well-established constitutional and statutory authority to regulate the federal workforce. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). That power includes "general administrative control of those executing the laws." *Id.* at 2197-98 (quoting *Myers v. United States*, 272 U.S. 52, 163–64 (1926)). Accordingly, absent congressional action purporting to limit his authority, the President has inherent constitutional authority under Article II to act as chief executive officer of the Executive Branch, determining how best to manage the Executive Branch, including whom to hire and remove, what conditions to place on continued employment, and what processes to employ in making these determinations. Indeed, the EO expressly instructed agencies to comply with existing law. *See* EO 14210, *supra*. Likewise, OPM was acting well within its authority to issue guidance on how agencies should carry out the President's directive. Plaintiffs' *ultra vires* claims fail.

Plaintiffs' separation of powers claims likewise fail. First, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims." *Dalton v.*

*Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id*. at 471. Rather, the Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at 472. In reaching this conclusion, the Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id*. (collecting cases). It explained that the Constitution is implicated only if executive officers rely on it as an independent source of authority to act or if the officers rely on an unconstitutional statute. *Id*. at 473 & n.5.

This case thus sharply contrasts with *Youngstown Sheet & Tube Co. v. Sawyer*, in which the President had directed the Secretary of Commerce to seize the nation's steel mills relying solely upon "the aggregate of his powers under the Constitution," and conceded the absence of statutory authority. 343 U.S. 579, 585-87 (1952). Plaintiffs have not suggested that either OPM's regulations or its statutory authority for promulgating these regulations are themselves unconstitutional. *Dalton*'s reasoning thus applies here and refutes Plaintiffs' argument that they are likely to succeed on their separation-of-powers claim. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51-54 (D.D.C. 2020) (rejecting separation-of-powers claim based on Appropriations Clause under *Dalton* because "[a]t bottom, this is just an allegation that [executive officials] exceeded their statutory authority"). This case concerns "simply" whether Defendants have "exceeded [their] statutory authority" and "no constitutional question whatever is raised"—"only issues of statutory interpretation." *Dalton*, 511 U.S. at 473-74 & n.6 (citation omitted).

In contending that the challenged actions violate the separation of powers, Plaintiffs are advancing the same argument the Supreme Court rejected in *Dalton*. Plaintiffs' alleged separation-of-powers claims hinge entirely on, respectively, whether Defendants acted in accordance with OPM regulations regarding agency reductions in force (and their concomitant statutory authorization), and whether Section 3(c) on its face is inconsistent with existing statutes. The outcome of these questions depends on resolution of statutory and regulatory claims

rather than any unique separation-of-powers principles. If Plaintiffs' argument were accepted, then every garden-variety action by a federal agency alleged to be in violation of a statutory provision could also for the same reason be alleged to violate the constitutional separation of powers. "Under *Dalton*, [Plaintiffs] cannot recast these types of claims as constitutional." *Ctr. for Biological Diversity*, 453 F. Supp. 3d at 53; *see Dalton*, 511 U.S. at 474 (stating that the "distinction between claims that an official exceeded his statutory authority, on the one hand, and claims that he acted in violation of the Constitution, on the other, is too well established to permit this sort of evisceration.").

**D.  Plaintiffs' APA Claims are Unlikely to Succeed.**

Plaintiffs cannot maintain their APA claims because the CSRA provides the exclusive remedy for federal employment claims, *see Fausto*, 484 U.S at 455; *see also FLEOA*, 62 F.4th at 557–67; *Fornaro v. James*, 416 F.3d 63, 66–69 (D.C. Cir. 2005), and because the APA does not supply a cause of action for their claims. The APA only authorizes judicial review of "final agency action for which *there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added); *see also U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1815 (2016) ("Even if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court"). If a plaintiff has an adequate legal remedy, the APA does not provide a cause of action. *See, e.g., Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 709 (5th Cir. 2010) (affirming the dismissal of APA claim because plaintiff had an adequate remedy). In this case, Plaintiffs have an adequate remedy because the union Plaintiffs can proceed before the FLSA and the non-union Plaintiffs, to the extent they can have standing to maintain any cause of action at all, can only challenge employee terminations before the MSPB. The APA thus does not supply a cause of action for Plaintiffs to maintain their claims.

Nor would Plaintiffs' arbitrary and capricious claims be likely to succeed. As a preliminary matter, the CSRA precludes district court review of APA arbitrary and capricious claims. *See FLEOA*, 62 F.4th at 561–62. Moreover, under the APA, a court "may not substitute its own policy judgment for that of the agency." *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). The termination of probationary employees is a policy judgment of each

agency. OPM did not direct agencies to terminate any particular probationary employees based on performance or misconduct, and did not create a "mass termination program." Ezell Decl. ¶ 7. Rather, OPM asked agencies to engage in a focused review of probationers based on how their performance was advancing the agencies' mission, and allowed them at all times to exclude whomever they wanted. *See id*. Agencies made their own decisions about which probationary employees they wished to keep and which probationary employees they wished to terminate, and agencies took their own actions to terminate employees the agencies did not wish to retain. *See id*. Additionally, it was the responsibility of each agency to apply OPM and MSPB guidance, as well as applicable laws and regulations, as they made their own determinations to terminate or retain their probationary employees. *See id*.

Moreover, probationary employees are applicants for employment with the burden to demonstrate their fitness for continued employment; there is no presumption that they will be retained. *See id*. ¶ 11. Agencies are obligated to use the probationary period to determine the fitness of probationary employees and must terminate employees' services if they fail to demonstrate fully their qualifications for continued employment. *See id*. This determination must take into account the existing needs and interests of government. *See id*. The probationary period is part of the hiring process; agencies are not required to hire every employee whose performance is "satisfactory." *Id*. An agency may determine, and OPM has determined, that only the highest-performing probationers in mission-critical areas demonstrate the necessary fitness or qualifications for continued employment. *See id*. Thus, even if the termination of probationary employees was subject to the APA's arbitrary and capricious standard of review (which it is not), the agencies would be able to articulate a rational basis for their decisions.

Finally, even if Plaintiffs had standing to pursue their notice and comment claim, the CSRA also precludes district court review of that claim as well. *See FLEOA*, 62 F.4th at 562–63. Plaintiffs' APA claims are thus likely to fail.

### III. The Public Interest Does Not Favor an Injunction.

Plaintiffs' asserted harms are outweighed by the harm to the government and public interest that would result from the requested relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009)

1    (noting that the balancing of harms and public interest requirement for emergency injunctive

2    relief merge when "the Government is the opposing party").

3    **IV. Any Relief Should Be Limited.**

4         For the reasons above, the Court should deny Plaintiffs' motion in its entirety. But even if

5    the Court determines that a preliminary injunction is appropriate, it should limit its scope in at

6    least three ways. Nationwide relief would be improper because "injunctive relief should be no

7    more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."

8    *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Relying on

9    that principle, the Ninth Circuit has repeatedly vacated or stayed nationwide injunctions. *See,*

10   *e.g.*, *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *California v.*

11   *Azar*, 911 F.3d 558, 584 (9th Cir. 2018). To prevent ordering "the government to act or refrain

12   from acting toward nonparties in the case," *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022)

13   (Sutton, C.J., concurring), the Court should limit any relief to any party before it that is able to

14   establish its entitlement to preliminary injunctive relief.

15                                    **CONCLUSION**

16        For the foregoing reasons, the Court should deny Plaintiffs' motion for a temporary

17   restraining order and to show cause.

18

19

20

21

22

23

24

25

26

27

28

Dated: February 26, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
(415) 436-7200
kelsey.helland@usdoj.gov

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director

s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
james.todd@usdoj.gov

*Counsel for Defendants*