PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
yuri.s.fuchs@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>The Hon. William H. Alsup |

**INTRODUCTION**

Unsatisfied with the relief provided by this Court's Amended Temporary Restraining Order ("TRO"), *see* Minute Entry (Feb. 27, 2025); Tr. of Hrg., ECF No. 44; Mem. Op. & Order Amending TRO ("Mem. Op."), ECF No. 45, Plaintiffs seek leave to file a second amended complaint that would reinvent their lawsuit as one brought against 22 Executive Branch agencies. That would-be reinvention runs counter to the Court's express caveat at the March 6, 2025 status conference that any proposed amendment should include only agencies Plaintiffs believe necessary to be joined as "relief defendants," and that Plaintiffs should not seek to add agencies against whom claims would be jurisdictionally channeled away from district court. Consistent with that caveat, the Court should deny Plaintiffs' motion for leave to amend because their motion is futile, joinder of these additional agencies would unfairly prejudice the government, and Plaintiffs cannot properly join these additional agencies as defendants.

**BACKGROUND**

On February 19, 2025, Plaintiffs American Federation of Government Employees, AFL-CIO ("AFGE"), American Federation of State County and Municipal Employees, AFL-CIO ("AFSCME"), AFGE Local 1216, and United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFLCIO ("UNAC/UHCP"), AFGE Local 2110, Main Street Alliance, Coalition To Protect America's National Parks, Western Watersheds Project, Vote Vets Action Fund Inc., and Common Defense Civic Engagement filed this lawsuit against Defendants Charles Ezell and the Office of Personnel Management ("OPM"). *See* Compl., ECF No. 1. Plaintiffs soon after filed an amended complaint, naming the same set of defendants, while moving *ex parte* for a temporary restraining order and order to show cause. *See* Am. Compl., ECF No. 17; Pls.' TRO Mot., ECF No. 18. Plaintiffs' claims rest on allegations that OPM directed federal agencies to terminate probationary employees and that this was an *ultra vires* act that exceeded the scope of OPM's statutory authority and otherwise violated the Administrative Procedure Act. *See* Am. Compl. ¶¶ 104–42; Pls.' TRO Mot. at 15–22.

On February 27, 2025, this Court held a hearing on Plaintiffs' motion, at which it issued a temporary restraining order ("TRO"). *See* Hrg. Tr. at 67:9–68:9. As amended, the Court held that

"OPM's January 20 memo, February 14 email, and all other efforts by OPM to direct the termination of employees . . . are unlawful, invalid, and must be stopped and rescinded." Mem. Op. & Order Amending TRO, at 24, ECF No. 45. This Court ordered OPM to provide written notice of its order to the Bureau of Land Management ("BLM"), Department of Defense ("DOD"), Fish and Wildlife Service ("FWS"), National Park Service ("NPS"), Small Business Administration ("SBA"), and Veterans Administration ("VA"). *See id*. However, as part of its written Opinion on the TRO, the Court held that it likely lacked jurisdiction to hear the claims filed by the union plaintiffs because claims by those plaintiffs must be channeled through the Federal Service Labor-Management Relations Statute ("FSLMRS") and the Civil Service Reform Act ("CSRA"). *Id.* at 11-12.

The government provided notice of this Court's order to DOD on February 27, 2025; OPM provided notice of this Court's order to BLM, NPS, SBA, and the VA on February 28, 2025, and provided notice to DOD and the FWS on March 3, 2025. *See* Decl. of Yuri S. Fuchs ¶ 3. Also on March 3, 2025, OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies (Revised March 4, 2025), attached as Ex. 1 to Decl. of Yuri S. Fuchs.

On March 4, 2025, Plaintiffs moved for leave to file a Second Amended Complaint ("SAC"), proposing to add some 43 additional defendants including 21 additional federal agencies and their agency heads, each of which Plaintiffs allege was ordered by OPM to terminate probationary employees. *See* Pls.' Redline of SAC ¶¶ 34–76, ECF No. 49-1. Plaintiffs' proposed SAC includes all original Plaintiffs, including the union plaintiffs that this Court held that it is unlikely to hold jurisdiction over, *see* Mem. Op. & Order at 13, but also adds five non-profit organizations and the State of Washington. *See* Pls.' Redline of SAC ¶¶ 25–30.

**LEGAL STANDARD**

Rule 15(a) of the Federal Rules of Civil Procedure states that, after a prior amendment, a party may amend its complaint only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(2). The court should "freely grant leave to amend when justice so requires." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (cleaned up). However, leave to amend is not to be granted automatically. *See id.*; *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). "Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). The party opposing amendment bears the burden of showing these factors. *See DCD Programs*, 833 F.2d at 186.

**ARGUMENT**

The Court should deny leave to amend for three reasons: (1) further amendment would be futile; (2) the government would be prejudiced by Plaintiffs' proposed amendment, especially so shortly before the upcoming evidentiary hearing; and (3) Plaintiffs seek to join improper parties.

**I.    Further Amendment Would Be Futile.**

    **A.    OPM's Revised Guidance Renders the Case Moot.**

Plaintiffs' attempt to join additional Executive Agency Branch as defendants would be futile because this lawsuit is now moot. A case becomes moot if "'changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). Where a plaintiff seeks injunctive relief, a case "is normally moot upon the termination of the conduct at issue" unless "there is a likelihood of recurrence." *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004). Such a case is "no longer a 'Case' or 'Controversy' for purposes of Article III," "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726, 727 (2013).

1         Plaintiffs' Complaint and Amended Complaint challenge actions undertaken by OPM in January and February of this year relating to guidance on identifying and terminating certain employees at agencies across the Executive Branch who are or were still in their probationary or trial periods. *See generally* Compl.; Am. Compl. On February 27, 2025, this Court issued a TRO, holding, as amended, that "OPM's January 20 memo, February 14 email, and all other efforts by OPM to direct the termination of employees . . . are unlawful, invalid, and must be stopped and rescinded." Mem. Op. & Order Amending TRO at 24. This Court then ordered OPM to provide written notice of its order to BLM, DOD, FWS, NPS, SBA, and VA. *See id*.

        The government provided notice of this Court's order to DOD on February 27, 2025; OPM provided notice of this Court's order to BLM, NPS, SBA, and the VA on February 28, 2025, and provided notice to the FWS and further notice to DOD on March 3, 2025. *See* Fuchs Decl. ¶ 3. Also on March 3, 2025, OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies (Revised March 4, 2025).

        OPM's actions comply with this Court's Memorandum Opinion and Order and render this case moot. This Court should "presume the government is acting in good faith" when it makes declarations of this type. *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). The circumstances here fully warrant that presumption.

        At a minimum, OPM's actions preclude any additional further award of preliminary injunctive relief under well-settled principles of equitable discretion. Even if cessation of conduct does not moot a case, a plaintiff must still bear the burden of demonstrating that equitable relief is warranted, a showing that requires "more than the mere possibility" of recurrence "which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also TRW, Inc. v. F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981) (discussing difference between standards and burdens of proof). To obtain equitable relief, a plaintiff must establish a "likelihood of substantial and immediate irreparable injury." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). That "requirement . . . cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. And here Plaintiffs' proposed Second Amended Complaint makes no allegations that any further relief is necessary given the Court's TRO order and the additional OPM guidance. In fact, while Plaintiffs might argue that the case is not moot because agencies could still believe that they are bound by OPM's guidance to terminate probationary employees, their own new allegations show that agencies are, in fact, reinstating previously terminated probationary employees. *See* Pls.' Redline of SAC ¶ 141 (noting the reinstatement of previously terminated employees by NSF). Moreover, the previously issued FAQs already clarified to agencies that they are to use their own judgment in evaluating a probationary employee's performance "through the current needs and best interest of the government, in light of the President's directive to dramatically reduce the size of the federal workforce." ECF No. 37-2 at 1. Agencies simply are not bound by OPM's guidance, and the recent notices and revised guidance only clarify that further, mooting this lawsuit in the process.

**B. Plaintiffs' Claims Must Be Channeled Through the Administrative Processes.**

Neither the union Plaintiffs nor the non-union Plaintiffs can show that their challenge to the termination of certain probationary employees can be heard in federal district court.

a. This Court has already determined that it "likely . . . lacks jurisdiction to hear the union plaintiffs' claims for the reasons stated in recent denials of similar claims made by unions representing federal employees." Mem Op. at 11 (citing *Nat'l Treasury Emps. Union v. Trump*, No. 25-CV-420, 2025 WL 561080, at *5–8 (D.D.C. Feb. 20, 2025) (denying TRO); *Am. Foreign Serv. Ass'n, Inc. v. Donald Trump*, No. 1:25-CV-352 (CJN), 2025 WL 573762, at *8–11 (D.D.C. Feb. 21, 2025) (dissolving TRO); *Am. Fed'n of Gov't Emps. v. Ezell*, No. CV 25-10276, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025) (dissolving TRO)). As the Court explained, "[t]he union plaintiffs' attempts to distinguish their instant claims from those channeled to the FLRA and MSPB in *National Treasury*, *American Foreign Service*, and *Ezell* are unconvincing, and the analysis laid out in those decisions applies with equal force here: The union plaintiffs and their members must adjudicate their claims through the FLRA and MSPB." *Id.* at 12.

Defendants' Opposition to Plaintiffs' Motion for Leave to File Second Amended Complaint
3:25-cv-1780-WHA

5

The Court's holding on this point was correct; its ruling at the TRO stage was well-supported by Ninth Circuit and other appellate authority. *See Veit v. Heckler*, 746 F.2d 508, 510-11 (9th Cir. 1984); *see also, e.g.*, *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5 (2012); *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 560 (D.C. Cir. 2023); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019); *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013).

Plaintiffs' Proposed SAC retains the original union Plaintiffs. *See* Pls' Redline of SAC ¶¶ 15–19. But amendment as to them would be futile, because the Court lacks jurisdiction to hear their claims.

b. The non-union Plaintiffs' claims must also be channeled through the administrative processes, rendering amendment as to them futile as well. While the Court ruled otherwise in the preliminary context of the TRO (on the basis of highly expedited briefing), the government respectfully submits that Congress's determination to channel such personnel-related claims through the administrative processes deprives the Court of jurisdiction here.

First, non-union organizations may seek leave to intervene or participate as *amici curaie* in MSPB and FLRA proceedings. *See* 5 C.F.R. §§ 1201.34, 2422.8. As the MSPB regulations make clear, "[a]ny person, organization or agency may, by motion, ask the judge for permission to intervene," and "[a] motion for permission to intervene will be granted where the requester will be affected directly by the outcome of the proceeding." *Id.* § 1201.34(c). With limited exceptions, "[i]ntervenors have the same rights and duties as parties." *Id.* § 1201.34(d). And "[a]n amicus curiae is a person or organization who, although not a party to an appeal, gives advice or suggestions by filing a brief with the judge or the Board regarding an appeal." *Id.* § 1201.34(e). Thus, non-union Plaintiffs may raise their claims in the MSPB and FLRA proceedings in which federal employees and their unions are already litigating similar issues. *See, e.g.*, ECF No. 36.[1]

---

[1] Moreover, there are mechanisms for obtaining classwide relief in MSPB proceedings. *See* 5 C.F.R. § 1201.27 ("One or more employees may file an appeal as representatives of a class of employees."); *Anselmo v. King*, 902 F. Supp. 273, 276 (D.D.C. 1995) ("The MSPB has the power to certify a class.").

But even if the non-union Plaintiffs did not have such mechanisms to raise their claims, that would still not be enough to overcome Congress's determination that claims such as those presented here must be channeled through the MSPB and FLRA. As the Supreme Court has held, "[w]here a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not *subject* to the administrative process, is strong." *Sackett v. EPA*, 566 U.S. 120, 130 (2012) (emphasis in original). For this proposition the Court cited *Block v. Community Nutrition Institute*, which held that a statutory scheme requiring claims brought by milk *producers* to go through an administrative process precluded judicial review of an APA claim brought by milk *consumers*. 467 U.S. 340, 346-48 (1984). As the Court wrote in *Community Nutrition*, "[r]espondents would have us believe that, while Congress unequivocally directed [milk] handlers first to complain to the Secretary that the prices set by milk market orders are too high, it was nevertheless the legislative judgment that the same challenge, if advanced by consumers, does not require initial administrative scrutiny. There is no basis for attributing to Congress the intent to draw such a distinction." *Id.* at 347; *see also United States v. Fausto*, 484 U.S. 439, 443 (1988) (noting the CSRA meant to provide the comprehensive remedial scheme for evaluating adverse personnel actions).

Finally, Plaintiffs' attempt to add so many federal agencies as defendants undermines their earlier argument that OPM would not be a proper respondent in an administrative proceeding for the employees of other agencies. *See* Tr. of Feb. 27, 2025, Hrg. at 42:3-8. The government explained at the hearing that employees of non-OPM agencies could nevertheless raise OPM's alleged actions in their MSPB and FLRA claims. *Id.* 31:17 – 33:13. In any event, Plaintiffs' attempt to add these agencies as Defendants now only underscores that those same agencies could instead be parties in the administrative proceedings.

## II. Defendants Would Be Prejudiced by Plaintiffs' Proposed Amendment.

Plaintiffs' motion for leave to file a Second Amended Complaint should also be denied because Defendants would be prejudiced by the sheer number of defendants Plaintiffs seek to add. Despite the fact that terminations of certain probationary employees were known by

Plaintiffs when they filed their initial and First Amended Complaint, Plaintiffs initially chose only to name OPM and its Acting Director as defendants in their first two pleadings. Now Plaintiffs seek to multiply the number of defendants by twenty-two (22), *see* Pls.' Redline of SAC ¶¶ 32–76, despite the *gravamen* of their claims focusing on OPM's alleged conduct.

Plaintiffs' amendment would clearly prejudice Defendants, forcing them to defend 22 different agencies sprawled across the federal government despite Plaintiffs' allegations focusing largely on one agency's conduct and despite this Court's instruction that Plaintiffs should not seek to add agencies against whom claims would be jurisdictionally channeled away from district court. Defending such a sprawling lawsuit would substantially overburden Defendants while not materially advancing Plaintiffs' claims. For this reason, Plaintiffs' motion for leave to amend should be denied on the separate grounds of prejudice.

### III. Plaintiffs' Attempted Joinder of New Defendants Is Improper.

Plaintiff seeks leave to add 21 additional federal agencies as Defendants and six new Plaintiffs. Neither is proper, and leave to amend should be denied on this basis as well. *See, e.g.*, *Jones v. CertifiedSafety, Inc.*, No. 17-cv-2229, 2019 WL 758308, at *6 (N.D. Cal. Feb. 20, 2019) (denying leave to amend in part based on improper joinder of defendants in the amended complaint).

#### 1. New Defendants.

Under Federal Rule of Civil Procedure 20(a)(2), permissive joinder of multiple defendants is only appropriate where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Where there is a misjoinder, "[o]n motion or own its own, the court may at any time, on just terms, add or drop a party," so long as "no substantial right will be prejudiced by the severance." *See Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir.1997); *see also* Fed. R. Civ. P. 21.

Joinder is improper here because Plaintiffs must separately seek relief from each agency based on that agency's independent decisionmaking. As all sides agree, each agency primarily has its own authority for hiring and terminating its employees. While OPM undisputedly has the

power to issue guidance and has certain delegated authorities to direct terminations in limited circumstances, *see, e.g.*, 5 C.F.R. § 351.205, OPM does not have the power to direct agencies to conduct large-scale terminations of probationary federal employees. Rather, each agency was legally obligated to—and did—undertake its own termination decisionmaking process. Thus, apart from the relief related to OPM's role that the Court has already granted, Plaintiffs' right to any further relief from any particular agency will turn on "transactions and occurrences" that are unique to that agency. Joinder of so many disparate defendants is therefore improper here. *See Coughlin*, 130 F.3d at 1350 ("[T]he existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence."). Indeed, the termination procedures vary between the putative defendant agencies. The DOD, for example, must undertake a specific review process to terminate civilian employees that other agencies do not need to do. *See generally* DoD Civilian Personnel Management System: Reduction in Force, DoDI 1400.25-V351 (Revised June 24, 2021).

Moreover, similarity in the factual backgrounds of the claims proffered for joinder "is the key factor." *See, e.g., Smith v. Cnty. of Santa Clara*, No. 5:11-cv-5643, 2013 WL 3242346, *4 (N.D. Cal. June 25, 2013). But the factual circumstances of each agency's decisionmaking differ dramatically here. It was widely reported that SBA began terminating probationary employees on February 7—several days *before* OPM allegedly "ordered" agencies to do so. *See, e.g.*, Fortune, *Trump's small business department fired staff and said it was an accident—then emailed the next day re-firing them* (Feb. 12, 2025), https://fortune.com/2025/02/12/sba-firing-mistake-terminated-confusion-probation-staff. At the same time, several other agencies—including DOJ—declined to initiate terminations of probationary employees for weeks after the alleged OPM actions at issue here. *See, e.g.*, Bloomberg Law, *DOJ Tells Leaders They Can Fire Certain Probationary Lawyers* (Feb. 27, 2025), https://news.bloomberglaw.com/us-law-week/doj-gives-leaders-go-ahead-to-fire-certain-probationary-lawyers.

Especially in the light of the Court's TRO ruling and OPM's subsequent guidance, it is clear that Plaintiffs' claims for any further relief depend on the independent decisionmaking activity of nearly two-dozen separate federal agencies. The joinder of such defendants would be

improper, and therefore the Court should deny leave to amend.

### 2. New Plaintiffs.

Under Federal Rule of Civil Procedure 20(a)(2), permissive joinder of multiple plaintiffs is only appropriate where "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a) (1). "Even once these requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quotation omitted). A review of the added five organizational Plaintiffs in the proposed Second Amended Complaint demonstrates that they all have different priorities, memberships, and purported injuries as to different agencies. *See* Pls.' Redline of SAC ¶¶ 157–62. Meanwhile, the State of Washington adds injuries that it highlights as *sui generis* to its status as a sovereign such as its partnership with federal agencies. *See id.* ¶ 163. Thus, the underlying facts differ as to the new plaintiffs.

So too do the legal inquiries. Namely, the standing analysis will differ as to the State of Washington in this action given that its standing cannot be evaluated, like the other Plaintiffs, under principles of organizational standing, but will instead need to be evaluated under dissimilar principles of state standing. *See, e.g.*, *Massachusetts v. E.P.A.*, 549 U.S. 497, 518 (2007) ("States are not normal litigants for the purposes of invoking federal jurisdiction."). And a review of the State of Washington's allegations indicates it may be bringing a distinct kind of *parens patriae* theory of standing, *see* Pls.' Redline of SAC ¶ 164 (raising the harm of Washington's residents) as a sovereign that an organization cannot bring. *Cf. Murthy v. Missouri*, 603 U.S. 43, 76 (2024) ("States do not have standing as *parens patriae* to bring an action against the Federal Government.") (internal quotation marks & citation omitted). For this reason, amendment to add the new plaintiffs in the proposed Seconded Amended Complaint is also inappropriate.

### CONCLUSION

The Court should deny Plaintiffs' motion for leave to file a Second Amended Complaint.

Dated: March 7, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

JAMES D. TODD, JR.
Senior Trial Counsel

s/ Yuri S. Fuchs
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
yuri.s.fuchs@usdoj.gov

*Counsel for Defendants*