Pages 1 - 26

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William Alsup, Judge

```
AMERICAN FEDERATION OF        )
GOVERNMENT EMPLOYEES, AFL-CIO, )
et al.,                       )
                              )
          Plaintiffs,         )
                              )
  VS.                         )   NO. C 25-01780-WHA
                              )
UNITED STATES OFFICE OF       )
PERSONNEL MANAGEMENT, et al., )
                              )
          Defendants.         )
_____)
```

San Francisco, California
Thursday, March 6, 2025

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES**: (Appearances via Zoom.)

For Plaintiffs:

                    ALTSHULER BERZON LLP
                    177 Post Street, Suite 300
                    San Francisco, California 94108
          BY:   **STACEY M. LEYTON, ATTORNEY AT LAW**
                **DANIELLE E. LEONARD, ATTORNEY AT LAW**

For Defendants:

                    UNITED STATES ATTORNEY'S OFFICE
                    450 Golden Gate Avenue - Box 36055
                    San Francisco, California 94102
          BY:   **KELSEY J. HELLAND, ASST. U.S. ATTORNEY**

Reported Remotely By:  Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG
                       Official Reporter, CSR No. 12219

<u>**Thursday - March 6, 2025**</u>                           **1:05 p.m.**

P R O C E E D I N G S

---o0o---

    **THE CLERK:**  Before we get started, one announcement:

Any recording of this proceeding by video, audio, or

screenshots is strictly prohibited by this Court.

    We will get started momentarily.

(Pause in proceedings.)

    **THE CLERK:**  This court is now in session.  The

Honorable William Alsup is presiding.

    Calling Civil Action 25-1780, American Federation of

Government Employees, et al. versus United States Office of

Personnel Management, et al.

    Counsel, please state your appearances for the record,

beginning with counsel for plaintiffs.

    **MS. LEONARD:**  Good afternoon, Your Honor.  Danielle

Leonard from Altshuler Berzon for the plaintiffs.

    **MS. LEYTON:**  Good afternoon, Your Honor.  Stacey

Leyton also from Altshuler Berzon, also for the plaintiffs.

    **MR. HELLAND:**  And good afternoon, Your Honor.  This is

Assistant United States Attorney Kelsey Helland for the

defendants.

    **THE COURT:**  All right.  Angie, is that it?

    **THE CLERK:**  That's it, Your Honor.

    **THE COURT:**  Okay.  Well, let's get started.

1    And I apologize if I get cut off.  It was very hard for me

2    to connect up here; and I'm far away from San Francisco, so

3    let's make good use of the time.

4        What is the need for this hearing?  Go ahead, Plaintiffs.

5        Hello?

6        **MS. LEYTON:**  It appears that Ms. Leonard has frozen,

7    so I will -- I will begin.

8        We have asked for this status conference because we have

9    indication that defendants do not intend to produce Mr. Ezell

10   at the upcoming hearing, as was ordered; and so we are

11   attempting to raise that issue with Your Honor.

12       It looks like Ms. Leonard has now rejoined.

13       **MS. LEONARD:**  Yes.  I'm very sorry.  Somehow it -- it

14   removed me -- something removed me from the -- from the Zoom

15   session.  I apologize.

16       And now I've been re-added, although that's my father's

17   name there, "Daniel Leonard"; but we'll fix that.  So, Your

18   Honor, I apologize for that.  I'm not sure what happened, but

19   we all have technical issues right now.

20       I'm assuming from Ms. Leyton's statement that you asked us

21   to explain what we are asking for.

22       **THE COURT:**  Yes.  Well, all right.  So let's hear what

23   the Government has to say.

24       **MR. HELLAND:**  Yes.  Thank you, Your Honor.

25       In short, no final decision has yet been made whether to

1    produce Mr.Ezell for the scheduled evidentiary hearing or to

2    seek relief from the Court's order, which would be done well in

3    advance of that upcoming hearing.

4         So it is not, Your Honor, the case that we've represented

5    we will not be producing Mr.Ezell, rather simply no decision

6    has been made from that.

7         As far as the timing goes, Your Honor, I do want to convey

8    that the Government is willing to consent to let the TRO remain

9    in place for two more weeks so that any issues related to

10   scheduling or other logistical or legal issues concerning the

11   upcoming hearing can be addressed.  But, in short, Your Honor,

12   it's not true that we have represented to the plaintiffs that

13   we won't be producing Mr. Ezell.

14        **THE COURT:**  Well, when do you think you will make a

15   decision?

16        **MR. HELLAND:**  Your Honor, by Monday.  We would ask

17   that by Monday we either confirm that we'll be producing

18   Mr. Ezell and any other witnesses that plaintiffs have

19   identified, or that we would move for any relief by that time

20   as well.

21        **THE COURT:**  Well, you will recall that when the

22   subject of an evidentiary hearing first came up, because of the

23   difference of Ezell versus the other declarations, I thought

24   you were quite enthusiastic and expectant about the evidentiary

25   hearing and him coming to testify -- testify.  So I am a little

 1   surprised by this turn of events.

 2       But here's the thing:  Is the issue that -- a burden on

 3   him to get on an airplane and come across the country?  Is that

 4   the issue?

 5           MR. HELLAND:  There -- Your Honor, at a very high

 6   level, there are multiple issues that we are actively

 7   considering.  I'm not authorized to take a position on any

 8   particular issue, but there's just a host of issues that we're

 9   working through related to the hearing.

10           THE COURT:  Well, here is -- because time is short and

11   this is Thursday.  Monday we will have burned up three or four

12   more days.  I have thought about the problem, and if the

13   problem is that he doesn't -- he's busy and doesn't want to

14   take the time to come in person, then I suggest that the

15   plaintiffs could come to Washington and take his deposition;

16   two hours should be sufficient.  And that could, then, be --

17   you could take your part of the deposition and they could take

18   their part of the deposition.  And -- but the plaintiffs

19   deserve two hours themselves, so -- plus whatever time you

20   would use.

21       So that would save him being on an airplane, coming to

22   San Francisco.  And then we could use his deposition in lieu of

23   the live testimony.  So I give that to you as an option.

24       And I suppose that another option could be that he could

25   appear remotely at the hearing and be examined by both sides

 1  from either his home or his office.  That would also save time.

 2  So those are -- those would be ways to reduce the burden of

 3  appearing at an evidentiary hearing.

 4      Now, you do need to remember this, though:  You yourself

 5  put forward his declaration.  In fact, it's the only

 6  declaration that the Government put forward and there is a

 7  serious fact issue.  And it is highly unusual for any party in

 8  litigation to try to get away with they get their say but no

 9  cross-examination.

10      One possibility would be that his -- his declaration would

11  be struck if he refuses to be examined under oath by the other

12  side.  You just can't have it both ways.

13      And I'm sure you understand what I'm saying.  This is not

14  like discovery, where the other side wants to go take

15  depositions of someone else who is not in -- this is someone

16  you yourself advanced as a declarant; and that is an important

17  thing for the Government to keep in mind.

18      Okay.  Monday -- what time on Monday will you let us know

19  your position?

20      **MR. HELLAND:**  We would ask for 5:00 p.m. Pacific,

21  Your Honor.

22      **MS. LEONARD:**  Your Honor, if I may be heard on the

23  timing of this?

24      **THE COURT:**  Yes.  Go ahead.

25      **MS. LEONARD:**  We would ask that the Government be --

1  inform of us of its position today.  They've had since last

2  Thursday, and what we're talking about is the Government's

3  decision to defy this Court's order that you entered last

4  Thursday.

5      It is -- the issues that they are raising are not issues

6  regarding inconvenience.  They are considering whether to

7  appeal Your Honor's order.  And they've had that order since

8  last Thursday.  Mr. Helland did not raise any objection at the

9  hearing at all.  So this is by way, I suppose, of

10 reconsideration without even know knowing what these issues

11 are.

12     We are here today because time is of the essence, and with

13 respect to Mr. Helland and his clients, we need to know whether

14 we are going to be able to examine this witness or if the

15 declaration is going to be struck or what the result of this

16 is.  There's no reason -- absolutely no reason why the

17 Government cannot make a decision on its position with respect

18 to Mr. Ezell, and whether it is going to comply with this

19 Court's lawful order.

20     **THE COURT:**  Wait.  I thought they -- the TRO they did

21 comply with that.

22     **MR. HELLAND:**  Yes, Your Honor.

23     **THE COURT:**  Isn't is that what -- so what order are

24 they not complying with?

25     **MS. LEONARD:**  The order to produce to Mr. Ezell at the

```
 1   upcoming hearing.  You ordered that on the record at the TRO
 2   hearing, and they are considering not complying.
 3           THE COURT:  Look -- go ahead.
 4           MR. HELLAND:  If I may, Your Honor.  I don't mean to
 5   speak over you but --
 6           THE COURT:  Please, go ahead.
 7           MR. HELLAND:  As we've made clear at this hearing and,
 8   I think, to plaintiffs' counsel previously, we are not
 9   contemplating simply ignoring Your Honor's order or not
10   complying with it; we will either comply or we will seek relief
11   from it in advance of the hearing.  I want to be very clear
12   about that.
13        As far as the timing goes, Your Honor, as I've already
14   said we would -- the Government would be willing to extend the
15   TRO for two more weeks to give more time for these issues to --
16   to play out.
17           THE COURT:  What's wrong with giving them that time?
18        They're willing to extend the TRO.  I think the --
19   you know, it is the Government; they have to consult with
20   various arms of the government to decide what their strategy
21   will be.  And they will give us the answer by 5:00 on Monday,
22   and then if need be, we will extend the TRO by two weeks -- up
23   to two weeks.  So -- yes.
24           MS. LEONARD:  Apologies.
25           THE COURT:  Go ahead.
```

1          **MS. LEONARD:**  Apologies.  It's very hard to -- on the

2     Zoom to know when to -- if I'm interrupting.  I apologize.

3          Your Honor, the issue with that is the whole reason we're

4     here is to ask for immediate injunctive relief to prevent the

5     ongoing harm that has been caused by OPM's unlawful actions.

6          Extending the TRO is certainly a minimum, if we're going

7     to move the PI hearing.  But we are asking for further relief

8     both with respect to other agencies and with respect to the

9     actual relief ordered by the Court.

10         At the TRO hearing, Your Honor, you -- and in your order,

11    indicated that you didn't believe that reinstatement could be

12    ordered based on the fact that the agencies were not joined.

13    We have now, very quickly, moved to join the agencies that have

14    received OPM's orders and have taken, themselves, unlawful

15    action terminating these employees.

16         The harm that is being caused is snowballing every day in

17    the loss of services, and even a two-week extension will cause

18    irreparable harm, Your Honor.  So we're prepared to move

19    forward as quickly as possible.  These are simply delay tactics

20    by the Government that has had your order since last Thursday.

21    And they're -- they're not even offering a good-cause reason,

22    Your Honor, for the -- for why they can't give you -- give you

23    their position and why they need this extension.  Their only --

24    their only reason is they haven't decided yet whether to

25    appeal.

1        And they -- the Government can make and its lawyers can

2   make that decision very quickly, Your Honor, and they should

3   have already decided that by now, frankly.

4        **THE COURT:**  Well, listen, I'm a former member of the

5   Solicitor General's Office, back when Jimmy Carter was

6   president, and in order to appeal, they have to get the SG's

7   approval.  So that's just one -- that's one step they've got to

8   go through; but there are other arms of the Department of

9   Justice and that -- they would -- and also the Office of

10  Personnel Management.

11       I don't think you're being -- I think you're exaggerating

12  the need and not appreciating the Government's need to sort it

13  out.  So I'm going to -- I disagree with you.

14       The Government -- don't wait until 5:00 p.m., I'm going to

15  give you until noon on Monday --

16       **MR. HELLAND:**  Understood.

17       **THE COURT:**   -- noon West Coast time on Monday.

18       And by that point, you need to either -- if you're going

19  to seek relief, that's when you have to do it.  You can't just

20  send a letter saying, "We're going to do it."  You've got to

21  file your motion.

22       Do -- I think that's what you mean; right?

23       **MR. HELLAND:**  Yes.

24       **THE COURT:**  You'll seek relief on Monday.

25       **MR. HELLAND:**  Yes, absolutely, Your Honor.  Yes.

1          **THE COURT:**  Now, it could be -- let's just make sure

2     we all understand.

3          If you -- let's say that you were to object to the order

4     to produce Ezell, and then go up on appeal.  The other part of

5     the -- the rest of the evidentiary hearing could go forward.

6     For example, plaintiffs, I believe from the hearing, are going

7     to present witnesses who can tell us what was said in the

8     telephone conference call that took place between the two --

9     the January 20 and the February 14th; I think, it was on

10    February 13.

11         I expect that's what the plaintiffs will do.  That's what

12    I had asked them to do because I would like to know what

13    happened in that phone call.  That part could go forward even

14    if -- even if Ezell does not testify.

15         So I -- I'm -- right now, I'm inclined to keep the -- keep

16    the hearing date even if Ezell does not testify.  But I will

17    listen and read your papers.

18         One other thing I want to say to the plaintiffs.  When I

19    said put -- you had permission to bring a motion to add

20    agencies as parties, I was -- I didn't use the right phrase.

21    But I was -- meant relief defendants.  In other words, they

22    should only be parties to the limited extent necessary to give

23    relief to something that OPM is found to have done wrong.

24         But what -- there's no way that I'm going to allow you to

25    bring in all these agencies and then, if other terminations

1    occur that are independent of OPM, that the agency does on its

2    own without -- without OPM's direction, then that's for another

3    lawsuit.  That's not for Old Bill to deal with.  That has to be

4    a brand-new lawsuit somewhere else.

5         My case, this case is OPM, OPM, OPM, and Ezell, Ezell,

6    Ezell, and the agencies only to the limited extent that they

7    are necessary to be relief defendants.

8         So I hope I'm making myself clear on that.  It just cannot

9    evolve into a gigantic lawsuit against all terminations.  I

10   am -- regardless of whether OPM is involved in the -- in the

11   case.

12        Do you understand what I'm saying?

13        **MS. LEONARD:**  I do, Your Honor.  But one point of

14   clarification if I may.

15        **THE COURT:**  Sure.

16        **MS. LEONARD:**  Because we have a certain number of

17   terminations that have happened to date, and I understand and

18   hear Your Honor and what you are saying about terminations that

19   are coming down the line and might be happening from this

20   moment forward.  But we have a certain number of terminations

21   that have happened to date and our understanding of the

22   Government's position is they are defending against the

23   unlawfulness of those terminations in two different ways.  They

24   are saying the agencies did it already and that OPM -- that,

25   you know, contrary to our evidence that OPM did it, and if they

1    did it, it was lawful.

2    So for the terminations that have happened to date, we --

3    we had amended the complaint to -- to state a claim, Your

4    Honor, even if they are right that the agencies did this to

5    date, those are still unlawful terminations, Your Honor.

6    **THE COURT:**  No, no.  If they're unlawful, those go to

7    the Merit Systems Protection Board.

8    That is kind of the classic case that -- where I would not

9    have subject matter jurisdiction.  The -- so I am not agreeing

10   with you on that.

11   This case started out and should remain OPM-centric, and

12   OPM has got to be the one who did something unlawful in order

13   for you to get relief in this case.  It just can't be that

14   we're going to bring in all these other agencies, even if --

15   even if the agency did something independent, had nothing to do

16   with OPM, and let's say that it was in violation of the Civil

17   Service Reform Act, that's a clear case that goes to the Merit

18   Systems Protection Board.

19   So I am -- I'm not agreeing with you on that.

20   All right.  But I just -- I felt like, when your motion

21   came in, that -- this case is moving fast, so that's -- I'll

22   rule formally on it in due course; but that is my major

23   concern.

24   **MS. LEONARD:**  Understood, Your Honor.

25   **THE COURT:**  In terms of relief defendants -- relief

1    defendants, no problem.  That is -- that is a legitimate

2    addition.

3         Okay.  Now, to come back, have we done all the damage we

4    can do for now or can I -- do I need to stay on the line?

5         **MS. LEONARD:**  Your Honor, we do have two more issues

6    to raise with you today, here.

7         And the first is with respect to -- we understand that

8    we'll be getting the Government's position with respect to

9    whether or not they're going to try to challenge and appeal

10   your order with respect to Mr.Ezell.

11        They have produced the list of the participants on the

12   phone -- the February 13th phone call between OPM and the

13   agencies.  We have identified four of the individuals on that

14   list, as Your Honor ordered at the -- at the hearing last

15   Thursday.  And the Government has also not confirmed that they

16   will produce those individuals for the hearing.

17        They are also not giving us an answer on that issue.  And

18   we obviously need to know whether they're going to do that in

19   order to be able to cross-examine them and get to the truth of

20   what happened with respect to these OPM orders.

21        So that is issue Number 1.

22        There's a second issue, Your Honor.  The New York Times

23   reported today that one of the individuals, the chief human

24   capital officer of the IRS, that Your Honor cited in -- in the

25   order after the plaintiffs put forward the evidence of that

person's public statements regarding OPM's direction, was

placed by the defendants on admin- -- was placed by its agency

on administrative leave.  And it's very concerning, Your Honor,

that that occurred after Your Honor's order identifying that

evidence.

We would like to subpoena that person to come testify at

the PI hearing next week, Your Honor.  And we would like

the Court's permission to do so.

So there are two issues:  The four people from the list;

and the IRS -- they call them "chicos" -- the IRS "chico" who

the Government put on administrative leave after her statements

were cited in Your Honor's order.

MR. HELLAND:  May I briefly be heard on these?

THE COURT:  Sure.

MR. HELLAND:  So I had envisioned that the first point

was already covered by Your Honor's order.  I think, Your Honor

commented on it or at least a related point already.  So I

would just propose that our response to both of these points be

presented by the same noon Monday deadline.  We can either

include them in our papers or separately respond to plaintiffs

directly on these points.  But we would just do so at that same

time, Your Honor.

THE COURT:  Well, before I agree to that, is it true

that the IRS person was put on administrative leave?

MR. HELLAND:  This is literally the first I'm hearing

1    of it, Your Honor.  I had not heard that before plaintiffs'

2    counsel mentioned it just now.

3            **MS. LEONARD:**  We can represent to Your Honor that we

4    believe it to be true.

5            **THE COURT:**  Well, have you subpoenaed the people that

6    you want?

7        You should go ahead and subpoena them to appear at the

8    hearing.  Don't wait for the Government to agree or not to

9    agree.  You -- you're a big firm.  You have vast resources.

10   You should go subpoena those people.

11       But, in addition, I want the Government to tell me on

12   Monday at noon that -- whether they're going to produce them

13   voluntarily at the hearing or at a deposition or by -- remotely

14   at -- at the evidentiary hearing.

15           **MR. HELLAND:**  Yes, Your Honor.  Understood.

16           **THE COURT:**  Do the plaintiffs have any other witnesses

17   to that telephone call that are cooperative with you?

18           **MS. LEONARD:**  So the list of -- we would need to

19   subpoena individuals.

20       So, Your Honor, we understood that your -- you ordered the

21   Government already to produce up to four of the individuals on

22   that list, so that's what we have asked them to do.  Any other

23   individuals who are current government employees we would need

24   to subpoena.

25           **THE COURT:**  I don't remember how I worded my order.

1    So if I ordered it, okay, I'll stand by that.  I just don't

2    remember now; and I can't say that you're reading what I said

3    correctly.

4         I would like to have those people at the hearing, and I

5    would ask the Government to please cooperatively bring them.

6    But if you're going to insist on a subpoena, then -- then I

7    would at least ask you to accept service of the subpoena.

8         **MR. HELLAND:**  I hear you, Your Honor; and we will set

9    our response on all of this forward at -- on noon on Monday.

10        **MS. LEONARD:**  So, Your Honor, you can see the problem

11   with the timing that we have here, because we have had -- so

12   the order was in the transcript of the hearing on -- on

13   Thursday.  I think Your Honor was quite clear.

14        And when we talked about that telephone call as to

15   their -- their need to give us the list of individuals and then

16   our ability to call up to four of them at the hearing, we have

17   complied with that and we are quite concerned, again, that what

18   we're hearing hear today is that the Government is shifting

19   positions and is not -- is considering not making those

20   individuals available in response to this Court's order.

21        We would -- we would -- we -- we're concerned that if we

22   wait until Monday to get their position, Your Honor, that with

23   respect to both Mr. Ezell and, now, these four other witnesses,

24   that it will be difficult to conduct any hearing on -- on

25   Thursday if the Government is refusing to put forward any of

1    the witnesses for that hearing.

2        And -- and the timing, again, is being driven by what we

3    see as an escalating harm every single day.  And we would like

4    the opportunity to --

5        **THE COURT:**  Is there any -- I mean, there were several

6    agencies that I -- that -- for which you had standing and that

7    I ordered OPM to rescind the memos.  And I -- from reading the

8    press it seemed to me that that has been done.

9        Is there an agency where they did not rescind and an

10   agency is just going ahead and -- under some weird belief that

11   OPM can direct them to terminate people?

12       I don't think so.

13       **MS. LEONARD:**  The Department of Defense, Your Honor.

14   The Department of Defense has continued to terminate people

15   using the template from OPM.  We can provide you with the

16   proof.

17       **THE COURT:**  Yes, but is it -- the template is one

18   thing.  But is Department of Defense doing this under

19   compulsion from OPM?

20       **MS. LEONARD:**  We believe that they are.  And if it

21   looks like a duck, walks like a duck, and quacks like a duck,

22   just because you put a paper on it that says "Oh, it's the

23   agency's discretion" -- which is what OPM did this week -- that

24   doesn't mean it's not a duck, Your Honor.

25       They are absolutely still acting under compulsion from OPM

```
 1   and all of the --

 2            THE COURT:  Oh, I don't know.  You're going to have to

 3   have proof of that.

 4        Which one of your plaintiffs has standing to sue the DOD?

 5            MR. HELLAND:  I believe the veterans' organizations.

 6            THE COURT:  No, I thought they were suing -- for the

 7   VA -- the Veterans Administration, I totally agree.  But for

 8   Department of Defense --

 9            MS. LEONARD:  I believe, that was the basis of

10   Your Honor's order last week, yes.

11        And I would also say, Your Honor, if I may, that all of

12   the terminations to date we will prove to Your Honor were done

13   because of centralized instructions from OPM.  And the question

14   in this case, absolutely, is:  How do we effectuate relief and

15   stop the irreparable harm that those terminations are causing?

16            THE COURT:  You should be -- you should be getting

17   your evidence ready to prove that.  It's not just your say-so.

18   I believe that you probably suspect that sincerely, but that's

19   a strong statement that you just made, and you should come to

20   the evidentiary hearing with some witnesses who can bear that

21   out.

22        And for the moment, though, the witnesses that are under

23   the control of the Government, they have a legitimate -- I

24   don't want to say "right," but interest that I'm going to give

25   them time to consider and talk with others in the government.
```

 1  So I'm not -- I'm sticking with noon on Monday for the

 2  Government to respond.

 3       And, yes, you will have to possibly move heaven and Earth

 4  on a short leash -- okay? -- timetable.

 5       While you're doing all that, I have a criminal trial

 6  starting on Monday.  I will have to interrupt the criminal

 7  trial to hear your case -- which I will do, but I -- you know,

 8  your case is not the only case that I have, and not the only

 9  case the Government has.  So I'm -- I'm sorry.  You're asking

10  for too much and I'm denying -- I'm denying a more expedited

11  schedule for the Government.  They --

12       **MS. LEONARD:**  I understand --

13       **THE COURT:**  They're going to go tell us and make their

14  motion, if they're going to do it at all, Monday at noon.  And

15  today is Thursday and -- I'm sorry, but I think they need the

16  time to do it.  That's the only -- it's fair.

17       Now, with respect to the IRS person, that would be deeply

18  disturbing if somebody was terminated for that reason.  I'm not

19  saying I have jurisdiction, even, over it, but it would greatly

20  disturb me if compliance with my orders turns out to get people

21  on administrative leave.

22       So I'm going to order the Government attorney now to

23  investigate this and report by tomorrow at noon by letter.

24       You can do that.

25       **MR. HELLAND:**  And, Your Honor, is that a letter that

```
 1    you want to --

 2              THE COURT:  To me -- to me and counsel to tell me --

 3    to tell me is it true --

 4              MR. HELLAND:  Thank you, Your Honor.

 5              THE COURT:  -- that they put him on administrative

 6    leave, and did this lawsuit have anything whatsoever to do with

 7    that administrative leave.

 8              MR. HELLAND:  Thank you, Your Honor.

 9        I just want to be clear.  This is not something that would

10    be filed on a public docket, but will be submitted to Your

11    Honor --

12              THE COURT:  No, it will be on the public document.

13              MR. HELLAND:  Oh, okay.

14              THE COURT:  On the public docket.  Yes.

15        You can do it by letter or by -- by formal noticed

16    statement that would -- just a report to the Court on whether

17    it's true and -- or if it's not fully true, to what extent is

18    it true.

19              MR. HELLAND:  Understood, Your Honor.

20              THE COURT:  All right.  Now, does the plaintiff have

21    anything more?

22              MS. LEONARD:  With respect to the hearing next week --

23    so I think we understand absolutely and we appreciate all the

24    balancing of considerations and -- going into Your Honor's

25    order; and we will wait for the Government's position.
```

1        And if they agree to make the people available, there is

2    no problem; we will be ready to go on Thursday, and we will

3    confirm that.

4        If they refuse to make the four individuals on the list

5    who have the direct knowledge of the telephone call between OPM

6    and the agencies -- which they have now admitted occurred, and

7    if they refuse to make Mr. Ezell available, notwithstanding the

8    declaration, should we submit our -- I'm asking what happens

9    then, Your Honor, in terms of the Court's preferred procedures

10   next.

11       Because we will need to, I believe, discuss the

12   implications for the evidentiary hearing and the PI,

13   including -- so should we file a response to the Government's

14   position by noon the next day?  What would your -- what would

15   the Court prefer?

16       **THE COURT:**  Yeah, that would be a good step to take.

17       But my plan is to have the hearing no matter what.

18   Even -- unless the Court of Appeals directs me not to have the

19   hearing, we're going to have the hearing.

20       And even if the Government witnesses don't show up, that

21   could just result in striking the declaration.  That would be a

22   home run for you, the plaintiffs, because then the -- they

23   would have no proof and the -- so I'm going to have the

24   hearing.  I'm going to hold this hearing in person in

25   San Francisco, and whoever's witnesses come, I'm going to

1   listen to them.

2      And we will also have argument over where we go next, and

3   whether or not the TRO is merely extended or strengthened or

4   whatever.

5      But, you know, you have access, Plaintiffs, to witnesses,

6   I'm sure, that are not beholden to the Government, and you

7   ought to be thinking about bringing them to the hearing and

8   presenting them live.

9          **MS. LEONARD:**  Your Honor --

10         **THE COURT:**  Give the other side notice of who they're

11  going to be so they can prepare to cross-examine.  But you

12  should be prepared to bring your witnesses.

13     I'm sorry.  Go ahead.  I interrupted you.

14         **MS. LEONARD:**  No, I interrupted you, Your Honor.  I

15  apologize.

16     Part of the problem here is that the Government has taken

17  the actions that it has taken in secrecy, Your Honor.  And the

18  participants on the phone calls and Zoom meetings between OPM

19  and the agencies are government employees.  And we are asking

20  the Government, per Your Honor's orders, to make those people

21  available.

22     So it is difficult for us to provide Your Honor with

23  witnesses with direct knowledge of the content.  We certainly

24  have circumstantial evidence -- but direct knowledge of content

25  of those communications -- which is really at the heart of it

 1   and what Your Honor was seeking to hear the truth on -- without

 2   the Government making those individuals available.

 3        **THE COURT:**  Well, all right.  Yes.  I see your

 4   problem.

 5        And one thing you might be considering to do is a -- a

 6   prompt -- by "prompt" I mean within a few hours -- filing

 7   within the Court of Appeals to get your side of the equation

 8   before the Court of Appeals.  And -- so if that's where the

 9   issue is going to wind up, that's where -- listen here.

10        I want to be very clear.  When I say the Government has a

11   legitimate need to balance all these -- have their

12   conversations, please do not misrepresent that to the Court of

13   Appeals.  I in no way think that it would be proper for the

14   Government to put forward Mr. Ezell as a witness and refuse to

15   let him be cross-examined.  Zero.

16        Do not say to the Court of Appeals that -- when I use the

17   words "a legitimate," I meant that you have a legitimate need

18   to consult within the Government; but on the merits of what

19   you're trying to, I totally disagree.  I think these people

20   should be made available to be -- so that we can get at the

21   truth of what happened here.

22        So that's -- let's be very clear.  Don't misrepresent what

23   I'm saying in this phone call on the merits that -- I stand by

24   what I said earlier.  They should show up next Thursday until

25   such time as I either change the order or the Court of Appeals

1    makes me do so.

2         MS. LEONARD:  Your Honor, in -- Your Honor had

3    suggested earlier with respect to Mr. Ezell that we -- one of

4    Government's alternatives, if there really is a scheduling

5    issue, would be to make him available in D.C. for deposition.

6         With respect to the other four individuals, the plaintiffs

7    would be willing to go to D.C. and take their depositions early

8    next week so that could be used at the -- at the preliminary

9    injunction hearing as well.  Of course, we prefer --

10         THE COURT:  That would be very much appreciated.  I

11    think that might solve some of the logistics problems, if there

12    are -- if it really is logistics.

13         MS. LEONARD:  And we, of course, would prefer if the

14    Government would make them available, as they have been ordered

15    to do.

16         But I wanted to make it very clear that the plaintiffs are

17    very willing to do that and so if the objection is to bringing

18    them here to this Court -- which, of course, this Court has

19    venue and jurisdiction over this case and the ability to order

20    their appearance.  But if that is the objection, that is not an

21    objection that the Government should be raising.

22         THE COURT:  Well, if they -- yes, that's fine.  Thank

23    you for that.

24         That could, in certain circumstances, solve the problem.

25    It depends on what is motivating the Government, and the

1  Government doesn't want to say yet.

2      So all right.  Are we done?

3          **MR. HELLAND:**  I believe so, Your Honor.

4          **MS. LEONARD:**  I believe that is all from -- Your

5  Honor, we understand that you have authorized us to subpoena

6  the IRS CHCO who has --

7          **THE COURT:**  Yes, please do.

8          **MS. LEONARD:**  Thank you.

9          **THE COURT:**  Please do.  And if the Government will

10  not, by noon tomorrow, accept service, the Government attorney,

11  then you have the Court's permission to track her down and

12  serve her in person.

13      Now, there is a thing called the *Touhy* regulations.  I

14  think it's T-O-U-H-Y.  So you better look into that.  Maybe

15  that only applies to the DOJ, but you better look and see

16  what -- if you have to go through some administrative hoops to

17  subpoena a government employee.

18          **MS. LEONARD:**  I appreciate that, Your Honor.

19          **THE COURT:**  Okay.  Thank you all.  I look forward to

20  seeing you next week.

21          **MR. HELLAND:**  Thank you, Your Honor.

22          **MS. LEONARD:**  Thank you very much, Your Honor.

23          **THE CLERK:**  Court is adjourned.

24              (Proceedings adjourned at 1:44 p.m.)

25                      ---o0o---

## CERTIFICATE OF REPORTER

        I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.


DATE:   Friday, March 7, 2025




_____
    Ruth Levine Ekhaus, RMR, RDR, FCRR, CCG, CSR No. 12219
            Official Reporter, U.S. District Court