Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO;  et al., <br><br>        Plaintiffs, <br><br>    v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br>        Defendants. | Case No. 25-cv-01780-WHA <br><br> **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE** |

1

**INTRODUCTION**

2    Based on the direction this Court provided at the March 6, 2025 status conference, Plaintiffs

3    submit with this reply brief a *revised* Proposed Second Amended Complaint, which asserts no legal

4    claims directly against the new Federal Agency Defendants, but instead names them as defendants for

5    relief purposes only, as necessary to effectuate complete relief per Federal Rule of Civil Procedure

6    19(a).  Any of OPM's arguments aimed at the claims asserted against the Federal Agency Defendants

7    are moot.

8    Further, OPM has not provided the Court with any valid basis to deny this amendment, filed

9    within weeks of the commencement of this litigation, and in response to rapidly developing facts.

10    First, the case is not remotely "moot" simply because OPM issued a statement saying that

11    agencies should make their own decisions (without correcting OPM's February 14, 2025 unlawful

12    revision of the meaning of "performance")—there are significant fact issues regarding whether

13    agencies are operating independently both before and after that statement (which are inappropriate for

14    resolution at this stage); voluntary cessation does not moot claims; and this Court can and should still

15    grant both preliminary and permanent injunctive relief to restore the status quo and remedy OPM's

16    unlawful acts.

17    Second, OPM's attempt to re-argue that third party organization claims should be channeled

18    to federal administrative agencies *that cannot hear those claims* is no basis to deny amendment and is

19    also incorrect.  This Court should apply its prior conclusion that OPM is unlikely to prevail on that

20    argument.  TRO Opinion (Dkt. 45) at 12-13.

21    Third, the addition of the Federal Defendant Agencies pursuant to Rule 19(a) to effectuate

22    relief, which does not prejudice OPM and is not an improper "joinder" under Rule 20: OPM

23    addresses the wrong rule, because Plaintiffs have been clear in relying on Rule 19, which permits this

24    amendment.

25    Fourth, the new Plaintiffs sue in their own right, bringing the same claims against the same

26    defendants.  OPM identifies no prejudice or delay that the addition of these Plaintiffs who seek to

27    provide the Court with valuable information regarding the impacts of OPM's unlawful actions, will

28    cause.

1    Finally, OPM does not respond to or oppose the two other requests made by Plaintiffs in their

2    motion: to join the new Plaintiffs to the existing preliminary injunction motion, and for leave to file

3    evidence (Dkt. 49 at 4:6-9), and therefore the Court should grant those as unopposed, if it grants

4    leave to amend.

5    I.    **Leave Should Not Be Denied on Mootness Grounds**

6    OPM argues that a post-litigation March 4, 2025 revision of its January 20, 2025 memorandum

7    and its notice to seven agencies as ordered by the Court render this entire case moot.  Dkt. 63

8    (hereinafter "Opp.") at 3-5.

9    First and foremost, however, it is a *fact* question yet to be decided by this Court whether any

10    ongoing terminations are taking place at the direction of OPM notwithstanding two sentences in an

11    revised OPM guidance (which effectively *admits* the prior terminations were done at OPM's

12    direction).  OPM has provided no evidence to this Court that agencies have or will act independently

13    in implementing these mass terminations—it certainly did not act independently before, and that is

14    strong evidence they are continuing to act at the direction of OPM now.  Further, even if OPM had

15    submitted such evidence, a factual dispute over mootness would be a matter for the preliminary

16    injunction hearing, not grounds for denying leave to amend.  "[A]n amended complaint cannot be

17    deemed futile simply because there is a factual dispute respecting the viability of the claim."

18    *FutureLogic, Inc. v. TransAct Technologies, Inc.*, 2007 WL 9700696, at *13 (C.D. Cal. Oct. 30,

19    2007) (citing *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988); *Sierra Club v. Union

20    Oil Co. of Cal.*, 813 F.2d 1480, 1493 (9th Cir. 1987)); *see also*, *e.g.*, *Am. Small Business League v.

21    Johnson*, 2010 WL 3490223, *5 (N.D. Cal. Sep. 3, 2020) (Alsup, J.) (explaining that "factual

22    dispute" does not "suggest[] futility").

23    Second, even if this Court were to reach the issue of mootness now, OPM comes nowhere

24    close to meeting the mootness standard.  Initially, OPM took these actions in response to this Court's

25    TRO.  Taking steps to comply with a TRO does not moot a case.  If it did, every case would become

26    moot upon a defendant's compliance with a TRO or preliminary injunction.

27    Further, at most, OPM's actions could amount to voluntary cessation.  But "voluntary

28    cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the

case" unless "it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur" *and* "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (alteration in original; quotations omitted).

OPM establishes neither. A party asserting mootness has "the 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189; *see also Federal Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) ("*Fikre II*") ("We have described this as a 'formidable burden.'") (quoting *Friends of the Earth*, 528 U.S. at 190). Thus, "voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012).

This rule is equally applicable when the party asserting mootness is a government entity. *See Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1037 (9th Cir. 2018) (*Fikre I*); *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir.1991) ("[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision."). Notably, "the form the governmental action takes is critical" with a statutory change "usually [being] enough." *Fikre I*, 904 F.3d at 1038 (quotations omitted). "On the other hand, an executive action that is not governed by any clear or codified procedures cannot moot a claim." *Id.* (quotations omitted). Here, there is not even a regulatory action, much less a statutory change.

Even more centrally, the two-sentence insertion cannot have mooted this case because it did not "completely and irrevocably eradicate[] the effects of the alleged violation," *Davis*, 440 U.S. at 631. Initially, it is notable that OPM amended the January 20, 2025 memorandum, Dkt. 64-1, and not the February 14, 2025 one. But the February 14, 2025 memorandum is where OPM directed, "We have asked that *you separate probationary employees that you have not identified as mission-critical no later than end of the day* Monday, 2/17. We have attached a template letter." Dkt. 37-1, Ex. B at 1 ¶4. OPM also points to the frequently asked questions document it issued on February 25, 2025,

Opp. at 5, but that document states that "'qualifications for continued employment' means that only the highest performing probationers *in mission-critical areas* should be retained" and instructs that "[a]n employee's performance must be viewed through the current needs and best interest of the government, in light of the President's directive to dramatically reduce the size of the federal workforce." Dkt. 37-2 at 1 (emphasis added). So the documents OPM contends renders this controversy moot neither address OPM's unlawful revision of the meaning of "performance," nor do they even instruct agencies that if they terminated probationary employees based on the OPM directive they should rescind those terminations and bring those employees back to work.[1]

Further, voluntary cessation must not only provide assurances that unlawful conduct will not recur, but must "completely and irrevocably eradicate[] the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260 (9th Cir. 1998). A case will thus not be held moot when the government's acts do not "address[] all of the objectionable measures that [the government] officials took"—here, the terminations that took place in implementation of the OPM directive, the cessation of services across the government, and the resultant harm to individuals and organizations that depend on government services. *White*, 227 F.3d at 1242–44 (noting other factors include whether policy change is evidenced by language that is "broad in scope and unequivocal in tone" and whether government officials have "engaged in conduct similar to that challenged by the plaintiff[]"). OPM does not show that any of the injuries of which Plaintiffs complain have been remedied.

---

[1] OPM also relies on the notices it issued to seven agencies as required by this Court. Opp. at 4. Those notices, of course, did not go to other agencies. Nor do they tell the seven agencies that if they had terminated probationary employees based on OPM's guidance regarding the new, unlawful meaning of "performance," they should rescind those terminations and bring those employees back. Declaration of Stacey Leyton ¶3. Rather, they instructed agencies *only* that they should rescind "actions that have flowed from OPM's *allegedly coercive communication at [the February 14, 2025] CHCO meeting*" (which at that time Plaintiffs understood to be the point when the OPM directive was given). *Id.* ¶4. OPM told agencies nothing regarding the prior high-level directives that have been reported to have occurred on or about February 13, 2025, or any other communications between OPM and agencies that may have occurred in which OPM directed agencies to terminate probationary employees. *Id.* They further informed the agencies that this Court's order was "based on the limited factual record before it," that "the Court was convinced, based on 'circumstantial evidence,'" that Plaintiffs had shown it was likely that OPM directed the federal agencies to terminate employees, and that "OPM strongly disagrees with the Court's ruling and is considering its options." *Id.* ¶5.

Plaintiffs seek as relief the restoration of the status quo, including the rescission of the mass terminations of probationary employees in implementation of OPM's order—which requires reinstatement of those employees. Further, Defendants fail to appreciate that the unlawful actions of OPM that have resulted in a reduction of services across the government are causing ongoing and escalating harm every day. The government has not restored the services that have been cut. This Court has the equitable power to judicially review ultra vires government action, and the power granted by the APA to provide a remedy for OPM's unlawful actions, and, in the interim, to restore the status quo that existed prior to those unlawful acts. Defendants cannot rely on their own unlawful actions (terminating employees en masse) to argue that the Plaintiffs' proposed injunctive relief does not maintain the status quo. *E.g.*, *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 685 (9th Cir. 2023) ("Because it was the District's action that 'affirmatively changed' that status quo and Plaintiffs' motion for a preliminary injunction seeks to restore that status quo, the relief sought is properly viewed as a prohibitory injunction."). Even if Plaintiffs' requested relief were considered affirmative action to remedy Defendants' unlawful acts, "[m]andatory injunctions are most likely to be appropriate when the 'status quo . . . is exactly what will inflict irreparable injury upon the complainant." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 830, n.21 (D.C. Cir. 1984)).

Plaintiffs' overwhelming likelihood of success and the balance of harms warrant restoring the status quo. It is not too late for this Court to act, because the unlawful actions have already been taken place, and the government says here (without guarantee) that they will not do it again. This Court has the power to reset the status quo here, to halt the imminent and ongoing irreparable harm caused by the mass terminations and ongoing reduction in services, in order to effectuate relief if Plaintiffs prevail. These are, however, issues for another day, and not a basis to deny amendment.

## II.    Leave Should Not Be Denied on Channeling Grounds

This Court need not reconsider its prior conclusion that Congress did not channel non-union organizations' ultra vires and APA claims against OPM to administrative agencies designed to hear individual employee complaints against their employing federal agencies. OPM's attempt to take

1    another run at this issue is neither a basis to deny amendment of the complaint, nor is it correct.

2              This Court correctly concluded that the government was not likely to prevail on its contention

3    that Congress intended, implicitly, for third party organizations to be required to bring claims against

4    OPM before administrative agencies, even where the actions and rules they challenge as unlawful

5    impact federal employment.  TRO Opinion (Dkt. 45) at 12-13.  The Court's conclusion that it is

6    "likely" to have jurisdiction (*id.*) applies equally to the new organizational and government Plaintiffs

7    that now bring the same claims as the original third-party organizational Plaintiffs against OPM, and

8    this issue therefore provides no basis to deny amendment.

9              Defendants spend a substantial portion of their brief re-arguing this issue (Opp. at 5-7), but

10    nothing in the government's brief should give this Court any pause to reconsider this conclusion.  As

11    Plaintiffs previously demonstrated, and this Court acknowledged, there is no case, anywhere in the

12    country, that has held that a *third party* claim against OPM (or any other agency) should be sent in

13    the first instance to an administrative agency designed by Congress to hear employee claims against

14    their employers.  Dkt. 18-1 (hereinafter "TRO Mem.") at 24-27; Dkt. 39 (hereinafter "TRO Reply")

15    at 12-14; TRO Opinion (Dkt. 45) at 13.

16              Defendants misread the applicable statutes and regulations to tell this Court, incorrectly, that

17    that new Plaintiff organizations or the State of Washington could intervene and participate in MSPB

18    proceedings to bring claims against OPM.  Opp. at 6.  They cannot.  The relevant statutes establishing

19    the MSPB jurisdiction, which Plaintiffs presented to the Court (TRO Reply at 13-14) limit the

20    defendants in those proceedings to agency *employers*.  There is *no* mechanism to sue OPM.  5 U.S.C.

21    §7701; 7703; 7118; 7031.[2]

22              Moreover, participation in those proceedings is limited to adversely affected employees and

23

_____

24              [2]  Appeals of adverse employment actions also may only be brought before the MSPB by
     employees.  5 U.S.C. §7701; *id.* §7703.  As explained in the regulations cited by Defendants, the
25    MSPB jurisdiction is "limited to those matters over which it has been given jurisdiction by law, rule,
     or regulation," and "accordingly, the laws and regulations cited below, which are the source of the
26    Board's jurisdiction, should be consulted to determine not only the nature of the actions or decisions
     that are appealable, but also the limitations as to the types of *employees, former employees, or*
27    *applicants for employment* who may assert them."  5 CFR §1201.3 (emphasis added); *id.* §1201.24
     ("Only an appellant, his or her designated representative, or a party properly substituted under
28    §1201.35 may file an appeal."); *id.* §1201.35 ("If an appellant dies or is otherwise unable to pursue
     the appeal, the processing of the appeal will only be completed upon substitution of a proper party.").

their employers (5 U.S.C. §7701; 7703), and, with respect to the FLRA, to employees, "*labor organizations*," and employers (5 U.S.C. §§7118; 7301) (emphasis added).  Intervention under the MSPB regulation cited by Defendants into an action brought by an employee against their employing agency (5 C.F.R. §1201.34), is limited to those "directly" affected by the challenged prohibited personnel action: the "MSPB Judges' Handbook" gives the examples of a benefits beneficiary and the person accused of taking the prohibited employment action.[3]  The suggestion (without citation) that intervention could be stretched to include an organization adversely impacted by cuts in services, who want to challenge the legality of a government-wide rule, is not credible.  There simply is no mechanism for an outside organization impacted by government-wide rules to bring either an ultra vires or APA claim against OPM before these agencies, nor is there any ability for those organizations to participate in judicial review.  *Amicus* participation—which is in no way guaranteed and is no substitute for judicial review of a claim—is not sufficient basis to ground Congressional intent to eviscerate the *mandate* of judicial review in the APA, or the long-standing equitable claim that organizations and states have to challenge unlawful federal action.  Returning to the source of this doctrine, the government stretches an implied preclusion doctrine so far beyond the meaning of the CSRA and the FSL-MRS to be nonsensical.

Finally, the new citations to *Sackett v. EPA*, 566 U.S. 120 (2012), and *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), are neither on point nor persuasive.  Those cases do not involve the CSRA or FSL-MRS, and are not in the *Thunder Basin* line of cases.  And to the extent these decisions address the question of when an APA claim should wait for administrative exhaustion, they support Plaintiffs.  As the Court held in *Sackett*, even where one provision of a statutory scheme creating an administrative agency allows for judicial review in the end *of the very claim at issue*, that is not enough to require exhaustion before pursuing an APA claim.  566 U.S. at 129.  Here, as explained, there is no mechanism to bring these claims or obtain judicial review—at all.  And the Supreme Court has more recently conclusively stated that the exception to APA judicial review in these cases must be very narrowly construed.  *See, e.g.*, *U.S. Army Corps of Engineers v.*

---

[3] https://www.mspb.gov/appeals/files/ALJHandbook.pdf (Chapter 3, Section 5).

*Hawkes Co., Inc.*, 578 U.S. 590, 601 (2016). The "ancient regime" of implied doctrines as reflected in the older *Community Nutrition* case is over (*Alexander v. Sandoval*, 532 U.S. 275, 287 (2001)), and the government defies more recent Supreme Court precedent to try and revive it here.

In sum, there will be a time and place to resolve the merits of these jurisdictional disputes. The Court has already provided its initial consideration, and the government has provided this Court with no basis to revisit this issue or bar the new Plaintiffs from joining in the existing claims.[4]

### III. Addition of Defendants to Effectuate Relief Pursuant to Rule 19(a) Is Appropriate and Non-Prejudicial.

OPM argues that joinder of additional defendants is inappropriate under Federal Rule of Civil Procedure 20. Opp. at 8. But Plaintiffs seek to add the Federal Agency Defendants pursuant to Federal Rule 19(a), which provides for joinder of parties when, "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A); *see* Motion for Leave (Dkt. 49) at 5:24-25, 8:2-3. This has been clear from the outset of this case, and was discussed explicitly in the TRO papers and at the TRO hearing.[5] But OPM nonetheless completely ignores Rule 19.

To be sure, Plaintiffs *also* initially sought to add the federal agencies as defendants against which Plaintiffs asserted claims. However, this Court made clear at the March 6, 2025 status conference that it was not inclined to grant such amendment. Plaintiffs have therefore submitted a [Proposed] Revised Proposed Second Amended Complaint with this reply brief that asserts no claims against these agencies but rather names them solely as Rule 19 defendants. *See* Exhibits A (redline

---

[4] As explained above, Plaintiffs have revised their Second Amended Complaint to be consistent with the Court's statements regarding the scope of this case during the March 6, 2025 conference, and therefore any concerns Defendants express regarding channeling of claims brought directly against federal agencies are moot. Plaintiffs note, however, that no case ever has channeled a third party organization claim challenging unlawful agency conduct specific to that agency, either.

[5] *See* TRO Reply at 20:19-21 ("Plaintiffs' claims are against OPM—the agency that took this unlawful action and ordered federal agencies to comply—but to the extent this Court believes federal agencies are necessary to effectuate relief, Plaintiffs can join them for relief purposes only under FRCP 19(a)(1)."); TRO Hearing Transcript at 47:21-25 ("if your honor believes they're parties necessary to effectuate relief, we're happy to join them under Rule 19"); *id.* at 55:15-17 ("the agencies that are not currently parties but could be added as Rule 19 parties implemented the order that OPM issued that was unlawful"); *id.* at 72:14-17 ("to the extent that we wish to add agencies as Rule 19 defendants, do we have leave to amend the complaint again, your honor?").

showing differences between First Amended Complaint and [Proposed] Revised Second Amended Complaint), B (clean [Proposed] Revised Second Amended Complaint) at 9:14, ¶¶34-79.

Erroneously relying on Rule 20, OPM contends that Plaintiffs may not add the additional Federal Agency Defendants because "Plaintiffs must separately seek relief from each agency based on that agency's independent decisionmaking." Dkt. 63 at 8. But Ninth Circuit authority is clear that a defendant may be named to effectuate complete relief pursuant to Rule 19 even when no substantive claim is stated against that defendant. Rather, "a plaintiff's inability to state a direct cause of action against an absentee party does not prevent the absentee's joinder under Rule 19." *EEOC v. Peabody Western Coal Co.*, 400 F.3d 774, 781 (9th Cir. 2005) (upholding joinder of Indian tribe); *see also National Wildlife Fed. v. Espy*, 45 F.3d 1337, 1344 (9th Cir. 1995) (holding Rule 19(a)(1) allowed plaintiffs to join private parties as defendants in Administrative Procedures Act (APA) case even though plaintiffs could not state APA claim against them); *National Fair Housing Alliance v. A.G. Spanos Const., Inc.*, 542 F.Supp.2d 1054, 1067 (N.D. Cal. 2008) ("Under Rule 19, no direct claim is required against a party sought to be joined."); *Paradise Ridge Defense Coalition v. U..S. Army Corps of Engineers*, 2022 WL 1910244, *2-3 (D. Id. Jun. 3, 2022) (rejecting motion to dismiss Rule 19 party against whom "no substantive claim has been brought").

To the extent that OPM seeks to argue here that OPM did *not* direct the agencies to terminate all their probationary employees, Dkt. 63 at 8-10, that is the central factual dispute in this case, and directly contradicts this Court's findings in its TRO order. Dkt. 45 (TRO Order) at 9:8-9 ("the evidence supports the contention that OPM's direction to other agencies fell outside its limited statutory authority"); *id.* at 8:19-22 (contrasting OPM's sole evidence, the Ezell declaration, with Plaintiffs' "mountain of evidence that points in the other direction, from a broad range of federal agencies"); *id.* at 9:4-5 ("reject[ing] on the facts" argument that OPM provided guidance, not directive); *id.* at 10:24-26 ("factual contention that OPM did not issue a directive [is] rejected"). In any event, that will be a matter appropriately addressed at the preliminary injunction hearing, not in the context of a decision on whether to amend a complaint. *See supra* at 2 (citing authority that amendment of complaint should not be denied based on futility argument premised on factual issues).

1    Finally, OPM protests that adding these Rule 19 defendants would prejudice it.  Opp. at 7-8.

2    However, OPM does not identify any actual prejudice except that "[d]efending such a sprawling

3    lawsuit would substantially overburden Defendants while not materially advancing Plaintiffs'

4    claims." *Id.* at 8.  But this Court has suggested that these agencies are necessary in order to grant

5    complete relief.  Dkt. 44 (TRO Trans.)  And OPM cites no case law for the notion that when a federal

6    agency (OPM) has given a directive to numerous federal agencies those agencies could not be named

7    as Rule 19 defendants because it would burden the Department of Justice too much to defend their

8    implementation of OPM's directive.  *Cf. Dep't of Fair Emp't & Hous. v. Law Sch. Admission*

9    *Council, Inc.*, 2013 WL 485830, at *5 (N.D. Cal. Feb. 6, 2013) ("The burden of having to defend a

10    new claim alone is not undue prejudice under Rule 15.") (citing *United States v. Webb*, 655 F.2d 977,

11    980 (9th Cir. 1981)).

12    **IV.    Amendment to Add Plaintiffs Should Be Granted**

13    OPM's arguments against joining the new plaintiff organizations and the State of Washington

14    are equally meritless.

15    First, "joinder of claims, parties and remedies is strongly encouraged," and "the impulse is

16    toward entertaining the broadest possible scope of action consistent with fairness to the

17    parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).  Rule 20(a)(1), regarding

18    joinder of plaintiffs in the same action, "imposes two specific requisites … : (1) a right to relief must

19    be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction

20    or occurrence; and (2) some question of law or fact common to all the parties will arise in the

21    action." *League to Save Lake Tahoe v. Tahoe Reg'l Plan. Agency*, 558 F.2d 914, 917 (9th Cir.

22    1977).

23    Because all of the new Plaintiffs' claims arise from the same transactions and require the

24    adjudication of common questions of law and fact, the joinder requirements of Rule 20(a)(1) are

25    easily satisfied.  All of the new Plaintiffs' claims all arise from the same alleged transactions: OPM's

26    unlawful directives to other federal agencies to terminate their probationary employees, nominally –

27    but falsely – for performance problems, as a means of culling the federal workforce.  Proposed 2AC

28    ¶¶190-221.  These alleged transactions unquestionably present common questions of law and

1  fact.  The proposed 2AC does not include any allegations of separate transactions as the basis for any

2  of the new Plaintiffs' claims against OPM and Acting Director Ezell, or that those defendants caused

3  any *unique* harm to any new Plaintiff.  Nor do any of the new Plaintiffs seek any new or different

4  kind of relief than any of the existing Plaintiffs.

5      Second, there is no prejudice to OPM from the addition of these new Plaintiffs.  The new

6  Plaintiff organizations all assert the very same kinds of associational and direct organizational

7  injuries that the Court has already found warrant standing on behalf of existing Plaintiffs VoteVets,

8  Common Defense, Western Watersheds Project, the Coalition to Protect America's National Parks,

9  and the Main Street Alliance.  *See* Proposed 2AC ¶¶158-163; *see generally* Dkt. 45 (TRO Order) at

10  14-21.[1]  OPM also does not dispute that the new plaintiff organizations have adequately alleged their

11  standing.[6]

12      Finally, OPM singles out the State of Washington, which brings to this Court very significant

13  evidence of the extent of harm that OPM's actions have caused.  But adding the State of Washington

14  as a plaintiff does not expand the claims or defendants in this case, or otherwise expand the scope of

15  this case in any material way for the Rule 15 analysis.  Rather, it merely adds another plaintiff with

16  similar injuries caused by the same actions by OPM and Acting Director Ezell.

17      OPM builds up a straw man *parens patriae* argument to then knock it down, Opp. at 10, but

18  Washington asserts standing based on injuries to its own interests, just like the other new

19  Plaintiffs.  Among other harms, the State asserts direct pecuniary harms that have resulted from the

20  mass termination of federal employees, including, for example, increased costs of administering the

21  State's unemployment insurance program (Feek Dec. ¶¶16-18), increased operating costs for housing

22  authorities operating low-income housing units (Esquibel Dec. ¶¶7-8), and harm to the State's

23  commercial Dungeness crab fishery (Cunningham Dec. ¶7).  *See also* Proposed 2AC ¶¶164-166

24  (State "relies heavily on data created by many offices of the federal government"; State "relies on

25

26  [6] To be sure, these new Plaintiffs in some instances rely on services provided by different federal agencies from those relied on by the existing Plaintiff organizations.  But because the federal agency defendants are joined solely for purposes of effectuating relief, rather than based on allegation of independent wrongdoing by any of those agencies, it is irrelevant to the Rule 15 analysis that the new Plaintiffs are experiencing harm because Defendants' unlawful actions have impaired services from additional agencies beyond those that the existing Plaintiffs rely on.

27

28

partnerships with the federal government to fight wildfires, contain outbreaks of communicable diseases, keep its waters clean and respond to natural disasters"; negotiations with other states, tribes and federal agencies regarding salmon harvests are threatened by reduced staffing at NOAA); *see also* Cunningham Dec. ¶¶5-8 (impairment to State's fisheries management, exposing State to Endangered Species Act claims); Feek Dec. ¶¶7-18 (impairment to operation of State's unemployment insurance system from mass termination of federal employees); Mellor Dec. ¶¶4-25 (impairment to State's ability to manage drought conditions, and wildfire and flood preparation); Hennessey Dec. ¶¶16-37 (impairment to State's ability to manage ocean acidification on the Pacific Coast). "Monetary costs are of course an injury" sufficient to support standing for States. *United States v. Texas*, 599 U.S. 670, 676 (2023). The State also has standing to vindicate its proprietary interests in protecting its resources, including its land, water, wildlife, and the many other state resources threatened when it loses the support of its federal partners. *E.g.*, *Washington v. Trump*, 847 F.3d 1151, 1159-61 (9th Cir. 2017) (per curiam) (states had standing where challenged law harmed proprietary work of public universities); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (government entity's proprietary interests "are as varied as [its] responsibilities, powers, and assets" and "not confined to protection of its real and personal property"); *Hawai'I v. Trump*, 241 F. Supp. 3d 1119, 1129-30 (D. Haw. 2017) (state had standing based on loss of tuition and damage to state's tourism industry).

## CONCLUSION

The Court should grant the Motion for Leave.


DATED:  March 7, 2025

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

By: */s/ Danielle E. Leonard*
  Danielle E. Leonard

  *Attorneys for Plaintiff Organizations*

  Norman L. Eisen (*pro hac vice*)
  Pooja Chadhuri (SBN 314847)
  STATE DEMOCRACY DEFENDERS
  FUND
  600 Pennsylvania Avenue SE #15180
  Washington, DC 20003
  Tel: (202) 594-9958
  Norman@statedemocracydefenders.org
  Pooja@statedemocracydefenders.org


By: */s/ Norman L. Eisen*

  *Attorneys for Plaintiff Organizations*

  Rushab Sanghvi (SBN 302809)
  AMERICAN FEDERATION OF GOVERNMENT
  EMPLOYEES
  80 F Street, NW
  Washington, DC 20001
  Tel: (202) 639-6426
  Sanghr@afge.org

By: */s/ Rushab Sanghvi*

  *Attorneys for Plaintiff American Federation of*
  *Government Employees (AFGE)*

  Teague Paterson (SBN 226659)
  Matthew Blumin  (*pro hac vice*)
  AMERICAN FEDERATION OF STATE, COUNTY,
  AND MUNICIPAL EMPLOYEES
  1625 L Street, N.W.
  Washington, D.C.  20036
  Tel: (202) 775-5900
  Tpaterson@afscme.org
  MBlumin@afscme.org


By: */s/Teague Paterson*

1

2

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

3

4

5

6

7

8

9

10

Tera M. Heintz (SBN 241414)
Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (*pro hac vice forthcoming*)
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

11

12

By: */s/ Tera M. Heintz*

13

14

*Attorneys for Plaintiff State of Washington*

15

16

17

18

19

20

21

22

23

24

25

26

27

28