|   |   |
|---|---|
| 1 | Scott A. Kronland (SBN 171693) |
| 2 | Stacey M. Leyton (SBN 203827) |
|   | Eileen B. Goldsmith (SBN 218029) |
| 3 | Danielle E. Leonard (SBN 218201) |
|   | Robin S. Tholin (SBN 344845) |
| 4 | James Baltzer (SBN 332232) |
|   | ALTSHULER BERZON LLP |
| 5 | 177 Post Street, Suite 300 |
|   | San Francisco, CA 94108 |
| 6 | Tel. (415) 421-7151 |
| 7 | Fax (415) 362-8064 |
|   | skronland@altber.com |
| 8 | sleyton@altber.com |
|   | egoldsmith@altber.com |
| 9 | dleonard@altber.com |
| 10 | rtholin@altber.com |
|   | jbaltzer@altber.com |

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; et al., | Case No. 3:25-cv-01780-WHA |
|---|---|
| Plaintiffs, | **DECLARATION OF CADE CANNEDY** |
| v. | |
| UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., | |
| Defendants. | |

Declaration of Cade Cannedy, No. 3:25-cv-01780-WHA

**DECLARATION OF CADE CANNEDY**

I, Cade Cannedy, declare as follows:

1. I am the Director of Programs at Climate Resilient Communities ("CRC"), a position I have held since 2023. In that position, I oversee all CRC's programmatic work and the implementation of CRC's various programs, including the Resilient Homes Program, Resilient Education Program, Resilient Adaptation Program, and Resilient Leadership Program.

2. Climate Resilient Communities is a small community-based non-profit organization that has grown rapidly though its grassroots work in environmental justice. CRC works predominantly in southern San Mateo County in East Palo Alto, the adjacent Belle Haven neighborhood of Menlo Park, and the unincorporated community of North Fair Oaks. CRC's work addresses the immediate needs of residents living in heavily polluted neighborhoods and suffering the consequences of decades of disinvestment and overt segregation, by, among other things, distributing air purifiers for children and elders with medical conditions, enrolling low-income families in utility payment assistance programs, making vital home safety repairs for low-income residents, and providing education and resources to help communities weather escalating climate disasters like the January 2025 Los Angeles wildfires.

3. The termination of probationary federal employees has already had, and will continue to have, a severe adverse impact on CRC and its ability to carry out its mission.

4. On or about July 3, 2024, CRC was approved to receive an Environmental Justice Collaborative Problem Solving Grant ("Environmental Justice Grant") from the Environmental Protection Agency ("EPA"). This is a three-year, $500,000 grant, and was the first large, EPA-specific grant that CRC has received. CRC intends to use this grant to distribute air purifiers to households in East Palo Alto. The communities that will receive these air purifiers have been subjected to decades of environmental injustice caused by redlining, including poor air quality. This project is critical to the predominantly minority communities that are suffering from poor air quality, and CRC has dedicated significant resources to facilitating it.

5. The termination of probationary federal employees has had a severe detrimental impact on CRC's ability to fulfill its obligations under the Environmental Justice Grant and, by extension, to perform our work to improve the air quality for underprivileged communities in East Palo Alto. EPA

grant requirements are technical and complex, and include tasks such as navigating the reimbursement process, submitting the appropriate documents, and complying with intricate regulations. CRC relied heavily on the assistance and guidance of its project officer to satisfy those requirements. However, CRC's EPA project officer was a probationary employee, and she recently informed us that she was terminated from EPA in February as a part of the ongoing mass termination of probationary federal workers.

6. Without a project officer to contact, CRC cannot fulfill its obligations under the grant. CRC is a small organization with limited resources, and this is its first major EPA grant. CRC staff do not have the experience necessary to navigate the grant's requirements on their own. For example, CRC staff were unable to access the grant through the federal government's payment portal, Automated Standard Application for Payments ("ASAP"), for several weeks, and have had their requests for assistance in accessing the grant or clarification regarding the status of the grant go unanswered. These are issues that would have fallen under the purview of CRC's EPA project officer, if she had not been terminated.

7. Because CRC plans to use the grant to improve air quality, EPA also provided CRC with technical assistance in the form of contractors. Those contractors provided additional technical expertise as subject matter experts for air quality work, such as advising CRC on the right kinds of monitors to purchase and what specific pollutants to target. They were also tasked with assisting CRC with the assembly of technical documents such as a Data Quality Assurance Project Plan. Due to the mass terminations and resulting turmoil, CRC has lost access to this assistance as well and thus cannot effectively implement this project.

8. In addition, CRC hired two new staff members specifically to implement the project funded by the Environmental Justice Grant. The inability to access the grant and uncertainty about its status has forced CRC to shift those staff members to other projects and essentially cannibalize its own revenue to avoid internal layoffs. CRC is a small, growing organization. If CRC cannot access the grant or fulfill its requirements, it will face severe cash-flow issues that will force it to limit or scale back the services it provides to vulnerable community members.

9. In addition to the Environmental Justice Collaborative Problem Solving Grant, CRC has approximately $800,000 in other federal grants that are threatened by the ongoing cuts to the federal government. Those grants fund a variety of programs, including allowing low-income families to repair and make safety upgrades, such as mold abatement, to their homes. The cuts have forced many of those projects to stop work, and CRC does not know when or if it can start that work again while the cuts are ongoing.

10. Adding to the uncertainty, CRC cannot communicate with agencies such as EPA that are usually more responsive to CRC's emails and inquiries. The termination of probationary employees has made it exceedingly difficult to coordinate CRC's activities with federal agencies, which is critical to the everyday work that CRC performs.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 6, 2025, in San Francisco, California.

_____
Cade Cannedy