1  NICHOLAS W. BROWN
   Attorney General of Washington
2  TERA M. HEINTZ, SBN #241414
   Deputy Solicitor General
3  Solicitor General's Office
   1125 Washington Street SE, PO Box 40100
4  Olympia, WA  98504-0100
   (360) 753-6200
5  Tera.Heintz@atg.wa.gov
   Attorneys for Plaintiff State of Washington
6

7           UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
8                  AT SAN FRANCISCO

9  AMERICAN FEDERATION OF              NO. 3:25-cv-01780-WHA
   GOVERNMENT EMPLOYEES, AFL-CIO,
10 et al.,                             DECLARATION OF CAMI FEEK

11              Plaintiffs,

12     v.

13 UNITED STATES OFFICE OF
   PERSONNEL MANAGEMENT, et al.,
14
                Defendants.
15

DECLARATION OF CAMI FEEK
NO. 3:25-cv-01780-WHA

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

I, Cami Feek, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am the Commissioner for the Washington State Employment Security Department (ESD), a position I have held since February 2021. ESD is responsible for administering the state's Unemployment Insurance (UI) program. I have served at ESD since 2017, previously as Deputy Commissioner.

3. The purpose of the UI program is to provide temporary wage replacement to individuals who are unemployed through no fault of their own, and to reduce involuntary unemployment and the harms it causes to the people of Washington State.

4. As Commissioner of ESD, I am responsible for administering the UI benefits program, as well as ensuring compliance with federal laws and regulations.

5. As Commissioner of ESD, I have access to reports and data regarding unemployment statistics in Washington State, including the current and former rates of unemployment benefits applications, the status of applications, the methods and costs to ESD of processing and adjudicating these applications, and handling any appeals from ESD's adjudications. Additionally, my role includes overseeing the implementation and compliance of federally funded programs within the agency, ensuring all expenditures align with federal guidelines and regulations.

6. The Trump Administration's mass termination of probationary federal workers irreparably harms Washington State. As described further below, it is more onerous for ESD to process the unemployment benefits claims of federal employees than other non-federal

DECLARATION OF CAMI FEEK
NO. 3:25-cv-01780-WHA

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  employees. ESD has experienced a higher volume of federal employees' unemployment benefits claims during the current Trump Administration than is typical. Processing and adjudicating all federal employees' claims results in a cost to the State, because ESD's federal funding for UI administration covers only roughly 75% of the costs to operate the unemployment insurance program, even though the federal employees' benefit payments themselves must be reimbursed by the federal government. Moreover, processing and adjudicating federal employees' claims takes away from the resources that would otherwise be spent processing the UI benefits claims of other unemployed Washingtonians, delaying their receipt of UI benefits.

7. Data obtained by ESD as part of its federal/state cooperative Quarterly Census of Employment and Wages program shows that there were approximately 76,000 federal employees in Washington State as of the start of 2025. Since the Trump Administration took office and began its mass terminations of federal employees, the number of unemployment benefits applications from former federal employees has increased. Between January 20, 2025, and March 3, 2025, there were almost triple the number of unemployment benefits claims made in the same period in 2024. Focusing on the period February 13, 2025—which is when I understand, through information and belief, that federal Office of Personnel Management (OPM) officials met with federal agency officials and ordered termination of tens of thousands of the federal government's probationary employees—through March 3, 2025, ESD experienced a nearly 470% increase in unemployment benefits claims from federal employees than compared to this same period last year. Given the trends in federal employee mass terminations, this number will likely only increase.

DECLARATION OF CAMI FEEK
NO. 3:25-cv-01780-WHA

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 464-7744

1    8.    These mass terminations include employees in a range of federal agencies in Washington State. Since January 20, 2025, ESD has received unemployment benefits claims from terminated employees at 50 unique federal agencies. Since February 13, 2025, ESD has received unemployment benefits claims from terminated employees at 39 unique federal agency employers. Of these agency employers, since January 20, 2025, five federal agencies have at least 50 terminated employees filing claims with ESD; and since February 13, 2025, four federal agencies have at least 50 terminated employees filing claims with ESD.

9.    Each step of the unemployment benefits process is more onerous for ESD for each of these terminated federal employees—a process that has become more onerous still due to the mass terminations conducted by OPM.

10.   Eligible employees of the federal government are entitled to receive Unemployment Compensation for Federal Employees. The eligibility requirements for these claims are the same as for regular UI claims and claimants file their claims in the state in which the former federal employee was previously employed. However, the federal government is not required to file quarterly reports of employee hours and wages to ESD. Therefore, when a claimant applies for unemployment benefits after losing their employment with a federal agency, substantially more work is required for ESD to issue a monetary determination, which establishes that a claimant meets the hourly claim qualification criteria and their benefit amounts.

11.   Because the federal government does not file quarterly tax and wage reports with ESD, the intake process is more cumbersome for federal employees than for other employees. ESD must gather information on the claimant's hours and wages by reaching out to both the claimant and their former employer so ESD can determine the claimant's base year wages, their

weekly benefit amount, their maximum amount of benefits potentially payable, and their benefit year.

12. Because the intake process requires back-and-forth communications between ESD and the claimant and their federal employer, it normally takes several days to complete. ESD's Special Wages and Benefits unit, or "SWAB," within its wage and tax division, communicates with federal agencies to obtain wage and hour information. This process requires the use of more of ESD's resources than most non-federal-employee claimants, whose monetary determinations are issued through a more streamlined process based on information already in ESD's system from employers' quarterly reports.

13. Overall, the intake process is far more time-consuming for federal employee unemployment benefits claimants than for most claimants. More federal employees call ESD for assistance in filing claims then is typical because their information is not in ESD's system, and many are confused in navigating the claims process. The increased complexity of intake processes for federal claims stems from a host of factors, including that some federal workers are unsure of which specific sub-agency they worked for, and some federal employees may not have access to records showing their hours or wages.

14. ESD must also spend more time adjudicating these claims. However, the Trump Administration's mass terminations have further complicated the adjudication, because, in many cases, federal agencies have not made clear on the face of the document discharging the employee the reason for their termination, as certain notices said, for example, that the employee failed to meet management's performance expectations, had test failures in their qualification program that is required for their position, and/or are not suitable for continued employment with

DECLARATION OF CAMI FEEK
NO. 3:25-cv-01780-WHA

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  the Federal service. ESD must therefore investigate whether someone's termination was for
2  misconduct, disqualifying them for benefits, or not. This involves back-and-forth
3  communications between ESD and the claimant and federal employer concerning the nature of
4  the separation. This investigation occurs on top of any other investigation and adjudication that
5  would normally transpire to determine whether a claimant qualifies for benefits.

6      15.    Only three of ESD's 93 unemployment benefits adjudicators are experienced in
7  adjudicating federal employees' claims. These adjudicators usually adjudicate all of the
8  incoming federal employees' claims each week and still have time to adjudicate dozens of other
9  UI claims each week, as well. However, with the uptick in federal employees' claims after
10  January 20, 2025, they have worked exclusively on federal claims adjudication and have no time
11  for adjudicating regular UI claims. This results in the delayed adjudication of the state claims
12  that those experienced adjudicators would otherwise be able to work on, and delayed benefits
13  payments to Washingtonians. If there continues to be a rise in federal government terminations,
14  ESD will need to train more adjudicators on adjudicating federal employees' unemployment
15  benefits claims, but without the resources to hire additional staff this will cause further delays in
16  processing UI benefit claims for the broader pool of UI claimants in Washington State.

17      16.    Funding for the administration of the program comes, in part, from Washington
18  State. Washington State, like all other states, relies on a federal UI Administration grant financed
19  by employers' Federal Unemployment Tax Act (FUTA) tax to fund its UI program
20  administration. This funding appropriated by Congress and provided by the United States
21  Department of Labor (USDOL) to states is apportioned based on an outdated Resource
22  Justification Model that states provide USDOL. As a result, in recent years, Washington
23

DECLARATION OF CAMI FEEK  
NO. 3:25-cv-01780-WHA

5

ATTORNEY GENERAL OF WASHINGTON  
Complex Litigation Division  
800 Fifth Avenue, Suite 2000  
Seattle, WA 98104-3188  
(206) 464-7744

consistently receives less than 75% of the administrative funding it needs annually to operate the UI program. To support the federal funding gap of the remaining 25%, ESD relies on funds from the State's Administrative Contingency Account and the Employment Services Administrative Account. The Administrative Contingency Account receives revenues from penalties and interest from Washington employers for late or incorrect unemployment taxes and interest from Washington unemployment insurance claimants who must repay benefits to which they were not entitled. The Employment Services Administrative Account receives its revenues from a socialized employer tax, assessed to Washington employers in addition to their experience-rated UI tax based on their employees' UI benefits claims.

17. While the federal government is responsible to reimburse states for payments of Unemployment Compensation for former federal employees, the payments are initially made from ESD's state UI trust, called the "unemployment compensation fund." Wash. Rev. Code § 50.16.010(1). It is generally funded by contributions collected from Washington State employers and Washington employers' payments in lieu of contributions, and by other credits and reimbursements, as provided in Wash. Rev. Code § 50.16.010(2). The state UI trust is used to pay UI benefits to Washington workers.

18. ESD has also needed to take other measures in order to make up for the federal government's lack of notice of the mass terminations. For instance, because ESD has not been able to deploy a local rapid response team to meet groups of workers to make them aware of available benefits and services, as well as provide guidance on how to access them, it plans to hold virtual informational sessions for recently-terminated federal workers, educating them on claims processes and records needed. ESD has also had to update its online guidance for federal

workers to include information related to the mass terminations, such as including information about the federal deferred resignation offer and its impact on receipt of unemployment benefits. ESD developed an online resource, available here: https://esd.wa.gov/get-financial-help/unemployment-benefits/basic-eligibility-requirements/groups-special-rules. The development of this resource involved a cost to the State, as ESD's communications team worked with adjudicative staff to prepare the guidance and links to helpful resources.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

DATED and SIGNED this 5th day of March 2025 at Olympia, Washington.

*Cami F. Feek*
CAMI FEEK

DECLARATION OF CAMI FEEK
NO. 3:25-cv-01780-WHA

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744