Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>Defendants. | Case No. 3:25-cv-01780-WHA<br><br>**PLAINTIFFS' OPPOSITION TO EX PARTE MOTION TO QUASH MARCH 13, 2025 EVIDENTIARY HEARING AND FOR OTHER RELIEF** |

1     The Government seeks to raise two sets of disputes by way of this Ex Parte Application:
2  revisiting this Court's February 27, 2025 and March 6, 2025 orders setting and reconfirming the
3  March 13, 2025 evidentiary hearing on Plaintiffs' motion for preliminary injunction; and asking for
4  further reconsideration of the Court's orders on those same dates requiring certain government
5  officials to testify at that hearing, or in the alternative, to make themselves available for deposition.
6     To be clear regarding the individuals in dispute, in accordance with the Court's orders,
7  Plaintiffs issued subpoenas and in the alternative deposition notices to the following categories of
8  witnesses, all of which were discussed with the Court at the March 5 hearing, and that would
9  facilitate the Court's receipt of evidence regarding the central factual dispute in this case: whether
10 OPM ordered (and continues to order) the federal agencies to terminate their probationary employees:
11 (1) Defendants' sole declarant purporting to dispute OPM Acting Director Charles Ezell; (2) four
12 individuals whose testimony the Court ordered at the February 27 hearing, all of whom Defendants
13 admit were on relevant calls between OPM and federal agencies on February 13, 2025 (including
14 OPM Chief of Staff Amanda Scales and three individuals at the Department of the Interior, U.S.
15 Department of Agriculture, and an individual who works for both the Veterans' Administration and
16 Department of Defense); (3) the IRS Chief Human Capital Officer ("CHCO"), whom this Court
17 authorized Plaintiffs to subpoena on March 6 in light of reports (now confirmed by Defendants) that
18 she was placed on administrative leave following revelation of her statements in this case; and (4)
19 several other CHCOs at federal agencies who were on the receiving end of OPM's directives, whom
20 the Court also authorized Plaintiffs to subpoena at the March 6 status conference.
21    Plaintiffs have been diligently attempting to resolve these disputes, so that this Court can
22 receive as much testimony as possible at the upcoming hearing, but have been met only with delays,
23 refusals to engage, and then a last-minute motion to vacate.  *See* Exh. A (complete email exchange).
24    These are exigent circumstances.  Every day, the loss and deterioration of services caused by
25 these unlawful terminations ordered by OPM are causing irreparable harm to Plaintiffs and the
26 public, and employes who have already been unlawfully fired will be harder to locate and reinstate in
27 order to restore those services.  The Government cannot rely on its own delays to argue that it lacks
28 time to prepare for this hearing.  Nor should it be allowed to relitigate whether the hearing should go

forward at all, where the Court made clear that this hearing is necessary to settle the fact dispute that the Government itself injected into this case.

For the reasons set forth below, Defendants' Ex Parte Application should be denied in its entirety, and this Court should proceed with the hearing on March 13 to get to the bottom of the facts that Defendants themselves have put at issue by denying that OPM directed agencies to terminate their employees.

## I. The March 13 Preliminary Injunction Hearing Should Proceed as Ordered.

Defendants' *ex parte* application to quash the evidentiary hearing, which this Court scheduled for this Thursday, March 13, should be summarily denied. All of the aspects of the evidentiary hearing that Defendants now complain about were determined by this Court's prior rulings going back to February 27, and in particular its rulings at the status conference just four days ago, on Thursday, March 6. This Court made clear in the March 6 status conference that the Court intends the March 13 hearing to proceed *regardless of any dispute regarding the production of Defendants' witnesses in person or by remote testimony.* 3/6/2025 Trans. (Dkt. 65) at 22:17-19. Defendants provide no cause to reconsider that determination.

Defendants are relying on their own repeated delays and obfuscations to manufacture a crisis, and relitigate the matters most recently addressed by the Court four days ago. This Court accommodated the government's request for time until today Monday, March 10 to decide and then set forth its final position on the issue of whether certain witnesses would appear at that hearing, but this Application is an overreach by asking this Court to cancel the hearing entirely.

It is Defendants' own evidence that created a factual dispute regarding OPM's role in directing the mass termination of probationary federal employees, the central factual issue in the case. The evidence regarding their purported compliance that they now present by way of this Ex Parte Application is, again, a fact issue to be resolved at that hearing, not a reason to cancel it. In arguing that this hearing is unnecessary because they have "complied" with the TRO, App. at 6, Defendants rely on *factual representations* regarding their notices (which they have yet to actually provide the Court)—again, representations set forth in a declaration. These are, of course, factual issues to be resolved by this Court after Plaintiffs have the right to test Defendants' evidence. Plaintiffs strongly

1   dispute the representations being made here—that OPM did not order the terminations, and that the
2   effects of the terminations have somehow been resolved, or even that OPM is not continuing to
3   control agencies' actions with respect to these terminations. Defendants also argue that they will
4   stipulate to extend the TRO and convert it to a PI to avoid the truth coming out at this hearing (*id*.),
5   but, as this Court stated on March 6, 2025, the purpose of this hearing is to determine whether the
6   facts and law support extending the TRO or expanding it to further relief as Plaintiffs have sought.
7   Dkt. 65 (Trans. at 23). Nothing about that purpose has changed.

Defendants also argue that broadening the hearing to include "witnesses from non-party agencies" warrants canceling the hearing. App. at 9. Defendants combine two sets of witnesses to claim that Plaintiffs are expanding the scope: the participants on the February 13 phone call between OPM and the agencies (whose testimony the Court ordered on February 27), and additional Chief Human Capital Officers at the agencies who were on the receiving end of OPM's directives (each is discussed further below). But *none* of this is new: the parties discussed both categories of witnesses on March 5, the parties discussed this issue with the Court, and immediately following that hearing Plaintiffs issued subpoenas to these individuals to testify (either in person or remotely) and in the alternative for fast depositions so that testimony could be used.[1] Nothing about the subpoenas or deposition notices issued within hours of that hearing *expanded* the scope of the hearing from what was already discussed on March 5.

The cases cited by Defendants regarding evidentiary hearings being "disfavor[ed]" where the "facts are simple" are plainly inapposite. Defendants themselves have put at issue a central factual issue in this case by strongly claiming that OPM did not direct agencies to act and the agencies acted

---

[1] *See* Dkt. 44 at 71:2-4 (Feb. 27 Trans: "Counsel: "Would we be able to get expedited discovery in the form of the government identifying the individuals who were on that phone call within a couple of days so that we can decide--- COURT: Why don't we give them until next Tuesday at noon, just the identification of those people, and then maybe you get to pick out three or four of those people and we'll order them to be here at the evidentiary hearing); Dkt. 65 at 17:4-7 (March 6 Trans.: "I would like to have those people at the hearing, and I would ask the Government to please cooperatively bring them. But if you're going to insist on a subpoena, then -- then I would at least ask you to accept service of the subpoena."); (*id.*, 16:7-9) ("You should go ahead and subpoena them to appear at the hearing. Don't wait for the Government to agree or not to agree."); (*id.*, 26:4-7) ("Your Honor, we understand that you have authorized us to subpoena the IRS CHCO who has --THE COURT: Yes, please do."); (*id.*, 24:24-25:1) ("I stand by what I said earlier. They should show up next Thursday until such time as I either change the order or the Court of Appeals makes me do so." ).

independently. While Defendants cite authority that district courts have the authority to decide preliminary injunction motions without receiving live testimony, they are the ones who disputed Plaintiffs' evidence of OPM's direction, and no authority deprives a district court of the authority to order an evidentiary hearing with live testimony in order to resolve such a dispute. It is important that the Court hear from those with personal knowledge of what OPM and the agencies did, and important that Plaintiffs have the opportunity to test Defendants' evidence.

Finally, Defendants now argue that rather than proceeding with an evidentiary hearing on Plaintiffs' motion for preliminary injunction, the parties should "meet and confer" (App. at 13), to give Defendants time to provide further information. This Court has already considered the need for this hearing twice, and has ordered the parties to proceed. And Plaintiffs have repeatedly been seeking to meet and confer since the TRO hearing. Defendants' request is simply more thinly veiled avoidance. Defendants have proposed a "proffer" of evidence that reiterates their version of events— an account that defies both logic and the "mountain" of evidence Plaintiffs have already provided, in exceptionally fast time frame, to this Court. It is not plausible that the federal agencies acted independently to terminate all of their probationary workers, and the record Defendants have provided to the Court does not even support such an inference. Any meeting and conferring over Defendants' version of events, which does not comport with the truth or logic, would be futile. At a later stage of this case, when the government's actions are not causing ongoing irreparable harm across the country every day, Plaintiffs are more than happy to meet and confer and take the time needed to resolve whatever factual disputes they can before motions or other proceedings are presented to this Court; but now is not the time for such delay tactics.

## II. The Government Has Provided No Valid Basis to Vacate the Order to Acting Director Ezell to Appear in Person or Remotely at the Preliminary Injunction Hearing.

This Court has on numerous occasions addressed and resolved the issue of whether Mr. Ezell should testify at the upcoming preliminary injunction hearing. In response to Plaintiffs' TRO motion, which presented a "mountain of evidence" (Dkt. 45 at 8) that OPM had directed the termination of thousands of probationary government employees, Defendants submitted—as their *sole* evidence disputing Plaintiffs' showing—the declaration of Acting Director Ezell. On February 27, during the

1  TRO hearing, the Court orally granted Plaintiffs' request for a TRO and directed Acting Director
2  Ezell to appear at an evidentiary hearing, because his declaration—again, the only evidence on which
3  Defendants relied, and which they have since disavowed—created a factual dispute. *See* TRO order
4  at 8 ("OPM's *factual contention* rests entirely on the Ezell declaration.") (emphasis added).

Since this Court's oral order that Mr. Ezell appear, Plaintiffs have worked diligently to secure Mr. Ezell's participation in the March hearing, including by requesting the status conference that took place on March 6 after Defendants would not confirm that Mr. Ezell would appear.[2] Only this morning, Defendants have remarkably informed the Court that Mr. Ezell's testimony "would have scant evidentiary value to begin with" and that he "lacks specific knowledge of disputed issues of fact." Ex Parte Motion to Quash at 8. Defendants cannot deny that the January 20 instruction to federal agencies to (for the first time ever) compile lists of probationary employees and submit those lists to OPM was ordered by Mr. Ezell. Defendants also concede that he was at least present on the February 14 phone call. And Defendants have heretofore relied exclusively on his testimony. Plaintiffs have the right to question him about the matters concerning which he does have direct knowledge and the other matters that he affirmatively represented to the Court.

At this March 6 status conference, the Court suggested that any burdens of appearing in San Francisco on March 13 on Mr. Ezell (as well as other government witnesses whose testimony the Court required) could be alleviated by either testifying remotely or allowing them to be deposed in advance of the hearing so that their deposition testimony could be presented on March 13. Defendants have not ever stated that Mr. Ezell is unavailable on March 13 for remote or in-person testimony, nor that he is unavailable to be deposed before that date. Instead, for the first time, Defendants have now informed the Court that Mr. Ezell did not have knowledge of the matters on which he submitted a declaration.

The Court can and should get to the bottom of this at the hearing. Plaintiffs have the right to test the basis for Mr. Ezell's declaration, both the components that were supposedly based on his

---

[2] Each time Plaintiffs reached out to confirm Mr. Ezell's participation, Defendants informed Plaintiffs that they had not yet formulated their final position and urged Plaintiffs to defer notification of this Court..

personal knowledge and any statements that were based on his receipt of information from others (including who those other individuals were and what the basis was for their knowledge).

Defendants cite authority that they contend stands for the proposition that compelling the head of an agency to testify violates separation of powers. Ex Parte Motion to Quash at 7-8. But this is not discovery; this is the required cross-examination of a party witness who has affirmatively put facts at issue through testimony submitted to the Court by declaration. And *only one* of Defendants' cases involves a situation in which the high-level agency official submitted a declaration in the case and the plaintiffs sought to test that declaration through cross-examination—as opposed to a situation where plaintiffs were seeking discovery and believed the agency head might be a relevant source. In the one case that is on point, *In re Cheney*, 544 F.3d 311 (D.C. Cir. 2008), the D.C. Circuit specifically discussed why follow-up questioning on facts particular officials have put into evidence is *not* subject to the general rule against compelling testimony from high level executive officers about their duties and mental processes, distinguishing cases involving discovery from those "intended to allow follow-up questioning on facts [the defendant] has itself put into evidence, not to allow interrogatories and document production requests on 'everything under the sky.'" *Id.* at 313-14.[3]

In addition, Defendants' protests regarding Rule 45's 100-mile limit are wholly unpersuasive (including because this Court's order is not a subpoena: it is an order to appear for cross-examination; and because the United States government and its witnesses can be compelled to appear in this Court). *See infra* Section III.

---

[3] For this reason alone, case law regarding when a plaintiff can compel testimony by a high-level government official who has *not* presented testimony (much less the *sole* testimony) is completely inapposite. Further, Mr. Ezell is not a Cabinet Secretary (and although he is the Acting Director, he is a career OPM employee who was elevated temporarily to that position and is not Senate-confirmed). But even if authority regarding discovery from Cabinet Secretaries were to apply here, the test would be met. There is good reason to suspect that Mr. Ezell's testimony was not truthful, his testimony concerned the central issue at dispute in the case, and the question whether his testimony was truthful cannot be obtained from another witness. *See In re U.S. Department of Education*, 25 F.4th 692, 702 (9th Cir. 2022).

Finally, to the extent that Defendants have now submitted an additional declaration (from Noah Peters), like Mr. Ezell, any witness that submits affirmative testimony to this Court by way of declaration must be available for cross-examination or the declaration should be stricken.

### III. The Government Has Provided No Valid Basis that Participants on the February 13 Agency Call Should Not Appear to Testify Either in Person or Remotely

Defendants appear to be arguing that despite the Court's prior orders framing the issues for the March 13 hearing, individual witnesses who were identified as participants in a February 13 phone call between OPM and officials of other agencies should not be required to provide their testimony at all because their participation would make the hearing "unmanageable." Dkt. 75 at 9-10. Again, Defendants are trying to relitigate what this Court has already decided with respect to the appearances of witnesses, by relying on information relevant to the factual dispute that is the basis for this Court's decision to hold an evidentiary hearing.

At the February 27 TRO hearing, the Court ordered the government to identify the individuals who participated in the February 13 communication with OPM by no later than noon on March 4, and allowed Plaintiffs to select "three or four of those people," whom the Court would then order to participate in the March 13 evidentiary hearing. Dkt. 44 at 71:2-8. And after Defendants produced that list of 29 participants in that communication on March 4, Plaintiffs promptly identified four individuals whose names appeared on that list that they would like to examine at the hearing: 4 of the 29 witnesses identified by the government to that call. But the government still would not confirm that those individuals would appear at the hearing by the time of the March 5 status conference. Based on further discussion at that status conference, the Court stated that any concerns about these witnesses' availability to appear in San Francisco on March 13 could be alleviated by having them testify remotely via videoconference, or in the alternative, simply by allowing Plaintiffs to depose them in Washington, D.C., before the hearing, and further suggested that Plaintiffs should issue subpoenas accordingly without delay. Dkt. 65 at 16:5-15. That is exactly what Plaintiffs did, the very same day.

Now, despite having been on notice since February 27 that the Court would order participants in the February 13 call with OPM to testify, Defendants argue that this Court cannot order these

officials to testify, even remotely, pursuant to Rule 45. Even if Defendants' tardy effort to raise this concern had merit, Plaintiffs remain willing to accommodate these government officials by deposing them in Washington, D.C. Nothing about this testimony, or these depositions would make the hearing (or anything about this case) "unmanageable," as the government claims. The purpose of this testimony is not to obtain broad, blue-sky discovery, but, as was clear to everyone from the discussion in the March 6 status conference, only to secure these individuals' testimony about a fact dispute that is central to the Court's PI analysis through cross-examination.. And Defendants do not even suggest that remote testimony, or short depositions are an undue inconvenience to their witnesses, or would in any way conflict with the federal rules – nor could they reasonably do so..

Finally, Defendants' protests regarding Rule 45's 100-mile limit are wholly unpersuasive. Pursuant to this Court's direction, and in compliance with Rule 45's location requirements, Plaintiffs noticed depositions of all witnesses in Washington D.C., within 100 miles of where each agency employee is employed. Dkts. 76-13–24. Plaintiffs offered to withdraw those deposition notices should any of the individuals be willing to appear personally or virtually at the hearing on March 13, 2025. Defendants and these witnesses have a choice of how to appear, but Rule 45 does not allow witnesses—let alone parties over whom the court has jurisdiction—to refuse to provide testimony at all. *See e.g.*, *Weiner v. Ocwen Fin. Corp.*, No. 2:14-CV-02597-DJC-DB, 2023 WL 6519292, at *2 (E.D. Cal. Oct. 5, 2023) ("Defendants may choose to proceed by live testimony or deposition testimony as to any witness" who cannot be subpoenaed to appear at trial). Defendants' overexpansive interpretation of Rule 45 would effectively foreclose any litigation against the government more than 100 miles away from the District of Columbia, in clear contravention of venue rules and binding case law. *Stafford v. Briggs*, 444 U.S. 527, 543–44 (1980) ("An officer of the Government while so employed may have numerous mandamus-type suits naming him or her as a party. Without doubt, under § 1391(e), venue lies in every one of the 95 federal districts, and suits may be pending in a dozen or several dozen at any one time."); *see also Minn-Dak Farmers Co-op. v. Espy*, 851 F. Supp. 1423, 1425 (D.N.D. 1994) ("This court does not believe Congress intended each and every plaintiff with a cause of action against a governmental officer located in Washington, D.C.

to travel to that city to plead his or her case. Such a requirement would exalt the federal officer or employee above the citizens he is bound to serve.").

### IV. The Ex Parte Request to Quash Subpoenas and Alternative Deposition Notices to Chief Human Capital Officers Who Received OPM's Directives Should Also Be Denied.

The final category of witnesses that the government seeks to block from testifying includes the IRS CHCO and three other agency CHCOs who were on the receiving end of OPM's directives. For background, there were a total of *** CHCOs (and an equal number of Deputy CHCOs) at Cabinet Departments and large independent agencies who received OPM's directives, including the February 14, 2025 email. Following this Court's direction at the March 6 status conference, Plaintiffs subpoenaed a small subset of those individuals (five, plus the IRS CHCO previously discussed), with the understanding that some might not be available. The government has informed Plaintiffs that two have separated from service (see Exh. A e-mail exchange), so this dispute centers on the IRS CHCO plus three additional individuals. Plaintiffs noticed the depositions of these individuals as an accommodation to Defendants' concerns regarding travel. The government has not, either in email correspondence, or in its Ex Parte Application and supporting documents, established that *any* of these individuals is either unavailable for in person or remote testimony on March 13, or is unwilling to testify. The Court should hear the truth, from the career agency individuals in charge of human resources, regarding Defendants' representations about who made these decisions.

Plaintiffs have attempted to meet and confer to accommodate the government's concerns regarding timing – even responding first thing this morning to the Government's meet-and-confer email from 9 p.m. on Sunday night, offering to further discuss the scheduling of depositions. *See* Exh. A. Instead of responding to Plaintiffs' counsel, the Government instead filed this *ex parte* application 35 minutes later. Notwithstanding the government's failure to provide supporting information regarding these individuals and their availability, Plaintiffs are amenable to the government producing two rather than four individuals to testify on Thursday, and would be amenable to remote testimony. If for some reason that is not workable, Plaintiffs can depose these individuals on March 11 or 12, for purposes of using the testimony at the upcoming hearing.

**CONCLUSION**

Plaintiffs respectfully request that the Government's *ex parte* application be summarily denied without delay.

DATED: March 10, 2025

               Respectfully submitted,

               Scott A. Kronland
               Stacey M. Leyton
               Eileen B. Goldsmith
               Danielle E. Leonard
               Robin S. Tholin
               James Baltzer
               ALTSHULER BERZON LLP
               177 Post St., Suite 300
               San Francisco, CA 94108
               Tel: (415) 421-7151

By: */s/ Danielle E. Leonard*
   Danielle E. Leonard

*Attorneys for Plaintiff Organizations*

               Norman L. Eisen (*pro hac vice*)
               Pooja Chadhuri (SBN 314847)
               STATE DEMOCRACY DEFENDERS FUND
               600 Pennsylvania Avenue SE #15180
               Washington, DC 20003
               Tel: (202) 594-9958
               Norman@statedemocracydefenders.org
               Pooja@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for Plaintiff Organizations*

               Rushab Sanghvi (SBN 302809)
               AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES
               80 F Street, NW
               Washington, DC 20001

Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
Tpaterson@afscme.org
MBlumin@afscme.org

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz (SBN 241414)
Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (*pro hac vice forthcoming*)
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*