Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel not listed]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>  Defendants. | Case No. 3:25-cv-01780-WHA<br><br>**DECLARATION OF STACEY LEYTON IN SUPPORT OF PLAINTIFFS' RESPONSE TO MARCH 7 NOTICE RE: IRS AND REQUEST FOR URGENT GUIDANCE** |

Declaration of Stacey Leyton ISO Response and Request, No. 3:25-cv-01780-WHA

**DECLARATION OF STACEY LEYTON**

I, Stacey Leyton, declare as follows:

1. I am a member in good standing of the State Bar of California and the bar of this Court. I represent the Plaintiff organizations in this action. I make this declaration in support of Plaintiffs' Urgent Motion to Enforce Subpoena. I have personal knowledge of the matters set forth herein.

2. On March 6, 2025, Plaintiffs issued a subpoena for the testimony of Traci DiMartini to Defendants' counsel, a copy of which was filed by Defendants. Dkt. 76-3. The subpoena complied with the IRS *Touhy* regulations, 26 CFR §301.900-5, by providing the required written statement concerning the request for testimony.

3. The same day, Defendants' counsel informed Plaintiffs that they would accept service on behalf of Ms. DiMartini and other subpoena recipients.

4. On March 7, 2025, the plaintiffs in *Maryland v. U.S. Dept. of Agriculture*, Case No. 25-00748-JKB (D. Md.), filed a declaration of Traci DiMartini. A true and correct copy of that declaration is attached hereto as Exhibit A.

5. On March 10, 2025, Defendants' counsel e-mailed Plaintiffs' counsel to state that they were informed that Ms. DiMartini has retained outside counsel and so they were withdrawing acceptance of service of her subpoena.

6. Following that e-mail, I contacted counsel for Ms. DiMartini, who accepted service and confirmed Ms. DiMartini's availability for in person testimony on March 13 if she were subpoenaed and if permitted to testify by her employer.

7. Later that afternoon, and before this Court issued its order regarding Defendants' *ex parte* motion, I responded to Defendants' counsel, stating that we had now served Ms. DiMartini through her counsel, who had accepted service on her behalf and had confirmed that Ms. DiMartini was available to testify in person on March 13 if subpoenaed. In that e-mail, I requested confirmation

from Defendants that Ms. DiMartini would not be subject to any adverse or other employment action based on her compliance with the subpoena or her testimony. I also informed Defendants' counsel that if we did not receive confirmation we would alert the Court to the request.

8. This morning, Defendants' counsel Yuri Fuchs responded, stating, *inter alia*, that "it is our understanding that the consideration to place Ms. DiMartini on administrative leave involves circumstances separate from those at issue in this case." The e-mail further stated that my request for confirmation was "outside the scope of this case," and that counsel "cannot devote additional time and resources to answering your inquiries about Ms. DiMartini." That e-mail concluded by "not[ing] that any testimony by Ms. DiMartini would appear to implicate Treasury and IRS procedures." A true and correct copy of this e-mail exchange is attached to this declaration as Exhibit B.

9. My understanding, based on communications with Ms. DiMartini's counsel, is that the IRS has not yet responded to counsel's inquiries regarding whether she may or should appear to give testimony.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 11, 2025, in San Francisco, California.

_____
Stacey M. Leyton

# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| STATE OF MARYLAND, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>[LEAD DEFENDANT NAME], ET AL.,<br><br>Defendants. | Case No.: 1:25-cv- |

**DECLARATION OF TRACI DIMARTINI**

I, Traci DiMartini, swear under penalty of perjury,

1. My name is Traci DiMartini and I am an adult resident of Gaithersburg, Maryland.

2. I served as a Human Capital Officer for the Internal Revenue Service ("IRS") until March 3, 2025, when the IRS put me on administrative leave. The IRS is the largest bureau within the Department of Treasury ("Treasury").

3. I am a career civil servant and have worked for the federal government for over 21 years, including at the Departments of Labor, Education, Interior, and Agriculture, as well as the Office of Personnel Management ("OPM"). I was sworn in as a member of the Senior Executive Service in 2016 and since that time, I have served as a Chief Human Capital Officer at the Equal Employment Opportunity Commission, Peace Corps, the General Services Administration, and the IRS, where I served as the Human Capital Officer from June 2023 to March 2025. I have worked under both Democratic and Republican administrations.

1

4. During my time as the Human Capital Officer for the IRS, I was the Senior Executive responsible for overseeing all Human Capital operations at the IRS.

5. After President Trump took office on January 20, 2025, OPM issued guidance instructing agencies to terminate probationary employees. Around the first week of February, shortly following OPM's issuance of this guidance, the Chief Human Capital Officer for Treasury, Trevor Norris, instructed my office to begin terminating probationary employees at the IRS. Specifically, he instructed me to identify all probationary employees at the IRS and terminate all of them "based on performance."

6. In all my decades of human resource management for the federal government, I had never before received a directive such as this one. Typically, the decision to terminate a probationary employee lies solely with the probationary employee's manager. Even then, the circumstances under which you can terminate a probationary employee are limited to instances where: (1) the employee is failing to meet the basic requirements of the job, or (2) the employee engages in highly inappropriate conduct while on the job. In any scenario, the poor performance or conduct must be evaluated and documented.

7. Further, I have never heard of mass probationary employee firings. Because the basis for any probationary employee termination is a highly individualized determination, terminating probationary employees on a large scale has never been done, to my knowledge.

8. I attended several virtual meetings with Trevor Norris and other Human Capital Officers at Treasury agencies (which include the Office of the Comptroller of the Currency, the Bureau of Engraving and Printing, and the U.S. Mint) during which we discussed the directive to conduct mass terminations of probationary employees. The other agency Human Capital Officers

and I asked Mr. Norris why Treasury was directing us to terminate probationary employees, and Mr. Norris informed us that it was what OPM "wants to do."

9. We also asked whether the terminations were legal. Mr. Norris explained that OPM was taking the position that the probationary period of employment was an "extension of the application process." In my experience, this is never how probationary employment has been viewed and, candidly, makes no sense.

10. Mr. Norris informed us that Charles Ezell, the Acting Director of OPM, Amanda Scales, Mr. Ezell's Chief of Staff, and Noah Peters, were the individuals spearheading the termination of probationary employees at OPM. All three are political appointees and, as I understand it, they do not have civil service staff assisting them in this process. OPM was communicating these directives to the political appointees at Treasury, including Mr. York and Treasury Secretary Scott Bessent, who were passing the directives down to Mr. Norris and the other Human Capital Officers at Treasury agencies.

11. To comply with OPM's directive to Treasury, my office pulled an initial list of 17,000 probationary employees. We carved out employees from the Taxpayer Services, Taxpayer Advocate, and IT departments, all of whom are essential personnel for tax filing season, as well as some other categories of workers, resulting in a list of approximately 6,700 probationary employees located around the country.

12. Mr. Norris specifically instructed me and the other Human Capital Officers at Treasury that OPM would not allow us to exempt military veterans from the probationary terminations.

13. My colleagues and I asked Mr. Norris what the termination letter for affected probationary employees should consist of, and they informed me that OPM had drafted a letter,

3

Treasury made a few modifications, and that we were instructed to send this letter out. My office was not permitted to make any changes to the letter. I refused to sign these termination notices, as did Acting IRS Commissioner Doug O'Donnell, so the termination notices were sent on February 14, 2025 from a generic agency email to approximately 6,700 probationary employees at IRS, terminating their employment immediately.

14. My office did not review or consider the actual job performance or conduct of any IRS probationary employee when issuing the termination notices. I also know that Treasury did not review or consider the actual job performance or conduct of any IRS probationary employee when issuing the termination notices. I know this because this fact was discussed openly in meetings. Practically speaking, it would take weeks or months to evaluate the job performance of 6,700 probationary employees.

15. Although I did not review the personnel files of any of these employees, it is a statistical certainty in my mind that many of the nearly 6,700 probationary employees terminated by IRS had written documentation of positive performance.

16. The OPM directive, communicated to me by Mr. York through Mr. Norris, was plainly an effort to reduce headcount and did not involve any evaluation of the job performance of probationary employees.

17. To me, the mass firings were clearly a Reduction in Force ("RIF") without following the rules for a RIF.

18. To ensure that a RIF is conducted lawfully, an agency spends approximately 12 to 18 months simply *preparing* for the RIF. *See* Exhibit 1 (Reduction in Force (RIF) Fact Sheet). An agency's Human Capital office begins by spending months verifying that personnel records are complete and free of errors. This is to ensure, for example, that veterans' status is correctly

4

annotated and that employees' service date computations are correct, among other things. The agency then typically takes months to determine the competitive area where the RIF will take place. After these and other initial steps are taken, the agency will then try to reassign employees to other divisions or give them an opportunity to take an early retirement offer instead of separating them in a RIF. These effort are made in close consultation with the managers in these offices. The RIF is the last step of the process, which must be done in accordance with required RIF procedures, including providing employees and their unions with notice. Notice to employees is critical because it allows them to make preparations and minimize the devastating impact of losing a job. I understand that an agency is also required to give notice to the state where an affected employee's duty station was located.

19. On or about February 25, 2025, Acting IRS Commissioner O'Donnell retired, and Melanie Krause, previously the Chief Operating Officer of the IRS, became Acting Commissioner of the IRS.

20. On Friday, February 28, 2025, Gavin Kliger, a member of the Department of Government Efficiency (DOGE), arrived at the IRS around 12:30, along with Sam Cronus a new, unpaid political advisor to Tom Krause, a Treasury political appointee. Mr. Kliger demanded that Mr. Cronus be issued an IRS personal identity verification card and information technology equipment immediately. I informed the Chief of Staff via email that that Mr. Kliger's request would not be completed that day because: (1) the necessary paperwork to onboard him was not prepared because we did not have advance notice that he was starting; (2) any new IRS employee must undergo a tax check and that can take up to 10 days to complete; and (3) Treasury is required to comply with a Temporary Restraining Order issued by the U.S. District Court for the Southern

5

District of New York, which limits access to Treasury systems without prior approval and written agreement executed by our General Counsel.

21. Accordingly, I scheduled Mr. Cronus' onboarding to take place as soon as possible, which was the next business day, Monday, March 3, 2025 at 8:00 a.m. I notified my staff that we had a political appointee to process for onboarding and to be ready with the appropriate paperwork. I also notified our General Counsel's office to arrange for an ethics briefing and the Chief Privacy officer to request a briefing for Mr. Cronus on the confidentiality and information security requirements of Internal Revenue Code section 6103.

22. On Saturday, March 1, 2025, Acting Commissioner Krause contacted me and requested that I complete a tax check on Mr. Cronus, the DOGE employee, that day. I do not personally conduct the tax check, and the tax checks are not performed on the weekends. I informed Ms. Krause that we could conduct it on Monday morning. Ms. Krause stated that I was being uncooperative and that, in essence, I was expected to jump if DOGE told me to jump. I simply responded that we were following established processes and protocols.

23. On the morning of Monday, March 3, 2025, we had arranged for Mr. Cronus, the DOGE employee, to undergo the tax check at 8:00am, but he did not arrive at our offices until 10:45am. That afternoon, Acting Commissioner Krause placed me on administrative leave with the intention of terminating my employment as a career Senior Executive. Acting Commissioner Krause gave three reasons for placing me on administrative leave pending termination: (1) that I did not effectively implement the termination of probationary employees; (2) that I did not implement the deferred resignation program correctly; and (3) that I was insubordinate and uncooperative with the DOGE employees.

6

24. Following my meeting with Acting Commissioner Krause, security escorted me to my office where I was asked to turn over my government ID, my government issued laptop, iPhone, iPad, and parking pass. I was then escorted to my car and left the premises by 3:00 PM.

Dated: March 6, 2025

Signed: *Traci DiMartini*
Traci DiMartini

*A copy of the signature page bearing an original signature is attached hereto.

7

24. Following my meeting with Acting Commissioner Krause, security escorted me to my office where I was asked to turn over my government ID, my government issued laptop, iPhone, iPad, and parking pass. I was then escorted to my car and left the premises by 3:00 PM.

Dated: __March 6, 2025__        Signed: *Traci DiMartini*
                                        _____
                                        Traci DiMartini

*A copy of the signature page bearing an original signature is attached hereto.

*[signature: Traci DiMartini]*

3/6/2025

# Exhibit B

**Stacey Leyton**

| | |
|---|---|
| **From:** | Fuchs, Yuri S (CIV) <Yuri.S.Fuchs@usdoj.gov> |
| **Sent:** | Tuesday, March 11, 2025 8:00 AM |
| **To:** | Stacey Leyton; Todd, James (CIV); Danielle Leonard; Eileen Goldsmith; Scott Kronland; 'Rushab Sanghvi'; 'mblumin@afscme.org'; 'Teague Paterson'; 'Norman@statedemocracydefenders.org'; 'Pooja Chaudhuri'; Robin Tholin; James Baltzer |
| **Cc:** | Helland, Kelsey (USACAN) |
| **Subject:** | RE: AFGE v. OPM, No. 3:25-cv-1780 (N.D. Cal.) - Plaintiffs' Notices of Deposition and Subpoenas |

Counsel –

Thank you for your email.

As we explained in our letter to Judge Alsup on Friday, Ms. DiMartini is not a probationary employee. Additionally, as we explained to Judge Alsup on Friday, and contrary to your contention, it is our understanding that the consideration to place Ms. DiMartini on administrative leave involves circumstances separate from those at issue in this case and was contemplated prior to and made without any knowledge of this case. Therefore, Ms. DiMartini's employment status, and your requests for us to confirm additional information to you are both outside the scope of this case, and we cannot devote additional time and resources to answering your inquiries about Ms. DiMartini. We also note that any testimony by Ms. DiMartini would appear to implicate Treasury and IRS procedures.

Best,
Yuri

**From:** Stacey Leyton <sleyton@altshulerberzon.com>
**Sent:** Monday, March 10, 2025 6:54 PM
**To:** Todd, James (CIV) <James.Todd@usdoj.gov>; Danielle Leonard <dleonard@altshulerberzon.com>; Eileen Goldsmith <egoldsmith@altshulerberzon.com>; Scott Kronland <skronland@altshulerberzon.com>; 'Rushab Sanghvi' <Sanghr@afge.org>; 'mblumin@afscme.org' <mblumin@afscme.org>; 'Teague Paterson' <TPaterson@afscme.org>; 'Norman@statedemocracydefenders.org' <Norman@statedemocracydefenders.org>; 'Pooja Chaudhuri' <pooja@statedemocracydefenders.org>; Robin Tholin <rtholin@altshulerberzon.com>; James Baltzer <jbaltzer@altshulerberzon.com>
**Cc:** Helland, Kelsey (USACAN) <Kelsey.Helland@usdoj.gov>; Fuchs, Yuri S (CIV) <Yuri.S.Fuchs@usdoj.gov>
**Subject:** [EXTERNAL] RE: AFGE v. OPM, No. 3:25-cv-1780 (N.D. Cal.) - Plaintiffs' Notices of Deposition and Subpoenas

Counsel,

Thank you for that information. We have now served Ms. DiMartini through her counsel, who has accepted service on Ms. DiMartini's behalf and confirmed that Ms. DiMartini is available to appear at Thursday's hearing in person.

Given that Ms. DiMartini has been placed on administrative leave with a stated intent to terminate her, based on acts that are related to this litigation, please confirm by tomorrow at 8am Pacific that Ms. DiMartini will not be subject to any adverse or other employment action based on her compliance with the subpoena or her testimony on Thursday.

If we do not receive confirmation by that time, we will alert the Court to this request and ask the Court for an order that she appear.

1

Thank you,
Stacey

Stacey Leyton
(hear my name)
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Office: (415) 421-7151 ext. 304
Cell: (415) 378-6427
sleyton@altber.com
Pronouns: she/her

----

Legal administrative assistant: Desiree Medina
dmedina@altber.com

## ALTSHULER BERZON LLP

This email message and any attached documentation are for the sole use of the intended recipient(s) and may contain privileged or otherwise confidential information. If the reader or recipient of this communication is not the intended recipient or someone authorized to receive the message for the intended recipient, please notify the sender immediately by reply email or telephone, and delete the original communication and any attached documentation without copying or disclosing the contents. Any unauthorized review, use, copying, disclosure, or distribution of this communication and any attached documentation is strictly prohibited. Receipt by anyone other than the intended recipient is not a wver of any attorney-client or work product privilege. Any advice contained in this communication (including attachments) is not intended or written to be used, and cannot be used, as tax advice. Issues regarding taxation or tax law should be referred to the intended recipient's tax advisor.

**From:** Todd, James (CIV) <James.Todd@usdoj.gov>
**Sent:** Monday, March 10, 2025 2:35 PM
**To:** Stacey Leyton <sleyton@altshulerberzon.com>; Danielle Leonard <dleonard@altshulerberzon.com>; Eileen Goldsmith <egoldsmith@altshulerberzon.com>; Scott Kronland <skronland@altshulerberzon.com>; 'Rushab Sanghvi' <Sanghr@afge.org>; 'mblumin@afscme.org' <mblumin@afscme.org>; 'Teague Paterson' <TPaterson@afscme.org>; 'Norman@statedemocracydefenders.org' <Norman@statedemocracydefenders.org>; 'Pooja Chaudhuri' <pooja@statedemocracydefenders.org>; Robin Tholin <rtholin@altshulerberzon.com>; James Baltzer <jbaltzer@altshulerberzon.com>
**Cc:** Helland, Kelsey (USACAN) <Kelsey.Helland@usdoj.gov>; Fuchs, Yuri S (CIV) <Yuri.S.Fuchs@usdoj.gov>
**Subject:** RE: AFGE v. OPM, No. 3:25-cv-1780 (N.D. Cal.) - Plaintiffs' Notices of Deposition and Subpoenas

Counsel –

We have just been inform that Traci DiMartini has retained outside counsel. Accordingly, unless and until we receive her consent, through counsel, to accept service on her behalf, we must withdraw our acceptance of service of her notice of deposition and subpoena.

Jim Todd

2

U.S. Dep't of Justice, Civil Division
Federal Programs Branch
1100 L Street NW
Washington DC 20001
202-514-3378

3