PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' *EX PARTE* MOTION TO STAY THE COURT'S MARCH 13, 2025, PRELIMINARY INJUNCTION PENDING APPEAL**<br><br>The Hon. William H. Alsup |

Pursuant to Fed. R. Civ. P. 62, and this Court's statements at the March 13, 2025, hearing, Defendants respectfully move for a stay pending appeal of the Court's March 13, 2025, Order granting a preliminary injunction. Defendants seek a stay of the Order as to all relief order with the exception of the Court's decision to extend the previous Temporary Restraining Order ("TRO")—a TRO that Defendants have complied with. *See* Defs.' *Ex Parte* Mot. to Vacate at 3-4, ECF No. 75. The Court should stay the injunction pending appeal in light of the strength of Defendants' arguments and the harms that Defendants will suffer in the absence of a stay.

First, Defendants' arguments that Plaintiffs lack standing and that the Court lacks subject matter jurisdiction under the doctrine announced in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) are likely to succeed on appeal. Plaintiffs' federal employment and labor challenges are exclusively channeled away from district court review under both the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454 (codified in various sections under Title 5 of the U.S. Code), and Federal Service Labor-Management Relations Statute ("FSL-MRS"), 5 U.S.C. §§ 7101–35. Plaintiffs' claims fail for lack of subject matter jurisdiction. *See, e.g., Nat'l Treasury Emps. Union, et al. v. Trump et al.*, No. 25-cv-420, 2025 WL 561080 *6-*8 (D.D.C. Feb. 20, 2025); Mem. Op. at 2-5, *AFGE, et al., v. Ezell, et al.*, No. 25-cv-10276 (D. Mass. Feb. 12, 2025), ECF No. 66.

Second, as detailed in the attached declarations provided by officials from the Departments of Agriculture, Defense, Energy, the Interior, the Treasury, and Veterans Affairs, the relief ordered by the preliminary injunction constitutes an extraordinary intrusion into the authority of the Executive Branch and its agencies by: (i) requiring six agencies to reinstate previously terminated probationary employees; and (ii) precluding the Office of Personnel Management ("OPM") from giving further guidance to agencies on personnel matters. As those declarations reflect, agencies will face tremendous administrative burdens, personnel uncertainty, and interference with their internal functions as a result of complying with the Court's preliminary injunction. *See* Decls. of Department of Defense, Department of Energy, Department of Interior, Department of Treasury, Department of Veterans Affairs, attached as Exs. 1-5; *see also* Decl. of Department of Agriculture, attached as Ex. 6. This uncertainty would only be

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

1

amplified if the Court's preliminary injunction is reversed on appeal, and this Court itself noted that appellate consideration of the preliminary injunction would be appropriate. *See* Tr. of Mar. 13, 2025, Hrg. at 57:1-3, ECF No. 90. Furthermore, the preliminary injunction subverts the normal order of operations in an Administrative Procedure Act ("APA") action, permitting discovery and a deposition of an OPM official before the filing of an administrative record or even any responsive pleading by Defendants. As a result, apart from the portion of the Court's March 13, 2025, Order extending its prior TRO, Defendants seek a stay of the Court's order.

Defendants respectfully request an immediate ruling. If relief is not immediately granted, Defendants intend to seek relief from the U.S. Court of Appeals for the Ninth Circuit.

## BACKGROUND

On February 19, 2025, Plaintiffs sued OPM and its Acting Director, Charles Ezell. Plaintiffs then filed an amended complaint while moving *ex parte* for a TRO and order to show cause on February 23, 2025. *See* Compl., ECF No. 1; Am. Compl., ECF No. 17; Pls.' TRO Mot., ECF No. 18. Plaintiffs' claims rest on allegations that OPM had "ordered" federal agencies to terminate probationary employees and that this was an *ultra vires* act that exceeded the scope of OPM's statutory authority and otherwise violated the APA. *See* Am. Compl. ¶¶ 104–42; Pls.' TRO Mot. at 15–22. On February 24, 2025, this Court ordered Defendants to respond to Plaintiffs' TRO motion by February 26, 10:00am PST, and set a hearing on Plaintiffs' motion for February 27, 1:30pm PST. *See* Order Setting Hearing, ECF No. 21.

At the conclusion of the February 27 hearing, this Court issued an oral TRO, which it later reduced to writing. As amended, the Court held that "OPM's January 20 memo, February 14 email, and all other efforts by OPM to direct the termination of employees . . . are unlawful, invalid, and must be stopped and rescinded." Mem. Op. & Order Amending TRO at 24, ECF No. 45. The Court ordered OPM to provide written notice of its order to the Bureau of Land Management ("BLM"), Department of Defense ("DOD"), Fish and Wildlife Service ("FWS"), National Park Service ("NPS"), Small Business Administration ("SBA"), and Veterans Administration ("VA"). *See id.* The Court then set a follow-up evidentiary hearing for March 13, 2025, at 8 AM. *See id.*

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

2

On March 4, 2025, Plaintiffs moved for leave to file a Second Amended Complaint ("SAC"), proposing to add some 43 additional defendants, including other federal agencies and agency heads that Plaintiffs allege were ordered by OPM to terminate probationary employees. *See* Pl.'s Redline of SAC ¶¶ 34–76, ECF No. 49-1. The Court granted Plaintiffs' motion for leave to file that Second Amended Complaint on March 10, 2025, and Plaintiffs subsequently filed the Second Amended Complaint the following day. *See* ECF Nos. 88, 90.

On March 13, 2025, the Court held a hearing. At the conclusion of the hearing, the Court ordered as relief that: (1) the Court's prior February 27, 2025, TRO be extended; (2) the Departments of Agriculture, Defense, Energy, Interior, the Treasury, and Veterans Affairs were to: immediately offer reinstatement to probationary employees terminated on or about February 13 and 14, 2025; immediately notify the terminated employees that the Court held that their terminations were unlawful; cease terminating probationary employees; cease using a prior template for probationary employees used by OPM; and to file by March 20, 2025, with the Court a list of all terminated employes and what had been done for each employee to comply with the Court's Order; (3) OPM cease providing guidance as to whether any probationary employee should be terminated, and that agencies were to develop their own guidance; (4) discovery was to open in the action with, among other things, Plaintiffs being permitted to depose OPM employee Noah Peters within the next two weeks.[1]

## ARGUMENT

Courts consider four factors in assessing a motion for stay pending appeal: (1) the movant's likelihood of prevailing on the merits of the appeal; (2) whether the movant will suffer irreparable harm absent a stay; (3) the harm that other parties will suffer if a stay is granted; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, the strength of Defendants arguments coupled with the breadth of the Court's March 13, 2025, preliminary

---

[1] The Court also directed the parties to provide further briefing on Defendants' channeling arguments, but this portion of the Order is not relevant for the purposes of this *ex parte* stay motion.

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

3

injunction and the relevant equitable considerations weigh in favor of granting the partial stay pending appellate review that Defendants have requested.

On the first factor, as Defendants explained in their briefing on Plaintiffs' motion for a TRO, Plaintiffs fail to establish a likelihood of success on the merits of their claims. Plaintiffs lack standing to pursue many of their claims because their asserted harms are far too speculative, and they cannot seek injunctive relief on behalf of third-party federal employees who are not before this Court.

The non-union Plaintiffs fail to show injury in fact. To establish injury in fact, a plaintiff must show that the defendant's action affects him or her in a "personal and individual way," *Lujan*, 504 U.S. at 560 n.1, rather than being a "generalized grievance," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). A plaintiff must show more than a "possible future injury"; he or she must show that harm has actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). And "threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

In this case, the claims of injury by the non-union Plaintiffs are far too speculative to support standing to maintain this lawsuit. They are instead based on nothing more than a chain of unsupported and conclusory inferences that the termination of probationary employees will somehow lead to "anticipated reductions and delays in services," Pls.' Second Am. Compl. ¶¶ 151–52, ECF No. 90, "imminent harm to [their] mission to protect and restore wildlife and public lands," *id.* ¶ 153, "likely . . . impair[ment of] the quality of . . . services," *id.* ¶ 155, or "the risk [of] severe disruptions to . . . services," *id.* ¶ 157. None of these speculative and conclusory assertions is sufficient to show that a harm has actually occurred or is "certainly impending." *Accord Whitmore*, 495 U.S. at 158 (citation omitted). Absent such a showing, the non-union Plaintiffs lack standing to maintain this action and therefore will not be able to succeed on their claims.

Nor can Plaintiffs pursue their claims in federal district court; instead, Congress has

provided adjudication in the FLRA and the MSPB as the sole administrative avenues before which challenges to federal employee terminations may be brought before review may be had in the court of appeals. *See, e.g.*, *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 13 (2012); *United States v. Fausto*, 484 U.S. 439, 455 (1988); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019). Indeed, the non-union Plaintiffs' claims must also be channeled through the administrative processes. Non-union organizations may seek leave to intervene or participate as *amici curiae* in MSPB and FLRA proceedings. *See* 5 C.F.R. §§ 1201.34, 2422.8. As the MSPB regulations make clear, "[a]ny person, organization or agency may, by motion, ask the judge for permission to intervene," and "[a] motion for permission to intervene will be granted where the requester will be affected directly by the outcome of the proceeding." *Id.* § 1201.34(c). With limited exceptions, "[i]ntervenors have the same rights and duties as parties." *Id.* § 1201.34(d). And "[a]n amicus curiae is a person or organization who, although not a party to an appeal, gives advice or suggestions by filing a brief with the judge or the Board regarding an appeal." *Id.* § 1201.34(e). Thus, non-union Plaintiffs may raise their claims in the MSPB and FLRA proceedings in which federal employees and their unions are already litigating similar issues.[2]

But even if such mechanisms were not available to the non-union Plaintiffs to raise their claims, that would still not be enough to overcome Congress's determination that claims such as those presented here must be channeled through the MSPB and FLRA. As the Supreme Court has held, "[w]here a statute provides that particular agency action is reviewable at the instance of one party, who must first exhaust administrative remedies, the inference that it is not reviewable at the instance of other parties, who are not *subject* to the administrative process, is strong." *Sackett v. EPA*, 566 U.S. 120, 130 (2012) (emphasis in original). For this proposition the Court cited *Block v. Community Nutrition Institute*, which held that a statutory scheme requiring claims brought by milk *producers* to go through an administrative process precluded judicial review of

---

[2] Moreover, there are mechanisms for obtaining classwide relief in MSPB proceedings. *See* 5 C.F.R. § 1201.27 ("One or more employees may file an appeal as representatives of a class of employees."); *Anselmo v. King*, 902 F. Supp. 273, 276 (D.D.C. 1995) ("The MSPB has the power to certify a class.").

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

5

an APA claim brought by milk *consumers*. 467 U.S. 340, 346-48 (1984). As the Court explained in *Community Nutrition*, "[r]espondents would have us believe that, while Congress unequivocally directed [milk] handlers first to complain to the Secretary that the prices set by milk market orders are too high, it was nevertheless the legislative judgment that the same challenge, if advanced by consumers, does not require initial administrative scrutiny. There is no basis for attributing to Congress the intent to draw such a distinction." *Id.* at 347; *see also*, 484 U.S. at 443 (noting the CSRA meant to provide the comprehensive remedial scheme for evaluating adverse personnel actions). As a result, the government's appeal is likely to prevail in showing that the non-union Plaintiffs' claims fail for lack of subject matter jurisdiction.

On the second factor, Plaintiffs will not suffer irreparable harm in the event of a stay. As a preliminary matter, where a plaintiff seeks injunctive relief, a case "is normally moot upon the termination of the conduct at issue" unless "there is a likelihood of recurrence." *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004). Such a case is "no longer a 'Case' or 'Controversy' for purposes of Article III," "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726, 727 (2013). To this point, on March 4, 2025, OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies (Revised March 4, 2025), ECF No. 78. Thus, OPM has made it abundantly clear since the Court's TRO that it is not directing the termination of probationary employees and Plaintiffs cannot be harmed by OPM guidance on probationary employees. OPM's actions comply with this Court's February 27, 2025, order and render this case moot. This Court should "presume the government is acting in good faith" when it makes declarations of this type. *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). The circumstances here fully warrant that presumption.

In any event, OPM's actions preclude any additional further award of preliminary

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

6

injunctive relief under well-settled principles of equitable discretion. Even if cessation of conduct does not moot a case, a plaintiff must still bear the burden of demonstrating that equitable relief is warranted, a showing that requires "more than the mere possibility" of recurrence "which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also TRW, Inc. v. F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981) (discussing difference between standards and burdens of proof). To obtain equitable relief, a plaintiff must establish a "likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). That "requirement . . . cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Lyons*, 461 U.S. at 111. Another point highlights the lack of irreparable harm: many probationary employees have been able to challenge their terminations in the MSPB, which has issued stay orders on probationary terminations. *See, e.g.*, Defs' Opp'n to Mot. for TRO, at 6, ECF No. 33; *see also* Ex. 6 ¶ 4.[3]

Third, the balance of equities and public interest overwhelmingly favor a stay pending appeal. The preliminary injunctive relief ordered by the Court at the March 13, 2025, is overbroad. While Defendants do not object to (or seek any stay of) any extension of the TRO, Defendants submit that the Court granted improper relief when it ordered the Departments of Agriculture, Defense, Energy, Interior, the Treasury, and Veterans Affairs to: (i) immediately offer reinstatement to probationary employees terminated on or about February 13 and 14, 2025; (ii) immediately notify the terminated employees that the Court held that their terminations were unlawful; (iii) cease terminating probationary employees; (iv) cease using a prior template for probationary employees used by OPM; and (v) to file by March 20, 2025, with the Court a list of all terminated employes and what had been done for each employee to comply with the Court's

---

[3] The existence of MSPB orders staying the termination of probationary employees does not undermine Defendants' need for a stay here. For one, the MSPB stay order could be lifted, but Defendants would still be required to comply with this Court's preliminary injunction absent a stay. For another, the narrower MSPB stay order emphasizes that the Court's preliminary injunction is far broader than what is needed to protect terminated probationary employees from suffering harm. In fact, that MSPB stay order ostensibly eliminates the need for relief as to any probationary employees of USDA. *See* Ex. 6 ¶¶ 4-5.

1  Order. The Court's Order was similarly improper when it ordered: OPM to cease providing
2  guidance as to whether any probationary employee should be terminated and that agencies were
3  to develop their own guidance; and discovery to open in the action with Plaintiffs being
4  permitted to depose OPM employee Noah Peters within the next two weeks.
5       Each portion of the Court's relief is against the public interest and public equities. In
6  directing certain named agencies to reinstate employees and guiding their employment practices
7  *en masse*, the relief exceeds the scope of the Court's equitable powers. Reinstatement of
8  employees is an "extraordinary remedy" even in employment actions by individuals. *Equal Emp.*
9  *Opportunity Comm'n v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir. 1980). But here, the
10 Court has ordered that remedy as to thousands of individuals and precluded six federal agencies
11 from taking any further employment action as to an entire class of employees going forward.
12 That is a remarkable intrusion into the operation of the Executive Branch and into the
13 functioning of each of these agencies as they seek to implement the President's workforce
14 optimization initiative. *See, e.g.*, *White v. Berry*, 171 U.S. 366, 377 (1898) (holding that a court
15 cannot, "by injunction, restrain an executive officer from making a wrongful removal of a
16 subordinate appointee, nor restrain the appointment of another"); *see also* Ex. 1 ¶ 13; Ex. 2 ¶ 12;
17 Ex. 3 ¶ 14. Indeed, as a practical matter, the requirement for agencies to reinstate employees puts
18 significant burdens on agencies, including the administrative burdens of having to onboard
19 reinstated employees while leaving supervisors in a murky state of affairs should an appellate
20 court reverse this Court's preliminary injunction. *See* Ex. 1 ¶¶ 9-12; Ex. 2 ¶¶ 8-11; Ex. 3 ¶¶ 10-
21 13; Ex. 4 ¶¶ 5-8; Ex. 5 ¶¶ 8-10; Ex. 6 ¶ 5. In precluding OPM from providing guidance to
22 agencies on personnel matters, the Court effectively binds the agency from exercising its
23 assigned role in the Executive Branch. *See, e.g.*, 5 U.S.C. § 1103.
24       Finally, in opening discovery and directing a deposition to be conducted, the Court
25 subverts the normal order of operation in an APA case. As Defendants previously explained
26 "court reviewing agency action under the APA must limit its review to the administrative
27 record." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014)
28 (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)); *see also Bellion Spirits, LLC v. United States*,

335 F.Supp.3d 32, 43 (D.D.C. 2018) (holding that constitutional challenges to agency actions, such as Plaintiffs' *ultra vires* claim must also be decided on an administrative record). While supplementation of that record may be permissible with exceptions that may only occur where, after the record has been filed, the administrative record "is incomplete" and where "necessary to plug holes in the administrative record." *Wilson v. Comm'r*, 705 F.3d 980, 991 (9th Cir. 2013) (quotations omitted); *see also Kunaknana v. Clark*, 742 F.2d 1145, 1152 (9th Cir. 1984). No administrative record has been filed in this action, and, indeed, no responsive pleadings have been filed in this action either. As a result, Defendants submit that this Court should not have and cannot yet order discovery in this APA action unless and until it determines that the administrative record is incomplete.

## CONCLUSION

For good cause shown herein, this Court should grant Defendants' motion to stay its preliminary injunction apart from its order extending the TRO. Defendants respectfully request an immediate ruling on this motion, after which time Defendants intend to seek relief from the Ninth Circuit.

| | |
|---|---|
| Dated: March 14, 2025 | Respectfully submitted,<br><br>PATRICK D. ROBBINS (CABN 152288)<br>Acting United States Attorney<br>PAMELA T. JOHANN (CABN 145558)<br>Chief, Civil Division<br>KELSEY J. HELLAND (CABN 298888)<br>Assistant United States Attorney<br>U.S. ATTORNEY'S OFFICE<br>450 Golden Gate Avenue, Box 36055<br>San Francisco, California 94102-3495<br><br>ERIC HAMILTON<br>Deputy Assistant Attorney General<br><br>DIANE KELLEHER<br>Branch Director<br>CHRISTOPHER HALL<br>Assistant Branch Director<br><br>JAMES D. TODD, JR.<br>Senior Trial Counsel<br><br><u>s/ Yuri S. Fuchs</u><br>YURI S. FUCHS<br>Trial Attorney<br>U.S. DEPARTMENT OF JUSTICE<br>Civil Division, Federal Programs Branch<br>P.O. Box 883<br>Washington, DC 20044<br><br>*Counsel for Defendants* |

Defendants' *Ex Parte* Motion to Stay the Court's March 13, 2025, Preliminary Injunction Pending Appeal
3:25-cv-1780-WHA

10