PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DECLARATION OF TIMOTHY D. DILL IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF MARCH 13, 2025, ORDER** |

I, Timothy D. Dill, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am currently the official performing the duties of the Assistant Secretary of Defense for Manpower and Reserve Affairs of the Department of Defense ("Department"), headquartered in Washington, D.C. I have served in this position since January 22, 2025.

2. In my role at the Department, I am responsible for personnel management. I have the responsibility for tracking and recording personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3. Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the probationary period is two years.

4. The probationary period is part of the hiring process, and probationary employees have extremely limited protections against termination compared to employees with final appointments.

5. The probationary period is essentially an extended trial period for a finalized appointment. Supervisors evaluate probationary employees to determine whether the employees would be a good fit for long-term employment. While on probation, an employee receives no assurance of a final appointment.

6. On January 20, 2025, my office received a guidance memorandum from the Office of Personnel Management ("OPM"), which requested that agencies review all probationary employees and identify which employees should be retained and which should be terminated.

7. Consistent with the OPM guidance, the Department reviewed all probationary employees' performance to determine which employees to keep and which to terminate.

8. Department records indicate that it fired 16 total probationary employees on or about February 13 and 14, 2025.

9. The Court's order, requiring the Department to reinstate all probationary employees terminated on or about February 13 and 14, 2025, will impose substantial burdens on

the Department, cause significant confusion, and potentially subject terminated employees to extreme whiplash.

10. Offers of reinstatement will impose significant administrative burdens on the Department. Among other things, all reinstated employees will require onboarding, including certain training, filling out human resources paperwork, obtaining new security badges, and re-enrolling in benefits programs.

11. Offers of reinstatement will also cause confusion for agency and employee alike. Employees who were terminated just weeks ago will be offered reinstatement. Yet an appellate ruling could reverse the district court's order before terminated employees accept their reinstatement or before they reenter on the job. The Department could withdraw any offers of reinstatement in that circumstance. And even if the employees are reinstated prior to any reversal of the district court's order, the reinstated employees will remain on probation and could again be terminated. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

12. The tremendous uncertainty associated with this state of affairs would preclude supervisors from appropriately managing their workforce. Work schedules and assignments would effectively be tied to hearing and briefing schedules set by the courts. It would be extremely difficult to assign new work to reinstated employees in light of the uncertainty over their future status.

13. Finally, offering reinstatement to terminated probationary employees will interfere with the effective functioning of the Department. Reinstating such employees would undermine the efficiency of the Department. In addition, it would interfere with the Department's plans to implement the President's workforce optimization initiative. The Department has engaged in a broader effort to determine civilian reductions based on a comprehensive readiness impact analysis on the size and appropriate mix of the Total Force.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2025

_____
Timothy D. Dill
Performing the Duties of the
Assistant Secretary of Defense for
Manpower and Reserve Affairs