1  PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
2  PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
3  KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
4  U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
5  San Francisco, California 94102-3495

6  ERIC HAMILTON
Deputy Assistant Attorney General
7  DIANE KELEHER
Branch Director
8  CHRISTOPHER HALL
Assistant Branch Director
9  JAMES D. TODD, JR.
Senior Trial Counsel
10  U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
11  P.O. Box 883
Washington, DC 20044
12

13  *Counsel for Defendants*

14

15                  **UNITED STATES DISTRICT COURT**
        **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                   **SAN FRANCISCO DIVISION**

16

17  AMERICAN FEDERATION OF                Case No. 3:25-cv-1780-WHA
    GOVERNMENT EMPLOYEES, *et al*.
18

19         Plaintiffs,                    **DECLARATION OF REESHA
                                          TRZNADEL IN SUPPORT OF
20              v.                        DEFENDANTS' MOTION FOR STAY OF
                                          MARCH 13, 2025, ORDER**
21  UNITED STATES OFFICE OF PERSONEL
    MANAGEMENT, *et al.*,
22
           Defendants.
23

24

25

26

27

28

Declaration of Reesha Trznadel in Support of Defendants' Motion for Stay of March 13, 2025, Order
3:25-cv-1780-WHA

1    I, Reesha Trznadel, declare, pursuant to 28 U.S.C. § 1746, as follows:

2    1.    I am the Acting Chief Human Capital Officer of the Department of Energy

3    ("Department"), headquartered in Washington, D.C. I have served in this position since February

4    28, 2025.

5    2.    In my Acting role at the Department, I oversee those responsible for personnel

6    management. I oversee those responsible for tracking and recording personnel actions, including

7    terminations. I assist in ensuring that all personnel actions comply with federal law, including

8    those related to probationary employees.

9    3.    Probationary employees in the competitive service are generally employees who

10    have been employed for less than one year. In the excepted service, the probationary period is

11    two years for most employees.

12    4.    The probationary period is part of the hiring process, and the Department is

13    generally subject to less stringent procedural requirements when terminating a probationary

14    employee versus terminating employees with final appointments.

15    5.    The probationary period is an extended tryout for a finalized appointment.

16    Supervisors evaluate probationary employees to determine whether the employees would be a

17    good fit for long-term employment. An employee's appointment is not final until they have

18    completed their probationary period.

19    6.    On January 20, 2025, although I was not serving in this position at that time, it is

20    my understanding that the Department received a guidance memorandum from the Office of

21    Personnel Management ("OPM"), which requested that agencies identify all probationary

22    employees and determine whether those employees should be retained.

23    7.    The Department terminated approximately 555 probationary employees between

24    February 13 and 14, 2025.

25    8.    The Court's order, requiring the Department to reinstate all probationary

26    employees terminated on or about February 13 and 14, 2025, could impose administrative

27    burdens on the Department.

28

Declaration of Reesha Trznadel in Support of Defendants' Motion for Stay of March 13, 2025, Order
3:25-cv-1780-WHA

9.      Offers of reinstatement could impose administrative burdens on the Department. Among other things, all reinstated employees will have to be identified, contacted, and onboarded again. The onboarding process includes going through training, filling out human resources paperwork, receiving new equipment, obtaining new security badges and clearances, and re-enrolling in benefits programs.

10.      I understand from managers that offers of reinstatement could cause confusion. Employees who were terminated just weeks ago will be offered reinstatement. Yet an appellate ruling could reverse the district court's order before terminated employees accept their reinstatement or before they reenter on the job. The Department could withdraw any offers of reinstatement in that circumstance. And even if the employees are reinstated prior to any reversal of the district court's order, the reinstated employees will remain on probation and could again be terminated. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

11.      I understand from managers that the uncertainty associated with this state of affairs could impede supervisors from efficiently managing their workforce. Work schedules and assignments would effectively be tied to hearing and briefing schedules set by the courts. It would be inefficient and disruptive to assign new work to reinstated employees in light of the uncertainty over their future status.

12.      Finally, I understand from managers that offering reinstatement to terminated probationary employees could interfere with the effective functioning of the Department. Since February, the Department has made meaningful changes to accommodate the challenged terminations, including reassigning the necessary functions of the terminated employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Declaration of Reesha Trznadel in Support of Defendants' Motion for Stay of March 13, 2025, Order 3:25-cv-1780-WHA

2

1    Dated: March 14, 2025

2

3

4                                              */s/ Reesha Trznadel*

5                                              REESHA TRZNADEL
                                              ACTING CHIEF HUMAN CAPITAL OFFICER
6                                              US DEPARTMENT OF ENERGY

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28