PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DECLARATION OF MARK D. GREEN IN SUPPORT OF DEFENDANTS' MOTION FOR STAY OF MARCH 13, 2025, ORDER** |

I, Mark D. Green, declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Deputy Assistant Secretary for Human Capital, Learning, and Safety at the U.S. Department of the Interior ("Department"), headquartered in Washington, D.C. I have served in this position since September 2022.

2. In my role at the Department, I am responsible for personnel management. I have the responsibility for tracking and recording personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary and trial period appointees.

3. Probationary appointees in the competitive service are individuals who have been working in their respective positions for less than one year. In the excepted service, the trial period is generally two years.

4. Probationary and trial periods are part of the hiring process, and probationary and trial period appointees have extremely limited protections against termination compared to individuals who satisfy the definition of "employee," and accordingly enjoy greater due process protections.

5. Probationary and trial periods are essentially extended tryouts for finalized appointments. Supervisors evaluate probationary and trial period appointees to determine whether the individuals would be a good fit for long-term employment. While working throughout probationary or trial periods, individuals receive no assurance of final appointments and of becoming employees.

6. On or about January 20, 2025, I reviewed a guidance memorandum issued by the Office of Personnel Management ("OPM"), which requested that the Department and other agencies review all probationary and trial period appointees and identify which individuals should be retained and which should be terminated.

7. Consistent with the OPM guidance, the Department reviewed all probationary and trial period appointees' performances to determine which individuals to keep and which to terminate.

8. The Department continued this review process even after OPM clarified its earlier guidance on February 14 and 24, 2025.

9. On or after February 14, 2025, the Department terminated the competitive service appointments of 1303 individuals during their respective probationary periods and terminated the excepted service appointments of 409 individuals during their respective trial periods. Although OPM offered language for potential use in developing termination notices, the Department did not adopt OPM's suggestions, and instead, independently developed language used in the termination notices that informed affected individuals of these personnel decisions.

10. The Court's order, requiring the Department to reinstate all probationary and trial period appointees terminated on or after February 14, 2025, will impose substantial burdens on the Department, cause significant confusion, and potentially subject terminated individuals to the receipt of conflicting or contradictory information.

11. Offers of reinstatement will impose significant administrative burdens on the Department. Among other things, all reinstated individuals will have to be onboarded again, which would include the labor-intensive processes of coordinating human resources efforts and paperwork, issuing new security badges, re-enrolling affected individuals in benefits programs, and calculating and processing the amount of any financial obligation that the Department may owe as a result of the reinstatement offers and the amounts, if any, that reinstated individuals request to have withheld for various work-related benefits.

12. Offers of reinstatement will also cause confusion for the Department and terminated individuals, more than three hundred (300) of whom have appeals currently pending before Administrative Judges assigned to U.S. Merit Systems Protection Board (MSPB) Regional and Field Offices. Persons who were terminated just weeks ago would receive reinstatement offers, the issuance of which would impact pending or potential MSPB appeals. Yet an appellate ruling could reverse the district court's order before terminated individuals accept their reinstatement or before they re-enter on the job. The Department could withdraw any offers of reinstatement in that circumstance and correspondingly impact pending or potential MSPB appeals. And even if the individuals are reinstated prior to any reversal of the district

court's order, the reinstated individuals may remain as probationary or trial period appointees and could again be subject to termination actions, which would again inform affected individuals of their rights associated with filing MSPB appeals, filing complaints pursuant to processes established by the U.S. Equal Employment Opportunity Commission, and filing complaints pursuant to processes established by the U.S. Office of Special Counsel. In short, individuals could be subjected to multiple changes in their employment status in a matter of weeks and could be forced to untangle the maze of their potential appeal rights.

13. The tremendous uncertainty associated with this confusion and these administrative burdens would preclude supervisors from appropriately managing their workforce. Work schedules and assignments would effectively be tied to hearing and briefing schedules set by the courts. It would be extremely difficult to assign new work to reinstated individuals in light of the uncertainty over their future status.

14. Finally, offering reinstatement to terminated probationary or trial period appointees will interfere with the effective functioning of the Department. On and after February 14, 2025, the Department has made meaningful changes to address the challenged terminations, including reassigning the duties performed by the terminated individuals, many of whom would have no duties to perform if they accepted reinstatement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 14, 2025

/s/ _____
MARK D. GREEN

Digitally signed by MARK GREEN
Date: 2025.03.14 14:33:28 -04'00'