UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO,
et al.,

        Plaintiffs,

    v.

UNITED STATES OFFICE OF
PERSONNEL MANAGEMENT, et al.,

        Defendants.

No.  C 25-01780 WHA

**ORDER DENYING EX PARTE
MOTION TO STAY PRELIMINARY
INJUNCTION PENDING APPEAL**

      The undersigned issued a preliminary injunction on March 13, 2025 (Dkt. No. 115).

Defendants appealed (Dkt. No. 119), and now move for a stay pending appeal (Dkt. No. 127).

Plaintiffs oppose (Dkt. No. 129).

      The "factors regulating the issuance of a stay" are as follows:  "(1) whether the stay

applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the

applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will

substantially injure the other parties interested in the proceeding; and (4) where the public

interest lies."  *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987).

      *First*, defendants' likelihood of success arguments were addressed at both the temporary

restraining order and preliminary injunction stage.  The memoranda supporting the TRO and PI

are incorporated here (Dkt. Nos. 28, 132). For the reasons stated therein, this factor does not favor a stay.

*Second*, defendants' argument that a stay of the preliminary injunction would not injure plaintiffs retreads the arguments made in opposition to plaintiffs' motion for leave to amend (Dkt. No. 63). As explained in the order granting leave, defendants' purported voluntary cessation (via a two-sentence alteration to the January 20 memo) does not moot the case at hand (Dkt. No. 88). A stay would further injure plaintiffs because reinstatement becomes more difficult with every passing day. Terminated probationers are moving on with their lives, as they must. Fewer will be available to redress the harms suffered by the organizational plaintiffs tomorrow than there are today. And, the government has wholly failed to argue there is any other way to avoid the irreparable injuries flowing from the unlawful terminations except to reinstate the employees.

*Finally*, defendants argue that the public interest and the balance of the equities favor a stay. They rely in large part on six newly submitted declarations, one from each relief defendant agency subject to the injunction (Department of Defense (Dkt. No. 127-1), Department of Energy (Dkt. No. 128-2), Department of the Interior (Dkt. No. 127-3), Department of the Treasury (Dkt. No. 127-4), Department of Veterans Affairs (Dkt. No. 127-5), and Department of Agriculture (Dkt. No. 127-6). Two relief defendants (from DOD and DOI) assert, for the first time, that they reviewed their probationary employees' performance following OPM's January 20 memo (Dkt. No. 127-1 ¶ 7 (DOD); Dkt. No. 127-3 ¶ 7 (DOI)). The VA, Treasury, USDA, and DOE do not make that representation.

The declarations set out a substantially similar list of administrative harms that would result from reinstatement. These include the need to "identif[y], contact[], and onboard[]" the recently terminated probationers, "fill[] out human resources paperwork," "receiv[e] new equipment, obtain[] new security badges and clearances, and re-enroll[ probationers] in benefits programs" (Dkt. No. 127-2); the frustration of supervisors' ability to "appropriately manag[e] their workforce" (Dkt. No. 127-1); and general "confusion" and "uncertainty" (Dkt. No. 127-3; Dkt. No. 127-4).

1    This order pauses to address defendants' attempts to frustrate fact-finding. The defense

2    submitted a single declaration, from defendant Charles Ezell, in opposition to plaintiffs'

3    motion for a TRO. The undersigned ordered defendant Ezell to appear for cross examination

4    at the subsequent evidentiary hearing, or, alternatively, to submit to a deposition at his

5    convenience. Plaintiffs were likewise ordered to make their declarants available for

6    examination. Defendants chose to withdraw the Ezell declaration to avoid submitting its

7    declarant to examination, in violation of this Court's order. Defense counsel "understood

8    coming out of the TRO hearing" that the undersigned "wanted to know what was actually

9    communicated" during several phone calls between OPM and the relief defendant agencies

10   (Dkt. No. 120). The purported reason to withdraw was that Ezell was not present at those

11   calls, so his testimony "would have scant evidentiary value" anyway (Dkt. No. 75 at 12).

12   The undersigned did not impose sanctions at the time, as it appeared defendants had

13   righted a wrong they would not repeat.

14   It was a surprise, then, that defendants submitted the declaration of Noah Peters, a "senior

15   advisor" at OPM (Dkt. No. 77). Defense counsel represented to the Court that Peters

16   participated in the calls at issue, but Peters declined to swear to it (*ibid.*). Indeed, Peters did

17   not claim personal knowledge as to *anything* in his declaration. Persuaded by defense

18   counsel's argument, the undersigned afforded the Peters Declaration scant evidentiary value.

19   Defendants refused to make any further effort to get at the truth, arguing that the only

20   way forward was to wait on them to produce their administrative record, and "for gaps in that

21   record to be litigated, to be supplemented by oral testimony, if necessary" (Dkt. No. 120 at 22).

22   Defendants otherwise complained that the rapid pace of litigation prohibited the production of

23   anything more than the Ezell declaration (Dkt. No. 120 at 20-21).

24   It is again surprising, then, that defendants managed (in the span of a single day) to

25   muster a half-dozen declarations from relief defendants. None of these declarations, or the

26   facts therein, were made available to the Court during its consideration of the TRO or PI now

27   in place. This is a last-ditch attempt to relitigate those orders on a new, untested record.

28   Turning to the merits, defendants' arguments fail to persuade.

United States District Court
Northern District of California

1    *First*, the administrative harms described do not move the needle in favor of a stay. NSF,

2    for example, rehired its terminated probationers following the undersigned's TRO. Several

3    other agencies have rehired large swaths of terminated workers for myriad reasons. The

4    declarant for the USDA, for example, concedes that the agency "is already reinstating the

5    terminated probationary employees, pursuant to a 45-day March 5, 2025 Stay Order from the

6    Merit Systems Protection Board, which was requested by the Office of Special Counsel" (Dkt.

7    No. 127-6 at ¶4). It is unclear how the denial of a stay would thus harm USDA — though it

8    remains clear that granting the stay would put organizational plaintiffs at risk should there be

9    any failure of relief from the MSPB order. Nowhere do relief defendants claim that they are

10   uniquely incapable of rehiring recently terminated probationers, only that doing so would

11   require them to contact and onboard employees, get them equipment, assign them duties, and

12   so forth. Each "harm" stems from the unwinding of the unlawful act and the return to the

13   status quo.

14       *Second*, defendants' attempt to cast the probationers' return to work as *harmful to those*

15   *employees* is rejected. Each probationer remains free to refuse relief defendants' offer of

16   reinstatement.

17       *Third*, the evidence available at the time showed that the relief agencies wished to retain

18   their employees and terminated them only because OPM directed them to do so. Only two of

19   the six relief defendants (DOD and DOI) now claim that they conducted performance reviews

20   of their probationary employees prior to termination (Dkt. Nos. 127-1, 127-3).

21       *Fourth*, defendants' suggestion that the preliminary injunction "precludes the Office of

22   Personnel Management ('OPM') from giving further guidance to agencies on personnel

23   matters" is incorrect. The undersigned stated from the bench:

24           To repeat, this order holds that OPM and Acting Director Ezell
             have no authority whatsoever to direct, order, or require in any
25           way that any agency fire any employee.

26           Now, given the arguments and the facts in this case, namely, that
             defendants have attempted to recast these directives as mere
27           guidance, this order further prohibits defendants from giving
             guidance as to whether any employee should be terminated.

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1    (Dkt. No. 120 at 52–53 (emphasis added)).  The meaning of the order is plain:  OPM cannot

2    direct another agency to fire an employee simply by dressing up the directive as guidance.  The

3    undersigned has not and cannot circumscribe OPM's lawful performance of statutorily

4    authorized functions, including issuing guidance that goes no further.

5         *Finally*, defendants point out that the undersigned himself "noted that appellate

6    consideration of the preliminary injunction would be appropriate" (Dkt. No. 127 at 3).  True.

7    All parties may appeal the grant (or denial) of an injunction as of right.  28 U.S.C.

8    § 1292(a)(1).  Defendants are requesting a stay.  The propriety of appellate review has little

9    bearing on the propriety of a stay.

10        Defendants' request is **DENIED**.

11

12        **IT IS SO ORDERED.**

13

14    Dated:  March 15, 2025.

15                                                        _____

16                                                        WILLIAM ALSUP
                                                          UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

                                                5