UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAR 17 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES, AFL-CIO;
et al.,

          Plaintiffs - Appellees,

  v.

UNITED STATES OFFICE OF
PERSONNEL
MANAGEMENT and CHARLES EZELL,
in his official capacity as Acting Director of
the U.S. Office of Personnel Management,

          Defendants - Appellants,

and

HOWARD W. LUTNICK, Secretary of
Commerce; et al.,

          Defendants.

No. 25-1677

D.C. No.
3:25-cv-01780-WHA
Northern District of California,
San Francisco

ORDER

Before: SILVERMAN, BADE, and DE ALBA, Circuit Judges.
Order by Judges SILVERMAN and DE ALBA; Partial Dissent by Judge BADE.

The court has received the emergency motion to stay. The request for an

immediate administrative stay is denied. *See Doe #1 v. Trump*, 944 F.3d 1222,

1223 (9th Cir. 2019). Given that the district court found that the employees were

wrongfully terminated and ordered an immediate return to the status quo ante, an

administrative stay of the district court's order would not preserve the status quo. It

would do just the opposite -- it would disrupt the status quo and turn it on its head.

*See National Urban League v. Ross*, 977 F.3d 698, 700-01 (9th Cir. 2020).

The response to the emergency motion is due March 18, 2025. The optional

reply in support of the motion is due March 20, 2025.

25-1677

*Am. Fed'n of Gov't Emps., AFL-CIO, et al. v. U.S. Off. of Pers. Mgmt., et al.*, No. 25-1677

BADE, Circuit Judge, dissenting:

The government requests an emergency temporary stay (also referred to as an administrative stay) of the district court's March 14, 2025 preliminary injunction that requires six federal agencies[1] to "immediately offer reinstatement to any and all probationary employees terminated on or about February 13th and 14th, 2025." *Am. Fed'n of Gov't Emps., AFL-CIO, et al., v. U.S. Off. of Pers. Mgmt., et al.*, No. 25-1780, Dkt. 132 (N.D. Cal. Mar. 14, 2025) (Dist. Dkt.); Dist. Dkt. 120, p. 52–53 (Mar. 13, 2025, preliminary injunction hearing transcript).[2]  The district court also ordered the government to produce lists of those employees within seven days.[3]  Dist. Dkt. 120, p. 53.  The government also seeks a stay of the preliminary injunction pending appeal.  Plaintiffs oppose both motions.  Only the

---

[1]  Namely, the Veterans Administration, Department of Agriculture, Department of Defense, Department of Energy, Department of the Interior, and Department of the Treasury.

[2] The district court's preliminary injunction order incorporates its reasoning stated from the bench at the hearing on March 13, 2025.  Dist. Dkt. 132, p. 14.

[3] The district court further prohibited the Office of Personnel Management (OPM) from "giving guidance as to whether any employee should be terminated" and required that any terminations of the agencies' employees be "made by the agencies themselves," if at all, and in conformity with the Civil Service Reform Act and Reduction in Force Act.  Dist. Dkt. 120, p. 53.  I would not administratively stay these portions of the preliminary injunction.

request for an administrative stay is before us now.  Because I would grant a

limited administrative stay, I respectfully dissent.

I

After the termination of federal probationary employees beginning on

February 13, 2025, Plaintiffs filed a complaint for declaratory and injunctive relief

on February 19.  Dist. Dkt. 1.  Four days later, Plaintiffs moved for a temporary

restraining order (TRO) to halt any further terminations of federal probationary

employees, require the government to identify the terminated employees, rescind

OPM's termination directive, and restore the agencies and their employees to their

status prior to the directive.  Dist. Dkt. 18.  In their response, filed February 26, the

government argued, in part, that OPM did not direct agencies to terminate any

probationary employees but instead asked agencies to review probationary

employees based on how their performance advanced each agency's mission.  Dist.

Dkt. 33, p. 4–6, 21–22.

On February 27, the district court issued an oral TRO from the bench,

declaring that OPM's "efforts to direct the termination of employees" at the six

agencies were "illegal, invalid and must be stopped and rescinded" and requiring

that OPM communicate that decision to the agencies by the following day.  Dist.

Dkt. 45, p. 24.  On February 28, the district court amended the February 27 bench

2

order to require that OPM provide the agencies with written notice of the TRO. Dist. Dkt. 45, p. 24.

On March 13, the district court held a hearing on the preliminary injunction request. Dist. Dkt. 120, p. 4. The parties disputed whether OPM "directed" the February 13 and 14 terminations or whether the agencies independently terminated probationary employees. *See, e.g.*, Dist. Dkt. 120, pp. 7, 14. Plaintiffs insisted that the "only appropriate relief" was "rescission of the terminations" allegedly carried out in accordance with OPM's instructions. Dist. Dkt. 120, pp. 9–10. The government stipulated that the TRO "can continue as a preliminary injunction as is." Dist. Dkt. 120, p. 28; *see also* Dist. Dkt. 75, p. 1. At the conclusion of the hearing, the district court orally granted the preliminary injunction from the bench and filed a written order the next day.[4] Dist. Dkt. 120, p. 52; Dist. Dkt. 132.

After the hearing, the government filed a notice of appeal from the district court's order granting the preliminary injunction and filed an emergency motion with this court requesting (1) a stay pending appeal and (2) an administrative stay pending disposition of the stay motion. Dist. Dkt. 119.

---

[4] The district court concluded that it likely had jurisdiction only over the claims of the organizational plaintiffs and, therefore, the TRO and subsequent preliminary injunction address only the claims of those plaintiffs. Dist. Dkt. 45, p. 13.

II

"When considering the request for an administrative stay, our touchstone is the need to preserve the status quo." *Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020).  An administrative stay is limited in nature and duration—it is intended to "minimize harm while an appellate court deliberates" and lasts "no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *United States v. Texas*, 144 S. Ct. 797, 798–99 (2024) (Barrett, J., concurring); *see also Nat'l Urb. League*, 977 F.3d at 700–01 (explaining that "an administrative stay 'is only intended to preserve the status quo until the substantive motion for a stay pending appeal can be considered on the merits'" (quoting *Doe #1 v. Trump*, 944 F.3d 1222, 1223 (9th Cir. 2019))); *Nken v. Holder*, 556 U.S. 418, 427 (9th Cir. 2009) (explaining that the authority to enter an administrative stay "allows an appellate court to act responsibly").  "Once the court is equipped to rule" on the merits of the motion, it is obligated to do so. *Texas*, 144 S. Ct. at 799 (Barrett, J., concurring).

Given its limited nature, an administrative stay "does not constitute in any way a decision as to the merits of the motion for stay pending appeal." *Doe #1*, 944 F.3d at 1223.  Therefore, the court "defer[s] weighing the *Nken* factors until the motion for stay pending appeal is considered." *Nat'l Urb. League*, 977 F.3d at 702 (footnote omitted).  *But see Texas*, 144 S. Ct. at 799 (Barrett, J., concurring)

4

(noting that "judges have cited the underlying merits as a reason to grant an administrative stay").

Applying these principles to the government's request for an administrative stay, the key considerations are (1) the relevant status quo, and (2) whether a temporary stay is necessary to preserve that status quo. As for the first consideration, "status quo" is an ill-defined concept, but previous published orders from our court, while not entirely consistent, provide some guidance. For example, in *Doe #1*, we denied the government's request for an administrative stay of a district court's nationwide injunction suspending a Presidential Proclamation because "the status quo would be disrupted by granting the temporary stay request." 944 F.3d at 1223. The Presidential Proclamation at issue provided for "major and unprecedented" changes to American immigration policy and had not yet "gone into effect." *Id.* Therefore, the "status quo" was the state of affairs without the Proclamation in effect. *See id.* (also reasoning that, because the government only alleged "long-term" harms, there was an "absence of a sufficient exigency to justify *changing* the status quo" (emphasis added)).

In *Al Otro Lado v. Wolf*, we granted an administrative stay of a district court's injunction that prevented the government from enforcing an asylum regulation against members of a provisionally certified class. 945 F.3d 1223, 1224 (9th Cir. 2019). The enjoined regulation had been in effect for about five months,

and we determined that prohibiting its application "could cause complications at

the border in the period before the motion for stay pending appeal is decided." *Id.*

Together, *Doe #1* and *Al Otro Lado* establish that the status quo is anchored to the

time immediately preceding the issuance of the preliminary injunction.[5]

The majority's order relies on *National Urban League* to conclude that an

administrative stay would upend the status quo. There, we declined to grant an

administrative stay of a district court's preliminary injunction staying a replan

schedule for the census. 977 F.3d at 700, 703. Under the replan, the Census

Bureau announced plans to complete field work and data collection by September

30, 2020. *Id.* at 700. On September 5, the district court entered a TRO, and on

September 24, the district court entered a preliminary injunction preventing the

---

[5] Plaintiffs define "status quo" as the "legally relevant relationship between the parties before the controversy arose," *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 684 (9th Cir. 2023) (en banc) (citation omitted), or the "last uncontested status" before the "pending controversy," *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) (citation omitted). Therefore, they argue that the status quo here refers to the time before the terminations occurred. But Plaintiffs cite cases addressing the status quo relevant to preliminary injunctions, not administrative stays. *See Fellowship of Christian Athletes*, 82 F.4th at 683–84; *GoTo.com, Inc.*, 202 F.3d at 1210. Instead of a preliminary injunction, a better proxy to determine the status quo that is relevant here is a stay pending appeal, which "suspend[s] *judicial alteration* of the status quo." *Nken*, 556 U.S. at 429 (emphasis added) (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). In other words, the status quo is the state of affairs immediately before the underlying judicial action (here, the preliminary injunction).

Bureau from implementing the September 30 deadline. *Id*. Even though the Bureau had begun winding down field operations in anticipation of the September 30 deadline, we concluded that an administrative stay would "upend the status quo, not preserve it" because it would allow the process of disbanding census workers to resume, thereby eliminating the Bureau's future ability to conduct field work. *Id*. at 701. We also concluded that a temporary stay could moot the underlying lawsuit because the census needed to be completed by a specific date. *Id*. at 702.

Here, the six agencies identified in the preliminary injunction have completed the challenged terminations. The preliminary injunction will change that status quo by requiring those agencies to "immediately offer reinstatement to any and all probationary employees terminated on or about February 13th and 14th, 2025," and it seeks to facilitate that change by requiring the agencies to "submit a list of all probationary employees terminated on or about February 13th and 14th with an explanation as to each of what has been done to comply with" the injunction.[6] Dist. Dkt. 120, pp. 52–53. A limited administrative stay would briefly

---

[6] The other provisions of the preliminary injunction do not change the status quo or at least have a far more minor effect on it. First, the TRO was already in place; the injunction extended it. Dist. Dkt. 120, p. 52. Second, Plaintiffs allege relatively minimal use of the OPM "template letter" after February 13th and 14th. *See* Dist. Dkt. 90, pp. 2 ¶ 5, 26 ¶ 120, 33 ¶ 131, 34 ¶ 135 & n.50. *But see* Dist. Dkt. 90, p. 36 ¶ 143. Therefore, prohibiting the agencies from using the OPM template letter does not significantly change the status quo. Third, the government represents that OPM has not been directing agencies to terminate employees, *see, e.g.*, Dist.

pause that change while we decide the merits of the motion for stay pending

appeal.  And the concerns over mootness in *National Urban League* are not present

here.

As for whether an administrative stay is necessary to preserve the status quo,

the government persuasively argues that the district court's preliminary injunction

order imposes a substantial administrative burden.  That order requires the six

agencies to offer reinstatement to thousands of terminated employees, who may

accept and require onboarding, credentialing, and other human resources or

administrative action.  Dist. Dkt. 120, p. 52.  The agencies must also submit a list

of all probationary employees who were terminated on February 13 and 14 along

with "an explanation" of what has been done to comply with the court's order by

Thursday, March 20.  Dist. Dkt. 120, p. 53.  What is more, these undertakings

would cause further confusion and uncertainty if this panel later determines that

the *Nken* factors are satisfied and grants the motion for a stay pending appeal, and

---

Dkt. 120, pp. 15, 26, 29, so the injunction's order for the agencies to cease
termination of employees at OPM's direction should have minimal effect.  At most,
it holds the government to its representations about the existing state of affairs.
Fourth, the injunction's prohibition on "defendants . . . giving guidance as to
whether any employee should be terminated," Dist. Dkt. 120, p. 53, still allows the
agencies to lawfully terminate their own employees and is therefore simply another
order not to act at the direction of OPM or another agency.  Because the government
represents that terminations are not being ordered by other agencies, *see, e.g.*, Dist.
Dkt. 120, pp. 29, 46–47, these provisions of the injunction either do not affect the
status quo or hold the government to its word.

then be all for naught if this court vacates the preliminary injunction.  A temporary

stay would at least mitigate this potential whiplash effect.

Plaintiffs do not contest these assertions.  They argue that government

services upon which they and their organizational members rely have been thrown

into chaos by the terminations and that they will continue to be injured by the

government's inability to render services.  But Plaintiffs offer no reason to believe

that *immediate* offers of reinstatement would cure these harms.  Instead, the

administrative undertaking of immediately reinstating potentially thousands of

employees would likely draw (already depleted) agency resources away from their

designated service functions.

Finally, granting an administrative stay now would allow us to resolve the

motion for a stay pending appeal with the time necessary for careful deliberation,

and before the government is required to take action that could be rendered

unnecessary by a subsequent decision on the merits of the motion.

## III

In sum, a limited administrative stay is necessary to preserve the status quo

as it existed prior to the district court's preliminary injunction.  Doing so will allow

us to rule on the motion for a stay pending appeal without potentially subjecting

the government and the terminated employees to whiplash caused by diverging

downstream decisions.  Therefore, I conclude that we should grant a temporary,

limited administrative stay of the portions of the preliminary injunction that

(1) require the government to "immediately offer reinstatement to any and all

probationary employees terminated on or about February 13th and 14th, 2025";

and (2) require the government to "submit a list of all probationary employees

terminated on or about February 13th and 14th with an explanation as to each of

what has been done to comply with" the preliminary injunction by March 20, 2025.

Dist. Dkt. 120, pp. 52–53.  I respectfully dissent.

10