# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF KRYSTI J. WELLS

Pursuant to 28 U.S.C. § 1746, I, Krysti J. Wells declare as follows:

1.     I am the Director of the Office of Human Capital Operations, Office of Mission Support, at the U.S. Environmental Protection Agency ("EPA") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the EPA, or on information provided to me by EPA employees.

2.     I have served in this position since October 22, 2023. In my role at the EPA, I am responsible for operational personnel management. I have the responsibility for overseeing the recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.     The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended

tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.        On January 20, 2025, EPA received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.        EPA terminated approximately 419 probationary employees between February 14, 2025 and February 21, 2025.

7.        I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring EPA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.        Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on EPA, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave, leave without pay, or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, EPA has immediately begun reinstating Affected Probationary Employees on a leave status, as permitted by the TRO.  On March 16, 2025 between 5-6 P.M. ET, EPA sent emails to the personal email addresses of all the Affected Probationary Employees notifying them that their terminations were rescinded, as required by the TRO.

11.     Most of these employees were returned in a paid administrative leave status. Some, who were in an unpaid leave status prior to their termination (including students on leave for the school year), were returned to a leave without pay status.

12.     EPA uses the Department of Interior's HR processing system, Federal Personnel and Payroll System ("FPPS"). FPPS was offline starting at 5 P.M. ET on March 15, 2025. It remained unexpectedly offline until approximately 12 P.M. ET on March 17, 2025. As a result, EPA has not yet processed all of the cancellations for the relevant termination actions in FPPS. However, all of the timecards were updated to change the Affected Probationary Employees' statuses and, as noted above, Affected Probationary Employees all received a notice that their termination was rescinded on March 16, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/   KRYSTI WELLS    Digitally signed by KRYSTI
WELLS
Date: 2025.03.17 17:31:01
-04'00'

Krysti J. Wells

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| Maryland, et al., | |
|      Plaintiffs, | Case No. 1:25-cv-00748-JKB |
|      v. | |
| United States Department of Agriculture, et al., | |
|      Defendants. | |

**DECLARATION OF REESHA TRZNADEL**

Pursuant to 28 U.S.C. § 1746, I, Reesha Trznadel declare as follows:

1.      I am the Acting Chief Human Capital Officer at the United States Department of Energy ("DOE") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of DOE, or on information provided to me by DOE employees.

2.      I have served in this position since February 28, 2025.  In my Acting role at DOE, I oversee those responsible for personnel management. I oversee those responsible for personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are generally employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." An employee's appointment is not final until they have completed their probationary period.

5.      On January 20, 2025, although I was not serving in this position at that time, it is my understanding that DOE received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      On or around February 13 and February 14, 2025, DOE terminated approximately 555 probationary employees.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring various Defendants including DOE to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status could impose burdens on DOE and cause significant confusion and turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status are being onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions,

receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, DOE has immediately begun cancelling the termination actions for all of its 555 Affected Probationary Employees. By 1:00 p.m. on March 17, 2025, DOE had cancelled the termination notices for approximately 319 of its 555 Affected Probationary Employees and placed them in a retroactive Administrative Leave status from the date of removal. DOE completed this process for the remaining Affected Probationary Employees by 1:35 p.m. on March 17, 2025. If any of these 555 employees ultimately choose not to return to employment with the Department, but instead choose to resign, their official records (eOPF) will reflect the date of resignation specific to the date it was communicated to leadership.

11.     All Affected Probationary Employees have been placed in a retroactive Administrative Leave status that will continue until their badging and IT access are restored, at which time they will be converted to an Active Duty status.

12.     DOE continues working to reinstate employees by working with Agency leadership to arrange for an orderly return to the office (onboarding) while the employees are in an administrative leave status. Additionally, DOE is working to restore benefit entitlements for all the employees and ensure all personnel records are corrected and accurate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/ Reesha Trznadel

REESHA TRZNADEL
ACTING CHIEF HUMAN CAPITAL OFFICER
US DEPARTMENT OF ENERGY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Maryland, et al.,

      Plaintiffs,                                                    Case No. 1:25-cv-00748-JKB

      v.

United States Department of Agriculture,

et al.,

      Defendants.

**DECLARATION OF JESSICA S. PALATKA**

Pursuant to 28 U.S.C. § 1746, I, Jessica S. Palatka declare as follows:

1.      I am the Chief Human Capital Officer for the U.S. Department of Commerce (Commerce) headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department of Commerce, or on information provided to me by Commerce employees.

2.      I have served in this position since September 2021. In my role at Commerce, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, Commerce received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring Commerce to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7.      Between January 20, 2025, and March 3, 2025, Commerce terminated 791 probationary employees out of approximately 9,000 total probationary and trial period employees.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on Commerce, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and other

requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.    Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.    Nonetheless, Commerce immediately began reinstating Affected Probationary Employees. Twenty-seven of the 791 employees had been reinstated within days of their terminations for various operational reasons. As to the remaining 764 Affected Probationary Employees, Commerce has issued notification of their reinstatement pursuant to the TRO. By 1:00 pm EDT today, March 17, 2025, Commerce had notified 736 of the Affected Probationary Employees of their reinstatement. For the remaining 28 Affected Probationary Employees, as of 1:00 pm EDT today, March 17, 2025, Commerce had not yet been able to locate personal contact information for those Affected Probationary Employees; however, as of 4:15pm on March 17, Commerce had notified all 764 Affected Probationary Employees of their reinstatement.

11.    Commerce will maintain all Affected Probationary Employees reinstated pursuant to the TRO in administrative leave status, retroactive to the date of termination.

12.    While it was not feasible for Commerce to process all administrative actions to complete the reinstatements by the time of filing, Commerce is working diligently to finalize them within seven days; all reinstatements will nonetheless be retroactive to the date of termination.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/ JESSICA PALATKA

Digitally signed by
JESSICA PALATKA
Date: 2025.03.17
18:40:04 -04'00'

Jessica S. Palatka

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF ROLAND EDWARDS

## DEPARTMENT OF HOMELAND SECURITY

Pursuant to 28 U.S.C. § 1746, I, Roland Edwards, declare as follows:

1.     I am the Chief Human Capital Officer of the Department of Homeland Security (DHS) headquartered in Washington, D.C.  I oversee the human capital functions of the DHS and its Components, including the Federal Emergency Management Agency (FEMA), the Cybersecurity and Infrastructure Security Agency (CISA), and United States Customs and Immigration Services (USCIS).  I make this Declaration based on my own personal knowledge, on information contained in the records of the DHS, or on information provided to me by DHS employees.

2.     I have served in this position since March 13, 2022.  In my role at the DHS, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and the tracking and recording of personnel actions, including terminations. I assist in

ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are employees who have less than one year of current continuous service under other than a temporary appointment.  In the excepted service, the trial period may require up to two years of current continuous service in the same or similar positions.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the DHS received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      The DHS terminated approximately 313 probationary employees between January 20, 2025 and March 14, 2025.  This number excludes probationary employees who were terminated in individualized actions based on their performance or conduct, and therefore excludes individuals who do not meet the definition of "Affected Probationary Employees" in paragraph 10(c) of the Temporary Restraining Order (TRO) entered in this case on March 13, 2025.

7.      I have been provided and have reviewed the TRO issued in this case on March 13, 2025, requiring the DHS to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

2

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on the DHS, cause significant confusion, and cause turmoil for the terminated employees. Specifically, to the extent that employees are offered reinstatement into full duty status (as opposed to administrative leave), they would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.      Nonetheless, the DHS has immediately begun reinstating Affected Probationary Employees.  The DHS personnel system is linked to its payroll system, and personnel actions are processed with each payroll cycle.  Thus, complete reinstatement is a multi-stage process that requires preparing personnel actions for processing with the next payroll cycle.  By 1:00 PM on March 17, 2025, the DHS took steps to place Affected Probationary Employees into administrative leave and, has prepared more than 310 personnel actions for processing.  Of the 313 Affected Probationary Employees, the DHS identified 1 employee who declined reinstatement, 1 employee who is currently employed by the DHS in another Component, and another employee who was already returning to service in order to participate in the Deferred Resignation Program.  In addition to preparing personnel actions for processing, the DHS has sent notice of reinstatement to affected probationary employees.  The DHS is working diligently to take all other necessary

3

actions to reinstate medical benefits and assess premiums, process within-grade increases and other secondary personnel actions, correct leave balances, and carry out other administrative tasks. For Affected Probationary Employees who do not want to be reinstated (*e.g.,* probationary employees who obtained alternative employment and do not want to come back), DHS is offering the option of voluntary resignation.

11.     Employees reinstated pursuant to the TRO have been placed into administrative leave with full pay and benefits.

12.     DHS continues working to ensure that all Affected Employees are reinstated as quickly as possible.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

BENJAMIN
R EDWARDS
Digitally signed by
BENJAMIN R EDWARDS
Date: 2025.03.17
18:48:48 -04'00'

Roland Edwards

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF ANNE BYRD

Pursuant to 28 U.S.C. § 1746, I, Anne Byrd, declare as follows:

1.    I am the Assistant Secretary for Administration for the United States Department of Transportation, which is headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the United States Department of Transportation, or on information provided to me by United States Department of Transportation employees.

2.    I have served in this position since February 25, 2025. In my role at the United States Department of Transportation, I serve as the Department's Chief Human Capital Officer pursuant to Secretarial delegation. 49 C.F.R. § 1.38. I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees. Prior to my appointment, I served as a Senior Advisor to the Secretary of Transportation since February 3, 2025.

3.      Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the United States Department of Transportation received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring the United States Department of Transportation to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7.      The United States Department of Transportation terminated approximately 788 probationary employees between February 14 and 24, 2025. Of these employees, 775 are Affected Probationary Employees.[1]

8.      Whether required by operation of the TRO or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on the United States Department of Transportation, cause significant confusion, and cause turmoil for the

_____

[1] Of the remaining 13 terminated employees, two were terminated based on individualized performance-based determinations, eight had their terminations rescinded before issuance of the TRO, two resigned, and one accepted the Deferred Resignation Program.

terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.       Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.      Nonetheless, the United States Department of Transportation has immediately begun reinstating Affected Probationary Employees. On Monday, March 17, 2025, the United States Department of Transportation informed 775 Affected Probationary Employees that it is rescinding the termination of their probationary/trial period termination and that they are being reinstated. Approximately 757 of these employees were informed of their reinstatement by 1:00 p.m. EDT. The remaining employees were informed no later than 1:10 p.m. EDT. The Department has notified all Affected Probationary Employees that they have been reinstated, and it is working diligently to complete additional administrative processes related to the reinstatement of these employees.

11.      All terminated probationary employees will be reinstated with pay and benefits to their previous position with the Department of Transportation and the federal service. They will receive their regular compensation for the period from February 15, 2025, to their return to duty. The record of the termination will be removed from their Official Personnel Folder.

12.    In order to effectuate an orderly return to the Department of Transportation, the terminated probationary employees will be placed on paid administrative leave through Wednesday, March 19, 2025. The Department of Transportation will coordinate the specifics of their return, including the restoration of their government equipment and Personal Identity Verification (PIV) card. Employees who decline to return will be directed to submit a formal written resignation from their position of record no later than Wednesday, March 19, 2025. Each employee who does not submit a resignation will be placed on active duty beginning Thursday, March 20, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

*Anne Byrd*

Anne Byrd

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

**DECLARATION OF JACQUELINE CLAY**

Pursuant to 28 U.S.C. § 1746, I, Jacqueline Clay, declare as follows:

1.     I am the Chief Human Capital Officer for the U.S. Department of Education, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department of Education, or on information provided to me by the Department of Education employees.

2.     I have served in this position since June 19, 2022. In my role at the Department of Education, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the Department of Education received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      The Department of Education terminated 65 probationary employees out of approximately 108 probationary employees between February and March, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring the Department of Education to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on the Department of Education, cause significant confusion, and cause turmoil for the terminated employees.  Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and

other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.    Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.    Nonetheless, the Department of Education processed reinstatements for the 65 Affected Probationary Employees prior to 1:00pm Monday, March 17, 2025. To the extent that the Department must complete additional administrative processes related to the reinstatement of these employees, the Department is acting diligently to complete such processes.

11.    All Affected Probationary Employees will be placed on paid administrative leave.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/ JACQUELINE CLAY
Digitally signed by JACQUELINE CLAY
Date: 2025.03.17 18:11:57 -04'00'

Jacqueline Clay

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture, et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF LORI A. MICHALSKI

Pursuant to 28 U.S.C. § 1746, I, Lori A. Michalski declare as follows:

1.    I am the Chief Human Capital Officer, Department of Housing and Urban Development, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the U.S. Department of Housing and Urban Development (HUD), or on information provided to me by HUD employees.

2.    I have served in this position since February 2021.  In my role at the Department of Housing and Urban Development, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and the tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.    Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.     The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.     On January 20, 2025, HUD received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.     HUD terminated approximately 312 probationary employees out of approximately 549 probationary employees on February 14, 2025.

7.     I have been provided with and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring HUD to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.     Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on HUD, cause significant confusion, and cause turmoil for the terminated employees. Specifically, employees offered reinstatement into full duty status will be required to obtain new security badges, reinstitute applicable security clearance actions, receive government furnished equipment, and require other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or before or after they have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, HUD has immediately begun reinstating Affected Probationary Employees.  As of this time, HUD has fully reinstated 13 employees, and by 1 pm on March 17, 2025 initiated reinstatement actions for 299 probationary employees.

11.     Eleven employees were reinstated effective March 10, 2025, and two were reinstated effective March 12, 2025.  Two hundred ninety-nine Affected Probationary Employees are being placed on administrative leave temporarily effective March 17, 2025.

12.     HUD has initiated the action to reinstate the 299 Affected Probationary Employees by the 1:00 p.m. deadline given by the TRO.  Email notifications are being sent to the affected employees beginning March 17, 2025, with information regarding their reinstatement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/    LORI
       MICHALSK
       I

Lori A. Michalski

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF MARK D. GREEN

Pursuant to 28 U.S.C. § 1746, I, Mark D. Green, declare as follows:

1.     I am the Deputy Assistant Secretary for Human Capital, Learning, and Safety at the U.S. Department of the Interior ("Department"), headquartered in Washington, D.C.  I have served in this position since September 2022. I make this Declaration based on my own personal knowledge, on information contained in the records of the Department, or on information provided to me by Department employees.

2.     In my role at the Department, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary and trial period appointees.

3.     Probationary appointees in the competitive service are individuals who have been working in their respective positions for less than one year. In the excepted service, the trial period is generally two years.

4.      Probationary and trial periods are part of the hiring process, and probationary and trial period appointees have extremely limited protections against termination compared to individuals who satisfy the definition of "employee," and accordingly enjoy greater due process protections. Probationary and trial periods are essentially extended tryouts for finalized appointments. Supervisors evaluate probationary and trial period appointees to determine whether the individuals would be a good fit for long-term employment. While working throughout probationary or trial periods, individuals receive no assurance of final appointments or of becoming permanent employees.

5.      On or about January 20, 2025, I reviewed a guidance memorandum issued by the Office of Personnel Management ("OPM"), which requested that the Department and other agencies review all probationary and trial period appointees and identify which individuals should be retained and which should be terminated. Consistent with the OPM guidance, the Department reviewed all probationary and trial period appointees' performances to determine which individuals to keep and which to terminate.  The Department continued this review process even after OPM clarified its earlier guidance on February 14 and 24, 2025.

6.      On or after February 14, 2025, the Department retained, and did not terminate, the competitive service appointments of 1968 individuals during their respective probationary periods and did not terminate the excepted service appointments of 422 individuals during their respective trial periods. However, on or after February 14, 2025, the Department did terminate the competitive service appointments of 1303 individuals during their respective probationary periods and did terminate the excepted service appointments of 409 individuals during their respective trial periods, for a total of 1712 termination actions taken by the Department. Although OPM offered language for potential use in developing termination notices, the Department did not adopt OPM's

suggestions, and instead, independently developed language used in the termination notices that informed affected individuals of these personnel decisions.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this litigation on March 13, 2025, requiring the Department to reinstate all Affected Probationary [and Trial Period Appointees], as such individuals are defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, the reinstatement of all probationary and trial period appointees whom the Department terminated on or after February 14, 2025, imposes substantial burdens on the Department, causes significant confusion, and will potentially subject terminated individuals to the receipt of conflicting or contradictory information.  Specifically, reinstating terminated appointees imposes significant administrative burdens on the Department. Among other things, all reinstated individuals must be onboarded again, which includes the labor-intensive processes of coordinating human resources efforts and paperwork, issuing new security badges and government-furnished equipment, reinstituting applicable security clearance actions, arranging for any necessary and applicable training, re-enrolling affected individuals in benefits programs, assessing the appropriateness of granting reinstated appointees administrative leave, and calculating and processing the amount of any financial obligation that the Department may owe as a result of the reinstatements and the amounts, if any, that reinstated individuals request to have withheld for various work-related benefits. The Department must also take other requisite administrative actions, such as evaluating the off-duty actions of reinstated appointees during the period of separation, and auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

3

9.     Additionally, reinstating terminated appointees causes confusion for the Department and reinstated individuals, more than four hundred forty (440) of whom have appeals currently pending before Administrative Judges assigned to U.S. Merit Systems Protection Board (MSPB) Regional and Field Offices. Persons who were terminated just weeks ago have now been reinstated, and the effect of these reinstatements will impact pending or potential MSPB appeals and will compel preservation, at least temporarily, of the now-rescinded termination actions. Yet, an appellate ruling could reverse the district court's order shortly after terminated individuals have been reinstated through extended grants of administrative leave, complete restoration to full-duty status, or otherwise. The Department could reverse reinstatements in that circumstance and correspondingly impact pending or potential or dismissed MSPB appeals. And even though the terminated individuals have now been reinstated prior to any reversal of the district court's order, the reinstated individuals remain probationary or trial period appointees and can again be subject to termination actions, which would again inform affected individuals of their rights associated with filing MSPB appeals, filing complaints pursuant to processes established by the U.S. Equal Employment Opportunity Commission, and filing complaints pursuant to processes established by the U.S. Office of Special Counsel.  In short, reinstated individuals will be subjected to multiple changes in their employment status in a matter of weeks and will be forced to untangle the maze of their potential appeal rights.

10.     The tremendous uncertainty associated with this confusion and these administrative burdens impede supervisors from appropriately managing their workforce. Work schedules and assignments are effectively being tied to hearing and briefing schedules set by the courts. It will be extremely difficult to assign new work to reinstated individuals in light of the uncertainty over their future status.

4

11.     Finally, reinstating terminated appointees interferes with the effective functioning of the Department. On and after February 14, 2025, the Department has made meaningful changes to address the challenged terminations, including reassigning the duties performed by the terminated individuals, many of whom will have no duties to perform upon reinstatement.

12.     Nonetheless, the Department has complied with the TRO by reinstating affected probationary period and trial period appointees.  As of 1 p.m. EDT on this date, the Department had (a) reinstated, by cancelling termination actions (a very time and labor intensive process) for, approximately forty-five percent (45%) of the 1301 individuals whose competitive service appointments the Department had terminated during their respective probationary periods and had (b) reinstated, by cancelling termination actions for, approximately twenty-five percent (25%) of the 409 individuals whose excepted service appointments the Department had terminated during their respective trial periods.  As of the time and date of this declaration, the Department had (c) reinstated, by cancelling termination actions for, approximately ninety-five percent (95%) of the 1301 individuals whose competitive service appointments the Department had terminated during their respective probationary periods and had (d) reinstated, by cancelling termination actions for, approximately seventy-five percent (75%) of the 409 individuals whose excepted service appointments the Department had terminated during their respective trial periods. Accordingly, as of the time and date of this declaration, the Department had reinstated, by cancelling termination actions for, approximately ninety percent (90%) of the 1710 individuals whom the Department had terminated during their respective probationary or trial periods on or after February 14, 2025. Throughout the remainder of this date, the Department will continue the reinstatement process, by cancelling termination actions, for the remaining ten percent (10%) of the 1710 individuals whom the Department terminated during their respective probationary or trial periods on or after February

14, 2025. The Department does not intend to reinstate two (2) individuals, both of whom qualify for exclusions from the TRO in accordance with 10(c).

13.    The Department has notified or attempted to notify, telephonically and electronically (via personal email addresses where and when known to the Department), all affected individuals of these reinstatement actions and the cancellations of the termination decisions, but to the extent that the Department needs to complete additional administrative processes related to these reinstatement/cancellation efforts, the Department continues to work diligently to complete such processes.

14.    The Department will continue to analyze all data and information relevant to termination actions, taken on or after February 14, 2025, that have affected or will affect individuals during their respective probationary or trial periods.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

Digitally signed by
MARK GREEN
Date: 2025.03.17
18:27:03 -04'00'

MARK D. GREEN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

### DECLARATION OF SYDNEY ROSE

Pursuant to 28 U.S.C. § 1746, I, Sydney Rose, declare as follows:

1.      I am the Chief Human Capital Officer within the U.S. Department of Labor ("DOL"), Office of the Assistant Secretary for Administration and Management, Office of Human Resources, headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of DOL, or on information provided to me by DOL employees.

2.      I have served in this position since March 24, 2013. In my role at DOL, I am responsible for personnel management. I have the responsibility for overseeing the human resources enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with Federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.     The probationary period is part of the hiring and selection process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.     On January 20, 2025, DOL received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.     I have been provided and have reviewed the temporary restraining order ("TRO") issued in this case on March 13, 2025, requiring DOL to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7.     With respect to DOL employees who meet the definition of "Affected Probationary Employees" set forth in the TRO, DOL notes that it issued probationary termination notices to approximately 170 probationary employees out of approximately 620 probationary and trial period employees. For approximately 167 of the 170 Affected Probationary Employees, their termination date was effective March 7, 2025; for the remaining three (3) Affected Probationary Employees, two had termination dates effective on February 20, 2025, and the third on February 21, 2025.

8.     Effective March 7, 2025, DOL rescinded the approximately 167 probationary termination notices of Affected Probationary Employees whose effective termination date was March 7, 2025. For the remaining three (3) probationary employees whose effective termination dates were prior to March 7, 2025, DOL rescinded their terminations and reinstated their

2

employment with no loss of pay prior to March 7, 2025. Accordingly, as of this time, DOL has

no Affected Probationary Employees who have not either returned to work or voluntarily separated

from DOL.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: March 17, 2025

*Sydney P. Rose*

/s/

Sydney Rose

Chief Human Capital Officer

U.S. Department of Labor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture, et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF ADAM MARTINEZ

Pursuant to 28 U.S.C. § 1746, I, Adam Martinez declare as follows:

1.     I am the Acting Chief Human Capital Officer of the Consumer Financial Protection Bureau ("Bureau") headquartered in Washington, D.C.  I make this Declaration based on my own personal knowledge, on information contained in the records of the CFPB, or on information provided to me by CFPB employees.

2.     I have served in this position since approximately, Monday, October 21, 2024.  In my role at the CFPB, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the CFPB received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      The CFPB terminated 117 probationary employees between February 11, 2025, and February 13, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring the Consumer Financial Protection Bureau to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025,

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status will impose substantial burdens on the CFPB, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status will have to be onboarded again, including the possibility of completing any applicable training, filling out human resources paperwork, obtaining new security badges,  reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as

auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.    Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.    Nonetheless, the CFPB has immediately begun reinstating Affected Probationary Employees.  By 3:30 pm on March 16, 2025, the CFPB reinstated 117 Affected Probationary Employees.  While CFPB has notified all Affected Probationary Employees that they have been reinstated, to the extent CFPB needs to complete additional administrative processes related to the reinstatement of these employees, CFPB is acting diligently to complete such processes.

11.    All reinstated employees will be immediately placed on administrative leave status while the CFPB continues to act to comply with the TRO and/or employees are to be assigned work by management/supervisors.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

ADAM
MARTINEZ
Digitally signed by
ADAM MARTINEZ
Date: 2025.03.17
17:17:22 -04'00'

Adam Martinez

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF BEATRICE (JULIE) BRILL

Pursuant to 28 U.S.C. § 1746, I, Beatrice Julie Brill declare as follows:

1.     I am the Acting Chief Human Capital Officer of the Small Business Administration (SBA), Office of Human Resources Solutions, (OHRS) headquartered in Washington, D.C.  I make this Declaration based on my own personal knowledge, on information contained in the records of the SBA, or on information provided to me by SBA employees.

2.     I have served in this position since February 12, 2025.  In my role at the SBA, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.    The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.    On January 20, 2025, SBA received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.    The Agency terminated 304 probationary employees out of approximately 700 probationary employees between February 11, 2025, and February 25, 2025. On February 18, 2025, SBA rehired 6 of those probationary employees. As of March 17, 2025, five remain employed with SBA and one voluntarily resigned, and thus were unaffected by the Court's recent order.

7.    I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring SBA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025,

8.    Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on Interior, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork,

obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.     Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subject to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, SBA has immediately begun reinstating Affected Probationary Employees. By 12:40 pm on March 17, 2025, SBA had sent notification to all 298 Affected Probationary Employees that they are reinstated. Seven notifications of the 298 were undeliverable, and the OHRS Office will conduct additional outreach to obtain updated employee contact information.

11.     127 of these employees were reinstated into administrative leave and will be provided backpay since the date of their release. 164 employees were previously on intermittent work schedules (non-pay status) at the time of their release and are being reinstated and returned into intermittent non-pay status (not on administrative leave). Because these employees were on an intermittent work schedule, the Agency does not owe them any backpay.

12.     SBA continues working to reinstate all Affected Probationary Employees. Further, while SBA has notified Affected Probationary Employees that they have been reinstated, to the extent SBA needs to complete additional administrative processes related to the reinstatement of these employees, SBA is acting diligently to complete such processes.

13.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

BEATRICE BRILL
Digitally signed by
BEATRICE BRILL
Date: 2025.03.17
16:41:53 -04'00'

Beatrice (Julie) Brill

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture, et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF DANIEL H. BENDLER

Pursuant to 28 U.S.C. § 1746, I, Daniel H. Bendler, declare as follows:

1.     I am the Deputy to the Acting Chairman and Chief Operating Officer of the Federal Deposit Insurance Corporation ("FDIC") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the FDIC, or on information provided to me by FDIC employees.

2.     I have served in this position since February 2022.  In my role at the FDIC, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and the tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the FDIC received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      The FDIC terminated approximately 156 probationary employees out of approximately 261 eligible probationary employees between February 18 and 19, 2025.  There were five probationary employees terminated as a part of the group that would have otherwise been terminated for individualized reasons based on performance/conduct.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring the FDIC to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees would impose substantial burdens on the FDIC, cause significant confusion, and cause turmoil for the terminated employees.  Specifically, employees' missed contributions to health benefits, flexible spending accounts, and thrift savings plan contributions will have to be calculated and recovered; employees' time cards must be individually restored, to include certifying the time lost during the termination; each employee would have to

pay back the lump sum payment already received for unused annual leave or set up a debt process

to remit the payment back; and the FDIC security office would need to reinstate initial or bridge

investigations for each employee.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after

terminated employees have been reinstated via administrative leave or have returned to full duty

status. In short, employees could be subjected to multiple changes in their employment status in a

matter of weeks.

10.     Nonetheless, the FDIC reinstated all Affected Probationary Employees as of 11:59

am today.  As of this time, the FDIC has rescinded the terminations of 151 Affected Probationary

Employees.

11.     As of today, the reinstated Affected Probationary Employees have been placed into

paid administrative leave status at the FDIC.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Dated: March 17, 2025

DANIEL
/s/ BENDLER

Digitally signed by
DANIEL BENDLER
Date: 2025.03.17
18:07:21 -04'00'

Daniel H. Bendler

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF SEPIDEH KEYVANSHAD

Pursuant to 28 U.S.C. § 1746, I, Sepideh Keyvanshad declare as follows:

1.     I am the Senior Deputy Assistant Administrator for the Office of Human Capital and Talent Management (HCTM) at the United States Agency for International Development (USAID) headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in USAID records, or on information provided to me by USAID employees.

2.     I have served in this position since approximately April 2024. In my role at USAID, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, USAID received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      USAID terminated, at the direction of USAID leadership, 270 probationary employees out of 295, effective March 7, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring USAID to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025,

8.      Upon receiving notice of the TRO, USAID immediately began reinstating Affected Probationary Employees through the following process. A cancellation of the termination action will be processed during Pay Period 5 with an effective date of March 7, 2025. The SF-50 documenting this cancellation will be available in eOPF on or about March 31, 2025. HCTM will email the SF-50 to all personal email addresses it has on file during the week of March 31, 2025.

9.      Additionally, by 1:00 pm EDT today, March 17, 2025, USAID sent a letter via email to all Affected Probationary Employees informing them of the above actions.

2

10.     Upon reinstatement, all reinstated probationary employees will be placed on paid administrative leave until further notice.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

*Sepideh Keyvanshad*
/s/

Sepideh Keyvanshad

Docusign Envelope ID: 665726AD-EC72-4675-9500-8654B30D8B4D

Case 3:25-cv-01780-WHA    Document 139-3    Filed 03/18/25    Page 49 of 67
Case 1:25-cv-00748-JKB    Document 52-1    Filed 03/17/25    Page 49 of 62

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture,

et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF JEREMY TAYLOR

Pursuant to 28 U.S.C. § 1746, I, Jeremy Taylor declare as follows:

1.      I am the Deputy Chief Human Capital Officer, Office of Human Resources Management, at the General Services Administration headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the General Services Administration, or on information provided to me by General Services Administration, Office of Human Resources employees.

2.      I have served in this position since July 2024. In my role at the General Services Administration, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and the tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

Docusign Envelope ID: 665726AD-EC72-467F-9E00-8664B30D8B4D
Case 3:25-cv-01780-WHA    Document 139-3    Filed 03/18/25    Page 50 of 67
Case 1:25-cv-00748-JKB    Document 52-1    Filed 03/17/25    Page 50 of 62

3.      Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, General Services Administration received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      The General Services Administration terminated approximately 366 probationary employees out of approximately 812 probationary and trial period employees between February 13, 2025 and March 7, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring the General Services Administration to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on the General Services Administration, cause significant confusion, and cause turmoil for the terminated employees.  Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out

Docusign Envelope ID: 665726AD-EC72-4675-9590-8654B30D8B4D

Case 3:25-cv-01780-WDB     Document 139-3     Filed 03/18/25     Page 51 of 67
Case 1:25-cv-00748-JKB     Document 52-1     Filed 03/17/25     Page 51 of 62

human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated via administrative leave or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, the General Services Administration has immediately begun reinstating Affected Probationary Employees. By 9:00am on March 17, 2025, The General Services Administration reinstated all its 366 Affected Probationary Employees. Subsequently, 2 of these employees declined to be reinstated. There are 0 decisions pending.

11.     While General Services Administration has notified all Affected Probationary Employees that they have been reinstated, to the extent General Services Administration needs to complete additional administrative processes related to the reinstatement of these employees, the General Services Administration is acting diligently to complete such processes.

12.     As of 1:00pm today, the General Services Administration has placed the 364 reinstated probationary employees on paid administrative leave.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

Signed by:

*Jeremy Taylor*

646749BC69944EC...

Jeremy Taylor

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

Maryland, et al.,

        Plaintiffs,

        v.

United States Department of Agriculture,

et al.,

        Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF TREVOR NORRIS

Pursuant to 28 U.S.C. § 1746, I, Trevor Norris, declare, as follows:

1. I am Deputy Assistant Secretary (DAS) for Human Resources (HR) for the United States Department of the Treasury, headquartered in Washington, D.C. I have served in this position since October 2017. As DAS for HR, I oversee all human capital programs for the Department of the Treasury and its bureaus (collectively, "Treasury"). I have the responsibility for tracking and recording personnel actions, including terminations.

2. Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

3. The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an

agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

4.  On January 20, 2025, Treasury received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

5.  Between February 19 and March 7, 2025, Treasury terminated approximately 7,605 out of approximately 16,663 probationary employees.

6.  I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring Treasury to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7.  Whether required by operation of the TRO here or another court or administrative order, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, reinstituting applicable security clearances, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

8.  Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

9.    Nonetheless, Treasury has immediately begun reinstating Affected Probationary Employees. Specifically, I worked with my colleagues within the office of the DAS for HR over the weekend of March 15-16 to develop an implementation plan for reinstating Affected Probationary Employees. At 10:30 A.M. on March 17, my office convened a meeting with the Human Resources Officers of Treasury's bureaus, and directed them to provide notice (via personal emails or other available means) to Affected Probationary Employees by 1:00 P.M. Bureaus were provided with a template notice informing employees that they were being reinstated immediately.

    a.    The Bureau of Engraving and Printing provided email notice of reinstatement to all of its 48 Affected Probationary Employees at 11:31 A.M. on March 17, 2025.

    b.    The Bureau of the Fiscal Service provided email notice to 168 of its 169 Affected Probationary Employees prior to 1:00 P.M. on March 17, 2025. The final remaining employee received notice at 1:07 PM after an invalid email address was corrected.

    c.    The United States Mint experienced delays in retrieving personal email addresses for its 8 Affected Probationary Employees, but managed to provide email notices to all 8 persons by 1:30 P.M., March 17, 2025.

    d.    Due to difficulty in compiling personal email addresses, the Internal Revenue Service (IRS) was not able to fully comply with the 1:00 deadline. It sent email notices to 6,387 of its 7,315 Affected Probationary Employees by 3:00 P.M. on March 17, 2025. The IRS has arranged for certified mail

3

notifications to be sent to all of its Affected Probationary Employees on March 18, 2025.

e. The Office of the Comptroller of the Currency (OCC) had not yet formally processed the terminations of its 73 Affected Probationary Employees (which was effective March 8), and as a result was able to formally place these employees in an administrative leave status on March 16. OCC also sent email notices to its affected employees, at 3:54 P.M. on March 17.

All Treasury bureaus are working expeditiously to complete administrative processing of the reinstatements in their Human Resources systems, including issuance of SF-50 Notice of Personnel Action Forms.

10.     Upon reinstatement, Treasury will place each affected employee in an Administrative Leave status.

11.     Treasury continues working to reinstate the 7,613 employees affected by the termination actions taken between February 19 and March 7, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

TREVOR NORRIS

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

## DECLARATION OF MARY PLETCHER RICE

Pursuant to 28 U.S.C. § 1746, I, Mary Pletcher Rice declare as follows:

1.      I am the Acting Principal Deputy Assistant Secretary for Administration within Departmental Administration at the United States Department of Agriculture ("USDA" or "Department") headquartered in Washington, D.C.  I make this Declaration based on my own personal knowledge, on information contained in the records of USDA, or on information provided to me by USDA employees.  I have served in this position since January 31, 2025, and I have been employed at USDA since 2018.

2.      In my role at USDA, I currently oversee the Department's Office of Human Resources Management and I have purview over USDA subagencies' Chief Operating Officers and Human Resources Offices.

3.      Approximately 5,714 probationary employees were terminated from USDA beginning February 13, 2025, and concluding on or around February 17, 2025. I have been provided, and have reviewed, the temporary restraining order ("TRO") issued in the above-

captioned case on March 13, 2025, requiring USDA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

4.      USDA is already reinstating the terminated probationary employees, pursuant to a 45-day March 5, 2025, Stay Order issued by the Merit Systems Protection Board ("MSPB"), which was requested by the Office of Special Counsel.

5.      On March 12, 2025, USDA reinstated all 5,714 Affected Probationary Employees by restoring them to the status they were in prior to their terminations and provided each with back pay from the date of their respective termination. As part of a phased plan for return-to-duty, upon returning to pay status, the Affected Probationary Employee will initially be placed on paid administrative leave. USDA began the notification process on Friday March 14th to all Affected Probationary Employees confirming their reinstatement. USDA is diligently working on providing this notice to all Affected Probationary Employees.

6.      A group of 1,070 seasonal Forest Service Affected Probationary Employees who were not in pay status at the time of their terminations (due to the off-season) have been reinstated to their prior unpaid status. Additionally, there are six Affected Probationary Employees in the Foreign Agricultural Service who were administratively furloughed prior to their terminations, and who have been reinstated to their prior administrative furlough status.

7.      USDA is acting diligently to complete the administrative steps related to notifying the Affected Probationary Employees of their reinstatement, processing the reinstatements for purposes of all relevant USDA record systems, and returning the reinstated employees to duty status.

8.      Whether required by operation of the March 5, 2025, MSPB Stay Order and/or this Court's March 13, 2025, Temporary Restraining Order, reinstating the terminated probationary employees is complex and places the following logistical burdens on USDA and its approximately 29 subordinate Mission Areas, Agencies, and Staff Offices, including USDA's multiple human resources offices: (1) initiating the process of placing all removed probationary employees, who received February 2025 termination letters, into pay status, and providing backpay, from the date of the termination notice through the present, which involves several systems and applies across multiple pay periods; (2) ascertaining whether some of the probationary employees choose to resign, due to having secured other employment or not wanting to return to duty at USDA; (3) reinstituting and ensuring operational status of secured LincPasses, office space, and equipment (including laptops in most instances) for those individuals whose mission criticality requires on-site work; and (4) addressing, as appropriate, any identified or substantiated threats to the physical safety of USDA's existing 111,000 person workforce and security of USDA's physical plants and assets across the nation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

MARY RICE    Digitally signed by MARY RICE
Date: 2025.03.17 18:20:46 -04'00'

/s/

MARY PLETCHER RICE

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture, et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF MARK ENGELBAUM

Pursuant to 28 U.S.C. § 1746, I, Mark Engelbaum declare as follows:

1.     I am the Assistant Secretary for Human Resources and Administration/Operations, Security, and Preparedness at the Department of Veterans Affairs (VA), headquartered in Washington, D.C.  I make this Declaration based on my own personal knowledge, on information contained in the records of the VA, or on information provided to me by VA employees.

2.     I have served in this position since February 13, 2025.  In my role at the VA, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the VA received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      VA initially terminated approximately 1,900 probationary employees between February 13, 2025, and February 24, 2025, out of approximately 46,000 probationary employees on board at VA at that time. Following administrative review, 1,683 remained terminated as of March 17, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring VA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on VA, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security

2

clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, VA has immediately begun rescinding the notice of termination and reinstating the employment of the Affected Probationary Employees. While notification efforts are still underway, the VA, by 1:00 pm EDT today, Monday, March 17, 2025, has for all intents and purposes, reinstated all Affected Probationary Employees, placing them in an initial administrative leave status with full pay and benefits, effective March 17, 2025. Affected Probationary Employees will also receive back pay from the date of termination to the date of reinstatement.

11.     Individual personal contact information is not immediately available for every individual employee at the Agency level. Accordingly, as of the signing of this declaration, the VA has begun sending rescission notices to those employees for whom contact information is available as well as to the servicing Human Resources offices of all 1,683 affected Probationary Employees. The Human Resources offices are notifying the supervisors of these employees, who have been instructed to expeditiously notify the Affected Probationary Employees that they are reinstated and in a pay status.  The Agency will follow up on a daily basis, starting on close of business Monday, March 17, 2025 until it has received verification that all impacted employees have been notified. VA has started the process to cancel the Standard Form (SF) 50s that

terminated the employment of the Affected Probationary Employees and expects this process to be completed no later than Tuesday, March 18, 2025.

12.     VA continues working to reinstate to all Affected Probationary Employees. VA is engaging the Affected Probationary Employees' supervisor to ensure employees receive the notice, are aware of their employment status, and are advised to maintain contact with their supervisor while on administrative leave. The VA is acting diligently to complete additional administrative processes related to the reinstatement of these employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/Mark Engelbaum 7:05 p.m.

Mark Engelbaum

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

     Plaintiffs,

     v.

United States Department of Agriculture,

et al.,

     Defendants.

Case No. 1:25-cv-00748-JKB

## DECLARATION OF JOHNATHAN J. GARDNER

Pursuant to 28 U.S.C. § 1746, I, Johnathan J. Gardner declare as follows:

1.     I am the Acting Associate Deputy Assistant Secretary for Human Capital, Department of Health and Human Services headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of the United States Department of Health and Human Services ("HHS"), or on information provided to me by the Department's Human Resources Directors.

2.     I have served in this position since August 12, 2024. In my role at HHS, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.     Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, HHS received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      Between February 14 and March 13, 2025, HHS issued termination notices to 3,248 probationary and trial period employees out of approximately 8,466 employees serving a probationary or trial period under HHS policy.[1]  HHS placed 2,537 probationary and trial period employees on administrative leave through March 14, 2025; HHS also placed 711 remaining probationary and trial period employees within the Centers for Disease Control and Prevention (CDC) on administrative leave with no set end date. However, between February 15 and March 13, 2025, 88 of these 3,248 probationary and trial period employees were subsequently taken off administrative leave and terminated before the end of their probationary period.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring HHS to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025,

---

[1]  HHS Policy requires all employees to serve a probationary or trial period.  However, some of these employees may be entitled to due process if they meet the definition of an employee under 5 U.S.C. § 7511(a)(1).

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on HHS, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, restoring to benefits programs and payroll, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.      Nonetheless, HHS has reinstated the Affected Probationary Employees.  As of this time, HHS has reinstated the 88 Affected Probationary Employees who were terminated before the end of their probationary period, between February 15 and March 13, 2025, as described in paragraph 6, *supra*.  HHS sent notification to all Affected Probationary Employees of their reinstatement by email or letter on March 17, 2025.

11.      Further, HHS has placed all reinstated probationary and trial period employees on administrative leave. In this regard, HHS has extended the administrative leave status of the 2,855 probationary and trial period employees who were scheduled to be terminated after March 14, 2025 following the completion of the previously scheduled administrative leave period, as described in paragraph 6, *supra*.  HHS notes that there is a difference between the number of Affected Probationary Employees issued termination notices and the number of Affected

Probationary Employees who were reinstated or had their administrative leave status extended. Some of this difference reflects the fact that, prior to March 13, 2025, HHS granted exceptions to allow some Affected Probationary Employees to return to duty. The remainder of this difference reflects the fact that, prior to March 13, 2025, HHS made a determination that some Affected Probationary Employees met the definition of an employee under 5 U.S.C. § 7511(a)(1) and thus were not probationary employees under § 7511(a)(1), and accordingly, HHS reinstated those Affected Probationary Employees prior to March 13, 2025. HHS sent notification to all Affected Probationary Employees of the extension of their administrative leave period, if applicable, by email or letter on March 17, 2025.

12. By 1:00 pm EDT today, Monday, March 17, 2025, HHS reinstated, or extended the administrative leave period for all of the Affected Probationary Employees within HHS, with two small sets of exceptions.

a. The first set of Affected Probationary Employees are those who were employed at NIH. HHS reinstated or extended the administration leave period for 90% of the NIH Affected Probationary Employees by 1:00 pm EDT today. However, during the course of this process, NIH experienced technical issues with the relevant personnel systems, which resulted in delays completing the reinstatement or extension process. NIH completed reinstating or extending the administrative leave period for the remaining 10% of Affected Probationary Employees by 1:30 p.m. EDT today.

b. The second set of Affected Probationary Employees are those CDC employees who were already on administrative leave as of March 13, 2025. Consistent with paragraph 6, *supra*, HHS is maintaining these Affected Probationary Employees on administrative leave, with no set end date, in compliance with the TRO.

4

13.     While HHS has notified all Affected Probationary Employees that they have been reinstated or that their administrative leave status has been extended as applicable, to the extent HHS needs to complete additional administrative processes related to the reinstatement of these employees, HHS is acting diligently to complete such processes.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

JOHNATHAN J. GARDNER -S

Digitally signed by JOHNATHAN J. GARDNER -S
Date: 2025.03.17 18:29:31 -04'00'

Johnathan J. Gardner