Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiff Organizations*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO;  et al.,<br><br>     Plaintiffs,<br><br>  v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,<br><br>     Defendants. | Case No. 25-cv-01780-WHA<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF RE: DEFENDANTS' ADMINISTRATIVE CHANNELING JURISDICTIONAL ARGUMENT** |

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, #3:25-cv-01780-WHA

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................... 2

DISCUSSION .................................................................................................................................... 4

    1.    Congress Never Intended for the Union Plaintiffs' Claims Challenging OPM's Unlawful Mass Terminations to Be Heard by the MSPB or FLRA ............... 4

    2.    The Facts of this Case Establish That Any Available Administrative Channel Is Being Destroyed, Contrary to the Representations of Defendants to this Court ..................................................................................................................... 10

    3.    The Union Plaintiffs Also Should Be Able to Proceed on Behalf of Members Who Are Not Terminated Probationary Employees. ................................................ 12

CONCLUSION ................................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*AFGE v. Trump*,
  929 F.3d 748 (2019) ........................................................................................................... 8, 9

*American Federation of Government Employees v. Stone*,
  502 F.3d 1027 (9th Cir. 2007) ........................................................................................... 10, 11

*Axon Enter., Inc. v. Fed. Trade Comm'n*,
  598 U.S. 175 (2023) ............................................................................................................ 7, 9

*BedRoc Ltd., LLC v. United States*,
  541 U.S. 176 (2004) ................................................................................................................ 5

*Bessent v. Dellinger*,
  U.S. S. Ct. No. 24A790, United States' Application to Vacate TRO (filed Feb. 16,
  2024) ....................................................................................................................................... 4

*Brock v. United States*,
  64 F.3d 1421 (9th Cir. 1995) .................................................................................................. 7

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ................................................................................................................ 5

*Dellinger v. Bessent*,
  Case No. 1:25-cv-000385-ABJ, (D.D.C. 2025) Dkt. 1 ............................................................ 3

*Dellinger v. Bessent*,
  Case No. 25-5052 (D.C. Cir. 2025) (per curiam) (filed March 10, 2025) ............................... 4

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019) ................................................................................................................ 7

*Elgin v. Department of the Treasury*,
  567 U.S. 1 (2012) ............................................................................................................... 7, 10

*Fed. L. Enf't Officers Ass'n v. Ahuja*,
  62 F.4th 551 (D.C. Cir. 2023) . Dkt. 33 ................................................................................ 8, 9

*Feds for Med. Freedom v. Biden*,
  63 F.4th 366 (5th Cir. 2023) (en banc), *cert granted judgment vac'd on other
  grounds*, 144 S.Ct. 480 (2023) ................................................................................................ 8

*Fort Bragg Ass'n of Educators, NEA and Dep't of Army, Fort Bragg Sch.*,
  31 F.L.R.A. 701 (1988) ........................................................................................................... 6

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) .................................................................................................................. 7

*Grundmann v. Trump*,
    No. 25-425 (D.D.C. 2025) .......................................................................................................... 4

*Harris v. Bessent*,
    No. 25-412 (D.D.C.), Dkt. 6 (filed Feb. 13, 2024) ..................................................................... 4

*Kisor v. Wilkie*,
    588 U.S. 558 (2019) (plurality opinion) ..................................................................................... 6

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ......................................................................................................... 5, 7, 10

*Mariano v. United States*,
    529 F.3d 1243 (9th Cir. 2008) .................................................................................................... 7

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ............................................................................................................ 10, 11

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) .................................................................................................................... 5

*NTEU and Dep't of Treasury, IRS*,
    60 F.L.R.A. 783 (2005) ............................................................................................................... 6

*NTEU v. Helfer*,
    53 F.3d 1289 (D.C. Cir. 1995) .................................................................................................... 8

*Saloojas, Inc. v. Aetna Health of California, Inc.*,
    80 F.4th 1011 (9th Cir. 2023) ..................................................................................................... 5

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020), *vacated as moot, Biden v. Sierra Club*, 142 S. Ct. 46
    (2021) .......................................................................................................................................... 4

*Thunder Basin Coal Co v. Reich*,
    510 U.S. 200 (1994) ........................................................................................................... *Passim*

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
    578 U.S. 590 (2016) .................................................................................................................... 7

*United States v. Fausto*,
    484 U.S. 439 (1988) .................................................................................................................... 7

*Veit v. Heckler*,
    746 F.2d 508 (9th Cir. 1984) ...................................................................................................... 7

*Webster v. Doe*,
    486 U.S. 592 (1988) ........................................................................................................... 10, 11

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
    586 U.S. 9 (2018) ......................................................................................................................7

**Federal Statutes**

5 U.S.C.
    § 701-706 ............................................................................................................... 4, 7, 8, 9
    § 1103 ............................................................................................................................. 7, 8
    § 1105 ............................................................................................................................. 7, 8
    § 7105 .................................................................................................................................6
    § 7117 .................................................................................................................................6
    § 7701 .................................................................................................................................5
    § 7703 .................................................................................................................................9

28 U.S.C.
    § 1331 .............................................................................................................................. 4, 5

**Other Authorities**

5 C.F.R. § 315.806 ...........................................................................................................................3

5 C.F.R. § 1201.27 ...........................................................................................................................5

EO 14215, 90 Fed. Reg. 10447 (Feb. 24, 2025) ..............................................................................4

**INTRODUCTION**

Like their fellow Plaintiffs—a coalition of veterans, environmental and small business organizations and the State of Washington—the Union Plaintiffs (AFGE, AFSCME and their California locals) have sued the U.S. Office of Personnel Management ("OPM") for committing *ultra vires* acts beyond any statutory authority and in violation of the substantive and procedural requirements of the Administrative Procedure Act ("APA").  OPM did so by ordering federal agencies government-wide to terminate all probationary employees other than those OPM approves as mission critical.  The government has defended by claiming, without basis in statutory text or purpose or any controlling precedent, that the same Congress that created the modern civil service protections set forth in the Civil Service Reform Act ("CSRA") and Federal Service Labor-Management Relations Act ("FSL-MRS") *silently* intended to preclude judicial review even when the Administration engages in a wholesale dismantling of those civil service protections for employees government-wide.

Even in normal times, that is not remotely what Congress intended, and this implied doctrine does not foreclose this Court's express statutory jurisdiction.  But these are not normal times.  The extraordinary facts are now clear, and defy the representations made by the government to this Court: the Administration terminated employees in probationary status across the federal government on the pretextual basis of "performance" for the very purpose of foreclosing administrative review. Just to be sure that channel was closed, the Administration also removed the officials who could prosecute and adjudicate any administrative claims (while claiming any constraints on that removal are unconstitutional).  In particular, the only avenue for administrative review for many probationary employees is through the Office of Special Counsel ("OSC"), and at the same time that OPM enacted this mass termination program, the Administration removed the Special Counsel from office and placed the head of the Department of Veterans Affairs in that role:  an employing agency that implemented the unlawful OPM orders and a *defendant* in any administrative proceeding (and a relief defendant in this case).  There is no "channel" when a defendant is simultaneously the prosecutor.

The Union Plaintiffs explain here the three reasons why their claims, like those of the other Plaintiffs, are not foreclosed by the *Thunder Basin* administrative channeling doctrine.  First,

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, NO. 25-cv-01780-WHA                         1

1   Congress did not intend for the administrative agencies created by the CSRA and FSL-MRS to hear
2   claims like the Union Plaintiffs' challenge to OPM's government-wide, mass termination program:
3   indeed, such claims *cannot be heard at all* by those agencies.  Second, the extraordinary facts of this
4   case demonstrate that the current Administration has destroyed any "channel" that may have existed
5   even for affected employees against their employing agencies regarding the application and
6   implementation of OPM's mass termination orders.  Third, each union Plaintiff represents not only
7   employees who have been terminated per OPM's orders, but also federal employees who remain and
8   have to do more with less and are also affected by loss of service (particularly the large percentage of
9   the federal workforce who are veterans), or state and local public employees directly affected by the
10  loss of federal services.  The Union Plaintiffs' claims standing in the shoes of those other members
11  should not be channeled.
12      In sum, the Congress that enacted the laws that apply to federal employment *never* intended to
13  preclude federal courts from reviewing the lawfulness of acts that eviscerate the very statutes that
14  Defendants say that the Union Plaintiffs must adhere to.  This Court should reject Defendants' heads-
15  I-win, tails-you-lose approach, and find that it has jurisdiction to hear all Plaintiffs' claims.

**BACKGROUND**

17      At the February 27, 2025 hearing on Plaintiffs' TRO Motion, this Court asked Defendants to
18  explain whether and how Plaintiffs' claims challenging OPM's unlawful mass termination program
19  could be heard under the alternative statutory schemes for administrative and judicial review
20  prescribed by the CSRA.  In response, counsel for Defendants stated:

> Individual employees can petition to the Merits Systems Protection Board ["MSPB"]. They can also ask for help from the Office of Special Counsel ["OSC"]... Even if a certain employee doesn't have the ability to petition the MSPB directly, they can ask for help from the OSC to investigate a claim. The OSC can then ask the MSPB to stay the termination for time for further investigation and can then seek further relief.

25  Dkt. 44 at 32-33; *see also* Dkt. 33 at 4 n.1.
26      Defendants' representations to this Court cannot be squared with the representations they
27  directed be made to the probationary employees whose terminations they ordered.  The template
28  termination letter that OPM provided to agencies states that terminated probationary employees "*may*

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, NO. 25-cv-01780-WHA                    2

1  have a right to file an appeal with the Merit Systems Protection Board (MSPB) on the limited

2  grounds set forth in 5 C.F.R. § 315.806." Dkt. 87-1 (emphasis added); *see also* Dkts. 18-5 ¶9, Ex. 1;

3  18-8 ¶26, Exh. B; 18-9 ¶22, Ex. C; 18-10 ¶¶9-10, Ex. 1 (examples of agencies implementing OPM's

4  template letter). The regulation cited by OPM in the template letter provides appeal rights for

5  terminated probationary employees *only* if "the termination was motivated by partisan political

6  reasons or marital status, and/or [that] the termination was based on a pre-appointment reason"—i.e.,

7  "for reasons based in whole or in part on conditions arising before [their] employment" began. 5

8  C.F.R. § 315.806. The template letter did not inform any terminated probationary employees of any

9  right to "ask for help from the OSC." Dkt. 44 at 32.

10  As this Court has already found, the evidence submitted by Plaintiffs supports the conclusion

11  that OPM directed agencies to terminate probationary employees based on pretextual performance

12  reasons. Dkt. 132 at 10-11. OPM was therefore well aware that it was directing agencies to

13  expressly and uniformly base probationary employees' terminations on considerations that are not

14  "conditions arising before [their] employment" within the meaning of the regulation they included in

15  the template letter, 5 C.F.R. § 315.806. OPM appears to have intentionally designed this

16  misinformation to mislead and confuse employees about their appeal rights.

17  At the same time that OPM was ordering agencies to collect lists of probationary employees

18  for the purpose of terminating them from service, members of the Merit Systems Protection Board

19  ("MSPB"), the Federal Labor Relations Authority ("FLRA"), and the Office of Special Counsel

20  ("OSC"), were summarily fired.[1] Although Congress provided in the CSRA for the members of the

21  MSPB and the FLRA and the OSC to be insulated from removal (save on the basis of misconduct),

22  the government is currently taking the position in litigation that these CSRA anti-removal provisions

23  are *unconstitutional*.[2] Although the MSPB and FLRA removal cases remain in litigation, Special

24

25  [1] On February 7, 2025, then-OSC Hampton Dellinger was told: "On behalf of President Donald J. Trump, I am writing to inform you that your position as special counsel of the U.S. Office of Special Counsel is terminated, effective immediately. Thank you for your service[.]" *Dellinger v. Bessent*, Case No. 1:25-cv-000385-ABJ, Dkt. 1 (Complaint) at ¶2.

26

27  [2] *See* U.S. Solicitor General Letter to Sen Richard Durbin (Feb. 12, 2024), available at https://fingfx.thomsonreuters.com/gfx/legaldocs/movawxboava/2025.02.12-OUT-Durbin-530D.pdf;

28

Counsel Dellinger has been removed.[3] The new acting Special Counsel is *Doug Collins, the Secretary of Veterans Affairs*—a relief defendant in this lawsuit, *see* Dkt. 90 ¶63. He would also be a defendant in any MSPB action involving that agency—and is alleged to have implemented OPM's unlawful mass termination program himself.[4]

## DISCUSSION

**1.  Congress Never Intended for the Union Plaintiffs' Claims Challenging OPM's Unlawful Mass Terminations to Be Heard by the MSPB or FLRA**

At the February 27 TRO hearing in this case, this Court raised the question of whether Congress intended to send mass government-wide federal employee terminations to the administrative agencies it created to hear employee-employer agency disputes (the MSPB) and labor union-employer agency disputes (the FLRA). Dkt. 44 at 32-33. The answer to that question, grounded in the text of the statutes at issue, is no.

First, the Union Plaintiffs bring their claims under an express grant of federal jurisdiction, and an express cause of action under the Administrative Procedure Act. 28 U.S.C. §1331; 5 U.S.C. §702("[a] person . . . aggrieved by agency action . . . is entitled to judicial review thereof."). And the Union Plaintiffs' ultra vires claim invokes this Court's well-established Article III equitable power to review illegal governmental acts, which the Ninth Circuit has held survives the enactment of the APA and other statutes. *See Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated as moot, Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

---

*Bessent v. Dellinger*, U.S. S. Ct. No. 24A790, United States' Application to Vacate TRO at pp. 13-21 (filed Feb. 16, 2024) (arguing that the CSRA provision that insulates Special Counsel Hampton Dellinger from removal is unconstitutional); *Harris v. Bessent*, No. 25-412 (D.D.C.), Dkt. 6 (Defendants' Opposition to TRO) (filed Feb. 13, 2024) at pp. 6-10  *Harris v. Bessent*, No. 25-412 (D.D.C.), Dkt. 6 (arguing that the CSRA provision that insulates MSPB chair Cathy Harris from removal is unconstitutional); *Grundmann v. Trump*, No. 25-425 (D.D.C.) (lawsuit by FLRA chair Susan Grundmann seeking reinstatement). The President has also issued an Executive Order stating that there is no such thing as an independent agency within the executive branch and that all agencies are bound by the President's interpretation of the law, no matter how unsupportable the President's interpretation may be. *See* EO 14215, 90 Fed. Reg. 10447 (Feb. 24, 2025) ("Ensuring Accountability for All Agencies").

[3] *Dellinger v. Bessent*, Case No. 25-5052 (D.C. Cir. 2025) (per curiam) (filed March 10, 2025).

[4] *See* United States' Application to Vacate TRO at pp. 8 & n.3 (filed Feb. 16, 2024), in *Bessent v. Dellinger*, U.S. S. Ct. No. 24A790; see also https://www.npr.org/2025/02/10/nx-s1-5292259/hampton-dellinger-trump-special-counsel.

As against the express grant of subject matter jurisdiction to this Court by §1331 with respect to all of these claims, the *Thunder Basin* doctrine asks whether a plaintiff's claims "are of the type Congress intended to be reviewed" within a statutory system of agency adjudication, and therefore Congress intended by implication to want agencies to hear the claims first.  510 U.S. at 212.[5]  Implied doctrines must remain grounded in and faithful to the text.  *E.g.*, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 391-92 (2024); *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) (the judicial "inquiry begins with the statutory text, and ends there as well if the text is unambiguous"); *Saloojas, Inc. v. Aetna Health of California, Inc.*, 80 F.4th 1011, 1015 (9th Cir. 2023) (courts "presume that Congress expressed its intent through the statutory language it chose."); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("jurisdiction conferred by 28 U.S.C. § 1331 should hold firm against 'mere implication flowing from subsequent legislation.'") (quoting C*olorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976)).

The text of the CSRA and FSL-MRS create no pathway by which Union Plaintiffs' claims against OPM challenging government-wide action can be heard before the MSPB, the FLRA, or to bring OPM before the courts that review the resolution of employee-employer disputes by those agencies.  First, with respect to the MSPB:  OPM cannot be sued as a defendant in an appeal before the MSPB, other than by its own employees, as the employing agency.  *See* 5 U.S.C. §7701 (MSPB: "An employee, or applicant for employment, may submit an appeal…" of agency action defined in §7512); *id*. §7703 (judicial review: "The Board shall be named respondent in any proceeding brought pursuant to this subsection, unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.").[6]

---

[5] *Thunder Basin* applies only where there is no express administrative exhaustion required by Congress. 510 U.S. 200, 207-13 (1994).  Neither the CSRA nor FSL-MRS expressly require agency exhaustion.

[6] Pursuant to 5 U.S.C. §7701(d), OPM can chose to intervene in an employee's appeal only when it wishes to weigh in on the application of a government-wide rule, but this one-way intervention does not permit an employee *to sue OPM*, or name OPM as a defendant upon judicial review.  And, although 5 C.F.R. § 1201.27 contemplates "class appeals" to the MSPB, the class mechanism provides for relief only for classes of *employees* against their particular agency *employers*; nothing in the regulation authorizes class relief against a separate government agency that has taken government-wide action like OPM has here.

Next, the law is equally clear that the FLRA cannot hear challenges to government-wide rules. *See NTEU and Dep't of Treasury, IRS*, 60 F.L.R.A. 783, 783 (2005) (FLRA lacks jurisdiction to consider challenges to government-wide rules); *Fort Bragg Ass'n of Educators, NEA and Dep't of Army, Fort Bragg Sch.*, 31 F.L.R.A. 701, 71 (1988) (same); *see also* 5 U.S.C. § 7117(a)(1) (duty to bargain, and therefore FLRA jurisdiction over bargaining disputes, extends to "matters which are the subject of any rule or regulation *only if the rule or regulation is not a Government-wide rule or regulation*"). Nor is there any mechanism for a union to bring an unfair labor practice claim or other labor-management disputes before the FLRA against OPM, rather than the employing agency that is signatory to any collective bargaining agreement. *See* §§7103(a)(1), 7118, 7123. This is consistent with the very purpose of the FSL-MRS and the FLRA, the powers of which extend to bargaining unit and agency-level matters such as determining the appropriateness of bargaining units; resolving representation challenges; resolving issues pertaining to union and agencies' respective duties to bargain in good faith; and resolving allegations of unfair labor practices brought against unions and agencies—none of this extends to resolving *ultra vires* or APA claims against OPM regarding governmentwide acts. 5 U.S.C. §7105 (Powers and Duties of the Authority). It is unequivocally not the law that any legal claim that a union representing federal employees may have under federal law can or should be heard by the FLRA.

Congress plainly did not intend claims such as those in this case to be brought before these agencies. That should be conclusive as to this Court's jurisdiction. Nevertheless, the government would have this Court hold that Congress's decision to not create an administrative mechanism to sue OPM over government-wide rules and actions before the MSPB and the FLRA was intentional, and to read into that exclusion a further implied intent to foreclose the jurisdiction otherwise granted expressly by other statutes to this Court. That argument stretches and twists statutory interpretation beyond recognition, and should be rejected.

Congress was well-aware in 1978, when it created the MSPB, the FLRA and OPM, of the APA and federal subject matter jurisdiction, and the mechanisms for obtaining judicial review of government action at the time were well-established. E.g., *Kisor v. Wilkie*, 588 U.S. 558, 580 (2019) (plurality opinion) (internal quotation marks omitted) (APA was created to "serve as the fundamental

charter of the administrative state"). In particular, when Congress created OPM, it expressly made OPM subject to the APA. 5 U.S.C. §§1103; 1105 (same), §7134 (same, for FLRA). Those APA provisions are expressly judicially reviewable. *See* 5 U.S.C. §§ 701-706. The Congress that created OPM and required it to comply with the APA (§§1103, 1105), surely did not mean to *silently* then exempt that agency from APA review. *E.g.*, *Loper Bright*, 603 U.S. at 393 ("[t]he text of the APA means what it says."). Indeed, the Supreme Court has held that the judicial review provisions of the APA are a "command," and warned sternly against impliedly expanding exceptions. *E.g.*, *Dep't of Commerce v. New York*, 588 U.S. 752, 771-72 (2019); *see also U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 601-02 (2016) ("presumption" of judicial review in APA is strong; exceptions to be construed very narrowly); *accord Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22-23 (2018). Impliedly removing review over the Union Plaintiffs' claims against OPM would conflict with all of this precedent interpreting the APA's judicial review provisions.

While controlling authority has consistently concluded that a federal employee who sues his or her employing agency over an adverse employment decision should use the administrative channels created by Congress first, neither the Supreme Court nor the Ninth Circuit has ever extended those conclusions to OPM or government-wide rules or actions. *E.g.*, *Elgin v. Department of the Treasury*, 567 U.S. 1, 10 (2012) (individual employee challenge to employer action); *United States v. Fausto*, 484 U.S. 439, 454 (1988) (same); *Veit v. Heckler*, 746 F.2d 508, 509 (9th Cir. 1984) (same); *Brock v. United States*, 64 F.3d 1421, 1424 (9th Cir. 1995) (same); *Mariano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (same). And the claims here are far more akin to the challenges to governmental actions or systems in recent cases rejecting *Thunder Basin* channeling, then they are to individual employee claims. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (Sarbanes-Oxley Act did not impliedly preclude jurisdiction over claims challenging the statute's creation of an oversight board); *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 189 (2023) (constitutional claims were not channeled to SEC or FTC).

While the effect of the unlawful government-wide action in this case may have been to cause agencies to engage in personnel actions in order to implement OPM's unlawful orders, that does not mean, as the government claims here, that OPM's unlawful action in creating this program, usurping

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, NO. 25-cv-01780-WHA          7

1  statutory authority of the agencies, and ordering agencies to act *was itself* an unlawful personnel
2  action. That sleight of hand does not work, just as it did not work in the recent *Feds for Medical*
3  *Freedom* case. *Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir. 2023) (en banc), *cert*
4  *granted judgment vac'd on other grounds*, 144 S.Ct. 480 (2023) ("We hold plaintiffs are not
5  challenging CSRA-covered personnel actions" when they challenge—"under the Constitution, the
6  APA, and [other statutes]"—nationwide policymaking across executive branch agencies, as when a
7  policy imposed by Executive Order compels federal employers to require employees to take COVID-
8  19 vaccines). Consistent with Congressional intent and the text of the APA and the OPM authorizing
9  statutes discussed above, OPM has long been understood to be a proper defendant, in federal court,
10 when it acts unlawfully. *See, e.g.*, *NTEU v. Helfer,* 53 F.3d 1289, 1292–93 (D.C. Cir. 1995).

11 It also bears emphasizing that no controlling authority has ever channeled a *procedural* APA
12 claim—that is, a claim based on failure to engage in notice-and-comment rulemaking—simply on the
13 ground that the procedurally defective rule happens to touch upon some aspect of federal
14 employment. That conclusion, which would channel the Union Plaintiffs' procedural APA claim,
15 would directly conflict with the express language in 5 U.S.C. §§1103(b) and 1105 making OPM
16 subject to the APA notice and comment rule-making. *Every* rule OPM makes under these provisions
17 pertains in some way to federal employment. And the MSPB and FLRA cannot even hear such
18 procedural claims against OPM, let alone grant the "hold unlawful" and "set aside" unlawful remedy
19 provided by 5 U.S.C. §706.

20 In previous briefing, Defendants have invited this Court to dramatically expand the *Thunder*
21 *Basin* doctrine beyond the bounds set by the Supreme Court and the Ninth Circuit, relying primarily
22 on inapposite or unpersuasive authority from the D.C. Circuit. *See AFGE v. Trump*, 929 F.3d 748
23 (2019); *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 561 (D.C. Cir. 2023) ("*FLEOA*"). Dkt.
24 33. These out-of-circuit cases appear to endorse a sweeping understanding of CSRA/FSL-MRS
25 channeling, where claims in any way involving federal employment must be channeled. As
26 explained above, such an understanding necessarily distorts the CSRA and FSL-MRS's clear focus
27 on personnel actions by agency employers and union-employer labor disputes. It would *always*
28 insulate OPM from review, when every action OPM takes necessarily touches upon federal

employment (and likewise would insulate other centralized Administration agencies that take cross-cutting government-wide action, that will often impact federal employees). Neither the Supreme Court nor the Ninth Circuit has ever embraced such a sweeping application of the channeling principle, and the Supreme Court's increasingly cautious application of the *Thunder Basin* doctrine strongly counsels against following the D.C. Circuit's lead. *See Axon Enters., Inc. v. Federal Trade Comm'n,* 598 U.S. 175, 180, 195-96 (2023); *see also id.* at 217 (Gorsuch, J., concurring) ("Respectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon.").

These D.C. Circuit cases also fail to persuade because they either do not reach all the issues here presented or do not consider arguments that Plaintiffs have here pressed, particularly with respect to statutory text and the command of judicial review in the APA. First, *AFGE v. Trump* channeled an *ultra vires* challenge to a President's Executive Order involving labor issues, but that case did not involve or resolve the question whether procedural or substantive APA claims should be channeled. And *FLEOA* never so much as addresses the fact that the CSRA and FSLMRS expressly incorporate the earlier-enacted APA, entirely ignoring that OPM could not be the respondent in any MSPB and FLRA proceedings (or upon review) (5 U.S.C. §7703(2)), which therefore cannot provide APA remedies against OPM. S*ee* 5 U.S.C. §706.[7] No court should reach the statutory interpretation question presented by *Thunder Basin* without accounting for express and applicable statutory language in the CSRA, FSL-MRS, and APA (including the incorporation of the APA into these statutes), or recent Supreme Court doctrine.

In short, this Court can and should conclude that Union Plaintiffs' claims are not channeled without even reaching the *Thunder Basin* factors, because those factors are not needed to show that Plaintiffs' claims are not the "type" that Congress intended to be channeled on the face of the statutes at issue. But were the Court to apply those factors, it would reach the same result. As to the first factor, judicial review of these claims, by these parties, would be entirely foreclosed for the reasons explained above. *Thunder Basin*, 510 U.S. at 207. As to the second factor, Plaintiffs' claims are

---

[7] Moreover, even the *FLEOA* court did not "foreclose the possibility of procedural challenges to OPM rulemaking … that would fall outside the scope of the CSRA's system of review." *FLEOA*, 62 F.4th at 565.

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, NO. 25-cv-01780-WHA   9

"*wholly* collateral" to the CSRA's scheme because they do not challenge individual adverse personnel actions or employer action under a contract; they challenge the substantive and procedural lawfulness of OPM's actions directing the agencies. *Id.* at 211. And as to the third factor, the labor agencies have no particular expertise in resolving constitutional and administrative law questions; that expertise belongs to Article III courts. *See Loper Bright*, 603 U.S. at 399.

2.  **The Facts of this Case Establish That Any Available Administrative Channel Is Being Destroyed, Contrary to the Representations of Defendants to this Court**

The extraordinary circumstances of this case also would justify a more fact-intensive analysis as to the first *Thunder Basin* factor were the Court to reach it, regarding the availability of meaningful judicial review. 510 U.S. at 207.

The Supreme Court cases discussing channeling have all been predicated upon the supposition that any administrative channel intended by Congress would permit channeled claims to be heard in a meaningful time and in a meaningful manner, as the Due Process Clause requires. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). In *Elgin*, for example, an individual employee argued that he could not obtain meaningful review of a CSRA-covered adverse personnel action because the MSPB was ill-equipped for the fact finding he contended his claim required, but the Court rejected that argument, explaining: "The CSRA equips the MSPB with tools to create the necessary record. Thus, petitioners' constitutional claims can receive meaningful review within the CSRA scheme." 567 U.S. at 21. By contrast, in *American Federation of Government Employees v. Stone*, 502 F.3d 1027 (9th Cir. 2007), the Ninth Circuit construed an administrative scheme *not* to impliedly channel a claim "in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* at 1035-37 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)).

To Plaintiffs' knowledge, no case has yet considered how to apply the channeling analysis when there is factual evidence that a theoretically-adequate administrative channel no longer provides any meaningful opportunity to be heard. As noted above, despite the government's representations to this Court that the agencies at issue (the MSPB, the OSC, and the FLRA) offer meaningful avenues for relief, the government is also asserting in other litigation that the statutes structuring those

agencies are unconstitutional. *See supra* at 3. And, significantly, to the extent that the Special Counsel is the only federal officer authorized to bring the claims of certain probationary employees before the MSPB, that position is being held by the head of defendant agency, the Secretary of Veterans Affairs, who is a relief defendant in this very litigation, alleged to have implemented OPM's unlawful policies. *Supra* at 3-4. By any practical assessment, it is far from clear that these agencies can provide genuinely meaningful review under these circumstances even if claims against OPM's actions could be pursued.

The unprecedented scale of Defendants' mass termination program further complicates this analysis. By design, the MSPB is equipped to hear appeals of individual personnel actions made by agencies and the supervisors who act for those agencies; the FLRA is equipped to hear labor disputes between unions representing bargaining units of agency employees and their employing agencies (and expressly not challenges to government-wide rules); and the OSC is equipped to entertain requests to investigate individual personnel matters (subject to its discretion about whether to complete such investigations or to pursue an agency or sub-agency class, but never a *multi-agency* class). Moreover, Defendants' actions to confuse and misdirect employees regarding their rights to review, and to remove the officials who could prosecute and conduct that review, raise serious questions regarding the application of existing *Thunder Basin* precedent, and due process. *Supra* at 3. On the present record, there is no reason to suppose that those agencies are equipped to hear appeals from tens of thousands of probationary employees, or provide relief across different federal agencies, "in a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333.

At bare minimum, "to avoid the 'serious constitutional question' that would arise if a federal statute were construed, *implicitly*, to deny any judicial forum for a colorable constitutional claim," *Stone*, 502 F.3d at 1035-37 (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)), the Court could retain jurisdiction over the Union Plaintiffs' claims at the very least until it can be determined on a full record that any purported alternative statutory scheme genuinely offers a meaningful opportunity to be heard. On the record before this Court with respect to Plaintiffs' motions for TRO and preliminary injunction, those agencies do not.

**3.    The Union Plaintiffs Also Should Be Able to Proceed on Behalf of Members Who Are Not Terminated Probationary Employees.**

The Union Plaintiffs submitted substantial declarations describing the interests of their members and their organization that are harmed beyond the interest of those probationary members who were terminated. Dkts. 18-6 ¶¶12, 25; 18-10 ¶18; 18-12 ¶¶28-30; 18-14 ¶8; 18-18 ¶¶12-13. In addition to approximately 10,000 federal employees, AFSCME and its locals represent over 1.1 million state and local employees who are subject to harms akin to the harm to the State of Washington and its various departments, who have to pick up the slack caused by the cuts in federal services. Dkt. 90 ¶¶ 16, 149; *see also* Dkt. 18-6 ¶¶12, 25. AFGE represents over 800,000 federal employees, the vast majority of which remain in federal service and are the employees who must now do more work with less support to make up for the out-of-the-blue removal of subordinates and supervisors throughout the federal government. Dkt. 90 ¶¶ 15, 149; 18-10 ¶18; 18-12 ¶¶28-30; 18-14 ¶8; 18-18 ¶¶12-13. The evidence submitted by these Plaintiffs in support of injunctive relief is worthy of this Court's consideration, along with that submitted by the organizational Plaintiffs—that is not the issue here. To the extent these organizations represent the interests of members who are not terminated probationary employees, there is no good argument that claims asserted on those members' behalf should be channeled, for all the same reasons explained above, and those that apply to third-party organizations.

## CONCLUSION

For the reasons stated above, the Court should reconsider its preliminary conclusion at the TRO stage that the Union Plaintiffs' claims are likely to fail for lack of subject matter jurisdiction. Because this Court has jurisdiction to hear all Plaintiffs' claims, Plaintiffs request the further opportunity, at the Court's preferred schedule, to address a further injunction applied to those additional agencies subject to OPM's unlawful orders for which the Union Plaintiffs have demonstrated further harm, along with any further harm and proof of OPM's actions that the additional organizational Plaintiffs have submitted.

| | | |
|---|---|---|
| 1 | DATED: 21 March 2025 | Scott A. Kronland |
| 2 | | Stacey M. Leyton |
| | | Eileen B. Goldsmith |
| 3 | | Danielle E. Leonard |
| | | Robin S. Tholin |
| 4 | | James Baltzer |
| | | ALTSHULER BERZON LLP |
| 5 | | 177 Post St., Suite 300 |
| | | San Francisco, CA 94108 |
| 6 | | Tel: (415) 421-7151 |

By: */s/ Danielle Leonard*

*Attorneys for Plaintiff Organizations*

Norman L. Eisen (*pro hac vice*)
Pooja Chadhuri (SBN 314847)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for Plaintiff Organizations*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES
1625 L Street, N.W.

PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CHANNELING, NO. 25-cv-01780-WHA          13

|   |   |
|---|---|
| | Washington, D.C.  20036 |
| | Tel: (202) 775-5900 |
| | TPaterson@afscme.org |
| | MBlumin@afscme.org |

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz (SBN 241414)
Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (pro hac vice)
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*