PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF ON ADMINISTRATIVE CHANNELING**<br><br>The Hon. William H. Alsup |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I. Statutory and Regulatory Background.......................................................................2

    A. The Civil Service Reform Act ........................................................................2

        1. OPM....................................................................................................3

        2. OSC ....................................................................................................4

        3. MSPB..................................................................................................4

        4. The FLRA ..........................................................................................5

II. Current Status of OSC, MSPB, and FLRA................................................................6

    A. Current Status of OSC....................................................................................6

    B. Current Status of MSPB.................................................................................7

    C. Current Status of FLRA .................................................................................7

ARGUMENT.........................................................................................................................8

I. The CSRA Provides the Exclusive Remedy for Plaintiffs' Claims ...................................8

II. The Supreme Court's *Thunder Basin* Jurisprudence Does Not Change This Conclusion ................................................................................................................10

III. The OSC, MSPB, and FLRA Remain Available Avenues for Relief............................10

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*AFGE v. Sec'y of the Air Force*,
  716 F.3d 633 (D.C. Cir. 2013)..................................................................................................9

*Am. Fed'n Gov't Emps. v. U.S. Off. of Pers. Mgmt.*
  No. 3:25-cv-1780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025).........................................1, 11

*Am. Fed'n Gov't Emps., AFL-CIO v. Ezell*,
  No. 1:25-cv-10276, 2025 WL 470459 (D. Mass. Feb. 12, 2025).........................................10

*Am. Fed'n Gov't Emps., AFL-CIO v. Loy*,
  367 F.3d 932 (D.C. Cir. 2004)..................................................................................................9

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019)............................................................................................8, 9

*Anselmo v. King*,
  902 F. Supp. 273 (D.D.C. 1995)........................................................................................5, 11

*Arron v. United States*,
  113 F.3d 1245 (10th Cir. 1997) ...............................................................................................8

*Axon Enterprises, Inc. v. Fed. Trade Commission*,
  598 U.S. 175 (2023)................................................................................................................10

*Dellinger v. Bessent*,
  No. 1:25-cv-385, 2025 WL 665041 (D.D.C. Mar. 1, 2025),
  *on appeal*, No. 25-5052 (D.C. Cir.) .......................................................................................6

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012)......................................................................................................................8

*Grundmann v. Trump*,
  No. 1:25-cv-425, 2025 WL 782665 (D.D.C. Mar. 12, 2025)...............................................6, 7

*Harris v. Bessent*,
  No. 1:25-cv-412 (RC), 2025 WL 679303 (D.D.C. Mar. 4, 2025),
  *on appeal*, No. 25-5055 (D.C. Cir) .......................................................................................7

*Karahalios v. NFFE, Local 1263*,
  489 U.S. 527 (1989)..................................................................................................................9

*Lampon-Paz v. OPM*,
  732 F. App'x 158 (3d Cir. 2018) .............................................................................................8

*Marshall v. Seekins*,
    No. 3:08-cv-461, 2008 WL 4463626 (E.D. Va. Sept. 30, 2008) ................................................ 6

*Maryland v. U.S. Dep't of Agric.*,
    No. 1:25-cv-748, --- F.Supp.3d ---, 2025 WL 800216 (D. Md., March 13, 2025) ................... 10

*Nat'l Fed'n Emps., Local 1319 v. Dep't of the Interior*,
    526 U.S. 86 (1999) .................................................................................................................. 9

*Nat'l Treasury Emps. Union, et al. v. Trump, et al.*,
    No. 1:25-cv-420, --- F. Supp. 3d ---, 2025 WL 561080 (D.D.C. Feb. 20, 2025) ..................... 10

*Overseas Educ. Ass'n v. Fed. Lab. Rels. Auth.*,
    824 F.2d 61 (D.C. Cir. 1987) ................................................................................................. 6

*Padilla v. Mnuchin*,
    No. 18-cv-2302, 2020 WL 1852431 (D. Colo. Apr. 13, 2020) ............................................... 5

*Saul v. United States*,
    928 F.2d 829 (9th Cir. 1991) ................................................................................................. 9

*Thunder Basin Coal Co. v. Reich*,
    510 U.S. 200 (1994) ......................................................................................................... 9, 10

*United States v. Fausto*,
    484 U.S. 439 (1988) ........................................................................................................... 2, 8

*Veit v. Heckler*,
    746 F.2d 508 (9th Cir. 1984) ................................................................................................. 9

**Statutes**

5 U.S.C. § 1101 ............................................................................................................................. 3

5 U.S.C. § 1202 ............................................................................................................................. 7

5 U.S.C. § 1204 ............................................................................................................................. 4

5 U.S.C. § 1211 ......................................................................................................................... 4, 6

5 U.S.C. § 2301 ............................................................................................................................. 2

5 U.S.C. § 2302 ............................................................................................................................. 2

5 U.S.C. § 7101 ............................................................................................................................. 5

5 U.S.C. § 7105 ......................................................................................................................... 5, 9

5 U.S.C. § 7123 ............................................................................................................................. 9

5 U.S.C. § 7504 .................................................................................................................... 7

5 U.S.C. § 7512 ................................................................................................................. 2, 4

5 U.S.C. § 7703 ............................................................................................................... 4, 11

28 U.S.C. § 1295 .................................................................................................................. 4

Pub. L. No. 95-454, 92 Stat. 1111 (1978) ............................................................................ 2

**Regulations**

5 C.F.R. Part 300 ................................................................................................................. 3

5 C.F.R. pt. 1200 ................................................................................................................. 4

5 C.F.R. pt. 2420 ................................................................................................................. 5

5 C.F.R. § 1201.27 ......................................................................................................... 4, 11

5 C.F.R. § 1201.34 ........................................................................................................ 5, 11

5 C.F.R. § 2423.22 ........................................................................................................ 5, 11

Organization and Procedures,
    89 Fed. Reg. 72957 (Sept. 9, 2024), codified at 5 C.F.R. § 1200.3 ........................... 5

**Other Authorities**

Board Members, U.S. Merit Systems Protection Board,
    https://www.mspb.gov/about/members.htm ............................................................. 7

Josh Gerstein, Federal workforce watchdog who was fired by Trump drops legal fight to
    get his job back, Politico (Mar. 6, 2025),
    https://www.politico.com/news/2025/03/06/federal-workforce-watchdog-who-was-fired-by-
    trump-drops-legal-fight-to-get-his-job-back-00215891 .............................................. 6

Defendants' Supplemental Brief on Administrative Channeling
3:25-cv-1780-WHA

iv

**INTRODUCTION**

Pursuant to this Court's statements at the March 13, 2025, hearing, Defendants respectfully submit this brief addressing the effect of the Merit Systems Protection Board ("MSPB") and the Federal Labor Relations Authority ("FLRA") as administrative avenues for reviewing challenges to the federal employee terminations at issue in this case. As Defendants first explained in their Opposition to Plaintiffs' Motion for a Temporary Restraining Order ("TRO"), Congress created the MSPB and the FLRA as the sole administrative avenues to address most challenges to federal employee terminations. *See* Defs.' Opp'n to Pls.' Mot. for a TRO at 13–17, ECF No. 33. At the March 13 hearing, this Court asked whether that remains true. *See* Tr. of Mar. 13, 2025, Hrg. 55:19–56:3, ECF No. 120. In particular, the Court raised concerns: (i) about whether the MSPB remained an effective channel for federal employment challenges in light of the fact that the Special Counsel ("OSC") had been terminated, *id.* 18:2-5, 7-9; (ii) that a member of the MSPB had been "either fired or retired," *id.* 18:8-23; and (iii) in response to arguments from Plaintiffs' counsel that the FLRA was no longer an effective channel in light of any removal of its members, *id.* 33:7-23. As a result, this Court directed supplemental briefing on whether the MSPB and FLRA remained "effective channel[s]" for federal employees to litigate their terminations. *Id.* 54:23–56:9.

Defendants' arguments in that regard remain unchanged: the OSC, MSPB, and FLRA remain the effective and *exclusive* channels to any challenge the propriety of federal employee removals; each is functioning and able to address such claims. Thus, this Court should reaffirm its initial holding that it "lacks jurisdiction to hear the union plaintiffs' claims" because "[t]he union plaintiffs and their members must adjudicate their claims through the FLRA and MSPB," *Am. Fed'n Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, No. 3:25-cv-1780, 2025 WL 660053, *6-7 (N.D. Cal. Feb. 28, 2025) ("*AFGE v. OPM*"), and, respectfully, reconsider its ruling that the MSPB and the FLRA cannot consider the claims presented by the non-union Plaintiffs. *See id.*

# BACKGROUND

**I. Statutory and Regulatory Background**

   **A. The Civil Service Reform Act**

In passing the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), codified in various sections of Title 5, United States Code, Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices of challenged personnel practices. In so doing, Congress balanced "the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the CSRA's grievance and appeal procedures over all other remedies.

In Chapter 23 of the CSRA, Congress established the principles of the merit system of employment, thereby ensuring that personnel decisions involving federal civil service applicants and employees are based on merit; and expressly set out the merit principles protected by the Act. *See* 5 U.S.C. § 2301(b). Among other things, the CSRA forbids agencies from engaging in certain "prohibited personnel practices," defined as any "personnel action" taken for an improper motive by someone who has authority to take personnel actions, *id*. § 2302(a)(2)(A), and defines "personnel action" to include, among other things, any other significant change in duties, responsibilities, or working conditions, *see id*.

Congress created certain additional rights for federal government employees. *See, e.g.*, 5 U.S.C. § 7512 (creating, among others, additional rights concerning the removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less). In creating these employee rights, however, Congress chose to define an employee, for an individual in the competitive service, as one "who is not serving a probationary or trial period under an initial appointment; or who has completed 1 year of current continuous service," *id*. § 7511(a)(1)(A), and an individual in the excepted service, as one "who is not serving a probationary or trial

period under an initial appointment pending conversion to the competitive service; or who has completed 2 years of current continuous service in the same or similar positions in an Executive agency," *id*. § 7511(a)(1)(C). Apart from certain whistleblower rights not applicable hear, probationary employees are thus more properly considered applicants. Nevertheless, many of the protections of the CSRA extend to both "applicants and employees." *E.g.*, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency").

In passing the CSRA and subsequent amendments, Congress created four administrative agencies to assist in carrying out civil service functions: (i) the U.S. Office of Personnel Management ("OPM"), *see* 5 U.S.C. § 1101 *et seq*.; (ii) the OSC, *see id*. § 1211 *et seq*.; (iii) the MSPB, *see id*. § 1201 *et seq*.; and (iv) the FLRA, *see id*. § 7101 *et seq*. More about each is set forth below.

**1. OPM**

Congress established OPM as an independent federal agency, *see* 5 U.S.C. § 1101, tasking it with: (i) "executing, administering, and enforcing the civil service rules and regulations of the President and the Office and the laws governing the civil service[,]" *id*. § 1103(a)(5)(A); (ii) "aiding the President, as the President may request, in preparing such civil service rules as the President prescribes," *id*. § 1103(a)(7); and (iii) "aligning human capital strategies of agencies with the missions, goals, and organizational objectives of those agencies[,]" *id*. § 1103(c)(2)(A)(i). When OPM issues rules, they must be published in the Federal Register," *see id*. § 1103(b)(1), unless the "proposed rule or regulation . . . is temporary in nature and . . . is necessary to be implemented expeditiously as a result of an emergency," *id*. § 1103(b)(3).

OPM has promulgated regulations concerning probationary employees, *see* 5 C.F.R. Part 300, Subpart H, §§ 315.801–06, which provide for agencies to use the probationary period "as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment," *id*. § 315.803(a). The regulations note that an agency can terminate

probationary employees for performance or conduct reasons during their probationary period and require that any such termination notice be in writing and, "as a minimum, consist of the agency's conclusions as to the inadequacies of his performance or conduct." *Id*. § 315.804(a). Terminated probationary employees may appeal some agency decisions directly to the MSPB (discussed *infra*), including those based on partisan political reasons, marital status, or the failure to follow the procedural requirements or reasons set forth in § 315.805. *See id*. § 315.806(a)-(c).

### 2. OSC

Congress created OSC to, among other things, protect employees, applicants for employment, and former employees from prohibited practices. *See* 5 U.S.C. §§ 1211–12. The Special Counsel may receive and investigate complaints of prohibited personnel practices and may petition the MSPB (further discussed *infra*) for a stay of personnel actions pending investigation, and based on the results of an investigation, seek corrective action. *See id*. § 1214(a)(1)(A), (b)(1)(A)(i), (b)(1)(D). At the request of the Special Counsel for a stay, any member of the MSPB must order such stay unless the member determines that, under the facts and circumstances involved, such a stay would not be appropriate. *See id*. The MSPB may extend the period of any stay; if it lacks a quorum, any remaining member may, upon request by the Special Counsel, extend the period of any stay. *See id*. § 1214(b)(1)(B). If the MSPB determines that the Special Counsel has demonstrated that certain prohibited personnel practices have occurred, exist, or are to be taken, it may order appropriate corrective action. *See id*. § 1214(b)(4)(B). Any employee, former employee, or applicant for employment adversely affected by an order or decision of the MSPB may obtain judicial review of that order or decision, depending on the claims asserted, in the United States Court of Appeals for the Federal Circuit, another circuit court, or a district court. *See id*. § 1214(c)(1); *see also* 5 U.S.C. § 7703(b).

### 3. MSPB

Congress established the MSPB to, among other things, hear employee appeals of final adverse actions as set out in 5 U.S.C. § 7512. *See* 5 U.S.C. § 1204(a)(1). The MSPB's three-members are appointed by the President and confirmed by the Senate to staggered seven-year

1  terms. *See id.* §§ 1201, 1202(a). The MSPB may order relief to prevailing employees, including
2  reinstatement, backpay, and attorney's fees. *See id.* §§ 1204(a)(2), 7701(g). Employees may
3  appeal adverse MSPB decisions, depending on the claims asserted, in the Federal Circuit,
4  another circuit court, or a district court. *See id.* § 7703(b)(1)(A); *see also* 28 U.S.C. § 1295(a)(9).

5     MSPB regulations set forth at 5 C.F.R. pt. 1200: (i) allow employees to proceed as a
6  class, *see id.* § 1201.27; *see also Anselmo v. King*, 902 F. Supp. 273, 275 n.1 (D.D.C. 1995)
7  ("The MSPB has the power to certify a class."); (ii) allow persons or organizations who want to
8  participate in a proceeding because they believe the proceeding, or its outcome, may affect their
9  rights or duties to intervene, *see* 5 C.F.R. § 1201.34; and (iii) allow matters to be joined or
10 consolidated, *see id.* § 1201.36. With limited exceptions, "[i]ntervenors have the same rights and
11 duties as parties[.]" *Id.* § 1201.34(d). Finally, the regulations allow the participation of amicus
12 curiae. *See id.* § 1201.34(e).

13    If there are fewer than three members of the MSPB, the Board may operate with two
14 sitting members. *See Padilla v. Mnuchin*, No. 1:18-cv-2302, 2020 WL 1852431, at *7 (D. Colo.
15 Apr. 13, 2020), *aff'd*, 836 F. App'x 674 (10th Cir. 2020). In addition, the MSPB promulgated a
16 rule in 2024 that expanded the functions it can perform without a quorum or when there is
17 deadlock between only two present Board members. *See* MSPB, Interim Final Rule,
18 Organization and Procedures, 89 Fed. Reg. 72957, 72957–58 (Sept. 9, 2024), codified at 5
19 C.F.R. § 1200.3. As a result, where two "Board members are unable to decide any case by
20 majority vote, the decision, recommendation, or other order under review may be deemed the
21 final decision or order of the Board." *Id.* § 1200.3(b). And where only one or no Board members
22 are able to act, the lone Board member or the Clerk of the Board may direct various types of
23 matters, such as settlement, to "an administrative judge or other official[.]" *Id.* § 1200.3(c)-(d).

24    **4. The FLRA**

25    As part of the CSRA, Congress passed the Federal Service Labor-Management Relations
26 Statute ("FSMLRS"), codified at 5 U.S.C. §§ 7101–35, and established the FLRA to conduct
27 hearings and resolve complaints of unfair labor practices, *see id.* § 7105(a)(2)(G). The FLRA's
28 three member are appointed by the President and confirmed by the Senate to staggered, five-year

terms. *See id.* § 7504(a)-(b). Congress also established a Presidentially-appointed and Senate-confirmed General Counsel to investigate alleged unfair labor practices and file and prosecute complaints. *See id.* § 7504(f). Direct review of the FLRA's decisions on unfair labor practice and negotiability issues is available in the courts of appeals. *See id.* § 7123(a).

FLRA regulations are set out at 5 C.F.R. pt. 2420. Among other things, the regulations allow persons or organizations who show that the outcome of the proceeding is likely to directly affect their rights or duties to intervene. *See* 5 C.F.R. § 2423.22.

In the absence of all three members, the FLRA may operate with two members; however, cases "may deadlock and go into abeyance" if the two members disagree. *Grundmann v. Trump*, No. 1:25-cv-425, 2025 WL 782665, at *4 (D.D.C. Mar. 12, 2025). If the FLRA only has one of its three members, it lacks a quorum to adjudicate cases. *See Marshall v. Seekins*, No. 3:08-cv-461, 2008 WL 4463626, at *7 (E.D. Va. Sept. 30, 2008). When the office of the General Counsel is vacant, the General Counsel's Office can still investigate charges, but cannot issue complaints. However, decisions by an arbitrator in labor disputes involving unfair labor practices and governed by a collective bargaining agreement may still proceed to the FLRA. *See Overseas Educ. Ass'n v. Fed. Lab. Rels. Auth.*, 824 F.2d 61, 63 (D.C. Cir. 1987).

## II. Current Status of OSC, MSPB, and FLRA

### A. Current Status of OSC

On February 7, 2025, President Trump removed the most recent Special Counsel, Hampton Dellinger. *See Dellinger v. Bessent*, No. 1:25-cv-385, 2025 WL 665041, at *1 (D.D.C. Mar. 1, 2025), *on appeal*, No. 25-5052 (D.C. Cir.). Mr. Dellinger sued in the U.S. District Court of the District of Columbia, alleging that his removal violated the for cause removal provision set forth in 5 U.S.C. § 1211. *See id.* at *16. On March 1, 2025, the district court entered summary judgment in his favor and enjoined his removal. *See id.* at *35. The government noticed an appeal of that court's permanent injunction and moved to stay the court's order pending appeal. *See* Notice of Appeal, Mot. to Stay Pending Appeal, *Dellinger v. Bessent*, No. 1:25-cv-385, (D.D.C. Mar. 1, 2025), ECF Nos. 35–36. Following the district court's denial, *see* Order Denying Mot. to Stay, *Dellinger, supra* (Mar. 3, 2025), ECF No. 39, the United States Court of

Appeals for the District of Columbia Circuit stayed the injunction on March 5, 2025, *see Dellinger*, *supra*, (D.C. Cir. Mar. 5, 2025), after which Mr. Dellinger announced that he would drop his challenge. *See* Josh Gerstein, Federal workforce watchdog who was fired by Trump drops legal fight to get his job back, Politico (Mar. 6, 2025), https://www.politico.com/news/2025/03/06/federal-workforce-watchdog-who-was-fired-by-trump-drops-legal-fight-to-get-his-job-back-00215891. The appeal remains held in abeyance. *See Dellinger v. Bessent*, No. 25-5052 (D.C. Cir. Mar. 12, 2025). In the interim, the President has designated Secretary of Veterans Affairs Doug Collins to serve as Acting Special Counsel. *See* Ltr. from OSC Gen. Counsel to Vice President JD Vance re: OSC Notification of Vacancy and Appointment of Special Counsel (March 12, 2025) ("OSC Appointment Letter"), attached as Ex. 1.

**B. Current Status of MSPB**

On February 10, 2025, President Trump removed MSPB Chair Cathy Harris. *See Harris v. Bessent*, No. 1:25-cv-412, 2025 WL 679303, at *1, *6 (D.D.C. Mar. 4, 2025), *on appeal*, No. 25-5055 (D.C. Cir). Ms. Harris sued in the United States District Court for the District of Columbia alleging that her removal without cause violated the for-cause removal provision set forth at 5 U.S.C. § 1202. *See id.* at *7. On March 4, 2025, the district court ruled that her removal violated § 1202 and enjoined defendants (other than the President) from obstructing her access to any of the benefits or resources of her office or placing a replacement in her position. *See id.* at *16. The government appealed the district court's decision and moved for a stay pending appeal. *See* Not. of Appeal; Mot. to Stay, *Harris v. Bessent.*, No. 1:25-cv-412 (D.D.C. Mar. 4, 2025), ECF Nos. 41-42. The district court denied the government's motion to stay; the government moved to stay before D.C. Circuit Court of Appeals, which held argument on that motion to stay on March 18, 2025. *See Harris v. Bessent*, No. 25-5055 (D.C. Cir. Mar. 18, 2025). Ms. Harris remains a member of the MSPB, which is operating with a quorum. *See, e.g.*, Board Members, U.S. Merit Systems Protection Board, https://www.mspb.gov/about/members.htm.

**C. Current Status of FLRA**

On February 10, 2025, President Trump removed former FLRA Chair Susan Tsui

Grundmann. *See Grundmann*, 2025 WL 782665, at *4. Ms. Grundmann sued in the United States District Court for the District of Columbia alleging that her removal without cause violated the for-cause removal provision set forth at 5 U.S.C. § 7504. *See id.* On March 12, 2025, the district court ruled that her removal violated § 7504, reinstated her to her position, and enjoined the FLRA Chair to provide her with "access to the necessary government facilities and equipment so that she may carry out her duties during her term as a member of the [FLRA.]" Mem. Op & Order at 2, *Grundman v. Trump.*, No. 1:25-cv-425 (D.D.C. Mar. 12, 2025), ECF No. 21. The government has not yet appealed the court's order in that action; the FLRA continues to operate with three members.

## ARGUMENT

### I. The CSRA Provides the Exclusive Remedy for Plaintiffs' Claims

In passing the CSRA, Congress made the OSC, MSPB, and FLRA the exclusive means for federal employees, applicants, labor unions and other interested parties to raise challenges to final, non-discrimination-related, adverse employment actions. *See United States v. Fausto*, 484 U.S. 439, 455 (1988), even when those disputes involve constitutional claims, *see Elgin v. Dep't of the Treasury*, 567 U.S. 1, 10–15 (2012) (citation omitted); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE v. Trump*").

In *Fausto*, the Supreme Court held that the CSRA preempted review of a Fish and Wildlife Service employee's claim for back pay even though the CSRA provided no remedy. *See* 484 U.S. at 440-41. At issue was the termination of a "non-preference" federal employee who had appealed his termination to the MSPB. *See id.* at 441–42. The MSPB dismissed his appeal on the grounds that he had no appeal rights. *See id.* The Court found that the CSRA afforded no administrative or judicial review for adverse employment actions in the plaintiff's class and thus gave the employee no remedy. *See id.* at 448–49. The Court nevertheless held that, because Congress established the CSRA as a comprehensive scheme covering all matters involving federal employment, its omission of remedies for such employees constituted a congressional judgment that review should not be available. *See id.* at 455.

Likewise in *Elgin*, the Supreme Court reaffirmed *Fausto* and held that, even if a federal

employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" 567 U.S. at 12. The CSRA thus precludes "precludes courts from providing supplemental remedies." *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *see also Arron v. United States*, 113 F.3d 1245 (10th Cir. 1997) (expressly applying the CSRA's exclusive remedial scheme to a probationary employee challenging his termination); *Saul v. United States*, 928 F.2d 829, 835–42; (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510-11 (9th Cir. 1984).

Congress also provided the FLRA as the exclusive avenue by which labor unions representing federal employees must pursue their claims. Congress expressly delegated "rulemaking, adjudicatory, and policymaking powers" to the FLRA. *Nat'l Fed'n Emps., Local 1319 v. Dep't of the Interior*, 526 U.S. 86, 87 (1999). As the Supreme Court has held, "the congressional scheme . . . leave[s] the enforcement of union and agency duties under the [Statute] to the General Counsel and the FLRA and . . . confine[s] the courts to the role given them under the [Statute]." *Karahalios v. NFFE, Local 1263*, 489 U.S. 527, 536–37 (1989). The FLRA's powers granted by Congress include, *inter alia*, the power to "resolve issues relating to the duty to bargain," 5 U.S.C. § 7105(a)(2)(E), and the power to resolve disputes about whether the duty to bargain in good faith extends to a particular matter, *id.* §§ 7105(a)(2)(D), 7117(c). And, of course, if a party is dissatisfied by the outcome before the FLRA, it retains a right to judicial review in the courts of appeals. *See* 5 U.S.C. § 7123. As a result, because "district courts do not have concurrent jurisdiction over matters within the exclusive purview of the FLRA," this Court should reject Plaintiffs' effort to disrupt Congress's review scheme and to seek premature, improper review before this Court. *Am. Fed'n Gov't Emps., AFL-CIO v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004) (quoting *Karahalios*, 489 U.S. at 533).

In *AFGE v. Trump*, numerous federal unions asserted broad constitutional and statutory challenges to a set of three Executive Orders. *See* 929 F.3d at 752. The D.C. Circuit held that the FLRA provided the exclusive avenue through which unions could bring their claims. *See id.* at

754–61 (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–16 (1994); *AFGE v. Sec'y of the Air Force*, 716 F.3d 633, 636–39 (D.C. Cir. 2013)). Applying *AFGE v. Trump*, a district court in the District of Columbia recently held that labor union challenging the same termination of probationary employees at issue in this case must pursue their claims before the FLRA, *see Nat'l Treasury Emps. Union, et al. v. Trump, et al.,* No. 1:25-cv-420, --- F. Supp. 3d ---, 2025 WL 561080, *5-*8 (D.D.C. Feb. 20, 2025); similarly, a district court in the District of Massachusetts held that labor unions challenging this Administration's Deferred Resignation Program must also pursue their claims before the FLRA, *see Am. Fed'n Gov't Emps., AFL-CIO v. Ezell*, No. 1:25-cv-10276, 2025 WL 470459, *2-3 (D. Mass. Feb. 12, 2025); *but see Maryland v. U.S. Dep't of Agric.*, No. 1:25-cv-748, --- F.Supp.3d ---, 2025 WL 800216, *13 (D. Md., March 13, 2025), *on appeal*, No. 25-1248 (4th Cir.).

## II.   The Supreme Court's *Thunder Basin* Jurisprudence Does Not Change This Conclusion

The Supreme Court's recent decision in *Axon Enterprises, Inc. v. Fed. Trade Commission*, 598 U.S. 175 (2023), affirms that channeling is necessary here. While the Court found that the considerations set out in *Thunder Basin* did not preclude federal district court review of agency action, despite available administrative channels, it only did so based on the fact the challenges before it were constitutional challenges where the parties alleged they were "subject[] to an illegitimate proceeding, led by an illegitimate decisionmaker." 598 U.S. at 191. By contrast, Plaintiffs' claims here are chiefly APA claims and do not challenge the ability of the MSPB or FLRA to adjudicate their claims. See generally Pls.' Second Am. Compl., ECF No. 90. Plaintiffs' claims thus fit comfortably within the *Thunder Basin* factors because Plaintiffs' claims are channeled to the "special review provisions . . . [that] give the agency [the MSB and the FLRA] a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Axon Enters.*, 598 U.S. at 186.

## III. The OSC, MSPB, and FLRA Remain Available Avenues for Relief

As shown above, the OSC, the MSPB, and the FLRA remain available avenues for relief. Channeling mechanisms remain available to Plaintiffs and/or independently constitute a basis for dismissal of Plaintiffs' claims.

First, with respect to the OSC, the Special Counsel requested that a member of the MSPB issue a 45-day stay of a class of U.S. Department of Agriculture ("USDA") probationary employee terminations, *see* Decl. of Mary Pletcher Rice ¶ 4, ECF No. 139-3, the member of the MSPB has issued that stay on March 5, 2025, *see id.*, and USDA reinstated the employees on March 12, 2025, *see id.* ¶ 5. Moreover, the President has appointed an Acting Special Counsel. *See* OSC Appointment Letter, *supra*. In fact, under the Acting Special Counsel, the OSC has continued investigating the termination of probationary employees at issue in Plaintiffs' Complaint; on March 18, 2025, OPM received a detailed request for information from OSC for several categories of documents regarding "allegations that the Office of Personnel Management (the Agency) engaged in one or more prohibited personnel practices." OSC, Request for Information and Documents (Mar. 18, 2025) ("OSC RFI"), attached as Ex. 2. The requested documents related to OPM's February 12, 2025, email to chiefs of staff regarding probationary terminations, along with the February 14, 2025, CHCO Council conference call, *see id.*, which are some of the same documents at issue in this case. The request indicated that it was "time sensitive," showing the investigation is being pursued with urgency. *Id.* at 1.

Second, the MSPB currently maintains a quorum, but in any event federal employees are able to appeal adverse actions and other appealable actions to it. MSPB Administrative Judges continue to hear appeals (and would do so even if the MSPB lost its quorum). Further, the MSPB retains mechanisms for pursuing and obtaining class-wide relief in MSPB proceedings. *See* 5 C.F.R. § 1201.27; *Anselmo*, 902 F. Supp. at 276. Under that mechanism, in fact, the removal of USDA probationary employees has been stayed class-wide. *See* Pletcher Rice Decl. ¶¶ 4-5. Additionally, MSPB regulations allowing interested persons organizations to intervene, *see* 5 C.F.R. § 1201.34; and allowing matters to be joined or consolidated, *see id.* § 1201.36, remain available to all Plaintiffs in this case. With limited exceptions, "[i]ntervenors have the same rights and duties as parties[.]" *Id.* § 1201.34(d). The regulations also allow the participation of amicus curiae. *Id.* § 1201.34(e). As a result, both the union and non-union Plaintiffs remain free to participate in MSBP proceedings. And, except in limited circumstances not applicable here, any employee or applicant for employment adversely affected or aggrieved by a final order or

1  decision of the MSPB may obtain judicial review of the order or decision in the United States
2  Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703.
3        Finally, the FLRA still provides an administrative channel for employees as that body
4  also presently has a quorum. Thus, the union Plaintiffs in this case remain free to pursue their
5  action before the FLRA, and the non-union Plaintiffs remain free to intervene in those
6  proceedings. *See* 5 C.F.R. § 2423.22.

## CONCLUSION

      This Court should thus reaffirm its initial holding that it lacks jurisdiction to hear the union Plaintiffs' claims, *see AFGE v. OPM*, 2025 WL 660053, at *7, but, respectfully, should reconsider its ruling that the MSPB and the FLRA cannot consider the claims the non-union Plaintiffs. *See id*.

Dated: March 21, 2025                      Respectfully submitted,

                                                  PATRICK D. ROBBINS (CABN 152288)
                                                  Acting United States Attorney
                                                  PAMELA T. JOHANN (CABN 145558)
                                                  Chief, Civil Division
                                                  KELSEY J. HELLAND (CABN 298888)
                                                  Assistant United States Attorney
                                                  U.S. ATTORNEY'S OFFICE
                                                  450 Golden Gate Avenue, Box 36055
                                                  San Francisco, California 94102-3495

                                                  ERIC HAMILTON
                                                  Deputy Assistant Attorney General

                                                  DIANE KELLEHER
                                                  Branch Director
                                                  CHRISTOPHER HALL
                                                  Assistant Branch Director

                                                  <u>s/ James D. Todd, Jr.</u>
                                                  JAMES D. TODD, JR.
                                                  Senior Trial Counsel
                                                  YURI S. FUCHS
                                                  Trial Attorney
                                                  U.S. DEPARTMENT OF JUSTICE
                                                  Civil Division, Federal Programs Branch
                                                  P.O. Box 883
                                                  Washington, DC 20044

                                                  *Counsel for Defendants*