Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiff Organizations*

[Additional Counsel listed on signature pages]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 3:25-cv-01780-WHA <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO COMPEL COMPLIANCE WITH PRELIMINARY INJUNCTION OR TO HOLD DEFENDANTS IN CONTEMPT** |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 8:00 a.m. on April 9, in Courtroom 12, 19th Floor, United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, CA, Plaintiffs will and hereby do move to compel compliance with the Court's March 13, 2025 preliminary injunction, or to hold Defendants in contempt of this Court's orders.

The Motion will be made on the grounds that Defendants are in violation of this Court's March 13, 2025, preliminary injunction, Dkt. 120, in two ways: (1) by failing to communicate to unlawfully terminated employees the information ordered by the Court, and (2) by placing employees whom the Court ordered to be immediately reinstated only on "administrative leave" rather than returning them to active service.  Defendants' noncompliance is established in their own reporting to this Court, specifically Dkt. 127-1–127-6, Dkt. 139, Dkt. 139-3, Dkt. 141, and Dkt. 144-1–144-8.

Pursuant to this Court's authority to enforce its own orders, Plaintiffs respectfully request that unless Defendants establish full compliance with the Court's preliminary injunction by the date of their opposition brief (which the Court ordered to be filed by noon on March 31, 2025, the Court should enter an order setting a date certain for compliance by Defendants and requiring daily status reports until compliance is achieved; and if any Defendants fail to come into compliance by that date certain, to find those Defendants in contempt, and impose prospective, conditional civil sanctions for each day thereafter that those Defendants remain out of compliance.

This Motion is supported by the accompanying Memorandum in Support; all papers on file in this action; and such argument as may be heard by the Court.


DATED:  March 26, 2025                    Scott A. Kronland
                                          Stacey M. Leyton
                                          Eileen B. Goldsmith
                                          Danielle E. Leonard
                                          Robin S. Tholin
                                          James Baltzer
                                          ALTSHULER BERZON LLP
                                          177 Post St., Suite 300
                                          San Francisco, CA 94108

1    Tel: (415) 421-7151

2    By: /s/ Danielle Leonard

3    *Attorneys for Plaintiff Organizations*

4    Norman L. Eisen (*pro hac vice*)
5    Pooja Chadhuri (SBN 314847)
     STATE DEMOCRACY DEFENDERS
6    FUND
     600 Pennsylvania Avenue SE #15180
7    Washington, DC 20003
8    Tel: (202) 594-9958
     Norman@statedemocracydefenders.org
9    Pooja@statedemocracydefenders.org

10

11   By: /s/ Norman L. Eisen

12   *Attorneys for Plaintiff Organizations*

13   Rushab Sanghvi (SBN 302809)
     AMERICAN FEDERATION OF GOVERNMENT
14   EMPLOYEES
     80 F Street, NW
15   Washington, DC 20001
16   Tel: (202) 639-6426
     Sanghr@afge.org
17

18   By: /s/ Rushab Sanghvi

19   *Attorneys for Plaintiff American Federation of*
     *Government Employees (AFGE)*
20

21   Teague Paterson (SBN 226659)
     Matthew Blumin (*pro hac vice*)
22   AMERICAN FEDERATION OF STATE, COUNTY,
     AND MUNICIPAL EMPLOYEES
23   1625 L Street, N.W.
     Washington, D.C.  20036
24   Tel: (202) 775-5900
     TPaterson@afscme.org
25   MBlumin@afscme.org

26   By: /s/Teague Paterson

27   *Attorneys for Plaintiff American Federation of State*

28
     Plfs' Notice of Motion and Motion to Compel Compliance with Preliminary Injunction or to Hold
     Defendants in Contempt, No. 3:25-cv-01780-WHA                                                    2

1      *County and Municipal Employees (AFSCME)*

2      Tera M. Heintz (SBN 241414)
       Cristina Sepe (SBN 308023)
3      Cynthia Alexander, WA Bar No. 46019 (pro hac vice)
       Deputy Solicitors General
4      OFFICE OF THE WASHINGTON STATE
       ATTORNEY GENERAL
5      800 Fifth Avenue, Suite 2000
       Seattle, WA 98104
6      (206) 464-7744
7      tera.heintz@atg.wa.gov
       cristina.sepe@atg.wa.gov
8      cynthia.alexander@atg.wa.gov

9      By: */s/ Tera M. Heintz*

10

11     *Attorneys for Plaintiff State of Washington*

Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiff Organizations*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO;  et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 25-cv-01780-WHA <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH PRELIMINARY INJUNCTION OR TO HOLD DEFENDANTS IN CONTEMPT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... II

INTRODUCTION ................................................................................................................ 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ....................................................................................................................... 7

    I.     Defendants Have Failed to Comply and Therefore Are In Contempt Of This
          Court's Preliminary Injunction ............................................................................. 7

          A.    Legal Standard ........................................................................................ 7

          B.    Defendants Have Violated, and Continue to Violate, this Court's
               Preliminary Injunction. ........................................................................... 8

          C.    Defendants Have No Defenses to a Contempt Finding. ........................ 10

    II.    This Court Should Order Compliance, and If Defendants Fail Again, Hold
          Defendants in Civil Contempt. .......................................................................... 12

CONCLUSION ................................................................................................................. 13

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*AFGE v. OPM*,
No. 25-1677 (9th Cir. Mar. 14, 2025) ............................................................. 3, 4, 12

5

6

*Cahill v. Insider Inc.*,
--- F.4th ----, 2025 WL 838264 (9th Cir. Mar. 18, 2025)........................................7

7

*Coleman v. Newsom*,
--- F.4th ----, 2025 WL 851077 (9th Cir. Mar. 19, 2025)................................8, 11, 12, 13

8

9

*Dietz v. Bouldin*,
579 U.S. 40 (2016) ...................................................................................................7

10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
10 F.3d 693 (9th Cir. 1993) ...........................................................................7, 8, 11

11

12

*In re Dyer*,
322 F.3d 1178 (9th Cir. 2003) .................................................................................13

13

*Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*,
478 U.S. 421 (1986) .................................................................................................13

14

15

*OPM v. AFGE*,
No. 24A904 (U.S. Mar. 24, 2025) .............................................................................4

16

17

*Parsons v. Ryan*,
949 F.3d 443 (9th Cir. 2020) .................................................................7, 8, 12, 13

18

*Reno Air Racing Ass'n, Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006) ................................................................................13

19

20

*Spallone v. United States*,
493 U.S. 265 (1990) ...................................................................................................7

21

22

*State of Maryland v. United States Department of Agriculture*,
No. 1:25-cv-00748-JKB (D.Md 2025) .......................................................................4

23

24

*Stone v. City and County of San Francisco*,
968 F.2d 850 (9th Cir. 1992) ................................................................................7, 8

25

26

*United States v. Ayres*,
166 F.3d 991 (9th Cir. 1999) ..................................................................................13

27

*United States v. Yacoubian*,
24 F.3d 1 (9th Cir. 1994) ...........................................................................................7

28

# INTRODUCTION

Defendants are in violation of this Court's March 13, 2025 preliminary injunction in two ways: (1) they have failed to communicate to unlawfully terminated employees the information ordered by the Court; and (2) they have placed employees that the Court ordered immediately reinstated on "administrative leave" rather than returning them to service.

Defendants' noncompliance is demonstrated by their own declarations and filings. This Court has made clear that placing employees who were unlawfully terminated at the Office of Personnel Management's ("OPM") direction and are covered by this Court's preliminary injunction on administrative leave does not satisfy the injunction's requirement to immediately reinstate those workers. Yet Defendants' declarations and purported compliance lists establish that, as of several days after the Court's order, almost none of the tens of thousands of terminated employees had been returned to service at their respective defendant agencies. Rather, those workers had been placed on administrative leave by Defendants, with no indication when, if ever, they will be reinstated to their jobs. Similarly, despite this Court's order to notify those employees that the United States District Court has held their termination was unlawful, Defendants' purported compliance filings fail to make any showing that four of the six relief agencies have made any effort whatsoever to notify their employees as to the unlawfulness of the terminations, and admit that the two other relief agencies have not yet notified all of their probationary employees as instructed by the Court.

The terms of the Court's preliminary injunction were specific, definite, and clear. Defendants have no defense for their apparent decisions not to comply with the order. Unless Defendants establish full compliance with the Court's preliminary injunction by the date of their opposition (March 31, 2025), Plaintiffs respectfully request that the Court enter an order setting a date certain for compliance by Defendants and requiring daily status reports until compliance is achieved. If any Defendants fail to come into compliance by that date certain, Plaintiffs request that the Court hold those Defendants in contempt and impose prospective, conditional civil sanctions for each day thereafter that those Defendants remain out of compliance.

**BACKGROUND**

This case involves OPM's unlawful direction to federal agencies to terminate all probationary employees except those whom OPM allowed agencies to deem "mission critical," which resulted in the unlawful termination of tens of thousands of federal employees. Dkt. 90. On February 27, 2025, this Court concluded that the "mountain" of evidence submitted by Plaintiffs supported the conclusion that OPM had directed the terminations government-wide. Dkt. 45 at 8. The Court also concluded that OPM lacked the authority and to give such direction, and its acts were therefore likely ultra vires and violated the Administrative Procedures Act. Dkt. 44 at 5:1, 67:9-19; Dkt. 45 at 8, 21.

On March 10, 2025, this Court granted Plaintiffs leave to amend their Complaint to add the federal agencies that implemented OPM's unlawful orders as Rule 19 defendants for purposes of effectuating relief for OPM's unlawful acts. Dkt. 88; Dkt. 90. Plaintiffs were also granted leave to add plaintiffs and to submit additional evidence in support of their motion for preliminary injunction, scheduled to be heard on March 13, 2025. Dkt. 88 at 1; Dkt. 100. Both parties were provided the opportunity to present witnesses in support of their factual position, and to cross-examine the other side's witnesses at that hearing; Defendants refused to produce any witnesses, notwithstanding an attempt to "withdraw" one declaration and substitute another, and declined to cross-examine Plaintiffs' declarants. *See* Dkt. 75; Dkt. 86; Dkt. 89; Dkt. 96; Dkt. 97; Dkt. 110.

On March 13, 2025, after a lengthy hearing, this Court found again that the probationary employees had likely been unlawfully terminated and issued a preliminary injunction that, as relevant here, ordered six relief defendant agencies to:

(1) "*immediately offer* reinstatement to any and all probationary employees terminated on or about February 13th and 14th, 2025" (Dkt. 120 at 52:7-10, 53:17-25); and

(2) "*immediately advise* all probationary employees terminated on or about February 13 and 14 that the notice and termination have been found to be unlawful by the United States District Court for the Northern District of California." (*Id.* at 52:14-21, 53:17-25).

The relief agencies subject to this Order are the Department of Agriculture ("USDA"), the Department of Defense ("DoD"), the Department of Energy ("DOE"), the Department of the Interior

("DOI"), the Department of Treasury ("Treasury"), and the Department of Veterans Affairs ("VA"). *Id.* at 52:7-24; 53:17-25.

The Court ordered the agencies to submit a compliance report within seven days, on March 20, 2025, providing "a list of all probationary employees terminated on or about February 13th and 14th with an explanation as to each of what has been done to comply with this order." *Id.* at 53:13-16.

The Court also concluded, and expressed several times, that Defendants' actions with respect to evidence and witnesses had frustrated the Court's ability to find facts. *Id.* at 8:6-12 ("[T]he Government, I believe, had tried to frustrate the Judge's ability to get at the truth of what happened here and then set forth sham declarations…."), 8:13-16 ("I had expected to have an evidentiary hearing today in which these people would testify…[b]ut instead, we've been frustrated in that."), 15:22-24 ("You will not bring the people in here to be cross-examined. You're afraid to do so because you know cross-examination would reveal the truth."), 16:14-16 ("[Y]ou're not helping me get at the truth. You're giving me press releases, sham documents."), 25:9-17 ("[I]f you're going to give me an administrative record, let's do an honest one and a complete one and not one that is sanitized."). In particular, in defending against Plaintiffs' motion for preliminary injunctive relief, Defendants submitted declarations only from two OPM officials (one of which, from Acting OPM Director Charles Ezell, was subsequently withdrawn in an attempt to avoid deposition or hearing testimony, in violation of this Court's orders, Dkt. 97). Prior to the Court's issuance of a preliminary injunction, Defendants submitted no testimony from any agency witness. The Court therefore concluded: "Virtually all the foregoing facts were uncovered by counsel for plaintiffs. Defendants have provided virtually no transparency." Dkt. 132 at 8.

Rather than comply with the preliminary injunction, on Friday, March 14, 2025, Defendants sought a stay in this Court, supported by six new declarations from agency witnesses explaining why they were not complying. Dkt. 127-1-6. Then, rather than wait for a ruling from this Court, Defendants that same day sought a stay from the Ninth Circuit, relying on these new declarations from the relief defendants. Emergency Motion for Stay Pending Appeal and Administrative Stay, *AFGE v. OPM*, No. 25-1677 (9th Cir. Mar. 14, 2025). On Saturday, March 15, 2025, this Court

1    denied the requested stay.  Dkt. 133.  On Monday, March 17, 2025, the Ninth Circuit similarly

2    denied Defendants' request for an administrative stay.  Order Denying Administrative Stay, *AFGE*

3    *v. OPM*, No. 25-1677 (9th Cir. Mar. 17, 2025).[1]

4            On March 17, 2025, this Court issued an order stating that it had come to the Court's

5    attention that instead of being reinstated to their jobs, probationary employees were being "placed

6    on administrative leave *en masse*."  Dkt. 138.  The Court stated: "This is not allowed by the

7    preliminary injunction, for it would not restore the services the preliminary injunction intends to

8    restore."  *Id*.  The Court directed Defendants to provide an explanation.  *Id*.

9            On March 18, 2025, Defendants submitted to the Court copies of declarations that had been

10   filed in a separate action, *State of Maryland v. United States Department of Agriculture*, D.

11   Maryland Case No. 1:25-cv-00748-JKB, *see* Dkt. 139, 139-3, which included declarations from

12   five of the six departments subject to this Court's injunction (DOE, DOI, Treasury, USDA, and the

13   VA).  *See* Dkt. 139, 139-3.  The Court promptly ordered Defendants to provide the missing

14   explanation from the sixth relief defendant DoD, Dkt. 140, which Defendants submitted on March

15   19, 2025, Dkt. 141.

16           The Maryland declarations that were prepared for a different lawsuit and the additional

17   Department of Defense declaration neither state nor explain that the relevant defendant agencies

18   have complied with the orders of *this* Court.  In particular, nowhere do those declarations state

19   that the six relief defendants have communicated to their probationary employees the information

20   required by this Court—namely, that their terminations have been found to be unlawful by the

21

22

23

24

[1] As of the filing of this motion, the Ninth Circuit has not ruled on Defendants' motion to stay the
preliminary injunction pending appeal, notwithstanding Defendants' request on Thursday March 20,
2025, filed along with its reply, for a resolution by 12 p.m. on Friday, March 21, 2025 and statement
that they intended to take the issue to the U.S. Supreme Court by Friday afternoon.  Reply in Support
of Motion for Stay Pending Appeal, *AFGE v. OPM*, No. 25-1677 (9th Cir. Mar. 20, 2025).  On March
24, 2025, rather than waiting for the Ninth Circuit to rule on their pending stay request, Defendants
filed a motion for an "immediate" administrative stay and stay pending resolution of the appeal from
this Court's preliminary injunction (or, if the Ninth Circuit denied a stay pending appeal, pending
resolution of a certiorari petition) with the U.S. Supreme Court.  Application for Stay, *OPM v. AFGE*,
No. 24A904 (U.S. Mar. 24, 2025).

25

26

27

28

1   United States District Court for the Northern District of California, Dkt. 120 at 52:14-21, 53:17-

2   25, and that they are being offered reinstatement to their positions, *id.* at 52:7-10, 53:17-25.

3        Further, Defendants' declarations state that probationary employees at the relevant agencies

4   have indeed been placed on administrative leave rather than reinstated to their positions.  Those

5   declarations establish that by March 17, 2025:

6   • The VA placed 1,683 previously terminated probationary employees on administrative
        leave (Engelbaum Decl. ¶¶6, 10 (Dkt. 139-3 at p.60-61 of 67) (VA));

7   • USDA placed 5,714 previously terminated probationary employees on administrative
8       leave (Pletcher Rice Decl. ¶5 (Dkt. 139-3 at p.57 of 67) (USDA));

9   • DOE placed 555 previously terminated probationary employees on administrative
        leave (Trznadel Decl. ¶¶10-11 (Dkt. 139-3 at p.7 of 67) (DOE));
10

11  • Treasury plans to place approximately 7,600 previously terminated probationary
        employees on administrative leave (Norris Decl. ¶¶10-11 (Dkt. 139-3 at p.55 of 67)
12      (Treasury));

13  • DoD will place the 364 previously terminated (or "separated" pending termination)
        employees on administrative leave, the vast majority of whom have not apparently
14      been contacted (and are described as "pending notification"). (Dill Decl. ¶¶5-6 (Dkt.
        141-1 at p.2 of 3) (DoD)).

15      DOI's declaration failed to provide any information at all regarding how or in what capacity

16  the approximately 1700 previously terminated probationary DOI employees are being reinstated

17  beyond "cancelling termination."  Green Decl. ¶¶12-13 (Dkt. 139-3 at p.31-32 of 67) (DOI).

18      On March 20, 2025, Plaintiffs submitted their response to Defendants' submissions to the

19  Court, which explained the ways that Defendants had failed to comply with this Court's injunction.

20  Dkt. 142.  Plaintiffs also submitted additional evidence that DOI employees are primarily being

21  placed on administrative leave rather than returned to active service, Dkt. 142, including the

22  following:

23  • On March 17, 2025, the Park Superintendent at the Gettysburg National Military Park told the
24      AFGE local union president that "she had received no guidance, plans, or authority from her
25      supervisors to reinstate terminated probationary employees as required by the District Court's
26      decision."  Cochran Decl. ¶10 (Dkt. 142-1); *see also id*. ¶8 (terminated probationary
27      employees at Gettysburg National Military Park and the Eisenhower National Historic Site

28

have not received any communications regarding reinstatement).  The Superintendent subsequently informed him that there are two lists of previously terminated probationary employees at the National Park Service ("NPS"): a "mission-critical" list of employees who will be restored to active service, and a list of those who will only be restored to administrative leave.  *Id*. ¶11.

- Another terminated probationary employee was first contacted by her supervisor about reinstatement on March 19, 2025, and informed that "I was being placed on indefinite administrative leave.  Finally, my supervisor told me that I had the option to remain on administrative leave or to voluntarily resign."  Hoover Decl. ¶7 (Dkt. 142-3).

- Another employee received an email from her supervisor on March 19, 2025, stating: "You may hear that other terminated probationary employees have been asked to return to the workplace.  Only those employees that have been classified by NPS as 'key to public safety, national security, and critical park operations' are being asked to return at this time.  Unfortunately, your position was not included in this designated group."  Coffey Decl. ¶7 & Exh. B (Dkt. 142-2).

On March 20, 2025, Defendants submitted their Notice Filing of Certain Agency Declarations and Redacted Agency Lists of Employees, as ordered by this Court's March 13, 2025 preliminary injunction.  Dkt. 144.  Defendants provided spreadsheets from all six agencies, but only three of those addressed whether employees had been returned to administrative leave status or service.  Dkt. 144-2 (DoD); 144-4 (DOI); 144-6 (VA).  Those three agencies confirmed that to the extent they have contacted employees and reinstated them as employed, they have placed them in administrative leave status rather than returned to service.  The other three agencies reported only whether employees had been contacted, and told this Court nothing further about the employees' actual employment status, see Dkt. 144-1 (USDA); 144-3 (Energy); 144-5 (Treasury), despite admitting to this Court in the Maryland declarations filed two days earlier that the employees *had* been placed on administrative leave.  Those spreadsheets and two accompanying new declarations (from USDA and DoD) reveal that as of one week after this Court's injunction, very few previously terminated probationary employees, at only two of the six agencies, have actually been returned to service.  Dkt. 144-4

1  (Interior: only 11 of 1875 probationary workers returned to service); Dkt. 144-2 and Dill Decl. (Dkt.

2  144-7) (DoD: only 4 of 178 DoD's identified terminated probationary employees were confirmed to

3  have been restored to duty); *see also* Dkt. 144-6 (VA: not a single identified VA employee was

4  designated as having returned to duty under the column "On Duty Y/N.").

5  On March 21, 2025, the Court set a briefing schedule for Plaintiffs to file "a proper

6  motion to compel compliance and/or to seek contempt of court" by Wednesday, March 26,

7  2025, at noon.  Dkt. 152.

8  ## ARGUMENT

9  ## I.  Defendants Have Failed to Comply and Therefore Are In Contempt Of This Court's

10  Preliminary Injunction

11  ### A.  Legal Standard

12  "The Supreme 'Court has long recognized that a district court possesses inherent powers that

13  are governed not by rule or statute but by the control necessarily vested in courts to manage their own

14  affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Cahill v. Insider Inc.*, ---

15  F.4th ----, 2025 WL 838264, at *4 (9th Cir. Mar. 18, 2025) (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45

16  (2016.  "Those powers include the inherent authority of a court to enforce its orders by whatever

17  means."  *Id.* (quotation omitted); *see also United States v. Yacoubian*, 24 F.3d 1, 5 (9th Cir. 1994)

18  ("There is no question that courts have inherent power to enforce compliance with their lawful

19  orders.") (citation omitted).

20  In particular, courts have "inherent power to enforce compliance with their lawful orders

21  through civil contempt."  *Spallone v. United States*, 493 U.S. 265, 276 (1990).  Contempt is available

22  "when the district court finds by clear and convincing evidence that a party 'violated a specific and

23  definite order of the court.'"  *Parsons v. Ryan*, 949 F.3d 443, 454 (9th Cir. 2020) (*quoting Stone v.

24  City and County of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992).  "The contempt need not be

25  willful, and there is no good faith exception to the requirement of obedience to a court order."  *In re

26  Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (quotation

27  omitted).

28  Upon a showing of a violation, the burden shifts to the defendant to show a defense to such

non-compliance. *Stone*, 968 F.2d at 856 n.9. A defendant will not be held in contempt if his action is "based on a good faith and reasonable interpretation" of the court's order. *Dual-Deck Video Cassette*, 10 F.3d at 695. "Substantial compliance" is a defense only if a defendant establishes that it has "taken all reasonable steps to comply with applicable court orders, resulting in merely technical or inadvertent violations." *Coleman v. Newsom*, --- F.4th ----, 2025 WL 851077, at *4 (9th Cir. Mar. 19, 2025) (quotation omitted). "[T]he impossibility defense arises only from *literal impossibility* that disables the alleged contemnor from complying with the court's orders." *Id.* at *8 (italics in original).

### B. Defendants Have Violated, and Continue to Violate, this Court's Preliminary Injunction.

The requirements of the preliminary injunction order are "specific and definite." *Parsons*, 949 F.3d at 454. The Court ordered the six relief defendants to (1) "immediately offer reinstatement to any and all probationary employees terminated on or about February 13th and 14th" and (2) "immediately advise all probationary employees terminated on February 13 and 14 that the notice and termination have been found to be unlawful" by the Court. Dkt. 120 at 52:7-21.

Yet the record before the Court clearly demonstrates that the six agencies did not "immediately reinstate" their probationary employees as required by the Court's order. *Supra* at 4-7. Instead, Defendants' own declarations and compliance productions expressly admit that they have placed the vast majority of affected employees—potentially more than 15,000 employees in total—on administrative leave. *See* Dkt. 139-3; Dkt. 144-1–144-6. This means those employees have not been returned to their positions or resumed performing their job duties. *See* Coffey Decl. ¶7 (Dkt. 142-2) & Exh. B ("At this time, we are not asking you to return to the workplace."). Because administrative leave does not "restore the services the preliminary injunction intends to restore," this defies the Court's orders. Dkt. 138.

Although *counsel* for Defendants attempts to represent to the Court that administrative leave "is merely a first part of a series of steps to reinstate probationary employees," Dkt. 139 at 1, the declarations submitted by the agencies themselves belie that assertion.

Treasury and the VA simply state that employees are being returned to administrative leave and make no further representations:

Treasury: "Upon reinstatement, Treasury will place each affected employee in Administrative Leave status."  Norris Decl. ¶10 (Dkt. 139-3 at p.55 of 67) (Treasury); *see also* Dkt. 144-5 (Treasury).

VA: "[H]as for all intents and purposes, reinstated all Affected Probationary Employees, placing them in an initial administrative leave status with full pay and benefits."  Engelbaum Decl. ¶10 (Dkt. 139-3 at p.61 of 67) (VA); *see also* Dkt. 144-6 (VA).

DOI, in its list of terminated probationary employees, also revealed that nearly all these employees were merely returned to administrative leave.  Dkt. 144-4 (DOI).

Even the three agencies that do refer to steps toward reinstatement to service have not provided any date by which a return to service will occur:

DOE: "All Affected Probationary Employees have been placed in a retroactive Administrative Leave status that will continue until their badging and IT access are restored, at which time they will be converted to an Active Duty status."  Trznadel Decl. ¶11 (Dkt. 139-3 at p.7 of 67) (DOE); *see also* Dkt. 144-3 (DOE).

USDA: "As part of a phased plan for return-to-duty, upon returning to pay status, the Affected Probationary Employee will initially be placed on paid administrative leave. … USDA is acting diligently to complete the administrative steps related to notifying the Affected Probationary Employees of their reinstatement, processing the reinstatements for purposes of all relevant USDA record systems, and returning the reinstated employees to duty status."  Pletcher Rice Decl. ¶¶5-7 (Dkt. 139-3 at p.57 of 67) (USDA); *see also* Pletcher Rice Decl. ¶¶5, 11 (Dkt. 144-8) (USDA) (same).

DoD: The declaration indicates that at least some "[e]mployees with pending termination notices" or "[p]reviously terminated employees who have been reinstated" will be on administrative leave until "their completion of onboarding procedures."  Dill Decl. ¶6 (Dkt. 141-1) (DoD).

None of this complies with this Court's order requiring immediate reinstatement.

Moreover, while Defendants sought to convince the Court that reinstatement to duty would be overly burdensome (which this Court correctly rejected in denying a stay, Dkt. 133), that claim is also belied by the actions of some agencies following this Court's TRO or the District of Maryland court

1    order, which was also issued March 13, 2025.  In particular, in the four days between Thursday

2    March 13, 2025 and Monday, March 17, 2025, the Department of Transportation ("DOT") notified

3    all 775 terminated probationary employees of their reinstatement, and by Thursday, March 20, 2025,

4    all impacted employees were returned to active service.  Byrd Decl. ¶12 (Dkt. 139-3 at p.20 of 67)

5    (DOT).  By the Monday after this Court's temporary restraining order, the National Science

6    Foundation brought everyone back.  Dkt. 90 at ¶142.  If, as Defendants' counsel claims,

7    administrative leave is just the first step, then there is no valid reason that Defendants cannot

8    promptly take the additional steps that are *required* by this Court's order.

9         Additionally, Defendants' declarations and submissions do not establish compliance with

10    Court's order that the agencies "immediately advise" the probationary employees that their

11    termination has been found unlawful by this Court.  As of March 20, 2025, the Department of

12    Defense declaration states that employees have yet to be notified (and "anticipates" they can

13    complete this "by the end of this week").  Dill Decl. ¶5 (Dkt. 144-7) (DoD); *see also* Dkt. 144-2

14    (DoD).  The USDA March 20, 2025 declaration states that employees were notified via a press

15    release that was "updated" on March 19, 2025, and that "USDA is in the process of completing a

16    second notification to the probationary employees to be clear that this is based on the MSPB order

17    and this Court's Order." Pletcher Rice Decl. ¶¶ 5, 7 (Dkt. 144-8) (USDA); *see also* Dkt. 144-1

18    (USDA).  Defendants submitted no declarations from other agencies addressing how they complied

19    with this order to notify employees.[2]

20         Given that Defendants' violations of the preliminary injunction are established by

21    Defendants' *own* declarations and filings purporting to show compliance, and that there is no contrary

22    evidence in the record to date, the "clear and convincing evidence" standard is easily satisfied here.

23         **C.  Defendants Have No Defenses to a Contempt Finding.**

24         Defendants cannot contend that their actions are based on a "good faith and reasonable

25

_____

26    [2] The VA's spreadsheet indicates that "recission notices" were conveyed by supervisors to some but
      not all employees. Dkt. 144-6 (VA).  Treasury's spreadsheet indicates that "Email and Letter notice"
27    was conveyed to employees but provides no detail on the notice content. Dkt. 144-5 (Treasury).  The
      other agencies' spreadsheets indicate no information regarding compliance with this order. Dkt. 144-
28    3 (DOE); 144-4 (DOI).

interpretation" of the preliminary injunction, *Dual-Deck Video Cassette*, 10 F.3d at 695, because Defendants have already conceded that placing unlawfully terminated probationary employees into administrative leave status does not comply with this Court's preliminary injunction. Dkt. 139. Rather than make any attempt to show compliance, Defendants have simply defied this Court's orders, submitting declarations to this Court that explained why they were *not* complying, Dkt. 127-1-6; why they were complying *only* with a different court's order and not this Court's, Dkt. 139-3; and providing incomplete information that does not establish compliance (and to the extent it does provide information, confirms the mass placement of employees onto administrative leave), Dkt. 144-1–Dkt. 144-8.

Putting what appears to be the vast majority of affected workers on administrative leave rather than reinstating them to their jobs is not "substantial compliance" that results in merely "technical or inadvertent" violations of the order to immediately reinstate the workers. *Coleman*, 2025 WL 851077, at *4. Despite multiple opportunities to update this Court on compliance, several defendant agencies still appear to be using administrative leave status as an attempted loophole for nearly all of the impacted employees, Dkt. 144-6 (VA); Dkt. 144-5 (Treasury); Dkt. 144-4 (DOI), while others still maintain that administrative leave is a stepping stone to reinstatement at some hypothetical and unidentified future date, but show limited progress to this end, Trznadel Decl. ¶11 (Dkt. 139-3 at p.7 of 67) (DOE); Dkt. 144-3 (DOE); Pletcher Rice Decl. ¶7 (Dkt. 139-3 at p.57 of 67) (USDA); Dkt. 144-1 (USDA); Pletcher Rice Decl. (Dkt. 144-8) (USDA); Dill Decl. ¶6 (Dkt. 141-1) (DoD); Dkt. 144-2 (DoD); Dill Decl. (Dkt. 144-7) (DoD). Even if administrative leave could be considered a significant step towards immediate reinstatement (which it certainly is not), "merely taking significant steps toward implementing a decree [still] falls far short of substantial compliance." *Coleman*, 2025 WL 851077, at *5 (quotation omitted). The substantial compliance defense is available only where a defendant "has achieved *near-total compliance* through the exhaustion of all reasonable efforts," *id.* at *4 (italics in original)—which Defendants plainly have not done.

Having never previously contended that it would be *impossible* to comply with the preliminary injunction (a claim belied by Defendants' own declarations), Defendants cannot do so now. A defendant asserting an inability to comply with an order cannot merely claim that

compliance would be "difficult or expensive," but must show "categorically and in detail" that compliance would be "factually impossible." *Coleman*, 2025 WL 851077, at *7-8. But it is not impossible for defendant agencies to reinstate these workers, all of whom were fully employed by Defendants just five to six weeks ago. As the Ninth Circuit held, this is merely a "return to the status quo ante." Order Denying Administrative Stay, *AFGE v. OPM*, No. 25-1677 (9th Cir. Mar. 17, 2025).

For all of these reasons, it is fully appropriate for the Court to find that relief defendant agencies are in violation of the preliminary injunction.

## II.    This Court Should Order Compliance, and If Defendants Fail Again, Hold Defendants in Civil Contempt.

Unless Defendants' March 31, 2025 response to this motion establishes their compliance, or at the very least provides the Court with a date certain by which employees will be restored to service by each agency, this Court should issue an order setting a final compliance deadline of five business days following any order granting this motion, and compelling the relief defendant agencies to comply with the Court's March 13, 2025 preliminary injunction by that date certain. Plaintiffs also respectfully request that the Court order Defendants to provide the Court with daily compliance reports establishing their progress towards complete compliance.

If Defendants are not in compliance with this Court's preliminary injunction by the date certain set by this Court, Plaintiffs request that the Court find those non-compliant Defendants in contempt, order that those Defendants come into immediate compliance with the preliminary injunction, and impose a civil contempt sanction on each Defendant for each day that Defendant remains out of compliance with the preliminary injunction, in an amount to be determined by the Court.

A civil contempt sanction is one that "coerces compliance with a court order or is a remedial sanction meant to compensate the complainant for actual losses." *Parsons*, 949 F.3d at 455. Where the fine is intended to coerce compliance, a court must consider "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Coleman*, 2025 WL 851077, at *11. "Prospective, conditional

1    fines" like those Plaintiffs propose are "the paradigmatic coercive contempt sanction." *Parsons*, 949

2    F.3d at 455; *see United States v. Ayres*, 166 F.3d 991, 995 (9th Cir. 1999).

3         The Court has already found that the organizational Plaintiffs have suffered irreparable harm

4    from the immediate impairment of public services caused by the unlawful termination of relief

5    defendant agencies' employees. Dkt. 120 at 57:5-8; 59:5-10; Dkt. 132 at 1, 13. Those irreparable

6    harms have continued as a result of Defendants' noncompliance, because placing workers on

7    administrative leave "does not restore the services the preliminary injunction intends to restore."

8    Dkt. 138. Fining the agencies for each day of noncompliance would therefore be appropriate to "spur

9    Defendants' compliance" with the injunction in order to restore these vital services. *Parsons*, 949

10   F.3d at 457. Imposing a daily sanction is likely to be an "effective and short-lived tool that creates

11   compliance" with the preliminary injunction. *Id.* This sanction would also be appropriately

12   conditional, as it allows each agency Defendant to avoid the imposition of any fine at all by

13   individually coming into compliance with the injunction by the date set by the Court. *See Coleman*,

14   2025 WL 851077, at *9.

15        Finally, if the Court holds Defendants in contempt, Plaintiffs request that the Court award

16   Plaintiffs their attorneys' fees and costs incurred in litigating this Motion to Compel Compliance.

17   *See e.g.*, *Loc. 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421, 444 n.23 (1986)

18   (attorneys' fees are a common contempt sanction to compensate plaintiff for losses sustained in

19   enforcing compliance); *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006)

20   (same); *In re Dyer*, 322 F.3d 1178, 1195 (9th Cir. 2003) ("attorneys' fees are an appropriate

21   component of a civil contempt award").

22                                      **CONCLUSION**

23        For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

24   Motion to Compel Compliance or to Hold Defendants in Contempt for their non-compliance with this

25   Court's preliminary injunction.

26

27

28

DATED:  March 26, 2025

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

By: /s/ Danielle Leonard

*Attorneys for Plaintiff Organizations*

Norman L. Eisen (*pro hac vice*)
Pooja Chadhuri (SBN 314847)
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

By: /s/ Norman L. Eisen

*Attorneys for Plaintiff Organizations*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT
EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: /s/ Rushab Sanghvi

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES
1625 L Street, N.W.

Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz (SBN 241414)
Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (pro hac vice)
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*