NICHOLAS W. BROWN
Attorney General of Washington
TERA M. HEINTZ, SBN #241414
CRISTINA SEPE, SBN #308023
CYNTHIA L. ALEXANDER, *Pro Hac Vice*
Deputy Solicitors General
Solicitor General's Office
1125 Washington Street SE, PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Tera.Heintz@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
Attorneys for Plaintiff State of Washington

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### AT SAN FRANCISCO

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | NO. 3:25-cv-01780-WHA <br><br> MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION <br><br> APRIL 9, 2025, 8:00 AM |

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

    A. OPM's Mass Termination of Probationary Federal Employees ............................... 1

    B. Harm Suffered by Washington as a Result of OPM's En Masse Termination of Federal Employees ................................................................................................... 3

    C. Procedural History .................................................................................................... 8

III. ARGUMENT ................................................................................................................. 10

    A. Legal Standard ........................................................................................................ 10

    B. Washington Has Standing ....................................................................................... 10

    C. Washington Is Likely to Succeed on the Merits ..................................................... 11

    D. The State Will Suffer Irreparable Harm Without a Preliminary Injunction ............ 13

    E. The Balance of Equities Weigh in the State's Favor and a Preliminary Injunction Is in the Public Interest ............................................................................................ 15

IV. CONCLUSION .............................................................................................................. 16

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# TABLE OF AUTHORITIES

**Cases**

*City of Sausalito v. O'Neill*,
    386 F.3d 1186 (9th Cir. 2004) .................................................................................... 10

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019) ................................................................................................... 10

*United States v. Texas*,
    599 U.S. 670 (2023) ................................................................................................... 10

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) .................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................................................ 10, 16

*Wolford v. Lopez*,
    116 F.4th 959 (9th Cir. 2024) ..................................................................................... 15

**Statutes**

5 U.S.C. § 1102 .................................................................................................................. 2

5 U.S.C. § 1103 .................................................................................................................. 2

5 U.S.C. § 1105 .................................................................................................................. 2

5 U.S.C. § 2301(b)(6) ........................................................................................................ 3

5 U.S.C. § 3101 .................................................................................................................. 3

5 U.S.C. § 3502 .................................................................................................................. 3

5 U.S.C. § 4304 .................................................................................................................. 2

5 U.S.C. § 4305 .................................................................................................................. 2

5 U.S.C. § 7514 .................................................................................................................. 3

5 U.S.C. §§ 1103(a)(1)–(3) .............................................................................................. 12

**Rules**

Fed. R. Civ. P. 65(b)(1) ................................................................................................... 10

Fed. R. Civ. P. 65(c) ........................................................................................................ 10

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

**Regulations**

5 C.F.R. § 315.804(a) ............................................................................................................. 3

5 C.F.R. § 351.402 .................................................................................................................. 3

5 C.F.R. §§ 351.801–803 ........................................................................................................ 3

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

## I.   INTRODUCTION

As this Court found, a "mountain of evidence" establishes that the Office of Personnel Management (OPM) unlawfully directed the en masse termination of probationary employees across federal agencies under the pretext of "performance." Dkt. 132 at 5–7 (citing Dkt. 87-1). Defendants offered no credible contrary evidence. Without considering evidence submitted by the State of Washington, which joined the lawsuit as a Plaintiff with the Second Amended Complaint for Declaratory and Injunctive Relief, this Court has already found that Plaintiffs are likely to succeed on the merits of their separation of power and APA claims, that Plaintiffs will suffer irreparable harm without preliminary injunctive relief reinstatement of the status quo, and that the balance of equities favors such relief. *Id.* at 12. For all of the reasons that the Court entered the March 13 preliminary injunction, and because Washington has suffered, and will continue to suffer, irreparable harm absent a return to the status quo, the State respectfully requests that the Court enter preliminary injunctive relief to the state of Washington consistent with the relief it has provided to the organizational Plaintiffs, including by requiring relief Defendants the Department of Agriculture, the Department of Commerce, the Department of Defense, the Department of Education, the Department of Health and Human Services, the Department of Homeland Security, the Department of Housing and Urban Development, and the Department of the Interior, to offer to reinstate terminated probationary employees in the jobs they held before being unlawfully fired.

## II.   BACKGROUND

**A.    OPM's Mass Termination of Probationary Federal Employees**

This Court found that in February 2025, OPM directed other federal agencies to fire their probationary employees "under the pretense of 'performance.'" Dkt. 132 at 2; Dkt. 5. OPM

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1  provided a generic template termination letter to agency chief human capital officers that
2  included a false reason for termination: "The Agency finds, *based on your performance*, that you
3  have not demonstrated that your further employment at the Agency would be in the public
4  interest." *Id.* at 5 (citing Dkt. 87-1). As directed, at least 18 federal agencies fired more than
5  24,000 probationary workers. Alexander Decl. ¶ 4 (MD declarations). Some agencies used the
6  OPM template language verbatim; others made "slight tweaks" but "maintained the central
7  pretense" and "stayed true to the OPM template, down to the footnotes." Dkt. 132 at 7. As this
8  Court found, the termination letter was false because agencies did not consider performance in
9  terminating probationers. *Id.* at 6–8. To the contrary, even employees with recent outstanding
10 performance ratings were terminated for "performance." *Id.*

11      For example, a Washington resident employed by the National Oceanic and Atmospheric
12 Administration (NOAA) as a Marine Scientist was terminated nine days after receiving a
13 performance review in which her supervisor remarked that she "is a highly functioning and
14 valuable member of the [Olympic Coast National Marine Sanctuary (OCNMS)] and her first
15 4 months at OCNMS have been a resounding success!" Avila Decl. ¶¶ 8–9. Her termination
16 letter stated that "OPM has advised that '[p]robationary periods are an essential tool for agencies
17 to assess employee performance and manage staffing levels.' . . . In light of that guidance, the
18 Agency finds that you are not fit for continued employment because your ability, knowledge
19 and/or skills do not fit the Agency's current needs." *Id.* ¶ 8, Ex. A.

20      As Defendants have conceded, OPM lacks statutory authority to direct agencies to
21 terminate probationary employees. *See* 5 U.S.C. §§ 1102, 1103; Dkt. 45 at 8. Its statutory role is
22 to provided human resources support to other agencies. 5 U.S.C. §§ 1103, 1105, 4304, 4305,
23

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

7514. Authorizing statutes delegate exclusive authority over employment decisions to federal agency heads. *Id.* at 7–8; Dkt. 132 at 9; 5 U.S.C. § 3101. Agency downsizing my occur only through a reduction-in-force, which provides order of termination and bumping rights, and requires notice to employees, affected states, and local governments. *See, e.g.*, 5 U.S.C. § 3502; 5 C.F.R. §§ 351.402, 351.801–803. Probationary employees may be terminated only based on conduct or performance after evaluation, and with detailed notice. *See* 5 U.S.C. § 2301(b)(6); 5 C.F.R. § 315.804(a). As this Court put it, "[n]o statute – anywhere, ever – has granted OPM the authority to direct the termination of employees in other agencies." Dkt. 132 at 9.

**B.    Harm Suffered by Washington as a Result of OPM's En Masse Termination of Federal Employees**

Plaintiffs have submitted dozens of declarations documenting harm caused by the mass termination of probationary federal employees across numerous federal agencies. Dkt. 122. This Court found "concrete harms . . . flow[ing] from the way the unlawfully directed terminations disable the federal agency services on which [plaintiffs] depend, or otherwise imperil their organizational mission or membership." Dkt. 132 at 12. The Court found some injuries had already occurred and others were "imminent," ranging from harm to national forests and public lands to inability to access grant funds. *Id.* at 12–13.

The state of Washington has already experienced or will imminently experience similar harms. The State relies every day on the services of agencies across the federal government, both those who work in Washington and those who work in other states and the District of Columbia. Dkt. 70-7 at 3–6. The State contains numerous federal offices and extensive federal lands, including three National Parks (Olympic, North Cascades, and Mount Rainier), eight National Forests, extensive lands administered by the Bureau of Land Management, six military bases

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

(which employ significant numbers of civilian staff), and significant dams on the Columbia and Snake Rivers run by the Bureau of Reclamation and Army Corps of Engineers. The State also relies heavily on data created by many offices within the federal government, ranging from weather data produced by NOAA to education statistics created by the Department of Education. *Id.*

OPM's mass termination of federal employees within the State and throughout the country has disrupted the State's partnerships with federal agencies and hampered operations and vital work done by Washington State agencies. For example, federal agencies are invaluable partners for the Department of Ecology (Ecology), which relies heavily on work performed by employees at the Federal Emergency Management Agency (FEMA), the Bureau of Reclamation (BOR), NOAA, the United States Forest Service (USFS), the National Parks Service (NPS), and the Fish and Wildlife Service (FWS) among others. Dkt. 70-2 ¶¶ 5, 6, 11, 19, 22, 27, 29. Ecology relies on its federal partners to protect its citizens and infrastructure from flood risk, manage water resources throughout the state, protect state coastal resources, manage millions of acres of national forest, maintain and restore ecological forest health, protect wetlands, and address drought conditions. *Id.* ¶¶ 6–7, 11, 19, 22, 27, 29; Dkt. 70-12 ¶ 2.

Disruptions in staffing have substantially impacted Ecology's work. Probationary employee terminations impaired floodplain management activities, slowed work on a project focused on making surface water available to central Washington's agricultural industry, disrupted the development of offshore wind as an energy resource, and weakened the ability of rural coastal communities to recover from disasters. Dkt. 70-2 ¶¶ 10, 12–15, 20–21. The terminations exacerbated staffing shortages at the Natural Resources Conservation Service

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  (NRCS), an essential partner for Ecology in forecasting water supply and planning for drought
2  impacts. Dkt. 70-12 ¶¶ 7, 17. Without the NRCS data, Ecology cannot adequately serve irrigation
3  districts, utilities, and others, with likely impacts to public health and safety. *Id.* ¶ 20.
4  Probationary employee terminations will also impede Ecology's efforts to effectively manage
5  critical water resources, ensure that environmental standards are being met, prevent wildfires,
6  preserve coastal wetlands, and protect water and air quality across the State. Dkt. 70-2 ¶¶ 18,
7  25–26, 30.

8  Ecology's partnership with NOAA, a component of the Department of Commerce, is
9  particularly illustrative. Cuts to NOAA staff have disrupted two critical federal programs in
10 Washington. The first is the Olympic Coast National Marine Sanctuary (Olympic Coast NMS).
11 Dkt. 70-11 ¶ 5. The Olympic Coast NMS, a 3,000 square mile area off the Washington coast, is
12 home to valuable fisheries and shellfish beds, which generate millions of dollars in commercial
13 and recreational economic activity in the State every year. *Id.* ¶ 8. As a result of the mass
14 termination of probationary employees, the Olympic Coast NMS lost its Research Coordinator,
15 its only Marine Scientist, and an Outreach and Education Specialist. *Id.* ¶¶ 11–13. These cuts
16 directly harm NOAA's ability to conduct vital scientific surveying and impede the State's ability
17 to anticipate and respond to changes in this important habitat in Washington. *Id.* ¶ 14.

18 The second critical program affected by the probationary employee terminations is the
19 Ocean Acidification Program (OAP), which conducts research, monitoring, coordination, and
20 other activities designed to combat the crisis of ocean acidification. *Id.* ¶ 17. This work is
21 especially important in Washington where ocean acidification has a history of destroying young
22 oyster larvae and jeopardizing tens of thousands of jobs and billions of dollars linked to the
23

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

oyster industry. *Id.* ¶ 18. As a result of the terminations of probationary employees, OAP lost its Director and the Pacific Marine Environmental Laboratory lost researchers conducting critical field work. *Id.* ¶¶ 25–28. Ecology relied on these staff members to process monthly ocean acidification samples, and this work was "truly irreplaceable." *Id.* ¶¶ 20, 30–31. NOAA's probationary employee terminations also threatened the existence of data that is critical to Ecology's management of the state's shellfish, the shellfish industry, and water quality generally. *Id.* ¶¶ 33–34. Some of Ecology's work simply cannot be done without the help of NOAA staffers who were fired at OPM's direction. *Id.* ¶ 36.

The Washington State Department of Fish and Wildlife (WDFW), which is responsible for managing fish and wildlife resources throughout the State, also interacts extensively with employees at NOAA and has experienced the effects of NOAA probationary employee terminations. Dkt. 70-5 ¶¶ 3–4. Projects aimed at releasing salmon from hatcheries and reintroducing salmon into the ocean as a food source had to be put on hold. Dkt. 70-9 ¶ 7. Consequently, many millions of salmon will not be released in 2025, which "will have a devastating impact to important sectors of Washington's economy, and will also threaten the southern resident killer whale, a species protected by the Endangered Species Act." *Id.* ¶ 7. Not only will this diminish salmon populations in 2025, but it will have a deleterious effect on salmon populations going forward and affect the State for years to come. *Id.* ¶ 8.

The unlawful termination of probationary employees has also caused WDFW to experience delays in approving hatchery genetic management plans, which increases WDFW's liability to lawsuits and impedes the goals of the hatchery programs that serve the State and Treaty Tribes' interests. Dkt. 70-5 ¶¶ 4, 6. These terminations at NOAA could likewise

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

jeopardize the timely review of the annual North of Falcon Fisheries process, a complex negotiation process related to the harvest of Pacific salmon, which "would have very significant impacts on both state and local economies." *Id.* ¶ 5. Probationary employee terminations also threaten a commercial Dungeness crab fishery, undermine compliance with the Marine Mammal Protection Act, and jeopardize commercial fishing operations, causing significant economic harm. *Id.* ¶¶ 7–9. The statewide economic impact of commercial fisheries operations that use Port of Seattle facilities is around $1.4 billion, and the Alaska seafood industry generated over 23,000 jobs and $1.3 billion in labor income for the Puget Sound region. *Id.* ¶ 9.

In addition to impeding the vital work of state agencies, the mass termination of probationary federal workers also harms Washington by substantially increasing the number of unemployment benefits claims from federal employees, which results in higher costs to the State. Dkt. 70-8 ¶¶ 6–7, 9, 15. From February 13 through March 3, 2025, Washington's Employment Security Department experienced a nearly 470% increase in unemployment benefit claims from federal employees compared to the same period last year. *Id.* ¶ 7. Since February 13, 2025, the State has received unemployment claims from federal employees at 39 unique federal agencies." *Id.* ¶ 8.

The mass termination of probationary federal employees will have rippling effects statewide. For example, sweeping terminations of probationary employees at the Department of Housing and Urban Development (HUD) could "effectively incapacitate" Washington's housing authorities, which provide vital services to low-income Washingtonians. Dkt 70-7 ¶ 8. Mass firings at the National Institutes of Health would have deep financial implications for Washington state's top research institutions. *Id.* ¶ 12. Terminations of NPS probationary

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

employees will lead to unsafe conditions in Washington's national parks—which receive tens of millions of visitors per year—and hamper park rangers' ability to assist or rescue injured visitors. *Id.* ¶ 13. Terminations at agencies like the BOR and the U.S. Army Corps of Engineers risk compromising critical infrastructure such as the Grand Coulee Dam, the largest hydropower producer in the United States. *Id.* ¶ 16. And probationary employee terminations impacting wildfire response will significantly diminish Washington's ability to prevent, respond, and contain catastrophic wildfires. *Id.* ¶ 15.

Of course, the record is already replete with examples of harms that have affected other Plaintiffs and that would similarly affect the State of Washington. *See* Dkt. 122 (table of evidentiary citations to Plaintiffs' record, organized by federal agency).

### C.  Procedural History

Less than a week after the mass termination of probationary employees began, Plaintiffs challenged OPM's acts as ultra vires and in violation of the APA. Dkt. 1. Plaintiffs moved for a TRO four days later, submitting admissions from at least six agencies that OPM directed them to terminate all probationary employees. Dkts. 18 through 18-19, 39 through 39-6. Defendants, in contrast, submitted one document from Acting OPM Director Ezell denying that OPM directed any terminations. Dkt. 34.

This Court issued an oral TRO followed by a written opinion. Dkts. 44, 45. Finding that Plaintiffs' "mountain of evidence" showed OPM directed the terminations and documented widespread irreparable injury to Plaintiffs. Dkt. 45. The Court found the Ezell declaration was not credible. *Id.* The Court set an evidentiary hearing on whether OPM ordered the terminations, ordering the parties to make all declarants available for cross-examination. *Id.* The Court granted

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1  Plaintiffs' motion to amend the complaint to add Rule 19 relief defendants. Dkt. 44 at 71:21-22,
2  72:14-22.

3        After entry of the TRO, OPM amended a memorandum it had issued on Inauguration
4  Day to add two sentences stating that agencies should make their own decisions, but OPM did
5  not rescind any prior communications or restore employees to service. The Court permitted
6  Plaintiffs to again amend their complaint to add additional Rule 19 relief defendants and new
7  plaintiffs, including the State of Washington. Defendants did not make Mr. Ezell available for
8  cross-examination, and instead withdrew his declaration, submitted a new declaration by
9  Noah Peters, and did not present any government witnesses or call any of Plaintiffs' declarants
10 for cross-examination. Dkt. 97.

11       On March 13, the Court held a preliminary injunction hearing and orally granted
12 immediate preliminary injunctive relief, which was later followed by a written decision. Dkt. 120
13 at 47–54; Dkt. 132. Finding that every preliminary injunctive factor supported restoring the
14 status quo, the Court ordered OPM and six relief defendants to cease terminations, restore
15 services by reinstating employees to their positions, and report on compliance. Dkt. 120 at 52–
16 54; Dkt. 132. This Court denied Defendants' motion for a stay pending appeal, Dkt. 133 at 3–4,
17 which they now seek from the U.S. Supreme Court, without waiting for the Ninth Circuit to rule
18 first, via an Application to Stay Injunction (No. 24A904).

19       On March 21, 2025, this Court entered a Notice of Briefing Schedules explaining that
20 the March 13 preliminary injunction did not consider Washington's claims and stating that
21 Washington should bring any preliminary injunction motion it plans to file by noon on March 26.
22 Dkt. 152.

23

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

### III. ARGUMENT

**A.  Legal Standard**

A preliminary injunction is warranted where the moving party establishes that (1) it is likely to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. Fed. R. Civ. P. 65(c); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1). All four factors strongly support preliminary injunctive relief for the State.

**B.  Washington Has Standing**

To establish Article III standing, a plaintiff must demonstrate "that it has suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Washington v. Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007)). "Monetary costs are of course an injury[,]" *United States v. Texas*, 599 U.S. 670, 676 (2023), and such losses constitute "sufficiently concrete and imminent injury to satisfy Article III," *Dep't of Com. v. New York*, 588 U.S. 752, 767 (2019). A state also has standing to vindicate its proprietary interests in protecting its resources, including its land, water, and wildlife. *E.g.*, *Trump*, 847 F.3d at 1159–61 (per curiam) (states had standing where challenged law harmed their proprietary interests as operators of public universities); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1198, 1197 (9th Cir. 2004) (government entity has a proprietary interest in "protecting its natural resources from harm" and proprietary interests are "not confined to protection of [the entity's] real and personal property" but are "as varied as [the entity's] responsibilities, powers, and assets.").

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

The state of Washington has suffered, and continues to suffer, pecuniary and proprietary injuries traceable to Defendants' unlawful actions in terminating probationary federal employees in Washington and across the country en masse. These injuries include, for example, increased costs of administering the State's unemployment insurance program (Dkt 70-8 ¶¶ 16–18), increased operating costs for housing authorities operating low-income housing units (Dkt. 70-7 ¶¶ 7–8), harm to the State's commercial Dungeness crab fishery and commercial fishing operations (Dkt 70-5 ¶¶ 7, 9). The State relies heavily on data created by the federal government and on partnerships with the federal government to protect the welfare of its citizens, fight communicable diseases, combat homelessness, keep its waters clean, and respond to natural disasters such as floods and wildfires. *E.g.*, Dkt. 70-7 ¶ 6; Dkt 70-2 ¶¶ 5–30. The mass termination of probationary employees at the federal agencies on which Washington relies hampers these efforts and has impacts across the state of Washington that will compound over time absent immediate relief. These harms are fairly traceable to the challenged federal action, and an injunction would redress these injuries.

### C.    Washington Is Likely to Succeed on the Merits

This Court has already determined that Plaintiffs are likely to succeed on the merits of their claims. The State of Washington brings its claims on the same legal theories advanced in Plaintiffs' prior briefing to this Court, and does not repeat those arguments in full here. This Court held those claims are likely to succeed and justify preliminary injunctive relief.

In sum, based on a "mountain of evidence," (Dkt. 45 at 8; *see also* Dkt. 132 at 11), the Court found that "OPM directed agencies to fire their probationers under the pretense of 'performance'" and did so to, "at least in part, circumvent statutory and regulatory reduction in

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

force procedures and foreclose appeal to the Merit Systems Protection Board." Dkt. 132 at 8. OPM's orders were directed to all federal agencies. *See* Dkt. 71, Ex. C (Forest Service Briefing Paper stating "All federal agencies…were notified on February 12, 2025, by the Office of Personnel Management (OPM) to terminate all employees who have not completed their probationary or trial period."); Dkts. 111-2, 111-5. Yet "[n]o statute – anywhere, ever – has granted OPM the authority to direct the termination of employees in other agencies." Dkt. 132 at 9. Instead, as a creature of statute, OPM possesses "only the authority that Congress has provided." *Id.* (quoting *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022)). Because Congress vested the director of OPM only with authority to appoint, direct, and supervise employees *of OPM*, 5 U.S.C. §§ 1103(a)(1)–(3), the agency "did not have the authority to direct the firing of employees, probationary or otherwise, in any *other* federal agency," as Defendants have conceded. *Id.* at 10. Accordingly, this Court determined that OPM's directive "constituted an *ultra vires* act that violated its and all impacted agencies' statutory authority." *Id.* at 9. Further, this Court found that the OPM template letter used to effectuate the terminations—which stated "[t]he Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest," Dkt. 87-1 at 1—was "an obvious pretext intended to obstruct appeal and avoid statutory and regulatory reduction-in-force procedures." Dkt. 132 at 10-11.

This Court has also determined that Plaintiffs' APA claims are likely to succeed on the merits "for much the same reason." *Id.* at 12. "OPM's *ultra vires* directive is likely to constitute an unlawful final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 'in excess of statutory jurisdiction, authority, or limitations, or short

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

of statutory right,' and 'without observance of procedure required by law.'" *Id.* (quoting 5 U.S.C. §§ 706(2)(A), (C), (D)).

### D. The State Will Suffer Irreparable Harm Without a Preliminary Injunction

Just as the organizational Plaintiffs face "concrete harms" flowing "from the way the unlawfully directed terminations disable the federal agency services on which they or their members depend, or otherwise imperil their organizational mission or membership – such as by requiring the organizations to steal resources from their existing work to solve new problems entirely of OPM's making," (Dkt. 132 at 12)—the State of Washington faces concrete harms flowing from Defendants' unlawfully directed terminations. The State relies every day on the services of agencies across the federal government, both those who work in the state of Washington and those who work in other states and the District of Columbia. The State is also impacted in multiple ways when residents of Washington lose their jobs. The State relies on federal agencies "in countless ways to protect the welfare of its citizens, manage its natural resources, prepare for and respond to natural disasters and severe weather conditions, fight communicable diseases, combat homelessness, advance scientific and medical discoveries, support the State's veteran community and much more." Dkt 70-7 ¶ 6.

Plaintiffs have already documented, and the Court credited, widespread ongoing and imminent harm that affects Washington. For example, Washington, along with conservation groups and others, document widespread impairment to services provided to the public and fragile ecosystems in national parks and other public lands. Dkts. 18-11, 18-13, 18-15, 39-2, 39-3, 70-10, 70-15, 70-18, 70-19. The decimation of probationary staff at federal science agencies including NOAA, the CDC, and NIH is impairing scientific research, environmental

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1  conservation; fisheries, water, floodplain, and fire management; local public health work; and
2  environmental justice initiatives. Dkts. 70-3, 70-16, 18-12, 70-11, 70-2, 70-5, 70-12, 70-4, 70-9,
3  70-10, 71, 18-13, 39-2, 70-18, 18-8, 18-9, 70-15. Terminations of FAA workers have
4  "introduced unnecessary risk and stress that distracts from the mission of safe flight for civil and
5  military operations" for flight attendants. Dkt. 70-13 ¶ 5; Dkt. 18-17. The unlawful terminations
6  impact VA services, including "mental health research, cancer treatment, addiction recovery,
7  prosthetics, and burn pit exposure studies," transportation services, and administrative services
8  that facilitate veterans' access to treatment. Dkt. 18-7 ¶8; Dkts. 18-3, 18-18, 18-12.

9  As explained in more detail above, federal agencies are invaluable partners for the State.
10 For example, the Washington Department of Ecology relies heavily on work performed by
11 employees at FEMA, BOR, NOAA, USFS, NPS and FWS, among others, to protect its citizens
12 and infrastructure from flood risk, manage water resources throughout the state, protect state
13 coastal resources, manage millions of acres of national forest, maintain and restore ecological
14 forest health, protect wetlands, and address drought conditions. Dkt 70-2¶¶ 5, 6–7, 11, 19, 22,
15 27, 29; Dkt 70-12 ¶ 2. Disruptions in staffing have hampered the State's ability to protect its
16 people and resources.

17 Irreparable harm to the State has, or imminently will, flow from mass firings at HUD that
18 could "effectively incapacitate" Washington's housing authorities; at NIH, which would have
19 deep financial implications for Washington state's top research institutions; at NPS, which will
20 lead to unsafe conditions in Washington's national parks; and at agencies like the BOR and the
21 U.S. Army Corps of Engineers, which would risk compromising critical infrastructure such as
22 the Grand Coulee Dam, the largest hydropower producer in the United States. Dkt 70-7 ¶¶ 8, 12,
23

MEMORANDUM IN SUPPORT OF
PLAINTIFF STATE OF WASHINGTON'S
MOTION FOR PRELIMINARY
INJUNCTION – NO. 3:25-cv-01780-WHA

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

13, 16. And probationary employee terminations impacting wildfire response will significantly diminish Washington's ability to prevent, respond, and contain catastrophic wildfires. *Id.* ¶ 15.

The record is replete with evidence of irreparable harm that will flow to Washington as well as other Plaintiffs absent preliminary injunctive relief. This factor, too, strongly favors an injunction. Dkt. 45 at 22–23; Dkt. 132 at 13 (finding irreparable harm justifying immediate relief); *see* Dkt. 122 (table of evidentiary citations to plaintiffs' record, organized by federal agency).

### E. The Balance of Equities Weigh in the State's Favor and a Preliminary Injunction Is in the Public Interest

The equities and public interest, which merge when the government is a party, tip sharply in favor of the State. *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024). The harms that the State and other Plaintiffs have shown are serious, ongoing, and irreparable, while the Defendants have provided no credible evidence of harm. As this Court found in denying a stay of the organizational Plaintiffs' preliminary injunction, Defendants nowhere claimed to be "uniquely incapable of rehiring recently terminated probationers," Dkt. 133 at 4, their assertions that they were injured by doing so amount to mere administrative burdens, *id.*, and Defendants' own declarations demonstrate that agencies are fully able to take steps to comply with the TRO issued by the Maryland District Court and the preliminary injunction issued by this Court. Dkts. 139, 141, 144. As this Court held, "[t]he preservation of the rights in the Constitution and the legality of the process by which government agencies function certainly weighs heavily in the public interest." Dkt. 132 at 13–14 (quoting *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C 1993)).

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

Because each *Winter* factor favors granting an injunction, this Court should grant preliminary injunctive relief to the State, covering all the relief Defendants whose actions have caused and threaten further irreparable harm to Washington as supported by the evidence in the record. Those defendants are: the Department of Agriculture, the Department of Commerce, the Department of Defense, the Department of Education, the Department of Health and Human Services, the Department of Homeland Security, the Department of Housing and Urban Development, and the Department of the Interior. Dkt. 122 (summarizing evidence of harm by agency).

## IV. CONCLUSION

For all the reasons above, this Court should grant preliminary injunctive relief to the State of Washington.

DATED this 26th day of March 2025.

NICHOLAS W. BROWN
Attorney General

*/s/ Cynthia L. Alexander*
TERA M. HEINTZ, SBN #241414
CRISTINA SEPE, SBN #308023
CYNTHIA L. ALEXANDER, *Pro Hac Vice*
Deputy Solicitors General
Solicitor General's Office
1125 Washington Street SE, PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200
Tera.Heintz@atg.wa.gov
Cristina.Sepe@atg.wa.gov
Cynthia.Alexander@atg.wa.gov
Attorneys for Plaintiff State of Washington

MEMORANDUM IN SUPPORT OF PLAINTIFF STATE OF WASHINGTON'S MOTION FOR PRELIMINARY INJUNCTION – NO. 3:25-cv-01780-WHA

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200