1  NICHOLAS W. BROWN
   Attorney General of Washington
2  TERA M. HEINTZ, SBN #241414
   CRISTINA SEPE, SBN #308023
3  CYNTHIA L. ALEXANDER, *Pro Hac Vice*
   Deputy Solicitors General
4  Solicitor General's Office
   1125 Washington Street SE, PO Box 40100
5  Olympia, WA  98504-0100
   (360) 753-6200
6  Tera.Heintz@atg.wa.gov
   Cristina.Sepe@atg.wa.gov
7  Cynthia.Alexander@atg.wa.gov
   Attorneys for Plaintiff State of Washington
8

9              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
10                 AT SAN FRANCISCO

11 | AMERICAN FEDERATION OF            NO. 3:25-cv-01780-WHA
   | GOVERNMENT EMPLOYEES, AFL-CIO,
12 | et al.,                           DECLARATION OF
   |                                   ALEXANDRA AVILA
13 |           Plaintiffs,
   |
14 |   v.
   |
15 | UNITED STATES OFFICE OF
   | PERSONNEL MANAGEMENT, et al.,
16 |
   |           Defendants.
17

18

19

20

21

22

23

DECLARATION OF ALEXANDRA
AVILA – NO. 3:25-cv-01780-WHA

ATTORNEY GENERAL OF WASHINGTON
Solicitor General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

I, Alexandra Avila, declare as follows:

1. I am over the age of 18, competent to testify as to the matters herein, and make this declaration based on my personal knowledge.

2. I am a resident of Port Angeles, Washington.

3. Before being terminated in February 2025, I was an employee of NOAA in the Olympic Coast National Marine Sanctuary. I was hired into my most recent position in September 2024 as a Marine Scientist.

4. I received my Ph.D. in Fisheries from Oregon State University. My work experience includes positions with the National Park Service, US Forest Service, and the US Fish and Wildlife Service. I have worked in the private sector on environmental consulting. I have also taught at the university level.

5. Prior to my termination, I was involved in an ocean mooring data collection project. While NOAA has been monitoring ocean conditions for nearly 25 years, their existing approach relied on retrieving buoys every few weeks to collect the oceanographic data. This long-term data set is important for creating climatology models developed by researchers at Oregon State University and the University of Washington. Furthermore, our team was working with researchers at University of Washington and Northwest Association of Networked Ocean Observing Systems to implement live mooring buoys scheduled for deployment later in 2025, which would mark a significant advancement in oceanographic research. These innovative buoys would provide insights into current ocean conditions. Unlike our current buoy system that allows us to see ocean conditions retrospectively, our live monitoring system would offer an immediate window into marine environments. The potential impact was particularly significant for regional

DECLARATION OF ALEXANDRA AVILA – NO. 3:25-cv-01780-WHA   1   ATTORNEY GENERAL OF WASHINGTON
Solicitor General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  industries, especially fishing. For instance, the real-time data could prove crucial for tribal crab
2  fishers. By tracking oxygen levels in the ocean, fishers could receive early warnings about
3  potentially dangerous conditions like hypoxia, allowing them to retrieve crab pots before oxygen
4  depletion threatens to kill their catch. This capability represents a critical intersection of scientific
5  research and practical maritime industry needs.

6        6.    I also work on 304(d) consultations with the Makah Tribe. Section 304(d) of the
7  National Marine Sanctuaries Act (NMSA) provides a framework for resolving conflicts between
8  sanctuary management and uses of sanctuary resources permitted under other laws. This section
9  seeks to balance federal responsibilities to manage marine sanctuaries while recognizing valid
10 subsistence or cultural practices established by treaties. These consultations permit the Makah
11 Tribe to obtain clearance from the National Marine Fisheries Service (NMFS) to fish and hunt
12 in the Tribe's usual accustomed grounds, a right the Tribe holds under treaties with the federal
13 government (Treaty of Neah Bay [1855]). My research examined ways in which the Tribe could
14 have the least environmental impact on other species such as seals and birds in the area of their
15 hunting and fishing activities, a consideration that may be relevant to compliance with the
16 Endangered Species Act, National Marine Sanctuaries Act, Marine Mammal Protection Act and
17 other relevant legislation.

18       7.    In my work for NOAA/NMFS on 304(d) consultations, I partnered with the
19 Washington Department of Fish and Wildlife and US Fish and Wildlife Service. Our joint work
20 involved compiling data on the potential impacts of whaling activities on seabirds, marine
21 mammals, and the haul out and pupping grounds of pinnipeds (including seals), and making
22 recommendations to mitigate impacts of tribal hunting and fishing on those species. Requests to
23

DECLARATION OF ALEXANDRA AVILA – NO. 3:25-cv-01780-WHA     2     ATTORNEY GENERAL OF WASHINGTON
Solicitor General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  NMFS for 304(d) consultations must receive a response within 45 days. Due to my termination,
2  NMFS will respond to these requests with incomplete information on impacted birds, pinnipeds,
3  and other mammals.

4      8.    On February 27, 2025, I received an email notifying me that I was terminated
5  from NOAA. The notice stated, "OPM has advised that '[p]robationary periods are an essential
6  tool for agencies to assess employee performance and manage staffing levels.' . . . In light of that
7  guidance, the Agency finds that you are not fit for continued employment because your ability,
8  knowledge and/or skills do not fit the Agency's current needs." A true and correct copy of this
9  termination notice is attached as **Exhibit A** to this declaration.

10      9.    Prior to this notice, I had no notice of any issues with my performance. On the
11  contrary, only nine days before my termination, my supervisor Kevin Grant, Olympic Coast
12  National Marine Sanctuary's superintendent, signed a performance review on February 18, 2025,
13  stating that "Alex is a highly functioning and valuable member of the OCNMS team and her first
14  4 months at OCNMS have been a resounding success!" A true and correct copy of my
15  February 18, 2025 performance review is attached as **Exhibit B** to this declaration.

16      10.    Further, NOAA's Office of National Marine Statuaries (ONMS) provided a
17  $180,000 scholarship to me (the Dr. Nancy Foster Scholarship), to complete my Ph.D. work at
18  Olympic Coast National Marine Sanctuaries. That Ph.D. work was completed in January 2023,
19  after which I completed two post-doctorate fellowships through Oregon Sea Grant, also a part of
20  NOAA. The second of these, the Coastal Resilience and Adaptation Fellowship, ended in
21  September 2024, only five months before I was fired from NOAA, supposedly because my
22  "knowledge and/or skills [did] not fit the Agency's current needs."

23

DECLARATION OF ALEXANDRA
AVILA – NO. 3:25-cv-01780-WHA

3

ATTORNEY GENERAL OF WASHINGTON
Solicitor General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1   I declare under penalty of perjury under the laws of the State of California and the
2   United States of America that the foregoing is true and correct.
3   DATED and SIGNED this 26th day of March 2025, at Port Angeles, Washington.

_____
ALEXANDRA AVILA

DECLARATION OF ALEXANDRA
AVILA – NO. 3:25-cv-01780-WHA

4

ATTORNEY GENERAL OF WASHINGTON
Solicitor General's Office
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

# Exhibit A

---------- Forwarded message ---------
From: <trusted.staff.sender@noaa.gov>
Date: Thu, Feb 27, 2025 at 12:36 PM
Subject: Notification of Termination During Trial Period
To: <alexandra.avila@noaa.gov>

February 27, 2025

MEMORANDUM FOR AVILA, ALEXANDRA M, Marine Scientist, NOS
FROM: VADM Nancy Hann
Deputy Under Secretary for Operations
SUBJECT: Notification of Termination During Trial Period
REFERENCES: 5 U.S.C. § 3321(a)
DAO 202-315

This is to provide notification that I am terminating you from the position of
and federal service consistent with the above references.

On September 23, 2024, the agency appointed you to the
position of Marine Scientist. As documented on your appointment Standard Form 50 (SF-50), your
appointment is subject to the completion of a probationary/trial period. The agency also
informed you of this requirement in the job opportunity announcement for the position.

Guidance from the Office of Personnel Management ("OPM") states, "An
appointment is not final until the probationary period is over," and the probationary period
is part of "the hiring process for employees." (1) "A probationer is still an applicant for a
finalized appointment to a particular position as well as to the Federal service" (2) "Until the
probationary period has been completed," a probationer has "the burden to demonstrate
why it is in the public interest for the Government to finalize an appointment to the civil
service for this particular individual." (3)

OPM has advised that "[p]robationary periods are an essential tool for agencies to
assess employee performance and manage staffing levels." (4) In light of that guidance, the
Agency finds that you are not fit for continued employment because your ability,
knowledge and/or skills do not fit the Agency's current needs.

For these reasons, I am terminating you from the position of Marine Scientist with the
agency and the federal civil service effective February 27, 2025 at 5 p.m. EST.

If you believe that your termination is the result of discrimination, you have the right to file a
complaint pursuant to 29 C.F.R. Part 1614.  Any allegation of discrimination based on race,
color, religion, sex, national origin, physical or mental disability, and/or age, must be brought to

the attention of an Agency Equal Employment Opportunity (EEO) Counselor within forty-five (45) days of the effective date of this action. https://www.noaa.gov/civil-rights/eeo-counseling-complaints

If you elect to seek corrective action by the Office of Special Counsel's (OSC) Complaints Examining Unit, your appeal will be limited to a determination as to whether the Agency took one or more covered personnel actions against you in retaliation for making one or more protected whistleblowing disclosures, which constitutes a prohibited personnel practice in accordance with 5 U.S.C. § 2302(b). If OSC dismisses your claim, you may file an individual right of action appeal to the MSPB, but the MSPB will only adjudicate whether you proved that your protected disclosure was a contributing factor in the effected action. For more information, you may visit the OSC's website at: https://osc.gov/pages/file-complaint.aspx

If you have any questions regarding this notice, please contact Octavia Saine, Acting Director of the NOAA Office of Human Capital Services, at octavia.saine@noaa.gov.

VADM Nancy Hann
Deputy Under Secretary for Operations


(1)  OPM, Practical Tips for Supervisors of Probationers.
(2)  *See* U.S. Merit Systems Protection Board Report to the President and Congress, The Probationary Period: A Critical Assessment Opportunity (August 2005)
(3)  Id.
(4)  OPM, *Guidance on Probationary Periods, Administrative Leave and Details*

# Exhibit B

# SECTION 2 - PROGRESS REVIEW

| Employee's Name | Rating Period |
|---|---|
|  |  |

**ITEM 5. Mid-Cycle/Progress Review** *(Check appropriate box)*

- [ ] 1. Review indicates performance is **Eligible.**
- [ ] 2. Review indicates performance is **Eligible**; however, there are performance deficiencies, as stated below.
- [ ] 3. Review indicates performance is **deficient** and a performance improvement plan is needed. Deficiencies are stated below. *(If this block is checked, supervisor must contact the servicing HR office.)*

**Key Achievements, Strengths:** Be specific and relate these to performance elements. List areas where work was done well and identify the strengths exhibited by the employee during the rating period.

**Deficiencies, Areas of Concern:** *(Must be filled in if box 2 or box 3 above is checked)*: Be specific and relate these to individual performance elements. Note deficiencies or areas where performance has declined during the rating period.

**Suggestions/Strategies for Improvement:** List areas in which the employee might enhance performance. Comments can also identify suggestions for career growth and development.

|  | Employee's Initials | Date | Rating Official's Initials | Date |
|---|---|---|---|---|
| Mid-Cycle Progress Review |  |  |  |  |
| Progress Review |  |  | *[signature]* |  |
| Progress Review |  |  |  |  |

FORM CD-541 (6-22)