PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' *EX PARTE* MOTION FOR A PROTECTIVE ORDER PRECLUDING THE DEPOSITION OF CHARLES EZELL**<br><br>The Hon. William H. Alsup |

Pursuant to Fed. R. Civ. P. 26, 30, and 45, Local Rule 7-10, and this Court's statements at the March 13, 2025 hearing, Defendants respectfully move for a protective order relieving Defendants from the obligation to produce Charles Ezell for the deposition that Plaintiffs have noticed for April 3, 2025, and of any obligation to produce Mr. Ezell for any further deposition in this case. As the Acting Administrator of the U.S. Office of Personnel Management ("OPM"), Mr. Ezell is a high-level official whose testimony cannot be compelled as repeatedly made clear by binding Ninth Circuit and Supreme Court precedent. The Ninth Circuit has rejected attempts to compel the testimony of an agency head on the basis that courts "cannot intrude into the workings of the executive branch and the time of that branch's leaders if there is another way to obtain the necessary information." *In re U.S. Dep't of Educ.*, 25 F.4th 692, 704 (9th Cir. 2022). Indeed, it is well-settled that "top executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions." *Simplex Time Recorder Co. v. Secretary of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985); *see also United States v. Morgan*, 313 U.S. 409, 422 (1941) (holding that it was improper for a district court to compel the Secretary of Agriculture testify at trial).

Such extraordinary circumstances do not exist here. Plaintiffs do not need Mr. Ezell's testimony whatsoever to support their allegations, particularly in light of existing discovery that Plaintiffs have been afforded by the Court and which they have propounded since the Court's order on discovery. Plaintiffs principally allege that on February 13 and February 14, 2025, OPM "ordered federal agencies across the country to terminate tens of thousands of federal employees." *See* Second Am. Compl.  ¶ 1, ECF No. 90 ("SAC"); *see also id.* ¶ 113. However, the previously offered declaration of OPM Senior Advisor Noah Peters noted that Mr. Ezell had minimal involvement in communications with other agencies regarding OPM's guidance on February 13 and 14. Decl. of Noah Peters in Supp. Of Defs' *Ex Parte* Mot. to Vacate Mar. 13, 2025 Evidentiary Hrg., ECF No. 77 ("Peters Decl."). As a result, this Court permitted Plaintiffs to depose Mr. Peters in this action, which they did on March 26. Moreover, Plaintiffs have noticed the depositions of six other individuals from other non-OPM agencies who were involved in the relevant communications and actions and who will be able to testify regarding

OPM's guidance to those agencies. The testimony of Acting Director Ezell has scant additional evidentiary value on top of these depositions, especially considering his non-involvement in the actual communications at issue. It is also unnecessary given that Defendants have withdrawn the declaration from Acting Director Ezell that they submitted for purposes of opposing the TRO in this action and do not intend to rely on any testimony from Mr. Ezell going forward. Defs' Mar. 11, 2025 Notice, ECF No. 97. Thus, Defendants respectfully request that this Court enter a protective order precluding Defendants from having to produce Mr. Ezell for his April 3, 2025 deposition or any further deposition in this case.

If the Court denies a protective order, Defendants respectfully request that the Court order the deposition delayed at least two weeks to give the government time to consider whether to seek mandamus relief from the Ninth Circuit and, if the government files a mandamus petition, until the court of appeals rules on that petition.

## BACKGROUND

On February 19, 2025, Plaintiffs sued OPM and its Acting Director, Charles Ezell. Plaintiffs then filed an amended complaint while moving *ex parte* for a TRO and order to show cause on February 23, 2025. *See* Compl., ECF No. 1; Am. Compl., ECF No. 17; Pls.' TRO Mot., ECF No. 18. Plaintiffs' claims rest on allegations that OPM had "ordered" federal agencies to terminate probationary employees and that this was an *ultra vires* act that exceeded the scope of OPM's statutory authority and otherwise violated the Administrative Procedure Act. *See* Am. Compl. ¶¶ 104–42; Pls.' TRO Mot. at 15–22. On February 24, 2025, this Court ordered Defendants to respond to Plaintiffs' TRO motion by February 26, 10:00am PST, and set a hearing on Plaintiffs' motion for February 27, 1:30pm PST. *See* Order Setting Hearing, ECF No. 21. On February 26, 2025, Defendants filed their opposition to Plaintiffs' TRO motion, attaching in support a declaration from the Acting Administrator of Office of Personnel Management ("OPM"), Charles Ezell, in support of their opposition. *See* Defs' Opp. To *Ex Parte* Mot. for TRO and Order to Show Cause, ECF No. 33; Decl. of Charles Ezell in Supp. Of Defs' Opp. To *Ex Parte* Mot. for TRO and Order to Show Cause, ECF No. 34.

At the conclusion of the February 27 hearing, this Court issued an oral TRO, which it

later reduced to writing. As amended, the Court held that "OPM's January 20 memo, February 14 email, and all other efforts by OPM to direct the termination of employees . . . are unlawful, invalid, and must be stopped and rescinded." Mem. Op. & Order Amending TRO at 24, ECF No. 45. The Court also directed Acting Director Ezell to appear before the Court to testify regarding Plaintiffs' allegations at an evidentiary hearing on March 13, 2025. *See* Tr. of Feb. 27, 2025, Hrg. at 69:8-18, ECF No. 44; Mem. Op. & Order Amending TRO at 24.

On March 4, 2025, Plaintiffs moved for leave to file a SAC, proposing to add some 43 additional defendants, including other federal agencies and agency heads that Plaintiffs allege were ordered by OPM to terminate probationary employees. *See* Pls' Redline of SAC ¶¶ 34–76, ECF No. 49-1. On March 10, 2025, the Court granted Plaintiffs' motion for leave to file the SAC, which was then filed on March 11. *See* Order, ECF No. 88; SAC, ECF No. 90.

On March 10, 2025, Defendants filed an *ex parte* motion to vacate the March 13, 2025 evidentiary hearing, seeking *inter alia* to preclude the testimony of Mr. Ezell at the hearing on the basis that an agency head cannot be compelled to provide testimony in a judicial proceeding. *See* Defs' *Ex Parte* Mot. to Vacate Mar. 13, 2025 Evidentiary Hrg., ECF No. 75. In support of that *ex parte* motion, Defendants attached a declaration from the Senior Advisor to the Director of OPM, Noah Peters, which explained OPM's discussions with agencies regarding its guidance memorandum issued on January 20, 2025. *See generally* Peters Decl., ECF No. 77. That declaration further explained that OPM held a February 13, 2025 meeting with agency chiefs of staff that was identical to an email that had been sent to agency chiefs of staff. *Id.* ¶¶ 5-6. The declaration also noted that Mr. Ezell had no involvement on the February 13, 2025 call with agency chiefs of staff and limited involvement on a February 14, 2025 call with Chief Human Capital Officers ("CHCOs") regarding the same guidance memorandum. *Id.* ¶¶ 7-8.

On March 10, the Court then denied Defendants' *ex parte* motion to vacate the hearing and preclude Mr. Ezell's testimony on the basis that "Acting Director Ezell submitted a sworn declaration in support of defendants' position." Order on *Ex Parte* Mot. to Vacate Mar. 13, 2025 Evidentiary Hrg., ECF No. 89 at 2. The Court's Order subsequently directed the parties to "advise the Court whether they intend to produce any live witnesses" at the March 13, 2025

hearing. *Id.* On March 11, 2025, Defendants informed the Court that they did not intend to produce any live witnesses as part of their March 13, 2025 hearing presentation and that they were withdrawing Mr. Ezell's prior declaration and would not be presenting him at the hearing because his declaration was now withdrawn. Defs' Notice, ECF No. 97.

At the March 13, 2025 hearing, the Court issued a preliminary injunction and, *inter alia*, gave "plaintiffs authority promptly to depose, in Washington, Noah Peters, who submitted [the] other declaration" on behalf of OPM. Tr. of Mar. 13, 2025 Hrg. 54:10-12. The Court separately ordered that "discovery [was] now open," caveating that while both sides could "take depositions and ask for documents," they should "be reasonable." *Id.* 54:13-14. The Court advised Plaintiffs, however, not to be "unreasonably broad in your discovery," and to focus on "narrowly directed, reasonable discovery." *Id.* 54:16-17. The Court did not order further action with respect to Mr. Ezell's testimony and conveyed its impression that the testimony of Mr. Ezell had been "substituted" by the testimony of Mr. Peters. *Id.* 7:15.

On March 20, 2025, Plaintiffs noticed the deposition of Mr. Ezell for a deposition to be taken on April 3, 2025, at 9:00 am EST while also noticing the deposition of six other individuals, who serve as CHCOs and Deputy CHCOs, from the Departments of Agriculture, Commerce, Health & Human Services, Interior, Treasury, and Veterans Affairs. *See* Exs. A-G to Declaration of Yuri S. Fuchs, attached as Ex. 1.[1] The deposition of Noah Peters occurred on March 26, 2025. *See* Ex. H to Fuchs Decl. On March 26, 2025, Defendants wrote to Plaintiffs regarding the scheduling of the depositions apart from the scheduled Noah Peters deposition. Defendants indicated the availability of deponents from non-OPM agencies. Fuchs Decl. ¶ 11. As to Mr. Ezell, however, Defendants requested that that Plaintiffs withdraw the notice of his deposition. *Id.* ¶ 12. In support of their request, Defendants cited to the fact that Mr. Peters was already testifying and reiterated the same concerns of high-level official testimony expressed in Defendants' prior *ex parte* motion to vacate the March 13, 2025 evidentiary hearing. *Id.* Plaintiffs declined to withdraw the notice. *Id.*

---

[1] Defendants attach the original deposition notices, but the parties have since agreed to conduct those non-OPM depositions across the weeks of March 31 and April 7.

1

**ARGUMENT**

2

**I.  Compelling the Testimony of the Head of an Executive Branch Agency Would
   Inappropriately Intrude on the Workings of a Coordinate Branch of Government and
   Pose Avoidable and Unnecessary Separation-of-Powers Concerns.**

3

4        This Court should issue a protective order precluding Acting Director Ezell from

5    appearing at a deposition because compelling the testimony of an acting agency head poses

6    major separation-of-powers concerns, especially at this early stage of litigation. The Ninth

7    Circuit's decision in *Department of Education* is particularly instructive. There, a group of

8    plaintiffs sought to take the deposition of the former Secretary of Education, Betsy DeVos, by

9    issuing a subpoena for her testimony, which the government moved to quash but the district

10   court denied. 25 F.4th at 697. On appeal by a writ of mandamus, the Ninth Circuit granted the

11   petition for a writ of mandamus and directed the district court to quash the subpoena. *Id.* at 706.

12   In granting the petition, the Ninth Circuit observed "concerns about the maintenance of a proper

13   separation of powers" in allowing the deposition to go forward and that "courts are reluctant to

14   distract cabinet secretaries from their executive duties." *Id.* at 700. The Ninth Circuit further held

15   that this concern was not lessened by the fact that Ms. DeVos "[wa]s no longer serving as

16   secretary." *Id.* at 705. In fact, the Ninth Circuit observed that allowing for depositions of cabinet

17   level officials would disincentivize such officials from serving or leaving their posts. *See id.*

18       In reaching this conclusion that the deposition of Ms. DeVos was impermissible, the

19   Ninth Circuit joined the majority of other courts that have likewise rejected the premise "that a

20   federal district court should ever compel a member of the President's cabinet or another high-

21   ranking official to appear in a judicial proceeding to testify." *In re USA*, 624 F.3d 1368, 1376

22   (11th Cir. 2010). This is because the "duties of high-ranking executive officers should not be

23   interrupted by judicial demands for information that could be obtained elsewhere." *In re Cheney*,

24   544 F.3d 311, 314 (D.C. Cir. 2008); *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S.

25   367, 383 (2004); *see also*, *e.g.*, *Am. Historical Ass'n v. Nat'l Archives & Records Admin.*, 402 F.

26   Supp. 2d 171, 182 (D.D.C. 2005). And while the Ninth Circuit noted that depositions of cabinet-

27   level secretaries might be appropriate in "extraordinary circumstances," it observed that those

28   circumstances are few and far between. *In re Dep't of Educ.*, 25 F.4th at 702. Those

"circumstances sufficient to justify the taking of a cabinet secretary's deposition [only] exist when the party seeking the deposition can demonstrate: (1) a showing of agency bad faith; (2) the information sought from the secretary is essential to the case; and (3) the information sought from the secretary cannot be obtained in any other way." *Id.*; *see also id.* (holding that all three factors must be present to establish extraordinary circumstances).

The Ninth Circuit's decision in *Department of Education*, along with the majority of other caselaw, demonstrate that taking Mr. Ezell's testimony is inappropriate here. Indeed, unlike the former Secretary at issue in *Department of Education*, Mr. Ezell is an actively serving, high-level official. A deposition would "distract [him] from [his] duties while in office," given the time needed to both prepare Acting Director Ezell for his deposition and have him sit for it. *Id.* at 705. Furthermore, there are no "extraordinary circumstances" warranting his deposition. Mr. Ezell's testimony is not essential to the case. As Defendants have previously submitted to the Court, this is an APA case. Accordingly, the case should be decided based on the administrative record for any challenged decision. *See* Defs' Mar. 11, 2025 Notice, at 1-2. Moreover, Plaintiffs' allegations principally focus on whether certain communications from OPM to agencies on February 13 and 14 were "directives," and Plaintiffs attach those communications to their SAC in support. *See, e.g.*, SAC ¶¶ 113, 115-117, 120-122. But even if deposition testimony were necessary, it would not need to come from Acting Director Ezell. As Plaintiffs have recognized in asking for the testimony of Mr. Peters, Mr. Peters' testimony provides the factual predicate for what OPM communicated to agencies regarding its guidance on probationary employees. Indeed, Mr. Peters' declaration notes that Ezell's testimony would provide limited-to-no value in establishing what was communicated to agencies by OPM on February 13 and 14, because Acting Director Ezell did not meaningfully participate in those communications. *See* Peters Decl. ¶¶ 7-8.

The existing deposition of Mr. Peters, coupled with Plaintiffs' requests for depositions of six individuals from other agencies, including CHCOs, underscore another point: Plaintiffs have multiple other ways of obtaining the information they seek without having to depose Mr. Ezell. If Plaintiffs are seeking information on what was communicated to agencies by OPM, they can

probe that information by deposing an individual from OPM or seeking information from the agencies that received communications from OPM. There is no unique need to depose Mr. Ezell given the available universe of documents and deponents that Plaintiffs are actively pursuing.

At the very least, Acting Director Ezell's testimony is premature at this point. Plaintiffs have only just taken the deposition of Mr. Peters, and the depositions of employees of the other six agencies are currently scheduled. Plaintiffs must at least attempt to obtain the information that they need from those other sources—and demonstrate why they cannot get it from them—before there could be any plausible showing that the testimony of Acting Director Ezell is necessary.[2]

Finally—although the reasons above are sufficient by themselves to grant the protective order—there also was no "bad faith" here that could justify taking the deposition of the leader of an agency. *See In re Dep't of Educ.*, 25 F.4th at 702. None of this is changed by the fact that Defendants submitted a declaration from Acting Director Ezell in opposition to the TRO. As Defendants have explained, that declaration was prepared and submitted in the two days that they had to oppose the TRO, on the premise that the Acting Director could summarize and represent to the Court the agency's understanding of the facts at issue. The declaration makes clear that its content was "based on [Ezell's] personal knowledge *and information provided to [him] in [his] official capacity by others*." ECF No. 34 at ¶ 1 (emphasis added). In granting the TRO, the Court made clear that it was interested in the substance of the communications on February 13 and 14, as that was when agencies may have misunderstood OPM to be issuing orders. But Acting Director Ezell's declaration did not discuss any communications on February 13, and as for February 14, he only asserted that "OPM"—not himself personally—"provided additional information to agencies through" the CHCO Council on those days. *Id.* ¶ 4. Thus, even on its own terms, Acting Director Ezell's declaration did not purport to offer personal,

---

[2] Plaintiffs' deposition of Mr. Ezell is also premature because Defendants filed an application to stay this Court's preliminary injunction in the Supreme Court, and the response to that application is currently due on April 3, 2025. Thus, any deposition of Mr. Ezell or the other deponents in this lawsuit should be deferred until the Supreme Court addresses the government's application as resolution of that application will affect proceedings going forward.

unique knowledge as to the key factual dispute in this matter. And again, Defendants have now withdrawn that TRO-opposition declaration and will not otherwise rely on Acting Director Ezell's testimony in this litigation, given the Court's concerns with allowing a party to submit declaration testimony that is not subject to cross-examination.

In sum, Mr. Ezell's deposition should be precluded because he is a high-level official whose testimony would detract from the performance of his official duties and because there are no extraordinary circumstances present warranting his deposition.

If the Court denies a protective order, the government will consider filing a petition for a writ of mandamus in the U.S. Court of Appeals for the Ninth Circuit. Defendants respectfully request that, if the Court denies a protective order, the Court order the deposition delayed at least two weeks to give the government time to consider whether to seek such relief. Furthermore, if the government were to file a mandamus petition, the deposition should be stayed until the court of appeals rules on that petition.

## CONCLUSION

For good cause shown herein, this Court should grant Defendants' motion for a protective order precluding Defendants from having to produce Mr. Ezell for his April 3, 2025 deposition or any further deposition in this case.

Dated: March 28, 2025                    Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director

JAMES D. TODD, JR.
Senior Trial Counsel

s/ Yuri S. Fuchs
YURI S. FUCHS
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*