PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
GREGORY CONNER
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>    Plaintiffs,<br><br>        v.<br><br>UNITED STATES OFFICE OF PERSONEL MANAGEMENT, *et al*.,<br><br>        Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' BRIEF REGARDING ADDITIONAL RELIEF AVAILABLE TO UNION PLAINTIFFS**<br><br>Hearing Date: April 9, 2025<br>Time: 8:00 am<br>Judge: Hon. William H. Alsup<br>Place: San Francisco Courthouse<br>          Courtroom 12 |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................1

BACKGROUND .............................................................................................................................2

I.      Statutory Background ...........................................................................................................2

II.     Factual Background ..............................................................................................................3

III.    Procedural Background.........................................................................................................5

ARGUMENT ..................................................................................................................................6

I.      The FLRA is the Sole Forum Before Which the Union Plaintiffs Can Pursue Their
        Claims of Injury to Their Core Function of Representing Employees in Federal
        Bargaining Units...................................................................................................................7

II.     The Union Plaintiffs Fail to Plead Sufficient Facts to Establish Organizational
        Standing ................................................................................................................................8

        A.      The Union Plaintiffs Fail to Plead Sufficient Facts to Establish an Injury to
                Their Organizational Mission ...................................................................................9

        B.      The Union Plaintiffs Fail to Plead Any Facts to Establish Associational
                Standing....................................................................................................................10

        C.      The Union Plaintiffs Fail to Establish That This Court Can Likely Redress
                Their Claimed Injuries to Their Organizational Mission ........................................12

III.    The Union Plaintiffs' Claims Are Moot ............................................................................15

IV.     The Union Plaintiffs Fail to Establish Irreparable Harm to Their Organizational
        Missions ..............................................................................................................................16

        A.      The Union Plaintiffs' Claims of Harm Are Insufficient to Merit Injunctive
                Relief .......................................................................................................................16

        B.      OPM's Compliance with this Court's Orders and its Revised Guidance
                Precludes Any Additional Award of Preliminary Injunctive Relief........................18

        C.      To the Extent This Court is Inclined to Extend Its Preliminary Injunction
                to Additional Defendant Agencies, It Should Limit Its Relief Only to
                Those Agencies for Which the Union Plaintiffs Have Made Any Claims of
                Harm.........................................................................................................................19

V.      This Court Should Require Plaintiffs to Provide Security for Preliminary
        Injunctive Relief .................................................................................................................19

CONCLUSION..............................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ....................................................................................................15

*Am. Fed'n Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, ("*AFGE v. OPM*")
  No. 3:25-cv-1780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025) ...........................5, 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, ("*AFGE v. Trump*")
  929 F.3d 748 (D.C. Cir. 2019) ..............................................................................2, 7

*America Cargo Transp., Inc. v. United States*,
  625 F.3d 1176 (9th Cir. 2010) ..................................................................................15

*Ariz. All. for Retired Ams. v. Mayes*,
  117 F.4th 1165 (9th Cir. 2024) ...................................................................................9

*Ariz. All. for Retired Ams. v. Mayes*,
  No. 22-16490, --- F.4th ---, 2025 WL 843314 (9th Cir. Mar. 18, 2025).....................9

*Ass'n of Admin. L. Judges v. Fed. Servs. Impasse Panel*,
  No. 1:20-cv-1026, 2021 WL 1999547 (D.D.C. May 19, 2021) ...............................18

*Baker v. Carr*,
  369 U.S. 186 (1962) ..................................................................................................13

*Carney v. Adams*,
  592 U.S. 53 (2020) ......................................................................................................9

*Chamber of Com. of U.S. v. EPA*,
  642 F.3d 192 (D.C. Cir. 2011) ...................................................................................8

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ....................................................................................................18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ..................................................................................................10

*Demery v. Arpaio*,
  378 F.3d 1020 (9th Cir. 2004) ..................................................................................15

*Egbert v. Boule*,
  596 U.S. 482 (2022) ..................................................................................................13

*Elgin v. Dep't of the Treasury*,
  567 U.S. 1 (2012) ...............................................................................................14, 17

*Ellis v. IRS*,
  181 F. Supp. 3d 61 (D.D.C. 2012) ............................................................................10

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
    11 F.4th 68 (2d Cir. 2021) ................................................................................................ 11, 12

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ................................................................................................ 8, 9, 10, 15

*Fed. Educ. Ass'n v. Fed. Lab. Rels. Auth.*,
    No. 1:19-cv-284, 2020 WL 1509329 (D.D.C. Mar. 30, 2020) ............................................ 18

*Fed. Lab. Rel. Auth. v. U.S. Off. of Pers. Mgmt.*,
    778 F.2d 844 (D.C. Cir. 1985) .............................................................................................. 3

*Gator.com Corp. v. L.L. Bean, Inc.*,
    398 F.3d 1125 (9th Cir. 2005) ............................................................................................ 15

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
    739 F.2d 466 (9th Cir. 1984) .............................................................................................. 16

*Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*,
    541 F. Supp. 2d 1117 (E.D. Cal. 2008) ............................................................................... 16

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999) ............................................................................................................ 13

*Harkrader v. Wadley*,
    172 U.S. 148 (1898) ............................................................................................................ 13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................................................. 8

*Hunt v. Wash. State Apple Advertising Comm'n*,
    432 U.S. 333 (1977) .............................................................................................................. 8

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) ............................................................................................ 16

*In re Sawyer*,
    124 U.S. 200 (1888) ............................................................................................................ 13

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ......................................................................................................... 8, 10

*Nat'l Council of La Raza v. Cegavske*,
    800 F.3d 1032 (9th Cir. 2015) ............................................................................................ 10

*Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel*,
    552 F. Supp. 3d 21 (D.D.C. 2021) ...................................................................................... 17

*New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*,
    208 F. Supp. 3d 142 (D.D.C. 2016) ...................................................................................... 9

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................................................... 8, 10, 18

*Pom Wonderful LLC v. Hubbard*,
    775 F.3d 1118 (9th Cir. 2014) ............................................................................................ 16

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC,*
  2 F.4th 1002 (7th Cir. 2021) ...................................................................... 11, 12

*Raines v. Byrd,*
  521 U.S. 811 (1997) ...................................................................................... 8

*Sampson v. Murray,*
  415 U.S. 61 (1974) ...................................................................................... 13

*Soc. Sec. Admin. Mid-Atl. Program Serv. Ctr. & Am. Fed'n of Go''t Emps., Loc. 1923,*
  53 F.L.R.A. 956 (Dec. 4, 1997) ................................................................... 7

*Summers v. Earth Island Inst.,*
  555 U.S. 488 (2009) .................................................................................... 10

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014) .................................................................................... 10

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021) ...................................................................................... 8

*TRW, Inc. v. F.T.C.,*
  647 F.2d 942 (9th Cir. 1981) ....................................................................... 18

*U.S. Penitentiary Leavenworth, Kan. & Am. Fed'n of Gov't Emps., Loc. 919,*
  55 F.L.R.A. 704 (Aug. 10, 1999) ................................................................. 7

*United States v. Fausto,*
  484 U.S. 439 (1988) ...................................................................................... 2

*United States v. Texas,*
  599 U.S. 670 (2023) .................................................................................... 13

*United States v. W. T. Grant Co.,*
  345 U.S. 629 (1953) .................................................................................... 18

*United Transp. Union v. Interstate Com. Comm'n,*
  891 F.2d 908 (D.C. Cir. 1989) ...................................................................... 8

*W. Mining Council v. Watt,*
  643 F.2d 618 (9th Cir.1981) ........................................................................ 16

*Walton v. U.S. House of Reps.,*
  265 U.S. 487 (1924) .................................................................................... 13

*Warth v. Seldin,*
  422 U.S. 490 (1975) .................................................................................... 16

*White v. Berry,*
  171 U.S. 366 (1898) .................................................................................... 13

**Statutes**

5 U.S.C. § 701 .............................................................................................. 13

5 U.S.C. § 1204 ............................................................................................ 14

5 U.S.C. § 1214 ..................................................................................................................14

5 U.S.C. § 7101 ....................................................................................................................2

5 U.S.C. § 7105 ....................................................................................................................2

5 U.S.C. § 7123 ................................................................................................................2, 3

Pub. L. No. 95-454, 92 Stat. 1111 (1978) .......................................................................2, 13

**Rules**

Fed. R. Civ. P. 65(c) ...........................................................................................................20

**Regulations**

Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 14, 2025) ...........................................3, 14

**Other Authorities**

Jory Heckman, *AFGE Sees Surge in New Members as its Lawsuits Stall Trump's Federal Workforce Policies*, Federal News Network (Feb. 10, 2025),
    https://federalnewsnetwork.com/unions/2025/02/afge-sees-surge-in-new-members-as-its-lawsuits-stall-trumps-federal-workforce-policies/ ...............................................................17

U.S. Dep't of Def., Probationary Workforce Statement (Feb. 21, 2025),
    https://www.defense.gov/News/Releases/Release/article/4074278/dod-probationary-workforce-statement/ ........................................................................................................12

**INTRODUCTION**

Defendants submit this brief in response to this Court's March 24, 2025, Order to show cause why the relief provided "to the organizational … plaintiffs should not be extended to the public-sector unions." Order to Show Cause at 1, ECF No. 154. The union Plaintiffs are not entitled to further relief because this Court lacks subject matter jurisdiction over their claims of injury. The union Plaintiffs allege harm to their core function of representing employees in federal bargaining units in collective bargaining—but only the Federal Labor Relations Authority ("FLRA") can hear such claims. This Court also lacks jurisdiction over the remainder of the union Plaintiffs' claims because they fail to establish that they have organizational or associational standing. The union Plaintiffs fail to establish a legally sufficient injury to their organizational mission and fail to make any effort to establish associational standing. They also fail to demonstrate that their claimed injuries are likely redressable because, in passing the Civil Service Reform Act and creating a statutory right to reinstatement, Congress only authorized the Merit Systems Protection Board ("MSPB") to order such relief. Additionally, the union Plaintiffs' claims are moot because the U.S. Office of Personnel Management ("OPM") has issued revised guidance clarifying that Executive Branch agencies retain discretion to hire, retain, and terminate their own employees.

The union Plaintiffs are also not entitled to further relief because they fail to show irreparable harm sufficient to justify the award of a preliminary injunction. None of the harms claimed by the union Plaintiffs constitute irreparable harm, and OPM's compliance with this Court's orders and OPM's revised guidance vitiates any remaining claim of ongoing or imminent injury.

However, to the extent that this Court is inclined to extend any additional relief to the union Plaintiffs, it should not enjoin agencies for which the union Plaintiffs have not made any claims of harm. The union Plaintiffs fail to identify any harm stemming from terminations at ten Executive Branch agencies—the Departments of Commerce, Homeland Security, Justice, Labor, State, Treasury—or at the General Services Administration ("GSA"), National Aeronautics and Space Administration ("NASA"), Office of Management of Budget ("OMB"), and Social

Security Administration ("SSA"). As a result, no additional relief directed at those agencies is warranted.

In sum, the Court should not extend any further relief to the union Plaintiffs.

## BACKGROUND

### I.    Statutory Background

In passing the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), codified in various sections of Title 5, United States Code, Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices of challenged personnel practices. In so doing, Congress balanced "the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *United States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress explicitly sought to reduce the participation of the federal courts, preferring the use of the CSRA's grievance and appeal procedures over all other remedies.

Congress passed the Federal Service Labor-Management Relations Statute ("the Statute" or "FSLMRS"), as part of the CSRA. *See* 5 U.S.C. §§ 7101-35. The Statute governs labor relations between the executive branch and its employees. The Statute "establishes a scheme of administrative and judicial review." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE v. Trump*"). Under that scheme, the Federal Labor Relations Authority ("FLRA"), a three-member agency charged with adjudicating federal labor disputes, reviews matters including "negotiability" and "unfair labor practice[]" disputes or claims. *See* 5 U.S.C. § 7105(a)(2). When reviewing unfair labor practice complaints, it is "the FLRA [that] resolves whether an agency must bargain over a subject, violated the duty to bargain in good faith, or otherwise failed to comply with the Statute." *AFGE v. Trump*, 929 F.3d at 752 (citing 5 U.S.C. §§ 7105(a)(2)(G), 7116(a), 7118)). Direct review of the FLRA's decisions on unfair labor practice and negotiability issues is available in the courts of appeals. *See* 5 U.S.C. § 7123(a).

Among the duties and rights conferred by the FSLMRS is, on the part of the government, "[t]he duty to bargain in good faith," which extends "to matters which are the subject of any agency rule or regulation." *Id.* § 7117(a)(2). However, the Statute places two limits on that duty: (i) it is imposed only "to the extent not inconsistent with Federal law or any Government-wide rule or regulation," and (ii) "only if the [FLRA] has determined … that no compelling need (as determined under [FLRA] regulations …) exists for the rule or regulation." *Id.* Accordingly, in carrying out its functions under the Statute, the FLRA's task "is to measure specific and delimited bargaining proposals against applicable law, rules or regulations in order to determine whether a given proposal is within the duty to bargain." *Fed. Lab. Rel. Auth. v. U.S. Off. of Pers. Mgmt.*, 778 F.2d 844, 847 (D.C. Cir. 1985) (quotation marks and citation omitted).

## II.  Factual Background

On January 20, 2025, President Trump immediately took steps to optimize the size of the federal workforce and limit hiring to mission-critical positions. To that end, the President issued a memorandum instituting a hiring freeze of federal civilian employees, and ordering agencies to identify ways to reduce the size of the federal government. *See* The White House, Hiring Freeze at 1-2 (Jan. 20, 2025), ECF No. 111-6; *see also* Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 14, 2025) (clarifying terms of the hiring freeze).

The same day, OPM Acting Director Charles Ezell transmitted to Executive Branch agencies a memorandum "providing … guidance … regarding critical potential personnel actions." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies, re: Guidance on Probationary Periods, Administrative Leave and Details at 1 (Jan. 20, 2025) ("January 20 OPM Guidance"), ECF No. 111-1. The memorandum explained that "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels." *Id.* Ezell instructed agencies to "identify all employees on probationary periods," and to "promptly determine whether those employees should be retained at the agenc[ies]." *Id.*

On February 12, 2025, OPM sent agency Chiefs of Staff an email. *See* Email from OPM to CHCO Council re: CHCO Council Special Session at 1 (Feb. 12, 2025), ECF No. 111-5. The

email requested the agency Chiefs of Staff to "partner with your [agency Chief Human Capital Officer (CHCO)] to action those you know you wish to separate … using the attached template letter." *Id.* Agencies were asked to report to OPM "[w]hich probationary employees have been terminated and which [the agencies] plan to keep." *Id.*

At a call with agency Chiefs of Staff on February 13, 2025, OPM Senior Advisor Noah Peters read the text of the February 12 email as a script. *See* Decl. of Noah Peters ¶ 5, ECF No. 77.[1]

On February 14, 2025, OPM provided additional guidance to agencies through an email to the CHCO Council, an interagency forum to coordinate on federal human resources matters. *See* E-mail from OPM to CHCO Council re: CHCO Council Special Session (Feb. 14, 2025), ECF No. 111-2. OPM explained that "'[a]n appointment is not final until the probationary period is over,'" and that "'[u]ntil the probationary period has been completed,' a probationer has 'the burden to demonstrate why it is in the public interest for the Government to finalize [his] appointment to the civil service.'" *Id.* OPM advised that "[a]n employee's performance must be measured in light of the existing needs and interests of government," and that employees would have the requisite "qualifications for continued employment" only if they are "high[]-performing … in mission critical areas." *Id.* at 1-2. Again, Mr. Peters at OPM used the text of that email as a script for a call with the CHCO Council the same day. *See* Peters Decl. ¶ 8.

On February 24, 2025, OPM again emailed CHCO Council, noting that "[a]s agencies continue to make decisions on whether to retain probationary employees, OPM has received numerous questions." Email from OPM to CHCO Council re CHCO Updates (Feb. 24, 2025), ECF No. 111-4. OPM provided a frequently asked-questions document "[t]o assist agencies in carrying out their decisions[.]" *Id.*

On March 4, 2025, OPM revised its earlier guidance to clarify that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments

---

[1] Mr. Peters has now sat for his deposition, at which he testified under oath consistent with the representations made in his declaration.

and Agencies at 2 (Revised March 4, 2025), ECF No. 78 ("Revised OPM Guidance"). OPM emphasized that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." *Id.*

### III. Procedural Background

Plaintiffs filed suit on February 21, 2025. *See* Compl., ECF No. 1. Among the Plaintiffs in this case are five unions, American Federation of Government Employees, AFL-CIO ("AFGE"), American Federation of State County and Municipal Employees, AFL-CIO ("AFSCME"), AFGE Local 1216, United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFL-CIO ("UNAC/UHCP"), and AFGE Local 2110. *See* Second Amend. Compl. ("SAC") ¶¶ 15–19, ECF No. 90. The union Plaintiffs allege that they represent unidentified probationary employees who have been terminated as a result of the OPM guidance at issue in this case. *See* SAC ¶ 145. They allege that they "ha[ve] the core function of representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions," and allege that the terminations have prevented them from exercising those functions. *Id.* ¶¶ 146–47.

They also allege that, as a result of the challenged conduct, they have "expended substantial time and resources … addressing member concerns and attempting to provide employees with effective representation," and that they have had to "divert resources that would be devoted to representing employees who have experienced adverse employment action for legitimate reas[ons]." *Id.* ¶ 148. The union Plaintiffs additionally allege that they have been harmed by the loss of dues income and bargaining power. *See id.* ¶ 149. Finally, without further elaboration, they allege that they have associational standing to sue on behalf of their members. *Id.* ¶ 150.

No union member is a party this this action; nor does any union identify a member terminated by one of the named defendant agencies. *See generally* SAC.

On February 27, 2025, this Court held that it lacked jurisdiction over the union Plaintiffs' claims. *See* Tr. of Feb. 27, 2025, Hrg. at 65:9 – 66:3, ECF No. 44; *see also Am. Fed'n Gov't*

*Emps. v. U.S. Off. of Pers. Mgmt.*, No. 3:25-cv-1780, 2025 WL 660053, *6-7 (N.D. Cal. Feb. 28, 2025) ("*AFGE v. OPM*"). However, at its March 13, 2025, hearing, this Court ordered the parties to file supplemental briefs on channeling, *see* Tr. of Mar. 13, 2025, Hrg. 55:19–56:3, ECF No. 120, which they did, *see* Pls.' Suppl. Br. re: Defs.' Admin. Channeling Jurisdiction. Argument, ECF No. 149; Defs.' Suppl. Br. on Admin. Channeling, ECF No. 150. On March 24, 2025, this Court reversed its prior ruling and held that it has subject matter jurisdiction over the union Plaintiffs' claims. *See* Order re Subject-Matter Juris., ECF No. 153. The Court then issued an order to show cause why the relief extended to the organizational plaintiffs should not be extended to the union Plaintiffs. *See* Order to Show Cause, *supra*.

## ARGUMENT

This Court should provide no additional relief to the union Plaintiffs. This Court lacks subject matter jurisdiction to remedy the union Plaintiffs' claimed injury to their core function of representing employees in federal bargaining units—only the FLRA can grant relief to the union Plaintiffs that would likely redress their claimed injury. The union Plaintiffs also fail to plead sufficient facts to demonstrate that they have organizational standing and fail to plead any facts to demonstrate that they have associational standing to sue on behalf of their members. The union Plaintiffs also fail to show that their claims are redressable. Additionally, the union Plaintiffs' claims are now moot because OPM has issued revised guidance clarifying that agencies have the discretion to hire, retain, and terminate employees and because agencies have reevaluated their initial termination decisions and either reversed them or reaffirmed them.

This Court should also decline to extend any additional relief to the union Plaintiffs because they fail to show any irreparable harm that would warrant preliminary relief. OPM's revised guidance and agency action subsequently taken further undermines the union Plaintiffs' claims of irreparable harm. However, in the event that the Court decides to award additional relief to the union Plaintiffs, it should not extend any further relief related to the ten agencies for whom the union Plaintiffs have not alleged any harm.

I.    **The FLRA is the Sole Forum Before Which the Union Plaintiffs Can Pursue Their Claims of Injury to Their Core Function of Representing Employees in Federal Bargaining Units**

At the outset, the union Plaintiffs are not entitled to additional relief from this Court because the Court does not have subject matter jurisdiction over their claims. *See AFGE v. Trump*, 929 F.3d at 752; *AFGE v. OPM*, 2025 WL 660053, at *6-7; Mem. Op. at 2-5, *Nat'l Treasury Emps. Union v. Trump,* No. 1:25-cv-420 (D.D.C. Feb. 20, 2025), ECF No. 28; Op. & Order, *AFGE v. Ezell*, No. 1:25-cv-10276 (D. Mass. Feb. 12, 2025), ECF No. 66. The FSLMRS's comprehensive administrative-judicial review scheme channels jurisdiction over union claims concerning their representation of federal employees not to federal district courts but to the FLRA. *See AFGE v. Trump*, 929 F.3d at 754–61.

This Court previously distinguished *AFGE v. Trump* on the grounds that the union Plaintiffs are not alleging an injury to their bargaining rights. *See* Order re Subject-Matter Jurisdiction at 7-8 (Mar. 24, 2025), ECF No. 153. Respectfully, that conclusion directly conflicts with the union Plaintiffs' allegation that the OPM guidance at issue in this case has "prevented [them] from exercising their core functions" of "representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions." SAC ¶¶ 146–47. This Court also distinguished *AFGE v. Trump* on the grounds that the FLRA is unable to review grievances about a government-wide rule or regulation. *See* Order re Subject-Matter Juris. at 8. Butthe *AFGE v. Trump* court acknowledged that, even though "the FLRA cannot address all of the[ plaintiffs'] claims," the district court still lacked subject matter jurisdiction over those claims. *AFGE v. Trump*, 929 F.3d at 757. This Court further distinguished *AFGE v. Trump* on the grounds that the union Plaintiffs are "precluded from judicial recourse and relief even for their separation-of-powers claim." Order re Subject-Matter Juris. at 8. However, numerous parties have, in fact, pursued similar claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., in administrative appeals before the FLRA. *See, e.g., U.S. Penitentiary Leavenworth, Kan. & Am. Fed'n of Gov't Emps., Loc. 919*, 55 F.L.R.A. 704, 706 (Aug. 10, 1999) (considering APA claim brought against FLRA ALJ); *Soc. Sec. Admin. Mid-Atl. Program Serv.*

1  *Ctr. & Am. Fed'n of Go''t Emps., Loc. 1923,* 53 F.L.R.A. 956, 964 (Dec. 4, 1997) (considering

2  APA claim regarding the FLRA arbitrator). As a result, this Court lacks subject matter

3  jurisdiction over the union Plaintiffs' claims, and the FLRA remains the sole forum for the union

4  Plaintiffs to pursue their claims about OPM's guidance.

5  **II.  The Union Plaintiffs Fail to Plead Sufficient Facts to Establish Organizational Standing**

6          The union also Plaintiffs cannot establish standing to bring this action. Under Article III,

7  federal courts "do not exercise general legal oversight of the Legislative and Executive

8  Branches[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423–24 (2021). Instead, a plaintiff must

9  establish an injury that is both "legally and judicially cognizable." *Raines v. Byrd*, 521 U.S. 811,

10  819 (1997). "This requires, among other things, that the plaintiff have suffered 'an invasion of a

11  legally protected interest which is … concrete and particularized,' and that the dispute is

12  'traditionally thought to be capable of resolution through the judicial process[.]'" *Id.* (citations

13  omitted).

14          To establish standing, "a plaintiff must demonstrate (i) that she has suffered or likely will

15  suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant,

16  and (iii) that the injury likely would be redressed by the re-quested judicial relief." *FDA v. All.*

17  *for Hippocratic Med.*, 602 U.S. 367, 380 (2024). An organization may establish standing by

18  identifying "'injuries [the organizations themselves] have sustained,'" and establishing "injury

19  in fact, causation, and redressability" as to those injuries, *Alliance*, 602 U.S. at 393-394 (quoting

20  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379, n.19 (1982)), or by establishing (in addition

21  to other requirements) the standing of its members, *see Hunt v. Wash. State Apple Advertising*

22  *Comm'n*, 432 U.S. 333, 343 (1977). Because Plaintiffs seek injunctive relief, moreover,

23  demonstrating a past injury is not enough; they must establish "'a real and immediate threat of

24  repeated injury.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *O'Shea v. Littleton*, 414

25  U.S. 488, 496 (1974)). And the need to show an imminent future injury creates "a significantly

26  more rigorous burden to establish standing" than that on parties seeking redress for past injuries.

27  *Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011) (quoting *United Transp.*

28  *Union v. Interstate Com. Comm'n*, 891 F.2d 908, 913 (D.C. Cir. 1989)). If a plaintiff fails to

Defendants' Brief re: Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

meet its burden, the "case begins and ends with standing." *Carney v. Adams*, 592 U.S. 53, 58 (2020).

### A. The Union Plaintiffs Fail to Plead Sufficient Facts to Establish an Injury to Their Organizational Mission

The union Plaintiffs fail to plead sufficient facts to establish an injury to their organizational mission. The union Plaintiffs allege that they have organizational standing to bring this action. *See* SAC ¶ 150. But the union Plaintiffs offer nothing more than a single conclusory allegation that the OPM guidance at issue in this case has interfered with their core business activities. *See* SAC ¶ 147. They do not identify: any specific operations they engage in on a daily basis that have been inhibited; any specific time and expenses they have incurred combatting the OPM guidance; any specific actions they have actually undertaken beyond filing this lawsuit; or any specific redirection of resources they have undertaken in response to OPM's guidance. Bare allegations are insufficient to establish standing. *See, e.g.*, *New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 166 (D.D.C. 2016) (holding that plaintiff organization failed to establish standing because it failed to establish specific "facts indicating how … [D]efendant[s'] actions undermine the organization's ability *to perform* its fundamental programmatic services.").

More fundamentally, plaintiffs' standing theory cannot be reconciled with the Supreme Court's decision in *Alliance for Hippocratic Medicine*, *supra*. There, the Court expressly held that the notion "that standing exists when an organization diverts its resources in response to a defendant's actions … is incorrect." 602 U.S. at 370. It held that a plaintiff has standing only when a defendant's "actions directly affected and interfered with [plaintiff's] core business activities[.]" *Id.* at 395; *see also Ariz. All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1175 (9th Cir. 2024) (recognizing that this Court's standing decisions "erred to the extent that [they] suggested that the mere diversion of resources in response to a policy can provide standing"), *reh'g en banc granted, vacated by Ariz. All. for Retired Ams. v. Mayes*, No. 22-16490, --- F.4th ---, 2025 WL 843314 (9th Cir. Mar. 18, 2025). Plaintiffs simply "cannot spend

[their] way into standing simply by expending money to gather information and advocate against the defendant's action." *All. for Hippocratic Med.*, 602 U.S. at 370.[2]

Nor can the union Plaintiffs maintain standing now that OPM has issued revised agency guidance clarifying that agencies retain discretion to hire, retain, and terminate employees. Because the union Plaintiffs request forward-looking relief, they must face "'a real and immediate threat of repeated injury.'" *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Although imminence is "a somewhat elastic concept," it "cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes[.]" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Consequently, to maintain standing, a threatened injury must be "certainly impending" or there has to be a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted) (citing *Clapper*, 568 U.S. at 414 n.5).

Despite these well-settled requirements, the union Plaintiffs make no credible effort to show that they face an imminent risk that that OPM will, in the future, direct agencies to terminate employees. *Compare generally* SAC *with Ellis v. IRS*, 181 F. Supp. 3d 61, 63 (D.D.C. 2012) ("The fact that a plaintiff may have suffered an injury in the past does not indicate that there is a 'real and immediate threat' of it happening again in the future.").

**B. The Union Plaintiffs Fail to Plead Any Facts to Establish Associational Standing**

The union Plaintiffs fail to plead any facts to establish associational standing. To establish associational standing, an association must "make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). "This requirement of naming the affected members has never been dispensed with in light of statistical probabilities" that an association has members who might be injured, except "where *all* the members of the organization are affected by the challenged activity." *Id.* at 498–99; *see Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032,

---

[2] Plaintiffs claim irreparable harm resulting from lost membership dues. *See infra*, at 17. To the extent that Plaintiffs also assert an injury based on lost dues, those claims are rebutted by Plaintiffs own statements. *See id*.

1041 (9th Cir. 2015) (*Summers* only requires that the plaintiff allege that there is a specific injured member).

In this case, the union Plaintiffs allege that they have associational standing to bring this action on behalf of their members, *see* SAC ¶ 150, but identify only two members of one union Plaintiff, AGFE Local 3403, that they say were terminated from the National Science Foundation ("NSF"), as a result of the OPM guidance at issue in this case. *See* Decl. of Dr. Thomas Evans ¶ 1, ECF No. 18-8 (stating that he is a member of AGFE Local 3403 and was terminated by the NSF); Decl. of Dr. Andrew Frassetto, ¶ 1, ECF No. 18-9 (same). This is plainly insufficient to show associational standing to proceed against any other defendant agency, including OPM, especially because Plaintiffs do not allege that they now require relief as to NSF, since all terminated employees have been reinstated, *see infra*, at 14. The union Plaintiffs also have not alleged, nor could they show, that all of their members have been affected by the terminations of probationary employees. *Cf. Summers*, 555 U.S. at 499. First, not all their members are probationary employees. Second, they have not alleged, nor could they show, that all their members who are probationary employee have been terminated as a result of the OPM guidance at issue in this case. Third, they have not alleged, nor could they show, that all their members who are employed by certain Executive Branch agencies have terminated any probationary employees as a result of the OPM guidance at issue in this case.

In any event, even if a plaintiff organization need not name its members, it still must allege facts about specific members and the specific harms they will imminently face, not just allege generalized harm to an indistinct group. *See*, *e.g.*, *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021); *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021). In *Faculty, Alumni, & Students Opposed to Racial Preferences*, a plaintiff association alleged that New York University's law school faculty hiring and law review article selection processes were discriminatory. The association alleged that its (unnamed) members included "faculty members or legal scholars who have submitted articles to the Law Review in the past, and who intend to continue submitting their scholarship … in the future" and "individuals who have sought and

applied for … teaching positions at the Law School and intend to do so again [in] the future[.]" 11 F.4th at 76 (citation omitted). The court held that, even if it was not required to name names, the association failed to adequately identify specific members because the complaint was not specific enough. "For example: When did [the plaintiff organization]'s members submit articles or apply for jobs at NYU? Have those members drafted articles they intend to submit? If so, when do they plan to submit?" *Id.*

Similarly, in *Prairie Rivers Network*, an environmental group alleged that it had more than 1,000 members, including individual members who "live near, study, work, and recreate in and around the Middle Fork, including in the vicinity of the Vermilion Power Station" and that a company's discharges into the river harmed the "'individuals' use and enjoyment of the Middle Fork." 2 F.4th at 1009 (citation omitted).  But the court held that this allegation was insufficient because the court still could not tell "who these members are or how exactly the alleged discharges will harm them individually." *Id.*

The same is true here. The union Plaintiffs thus fail to establish associational standing to pursue claims on behalf of their members. As a result, in the absence of specific allegations that that they in fact represent employees at each of the named defendant agencies in this case, they cannot maintain their standing to pursue relief against those agencies.

### C.  The Union Plaintiffs Fail to Establish That This Court Can Likely Redress Their Claimed Injuries to Their Organizational Mission

The union Plaintiffs' claims of redressability are too attenuated to establish standing. First, this Court has correctly recognized that "[e]ach agency had (and still has) discretion to hire and fire its *own* employees." Mem. at 13, ECF No. 132; *see also* U.S. Dep't of Def., Probationary Workforce Statement (Feb. 21, 2025), https://www.defense.gov/News/Releases/ Release/article/4074278/dod-probationary-workforce-statement/ (press release from the Department of Defense explaining that a "re-evaluation of probationary employees is being done across government" and that the Department "believe[s] in the goals of the program" and reiterating its Secretary's view that "it is simply not in the public interest to retain individuals whose contributions are not mission-critical"). In other words, even without OPM's involvement,

agencies could have (and, as discussed below, would have) carried out the terminations to effectuate the President's priorities about Executive Branch staffing, and could (absent the injunction) choose to re-terminate the probationary employees at any time. In short, the redress Plaintiffs seek is plainly not one "traditionally thought to be capable of resolution through the judicial process[.]" *United States v. Texas*, 599 U.S. 670, 676 (2023) (citation omitted).

The union Plaintiffs also fail to establish that their claimed injuries are redressable because the APA does not authorize a federal district court to order the reinstatement of terminated probationary employees. The APA authorizes a court to grant injunctive relief subject to traditional equitable limitations. *See id.* § 702(1). Absent express statutory authority, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

Quite simply, reinstatement is not an available equitable remedy. *See Sampson v. Murray*, 415 U.S. 61, 83 (1974). Rather, courts lack "the power … to restrain by injunction the removal of a [public] officer." *In re Sawyer*, 124 U.S. 200, 212 (1888); *see also, e.g., Baker v. Carr*, 369 U.S. 186, 231 (1962) ("federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" to "stay[] removal of a federal officer"); *Walton v. U.S. House of Reps.*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain … the removal of public officers, is to invade … the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.") (citation omitted).

Instead, the creation of new remedies, such as reinstatement, is "a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). In passing the CSRA, Congress established a comprehensive framework for evaluating adverse employment actions against federal employees and presenting an integrated scheme of both administrative and judicial review of challenged personnel practices of challenged personnel practices. Congress authorized MSPB to award "reinstatement," as well as "backpay" to prevailing employees, and it has authorized review of

the MSPB's decision in the Federal Circuit. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 6 (2012) (citing 5 U.S.C. §§ 1204(a)(2), 7701(g), and 7703(b)(1)); 5 U.S.C. § 1214(g)). Congress did not give the power to order reinstatement to federal district courts. Absent that power, Plaintiffs cannot show that an order of this Court would likely remedy their claimed injuries.

To the extent that the union Plaintiffs are entitled to any redress, this Court has awarded it in issuing its February 27, 2025, Temporary Restraining Order. *See* Mem. Op. & Order Amending TRO at 24. In that order, the Court clarified that OPM has no power to direct personnel actions at the agencies and that agencies had the opportunity to rescind terminations if they acted based on confusion about OPM's authority. *See id.* at 7-8, 24. Indeed, OPM complied with the court's order and, further, issued clarifying guidance that "[a]gencies have ultimate decision-making authority over, and responsibility for," performance-based personnel actions against probationary employees. Revised OPM Guidance.

Any confusion was therefore cleared up, and agencies were left to make their own politically accountable decisions. At least two agencies rescinded some or all probationary employees' terminations after OPM's clarification. *See* SAC ¶ 142 (NSF); *see also* Decl. of Sydney Rose, *Maryland v. U.S. Dep't of Agric.*, No. 1:25-cv-748 (D. Md. Mar. 17, 2025), ECF No. 52-1 at 37-39 (U.S. Department of Labor), attached as Ex. 1. Most did not. *See, e.g.*, Decl. of Mark Green ¶¶ 7-9, ECF No. 127-3 (U.S. Department of the Interior). That result is to be expected—the President directed agencies to optimize the federal workforce, and agencies may and should make employment decisions against the backdrop of that policy choice. *See* Exec. Order No. 14,210, § 3. And it illustrates both that any perceived direction from OPM was *not* the cause of the union Plaintiffs' asserted injury, and that any appropriate remedial order is limited to clarifying OPM's role rather than reversing terminations that the agencies would have made had OPM's initial guidance been even clearer about OPM's limited authority and the agencies' ultimate discretion.

Lastly, the union Plaintiffs' claim that they "are suffering irreparable organizational injury" as "OPM's actions are preventing the Unions from playing the representative role Congress intended," is not a redressable harm. Pls' Mem. in Supp. of TRO at 29, ECF No. 18-1

("Pls.' TRO Mot"). While the union Plaintiffs claim that they are harmed because they must "unexpectedly and immediately divert substantially all of their resources to counseling and assisting affected federal employees," *id.*, courts have rejected this kind of organizational resource-diversion theory of harm. The Supreme Court rejected this very premise that "standing exists when an organization diverts its resources in response to a defendant's actions," noting such a theory of organizational standing "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike[.]" *All. for Hippocratic Med.*, 602 U.S. at 395. The same is true here.

### III. The Union Plaintiffs' Claims Are Moot

OPM's compliance with this Court's orders and its issuance of revised guidance clarifying that agencies retain the discretion to hire, retain, and terminate employees render this case moot. A case becomes moot if "'changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). Where a plaintiff seeks injunctive relief, a case "is normally moot upon the termination of the conduct at issue" unless "there is a likelihood of recurrence." *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004). Such a case is "no longer a 'Case' or 'Controversy' for purposes of Article III[,]" "[n]o matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit[.]" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).

As noted above, in response to this Court's February 27, 2025, TRO, and its March 13, 2025, Preliminary Injunction, the government has notified all defendant agencies and all terminated probationary employees of this Court's holding, and OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." OPM's actions comply with this Court's Memorandum Opinion and Order and render this case moot. This Court should "presume the government is acting in good faith" when it makes declarations of this type.

1   *America Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). The

2   circumstances here fully warrant that presumption.

3   **IV.  The Union Plaintiffs Fail to Establish Irreparable Harm to Their Organizational**
       **Missions**

4

5       **A.  The Union Plaintiffs' Claims of Harm Are Insufficient to Merit Injunctive Relief**

6           The union Plaintiffs fail to establish that, absent extending the preliminary injunction to

7   provide additional relief to them, they will suffer irreparable harm. To establish irreparable harm,

8   a plaintiff "must establish a likelihood of irreparable harm that is grounded in evidence, not in

9   conclusory or speculative allegations of harm." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118,

10  1133 (9th Cir. 2014); *see also In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007)

11  ("Speculative injury cannot be the basis for a finding of irreparable harm.").

12          The union Plaintiffs first claim that the deprivation of a constitutional right constitutes

13  irreparable harm. *See* Pls.' TRO Mot. at 27. But the union Plaintiffs fail to identify any claimed

14  constitutional rights of theirs that have been impaired and fail to show that their claimed

15  deprivation of such rights is in any way a harm personally happening to them rather than the

16  general public. *Compare id. with W. Mining Council v. Watt*, 643 F.2d 618, 623 (9th Cir.1981)

17  (Article III injury in fact requires the plaintiff to have a "personal stake in the outcome of the

18  controversy.").

19          Second, the union Plaintiffs claim irreparable harm based on the terminated federal

20  employees' loss of employer-provided health benefits. *See* Pls.' TRO Mot. at 28. Again, this is

21  not a harm to Plaintiffs, and they cannot maintain claims on behalf of third parties not before this

22  Court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] [party] generally must assert his own

23  legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third

24  parties."). Additionally, neither loss of employment nor any resulting effects constitute

25  irreparable harm. *See, e.g., Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v.*

26  *Bakersfield Californian*, 541 F. Supp. 2d 1117, 1125 (E.D. Cal. 2008); *see also Goldie's*

27  *Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) ("[m]ere

28

financial injury … will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation.").[3]

Third, the union Plaintiffs allege an irreparable injury to their organizational missions because they have not been able to comment on forthcoming RIF notices. *See* Pls.' TRO Mot. at 29. But, as Plaintiffs themselves admit, the terminations thus far were not undertaken pursuant to RIFs; nor have Plaintiffs come forward with any evidence that OPM will in fact deny them their right to comment on any such notices. This claim is also too speculative to support a finding of irreparable harm.

Finally, Plaintiffs contend that their claimed monetary harms are irreparable because they seek relief under the APA. *See id.* at 30. But the union Plaintiffs have not even attempted to show any actual or impending monetary losses resulting from terminations related to the OPM guidance at issue in this case. To the contrary, AFGE has stated that it "stands at 321,000 dues-paying members, its highest level ever, and is on track to reach 325,000 dues-paying members by the end of the week." Jory Heckman, *AFGE Sees Surge in New Members as its Lawsuits Stall Trump's Federal Workforce Policies*, Federal News Network (Feb. 10, 2025), https://federalnewsnetwork.com/unions/2025/02/afge-sees-surge-in-new-members-as-its-lawsuits-stall-trumps-federal-workforce-policies/ (AFGE President "Kelley said new members are flocking to AFGE at a time when the Trump administration is looking to downsize the federal workforce"). Moreover, the fact that Plaintiffs bring APA claims further highlights that their harms are not irreparable because they can (and must) channel those claims before the FLRA, not through federal court. *See* § I, *supra*, at 7-8. To that end, district courts have repeatedly held that claims even involving constitutional harms must be exhausted through the mechanisms set out by the FSLMRS. *See, e.g., Nat'l Veterans Affs. Council v. Fed. Serv. Impasses Panel*, 552 F. Supp. 3d

---

[3] Plaintiffs' claim that they face "irreparable injury from the disruption of critical government services," Pls.' TRO Mot. at 28–29, is a claim of harm that applies only to the non-union Plaintiff organizations and is therefore not a legitimate basis for the union Plaintiffs' request for injunctive relief. In any event, OPM continues to maintain the position that the non-union organizational Plaintiffs have failed to demonstrate that this constitutes irreparable harm for the reasons set forth their opposition to Plaintiffs' TRO motion. *See* Defs.' Opp'n to Pls.' Mot. for a TRO and to Show Cause at 10, ECF No. 33.

21 (D.D.C. 2021) (holding that appointment clause claims must be exhausted through mechanisms set forth under the Statute) (motion to dismiss granted); *Ass'n of Admin. L. Judges v. Fed. Servs. Impasse Panel*, No. 1:20-cv-1026, 2021 WL 1999547, at *7 (D.D.C. May 19, 2021) (holding that appointment clause claims must be exhausted through mechanisms set forth under the Statute) (motion to dismiss granted); *see also Fed. Educ. Ass'n v. Fed. Lab. Rels. Auth.*, No. 1:19-cv-284, 2020 WL 1509329, at *2 (D.D.C. Mar. 30, 2020) (dismissing claims alleging the FLRA violated the union's procedural and substantive due process rights under the Fifth Amendment)

**B. OPM's Compliance with this Court's Orders and its Revised Guidance Precludes Any Additional Award of Preliminary Injunctive Relief**

OPM's compliance with this Court's orders and its revised guidance precludes any additional award of preliminary injunctive relief under well-settled principles of equitable discretion. Even if cessation of conduct does not moot a case, a plaintiff must still bear the burden of demonstrating that equitable relief is warranted, a showing that requires "more than the mere possibility" of recurrence "which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also TRW, Inc. v. F.T.C.*, 647 F.2d 942, 954 (9th Cir. 1981) (discussing difference between standards and burdens of proof). To obtain equitable relief, a plaintiff must establish a "likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea*, 414 U.S. at 502). That "requirement . . . cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *Lyons*, 461 U.S. at 111. And here Plaintiffs' Second Amended Complaint makes no allegations that any further relief is necessary given the Court's TRO order and the additional OPM guidance. *See generally* SAC. In fact, while Plaintiffs might argue that the case is not moot because agencies could still believe that they are bound by OPM's guidance to terminate probationary employees, their own new allegations show that agencies are, in fact, reinstating previously terminated probationary employees. *See id.* ¶ 142 (noting the reinstatement of previously terminated employees by NSF). Moreover, the previously issued FAQs already clarified to agencies that they are to use their own judgment in evaluating a

probationary employee's performance "through the current needs and best interest of the government, in light of the President's directive to dramatically reduce the size of the federal workforce." ECF No. 37-2 at 1.

**C. To the Extent This Court is Inclined to Extend Its Preliminary Injunction to Additional Defendant Agencies, It Should Limit Its Relief Only to Those Agencies for Which the Union Plaintiffs Have Made Any Claims of Harm**

To the extent this Court is inclined to extend its preliminary injunction to additional defendant agencies, it should limit its relief only to those agencies for which the union Plaintiffs have made any claims of harm.

In addition to suing OPM, Plaintiffs have brought suit against twenty-two Executive Branch agencies, including fifteen Departments—Agriculture; Commerce; Defense; Education; Energy; Health and Human Services; Homeland Security; Housing and Urban Development; Justice; the Interior; Labor; State; the Treasury; Transportation; and Veterans Affairs—and seven independent federal agencies—the Environmental Protection Agency; GSA; NASA; NSF; OMB; Small Business Administration; and SSA. *See* SAC ¶¶ 34–77. Plaintiffs allege that they have named each of the twenty-two agency defendants "solely … for the purposes of effecting complete relief against … OPM[.]" *Id.* ¶ 79.

Plaintiffs' declarations, however, fail to identify any harm stemming from terminations at ten Executive Branch agencies—the Departments of Commerce, Homeland Security, Justice, Labor, State, Treasury, or at GSA, NASA, OMB, or SSA. *See* Decls. in Supp. of Pls.' *Ex Parte* Application for Emergency TRO, ECF Nos. 18-3 – 18-20; *see also* Decls. in Supp. of Pls.' Reply in Supp. of *Ex Parte* Application for Emergency TRO, ECF Nos. 39-1 – 39-6. As a result, this Court should decline to extend its preliminary injunction to these ten agencies.

**V. This Court Should Require Plaintiffs to Provide Security for Preliminary Injunctive Relief**

This Court should require Plaintiffs to post a bond for the preliminary injunctive relief that they have already been awarded and for any additional preliminary injunctive relief ordered by this Court. Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security

in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

This Court should require Plaintiffs to provide security in an amount that could compensate Defendants for the losses caused by a preliminary injunction in the event that Defendants are found to have been wrongfully enjoined. Plaintiffs are well-resourced unions, organizations and a State seeking to set aside thousands of employee terminations at 23 Executive Branch agencies, 22 of which were only joined pursuant to Rule 19 of the Federal Rules of Civil Procedure for the purposes of effectuating relief. This Court has already awarded preliminary relief and ordered the reinstatement of thousands of employees at six agencies. It is beyond dispute that the Court's existing and potential additional reinstatement ordered impose and may impose significant monetary losses during this litigation on each defendant. The Court should thus require Plaintiffs to provide security in an amount commensurate with these costs.

## CONCLUSION

For the foregoing reasons, the Court should decline to extend any additional relief to the union Plaintiffs.

1

Dated: March 28, 2025                          Respectfully submitted,

2
                                               PATRICK D. ROBBINS (CABN 152288)
                                               Acting United States Attorney
3
                                               PAMELA T. JOHANN (CABN 145558)
                                               Chief, Civil Division
4
                                               KELSEY J. HELLAND (CABN 298888)
                                               Assistant United States Attorney
5
                                               U.S. ATTORNEY'S OFFICE
                                               450 Golden Gate Avenue, Box 36055
6                                              San Francisco, California 94102-3495

7
                                               ERIC HAMILTON
                                               Deputy Assistant Attorney General
8
                                               DIANE KELLEHER
9                                              Branch Director

                                               CHRISTOPHER HALL
10                                             Assistant Branch Director

11                                             s/ James D. Todd, Jr.
                                               JAMES D. TODD, JR.
12                                             Senior Trial Counsel
                                               YURI S. FUCHS
13                                             GREGORY CONNER
                                               Trial Attorneys U.S. DEPARTMENT OF JUSTICE
14                                             Civil Division, Federal Programs Branch
                                               P.O. Box 883
15                                             Washington, DC 20044

16                                             *Counsel for Defendants*

17

18

19

20

21

22

23

24

25

26

27

28