Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer  (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiff Organizations*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO;  et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 25-cv-01780-WHA <br><br> **PLAINTIFFS' RESPONSE TO MARCH 24, 2025 ORDER TO SHOW CAUSE RE: RELIEF FOR PUBLIC-SECTOR UNION PLAINTIFFS** |

# TABLES OF CONTENTS

TABLES OF CONTENTS ............................................................................................................. I

TABLE OF AUTHORITIES ..................................................................................................... II

INTRODUCTION ......................................................................................................................1

BACKGROUND .........................................................................................................................1

ARGUMENT ...............................................................................................................................4

     I.       Legal Standard ...........................................................................................................4

     II.      The Public-Sector Union Plaintiffs Have Standing ...................................................4

     III.     The Public-Sector Union Plaintiffs are Likely to Succeed on the Merits of
              Their Claims ..............................................................................................................6

     IV.     The Public-Sector Union Plaintiffs Will Suffer Irreparable Harm Without a
              Preliminary Injunction ..............................................................................................7

     V.      The Balance of Equities Weigh in the Plaintiffs' Favor, and a Preliminary
              Injunction is in the Public Interest .........................................................................10

     VI.     Scope of Injunctive Relief ......................................................................................11

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Federal Cases**

4

*Dep't of Com. v. New York*,
5
    588 U.S. 752 (2019) ............................................................................4

6

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
    82 F.4th 664 (9th Cir. 2023) (en banc) ...........................................5
7

8

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ....................................................................5, 6
9

*Havens Realty Corp. v. Coleman*,
10
    455 U.S. 363 (1982) ....................................................................5, 6

11

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ..........................................................................4
12

13

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*,
    595 U.S. 109 (2022) ..........................................................................7

14

*Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*,
15
    838 F. Supp. 631 (D.D.C 1993).....................................................10

16

*Pangea Legal Servs. v. U.S. Dept. of Homeland Security*,
    512 F.Supp.3d 966 (N.D. Cal. 2021).............................................10
17

*State of Maryland v. United States Department of Agriculture*,
18
    D. Maryland Case No. 1:25-cv-00748-JKB (2025) ......................12

19

*United States v. Texas*,
20
    599 U.S. 670 (2023) ..........................................................................4

21

*Washington v. Trump*,
    847 F.3d 1151 (9th Cir. 2017) .........................................................4
22

23

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) .........................................................................4, 11

24

*Wolford v. Lopez*,
    116 F.4th 959 (9th Cir. 2024) ........................................................10
25

**Federal Statutes**

26

5 U.S.C.
27
    § 706 ..................................................................................................7
    § 1102 ................................................................................................2
28

§ 1103 ................................................................................................................. 2, 7
§ 1105 ..................................................................................................................... 2
§ 2301 ..................................................................................................................... 2
§ 3101 ..................................................................................................................... 2
§ 3502 ..................................................................................................................... 2
§ 4304 ..................................................................................................................... 2
§ 4305 ..................................................................................................................... 2
§ 7514 ..................................................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 65 ....................................................................................................... 4

5 C.F.R

§ 315.804 ................................................................................................................ 2
§ 351.402 ................................................................................................................ 2
§ 351.801-803 ........................................................................................................ 2

# INTRODUCTION

Five labor unions that represent public-sector federal, state, and local employees, including Plaintiffs American Federation of Government Employees, AFL-CIO ("AFGE"), American Federation of State County and Municipal Employees, AFL-CIO ("AFSCME"), AFGE Local 1216, and United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFLCIO ("UNAC/UHCP") (collectively, "Public-Sector Union Plaintiffs"), previously moved this Court for injunctive relief.  On March 24, 2025, this Court confirmed that it "has subject-matter jurisdiction to hear and decide the Public-Sector Union Plaintiffs' claims," Dkt. 153 at 11, and ordered the parties to show cause "why the relief extended to the organizational plaintiffs (or more, or less) should not be extended to the public-sector union plaintiffs," Dkt. 154.  For all of the reasons that the Court entered the March 13 preliminary injunction for the organizational plaintiffs in this case (Dkt. 44, 45, 120, and 132), and because the Public-Sector Union Plaintiffs and their members have suffered, and will continue to suffer, irreparable harm absent a return to the status quo, this Court should grant further injunctive relief to the Public-Sector Union Plaintiffs enjoining the relief Defendants that have caused those harms.

Plaintiffs identify and explain below the harm caused to these plaintiffs by certain relief Defendants' implementation of OPM's unlawful orders and actions.  Plaintiffs respectfully request that the Court enter further preliminary injunctive relief to the Public-Sector Union Plaintiffs requiring relief Defendants Department of Agriculture, Department of Commerce, Department of Defense, Department of Education, Department of Energy, Department of Health and Human Services, Department of Homeland Security, Department of Housing and Urban Development, Department of Interior, Department of Treasury,  Department of Transportation, Department of Veterans Affairs, Environmental Protection Agency, General Services Administration, National Science Foundation, and Small Business Administration to offer to reinstate terminated probationary employees in the jobs they held before being unlawfully fired as a result of OPM's unlawful orders and actions.

# BACKGROUND

As this Court has found on the record provided to it with respect to Plaintiffs' motions for

temporary restraining order and preliminary injunction, in February 2025, OPM directed other federal agencies to fire their probationary employees "under the pretense of 'performance.'"  Dkt. 132 at 2, 5.  OPM required agencies to use a a generic template termination letter to agency chief human capital officers that included a reason for termination: "The Agency finds, *based on your performance*, that you have not demonstrated that your further employment at the Agency would be in the public interest."  *Id.* at 5 (citing Dkt. 87-1).  At no point in time prior to this Court's injunctions did Defendants reveal to the Court which agencies had fired which or how many employees.  Dkt. 132 at 8 ("Virtually all the foregoing facts were uncovered by counsel for plaintiffs. Defendants have provided virtually no transparency.").

This Court previously ordered six relief Defendants to identify the previously terminated employees and, in a separate lawsuit pending in the District of Maryland, the government submitted declarations (filed again in this Court), finally revealing the numbers:  as directed by OPM, at least 18 federal agencies fired more than 24,000 probationary workers.  Dkt. 156-4 ¶4 (attaching declarations); *see also* Dkt. 144-1-6.  Some agencies used the OPM template language verbatim; others made "slight tweaks" but "maintained the central pretense" and "stayed true to the OPM template, down to the footnotes."  Dkt. 132 at 7.  However, as this Court previously found, the termination letter was false because agencies did not consider performance in terminating probationers.  *Id.* at 6-8.  To the contrary, even employees with recent outstanding performance ratings were terminated for "performance."

As Defendants have conceded, OPM lacks statutory authority to direct agencies to terminate probationary employees.  *See* 5 U.S.C. §§ 1102, 1103, Dkt. 45 at 8.  Its statutory role is to provide human resources support to other agencies.  5 U.S.C. §§ 1103, 1105, 4304, 4305, 7514.  Authorizing statutes delegate exclusive authority over employment decisions to federal agency heads.  Dkt. 45 at 7-8; Dkt. 132 at 9; 5 U.S.C. § 3101.  Agency downsizing may occur only through a reduction-in-force, which provides order of termination and bumping rights, and requires notice to employees, affected states, and local governments. *See, e.g.*, 5 U.S.C. § 3502; 5 C.F.R. §§ 351.402, 351.801-803.  Probationary employees may be terminated only based on conduct or performance after evaluation, and with detailed notice.  See 5 U.S.C. §2301(b)(6); 5 C.F.R. § 315.804(a). As this Court put it, "[n]o

statute – anywhere, ever – has granted OPM the authority to direct the termination of employees in other agencies."  Dkt. 132 at 9.

Less than a week after the mass termination of probationary employees began, Plaintiffs, including the Public-Sector Union Plaintiffs, challenged OPM's acts as ultra vires and in violation of the APA, and moved for a TRO four days later.  Dkt. 1, 18. This Court initially held that it likely did not have jurisdiction over the claims of the Public-Sector Union Plaintiffs because they were channeled in the first instance to administrative agencies, but granted a TRO as to the other organizational plaintiffs in the case, finding that plaintiffs' "mountain of evidence" demonstrated that they were likely to prove that OPM directed the terminations and widespread irreparable injury to the organizational plaintiffs.  Dkt. 44, 45. The Court subsequently granted Plaintiffs leave to amend their complaint to add additional Rule 19 relief defendants and new Plaintiffs, to add those Plaintiffs to the pending motion for preliminary injunction, and to file new evidence of harm in support of that motion.  Dkt. 49, 88.[1]

A week after entry of the TRO, OPM amended a memorandum it had issued back on Inauguration Day to state that agencies should make their own decisions, but OPM did not rescind any other prior communications by which OPM directed agencies to act (including but not limited to emails in the record from February 12 and 14, from OPM to all federal agencies, Dkt. 111-2, 111-5) or restore employees to service.

On March 13, the Court held a preliminary injunction hearing and orally granted immediate preliminary injunctive relief to the organizational plaintiffs, which was later followed by a written decision.  Dkt. 120 at 47-54, 132.  Finding that every preliminary injunctive factor supported restoring the status quo prior to OPM's unlawful acts, the Court ordered OPM and six relief defendants to cease terminations, restore services by reinstating employees to their positions, and report on compliance, including lists of terminated employees and steps taken to comply with respect to each.  Dkt. 120 at 52-54, 132.  This Court denied Defendants' motion for a stay pending appeal, Dkt. 133 at 3-4, as did the Ninth Circuit.  Dkt. 157.  Plaintiffs' motion for a stay from the U.S.

---

[1] Defendants did not oppose the latter two requests.  Dkt. 63, 69.

1    Supreme Court, which they filed without waiting for the Ninth Circuit to rule, remains pending.

2         On March 24, 2025, following requested additional briefing from both parties with respect to

3    the Court's jurisdiction to hear Public-Sector Union Plaintiffs' claims, this Court held that "the

4    public-sector unions' claims are not of the kind Congress intended to be reviewed through the

5    CSRA" and thus that this Court "has subject-matter jurisdiction to hear and decide the public-sector

6    union plaintiffs' claims." Dkt. 153 at 11. In light of that decision, the Court issued an order to show

7    cause "why the relief extended to the organizational plaintiffs (or more, or less) should not be

8    extended to the public-sector union plaintiffs." Dkt. 154.

9                                      **ARGUMENT**

10   **I.    Legal Standard**

11        A preliminary injunction is warranted where the moving party establishes that (1) it is likely

12   to succeed on the merits; (2) irreparable harm is likely in the absence of preliminary relief; (3) the

13   balance of equities tips in the movant's favor; and (4) an injunction is in the public interest. Fed. R.

14   Civ. P. 65(c); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); Fed. R. Civ. P. 65(b)(1).

15   All four factors strongly support preliminary injunctive relief for the Public-Sector Union Plaintiffs.

16   **II.   The Public-Sector Union Plaintiffs Have Standing**

17        To establish Article III standing, a plaintiff must demonstrate "'that it has suffered a concrete

18   and particularized injury that is either actual or imminent, that the injury is fairly traceable to the

19   defendant, and that it is likely that a favorable decision will redress that injury.'" *Washington v.*

20   *Trump*, 847 F.3d 1151, 1159 (9th Cir. 2017) (quoting *Massachusetts v. EPA*, 549 U.S. 497 (2007)).

21   "Monetary costs are of course an injury[,]" *United States v. Texas*, 599 U.S. 670, 676 (2023, and such

22   losses constitute "sufficiently concrete and imminent injury to satisfy Article III," *Dep't of Com. v.*

23   *New York*, 588 U.S. 752, 767 (2019). As detailed in Plaintiffs' motion for a TRO and/or to show

24   cause why a preliminary injunction should not issue, and unchallenged by Defendants in their

25   opposition, *see* Dkt. 33, Plaintiffs AFGE, AFSCME, and their affiliated local unions have standing

26   both in their own right and in their representative capacity to challenge OPM's unlawful orders to

27   terminate probationary employees. *See Fellowship of Christian Athletes v. San Jose Unified Sch.*

28   *Dist.*, 82 F.4th 664, 681-82 (9th Cir. 2023) (en banc).

The Public-Sector Union Plaintiffs have standing as representatives of their members, who have suffered, or imminently may suffer, immediate harm from the terminations and the effects of the terminations. First, the terminated probationary employees themselves faced moving expenses, new job searches, and the loss of their healthcare benefits as a result of OPM's unlawful orders to agencies to terminate probationary employees. Dkts. 18-6 ¶¶22-23; 18-12 ¶¶18-19; 18-18 ¶7; 18-10 ¶¶13, 16-17; 18-5 ¶¶17-22; 18-17 ¶¶19-22. Second, union members—both terminated probationary employees and other bargaining unit employees—rely on the services provided by government agencies, just as the organizational plaintiffs' members do. *See* Dkt. 18-12 ¶25 (noting sizable percentage of AFGE members who are veterans will suffer from impairment of VA services). Finally, the many union members who remain employed at the agencies impacted by these terminations have suffered and will continue to suffer immediate harm from the swift, unexpected, and sweeping terminations of their colleagues without planning or advance notice. Union members who remain in their positions have been forced to cover the work done by terminated probationary employees, often without any time to discuss the transition of projects or other crucial handoff information. *E.g.*, Dkts. 18-17 ¶13; 18-8 ¶35.

The Public-Sector Union Plaintiffs also have organizational standing, as OPM's unlawful actions have "directly affected and interfered with [the unions'] core business activities," not merely their "abstract social interests." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). These unions have been, and will continue to be, injured by the unlawful terminations in the performance of their core pre-existing activities of providing representational services to employees in federal government bargaining units, which include probationary employees who were terminated and employees who remain and suffer the effects. Dkts. 18-6 ¶¶5, 12-17; Dkt. 18-12 ¶¶3, 7-13; 18-18 ¶¶7-13; 18-5 ¶¶11-16, 23; 18-17 ¶¶15-22. Those representational duties include counseling represented employees on their rights in circumstances of termination, RIFs, or other adverse actions. Dkt. 18-12 ¶5; 18-6 ¶3; 18-18 ¶8; 18-5 ¶11-16, 23; 18-17 ¶¶15-22. These injuries are indistinguishable from those held to support standing in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), where the defendant provided false information about available housing to the plaintiff organization, which provided counseling services for low-income homeseekers, thereby "perceptibly

impair[ing] [Plaintiff's] ability to provide counseling and referral services" with a "consequent drain on the organization's resources." *Id.* at 378-79; *see also Hippocratic Medicine*, 602 U.S. at 395 (equating injury-in-fact in *Havens Realty* to that suffered by "retailer who sues a manufacturer for selling defective goods to the retailer").

Further, by embarking on mass terminations without providing any advance notice, OPM precluded the Public-Sector Union Plaintiffs from performing their authorized role to represent employees (including in RIF proceedings or otherwise) and forced the Unions to devote their resources to counseling represented employees. Dkts. 18-6 ¶¶12-17; 18-12 ¶¶7-13. Moreover, OPM's unlawful actions have overwhelmed the Unions with queries and demands from probationary employees for representation, undermining the Unions' ability to effectively assist those and other represented employees. Dkts. 18-6 ¶¶12-17; 18-12 ¶¶7-13. Finally, the loss of union members in represented bargaining units harms the Unions by diminishing their bargaining power and dues income. Dkts. 18-6 ¶¶20-23; 18-12 ¶¶15-18.

Causation and redressability are readily satisfied as well. As explained, the demands placed upon the public-sector unions to assist represented employees with navigating these mass pretextual terminations undermine their ability to perform their core representative functions. If the Court orders the relief defendants to rescind the unlawful termination directive and restore the status quo, that injunction would protect against any such future injury to the union plaintiffs.

**III.    The Public-Sector Union Plaintiffs are Likely to Succeed on the Merits of Their Claims**

This Court has already determined that the organizational plaintiffs are likely to succeed on the merits of their claims, which mirror the claims brought by the Public-Sector Union Plaintiffs. This factor thus supports likewise granting preliminary injunctive relief to the Public-Sector Union Plaintiffs as well. In short, based on a "mountain of evidence," Dkt. 45 at 8; *see also* Dkt. 132 at 11, the Court found that Plaintiffs were likely to prove that "OPM directed agencies to fire their probationers under the pretense of 'performance'" and did so to, "at least in part, circumvent statutory and regulatory reduction in force procedures and foreclose appeal to the Merit Systems Protection Board." Dkt. 132 at 8. OPM's orders were directed to all federal agencies. *See* Dkt. 71, Exh. C

(Forest Service Briefing Paper stating "All federal agencies…were notified on February 12, 2025, by the Office of Personnel Management (OPM) to terminate all employees who have not completed their probationary or trial period."); 111-2; 111-5.  Yet "[n]o statute – anywhere, ever – has granted OPM the authority to direct the termination of employees in other agencies." Dkt. 45 at 9.  Instead, as a creature of statute, OPM possesses "'only the authority that Congress has provided.'" *Id.* (quoting *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 595 U.S. 109, 117 (2022)).  Because Congress vested the director of OPM only with authority to appoint, direct, and supervise employees *of OPM*, 5 U.S.C. § 1103(a)(1)-(3), the agency "did not have the authority to direct the firing of employees, probationary or otherwise, in any *other* federal agency," as Defendants have conceded.  Dkt. 45 at 10 (emphasis in original).  Accordingly, this Court determined that Plaintiffs were likely to prove that OPM's directive "constituted an *ultra vires* act that violated its and all impacted agencies' statutory authority. *Id.* at 9.  Further, this Court found that the OPM template letter used to effectuate the terminations—which stated "[t]he Agency finds, based on your performance, that you have not demonstrated that your further employment at the Agency would be in the public interest," Dkt. 87-1 at 1—was "an obvious pretext intended to obstruct appeal and avoid statutory and regulatory reduction-in-force procedures."  Dkt. 132 at 11.

This Court has also determined that Plaintiffs' APA claims are likely to succeed on the merits "for much the same reason."  *Id.* at 12.  "OPM's *ultra vires* directive is likely to constitute an unlawful final agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right,' and 'without observance of procedure required by law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A), (C), (D).

## IV.    The Public-Sector Union Plaintiffs Will Suffer Irreparable Harm Without a Preliminary Injunction

The Public-Sector Union Plaintiffs have submitted declarations documenting a variety of irreparable harms caused by the mass termination of probationary federal employees across numerous federal agencies. Dkt. 122.  Just as the organizational Plaintiffs face "concrete harms," flowing "from the way the unlawfully directed terminations disable the federal agency services on which they or

their members depend, or otherwise imperil their organizational mission or membership—such as by requiring the organizations to steal resources from their existing work to solve new problems entirely of OPM's making," Dkt. 132 at 12—the Public-Sector Union Plaintiffs also face concrete harms flowing from Defendants' unlawfully directed terminations.  As discussed above, these unions have been forced to divert limited resources from their core mission and pre-existing activities providing representational services to employees in federal government bargaining units across the federal government in order to respond to the mass terminations directed by OPM of more than 24,000 probationary employees.  *See supra* 4-6.  This unprecedented action by OPM, and the impact on federal agencies, employees, and their labor representatives over the past weeks since OPM ordered federal agencies to act, cannot be overstated.  The scale of the terminations exacerbates this harm, which is irreparable absent this Court's intervention, as the need to respond to these terminations undermines the Unions' ability to effectively assist other represented employees on their rights in circumstances of termination, RIFs, or other adverse actions.  *See, e.g.*, Dkt. 18-6 ¶5; 18-12 ¶3; 8-18 ¶8; 18-5 ¶11-16, 23; 18-17 ¶¶15-22.

Absent preliminary injunctive relief restoring probationary employees to their prior positions, OPM's mass termination program has also caused and will cause further irreparable harm to remaining federal workers—including members of the Public-Sector Union Plaintiffs —who must now do more with fewer resources to serve the public and their agencies' mission.  Dkts. 18-14 ¶8; 18-18 ¶¶12-13; 18-8 ¶¶36-37.  For example, absent reinstatement, the mass firing of probationary firefighters "will have a detrimental effect on the Navy's ability to perform its mission and protect the military personnel and families that live and work on the many naval facilities across the United States." Dkt. 18-14 ¶8 ("Personally, I fear that these actions will adversely affect my safety when performing my duties at the Portsmouth Naval Shipyard.").  The mass termination of probationary employees at VA medical facilities will have similar consequences.  Dkt. 18-18 ¶13 ("[I]nsufficient staffing leads to burnout, which in turn worsens staffing shortages…diminishing the quality of care provided.").

The speed of the mass terminations caused substantial burdens on remaining employees across the federal government that is irreparable absent injunctive relief.  For example, probationary

employees in the AFSCME local bargaining unit at the FAA received emails between midnight and 2 a.m. on February 15 stating that they had been terminated effective February 14, 2025.  Dkt. 18-17 ¶9.  "Within hours of receiving the email termination notices, affected probationary employees were locked out of FAA systems, unable to … use their email addresses to contact their supervisors about their important pending work projects affecting public safety or contact human resources to ask questions about the termination notices."  *Id.* ¶13.  Notice at other agencies was likewise incredibly short, creating similar chaos for the remaining workers—many of them plaintiff union members— attempting to take over vital projects.  *See*, *e.g.*, Dkts. 18-8 ¶35 (probationary employees at NSF were given "mere hours to provide crucial transition information before being locked out of NSF systems"); 111-9 at 2 (VA "dismissals are effective immediately"); 18-6 ¶6 (AFSCME employees terminated effective immediately).

The organizational plaintiffs have already documented, and the Court credited, widespread ongoing and imminent harm to services that affect members of these unions as well.  For example, tens of thousands of AFGE members are veterans, who—like the members of plaintiffs VoteVets and Common Defense—are impacted by the impacts of the unlawful terminations on VA services, including reductions to the Veterans Crisis Line, "mental health research, cancer treatment, addiction recovery, prosthetics, and burn pit exposure studies," transportation services, and administrative services that facilitate veterans' access to treatment.  Dkts. 18-7; 18-3; 18-18; 18-12; 70-17.  Terminations of FAA workers have not only "introduced unnecessary risk and stress that distracts from the mission of safe flight for civil and military operations" for flight attendants, but likewise affect AFSCME members still working at the FAA.  Dkts. 70-13; 18-17.

In addition to the impacts felt by terminated members, the federal employee members who remain to pick up the pieces, Plaintiff AFSCME also represents over 1.4 million members, the vast majority of whom are state and local government employees who have been impacted by the loss of federal services.  Dkt. 18-6.  Those harms are comparable to those identified at length by fellow Plaintiff State of Washington in its recently motion, Dkt. 156, and the amicus brief filed in support of Plaintiffs by cities and counties across the country.  Dkt. 105.

Finally, in addition to all of these impacts, the loss of union members in represented

1    bargaining units also caused and, absent injunctive relief, will continue to cause immediate harm to

2    these unions by diminishing their bargaining power and dues income.  Dkt. 18-6 ¶¶20-23; 18-12

3    ¶¶15-18.  As damages are not available in APA cases, monetary harm is irreparable.  *See Pangea*

4    *Legal Servs. v. U.S. Dept. of Homeland Security*, 512 F.Supp.3d 966, 976 (N.D. Cal. 2021)

5    ("Economic injuries are deemed irreparable in APA cases because plaintiffs are unable to recover

6    money damages.").

7         The record is replete with evidence of irreparable harm that will flow to the Public-Sector

8    Union Plaintiffs absent preliminary injunctive relief returning to the status quo prior to OPM's

9    unlawful acts, both in their unique organizational and representative capacity as well as in similar

10   ways to the other organizational plaintiffs and to the State of Washington.  This factor, too, thus

11   strongly favors an injunction.  Dkt. 45 at 22-23; Dkt. 132 at 13 (finding irreparable harm justifying

12   immediate relief).

13   **V.    The Balance of Equities Weigh in the Plaintiffs' Favor, and a Preliminary Injunction**

14   **is in the Public Interest**

15        The equities and public interest, which merge when the government is a party, tip sharply in

16   favor of the Plaintiffs.  *Wolford v. Lopez*, 116 F.4th 959, 976 (9th Cir. 2024).  The harms that the

17   Public-Sector Union Plaintiffs have shown are serious, ongoing, and irreparable, while the

18   Defendants have provided no credible evidence of harm.  As this Court found in denying a stay of the

19   organizational Plaintiffs' preliminary injunction, Defendants nowhere claimed to be "uniquely

20   incapable of rehiring recently terminated probationers," Dkt.133 at 4; their assertions that they were

21   injured by doing so amount to mere administrative burdens, *id.*; and Defendants' own declarations

22   demonstrate that agencies are fully able to take steps to comply with the TRO issued by the Maryland

23   District Court and the preliminary injunction issued by this Court.  Dkts. 139, 141, 144.  As this

24   Court held, "'[t]he preservation of the rights in the Constitution and the legality of the process by

25   which government agencies function certainly weighs heavily in the public interest.'"  Dkt. 132 at 13-

26   14 (quoting *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F. Supp. 631, 640 (D.D.C

27

28

1993)).

**VI.    Scope of Injunctive Relief**

Because each *Winter* factor favors granting an injunction, this Court should grant preliminary injunctive relief to the Public-Sector Union Plaintiffs.  That relief, like the relief granted to the organizational plaintiffs, requires full and complete rescission of the unlawful directives and their effects, ensuring that the unions and their members remain in the positions they held but for the unlawful directives.  And the injunctive relief should extend to all the relief defendants whose actions have caused and threaten further irreparable harm to the Public-Sector Union Plaintiffs and their members.

For Plaintiff AFSCME and its local unions, that includes relief against Defendants the Department of Agriculture, Department of Transportation, and Department of Veterans Affairs.  Dkt. 18-6 ¶4.

For Plaintiff AFGE and its local unions, that includes relief against Defendants Department of Agriculture, Department of Commerce, Department of Defense, Department of Education, Department of Energy, Department of Health and Human Services, Department of Homeland Security, Department of Housing and Urban Development, Department of Interior, Department of Treasury,  Department of Transportation, Department of Veterans Affairs, Environmental Protection Agency, General Services Administration, National Science Foundation, aSmallandand Small Business Administration..

Although some of these relief Defendants were covered by this Court's prior preliminary injunction, or have taken steps to rescind terminations to comply with the separate TRO issued by the District Court of Maryland, as Plaintiffs have previously established, Defendants are not fully complying with this Court's prior injunction.  Dkt. 155. Moreover, the Public-Sector Union Plaintiffs against these Defendants are not moot and the unions are entitled to injunctive relief.  As an initial matter, Defendants are currently challenging this Court's prior preliminary injunction, in part based on the standing of the organizational plaintiffs.  In addition, taking steps to comply with a preliminary court order does not moot a case or the need for injunctive relief to prohibit conduct that would otherwise cause irreparable harm.  If it did, every case would become moot upon a defendant's

1    compliance with a TRO or preliminary injunction.  And this court has held that OPM's action in

2    response to the TRO—"a two-sentence revision to one memo among several held likely to constitute

3    an unlawful directive—'could be easily abandoned or altered in the future'" and does not moot the

4    case.  Dkt. 88 at 5.  The Public-Sector Union Plaintiffs are thus entitled to their own injunction.

5            Finally, the Public-Sector Union Plaintiffs request that this Court broaden the scope of the

6    preliminary injunctive relief somewhat from that described in the Court's order from the bench on

7    March 13, covering those probationary employees terminated "on or about February 13 and 14,

8    2025."  Dkt. 120 at 52.  As this Court is aware, Defendants did not provide any transparency into

9    which employees were terminated and when until *after* that injunction issued.  The evidence now in

10   the record before the Court, including the evidence offered by Defendants, demonstrates that the

11   terminations ordered by OPM took place over a longer timeframe than just on February 13 and 14.

12   Defendants' own declarations from the Maryland case reveal terminations on February 11, 12, 13, 14,

13   and in subsequent weeks.   *See* Dkt. 156-4.  And, in communications to agencies on February 14,

14   2025, OPM stated: "We have asked that you separate probationary employees that you have not

15   identified as mission-critical no later than the end of the day Monday, 2/17."  Dkt. 111-2.  That

16   Monday was a federal holiday, as OPM's own website confirms, and so many terminations continued

17   beyond that deadline.  OPM, Federal Holidays, 2025, https://www.opm.gov/policy-data-

18   oversight/pay-leave/federal-holidays/#url=2025; *see, e.g.*, Dkt. 18-9 ¶13 & Ex. B.

19           The eighteen Defendant agencies in the Maryland case reported a total of 24,805 Affected

20   Probationary Employees through March 17, 2025, defined as:

21           [A]ll federal probationary employees who were previously employed by any of the Restrained
             Defendant agencies, or any department or other subdivision therein, and who were
22           purportedly terminated on or after January 20, 2025. The definition excludes any such
             employees who (1) were actually terminated on the basis of a good faith, individualized
23           determination of cause, under the standards for making such a determination set forth in the
             foregoing Memorandum, and who (2) were not otherwise terminated as part of a mass
24           termination.

25   *State of Maryland v. United States Department of Agriculture*, D. Maryland Case No. 1:25-cv-00748-

26   JKB, Dkt. 44; *see also* Glymph Decl. ¶¶2-4.  In order to provide effective relief covering those

27   employees whose terminations were also ordered by OPM but were not terminated on exactly

28

February 13 or 14, 2025, Public-Sector Union Plaintiffs request the court issue a preliminary

injunction covering any terminated employees from January 20, 2025 forward, as set forth in the

accompanying proposed order.


DATED:  March 28, 2025                    Scott A. Kronland
                                          Stacey M. Leyton
                                          Eileen B. Goldsmith
                                          Danielle E. Leonard
                                          Robin S. Tholin
                                          James Baltzer
                                          ALTSHULER BERZON LLP
                                          177 Post St., Suite 300
                                          San Francisco, CA 94108
                                          Tel: (415) 421-7151

                                   By: */s/ Danielle Leonard*

                                      *Attorneys for Plaintiff Organizations*

                                          Norman L. Eisen (*pro hac vice*)
                                          Pooja Chadhuri (SBN 314847)
                                          STATE DEMOCRACY DEFENDERS
                                          FUND
                                          600 Pennsylvania Avenue SE #15180
                                          Washington, DC 20003
                                          Tel: (202) 594-9958
                                          Norman@statedemocracydefenders.org
                                          Pooja@statedemocracydefenders.org


                                   By: */s/ Norman L. Eisen*

                                      *Attorneys for Plaintiff Organizations*

                                          Rushab Sanghvi (SBN 302809)
                                          AMERICAN FEDERATION OF GOVERNMENT
                                          EMPLOYEES
                                          80 F Street, NW
                                          Washington, DC 20001
                                          Tel: (202) 639-6426
                                          Sanghr@afge.org

                                   By: */s/ Rushab Sanghvi*

1

2

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

3

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)

4

AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES

5

1625 L Street, N.W.
Washington, D.C.  20036

6

Tel: (202) 775-5900
TPaterson@afscme.org

7

MBlumin@afscme.org

8

By: */s/Teague Paterson*

9

10

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

11

Tera M. Heintz (SBN 241414)

12

Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (pro hac vice)

13

Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE

14

ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000

15

Seattle, WA 98104
(206) 464-7744

16

tera.heintz@atg.wa.gov

17

cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

18

19

By: */s/ Tera M. Heintz*

20

*Attorneys for Plaintiff State of Washington*

21

22

23

24

25

26

27

28