PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
GREGORY CONNER
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al*.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al*.,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF WASHINGTON STATE'S MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: April 9, 2025<br>Time: 8:00 am<br>Judge: Hon. William H. Alsup<br>Place: San Francisco Courthouse<br>         Courtroom 12 |

# TABLE OF CONTENTS

INTRODUCTION ...........................................................**Error! Bookmark not defined.**

BACKGROUND ...........................................................**Error! Bookmark not defined.**

I.    Statutory and Regulatory Background.............................**Error! Bookmark not defined.**

    A.    The Civil Service Reform Act ...............................**Error! Bookmark not defined.**

II.   Factual Background ...........................................**Error! Bookmark not defined.**

III.  Procedural History ...........................................**Error! Bookmark not defined.**

STANDARD OF REVIEW ...........................................................**Error! Bookmark not defined.**

ARGUMENT...........................................................**Error! Bookmark not defined.**

IV.   The State of Washington Cannot Show a Likelihood of Success on the Merits of its Claims. ...........................................................**Error! Bookmark not defined.**

    A.    Washington State Lacks Standing to Pursue Its Claims ...... **Error! Bookmark not defined.**

        1.    The State of Washington Fails to Demonstrate a Legally Cognizable Injury........................................**Error! Bookmark not defined.**

        2.    Washington State Lacks Standing to Pursue Its Claim of a Procedural Injury ........................................**Error! Bookmark not defined.**

        3.    Washington State Fails to Establish That This Court Can Likely Redress Its Claimed Injuries ......................**Error! Bookmark not defined.**

    B.    Washington State's Claims Are Moot ..................**Error! Bookmark not defined.**

    C.    The CSRA Provides the Exclusive Remedy for the State of Washington's Claims ...........................................................**Error! Bookmark not defined.**

    D.    The Supreme Court's *Thunder Basin* Jurisprudence Does Not Change This Conclusion ...........................................................**Error! Bookmark not defined.**

    E.    Washington's *Ultra Vires* and Separation of Powers Claims Lack Merit ..... **Error! Bookmark not defined.**

    F.    Washington State's APA Claims are Unlikely to Succeed.. **Error! Bookmark not defined.**

V.    The State of Washington Cannot Show Irreparable Harm Absent a Preliminary Injunction ...........................................................**Error! Bookmark not defined.**

    A.    OPM's Compliance with this Court's Orders and its Revised Guidance Precludes Any Additional Award of Preliminary Injunctive Relief............. **Error! Bookmark not defined.**

B.    Separate Injunctive Relief Issued in *State of Maryland v. U.S. Department of Agriculture* Precludes Any Additional Award of Relief . **Error! Bookmark not defined.**

C.    The State of Washington Cannot Rely on Legally Insufficient Assertions of Harm ....................................................................**Error! Bookmark not defined.**

VI.    The Public Interest Does Not Favor an Injunction ...........**Error! Bookmark not defined.**

VII.    Any Relief Should Be Limited ..........................................**Error! Bookmark not defined.**

VIII.    This Court Should Require the State of Washington to Provide Security for Preliminary Injunctive Relief................................................**Error! Bookmark not defined.**

CONCLUSION.............................................................................**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Reid*,
No. 15-cv-1905, 2016 WL 3136859 (D. Minn. June 3, 2016) .......................................... 14, 15

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ........................................................................................................ 18

*Am. Fed'n Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, ("*AFGE v. OPM*")
No. 3:25-cv-1780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025) ................................. 1, 7, 16

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ........................................................................................................ 21

*America Cargo Transp., Inc. v. United States*,
625 F.3d 1176 (9th Cir. 2010) ....................................................................................... 19

*Anselmo v. King*,
902 F. Supp. 273 (D.D.C. 1995) ..................................................................................... 4

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) .......................................................................................... 29

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ..................................................................................................... 21

*Arron v. United States*,
113 F.3d 1245 (10th Cir. 1997) ..................................................................................... 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 15

*Axon Enterprises, Inc. v. Federal Trade Commission*,
598 U.S. 175 (2023) ................................................................................................. 20, 21

*Baker v. Carr*,
369 U.S. 186 (1962) ..................................................................................................... 17

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ....................................................................................................... 21

*Block v. Community Nutrition Inst.*,
467 U.S. 340 (1984) ..................................................................................................... 20

*California v. Azar*,
911 F.3d 558 (9th Cir. 2018) ......................................................................................... 29

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988) ................................................................................. 14, 26, 27

*Chamber of Com. of U.S. v. EPA*,
642 F.3d 192 (D.C. Cir. 2011) ....................................................................................... 14

*Chamber of Com. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) ............................................................................ 21

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ............................................................................................. 25

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..................................................................................... 10, 16

*Clark v. Bank of Am. N.A.*,
   No. 14-cv-232, 2015 WL 1433834 (D. Idaho Mar. 27, 2015) ....................... 14, 15

*Ctr. for Biological Diversity v. Trump*,
   453 F. Supp. 3d 11 (D.D.C. 2020) ..................................................................... 23

*Dalton v. Specter*,
   511 U.S. 462 (1994) ..................................................................................... 22, 23

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ............................................................................ 18

*Dennis v. Thomas*,
   No. 09-1317, 2010 WL 3927488 (D. Or. Oct. 4, 2010) ................................. 15, 16

*Dresser v. Meba Med. & Benefits Plan*,
   628 F.3d 705 (5th Cir. 2010) .............................................................................. 24

*E. Bay Sanctuary Covenant v. Barr*,
   934 F.3d 1026 (9th Cir. 2019) ............................................................................ 29

*E. Bay Sanctuary Covenant v. Biden*,
   102 F.4th 996 (9th Cir. 2024) ............................................................................ 12

*Eagle Tr. Fund v. USPS*,
   365 F. Supp. 3d 57 (D.D.C. 2019), *aff'd*, 811 F. App'x 669 (D.C. Cir. 2020) ....................... 22

*Egbert v. Boule*,
   596 U.S. 482 (2022) .......................................................................................... 18

*Elgin v. Dep't of the Treasury*,
   567 U.S. 1 (2012) .............................................................................. 18, 19, 21, 22

*Fed. L. Enf't Offs. Ass'n*, ("*FLEOA*")
   62 F.4th 551 (D.C. Cir. 2023) ............................................................................ 24

*Florida v. Mellon*,
   273 U.S. 12 (1927) ...................................................................................... 11, 12

*Food & Drug Admin. v. All. for Hippocratic,*
   *Med.*, 602 U.S. 367 (2024) ................................................................................ 10

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) .............................................................................. 24

*Gator.com Corp. v. L.L. Bean, Inc.*,
   398 F.3d 1125 (9th Cir. 2005) ................................................................. 18

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
   739 F.2d 466 (9th Cir. 1984) ................................................................... 28

*Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc. 404M v. Bakersfield Californian*,
   541 F. Supp. 2d 1117 (E.D. Cal. 2008)................................................... 27

*Great N. Res., Inc. v. Coba*,
   No. 3:20-cv-1866, 2020 WL 6820793 (D. Or. Nov. 20, 2020) ............... 28

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
   527 U.S. 308 (1999) ................................................................................. 17

*Harkrader v. Wadley*,
   172 U.S. 148 (1898).................................................................................. 17

*Hindes v. FDIC*,
   137 F.3d 148 (3d Cir. 1998) ..................................................................... 22

*In re Excel Innovations, Inc.*,
   502 F.3d 1086 (9th Cir. 2007) ................................................................. 26

*In re Sawyer*,
   124 U.S. 200 (1888).................................................................................. 17

*Johnson v. United States*,
   402 F. App'x 298 (9th Cir. 2010) ............................................................ 12

*Kansas v. Mayorkas*,
   145 S. Ct. 415 (2024)................................................................................ 12

*Kirby Corp. v. Pena*,
   109 F.3d 258 (5th Cir. 1997) ................................................................... 22

*Lampon-Paz v. OPM*,
   732 F. App'x 158 (3d Cir. 2018) ............................................................. 19

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949) ................................................................................. 22

*Leedom v. Kyne*,
   358 U.S. 184 (1958) ................................................................................. 21

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. 10

*Lundeen v. Mineta*,
   291 F.3d 300 (5th Cir. 2002) ................................................................... 22

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ................................................................................. 29

*Massachusetts v. Laird,*
    400 U.S. 886 (1970) ................................................................................ 11

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923) ................................................................................ 13

*Murthy v. Missouri,*
    603 U.S. 43 (2024) ................................................................... 11, 12, 13

*Myers v. United States,*
    272 U.S. 52 (1926) ................................................................................ 23

*Nken v. Holder,*
    556 U.S. 418 (2009) ............................................................................... 28

*Nyunt v. Chairman, Broad. Bd. of Governors,*
    589 F.3d 445 (D.C. Cir. 2009) ............................................................. 22

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ............................................................................... 25

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ................................................................................ 22

*P Perry v. Newsom,*
    18 F.4th 622, 634 (9th Cir. 2021) ......................................................... 28

*Pom Wonderful LLC v. Hubbard,*
    775 F.3d 1118 (9th Cir. 2014) .............................................................. 26

*Reno Air Racing Ass'n., Inc. v. McCord,*
    452 F.3d 1126 (9th Cir. 2006) .............................................................. 14

*Sampson v. Murray,*
    415 U.S. 61 (1974) ................................................................................ 17

*Saul v. United States,*
    928 F.2d 829 ........................................................................................... 19

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    591 U.S. 197 (2020) ............................................................................... 23

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ............................................................................... 10

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.,*
    585 F. App'x 390 (9th Cir. 2014) ......................................................... 27

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021) ............................................................................... 11

*TRW, Inc. v. FTC,*
    647 F.2d 942 (9th Cir. 1981) ................................................................. 25

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
   578 U.S. 590 (2016) ..................................................................................... 24

*United States v. Fausto*,
   484 U.S. 439 (1988) ............................................................................ 3, 19, 24

*United States v. Texas*,
   599 U.S. 670 (2023) ............................................................. 11, 12, 15, 17

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ..................................................................................... 25

*Veit v. Heckler*,
   746 F.2d 508 (9th Cir. 1984) ..................................................................... 20

*Walton v. House of Reps of State of Okla.*,
   265 U.S. 487 (1924) ..................................................................................... 17

*Warth v. Seldin*,
   422 U.S. 490 (1975) ..................................................................................... 27

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ....................................................................................... 9

*White v. Berry*,
   171 U.S. 366 (1898) ..................................................................................... 17

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) ..................................................................................... 10

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................... 9

**Statutes**

5 U.S.C. § 704 ..................................................................................................... 24

5 U.S.C. § 1103 ................................................................................................... 24

5 U.S.C. § 1204 ............................................................................................. 4, 18

5 U.S.C. § 1214 ................................................................................................... 18

5 U.S.C. § 2301 ..................................................................................................... 3

5 U.S.C. § 2302 ..................................................................................................... 4

5 U.S.C. § 7101 ..................................................................................................... 4

5 U.S.C. § 7512 ................................................................................................. 3, 4

28 U.S.C. § 1295 ................................................................................................... 4

Pub. L. No. 95-454, 92 Stat. 1111 (1978) .......................................................... 3

**The Constitution**

U.S. Const. art. II, § 1, cl. 1 ........................................................... 23

**Rules**

Fed. R. Civ. P. 65 ............................................................................. 9, 29

**Regulations**

5 C.F.R. pt. 1200 ............................................................................... 4

5 C.F.R. § 1201.34 ............................................................................ 4, 20

5 C.F.R. pt. 2420 .............................................................................. 5

5 C.F.R. § 2423.22 ............................................................................ 5

**Other Authorities**

Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) ........................... 5, 16, 24

U.S. Dep't of Def., Probationary Workforce Statement (Feb. 21, 2025),
https://www.defense.gov/News/Releases/Release/article/4074278/dod-probationary-workforce-statement/ ........................... 17

1

## INTRODUCTION

2      This Court should deny the State of Washington's motion for a preliminary injunction

3  because the State fails to show that it entitled to extraordinary relief. Washington joins a lawsuit

4  brought by five unions that represent federal employees and ten non-profit organizations with

5  various organizational missions. Plaintiffs challenge guidance issued by the U.S. Office of

6  Personnel Management ("OPM") to identify agency employees still in their trial or probationary

7  period and determine whether it was appropriate to retain them.

8      On February 27, 2025, this Court entered a temporary restraining order ("TRO")

9  requiring OPM to update its guidance to clarify that it does not have authority to direct personnel

10  actions at agencies. *See* Tr. of Feb. 27, 2025, Hrg. at 67:9 – 68:10, ECF No. 44; *see also Am.*

11  *Fed'n Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, No. 3:25-cv-1780, 2025 WL 660053, *6-7 (N.D.

12  Cal. Feb. 28, 2025) ("*AFGE v. OPM*"). Days later, OPM revised its earlier guidance to clarify

13  that "OPM is not directing agencies to take any specific performance-based actions regarding

14  probationary employees." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting

15  Heads of Departments and Agencies at 2 (Revised March 4, 2025), ECF No. 78 ("Revised OPM

16  Guidance"). OPM emphasized that "[a]gencies have ultimate decision-making authority over,

17  and responsibility for, such personnel actions." *Id*. Any confusion was therefore cleared up, and

18  to the extent Washington continues to assert downstream harms from the alleged termination of

19  probationary employees, that is the result of agencies' own politically accountable decisions.

20      The State of Washington nevertheless moves for a preliminary injunction on the grounds

21  that OPM's guidance to federal agencies somehow still constitutes an "order" to agencies

22  "requiring them to terminate all probationary workers" and still seeks an order that would

23  (1) halt any further terminations of probationary federal employees; (2) identify the employees

24  who have been fired under this program; and (3) rescind OPM's termination directive and restore

25  certain agencies and their employees to their status prior to this order. The State thus seeks

26  additional relief from the Departments of Commerce, Education, Health and Human Services,

27  Homeland Security, and Housing and Urban Development.

28      Washington's request for a preliminary injunction should be denied on multiple grounds.

Defendants' Opposition to State of Washington's Motion for a Preliminary Injunction
3:25-cv-1780-WHA

First, it lacks standing to pursue its claims because its asserted harms to State interests are speculative, and it cannot seek injunctive relief on behalf of third-party federal employees who are not before this Court. Nor can Washington pursue claims in federal district court; instead Congress has provided the Federal Labor Relations Authority ("FLRA") and the Merit Systems Protection Board ("MSPB") as the sole administrative avenues before which challenges to federal employee terminations may be brought—if the State wants to be part of those challenges, it can participate as an amicus or intervenor in those proceedings. Washington also fails to show that OPM's challenged actions are *ultra vires* or violate the separation of powers. The State additionally fail to show that their Administrative Procedure Act ("APA") claims would succeed on the merits.

Second, Washington fails to establish that, in absence of extraordinary relief, it will suffer irreparable harm. OPM's compliance with this Court's February 27, 2025, TRO and its issuance of revised guidance eliminates Washington's ability to show ongoing harm. Likewise, the order of a district court in the District of Maryland presently requires reinstatement of probationary employees terminated as a result of the challenged OPM guidance at 18 Executive Branch agencies undermines Washington's claimed ongoing harm. And, in any event, the State's assertions of irreparable harm do not justify the award of extraordinary preliminary relief.

Third, the balance of equities and the public interest favor Defendants, as Plaintiff's requested preliminary injunction would interfere with the agencies' ability to manage, shape, and streamline the federal workforce their workforce consistent with the President's policy priorities.

Finally, if the Court is inclined to enter injunctive relief, it should be limited in scope to only to the State of Washington, rather than constitute the essentially nationwide injunction Plaintiffs seek. This Court should also require the State of Washington to post a bond for the preliminary injunctive relief that it has already been awarded and for any additional preliminary injunctive relief ordered by this Court.

At bottom, the State of Washington fails to establish any of the requirements entitling it to a preliminary injunction, and its motion should be denied; failing that, any injunctive relief should be narrowly tailored to encompass the State of Washington only.

1

**BACKGROUND**

2    **I. Statutory and Regulatory Background**

3        **A. The Civil Service Reform Act**

4        In passing the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat.

5    1111 (1978), codified in various sections of Title 5, United States Code, Congress established a

6    comprehensive framework for evaluating adverse employment actions against federal employees

7    and creating an integrated scheme of both administrative and judicial review of challenged

8    personnel practices. In so doing, Congress balanced "the legitimate interests of the various

9    categories of federal employees with the needs of sound and efficient administration." *United*

10   *States v. Fausto*, 484 U.S. 439, 445 (1988). With limited exceptions not relevant here, Congress

11   explicitly sought to reduce the participation of the federal courts, preferring the use of the

12   CSRA's grievance and appeal procedures over all other remedies.

13       In Chapter 23 of the CSRA, Congress established the principles of the merit system of

14   employment, thereby ensuring that personnel decisions involving federal civil service applicants

15   and employees are based on merit; and expressly set out the merit principles protected by the

16   Act. *See* 5 U.S.C. § 2301(b). Among other things, the CSRA forbids agencies from engaging in

17   certain "prohibited personnel practices," defined as any "personnel action" taken for an improper

18   motive by someone who has authority to take personnel actions, *id*. § 2302(a)(2)(A), and defines

19   "personnel action" to include, among other things, any other significant change in duties,

20   responsibilities, or working conditions, *see id*.

21       Congress created certain additional rights for federal government employees. *See, e.g.*,

22   5 U.S.C. § 7512 (creating, among others, additional rights concerning the removal, suspension

23   for more than 14 days, reduction in grade or pay, or furlough for 30 days or less). In creating

24   these employee rights, however, Congress chose to define an employee, for an individual in the

25   competitive service, as one "who is not serving a probationary or trial period under an initial

26   appointment; or who has completed 1 year of current continuous service," *id*. § 7511(a)(1)(A),

27   and an individual in the excepted service, as one "who is not serving a probationary or trial

28   period under an initial appointment pending conversion to the competitive service; or who has

completed 2 years of current continuous service in the same or similar positions in an Executive agency," *id*. § 7511(a)(1)(C). Apart from certain whistleblower rights not applicable here, probationary employees are thus more properly considered applicants. *Id*. § 7511(a)(1)(A). Nevertheless, many of the protections of the CSRA extend to both "applicants and employees." *E.g.*, 5 U.S.C. § 2302(a)(2)(A)(i)–(xii) (identifying "personnel action[s]" that may form the basis for alleged prohibited personnel practices "with respect to an employee in, or applicant for, a covered position in any agency[]").

As relevant here, in passing the CSRA and subsequent amendments, Congress created the MSPB, *see id*. § 1201 *et seq*. and the FLRA, *see id*. § 7101 *et seq*. More about each is set forth below.

Congress established the MSPB to, among other things, hear employee appeals of final adverse actions as set out in 5 U.S.C. § 7512. *See* 5 U.S.C. § 1204(a)(1). The MSPB may order relief to prevailing employees, including reinstatement, backpay, and attorney's fees. *See id*. §§ 1204(a)(2), 7701(g). Employees may appeal adverse MSPB decisions, depending on the claims asserted, in the Federal Circuit, another circuit court, or a district court. *See id*. § 7703(b)(1)(A); *see also* 28 U.S.C. § 1295(a)(9).

MSPB regulations set forth at 5 C.F.R. pt. 1200: (i) allow employees to proceed as a class, *see id*. § 1201.27; *see also Anselmo v. King*, 902 F. Supp. 273, 275 n.1 (D.D.C. 1995) ("The MSPB has the power to certify a class."); (ii) allow persons or organizations who want to participate in a proceeding because they believe the proceeding, or its outcome, may affect their rights or duties to intervene, *see* 5 C.F.R. § 1201.34; and (iii) allow matters to be joined or consolidated, *see id*. § 1201.36. With limited exceptions, "[i]ntervenors have the same rights and duties as parties[.]" *Id.* § 1201.34(d). Finally, the regulations allow the participation of amicus curiae. *See id.* § 1201.34(e).

Congress passed the Federal Service Labor-Management Relations Statute ("FSMLRS"), codified at 5 U.S.C. §§ 7101–35, as part of the CSRA and established the FLRA to conduct hearings and resolve complaints of unfair labor practices, *see id*. § 7105(a)(2)(G). Direct review

of the FLRA's decisions on unfair labor practice and negotiability issues is available in the courts of appeals. *See id*. § 7123(a).

FLRA regulations are set out at 5 C.F.R. pt. 2420. Among other things, the regulations allow persons or organizations who show that the outcome of the proceeding is likely to directly affect their rights or duties to intervene. *See* 5 C.F.R. § 2423.22.

## II.    Factual Background

On January 20, 2025, President Trump immediately took steps to optimize the size of the federal workforce and limit hiring to mission-critical positions. To that end, the President issued a memorandum instituting a hiring freeze of federal civilian employees, and ordering agencies to identify ways to reduce the size of the federal government. *See* The White House, Hiring Freeze at 1-2 (Jan. 20, 2025), ECF No. 111-6; *see also* Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) (clarifying terms of the hiring freeze).

The same day, OPM Acting Director Charles Ezell transmitted to Executive Branch agencies a memorandum "providing … guidance … regarding critical potential personnel actions." Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies, re: Guidance on Probationary Periods, Administrative Leave and Details at 1 (Jan. 20, 2025) ("January 20 OPM Guidance"), ECF No. 111-1. The memorandum explained that "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels." *Id.* Ezell instructed agencies to "identify all employees on probationary periods," and to "promptly determine whether those employees should be retained at the agenc[ies]." *Id.*

On February 12, 2025, OPM sent agency Chiefs of Staff an email. *See* Email from OPM to CHCO Council re: CHCO Council Special Session at 1 (Feb. 12, 2025), ECF No. 111-5. The email requested the agency Chiefs of Staff to "partner with your [agency Chief Human Capital Officer (CHCO)] to action those you know you wish to separate … using the attached template letter." *Id*. Agencies were asked to report to OPM "[w]hich probationary employees have been terminated and which [the agencies] plan to keep." *Id*.

At a call with agency Chiefs of Staff on February 13, 2025, OPM Senior Advisor Noah Peters read the text of the February 12 email as a script. *See* Decl. of Noah Peters ¶ 5, ECF No. 77.[1]

On February 14, 2025, OPM provided additional guidance to agencies through an email to the CHCO Council, an interagency forum to coordinate on federal human resources matters. *See* E-mail from OPM to CHCO Council re: CHCO Council Special Session (Feb. 14, 2025), ECF No. 111-2. OPM explained that "'[a]n appointment is not final until the probationary period is over,'" and that "'[u]ntil the probationary period has been completed,' a probationer has 'the burden to demonstrate why it is in the public interest for the Government to finalize [his] appointment to the civil service.'" *Id*. OPM advised that "[a]n employee's performance must be measured in light of the existing needs and interests of government," and that employees would have the requisite "'qualifications for continued employment'" only if they are "high[]-performing … in mission-critical areas." *Id*. at 1-2. Again, Mr. Peters at OPM used the text of that email as a script for a call with the CHCO Council the same day. *See* Peters Decl. ¶ 8.

On February 24, 2025, OPM again emailed the CHCO Council, noting that "[a]s agencies continue to make decisions on whether to retain probationary employees, OPM has received numerous questions." Email from OPM to CHCO Council re CHCO Updates (Feb. 24, 2025), ECF No. 111-4. OPM provided a frequently asked-questions document "[t]o assist agencies in carrying out their decisions[.]" *Id*.

### III. Procedural History

Plaintiffs, five employee unions and five organizations, sued on February 19, 2025, *see* Compl., ECF No. 1, and filed an amended complaint and a motion for temporary restraining order and to show cause of on February 23, 2025, *see* First Am. Compl., ECF No. 17 ("Am. Compl."); *Ex Parte* Mot. for TRO and Order to Show Cause, ECF No. 18. Plaintiffs challenge the termination of certain probationary employees. *See generally* Am. Compl. The union Plaintiffs allege that the terminations have prevented them from representing employees in

---

[1] Mr. Peters has now sat for his deposition, at which he testified under oath consistent with the representations made in his declaration.

federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions. *Id.* ¶¶ 79–80. The union Plaintiffs further allege that have had to divert resources as a result of the terminations. *Id.* ¶ 81. The non-union Plaintiffs allege that they face imminent harm as a result of anticipated reductions and delays in services, or otherwise impairment or disruption of the quality of services. *See, e.g., id.* ¶¶ 84–85, 87–88.

On February 24, 2025, this Court ordered Defendants to respond to Plaintiffs' TRO motion by February 26, 2025, and set a hearing on Plaintiffs' motion for February 27, 2025. *See* Order Setting Hearing, ECF No. 21. At the conclusion of the February 27 hearing, this Court issued an oral TRO, which it later reduced to writing. As amended, the Court held that it likely lacks subject matter jurisdiction over the union Plaintiffs' claims but had jurisdiction over the non-union Plaintiff organizations. *See AFGE v. OPM*, 2025 WL 660053, at *6–13. It also held that "OPM's January 20 memo, February 14 email, and all other efforts by OPM to direct the termination of employees … are unlawful, invalid, and must be stopped and rescinded." *Id.* at *14. The Court ordered OPM to provide written notice of its order to the Bureau of Land Management ("BLM"), Department of Defense; Fish and Wildlife Service ("FWS"), National Park Service ("NPS"), Small Business Administration ("SBA"), and Veterans Administration ("VA"). *See id.*

In accord with the TRO, the government provided notice of this Court's order to Defense on February 27, 2025; OPM provided notice of this Court's order to BLM, NPS, SBA, and the VA on February 28, 2025, and provided notice to DOD and the FWS on March 3, 2025. *See* Decl. of Yuri S. Fuchs ¶ 4, ECF No. 76. Also on March 4, 2025, OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." Revised OPM Guidance at 2.

On March 11, 2025, Plaintiffs filed a Second Amended Complaint ("SAC"), adding additional Plaintiffs, including the State of Washington, and some 43 additional defendants,

including the Departments of Agriculture; Commerce; Defense; Education; Energy; Health and

Human Services; Homeland Security; HUD; the Interior; Justice; Labor; State; the Treasury;

Transportation; and VA; the Environmental Protection Agency ("EPA"); General Services

Administration ("GSA"); Office of Management and Budget ("OMB"); National Aeronautics

and Space Administration ("NASA"); National Science Foundation ("NSF"); "SBA; and Social

Security Administration ("SSA"). *See* Second Am. Compl. ¶¶ 34–76, ECF No. 90 ("SAC").

Plaintiffs allege that OPM's original guidance directed each of these agencies to terminate

certain probationary employees. *See id.* ¶¶ 105–24. They allege that these terminations violate:

(i) the separation of power and is *ultra vires*; (ii) the APA because it is contrary to law and

exceeds statutory authority; (iii) the APA because it is arbitrary and capricious; and (iv) the APA

because OPM did not engage in notice and comment rulemaking. *See id.* ¶¶ 190–229 (Claims I –

V). Plaintiffs seek declaratory and injunctive relief, including an order setting aside OPM's

alleged order as unlawful, requiring OPM and others acting in concert with the agency to cease

terminating probationary employees, and requiring OPM to rescind prior terminations of

probationary employees. *See id.* at 55–56, Prayer for Relief.

On March 13, 2025, this Court granted a preliminary injunction to the organizational

Plaintiffs that extended the relief provided in its TRO and ordered the Departments of

Agriculture, Defense, Energy; the Interior, the Treasury, and Veterans Affairs to cease

terminating probationary employees based on OPM's initial guidance and to reinstate

probationary employees that they had terminated as a result of OPM's initial guidance. *See* Tr. of

Mar. 13, 2025, Hrg. at 52:6 – 53:25, ECF No. 120; Mem. at 14, ECF No. 132. The Court held

that the relief was without prejudice to extending the relief later in the future to other agencies

and without prejudice to shrinking the relief in the future upon a proper showing. *See* Tr. of

March, 13, 2025, Hrg. at 54:1-3.

The Court also directed supplemental briefing on whether the MSPB and FLRA remained

"effective channel[s]" for federal employees to litigate their terminations. *Id.* 54:23–56:9. At the

conclusion of that brief, the Court reversed its previous conclusion and held that it had subject

matter jurisdiction over the union Plaintiffs' claims, *see* Order re Subject-Matter Jurisdiction at

11, ECF No. 153, and ordered the parties to file supplemental briefs on what, if any, additional relief should be provided to the Court, *see* Order to Show Cause, ECF No. 154. A ruling on that briefing is pending.

This Court also directed the Plaintiff State of Washington to file a motion for a preliminary injunction by March 26, 2025, if it sought such relief. *See* Notice of Briefing Schedules, ECF No. 152. The State of Washington filed that motion on March 26, 2025. *See* Pl. State of Washington's Mot. for Prelim. Inj.; Mem. in Supp., ECF No. 156 ("Wash. Mem.").

**STANDARD OF REVIEW**

Fed. R. Civ. P. 65 empowers district courts to issue a preliminary injunction. *See* Fed. R. Civ. P. 65(b). A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court should not "mechanically" grant an injunction for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead, plaintiffs must establish that (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at 20. The mere "possibility" of irreparable harm is insufficient; instead, the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Id*. at 22.

**ARGUMENT**

The State of Washington asks for a preliminary injunction on the theory that OPM's actions are causing it irreparable harm based on the downstream effects of Defendants' terminations or potential terminations of probationary employees. But Washington fails to meet its burden of demonstrating that it is entitled to extraordinary relief. First, the State cannot show a likelihood of success on the merits because it fails to establish standing, fails to show that the district court has subject matter jurisdiction over its claims, cannot pursue *ultra vires* claims, and cannot show that the APA supplies Washington with a cause of action. Second, Washington fails to demonstrate that its claimed injuries constitute irreparable harm. Third, the State fails to show

that the balance of harms tips in its favor or that the public interest weighs in favor of preliminary relief. This Court should accordingly deny Plaintiff's motion.

## I.   The State of Washington Cannot Show a Likelihood of Success on the Merits of its Claims.

The State of Washington cannot establish likelihood of success on the merits for at least three reasons: it lacks standing; its claims are statutorily channeled away from district-court review; and it cannot pursue *ultra vires* claims, and the APA does not supply a cause of action for the State to pursue it claims.

### A.   Washington State Lacks Standing to Pursue Its Claims

Washington State lacks standing because its claimed injuries are far too speculative to satisfy Article III's standing elements, and this Court does not have the power to redress the State's claimed injuries.

To establish standing, a plaintiff must show: (i) an "injury in fact[,]" that is, a violation of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly . . . traceable to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). As the party invoking federal jurisdiction, Plaintiffs "bear[] the burden of establishing these elements," and therefore "must clearly . . . allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted).

To establish injury in fact, a plaintiff must show that the defendant's action affects him or her in a "personal and individual way," *Lujan*, 504 U.S. at 560 n.1, rather than being a "generalized grievance," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). A plaintiff must show more than a "possible future injury"; he or she must show that harm has actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (citation omitted). And "threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient." *Clapper v.*

*Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). In addition, "standing is not dispensed in gross," and "'plaintiffs must demonstrate standing for each claim they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

### 1.  The State of Washington Fails to Demonstrate a Legally Cognizable Injury

The State of Washington fails to show injury in fact. Its claims of injury, as cited in the Second Amended Complaint and in its supporting declarations, derive from a chain of unsupported and conclusory inferences that the termination of probationary employees will somehow lead to "reductions and delays in services provided by numerous federal agencies," "disrupt[] the availability and quality of crucial medical and mental health services," and "increase" "the State's workload and costs." SAC ¶ 166; *see also, e.g.*, Decl. of Heather Bartlet, ECF No. 70-2; Decl. of Shane Esquibel, ECF No. 70-7. It claims harms from terminations at seven agencies—the Bureau of Reclamation, the Department of Housing and Urban Development, Federal Emergency Management Agency, the Fish and Wildlife Service, the National Oceanic and Atmospheric Administration, the National Parks Service, and the U.S. Forest Service. *See* Wash. Mem. at 4, 7.

The Supreme Court has expressly held that indirect injuries are insufficient to create standing for a state to sue. In *United States v. Texas*, 599 U.S. 670, 674 (2023), several states sued the federal government to challenge an immigration policy that the states asserted would "impose[] costs" on them by forcing them to "supply social services such as healthcare and education" to persons it otherwise would not. 599 U.S. at 674. The Court held that the states lacked standing. *See id.* at 676–81. The Court held that, for standing purposes, the "absence of coercive power" of a challenged federal government action "makes a difference." *Id.* at 678. The Court explained that "in our system of dual federal and state sovereignty, federal policies frequently generate indirect effects on state revenues or state spending." *Id.* at 680 n.3. "And when a State asserts, for example, that a federal law has produced only those kinds of indirect effects, the State's claim for standing can become more attenuated." *Id.* (citing *Massachusetts v. Laird*, 400 U.S. 886 (1970); *Florida v. Mellon*, 273 U.S. 12, 16–18 (1927)). As a result, "none of

the various theories of standing asserted by the States in this case overcomes the fundamental

Article III problem with this lawsuit." *Id.*

Following *United States v. Texas*, the Ninth Circuit has also held that a state's asserted interest in minimizing its expenditures was not a legally cognizable injury sufficient to establish intervention in a lawsuit, which is a not a higher threshold than the burden of establishing standing. *See E. Bay Sanctuary Covenant v. Biden*, 102 F.4th 996, 1002 (9th Cir. 2024), *cert. denied sub nom. Kansas v. Mayorkas*, 145 S. Ct. 415 (2024). In *East Bay Sanctuary Covenant*, the court held that the state's asserted economic interests were "attenuated and speculative." 102 F.4th at 1002.

Washington's claim that the termination of probationary employees means that its work and costs will change does not suffice to establish standing. As a preliminary matter, although Washington references numerous federal agencies with which it collaborates, *see* SAC ¶ 164, it makes no allegation of harm from the termination of employees from the Departments of Agriculture, Defense, Education, Energy, Health and Human Services, Justice, Labor, State, Transportation, the Treasury, EPA, GSA, the OMB, NASA, the NSF, SBA, or SSA, *see* SAC ¶¶ 164–66. It thus fails to "demonstrate standing for each claim [it] press[es] against each defendant, and for each form of relief that [it] seek[s]," *Murthy*, 603 U.S. at 61 (internal quotations omitted), and its claims against these defendants must therefore be dismissed.

Instead, in the Second Amended Complaint, the State alleges harm arising from the termination of probationary employees at two federal agencies—the National Park Service and the VA. *See* SAC ¶ 166. But Washington's claimed harm from the termination of employees at those two agencies are exactly the kinds of general reductions and delays in federal services that the Supreme Court held were insufficient to establish standing. *See Texas*, 599 U.S. at 680 & n.3. Quite simply, any assumption that Washington will suffer harm from the removal of probationary employees is too conclusory, attenuated, and speculative for the State to establish standing. *See E. Bay Sanctuary Covenant*, 102 F.4th at 1002; *Johnson v. United States*, 402 F. App'x 298, 300 (9th Cir. 2010) (affirming denial of injunctive relief because plaintiffs' "conclusory and unsubstantiated allegations are insufficient to meet their burden of showing that

there were no circumstances under which the government could prevail or that they would suffer irreparable harm absent injunctive relief"). And while the State refers to declarations in its briefing that offer more examples of agencies where the termination of probationary employees will affect Washington, those assertions are also ones based on a theory of general reductions and delays in federal service. *See* Esquibel Decl. ¶ 3 (citing "harm as a result of the reductions and delays in services provided by numerous federal agencies").

To the extent that the State of Washington is alleging harm on behalf of the veteran who lost his VA nurse, *see* SAC ¶ 166 n.55, the Supreme Court has long foreclosed states from suing the federal government in *parens patriae* actions to protect their citizens, *see, e.g.*, *Massachusetts v. Mellon*, 262 U.S. 447, 485-486 (1923) ("[I]t is not part of [a state's] duty or power to enforce [its people's] rights in respect of their relations with the federal government."); *see also Murthy*, 603 U.S. at 76 ("States do not have standing as *parens patriae* to bring an action against the Federal Government." (internal quotation marks and citation omitted)). The veteran referenced in the cited article is not a party to this case, and the State makes no claim that it is advocating on his behalf. Invoking that lone example does nothing to help Washington establish standing as a state.

Indeed, the only specified claim of harm to the State specifically alleged in the Second Amended Complaint is to the "North of Falcon" salmon harvest agreements between the federal government, Washington, Oregon, and various federally-recognized tribes in the Pacific Northwest. *See* SAC ¶ 166. But Washington makes no allegation in its Second Amended Complaint that those negotiations depend on or involve probationary employees, or even that any terminated probationary employees or this case relate to the future salmon agreements or the regulation of fishing. *See id.* ¶ 36 ("Commerce's component sub-agencies include the National Oceanic and Atmospheric Administration ('NOAA')"); *id.* ¶ 166 ("expect[ing]" future NOAA "review" and "cover[age]" of the salmon harvest agreements, claiming "[a]ny NOAA delay would wreak havoc on the fishing communities, both commercial and recreational"). At most, Washington notes a declaration from a probationary employee, claiming that as a result of her termination "millions of salmon will not be released in 2025," Decl. of Krista Finlay ¶ 7, ECF

No. 70-9, but this declaration fails to specify, beyond a conclusory assertion, why her termination exactly will impact salmon harvest agreements and why Washington or another non-probationary employee cannot perform this work. Beyond speculating, Washington thus fails to plead a plausible connection alleged between the probationary employees and the North of Falcon process. *See* Wash. Mem. at 6-7 ("[T]erminations at NOAA *could* … jeopardize the … North of Falcon Fisheries process[.]") (emphasis added). And the contents of the declaration provided by Washington are too conclusory and speculative to establish standing. *See Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) (finding that a "conclusory statement from counsel hardly qualified as evidence and certainly did not link the TRO application to [the defendant]"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction).[2]

Moreover, by relying on declarations submitted elsewhere, Washington's preliminary injunction motion improperly attempts to augment the allegations in the Second Amended Complaint with additional claims of harm. *See* Wash. Mem. at 7-8. Courts have repeatedly denied preliminary injunction motions based on allegations and claims for relief that are removed from the underlying complaint. *See, e.g., Allen v. Reid*, No. 15-cv-1905, 2016 WL 3136859, at *4 (D. Minn. June 3, 2016) ("[T]o the extent that [plaintiff] seeks injunctive relief for alleged mistreatment and retaliation that are unrelated to the claims in his Amended Complaint, he is not entitled to such relief."); *Clark v. Bank of Am. N.A.*, No. 14-cv-232, 2015

---

[2] Washington's memorandum and declarations in support of its injunctive request further reveal the conjectural nature of its perceived harm regarding NOAA. *See* Decl. of Kelly Cunningham ¶ 5, ECF No. 70-5 (expressing fears of NOAA "delays" that "would" prevent timely state agency work); *id.* ("Any reduction in NOAA staffing could" affect timely review); *id.* ¶ 6 (claiming harm from "potential[]" "impacts" on fish, being "susceptible to citizens lawsuits," and "potential exposure and liability"); *id.* ¶ 7 ("Any cuts in NOAA's staff … threatens [sic] to undermine" compliance efforts); *id.* ¶ 8 (fearing impact on "negotiations that are now beginning for the 2029 update" to salmon agreement). Its conditional claims of harm are too equivocal to demonstrate an injury in fact. *See Chamber of Com. of U.S. v. EPA*, 642 F.3d 192, 201 (D.C. Cir. 2011) (faulting declarations that stated merely that harm "could" or "may" occur).

WL 1433834, at *8 (D. Idaho Mar. 27, 2015); *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or. Oct. 4, 2010). This Court should do so here.

But even if this Court were to entertain Washington's additional claims of harm in determining whether it has standing, they are insufficient to demonstrate a cognizable injury in fact. The State's view that it is unable to effectively govern without its preferred number of federal employees that are ready and willing to assist the state cannot establish standing. *See Texas*, 599 U.S. at 680 n.3.

Finally, Washington concludes its memorandum by invoking the "examples of harms that have affected other Plaintiffs," claiming that they "would similarly affect the state of Washington." Wash. Mem. at 8. Such a sweeping and conclusory argument cannot suffice for establishing the imminent harm supposedly suffered by Washington. *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) ("bare assertions" and "conclusory" allegations are "not entitled to be assumed true").

### 2.    Washington Lacks Standing to Pursue Its Claim of a Procedural Injury

Washington lacks standing to pursue its procedural injury claim. As a preliminary matter, the State asserts that that it has been deprived of a right to comment on a notice of proposed reductions-in force ("RIFs"). *See* Wash. Mem. at 10–11. But the Second Amended Complaint includes no such allegations. *See generally* SAC. Courts have repeatedly denied preliminary injunction motions based on allegations and claims for relief that differ from the underlying complaint. *See, e.g., Allen v. Reid*, No. 15-cv-1905, 2016 WL 3136859, at *4 (D. Minn. June 3, 2016) ("[T]o the extent that [plaintiff] seeks injunctive relief for alleged mistreatment and retaliation that are unrelated to the claims in his Amended Complaint, he is not entitled to such relief."); *Clark v. Bank of Am. N.A.*, No. 14-cv-232, 2015 WL 1433834, at *8 (D. Idaho Mar. 27, 2015); *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or. Oct. 4, 2010). This Court should do so here as to this theory.

Additionally, Washington lacks standing to pursue such a claim. It fails to make any showing, beyond its own say so, that the termination of probationary employees thus far was carried out pursuant to a RIF. Likewise, the State fails to make any showing that, when RIF

notices are issued, they will be denied the opportunity to comment then. Its procedural injury claim arising from an alleged deprivation of any right to comment on future RIFs thus is too speculative to support standing. *Accord Clapper*, 568 U.S. at 409.

### 3. Washington State Fails to Establish That This Court Can Likely Redress Its Claimed Injuries

To the extent that Washington could have been entitled to any redress, this Court has already provided it by issuing its February 27, 2025, TRO. *See AFGE v. OPM*, 2025 WL 660053, at *14. In that order, the Court clarified that OPM has no power to direct personnel actions at the agencies and that agencies had the opportunity to rescind terminations if they acted based on confusion about OPM's authority. *See id*. at *4-6, *14. Indeed, OPM complied with the court's order and, further, issued clarifying guidance that "[a]gencies have ultimate decision-making authority over, and responsibility for," performance-based personnel actions against probationary employees. Revised OPM Guidance at 2.

Any confusion was therefore cleared up, and agencies were left to make their own politically accountable decisions. At least two agencies rescinded some or all probationary employees' terminations after OPM's clarification. *See* SAC ¶ 142 (NSF); *see also* Decl. of Sydney Rose, *Maryland v. U.S. Dep't of Agric*., No. 1:25-cv-748 (D. Md. Mar. 17, 2025), ECF No. 52-1 at 37-39 (Labor), attached as Ex. 1. Most did not. *See, e.g.*, Decl. of Mark Green ¶¶ 7-9, ECF No. 127-3 (Interior). That most agencies did not rescind their termination is to be expected—the President directed agencies to optimize the federal workforce, and agencies may and should make employment decisions against the backdrop of that policy choice. *See* Exec. Order No. 14,210, § 3. And it illustrates both that any perceived direction from OPM can no longer be found to be the cause of Plaintiff's asserted injury, and that any appropriate remedial order is limited to clarifying OPM's role rather than reversing terminations that the agencies would have made had OPM's initial guidance been even clearer about OPM's limited authority and the agencies' ultimate discretion.

However, to the extent Washington seeks additional relief, its claims of redressability are too attenuated to establish standing. First, this Court has correctly recognized that "[e]ach agency

had (and still has) discretion to hire and fire its *own* employees." March 13, 2025, Mem. at 13; *see also* U.S. Dep't of Def., Probationary Workforce Statement (Feb. 21, 2025), https://www.defense.gov/News/Releases/Release/article/4074278/dod-probationary-workforce-statement/ (explaining that a "reevaluation of probationary employees is being done across government" and that the Department "believe[s] in the goals of the program" and reiterating its Secretary's view that "it is simply not in the public interest to retain individuals whose contributions are not mission-critical"). In other words, even without OPM's involvement, agencies could have (and, as discussed below, would have) carried out the terminations to effectuate the President's priorities about Executive Branch staffing, and could (absent the injunction) choose to re-terminate the probationary employees at any time. In short, the redress Washington State seeks is plainly not one "traditionally thought to be capable of resolution through the judicial process[.]" *Texas*, 599 U.S. at 676 (citation omitted).

Washington also fails to establish that its claimed injuries are redressable because the APA does not authorize a federal district court to order the reinstatement of terminated probationary employees. The APA authorizes a court to grant injunctive relief subject to traditional equitable limitations. *See id*. § 702(1). Absent express statutory authority, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc*., 527 U.S. 308, 319 (1999).

Quite simply, reinstatement is not an available equitable remedy. *See Sampson v. Murray*, 415 U.S. 61, 83 (1974). Rather, courts lack "the power … to restrain by injunction the removal of a [public] officer[.]" *In re Sawyer*, 124 U.S. 200, 212 (1888); *see also, e.g., Baker v. Carr*, 369 U.S. 186, 231 (1962) ("federal equity power could not be exercised to enjoin a state proceeding to remove a public officer" to "stay[] removal of a federal officer"); *Walton v. House of Reps of State of Okla..*, 265 U.S. 487, 490 (1924) ("A court of equity has no jurisdiction over the appointment and removal of public officers."); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898) ("[T]o sustain a bill in equity to restrain … the removal of public officers, is to invade … the executive and administrative department of the government."); *White v. Berry*, 171 U.S. 366, 377 (1898) ("[A] court of equity will not, by injunction, restrain an executive officer from making a

1    wrongful removal of a subordinate appointee, nor restrain the appointment of another.") (citation

2    omitted).

3            Instead, the creation of new remedies, such as reinstatement, is "a legislative endeavor."

4    *Egbert v. Boule*, 596 U.S. 482, 491 (2022). In passing the CSRA, Congress established a

5    comprehensive framework for evaluating adverse employment actions against federal employees

6    and presenting an integrated scheme of both administrative and judicial review of challenged

7    personnel practices of challenged personnel practices. Congress authorized MSPB to award

8    "reinstatement," as well as "backpay" to prevailing employees, and it has authorized review of

9    the MSPB's decision in the Federal Circuit. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 6 (2012)

10   (citing 5 U.S.C. §§ 1204(a)(2), 7701(g), and 7703(b)(1)); 5 U.S.C. § 1214(g)). Congress did not

11   give the power to order reinstatement to federal district courts. Absent that power, Plaintiffs

12   cannot show that an order of this Court would likely remedy their claimed injuries.

13   **B. Washington State's Claims Are Moot**

14           OPM's compliance with this Court's orders and its issuance of revised guidance

15   clarifying that agencies retain the discretion to hire, retain, and terminate employees render this

16   case moot. A case becomes moot if "'changes in the circumstances that prevailed at the

17   beginning of litigation have forestalled any occasion for meaningful relief.'" *Gator.com Corp. v.

18   L.L. Bean, Inc*., 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). Where a plaintiff seeks injunctive

19   relief, a case "is normally moot upon the termination of the conduct at issue" unless "there is a

20   likelihood of recurrence." *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004). Such a

21   case is "no longer a 'Case' or 'Controversy' for purposes of Article III[,]" "[n]o matter how

22   vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the

23   lawsuit[.]" *Already, LLC v. Nike, Inc*., 568 U.S. 85, 91 (2013).

24           As noted above, in response to this Court's February 27, 2025, TRO, and its March 13,

25   2025, Preliminary Injunction, the government has notified all defendant agencies and all

26   terminated probationary employees of this Court's holding. OPM also issued revised guidance

27   clarifying that "OPM is not directing agencies to take any specific performance-based actions

28   regarding probationary employees[,]" and further clarifying that "[a]gencies have ultimate

decision-making authority over, and responsibility for, such personnel actions." Revised OPM
Guidance at 2. OPM's revised guidance and subsequent agency reinstatements or decisions not
to reinstate employees render this case moot. This Court should "presume the government is
acting in good faith" when it makes declarations of this type. *America Cargo Transp., Inc. v.
United States*, 625 F.3d 1176, 1180 (9th Cir. 2010). The circumstances here fully warrant that
presumption.[3]

**C.  The CSRA Provides the Exclusive Remedy for the State of Washington's Claims**

In passing the CSRA, Congress made administrative agencies including the MSPB the
exclusive means for federal employees, applicants, labor unions and other interested parties to
raise challenges to final, non-discrimination-related, adverse employment actions. *See Fausto*,
484 U.S. at 455, even when those disputes involve constitutional claims, *see Elgin*, 567 U.S. at
10–15 (citation omitted).

In *Fausto*, the Supreme Court held that the CSRA precluded review of a Fish and
Wildlife Service employee's claim for back pay even though the CSRA provided no remedy. *See*
484 U.S. at 440-41. At issue was the termination of a "non-preference" federal employee who
had appealed his termination to the MSPB. *See id.* at 441–42. The MSPB dismissed his appeal
on the grounds that he had no appeal rights. *See id.* The Court found that the CSRA afforded no
administrative or judicial review for adverse employment actions in the plaintiff's class and thus
gave the employee no remedy. *See id.* at 448–49. The Court nevertheless held that, because
Congress established the CSRA as a comprehensive scheme covering all matters involving
federal employment, its omission of remedies for such employees constituted a congressional
judgment that review should not be available. *See id.* at 455.

Likewise in *Elgin*, the Supreme Court reaffirmed *Fausto* and held that, even if a federal
employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district

---

[3] OPM issued the revised guidance before Washington joined this case with the filing of
the second amended complaint on March 11. Accordingly, as to the State of Washington, the
issue may not be one of mootness but rather lack of standing—that is, the alleged unlawful
conduct had ceased before Washington even filed suit. Under either analysis, the result is that
this Court lacks jurisdiction over Washington's claims.

court jurisdiction[.]" 567 U.S. at 12. The CSRA thus precludes "precludes courts from providing supplemental remedies[.]" *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018); *see also Arron v. United States*, 113 F.3d 1245 (10th Cir. 1997) (expressly applying the CSRA's exclusive remedial scheme to a probationary employee challenging his termination); *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510-11 (9th Cir. 1984).

Nor can Washington avoid the CSRA's exclusive scheme by insisting that Congress did not provide states an opportunity to challenge federal employees' terminations. In authorizing challenges to employment decisions only by unions, employees, and applicants for employment, Congress deliberately denied review to anyone else. *See Block v. Community Nutrition Inst.*, 467 U.S. 340 (1984). Indeed, if Congress had wanted to authorize review by other parties who suffer downstream economic loss when a federal employee is terminated—his state of residence, his spouse, his creditors, etc.—it could easily have done so. The states thus plainly fall within a "class" of parties consciously denied the opportunity to seek direct review of federal employees' terminations. States, like Washington, though can use these administrative channels as MSPB regulations would permit Plaintiff to come as an intervenor or amicus curiae in MSPB proceedings. *See* 5 C.F.R. § 1201.34(d)-(e).

### D. The Supreme Court's *Thunder Basin* Jurisprudence Does Not Change This Conclusion

The Supreme Court's recent decision in *Axon Enterprises, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), affirms that channeling is necessary here. While the Court found that the considerations set out in *Thunder Basin* did not preclude federal district court review of agency action, despite available administrative channels, it only did so based on the fact the challenges before it were constitutional challenges where the parties alleged they were "subject[] to an illegitimate proceeding, led by an illegitimate decisionmaker." 598 U.S. at 191. By contrast, Washington's claims here are chiefly APA claims and do not challenge the ability of

the MSPB to adjudicate its claims. *See generally* SAC. The State's claims thus fit comfortably within the *Thunder Basin* factors because the State's claims are channeled to the "special review provisions … [that] give the agency [the MSPB] a heightened role in the matters it customarily handles, and can apply distinctive knowledge to." *Axon Enters.*, 598 U.S. at 186.

**E.   Washington's *Ultra Vires* and Separation of Powers Claims Lack Merit**

Plaintiff's *ultra vires* and separation of powers claims lack merit. Plaintiff asserts that certain probationary removals are *ultra vires* because OPM has no constitutional or statutory authority to undertake such terminations. *See* Wash. Mem. at 12-13. It also asserts that the challenged actions violate the separation of powers. *See id*. Neither assertion has merit.

Courts have recognized that an equitable cause of action for *ultra vires* review may be available in rare instances where, because Congress has failed to provide a cause of action, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also Leedom v. Kyne*, 358 U.S. 184, 189 (1958). However, the Supreme Court has expressly held that an *ultra vires* cause of action is not available whenever there is another "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny … District Court jurisdiction[.]" *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc*., 502 U.S. 32, 43–44 (1991); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327-28 (2015).

*Ultra vires* review is unavailable here. As a preliminary matter, when a plaintiff invokes both the APA and *ultra vires* causes of action, a court should first consider the plaintiff's APA claim. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996). Here Washington brings far more APA claims than it does constitutional claims, all challenging the same OPM guidance (which has since been revised). *See* SAC ¶¶ 202–29. That should be the end of Washington's *ultra vires* claim.

Moreover, the CSRA establishes exclusive procedures for review of employment claims and labor disputes against the federal government. *See, e.g., Elgin*, 567 U.S. at 10. This alone

precludes courts from providing supplemental remedies, including through *ultra vires* review. And second, the exclusive review procedures of the CSRA will provide Washington with a meaningful and adequate opportunity for judicial review of their claims. *See id*. at 21 (finding "constitutional claims can receive meaningful review within the CSRA scheme"). Thus, there is no basis for this Court to entertain Plaintiff's claim for non-statutory *ultra vires* review in this case.

Even if Washington could surmount those problems, its *ultra vires* claim would still fail. To prevail on an *ultra vires* claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *accord Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir. 2002) (noting that *ultra vires* action must involve "a plain violation of an unambiguous and mandatory provision of the statute" that "is of a summa or magna quality") (citation omitted). Mere allegations of constitutional error do not establish *ultra vires* action. *See Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 68 n.6 (D.D.C. 2019) (Jackson, J.), *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ("[A] constitutional claim is separate from an *ultra vires* claim."). Neither do claims that "simply involve a dispute over statutory interpretation." *Lundeen*, 291 F.3d at 312 (quoting *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997)). Rather, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984) (citation omitted); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege that official is "not doing the business which the sovereign has empowered him to do"). This is a "very stringent standard," rendering *ultra vires* claims "essentially a Hail Mary pass" that "in court as in football, … rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).

Indeed, "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims[.]" *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id*. at 471.

Rather, the Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. In reaching this conclusion, the Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in excess of his statutory authority." *Id.* (collecting cases). It explained that the Constitution is implicated only if executive officers rely on it as an independent source of authority to act or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5.

Here, Washington has not suggested that either OPM's regulations or its statutory authority for promulgating these regulations are themselves unconstitutional and has not suggested that those regulations directly prohibit OPM's guidance. *Dalton*'s reasoning thus applies here and refutes the State's argument that it is likely to succeed on their separation-of-powers claim. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51-54 (D.D.C. 2020) (rejecting separation-of-powers claim based on Appropriations Clause under *Dalton* because "[a]t bottom, this is just an allegation that [executive officials] exceeded their statutory authority"). This case thus concerns "simply" whether Defendants have "exceeded [their] statutory authority" and "no constitutional question whatever is raised"—"only issues of statutory interpretation." *Dalton*, 511 U.S. at 473-74 & n.6 (citation omitted).

Washington cannot meet the high bar to pursue its *ultra vires* or its separation of powers claim because OPM's revised guidance does not violate any clear statutory restriction on OPM's authority and instead constitutes a lawful exercise of its well-established constitutional and statutory authority, acting under the direction of the President and Congress, to regulate the federal workforce. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3). That power includes "general administrative control of those executing the laws." *Id.* at 214 (quoting *Myers v. United States*, 272 U.S. 52, 163–64 (1926)). Accordingly, absent congressional action purporting to limit his authority, the President has inherent constitutional authority under Article II to act as chief executive officer of the Executive Branch, determining

how best to manage the Executive Branch, including whom to hire and remove, what conditions

to place on continued employment, and what processes to employ in making these

determinations. Indeed, Executive Order 14,210 expressly instructed agencies to comply with

existing law. *See* Exec. Order No. 14,210, *supra*. Likewise, OPM was acting within its authority

under the CSRA to revise its guidance to clarify how agencies should carry out the President's

directive while still exercising their own authority to hire, retain, and terminate employees. *See,*

*e.g.*, 5 U.S.C. § 1103(a)(7), (c)(2)(A)(i). Washington may assert that OPM's actions constitute a

constitutional violation but, even at the beginning of this case, this was simply a dispute about

whether OPM has exceed its statutory authority. The State's *ultra vires* and separation of powers

claim thus fail.

### F.  Washington's APA Claims are Unlikely to Succeed

Washington cannot maintain its APA claims because the CSRA provides the exclusive

remedy for federal employment claims, *see Fausto*, 484 U.S at 455; *see also Fed. L. Enf't Offs.*

*Ass'n* 62 F.4th 551, 557–67 (D.C. Cir. 2023) ("*FLEOA*"); *Fornaro v. James*, 416 F.3d 63, 66–69

(D.C. Cir. 2005), and because the APA does not supply a cause of action for their claims. The

APA only authorizes judicial review of "final agency action for which *there is no other adequate*

*remedy in a court.*" 5 U.S.C. § 704 (emphasis added); *see also U.S. Army Corps of Eng'rs v.*

*Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016) ("Even if final, an agency action is reviewable under

the APA only if there are no adequate alternatives to APA review in court"). If a plaintiff has an

adequate legal remedy, the APA does not provide a cause of action. *See, e.g., Dresser v. Meba*

*Med. & Benefits Plan*, 628 F.3d 705, 709 (5th Cir. 2010) (affirming the dismissal of APA claim

because plaintiff had an adequate remedy). In this case, Washington has an adequate remedy

because it can proceed as an intervenor before the MSPB and the FLRA. The APA thus does not

supply a cause of action for the State to maintain its claims.

Finally, even if Plaintiff had standing to pursue its notice and comment claim, the CSRA

also precludes district court review of that claim as well. *See FLEOA*, 62 F.4th at 562–63.

Plaintiff's APA claims are thus likely to fail.

1

**II. The State of Washington Cannot Show Irreparable Harm Absent a Preliminary Injunction**

2

3
     The State of Washington fails to establish that, absent a preliminary injunction, it will suffer irreparable harm.

4

5
     **A. OPM's Compliance with this Court's Orders and its Revised Guidance Precludes Any Additional Award of Preliminary Injunctive Relief**

6
     OPM's compliance with this Court's orders and its revised guidance precludes any

7
additional award of preliminary injunctive relief under well-settled principles of equitable

8
discretion. Even if cessation of conduct does not moot a case, a plaintiff must still bear the

9
burden of demonstrating that equitable relief is warranted, a showing that requires "more than

10
the mere possibility" of recurrence "which serves to keep the case alive." *United States v. W.T.*

11
*Grant Co.*, 345 U.S. 629, 633 (1953); *see also TRW, Inc. v. FTC*, 647 F.2d 942, 954 (9th Cir.

12
1981) (discussing difference between standards and burdens of proof). To obtain equitable relief,

13
a plaintiff must establish a "likelihood of substantial and immediate irreparable injury." *City of*

14
*Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502

15
(1974)). That "requirement . . . cannot be met where there is no showing of any real or

16
immediate threat that the plaintiff will be wronged again[.]" *Id*. And here the Second Amended

17
Complaint makes no allegations that any further relief is necessary given the Court's TRO order

18
and the additional OPM guidance. *See generally* SAC. In fact, while the State might argue that it

19
still faces the threat of future harm because agencies could still believe that they are bound by

20
OPM's guidance to terminate probationary employees, the new allegations in the Second

21
Amended Complaint show that agencies are, in fact, reinstating previously terminated

22
probationary employees. *See id*. ¶ 142 (noting the reinstatement of previously terminated

23
employees by NSF). Moreover, the previously issued FAQs already clarified to agencies that

24
they are to use their own judgment in evaluating a probationary employee's performance

25
"through the current needs and best interest of the government, in light of the President's

26
directive to dramatically reduce the size of the federal workforce." FAQs on Probationary

27
Periods at 1, Attachment C, ECF No. 37-2.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.  Separate Injunctive Relief Issued in *State of Maryland v. U.S. Department of Agriculture* Precludes Any Additional Award of Relief**

Apart from OPM's compliance with this Court's orders, another fact precludes a further award of preliminary injunctive relief. Namely, the nationwide relief issued in a separate litigation, *State of Maryland v. U.S. Department of Agriculture*, No. 1:25-cv-748 (D. Md.) ("*Maryland v. USDA*"), highlights that no further relief is necessary. There, the Court issued a temporary restraining order that stayed the probationary termination of employees at 18 agencies that largely overlap with the agency defendants named in this litigation. *See* Mar. 13, 2025, TRO at 1-2, *Maryland v. USDA*, *supra*, (Mar. 13, 2025), ECF No. 44. And this relief was further extended by that court on March 26, 2025. *See* Mem. & Order at 2, *Maryland v. USDA*, *supra*, (Mar. 26, 2025), ECF No. 115. Thus, for the time being, much of State of Washington's harm is being remedied and no further preliminary injunctive relief before this Court is necessary. *See* Order Denying Motion to Stay TRO Pending Appeal, *Maryland v. USDA*, No. 25-1248, (4th Cir. Mar. 21, 2025), ECF No. 20.

**C.  The State of Washington Cannot Rely on Legally Insufficient Assertions of Harm**

The State of Washington has not shown that it suffers harms that are legally sufficient to warrant preliminary injunctive relief.

First, Washington claims irreparable harm based on the supposedly impending loss of critical government services. *See* Wash. Mem. at 13-14. This claim is far too speculative to support a finding of irreparable harm. *See Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1133 (9th Cir. 2014) (plaintiff "must establish a likelihood of irreparable harm that is grounded in evidence, not in conclusory or speculative allegations of harm."); *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."). Indeed, the State has produced no credible evidence that terminations of federal employees have caused a disruption in critical government services that affects it; nor has it established a right to receive such services. While Washington cites to declarations and prior materials in support of this harm, *see* Wash. Mem. at 13-14, a review of those materials show that the State's theories of harm are generalized, insufficiently imminent, and are often not particularized to the State of Washington. *See Caribbean Marine Servs.*, 844 F.2d at 674

(requiring an "immediate threatened injury" for preliminary injunctive relief). For instance, while the State cites to various declarations for the premise that "Washington, along with conservation groups and others, document widespread impairment to services provided to the public and fragile ecosystems in national parks and other public lands[,]" Wash. Mem. at 13, many of the cited declarations do not actually allege harms to *the State of Washington, see, e.g.,* ECF Nos. 18-11, 18-13, 18-15, 39-2, 39-3. For instance, Washington cites to declarations regarding the strain of "VA Services" and the impact to flight attendants as a result of probationary terminations, these declarations do not mention any harms specific to the State of Washington. And even those relate specifically to the State often have vague allegations of unspecified future harm, *see, e.g.*, Decl. of Jennifer Hennessy ¶ 35, ECF No. 70-11 (claiming that cuts in employees will, at some unspecified time in the future, make it difficult for Washington agency officials to plan for their own projects).

Second, Washington claims irreparable harm based on the alleged knock-on effects of terminations, claiming that this "[d]isruptions in staffing have hampered the State's ability to protect its people and resources." Wash. Mem. at 14. But the State again speculates in its declarations and argument, claiming that disruptions in federal staffing "will lead" to harms in the State or "would risk" the State's interests. *See id.* This is not enough to show irreparable harm. *See, e.g., Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (the "mere 'possibility of irreparable harm'" is insufficient to justify preliminary injunctive relief (citation omitted)). To the extent the State's harms relate to concerns about the employment of Washington state citizens, that too is not irreparable harm. *See* Decl. of Shane Esquibel ¶ 3, ECF No. 70-7 at 2 (noting "harm to federal employees based in Washington who have lost their livelihood and benefits"). Harms regarding the employment of Washington citizens is not a harm to the State, and it cannot maintain claims on behalf of third parties not before this Court. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] [party] generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). Additionally, neither loss of employment nor resulting effects constitute irreparable harm. *See, e.g., Graphic Commc'ns Conf.—Int'l Bhd. of Teamsters Loc.*

*404M v. Bakersfield Californian*, 541 F. Supp. 2d 1117, 1125 (E.D. Cal. 2008); *see also Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) ("[m]ere financial injury … will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). And while Washington may have to pay out additional unemployment benefits as a result of the termination of probationary employees who work within its State, this, too, is an incidental harm and not one that is sufficiently imminent at the moment.

Finally, Washington suggests that the deprivation of a constitutional right constitutes irreparable harm. *See* Wash. Mem. at 15. For the reasons discussed above, Washington has not established any constitutional violation; in any event, Washington's vague assertion of harm from a purported separation-of-powers violation would not suffice to establish even an Article III injury, let alone irreparable harm. *See Perry v. Newsom*, 18 F.4th 622, 634 (9th Cir. 2021) (asserting a "generalized grievance" that is "undifferentiated and common to all members of the public" cannot establish an injury-in-fact); *Great Northern Res., Inc. v. Coba*, 2020 WL 6820793, at *2 (D. Or. Nov. 20, 2020) ("[T]he Ninth Circuit has required more than a constitutional claim to find irreparable harm.").

## III.    The Public Interest Does Not Favor an Injunction

The State of Washington's asserted harms are outweighed by the harm to the government and public interest that would result from the requested relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the balancing of harms and public interest requirement for emergency injunctive relief merge when "the Government is the opposing party").

In this case, the government has a strong interest in maintaining its authority to manage its own internal affairs. Against this, Washington seeks to restore or maintain specific government services at its preferred level and its preferred manner. Yet, restoration of any services that were in fact affected by the terminations relies on the independent judgment of employees (who are not parties in this suit) to accept reinstatement to full duty status, and on agencies' independent decisions about how to deploy reinstated employees in light of agency priorities and the continuing uncertainty about those employees' status. Indeed, efforts to

onboard employees and redistribute work assignments—all under the continuing uncertainty of the likely vacatur of the district court's order on appellate review—would likely draw (already depleted) agency resources away from their designated service functions.

## IV.    Any Relief Should Be Limited

For the reasons above, the Court should deny the State of Washington's motion in its entirety. But even if the Court determines that a preliminary injunction is appropriate, it should limit its scope in at least three ways. Nationwide relief would be improper because "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted). Relying on that principle, the Ninth Circuit has repeatedly vacated or stayed nationwide injunctions. *See, e.g.*, *E. Bay Sanctuary Covenant v. Barr*, 934 F.3d 1026, 1029 (9th Cir. 2019); *California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018). To prevent ordering "the government to act or refrain from acting toward nonparties in the case," *Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring), the Court should limit any relief to any party before it that is able to establish its entitlement to preliminary injunctive relief.

In this case, Washington seeks additional relief from subagencies at the Departments of Commerce, Education, Health and Human Services, Homeland Security, and Housing and Urban Development. If this Court were to grant such relief, it should limit its relief to reinstatement of those employees that were providing the services that Washington now claims are being harmed.

## V.    This Court Should Require the State of Washington to Provide Security for Preliminary Injunctive Relief

This Court should require the State of Washington to post a bond for the preliminary injunctive relief that they have already been awarded and for any additional preliminary injunctive relief ordered by this Court. Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

1

2          This Court should require Washington to provide security in an amount that could

3   compensate Defendants for the losses caused by a preliminary injunction in the event that

4   Defendants are found to have been wrongfully enjoined. The State is a well-resourced sovereign

5   seeking to set aside thousands of employee terminations at 23 Executive Branch agencies, 22 of

6   which were only joined pursuant to Rule 19 of the Federal Rules of Civil Procedure for the

7   purposes of effectuating relief. This Court has already awarded preliminary relief and ordered the

8   reinstatement of thousands of employees at six agencies. It is beyond dispute that the Court's

9   existing and potential additional reinstatement ordered impose and may impose significant

10  monetary losses during this litigation on each defendant. The Court should thus require the State

    to provide security in an amount commensurate with these costs.

11                                          **CONCLUSION**

12         For the foregoing reasons, the Court should deny Plaintiff State of Washington's motion

13  for a preliminary injunction.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: March 31, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
GREGORY CONNER
Trial Attorneys U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*