Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiffs*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 25-cv-01780-WHA <br><br> **PLAINTIFFS' BRIEF REGARDING DISCOVERY AND APA ADMINISTRATIVE RECORD REVIEW** |

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, #3:25-cv-01780-WHA

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................3

DISCUSSION .................................................................................................................................6

    1.      Plaintiffs' Ultra Vires Claim Is Not Limited to an APA Administrative Record ................................................................................................................6

    2.      Even for APA Claims, Courts Are Not Limited to an Administrative Record When Considering Preliminary Injunctive Relief, or Compliance with this Court's Orders. ..................................................................................................8

    3.      Other Exceptions to APA Review on an Administrative Record Are Warranted. ......................................................................................................9

CONCLUSION ............................................................................................................................12

**INTRODUCTION**

Plaintiffs address herein the questions posed by the Court's March 28, 2025 Order for the parties to address "the extent to which aspects of this action must be adjudicated on an administrative record,' if any, and the extent to which other aspects of this action must be adjudicated on a trial or summary judgment record with the benefit of formal discovery." Dkt. 164 at 2.

Since filing this case on February 19, 2025, Plaintiffs have moved for and obtained preliminary injunctive relief supported by evidence compiled almost entirely by Plaintiffs, in light of Defendants' lack of public transparency regarding the terminations of probationary employees, including the refusal (until ordered by courts) to reveal which how many employees were terminated at which agencies. Dkt. 132 at 9 ("Virtually all the foregoing facts were uncovered by counsel for plaintiffs. Defendants have provided virtually no transparency."); Dkt. 144, 168. Defendants opposed injunctive relief, as this Court is aware, by relying on declarations making factual representations that OPM did not order the terminations at issue and did not order agencies to use a false template termination notice. Dkt. 34 (Ezell Decl.); 77 (Peters Decl.). Plaintiffs' requests for further preliminary relief with respect to additional Plaintiffs and relief Defendant agencies remain pending and are being briefed to this Court (Dkt. 156, 161), and Defendants continue to rely on the same factual assertions, contrary to this Court's findings, in opposing that relief (Dkt. 167 at 1). Likewise, Plaintiffs' motion to enforce the existing injunction remains pending (Dkt. 155), and Defendants also rely there on untested declarations (Dkt. 144, 168). To date, there has been no administrative record filed in this case by Defendants. *See* Dkt. 111 (referencing a "forthcoming administrative record prepared for this APA matter"). In light of these circumstances, the Court's questions therefore pertain to the scope of evidence and discovery relevant to Plaintiffs' claims at this initial injunctive stage, with respect to enforcement of this Court's orders as well as the ultimate merits of Plaintiffs' claims. Plaintiffs discuss below the law that governs which aspects of this case proceed on an administrative record, and which do not.

First and foremost, Plaintiffs' claims against OPM and its Acting Director include both that Defendants' actions were *ultra vires* and that Defendants violated the Administrative Procedure Act

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

1

("APA"). Dkt. 90 (Plaintiffs' Second Amended Complaint). In particular, Plaintiffs aim to prove that OPM's actions were so far outside of any statutory authority as to rise to the level of such "extreme" agency error as must be enjoined as an ultra vires action violating myriad statutes, and an attempt to usurp legislative power in violation of Article I of the Constitution. *Id.* at 48-49; see Dkt. 45, 132 (concluding that Plaintiffs are likely to prove Defendants' actions ultra vires as exceeding any statutory authority). Plaintiffs explain below that they are not limited to an administrative record with respect to their ultra vires claim, which is subject to the discovery rules that apply to any other non-APA claim.

Second, even with respect to their APA claims, Plaintiffs are not limited to an as-yet-to-be-created administrative record either for preliminary injunctive relief or for compliance with any injunction or other Court order. Preliminary injunctions and compliance issues are often necessarily resolved on extra-record evidence because "injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues." *Eco Tour Adventures, Inc. v. Zinke*, 249 F.Supp.3d 360, 369 n.7 (D.D.C. 2017); *see also e.g.*, *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1108 (N.D. Cal. 2018) (approving extra-record evidence at preliminary injunction stage).

In this case, there is all the more reason to permit early discovery, where: Defendants themselves relied on extra-record evidence to dispute the central facts pertaining to Plaintiffs' claims against OPM (Dkt. 34, 77; 127-1-6); the circumstances of that testimony (offered, withdrawn by counsel, substituted) raised serious questions regarding the truth and basis for the representations to the Court; and Defendants refused to make available for testimony agency witnesses to the OPM orders at issue (Dkt. 110), only to submit and rely on agency declarations in support of a stay (Dkt. 127-1-6). The Court has good reason to believe, based on the many public statements of agency officials (Dkt. 132 at 2-9), that discovery will reveal further credibility issues with the testimony on which Defendants rely regarding whether OPM took certain actions. Moreover, Defendants also rely on untested testimony to support their compliance claims. That is a relief-related issue for which there is no administrative record and for which this Court is well within its authority to authorize

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

2

discovery.

Third, even with respect to the merits of Plaintiffs' APA claims at trial or on summary judgment, other well-established exceptions to administrative record review will apply in this case, including that Defendants rely on extra-record assertions to contest the redressability of Plaintiffs' injuries for purposes of standing and relief, and Plaintiffs have established OPM's bad faith with respect to the reasons put forward to employee and the public regarding agency actions.

For all these reasons, Plaintiffs respectfully request the Court confirm that this Court's prior order opening discovery, issued March 13, 2025 (Dkt. 120 at 54), remains in place, and Plaintiffs may resume their efforts to obtain the truth of the factual matters that Defendants are affirmatively representing to this Court.

## BACKGROUND

Plaintiffs include here only those parts of the case history relevant to this issue.

On February 23, 2025, Plaintiffs filed a motion for TRO and in the alternative to show cause why preliminary injunction should not issue, supported by numerous fact declarations. Dkt. 18-1-20; Dkt. 39-1-6.

On February 26, 2025, Defendants OPM and Charles Ezell submitted an opposition to that motion that contested the central factual contentions – that OPM ordered agencies to termination probationary employees and to do so in a manner that falsely based those terminations on performance. Dkt. 33 & 34 at ¶¶7, 10 (affirmatively representing that agencies made termination decisions, and were not directed by OPM to terminate employees or falsely use performance as the reason).

On February 27, 2025, this Court granted Plaintiffs' TRO and scheduled a March 13 evidentiary hearing with respect to Plaintiffs' requested preliminary injunction. Dkt. 44, 45. The Court also entered further orders in service of illuminating the factual record with respect to Plaintiffs' request for a preliminary injunction, and Defendants' representations to the Court regarding OPM's actions, including: all parties must produce their declarants for cross-examination (Dkt. 44 at 69-72); Defendants must reveal the names of individuals on a February 13, 2025 call

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

3

between OPM and agencies (Dkt. 44 at 71); and Plaintiffs would be permitted to call as witnesses at the upcoming hearing three or four of those government witnesses to that call (*id.*).

Defendants refused to make available either OPM Acting Director Ezell or any other government witness, either for live or remote testimony, or by deposition. Dkt. 62 (Trans. March 6); 75 (Ex Parte Motion to Vacate Hearing); 110 (Notice of Intent Not to Produce Live Witnesses). Plaintiffs sought to enforce the Court's orders and call witnesses; in contrast, Defendants sought to quash the hearing. On March 10, the Court resolved the dispute by rejecting Defendants' attempt to quash, reiterating the Court's order that Mr. Ezell testify either at hearing or by deposition, and requiring both sides to tell the Court whether they were calling live witnesses. Dkt. 89.

Defendants' counsel represented to the court that Mr. Ezell "lacks specific knowledge of the disputed issues of fact" (notwithstanding his sworn declaration and issuing the January 20, 2025 memorandum to all federal agencies). Dkt. 75 at 8. Defendants' counsel then withdrew the Declaration of Mr. Ezell. Dkt. 110. At no point in time have Defendants submitted any evidence *from Mr. Ezell* supporting the assertion that he lacked any knowledge. *Id.*[1] Defendants then substituted a declaration from a different declarant, OPM Senior Advisor Noah Peters, but likewise refused to make Mr. Peters available for testimony or deposition either. Dkt. 77, 110.

On March 13, 2025, the Court entered a preliminary injunction, ordering OPM and six relief defendant agencies to cease terminations and to restore services by reinstating those unlawfully fired. Dkt. 120, 132. With respect to discovery, the Court ordered:

- Plaintiffs were to depose Mr. Peters in Washington, DC within two weeks. Dkt. 120 at 54.
- "[D]iscovery is now open" and Plaintiffs should proceed in a "reasonable" manner. *Id.*

---

[1] The Declaration of Noah Peters states that Mr. Ezell did not participate in a February 13, 2025 call, admits that he *was* on a Feb. 14 call, and noticeably omits that representation with respect to any of the other *daily* calls between OPM and federal agencies during this January-February 2025 time period. Dkt. 77 ¶¶7, 8.

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

4

- "[N]arrowly directed, reasonable discovery is in order in this case to get at the truth because the Government is saying one thing and you're saying another." *Id.*

On the following day, Defendants moved the Court to stay the injunction and submitted, for the first time, declarations from agency witnesses purporting to address both compliance *and facts pertaining to employee terminations* (with two of the six, but not the others, claiming, incredibly, that agencies conducted individualized performance evaluations of thousands of employees in a very short period of time). Dkt. 127-1-6. Defendants proceeded to rely on those Declarations in submissions to the Ninth Circuit and the U.S. Supreme Court.

Pursuant to this Court's order opening discovery, on March 19, 2025, Plaintiffs served deposition notices for half-day depositions of six agency officials, the purpose of which was to rebut Defendant's continued factual assertions that OPM did not order terminations and was not continuing to do so, as well as to ascertain and test Defendants' compliance assertions.

Next, also pursuant to that order, Plaintiffs served a deposition notice for Acting OPM Director Charles Ezell, on the basis of the documents in which he was established to have been involved (including but not limited to the January 20, 2025 memorandum that he issued), and to test counsel's assertion that Mr. Ezell's declaration was withdrawn because of his lack of personal knowledge, which appeared contrary to documentary evidence. The parties met and conferred and reached agreement on agency official depositions to occur on March 31, April 1, and the week of April 7. On March 26, pursuant to this Court's order, Plaintiffs deposed Mr. Peters in Washington, DC.

On March 28, Defendants moved for a protective order with respect to Mr. Ezell. Dkt. 158. Later that day, this Court issued an order granting Defendants' motion in part. Dkt. 164. The Court ordered that the deposition of Mr. Ezell would not take place on April 3, and stated that Plaintiffs may make a motion should they wish to depose him. *Id.*

The Court also *sua sponte* ordered the parties to brief the issue of whether and to what extent the claims in this case should proceed on an administrative record. *Id.*

In light of this Court's Friday, March 28, order, the parties agreed on Saturday, March 29, to

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

5

1   postpone the depositions of agency officials scheduled to occur in Washington, DC on March 31 and
2   April 1.

3   **DISCUSSION**

4   **1.   Plaintiffs' Ultra Vires Claim Is Not Limited to an APA Administrative Record.**

5   This Court has opened discovery, and the usual rules regarding scope and availability of
6   discovery apply to Plaintiffs' ultra vires claims. *E.g.*, Fed. R. Civ. P. 26; *Oppenheimer Fund, Inc. v.*
7   *Sanders*, 437 U.S. 340, 351 (1978).  There is no controlling law limiting discovery in ultra vires
8   claims to the administrative record (*see* 5 U.S.C. §706) just because Plaintiffs have also brought an
9   APA claim.  As the Ninth Circuit has recognized, the equitable claim to enjoin ultra vires government
10  action both pre-dated and survived the enactment of the APA.  *Sierra Club v. Trump*, 963 F.3d 874,
11  888-93 (9th Cir. 2020), *judgment vacated on other grounds, sub nom. Biden v. Sierra Club*, 142 S.
12  Ct. 46 (2021); *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019); *Armstrong v. Exceptional*
13  *Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by
14  state and federal officers is the creation of courts of equity, and reflects a long history of judicial
15  review of illegal executive action, tracing back to England").  This claim is thus separate and apart
16  from the APA's statutory record review rules for claims pursuant to 5 U.S.C. §706.[2]

17  Thus, many courts have recognized that the regular rules of discovery apply to ultra vires
18  claims. *E.g.*, *Texas v. United States Dep't of Homeland Sec.*, 2023 WL 2842760, at *3 (S.D. Tex.
19  Apr. 7, 2023) (approving discovery into ultra vires claim because "claims that do not arise within the
20  APA context are not bound by the record rule."); *Texas v. Biden*, 2021 WL 4552547, at *4 (N.D. Tex.
21  July 19, 2021) (constitutional and other ultra vires claims are subject to discovery); *see also Porter v.*
22  *Califano*, 592 F.2d 770, 781 (5th Cir. 1979) (approving extra-record evidence for constitutional
23  claims); *California v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895 (N.D. Cal. 2020)
24  (collecting cases); *Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 140 (D. Md.

---

[2] The record review requirement of Section 706 of the APA applies by its own terms claims under the APA: "*In making the foregoing determinations*, the court shall review the whole record or those parts of it cited by a party…" 5 U.S.C. §706 (emphasis added).

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

1   2019) (collecting cases); *Grill v. Quinn*, 2012 WL 174873, at *2 (E.D. Cal. Jan. 20, 2012) (non-APA
2   claims subject to discovery); *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990) (same). Had
3   Plaintiffs brought *only* this claim, there would be no argument that review is limited to an
4   administrative record, and the fact that Plaintiffs have sued for multiple legal violations does not
5   change the rules that apply to this claim.

6   This Court recognized in *California v. U.S. Dep't of Homeland Security* that: "[i]t follows,
7   therefore, that if plaintiffs have a constitutional claim that exists outside of the APA, then the APA's
8   administrative record requirement does not govern the availability of discovery." 612 F.Supp.3d at
9   895. This Court went on to discuss earlier cases in which parties pled both APA and other claims
10  together which "presumed that the APA governed" but that "did not have the benefit of controlling
11  circuit law on the issue of whether a constitutional claim may be brought independent of the APA."
12  *Id.* at 895-96. It further collected and discussed other cases that did not employ a "bright line rule"
13  and reflect a "case-by-case approach to discovery" where parties have pled both APA and non-APA
14  claims. *Id.* at 896-97; *see also Baltimore*, 429 F. Supp. 3d at 140 (collecting cases).

15  Both the plain text of section 706, which does not apply to any claim other than an APA
16  claim, and the reasoning of the Ninth Circuit in *Sierra Club v. Trump* that these are distinct and
17  independent claims, should control and this Court should permit discovery with respect to any non-
18  APA ultra vires claims. As the *Baltimore* case observed: "Notably, this view accords with the
19  foundational tenet of constitutional adjudication that 'where constitutional rights are in issue,' courts
20  must ensure that 'the controlling legal principles [are] applied to the actual facts of the case.'" 429 F.
21  Supp. 3d at 138 (alteration in original, emphasis omitted) (quoting *Pickering v. Bd. of Ed. of Twp. of*
22  *High Sch. Dist. 205, Will Cty.*, 391 U.S. 563, 578 n.2 (1968) (Douglas, J., concurring)). And, as that
23  Court further observed:

24  > Moreover, the cases in which courts have denied extra-record discovery are qualitatively
25  > different from the one *sub judice.* For the most part, they involve challenges to an agency
    > adjudication or rule promulgated after formal or informal proceedings. ...In such a case,
26  > the plaintiff is likely to be somewhat familiar with the agency's reasoning and process.
    > *In contrast, defendants here allegedly acted without warning or public input*.
27

28  PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

7

*Baltimore,* 429 F. Supp. 3d at 140 (emphasis added). It is certainly true here that Defendants acted without warning or public input, and have taken further action to obscure the truth of what happened, in contrast to cases conducting review of regular adjudicatory procedures. For all these reasons, this Court should not follow the non-controlling case law in which other courts have conflated the record on review for APA claims with other types of claims.

**2. Even for APA Claims, Courts Are Not Limited to an Administrative Record When Considering Preliminary Injunctive Relief, or Compliance with this Court's Orders.**

Pending before this Court are requests for further injunctive relief to additional Plaintiffs, and against additional relief Defendants, not covered by this Court's prior injunction. Dkt. 120 (March 13 Transcript), 132 (Preliminary Injunction Memorandum); 156 (Motion for Preliminary Injunction for Plaintiff State of Washington); 161 (Plfs' Response Re: Further Relief to Public-Sector Union Plaintiffs). Also pending is Plaintiffs' Motion to Enforce Compliance with the existing preliminary injunction. Dkt. 155 (Plfs' Motion to Compel Compliance).

Courts have frequently held that even in APA cases, extra-record evidence and the discovery needed to find that evidence is appropriate with respect to relief issues, including entitlement to preliminary injunctions. *E.g.*, *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1094, 1108 (N.D. Cal. 2018), *aff'd,* 950 F.3d 1242 (9th Cir. 2020), and *aff'd sub nom. E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021); *Eco Tour Adventures, Inc. v. Zinke*, 249 F.Supp.3d 360, 369 n.7 (D.D.C. 2017); *Texas v. United States Dep't of Homeland Sec.*, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) (permitting extra-record discovery at preliminary injunction stage). Thus courts have held: "Similar to issues of standing, the record rule also does not limit the evidence this Court can consider when determining the propriety of injunctive relief." *Texas*, 2023 WL 2842760, at *2. The rationale is straightforward: "injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues." *Eco Tour Adventures*, 249 F.Supp.3d at 369 n.7; *accord Texas*, 2023 WL 2842760, at *2.

Moreover, as this Court has recognized, with respect to preliminary injunctive relief, the

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

8

Court should "*to the extent practicable*, … determine a plaintiff's likelihood of success on the merits of such a challenge based on the administrative record" for an APA claim. *E. Bay Sanctuary Covenant*, 354 F. Supp. 3d at 1106–07 (emphasis added). There is no *practicable* way for the Court or Plaintiffs to proceed on a non-existent administrative record. Defendants have not provided the Court with an actual administrative record,[3] so the argument that Plaintiffs are limited to that record in proving entitlement to injunctive relief or compliance is a prejudicial, one-sided guessing game.

The discovery that Plaintiffs seek to take focuses on the truth of the facts Defendants themselves have put at issue. Dkt. 120 at 54 ("[N]arrowly directed, reasonable discovery is in order in this case to get at the truth because the Government is saying one thing and you're saying another."). Defendants have already taken this Court's existing preliminary injunction all the way to the Supreme Court, where they are relying on the untested facts asserted in their declarations, contrary to this Court's factual findings. *OPM v. AFGE*, Supreme Court Case No. 24A904 Stay App., filed March 24, 2025, at 8 (OPM provided "guidance"); *id*. at 9 ("None of those communications directed agencies to terminate any particular probationary employee; rather, OPM instructed agencies to engage in a review of probationers based on how their performance was advancing the agencies' mission."); *id.* at 24 ("any confusion was cleared up and agencies were left to make their own politically accountable decisions"). Defendants also continue to make untested representations in the record regarding compliance. *See* Dkt. 144, 168. Discovery is appropriate with respect to the facts that Defendants are asking this Court to accept untested.

**3.      Other Exceptions to APA Review on an Administrative Record Are Warranted.**

While APA claims are typically heard on record review, there are many exceptions. As discussed, Defendants' primary factual defense, supported by its own *extra-record evidence* in the form of a now-withdrawn declaration and a substituted declaration from another official, is to claim

---

[3] In contrast, in the *East Bay Sanctuary* case, the government had filed with the Court the record within ten days of the Court's initial TRO. 354 F. Supp. 3d at 1106. Even so, this Court held it was not limited to considering just that record on the preliminary injunction. All Defendants have done here, is provide the Court with declarations and documents that they affirmatively represented *were not the administrative record*. Dkt. 111.

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

9

that OPM did not order agencies to act, and instead agencies made the operative decisions at issue. Defendants persist in arguing these same facts (Dkt. 167 at 1), and further use these contentions to support their argument that additional Plaintiffs' injuries are not redressable. Dkt. at 160 at 12-14 (asserting that "Any confusion was therefore cleared up, and agencies were left to make their own politically accountable decisions."). Extra-record discovery has long been considered appropriate, even in an APA matter, into issues pertaining to standing. *E.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153–54 (2010).

Next, discovery can also be appropriate to determine as a factual matter, even in an APA case, whether a decision was made, or whether an agency has acted, if needed to determine what decisions the administrative record should address. *Cf. Doe 1 v. Nielsen*, 2018 WL 4266870, at *2 (N.D. Cal. Sept. 7, 2018) (permitting discovery because "[t]he Stone declaration itself is not a record of agency action; rather, it expresses defendants' position that there is no final agency action to review."). This seems particularly apt here, where Defendants have largely failed to provide any transparency into the decisions at issue.

Next, even where there is an established administrative record of an agency decision, the Ninth Circuit permits parties to investigate and present "material outside of the administrative record" in the following four circumstances:

> 1) where the extra-record evidence is "necessary to determine whether the agency has considered all relevant factors and has explained its decision";
>
> 2) where "the agency has relied on documents not in the record";
>
> 3) where "supplementing the record is necessary to explain technical terms or complex subject matter"; or
>
> 4) where "plaintiffs make a showing of agency bad faith."

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1451 (9th Cir. 1996)); *E. Bay Sanctuary*, 354 F. Supp. 3d at 1107. Extra-record evidence is justified in this case for several reasons.

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

As an initial matter, the administrative record *cannot* include all the factors and documents relied on for this agency action with respect to probationary employees, which began with Acting Director Ezell's very first day, because significant planning occurred outside of government, before this new Administration was in place. The initial memorandum directing all federal agencies to collect and submit to OPM lists of all probationary employees and to prepare to terminate those employees, was issued on inauguration day, January 20, 2025. That document was not conceived, planned and drafted that day; in fact, Noah Peters testified in his deposition that he drafted the memorandum outside the government, prior to working for OPM.[4] An administrative record containing *only* OPM materials will be necessarily under-inclusive, and discovery is needed to reveal what extra-record materials from before the administration took office are actually relevant to the decision-making that resulted in OPM's orders.

Plaintiffs have also already made a showing of "agency bad faith" and improper behavior. *In re U.S. Dep't of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022). The record evidence establishes that OPM, at a minimum, did instruct agencies to terminate their probationary employees using a template that was a lie, and to do so with the purpose of blocking the right to appeal. *E.g.*, Dkt. 111-5 (Feb. 12 email from OPM to all agencies instructing agencies to terminate probationary employees "using the attached template" either "immediately or as soon as possible" and further instructing that "*Employees do not need to have received any particular performance rating previously to be separated*."). That is agency bad faith.

And Defendants' further conduct in this litigation qualifies as improper. As this Court has previously observed, Defendants have stymied this Court's search for the facts at every turn. Dkt. 132, 133 ("Defendants chose to withdraw the Ezell declaration to avoid submitting its declarant to examination, in violation of this Court's order."). Defendants submitted and relied on a declaration sworn as true, only to withdraw that declaration upon *counsel's assertion* that the declaration did not have knowledge after all. Defendants did not provide this Court with any sworn statement *by Mr.*

---

[4] The expedited transcript for the Peters deposition has not been completed as of the timing of this filing. Plaintiffs will provide the Court will relevant excerpts upon completion.

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

11

1   *Ezell* to that effect.  And, counsel's explanation for withdrawing declaration they relied on does not
2   hold up:  Mr. Ezell did have relevant knowledge (as he previously attested under oath); Mr. Ezell
3   issued the Jan. 20 memo to agencies; and Mr. Ezell participated in at least some of the relevant
4   conversations with federal agencies in the weeks of the operative events (as Mr. Peters revealed, Dkt.
5   77).  The government withdrew Mr. Ezell to avoid cross-examination;it is entirely possible that Mr.
6   Ezell was going to tell the truth about what he knew regarding OPM's directions to federal agencies.
7   Discovery is warranted.

       Furthermore, Defendants refused to make any of the many government agency witnesses to OPM's orders available for deposition or cross-examination so that the preliminary injunction record could be complete, and then turned around and submitted declarations from some of those same individuals to support the stay request.  Dkt. 133 ("This is a last-ditch attempt to relitigate those orders on a new, untested record.").  Defendants have proceeded to rely on those declarations in arguing to the Ninth Circuit and Supreme Court regarding the facts.  Defendants cannot now object to discovery, when they themselves persist and insist on relying on such extra-record evidence.

       The remainder of these exceptions to APA record review may very well come into play in this case, once the Defendants actually submit an administrative record.  OPM denies the very decision for which a record must be created.  Plaintiffs have very good reason to be concerned, in light of the obfuscation that has occurred thus far around these terminations that the administrative "record" will hardly be that, but expect these issues will be addressed once that record is revealed.

## CONCLUSION

       For all these reasons, either Defendants may not rely on the extra-record evidence they have submitted *at all*, or targeted discovery is warranted to test Defendants' continued assertions that OPM did not direct the terminations at issue and that agencies are not continuing to operate at the direction of OPM.  Dkt. 63 at 8-10; Dkt. 168.  Defendants chose to contest the central facts regarding what OPM did and did not do.  This Court is well within its power to open discovery as it has.  Plaintiffs and this Court should not be limited to litigating these claims on the entirely biased and slanted representations regarding those facts that *Defendants* choose to present.

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

DATED: April 1, 2025

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

By: */s/ Danielle Leonard*

*Attorneys for Plaintiff Organizations*

Norman L. Eisen (*pro hac vice*)
Pooja Chadhuri (SBN 314847)
STATE DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

By: */s/ Norman L. Eisen*

*Attorneys for Plaintiff Organizations*

Rushab Sanghvi (SBN 302809)
AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)
AMERICAN FEDERATION OF STATE, COUNTY,

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

13

```
                                    AND MUNICIPAL EMPLOYEES
                                    1625 L Street, N.W.
                                    Washington, D.C. 20036
                                    Tel: (202) 775-5900
                                    TPaterson@afscme.org
                                    MBlumin@afscme.org

                              By: /s/Teague Paterson

                                    Attorneys for Plaintiff American Federation of State
                                    County and Municipal Employees (AFSCME)

                                    Tera M. Heintz (SBN 241414)
                                    Cristina Sepe (SBN 308023)
                                    Cynthia Alexander, WA Bar No. 46019 (pro hac vice)
                                    Deputy Solicitors General
                                    OFFICE OF THE WASHINGTON STATE
                                    ATTORNEY GENERAL
                                    800 Fifth Avenue, Suite 2000
                                    Seattle, WA 98104
                                    (206) 464-7744
                                    tera.heintz@atg.wa.gov
                                    cristina.sepe@atg.wa.gov
                                    cynthia.alexander@atg.wa.gov

                              By: /s/ Tera M. Heintz

                                    Attorneys for Plaintiff State of Washington
```

PLFS' BRIEF REGARDING ADMINISTRATIVE RECORD AND DISCOVERY, NO. 25-cv-01780-WHA

14