1  NICHOLAS W. BROWN
   Attorney General of Washington
2  TERA M. HEINTZ, SBN #241414
   CRISTINA SEPE, SBN #308023
3  CYNTHIA L. ALEXANDER, *Pro Hac Vice*
   Deputy Solicitors General
4  Solicitor General's Office
   1125 Washington Street SE, PO Box 40100
5  Olympia, WA  98504-0100
   (360) 753-6200
6  Tera.Heintz@atg.wa.gov
   Cristina.Sepe@atg.wa.gov
7  Cynthia.Alexander@atg.wa.gov
   Attorneys for Plaintiff State of Washington

8

9                **UNITED STATES DISTRICT COURT**
               **NORTHERN DISTRICT OF CALIFORNIA**
10                    **AT SAN FRANCISCO**

11  AMERICAN FEDERATION OF              NO. 3:25-cv-01780-WHA
    GOVERNMENT EMPLOYEES, AFL-CIO,
12  et al.,                            PLAINTIFF STATE OF
                                       WASHINGTON'S REPLY IN
13                    Plaintiffs,      SUPPORT OF MOTION FOR
                                       PRELIMINARY INJUNCTION
14        v.
                                       APRIL 9, 2025, 8:00 AM
15  UNITED STATES OFFICE OF
    PERSONNEL MANAGEMENT, et al.,
16
                      Defendants.
17

18

19

20

21

22

23

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT ................................................................................................................. 1

        A.    Washington Has Standing ................................................................................. 1

              1.    The actual and imminent injury to Washington is not speculative ................... 2

              2.    Washington may rely on declarations in the record to establish standing ......... 5

              3.    OPM's reliance on *United States v. Texas* is misplaced ................................. 6

              4.    Washington's injuries are redressable ............................................................. 7

        B.    Washington's Claims Are Not Moot ....................................................... 10

        C.    Congress Did Not Channel Washington's Claims to the MSPB ........................... 12

        D.    Washington's Claims Are Likely to Succeed on the Merits ................................ 14

        E.    Washington Is Suffering Irreparable Harm ............................................. 15

        F.    The Public Interest Favors an Injunction ............................................... 19

        G.    The Court Need Not Revisit Its Determination That No Security Is Required ....... 20

III.    CONCLUSION ............................................................................................................ 20

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1

# TABLE OF AUTHORITIES

2

## <u>Cases</u>

3

*Allen v. Reid*,
  No. 15-cv-1905, 2016 WL 3136859 (D. Minn. June 3, 2016) ............................... 5

4

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015)............................................................................................ 10, 14

5

*Baker v. Carr*,
  369 U.S. 186 (1962).................................................................................................. 9

6

*Barnes v. Healey*,
  980 F.2d 572 (9th Cir. 1992) ................................................................................. 15

7

*Biden v. Nebraska*,
  600 U.S. 477 (2023).................................................................................................. 4

8

9

*Chamber of Commerce v. Reich*,
  74 F.3d 1322 (D.C. Cir. 1996) ............................................................................... 14

10

*Clark v. Bank of Am. N.A.*,
  No. 14-cv-232, 2015 WL 1433834 (D. Idaho Mar. 27, 2015) ................................ 5

11

*Dennis v. Thomas*,
  No. 09-1317, 2010 WL 3927488 (D. Or. Oct. 4, 2010) .......................................... 5

12

13

*Diaz v. Brewer*,
  656 F.3d 1008 (9th Cir. 2011) ............................................................................... 20

14

*E. Bay Sanctuary Covenant v. Biden*,
  993 F.3d 640 (9th Cir. 2021) ................................................................................. 15

15

*East Bay Sanctuary Covenant v. Biden*,
  102 F.4th 996 (9th Cir. 2024) .................................................................................. 7

16

17

*F.T.C. v. Affordable Media*,
  179 F.3d 1228 (9th Cir. 1999) ............................................................................... 15

18

*Fed. Bureau of Inv. v. Fikre*,
  601 U.S. 234 (2024)................................................................................................ 12

19

*Garcia v. Lawn*,
  805 F.2d 1400 (9th Cir. 1986) ............................................................................... 10

20

21

*Griffin v. HM Florida-ORL, LLC*,
  --- U.S. ----, 144 S. Ct. 1 (2023) ............................................................................. 9

22

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*,
    527 U.S. 308 (1999)...........................................................................................9

*Harkrader v. Wadley*,
    172 U.S. 148 (1898).........................................................................................9

*In re Sawyer*,
    124 U.S. 200 (1888).........................................................................................9

*Los Angeles Cnty. v. Davis*,
    440 U.S. 625 (1979).......................................................................................16

*Nebraska v. Su*,
    121 F.4th 1 (9th Cir. 2024)..............................................................................7

*Paroczay v. Hodges*,
    219 F. Supp. 89 (D.D.C. 1963)......................................................................10

*Pelicone v. Hodges*,
    320 F.2d 754 (D.C. Cir. 1963)......................................................................10

*Sampson v. Murray*,
    415 U.S. 61 (1974)....................................................................................9, 10

*Sierra Club v. Trump*,
    929 F.3d 670 (9th Cir. 2019)..........................................................................14

*Sierra Club v. Trump*,
    963 F.3d 874 (9th Cir. 2020), *vacated on other grounds sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021)............................................................................14

*State of Maryland v. U.S. Department of Agriculture*,
    No. 1:25-cv-00748 (D. Md.)...........................................................................17

*U.S. Department of Defense v. American Federation of Government Employees, AFL-CIO, District 10*,
    No. 6:25-cv-00119 (W.D. Tex., filed March 27, 2025).................................13

*United States v. Texas*,
    599 U.S. 670 (2023).....................................................................................6, 7

*United States v. W. T. Grant Co.*,
    345 U.S. 629 (1953).......................................................................................11

*Vitarelli v. Seaton*,
    359 U.S. 535 (1959).................................................................................10, 11

*Walton v. House of Reps. of Okla.*,
    265 U.S. 487 (1924).........................................................................................9

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

**Statutes**

28 U.S.C. § 1331 ........................................................................................ 13

28 U.S.C. § 1345 ........................................................................................ 13

5 U.S.C. § 705 ............................................................................................. 9

5 U.S.C. § 706 ............................................................................................. 9

**Rules**

Fed. R. Civ. P. 65(c) ................................................................................. 20

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

# I.    INTRODUCTION

The State of Washington (Washington) is entitled to a preliminary injunction because this Court has already determined that Plaintiffs are likely to succeed on the merits of its *ultra vires* and APA claims, and Washington, like the other Plaintiffs, has amassed evidence demonstrating that it is likely to suffer irreparable harm in the absence of preliminary relief. The balance of equities and public interest also weigh strongly in favor of this relief. Defendants' challenges to Washington's standing to sue, likelihood of success on the merits, and showing of irreparable harm are meritless and largely repeat arguments this Court has previously rejected.

Washington respectfully requests that the Court grant it preliminary injunctive relief that requires not only the reinstatement of unlawfully terminated probationary employees at the Departments of Agriculture, Defense, and Interior, which are already subject to the Court's previous preliminary injunction ruling (Dkt. 132), but also at the Departments of Commerce, Education, Health and Human Services, and Homeland Security, which are not. *See* Dkt. 174-3.

# II.    ARGUMENT

## A.    Washington Has Standing

Washington has suffered and will imminently suffer pecuniary and proprietary injuries because of Defendants' illegal actions, including the increased costs of administering the State's unemployment insurance program (Dkt. 70-8 ¶¶ 16–18), increased operating costs for housing authorities operating low-income housing units (Dkt. 70-7 ¶¶ 7–8), harm to the State's commercial Dungeness crab fishery and commercial fishing operations (Dkt. 70-5 ¶¶ 7, 9), and frustration of Washington's efforts to protect the welfare of its citizens, fight communicable diseases, combat homelessness, keep its waters clean, and respond to natural disasters such as floods and wildfires. *E.g.*, Dkt. 70-7 ¶ 6; Dkt. 70-2 ¶¶ 5–30. Defendants ignore many of the

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    harms Washington has alleged and cite inapposite case law to argue incorrectly that Washington

2    may not rely on other evidence in the record and that states must meet a higher threshold for

3    standing. Washington has alleged and, in many instances, substantiated actual and imminent

4    harm sufficient to satisfy Article III standing.[1]

5         **1.    The actual and imminent injury to Washington is not speculative**

6         In a repeat of arguments previously held unsuccessful by this Court with respect to other

7    organizational Plaintiffs, Defendants argue that Washington alleges only speculative harms, but

8    that assertion is contradicted by the allegations in the Second Amended Complaint and

9    supporting declarations. Preliminarily, Defendants are incorrect in suggesting that the only

10   allegations of harm related to work performed by probationary employees of the National Park

11   Service and the Department of Veteran Affairs in the State of Washington. Dkt. 167 at 21.

12   Rather, Washington has demonstrated the impact of reduced staffing at many agencies that work

13   with and provide support to Washington, based on work performed by federal employees both

14   in the state and throughout the United States. Dkt. 90 ¶¶ 164–66; *E.g.*, Dkts. 70-1 to 70-20.

15        Contrary to Defendants' assertions, Washington presented declarations documenting

16   specific, actual, and threatened harms. *E.g.*, Dkts. 70-1 to 70-20. Among many other harms, these

17   declarations showed harm to the work of Washington's Department of Ecology, including

18   floodplain management, groundwater projects, forecasting water supply, and planning for

19   drought impacts. Dkt. 70-2 ¶¶ 10, 12–15, 20–21; Dkt. 70-12 ¶¶ 7, 17. As an example of specific

20

21        [1] Defendants include in their opposition an argument that Washington lacks standing to
     pursue a claim of "procedural injury" related to the lack of notice of proposed reductions in force
22   (RIFs). Dkt. 167 at 24-25 (citing Wash. Mem., Dkt. 156-1 at 10–11 (errata ECF pages 19-20)).
     Because Washington did not include this argument in the cited pages or elsewhere in the
23   Memorandum, it assumes that Defendants included this argument in error and provides no reply.

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    harms alleged, Washington's unrebutted evidence showed that "disruptions in FEMA staffing

2    have already resulted in disruptions to Ecology's floodplain management activities. FEMA has

3    pulled training instructors, is not available to provide technical assistance, and continues to

4    cancel meetings." Dkt. 70-2 ¶ 10. Similarly specific is the declaration of a probationary employee

5    at the National Oceanic Atmospheric Administration (NOAA) describing her work, and

6    explaining that with her termination, "these salmon-related projects are on hold. The direct result

7    is that many millions of chinook salmon will not be released from WDFW and Tribal Nation

8    hatcheries in 2025." Dkt. 70-9 ¶ 7. The Office of Personnel Management (OPM) downplays this

9    declaration, ignoring its recitation of specific tasks and projects assigned to the employee who

10   had worked at NOAA for three years, and discounting the employee's assessment of the impact

11   of her termination. But these specific statements of job responsibilities and projects that are now

12   "on hold" (*Id.*) because of the illegal termination of an employee with sophisticated training and

13   education share nothing in common with conclusory statements of counsel or district court

14   findings explicitly based on speculation. *See* Dkt. 167 at 23 (quoting *Reno Air Racing Ass'n, Inc.*

15   *v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) and *Caribbean Marine Servs. Co. v. Baldridge*,

16   844 F.2d 668, 674 (9th Cir. 1988)).

17        Other examples of nonspeculative harm include that Washington incurred unnecessary

18   costs and labor in ensuring the accessibility of the state's unemployment insurance program as

19   a direct result of the sudden and haphazard way in which Defendants' illegal mass firings

20   occurred, and the State must front unemployment compensation payments to terminated federal

21   employees while awaiting federal reimbursement. Dkt. 70-8 ¶¶ 16–18. In another example,

22   Washington provided evidence that it works with the Department of Housing and Urban

23

1  Development (HUD) in administering programs to combat our region's housing crisis, that HUD

2  had terminated "many probationary employees, with more terminations slated," and that HUD

3  intends to close a regional office in Seattle. Dkt. 70-7 ¶¶ 7–8. In yet another example, the State

4  provided evidence that the termination of the only Marine Scientist and an Outreach and

5  Education Specialist at the Olympic Coast National Marine Sanctuary, managed by NOAA, and

6  already an understaffed agency, will likely inhibit Washington's ability to anticipate and respond

7  to changes in this habitat, affecting fisheries, shellfish beds, and recreation. Dkt. 70-11 ¶¶ 11–

8  14. Adding further specificity, Washington noted that NOAA has already signaled that it will

9  not be able to assist as usual with certain scientific surveying. *Id.* ¶ 14. Similarly, Washington

10  submitted unrebutted evidence that approval of salmon hatchery plans by NOAA has already

11  been delayed, and that at least one employee assigned to reviewing hatchery management plans

12  was terminated. Dkt. 70-5 ¶ 6.

13       In short, there is nothing speculative or conclusory about the dozens of declarations

14  adding substance and specificity to the allegations of injury in the Second Amended Complaint.

15  And, significantly, these declarations evidence the myriad ways that the State relies on and is

16  impacted by the work performed by federal employees who are located in the State, but also

17  throughout the United States. In any event, only one plaintiff must demonstrate Article III

18  standing for each claim for relief, *Biden v. Nebraska*, 600 U.S. 477, 489 (2023), so Defendants

19  are incorrect that any claim against them for which Washington has not alleged harm must be

20  dismissed. *Contra* Dkt. 167 at 21.

21

22

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA                    4                    ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    **2.    Washington may rely on declarations in the record to establish standing**

2    There is no basis at all for Defendants' argument that Washington may not rely on

3    declarations submitted in this case to support standing and this injunction. *E.g.*, Dkt. 167 at 23.

4    The cases Defendants cite have nothing to do with standing, and instead merely recite the

5    obvious principle that a party may not seek injunctive relief regarding claims unrelated to those

6    asserted in a complaint. *Id.* at 23–24 (citing *Allen v. Reid*, No. 15-cv-1905, 2016 WL 3136859,

7    at *4 (D. Minn. June 3, 2016); *Clark v. Bank of Am. N.A.*, No. 14-cv-232, 2015 WL 1433834,

8    at *8 (D. Idaho Mar. 27, 2015); *Dennis v. Thomas*, No. 09-1317, 2010 WL 3927488, at *1 (D. Or.

9    Oct. 4, 2010)). In *Allen*, the court rejected an inmate's attempt to seek injunctive relief regarding

10   alleged mistreatment and retaliation unrelated to his complaint, which raised only that he should

11   be provided alternatives to eggs served in prison and that he received insufficient medical care.

12   2016 WL 3136859, at *4. Similarly, in *Clark*, the court rejected attempts by a plaintiff seeking

13   a TRO to enjoin foreclosure of her property to raise new arguments not raised in the complaint

14   about whether the Bank properly collected mortgage insurance or did not hold the note. *Clark*,

15   2015 WL 1433834, at *8. *See also Dennis*, 2010 WL 3927488, at *1 (rejecting attempt by inmate

16   to enjoin his transfer during pendency of lawsuit, in part because relief was unrelated to claim in

17   lawsuit that he had not been provided adequate medical care, resulting in loss of vision).

18   Here, by contrast, Washington's reference to other harms identified in the record in this

19   case does not raise any new claims or arguments and is directly related to the injunctive relief

20   requested (i.e., the restoration of services by reinstatement of illegally terminated employees)

21   and the claims and harms alleged. *E.g.*, Dkt. 90 ¶¶ 164–66 (alleging that Washington relies every

22   day on services of agencies across the federal government and that reduced staffing will directly

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    impact the State). Washington is unaware of any authority preventing it or this Court from

2    relying on evidence already in the record to assess injury for standing purposes, or harms for

3    preliminary injunction purposes. And to be clear, Defendants ask this Court to consider their

4    own declarations in opposing this injunction, and at the same time argue that Washington is

5    somehow precluded from relying on declarations in support of the injunctions. Their argument

6    fails.

7            **3.    OPM's reliance on _United States v. Texas_ is misplaced**

8            Defendants' primary standing argument, that Washington's harms are too indirect, relies

9    on a footnote in _United States v. Texas_, 599 U.S. 670 (2023). Dkt. 167 at 20 (citing _Texas_,

10   599 U.S. at 680 n.3). But _Texas_ offers them no support. There, the Supreme Court held that the

11   state plaintiffs' increased downstream costs to incarcerate and provide social services to

12   non-citizens were not _redressable_ because the judiciary could not interfere in the exercise of

13   Article II prosecutorial discretion regarding whom to arrest and deport. _Texas_, 599 U.S. at 677–

14   80. The Court did not disturb the district court's conclusion that the states suffered cognizable

15   injuries, and no one "dispute[d] that even one dollar's worth of harm is traditionally enough to

16   'qualify as concrete injur[y] under Article III.'" _Id._ at 688 (Gorsuch, J., concurring) (citation

17   omitted). Indeed, the Court stressed that its holding was "narrow" and limited to redressability

18   concerns stemming from prosecutorial discretion. _Id._ at 683–85. Far from expressly holding that

19   indirect injuries are insufficient to create standing for a state to sue, as Defendants allege, the

20   dicta in the footnote they cite states only that the kinds of indirect harm at issue in that case "can

21   become more attenuated." _Id._ at 680 n.3. The Ninth Circuit has subsequently confirmed that the

22   basis of the _Texas_ opinion was the lack of redressability for prosecutorial inaction, rejecting an

23

1   interpretation that *Texas* stood for the proposition that Defendants now advance. *Nebraska v. Su*,

2   121 F.4th 1, 13 n.5 (9th Cir. 2024).

3       Similarly, Defendants' reliance on *East Bay Sanctuary Covenant v. Biden*, 102 F.4th 996

4   (9th Cir. 2024), is misplaced. Dkt. 167 at 21. Despite Defendants' implication, *East Bay* did not

5   rely on *Texas* to hold that indirect harm to states is not a cognizable injury, but instead cited

6   *Texas* merely for the point that states do not have a significant protectible interest in compelling

7   enforcement of federal immigration policies. *East Bay*, 102 F.4th at 1002. Separately, *East Bay*

8   added that the alleged harm due to increased immigration nationally was too attenuated and

9   speculative. *Id.*

10      Here, nothing about the illegal mass firings is remotely similar to the deference courts

11  afford to the Executive Branch's arrest and prosecution decisions, and nothing about *Texas*

12  undercuts the record here that Washington's harms are specific, direct, and immediate, as set

13  forth in the numerous declarations detailing the impacts that understaffing at federal agencies

14  has had and will have on Washington.

15      **4.    Washington's injuries are redressable**

16      Ignoring this Court's prior rulings, Defendants repeat their already-rejected arguments

17  that the Court's issuance of a TRO means that the Court can no longer effectively redress

18  Washington's injuries. Dkt. 167 at 25. This Court has already correctly rejected these same

19  arguments with respect to other plaintiffs, and should do so again here. *See* Dkts. 44, 45, 88, 120,

20  132.

21      First, Defendants argue that Washington cannot seek redress for its injuries because OPM

22  has now clarified that it has no power to direct personnel actions at the agencies. Dkt. 167 at 25.

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

7

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    This argument ignores this Court's prior rulings finding that the evidence demonstrated that

2    agencies did not decide to terminate probationary employees on their own, not even after the

3    Court's TRO. Dkts. 120, 132. As this Court previously explained: "OPM submits no evidence

4    suggesting that federal agencies — some of which have continued to terminate probationers —

5    are now acting at their own discretion. Nor has OPM submitted any evidence suggesting that it

6    has rescinded or revised the other communications imparting its unlawful directive. Defendants'

7    argument on this point simply asks that the undersigned accept OPM's factual contentions —

8    supported only by counsel's say-so — as true. That is not enough." Dkt. 88 at 4. Further, OPM

9    never rescinded or revised its unlawful directives to agencies instructing them to use the false

10   template and to retain only "mission critical" employees. Dkt. 88 at 4, 7; Dkts. 111-2, 111-5.

11   OPM also fails to consider that redress for the injuries caused by the mass firings is to reinstate

12   the employees, not merely to acknowledge that the prior direction to terminate the employees

13   was illegal, essentially arguing that closing the barn door after the horse has already escaped is

14   sufficient redress.

15        Second, Defendants argue that the agencies "could have" terminated employees on their

16   own, both before and after the Court's rulings. Dkt. 167 at 25–26. That agencies *could have*

17   taken individualized personnel actions with all the proper procedures and notice required by law

18   does not foreclose this Court from redressing the harms caused by these entirely *unlawful* mass

19   terminations on the intentionally pretextual basis of "performance."

20        Finally, Defendants argue that the APA does not authorize reinstatement, even where the

21   unlawful government action at issue directly led to terminations. *Id.* at 26–27. But this Court is

22   well within its authority to order reinstatement under both the APA and its intrinsic equitable

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    powers. The APA has long been understood to authorize courts to issue all orders necessary to

2    preserve the status quo pending litigation, and ultimately to fully vacate an unlawful government

3    action. 5 U.S.C. §§ 705 ("On such conditions as may be required and to the extent necessary to

4    prevent irreparable injury, the reviewing court . . . may issue all necessary and appropriate

5    process . . . to preserve status or rights pending conclusion of the review proceedings"), 706

6    (courts "shall . . . hold unlawful and set aside" unlawful agency action); *Griffin v. HM Florida-*

7    *ORL, LLC*, --- U.S. ----, 144 S. Ct. 1, 2 n.1 (Mem.) (2023) (Kavanaugh, J., concurring in the

8    denial of the application for stay) (Under the APA, courts are empowered to "'set aside'

9    [unlawful] agency action," which is "more than a mere non-enforcement remedy[.]").

10   Defendants' claim that equitable remedies under the APA are limited to those "traditionally

11   accorded by courts of equity" is not supported by the authority it cites. Dkt. 167 at 26 (citing

12   *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999)).

13   *Grupo Mexicano* does not purport to limit preliminary injunctive relief authorized by statute,

14   and Defendants cite no case or principle limiting any relief under the APA.[2] *See* Dkt. 167 at 25–

15   27. In *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974), the Supreme Court expressly recognized

16   the authority of district courts to grant reinstatement of probationary employees in cases—like

17

18   _____

         [2] Defendants' other cited cases are inapposite (Dkt. 167 at 26-27), addressing entirely
19   different circumstances regarding the appointment of state officers. *See, e.g.*, *In re Sawyer*,
     124 U.S. 200, 210–12 (1888) (holding, on a writ of habeas corpus, that circuit court lacked
20   authority to direct marshal to hold state officer because, at time, courts of equity were "limited
     to the protection of rights of property."); *Baker v. Carr*, 369 U.S. 186, 231 (1962) (citing cases
21   about "enjoin[ing] a state proceeding to remove a public officer" in a case challenging
     apportionment of state legislative offices); *Walton v. House of Reps. of Okla.*, 265 U.S. 487,
22   489–90 (1924) (holding that the district court did not have "jurisdiction over the appointment
     and removal of state officers") (citation omitted); *Harkrader v. Wadley*, 172 U.S. 148, 165–70
23   (1898) (declining to enjoin a state criminal proceeding).

1    this one—that "so far depart from the normal situation" so as to satisfy the usual standard for

2    injunctive relief.

3         Contrary to Defendants' representations that courts lack authority to order reinstatement

4    as a remedy for unlawful action, numerous federal courts have reinstated federal employees to

5    their positions or prevented their removals from taking effect. *Vitarelli v. Seaton*, 359 U.S. 535,

6    546 (1959) ("[P]etitioner is entitled to the reinstatement which he seeks[.]"); *Pelicone v. Hodges*,

7    320 F.2d 754, 757 (D.C. Cir. 1963) (holding that plaintiff was "entitled to reinstatement");

8    *Paroczay v. Hodges*, 219 F. Supp. 89, 94 (D.D.C. 1963) (holding that, because plaintiff "was

9    never legally separated," the court "will therefore order plaintiff's reinstatement . . . ."); *see also*

10   *Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) (district court erred in not forestalling a

11   federal employee's transfer because employee met *Sampson* standard in claiming retaliation for

12   exercise of Title VII rights, which would "have a deleterious effect on the exercise of these rights

13   by others"). And there is no question that federal courts may grant injunctive relief "with respect

14   to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc.*,

15   575 U.S. 320, 327 (2015). None of Defendants' cited cases suggest that this Court lacks authority

16   to restore the status quo here.

17   **B.    Washington's Claims Are Not Moot**

18        Defendants rehash their mootness arguments already rejected by this Court, arguing that

19   OPM's memo revision leaves no further redress available to plaintiffs. Dkt. 160 at 20. This Court

20   has previously explained why that argument does not work on the record before the Court, and

21   that decision applies equally here. Dkt. 88 at 4–5. To the extent that Defendants contend that

22   their revision to the January 20, 2025, OPM memorandum instructing all federal agencies to

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1   compile lists of all probationary employees for the purpose of terminating them "cleared up" any

2   "confusion," (Dkt. 167 at 10) they are arguing an alternative reality divorced from this Court's

3   extensive, and repeated factual findings. The record reflects no "confusion": OPM ordered these

4   terminations, and made at best a half-hearted attempt to paper over the obvious facts. And as this

5   Court previously concluded, that some agencies jumped to reinstate their employees after this

6   Court's TRO (and also after this Court's preliminary injunction) supports Plaintiffs in

7   confirming that agencies did not make a free choice in the first place. Dkt. 132 at 3.

8          Defendants' unsupported factual assertions that OPM resolved any harm from its

9   unlawful terminations by issuing a corrective notice not only conflicts with facts found by this

10  Court, but also with settled law governing the scope of APA relief and the voluntary cessation

11  doctrine.

12         "Along with its power to hear the case, the court's power to grant injunctive relief

13  survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629,

14  633 (1953). In this regard, it is a court's "duty" to "beware of efforts to defeat injunctive relief

15  by protestations of repentance and reform, especially when abandonment seems timed to

16  anticipate suit, and there is probability of resumption." *Id.* at 632 n.5 (citation omitted).

17  Consistent with this duty, this Court should not accept (and has not accepted) ex post efforts by

18  Defendants to change their reasons for dismissing a federal employee to circumvent judicial

19  review of unlawful terminations. In *Vitarelli*, for example, the Supreme Court rejected the

20  Government's effort to revise the grounds for termination and ordered reinstatement of a

21  wrongfully terminated employee. 359 U.S. at 545–46.

22

23

1    Were the voluntary cessation rule more forgiving, "a defendant might suspend its

2    challenged conduct after being sued, win dismissal, and later pick up where it left off; it might

3    even repeat 'this cycle' as necessary until it achieves all of its allegedly "unlawful ends."

4    *Fed. Bureau of Inv. v. Fikre*, 601 U.S. 234, 241 (2024) (citation omitted). A "federal court's

5    constitutional authority cannot be so readily manipulated." *Id.* This Court properly rejected

6    OPM's efforts to moot this controversy without unwinding the harm from its unlawful action.

7    Defendants' half-hearted argument that Washington lacks standing because the unlawful

8    conduct had ceased before Washington joined the complaint, Dkt. 167 at 28 n.3, fails for the

9    same reasons.

10    **C.    Congress Did Not Channel Washington's Claims to the MSPB**

11    This Court has already concluded that Congress did not channel third parties' ultra vires

12    and APA claims against OPM to administrative agencies designed to hear individual employee

13    complaints against their employing federal agencies. Dkt. 45 at 12–13. As this Court

14    acknowledged, there is no case, anywhere in the country, that has held that a third-party claim

15    against OPM (or any other agency) should be sent in the first instance to an administrative agency

16    designed by Congress to hear employee claims against their employers. Dkt. 45 at 13.

17    Defendants' assertion that Washington does not challenge the ability of the MSPB to adjudicate

18    its claims is disingenuous. Plaintiffs, including Washington, expressly stated in their Reply in

19    support of their Motion for Leave to Amend Complaint:

20    Defendants misread the applicable statutes and regulations to tell this Court,
     incorrectly, that the new Plaintiff organizations or the State of Washington could
21    intervene and participate in MSPB proceedings to bring claims against OPM.
     They cannot. The relevant statutes establishing the MSPB jurisdiction . . . limit
22    the defendants in those proceedings to agency *employers*. There is *no* mechanism
     to sue OPM. . . . [T]he government stretches an implied preclusion doctrine so

23

1    far beyond the meaning of the CSRA and the [Federal Service Labor-
2    Management Relations Statute] to be nonsensical.

3    Dkt. 69 at 7–8.

4    Tellingly, in the Application to Stay the Injunction entered by this Court that Defendants

5    filed in the U.S. Supreme Court, Defendants take a contrary position, conceding that neither the

6    MSPB nor FLRA provides *any* avenue for administrative or judicial review of claims brought

7    by third parties like the organizational Plaintiffs or states. OPM Appl. to Stay Injunction to U.S.

8    Supreme Court (filed Mar. 24, 2025), U.S. S. Ct. Case No. 24A904, at App. 19-21. Because the

9    statutes at issue do not support their contention here that third parties can participate at these

10    agencies, Defendants are now arguing to the Supreme Court that the *omission* of any ability to

11    participate before these administrative agencies was intentional by Congress, which is the exact

12    opposite of what they have told this Court. *Id.*

13    And further underscoring the spurious nature of the argument that this Court lacks

14    jurisdiction over the claims at issue here, the Government is also now taking another

15    contradictory position in *U.S. Department of Defense v. American Federation of Government*

16    *Employees, AFL-CIO, District 10*, No. 6:25-cv-00119 (W.D. Tex., filed March 27, 2025). There,

17    the Government seeks a declaratory judgment that a long list of federal agencies may terminate

18    their collective bargaining agreements pursuant to an Executive Order entitled *Exclusions from*

19    *Federal Labor-Management Relations Programs*, issued the same day the complaint was filed.

20    While the Government here asserts that the FSL-MRS precludes district court jurisdiction over

21    any claims involving agencies' terminations of federal employees, the Government has pleaded

22    that the Texas district court *has jurisdiction* pursuant to both 28 U.S.C. §§ 1331 and 1345 to

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1   declare that federal agencies are now entirely exempt from the FSL-MRS. The Government

2   cannot have it both ways.

3   **D.      Washington's Claims Are Likely to Succeed on the Merits**

4           This Court has already determined that Plaintiffs' *ultra vires* claim is likely to succeed

5   on the merits because "OPM's directive constituted an *ultra vires* act that violated its and all

6   impacted agencies' statutory authority." Dkt. 132 at 9. "No statute – anywhere, ever – has

7   granted OPM the authority to direct the termination of employees in other agencies." *Id.*; *see also*

8   Dkt. 45 at 7. And this Court has determined that Plaintiffs' APA claims are "likely to succeed

9   for much the same reason." Dkt. 132 at 12. That is, "OPM's ultra vires directive is likely to

10  constitute an unlawful final agency action that is 'arbitrary, capricious, an abuse of discretion,

11  or otherwise not in accordance with law,' 'in excess of statutory jurisdiction, authority, or

12  limitations, or short of statutory right,' and 'without observance of procedure required by law.'"

13  *Id.* (quoting 5 U.S.C. §§ 706(2)(A), (C), (D)).

14          It is difficult to decipher Defendants' argument that *ultra vires* review is unavailable to

15  Washington because courts should first consider a plaintiff's APA claims (a proposition not

16  supported by *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996) despite

17  Defendants' citation), and because Washington (like the other Plaintiffs) has more APA claims

18  than constitutional claims "[t]hat should be the end of Washington's *ultra vires* claims." Dkt. 167

19  at 30. As the Ninth Circuit has recognized, the equitable claim to enjoin *ultra vires* government

20  action both pre-dated and survived the enactment of the APA. *Sierra Club v. Trump*, 963 F.3d

21  874, 888–93 (9th Cir. 2020), *vacated on other grounds sub nom. Biden v. Sierra Club*, 142 S.

22  Ct. 46 (2021); *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019); *Armstrong*, 575 U.S.

23

1    at 327 ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the

2    creation of courts of equity, and reflects a long history of judicial review of illegal executive

3    action, tracing back to England.").

4    **E.      Washington Is Suffering Irreparable Harm**

5           Washington faces irreparable harm from Defendants' unlawful mass termination of

6    probationary employees. *See* Dkt. 156-1 at 17–19; Dkt. 122 (collecting evidence). The same

7    injuries to Washington that give rise to standing also demonstrate irreparable harm. *E. Bay*

8    *Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (impairment of plaintiff's

9    programs by unlawful government action is irreparable harm). The Court has already found

10   irreparable harm to the organizational Plaintiffs from service impairments resulting from the

11   unlawful termination of probationary employees. Dkt. 45 at 14–23; Dkt. 132 at 12. The State

12   faces similar kinds of harm. *See* Dkts. 70-2, 70-5, 70-7, 70-8, 70-9, 70-11, 70-12.

13          Contrary to Defendants' arguments, their compliance with the Court's limited TRO

14   neither moots Washington's claims nor obviates the need for a preliminary injunction. A

15   defendant's compliance with a TRO does not foreclose the need for injunctive relief. *See, e.g.*,

16   *Barnes v. Healey*, 980 F.2d 572, 580 (9th Cir. 1992); *F.T.C. v. Affordable Media*, 179 F.3d 1228,

17   1237 (9th Cir. 1999). Were it otherwise, any case in which a defendant complies with a TRO

18   would then become moot.

19          At most, Defendants claimed corrective action could amount to voluntary cessation. But

20   "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear

21   and determine the case" unless "it can be said with assurance that there is no reasonable

22   expectation . . . that the alleged violation will recur" *and* that "interim relief or events have

23

1    completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles Cnty. v.*

2    *Davis*, 440 U.S. 625, 631 (1979) (alteration in original; quotations omitted). Not only could the

3    only action OPM points to—the revision of the January 20 memo (Dkt. 160 at 10–11)—be easily

4    revoked in the future, but Defendants have in no way "completely and irrevocably eradicated the

5    effects" of their unlawful conduct, as they continue to resist full reinstatement of the probationary

6    employees whom they unlawfully terminated *en masse*. Indeed, as discussed above, this Court

7    already expressly rejected Defendants' argument that the issuance of revised guidance to

8    departments moots this action. *See* Order granting Mot. for Leave to Amend, Dkt. 88 at 4–5.

9        Moreover, Defendants' paltry revisions to the January 20 memo are not sufficient to

10    restore the status quo for Washington any more than it was for the organizational plaintiffs. Even

11    after Defendants revised the January 20 memo in response to this Court's TRO, the Court ordered

12    further, and broader, relief in its preliminary injunction, requiring six departments to reinstate

13    their terminated probationary employees. Dkt. 120 at 52–53. Defendants have yet to fully

14    comply as to those six departments. *See* Dkt. 138 ("The Court has read news reports that, in at

15    least one agency, probationary employees are being rehired but then placed on administrative

16    leave *en masse*. This is not allowed by the preliminary injunction, for it would not restore the

17    services the preliminary injunction intends to restore.").

18        Defendants initially rested their showing of compliance with this Court's preliminary

19    injunction largely on previously submitted evidence from another case in the District of

20    Maryland that failed to establish that the six relief defendants covered by this Court's order are

21    in full compliance because they were reinstating terminated probationary employees only to

22    administrative leave and not to active service. *Compare* Dkt. 160-1 (Maryland declarations filed

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1   March 17, 2025) *with* Dkt. 139-3 (same declarations). Those six relief defendants' more recent

2   progress toward reinstating probationary employees to active service (*see* Dkt. 168) does not

3   moot the need for injunctive relief because Defendants continue to insist they have done nothing

4   wrong and could readily re-engage in unlawful activity absent a continued and expanded

5   injunction. And, of course, the current injunction reaches only six departments, and not all of the

6   other departments and agencies that also terminated probationary employees as a result of

7   OPM's orders and for which Plaintiffs have shown ongoing harm.

8       As with the organizational Plaintiffs, restoring the status quo and stopping the ongoing

9   harm to Washington requires reinstatement of probationary employees who were unlawfully

10  terminated to their prior positions. That is the only action that could possibly unwind Defendants'

11  illegal conduct. Defendants' position that they have already given all the relief Washington could

12  possibly need utterly fails.

13      Defendants' argument that the relief issued in *State of Maryland v. U.S. Department of*

14  *Agriculture*, No. 1:25-cv-00748 (D. Md.), means that no further relief is needed here because

15  that court issued a temporary restraining order that stayed the probationary termination of

16  employees at 18 agencies. Dkt. 44. But the district court has now vacated the TRO that required

17  reinstatement of previously terminated probationary employees without regard to geographic

18  location. Dkts. 174, 174-1, 174-2. The court granted in part the plaintiffs' motion for preliminary

19  injunction and ordered twenty federal agency defendants to take all steps necessary to undo the

20  purported termination of probationary employees, defined to include those who work or reside

21  in any of the twenty plaintiff states. *Id.*

22

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    Washington is not a plaintiff in the Maryland case, nor is the irreparable harm it has

2    demonstrated here limited to harm resulting from the termination of probationary employees

3    who work or reside in Washington. To the contrary, the many ways in which Washington relies

4    on the federal government to meet its obligations to the people of Washington involve federal

5    employees throughout the nation. *See, e.g.*, Dkts. 70-2 ¶¶ 5, 15, 26; 70-7 ¶¶ 3, 11–12, 17–18;

6    70-11 ¶¶ 23, 32–34; 70-12 ¶¶ 2, 6–7, 12, 16–24. And, the legal theory and harms on which the

7    states proceeded in the Maryland case (that the terminations of probationary employees were a

8    RIF by another name, without proper notice to the state and local entities in the geographic

9    region) is more limited than the theories at issue here, which seek to enjoin the actions by OPM

10   and the implementing agencies as entirely unlawful extra-statutory action, arbitrary and

11   capricious and failing to comport with proper procedures beyond just the RIF requirements. The

12   basis for limiting the Maryland court's injunction to in-state effects does not apply here.

13   In addition, Defendants' argument that any relief should be limited to only those

14   employees providing services that Washington claims are being harmed is unworkable. As

15   discussed above, Washington relies every day on the work performed by federal employees at

16   agencies across the country. Unsurprisingly, Defendants provide no basis whatsoever for this

17   Court to identify all of the specific employees across the nation who provide the services that

18   Washington relies upon.

19   Apart from these issues, Defendants' irreparable harm arguments largely duplicate their

20   standing arguments and fail for the same reasons.

21

22

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1        **F.      The Public Interest Favors an Injunction**

2                 Defendants barely attempt to argue that the harms it will suffer if a preliminary injunction

3        is entered outweigh the harms Washington will continue to suffer without an injunction. In

4        denying Defendants' motion for a stay pending appeal, this Court found that any harm posed by

5        contacting and onboarding unlawfully terminated employees was not irreparable and "stems

6        from the unwinding of the unlawful act and the return to the status quo." Dkt. 133 at 4. As the

7        district court pointed out, "the government . . . wholly failed to argue there is any other way to

8        avoid the irreparable injuries flowing from the unlawful terminations except to reinstate the

9        employees." *Id.* at 2.

10                Defendants did not even attempt to show irreparable harm when the district court was

11       considering a TRO or preliminary injunction. While the Government submitted declarations in

12       support of a stay *after* the district court entered a preliminary injunction, the district court

13       reviewed Defendants' proffered evidence and found no irreparable harm. *Id.* at 3–4. Similarly,

14       the Ninth Circuit denied Defendants' request for an administrative stay (Order, Ninth Cir.

15       No. 25-1677, DktEntry 14.1 (entered Mar. 17, 2025)) and a stay pending appeal (Order,

16       Ninth Cir. No. 25-1677, DktEntry 27.1 (entered Mar. 26, 2025)), also finding a lack of "the

17       requisite irreparable harm" to Defendants. Order, DktEntry 27.1 at 3 (quoting *Nken v. Holder*,

18       556 U.S. 418, 434 (2009)). This Court's finding that Defendants' alleged harms "fail to

19       persuade" was perhaps an understatement. Dkt. 133 at 3. As this Court noted, "the government

20       . . . wholly failed to argue there is any other way to avoid the irreparable injuries flowing from

21       the unlawful terminations except to reinstate the employees." *Id.* at 2.

22

23

PLAINTIFF STATE OF WASHINGTON'S
REPLY IN SUPPORT OF MOTION FOR
PRELIMINARY INJUNCTION –
NO. 3:25-cv-01780-WHA                           19            ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100
(360) 753-6200

1    **G.      The Court Need Not Revisit Its Determination That No Security Is Required**

2          Finally, the Court should deny Defendants' request for security. Fed. R. Civ. P. 65(c)

3    directs a court, upon granting a preliminary injunction, to set security in the amount the court

4    deems "proper." Thus, "[t]he district court retains discretion 'as to the amount of security

5    required, *if any.*'" *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (quoting *Johnson v.*

6    *Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)) (affirming district court decision not to require

7    any bond). This Court has already determined that "security … [is] proper in the amount of $0."

8    Dkt. 132 at 14. The Defendants make no attempt to show why that determination was an abuse

9    of discretion, or even to suggest an appropriate amount. These perfunctory arguments give the

10   Court no reason to reconsider its previous conclusion.

11                                **III.      CONCLUSION**

12         For the foregoing reasons, Washington respectfully requests that this Court grant its

13   motion for preliminary injunction.

14         DATED this 3rd day of April 2025.

15                                        NICHOLAS W. BROWN
                                          Attorney General

16                                        _/s/ Cynthia L. Alexander_
17                                        TERA M. HEINTZ, SBN #241414
                                          CRISTINA SEPE, SBN #308023
18                                        CYNTHIA L. ALEXANDER, *Pro Hac Vice*
                                          Deputy Solicitors General
19                                        Solicitor General's Office
                                          1125 Washington Street SE, PO Box 40100
20                                        Olympia, WA  98504-0100
                                          (360) 753-6200
21                                        Tera.Heintz@atg.wa.gov
                                          Cristina.Sepe@atg.wa.gov
22                                        Cynthia.Alexander@atg.wa.gov
                                          Attorneys for Plaintiff State of Washington

23