1   PATRICK D. ROBBINS (CABN 152288)
    Acting United States Attorney
2   PAMELA T. JOHANN (CABN 145558)
    Chief, Civil Division
3   KELSEY J. HELLAND (CABN 298888)
    Assistant United States Attorney
4   U.S. ATTORNEY'S OFFICE
    450 Golden Gate Avenue, Box 36055
5   San Francisco, California 94102-3495

6   ERIC J. HAMILTON
    Deputy Assistant Attorney General
7   DIANE KELLEHER
    Branch Director
8   CHRISTOPHER HALL
    Assistant Branch Director
9   JAMES D. TODD, JR.
    Senior Trial Counsel
10  YURI S. FUCHS
    GREGORY CONNER
11  Trial Attorneys
    U.S. DEPARTMENT OF JUSTICE
12  Civil Division, Federal Programs Branch
    P.O. Box 883
13  Washington, DC 20044

14  *Counsel for Defendants*

15

16                  **UNITED STATES DISTRICT COURT**
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17                    **SAN FRANCISCO DIVISION**

18  AMERICAN FEDERATION OF                Case No. 3:25-cv-1780-WHA
19  GOVERNMENT EMPLOYEES, *et al.*

20          Plaintiffs,                   **DEFENDANTS' REPLY IN SUPPORT OF
                                          THEIR BRIEF REGARDING
21          v.                           ADDITIONAL RELIEF AVAILABLE TO
                                          UNION PLAINTIFFS**
22  UNITED STATES OFFICE OF PERSONNEL
    MANAGEMENT, *et al.*,                 Hearing Date: April 9, 2025
23                                        Time: 8:00 am
            Defendants.                   Judge: Hon. William H. Alsup
24                                        Place: San Francisco Courthouse
                                                 Courtroom 12
25

26

27

28

Defendants' Reply in Support of Their Brief re:
Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I.    The FLRA is the Sole Forum Before Which the Union Plaintiffs Can Pursue Their
      Claims of Injury to Their Core Function of Representing Employees in Federal
      Bargaining Units ............................................................................................... 2

II.   The Union Plaintiffs Fail to Plead Sufficient Facts to Establish Organizational
      Standing ............................................................................................................ 2

      A.    The Union Plaintiffs Fail to Plead Sufficient Facts to Establish an Injury to
            Their Organizational Mission ................................................................... 3

      B.    The Union Plaintiffs Fail to Plead Any Facts to Establish Associational
            Standing .................................................................................................... 4

      C.    The Union Plaintiffs' Cannot Establish That They Face an Ongoing Injury
            or Imminent Threat of Future Injury ........................................................ 6

      D.    The Union Plaintiffs Fail to Establish That This Court Can Likely Redress
            Their Claimed Injuries .............................................................................. 7

III.  The Union Plaintiffs' Claims Are Moot ........................................................... 8

IV.   The Union Plaintiffs' APA Claims are Unlikely to Succeed ............................ 9

V.    The Union Plaintiffs' Ultra Vires Claim Lacks Merit ...................................... 10

VI.   The Union Plaintiffs Fail to Establish Irreparable Harm to Their Organizational
      Missions ............................................................................................................ 12

      A.    OPM's Compliance with this Court's Orders and its Revised Guidance
            Precludes Any Additional Award of Preliminary Injunctive Relief .......... 12

      B.    Separate Preliminary Injunctive Relief Issued in *State of Maryland v. U.S.
            Department of Agriculture* Precludes the Need for Any Additional Relief
            Here ........................................................................................................... 13

      C.    To the Extent This Court is Inclined to Extend Its Preliminary Injunction
            to Additional Defendant Agencies, It Should Limit Its Relief Only to
            Those Agencies for Which the Union Plaintiffs Have Made Any Claims of
            Harm ......................................................................................................... 14

VII.  The Public Interest Does Not Favor an Injunction .......................................... 15

VIII. This Court Should Require Plaintiffs to Provide Security for Preliminary
      Injunctive Relief ............................................................................................... 15

CONCLUSION ......................................................................................................... 16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Cases**

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) ............................................................................................. 9

*Am. Cargo Transp., Inc. v. United States*,
   625 F.3d 1176 (9th Cir. 2010) ........................................................................... 9

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
   938 F.3d 1147 (9th Cir. 2019) ........................................................................... 9

*Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*,
   No. 3:25-cv-1780, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025) ....................... 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) .......................................................................... 2

*Armstrong v. Exceptional Child Ctr., Inc.*,
   575 U.S. 320 (2015) ......................................................................................... 10

*Babbitt v. Farm Workers*,
   442 U.S. 289 (1979) ........................................................................................... 6

*Baker v. Carr*,
   369 U.S. 186 (1962) ........................................................................................... 8

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) ........................................................................................... 10

*Chamber of Com. v. Reich*,
   74 F.3d 1322 (D.C. Cir. 1996) ........................................................................ 10

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................................... 13

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ........................................................................................... 7

*Ctr. for Bio. Diversity v. Trump*,
   453 F. Supp. 3d 11 (D.D.C. 2020) ................................................................... 11

*Dalton v. Specter*,
   511 U.S. 462 (1994) .................................................................................... 11, 12

*Demery v. Arpaio*,
   378 F.3d 1020 (9th Cir. 2004) ........................................................................... 9

*Dresser v. Meba Med. & Benefits Plan*,
   628 F.3d 705 (5th Cir. 2010) ................................................................................................ 9

*Eagle Tr. Fund v. USPS*,
   365 F. Supp. 3d 57 (D.D.C. 2019) ....................................................................................... 11

*Eagle Tr. Fund v. USPS*,
   811 F. App'x 669 (D.C. Cir. 2020) ...................................................................................... 11

*Egbert v. Boule*,
   596 U.S. 482 (2022) ............................................................................................................... 8

*Elgin v. Dep't of the Treasury*,
   567 U.S. 1 (2012) .............................................................................................................. 8, 10

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
   11 F.4th 68 (2d Cir. 2021) ..................................................................................................... 5

*FDA v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024) ................................................................................................... 3, 4, 6, 12

*Fed. L. Enf't Offs. Ass'n v. Ahuja*,
   62 F.4th 551 (D.C. Cir. 2023) .......................................................................................... 9, 10

*Fornaro v. James*,
   416 F.3d 63 (D.C. Cir. 2005) ................................................................................................ 9

*Harkrader v. Wadley*,
   172 U.S. 148 (1898) ............................................................................................................... 8

*Hindes v. FDIC*,
   137 F.3d 148 (3d Cir. 1998) ................................................................................................ 10

*In re Sawyer*,
   124 U.S. 200 (1888) ............................................................................................................... 8

*Kirby Corp. v. Pena*,
   109 F.3d 258 (5th Cir. 1997) .............................................................................................. 11

*Larson v. Domestic & Foreign Com. Corp.*,
   337 U.S. 682 (1949) ............................................................................................................. 11

*Lundeen v. Mineta*,
   291 F.3d 300 (5th Cir. 2002) ......................................................................................... 10, 11

*Maryland v. USDA*,
   --- F. Supp. 3d ---, 2025 WL 973159 (April 1, 2025) ................................................... 13, 14

*Maryland v. USDA*,
   No. 1:25-cv-748, 2025 WL 919507 (Mar. 13, 2025) .......................................................... 13

*Murthy v. Missouri*,
   603 U.S. 43 (2024) ................................................................................................................. 5

*New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*,
   208 F. Supp. 3d 142 (D.D.C. 2016) ....................................................................... 3, 4

*Nken v. Holder*,
   556 U.S. 418 (2009) ........................................................................................................ 15

*Nyunt v. Chairman, Broad. Bd. of Governors*,
   589 F.3d 445 (D.C. Cir. 2009) ...................................................................................... 11

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ........................................................................................................ 13

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) .......................................................................................................... 11

*PetConnect Rescue, Inc. v. Salinas*,
   No. 20-cv-527, 2020 WL 12769052 (S.D. Cal. May 20, 2020) ................................. 12

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) ............................................................................................ 5

*Reniger v. Hyundai Motor Am.*,
   122 F. Supp. 3d 888 (N.D. Cal. 2015) ............................................................................ 6

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................................ 8

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) .......................................................................................................... 7

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .......................................................................................................... 5

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ...................................................................................................... 6, 7

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .......................................................................................................... 5

*TRW, Inc. v. FTC*,
   647 F.2d 942 (9th Cir. 1981) ........................................................................................ 13

*U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*,
   578 U.S. 590 (2016) .......................................................................................................... 9

*United States v. Fausto*,
   484 U.S 439 (1988) ........................................................................................................... 9

*United States v. W.T. Grant Co.*,
   345 U.S. 629 (1953) ........................................................................................................ 13

*Walton v. U.S. House of Reps.*,
   265 U.S. 487 (1924) .......................................................................................................... 8

*White v. Berry*,
    171 U.S. 366 (1898) ................................................................................................ 8

*Whitmore v. Arkansas*,
    495 U.S. 149 (1990) ................................................................................................ 6

**Statutes**

5 U.S.C. § 701 .................................................................................................................. 1

5 U.S.C. § 702 .................................................................................................................. 8

5 U.S.C. § 704 .................................................................................................................. 9

5 U.S.C. § 1103 .............................................................................................................. 12

**Rules**

Fed. R. Civ. P. 65(c) ...................................................................................................... 15

**Regulations**

Exec. Order No. 14,210, § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025) ............................ 7, 12

**INTRODUCTION**

Defendants' opening brief demonstrated that the union Plaintiffs are not entitled to additional relief. *See* Defs.' Br. re Add'l Relief for Union Pls., ECF No. 160 ("Defs.' Br.").

As an initial matter, this Court lacks subject matter jurisdiction over the union Plaintiffs' claims for multiple reasons. First, the union Plaintiffs cannot bring their claims in district court at all because the alleged injury for which they seek redress—their core function of representing employees in federal bargaining units in collective bargaining—can only be reviewed by the Federal Labor Relations Authority ("FLRA") under the comprehensive statutory review scheme enacted by Congress. Second, they cannot show Article III standing in any event. They cannot show organizational standing because they fail to identify: specific operations they engage in on a daily basis that have been inhibited; the time and expenses they have incurred combatting the OPM guidance; actions actually undertaken beyond filing this lawsuit; or any redirection of resources they have undertaken in response to OPM's guidance. And they cannot show associational standing because they plead no plausible facts in support of this claim of injury.

Even more critically, because the U.S. Office of Personnel Management ("OPM") has now issued revised guidance clarifying that Executive Branch agencies retain discretion to hire, retain, and terminate their own employees, and because the agencies have exercised that independent discretion, Defendants have shown that the union Plaintiffs can no longer demonstrate any ongoing or imminent threat of future harm. Further, the union Plaintiffs fail to show that their claimed injuries are likely redressable because only the Merit Systems Protection Board ("MSPB") has been authorized by Congress to order reinstatement of terminated employees—the only remaining relief Plaintiffs seek. And the union Plaintiffs' claims are moot because the OPM has revised its guidance. Plaintiffs cannot credibly show a risk of that OPM will reissue its guidance in the future.

This Court should also reject the union Plaintiffs' contention that they are likely to succeed on the merits of their claims. They cannot show that the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., supplies a cause of action because, in passing the Civil Service Reform Act ("CSRA"), Congress created an adequate remedy before the FLRA and the MSPB.

And they cannot maintain their *ultra vires* claim, especially now that OPM has revised its guidance.

OPM's revised guidance also vitiates the union Plaintiffs' claim of ongoing irreparable harm, and the issuance of a preliminary injunction by another district court in *Maryland v. U.S. Department of Agriculture* further undermines their need for additional (and extraordinary) preliminary relief here. In any event, the union Plaintiffs fail to identify any harm stemming from terminations at ten Executive Branch agencies—the Departments of Commerce, Homeland Security, Justice, Labor, State, Treasury—or at the General Services Administration ("GSA"), National Aeronautics and Space Administration ("NASA"), Office of Management of Budget ("OMB"), and Social Security Administration ("SSA").

For the reasons set forth in Defendants' opening brief and below, this Court should not extend any further relief to the union Plaintiffs.

## ARGUMENT

### I. The FLRA is the Sole Forum Before Which the Union Plaintiffs Can Pursue Their Claims of Injury to Their Core Function of Representing Employees in Federal Bargaining Units

Defendants' opening brief demonstrated that the union Plaintiffs are not entitled to additional relief from this Court because the Court does not have subject matter jurisdiction over their claims. The FLRA remains the sole forum for the union Plaintiffs to pursue their claims, *see* Defs.' Br. at 7–8 (citing, *e.g., Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) ("*AFGE v. Trump*"), especially for the union Plaintiffs' allegation that the OPM guidance at issue in this case has "prevented [them] from exercising their core functions" of "representing employees in federal bargaining units in collective bargaining and providing counseling, advice, and representation to represented employees in the event of adverse employment actions." Second Am. Compl. ¶¶ 146–47, ECF No. 90 ("SAC").

### II. The Union Plaintiffs Fail to Plead Sufficient Facts to Establish Organizational Standing

Defendants demonstrated that the union Plaintiffs cannot establish standing to maintain this action because the union Plaintiffs fail to establish organizational or associational standing and fail to show that this Court can likely redress their injuries. *See* Defs.' Br. at 8–15.

A.  **The Union Plaintiffs Fail to Plead Sufficient Facts to Establish an Injury to Their Organizational Mission**

Defendants showed that the union Plaintiffs fail to plead sufficient facts to establish an injury to their organizational mission because their conclusory allegation that the OPM guidance at issue in this case has interfered with their core business activities, *see* SAC ¶ 147, fails to identify: any specific operations they engage in on a daily basis that have been inhibited; any specific time and expenses they have incurred combatting the OPM guidance; any specific actions they have actually undertaken beyond filing this lawsuit; or any specific redirection of resources they have undertaken in response to OPM's guidance. *See* Defs.' Br. at 9–10 (citing, *e.g.*, *New England Anti-Vivisection Soc'y v. U.S. Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 166 (D.D.C. 2016)). Defendants also showed that the union Plaintiffs fail to establish that Defendants' actions "directly affected and interfered with [plaintiff's] core business activities[.]" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024), and that the union Plaintiffs "cannot spend [their] way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* at 370.

The union Plaintiffs nevertheless assert that they have established that an injury to their organizational mission. *See* Pls.' Resp. to March 24, 2025, Order to Show Cause re Relief for Pub.-Sector Union Pls. at 5–6, ECF No. 161 (Pls.' Br.") (citing Decl. of Kory Blake, ECF No. 18-6; Decl. of Everett Kelly, ECF No. 18-12; Decl. of Elizabeth Turner-Nichols, ECF No. 18-18; Decl. of Liliana Caetano Bachelder, ECF No. 18-5; Decl. of Daniel Ronneberg, ECF 18-17). But none of those declarations shows a sufficient injury to the union Plaintiffs' organizational missions. For example, Mr. Blake's declaration states that, following the terminations, the union that employs him received "hundreds of phone calls, emails, [and] other communications," that required it to "divert resources from other work to support [their] affected members and affiliates," Blake Decl. ¶ 13, that his union was "blindsided," which "made … it difficult for AFSCME to quickly respond," *id.* ¶ 14, and that his union devoted resources to assisting these employee and reassigned people from other duties to address the terminations, *id.* ¶¶ 15–16. But

Mr. Blake never identifies the union's core business activities that were affected by the union's voluntary choice to devote its resources to assisting its members and affiliates. *See generally id*.[1]

The declarations of Ms. Turner-Nichols, Ms. Caetano Bachelder, and Mr. Ronnenberg suffer from the same defects. *See* Turner-Nichols Decl. ¶ 8 (stating broadly that her union has "diverted critical resources from other union priorities"); *id*. ¶ 11 (membership loss will impact union's "financial stability and its ability to provide essential services to both members and affiliates"); Caetano Bachelder Decl. ¶ 16 (stating only that the union has dropped "non-urgent representational work to research the impact of the terminations and to counsel employees"); Ronneberg Decl., ¶ 17–18 (stating union has "diverted resources and time that the union dedicates to its mission" and declarant "set aside non-urgent representational work").[2]

For all of their filings, the union Plaintiffs' sole assertion of any disruption to a union's organizational mission is Mr. Kelly's statement that the terminations "have prevented AFGE's field representatives from filing grievances for affiliates, advising affiliates on other pressing matters such as responding to attacks on collective bargaining and organizing unrepresented members." Kelly Decl. ¶ 11; *see also id.* at ¶ 13 (stating that union representatives "typically file grievances for affiliates, help them conduct membership meetings, assist with bargaining, and provide general guidance and advice"). But Mr. Kelly's statement still amounts to little more than a bare assertion "that [his] organization will have to divert resources to combat" the terminations, which are the very type of assertions that courts have found insufficient to support organizational standing. *New England Anti-Vivisection Soc'y*, 208 F. Supp. 3d at 166; *see All. for Hippocratic Med*., 602 U.S. at 395.

**B.  The Union Plaintiffs Fail to Plead Any Facts to Establish Associational Standing**

Defendants showed that the union Plaintiffs fail to plead any facts to establish associational standing. *See* Defs.' Br. at 10–12. The union Plaintiffs identify only two members

---

[1] The union Plaintiffs assert that their "representational duties" may "include counseling represented employees on their rights in circumstances of termination, RIFs, or other adverse actions," Pls.' Br. at 5, but none of the declarations they cite state as much.

[2] Plaintiffs claim irreparable harm resulting from lost membership dues. *See infra*, at 17. To the extent that Plaintiffs also assert an injury based on lost dues, those claims are rebutted by Plaintiffs own statements. *See id*.

of one union Plaintiff, AGFE Local 3403, that they say were terminated from the National

Science Foundation ("NSF"), an agency Defendant against which they no longer seek relief since

all but two terminated employees have been reinstated. The union Plaintiffs cannot establish

associational standing because they have not alleged, *see* SAC ¶ 150, nor could they show, that

all of their members: (i) have been affected by the terminations of probationary employees as not

all their members are probationary employees; (ii)  are probationary employee who have been

terminated as a result of the OPM guidance at issue in this case; and (iii)  are employed by

certain Executive Branch agencies that have terminated any probationary employees as a result

of the OPM guidance at issue in this case. *See* Defs' Br. at 11 (citing *Summers v. Earth Island

Inst.*, 555 U.S. 488, 498–99 (2009)). The union Plaintiffs also fail to allege facts about specific

members and the specific harms they will imminently face, not just allege generalized harm to an

indistinct group. *See id*. at 11–12 (citing *Faculty, Alumni, & Students Opposed to Racial

Preferences v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021); *Prairie Rivers Network v. Dynegy

Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021)). In the absence of specific

allegations that the union Plaintiffs represent employees at each of the named defendant agencies

in this case, the union Plaintiffs cannot maintain their standing to pursue relief against those

agencies. *See Murthy v. Missouri*, 603 U.S. 43, 61 (2024) ("[S]tanding is not dispensed in gross,"

and "'plaintiffs must demonstrate standing for each claim they press' against each defendant,

'and for each form of relief that they seek.'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413,

431 (2021))).

      The union Plaintiffs' supplemental brief further highlights the lack of specific evidence

that might support associational standing. They assert that "the many union members who

remain employed at the agencies impacted by these terminations have suffered and will continue

to suffer immediate harm from the swift, unexpected, and sweeping terminations of their

colleagues without planning or advance notice," Pls. Br. at 5, but they offer no supporting

citation for this statement. *See Summers*, 555 U.S. at 498 (holding that there must be "specific

allegations establishing that at least one identified member had suffered or would suffer harm.").

The union Plaintiffs otherwise argue that they have associational standing because "the

terminated probationary employees themselves faced moving expenses, new job searches, and the loss of their healthcare benefits as a result of OPM's unlawful orders to agencies to terminate probationary employees." Pls. Br. at 5 (citing declarations). But all they offer in support of that assertion are generalized allegations of harms to probationary employees that are not specific to the agencies they have sued. *See, e.g.*, Kelly Decl. ¶ 19 ("I have heard from or am aware of thousands of federal employees that have been removed during their probationary period."). The union Plaintiffs' failure to offer agency-specific evidence means that they lack standing to assert claims against agencies who are otherwise named in the Second Amended Complaint but for whom there are no specific allegations of harm. *See Reniger v. Hyundai Motor Am.*, 122 F. Supp. 3d 888, 895 (N.D. Cal. 2015) ("[W]here there are multiple defendants and multiple claims, there must exist at least one named plaintiff with Article III standing as to each defendant and each claim."). This failure is highlighted by the fact that, at certain agencies like the Internal Revenue Service ("IRS"), the National Treasury Employees Union (which is not a party to this case) is the exclusive representative with respect to IRS employees. As a result, the union Plaintiffs cannot establish associational standing for employees at IRS or any other similarly-situated agency. And while the union Plaintiffs cite as harm the additional burdens that their members will suffer because of a reduction in services otherwise provided by probationary employees, the union Plaintiffs fail to assert that this harm has actually occurred or is "certainly impending." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

### C. The Union Plaintiffs' Cannot Establish That They Face an Ongoing Injury or Imminent Threat of Future Injury

Defendants' opening brief demonstrated that, now that OPM has issued revised agency guidance to clarify that agencies retain discretion to hire, retain, and terminate employees, the union Plaintiffs can no longer maintain standing. *See* Defs.' Br. at 10 (citing, *e.g.*, *All. for Hippocratic Med.*, 602 U.S. at 370; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). The union Plaintiffs make no credible effort to show that they face an imminent risk that that OPM will, in the future, direct agencies to terminate employees. *See generally* SAC; *see*

*generally* Pls.' Br. Because the union Plaintiffs request only forward-looking relief, however, their failure to show that they still face a threatened injury that is "certainly impending" or a "substantial risk that the harm will occur," *Susan B. Anthony List*, 573 U.S. at 158 (internal quotation marks omitted) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)), means they cannot establish standing to pursue that relief.

**D.  The Union Plaintiffs Fail to Establish That This Court Can Likely Redress Their Claimed Injuries**

The union Plaintiffs also fail to meet their burden of establishing that their injuries are redressable. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Their attempts to do so consist of a single legal conclusion in their Second Amended Complaint, *see* SAC ¶ 150, and a single sentence in their brief, *see* Pls.' Br. at 6. This failure alone warrants dismissal.

In any event, even if the union Plaintiffs could have shown redressability at some earlier point, this Court has already provided it by issuing its February 27, 2025, TRO. *See Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgmt.*, No. 3:25-cv-1780, 2025 WL 660053, at *14 (N.D. Cal. Feb. 28, 2025). In that order, the Court held that OPM lacks statutory authority to direct personnel actions at other agencies and that agencies had the opportunity to rescind terminations if they acted based on confusion about OPM's authority. *See id.* at *4–6, *14. Indeed, in compliance with the Court's order, OPM issued clarifying guidance that "[a]gencies have ultimate decision-making authority over, and responsibility for," performance-based personnel actions against probationary employees. Mem. from Charles Ezell, Acting Director, OPM, to Heads and Acting Heads of Departments and Agencies at 2 (Revised Mar. 4, 2025), ECF No. 78 ("Revised OPM Guidance"). Any confusion that might have existed was therefore cleared up, and agencies were left to make their own politically accountable decisions. At least two agencies did so, in fact, rescinding some or all of their probationary employees' terminations following OPM's clarification. *See* SAC ¶ 142 (NSF); *see also* Decl. of Sydney Rose at 33–35, *Maryland v. U.S. Dep't of Agric.*, No. 1:25-cv-748 (D. Md. Mar. 17, 2025), ECF No. 52-1 (Labor). To be sure, most did not. *See, e.g.*, Decl. of Mark Green ¶¶ 7–9, ECF No. 127-3 (Interior). But that was to be expected—the President had himself directed agencies to optimize the federal workforce

Defendants' Reply in Support of Their Brief re:
Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

via Executive Order on February 11, 2025, *see* Exec. Order No. 14,210, § 3, 90 Fed. Reg. 9669 (Feb. 11, 2025), and agencies made their own employment decisions against that backdrop. All of that illustrates two points: (1) that any perceived direction from OPM can no longer be found to be the cause of the union Plaintiffs' asserted injury, if it ever could have been; and (2) that any appropriate remedial order is limited to clarifying OPM's role rather than reversing terminations that the agencies would have made had OPM's initial guidance been even clearer about OPM's limited statutory authority over other agencies' personnel decisions—and the agencies' ultimate discretion over those decisions.

Defendants also demonstrated that the union Plaintiffs cannot show that their claims of injury are likely redressable by this Court because the APA only authorizes a federal district court to grant injunctive relief subject to traditional equitable limitations, *see* 5 U.S.C. § 702, and reinstatement is not a traditionally available equitable remedy. *See* Defs.' Br. at 13 (citing *Sampson v. Murray*, 415 U.S. 61, 83 (1974); *Baker v. Carr*, 369 U.S. 186, 231 (1962); *Walton v. U.S. House of Reps.*, 265 U.S. 487, 490 (1924); *Harkrader v. Wadley*, 172 U.S. 148, 165 (1898); *White v. Berry*, 171 U.S. 366, 377 (1898); *In re Sawyer*, 124 U.S. 200, 212 (1888)). The creation of the remedy of reinstatement, is "a legislative endeavor," *Egbert v. Boule*, 596 U.S. 482, 491 (2022), created under the CSRA, and therefore one that may only be employed by the Merit Systems Protection Board, not federal district courts. *See* Defs.' Br. at 13–14 (citing *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 6 (2012)).

Absent redressability, the union Plaintiffs lack standing and therefore fail to establish that this Court has jurisdiction over any of their remaining claims.

## III. The Union Plaintiffs' Claims Are Moot

Defendants demonstrated that OPM's compliance with this Court's orders—and its issuance of revised guidance clarifying that agencies retain the discretion to hire, retain, and terminate employees—render this case moot. *See id*. at 18–19. The government has notified all defendant agencies and all terminated probationary employees of this Court's holding and that OPM issued revised guidance clarifying that it "is not directing agencies to take any specific performance-based actions regarding probationary employees[,]" and further clarifying that

"[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." Revised OPM Guidance at 2. OPM's revision renders this case moot. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1150 (9th Cir. 2019) (Army's revision of regulation and issuance of new memoranda mooted plaintiff's claims). Moreover, in considering OPM's Revised Guidance, this Court should "presume the government is acting in good faith" when it makes declarations of this type, *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010), and cannot assume that they are likely to recur. In light of these events, the union Plaintiffs can no longer show that there is a live controversy over which this Court has jurisdiction. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *Demery v. Arpaio*, 378 F.3d 1020, 1025–26 (9th Cir. 2004) (Where a plaintiff seeks injunctive relief, a case "is normally moot upon the termination of the conduct at issue" unless "there is a likelihood of recurrence.").

## IV. The Union Plaintiffs' APA Claims are Unlikely to Succeed

The union Plaintiffs contend that their claims are likely to succeed because this Court already held that OPMs' initial guidance exceeded its statutory authority. *See* Pls.' Br. at 6–7. But the union Plaintiffs cannot maintain their APA claims for purposes of any obtaining any additional relief because the CSRA provides the exclusive remedy for federal employment claims, *see United States v. Fausto*, 484 U.S 439, 455 (1988); *see also Fed. L. Enf't Offs. Ass'n v. Ahuja*, 62 F.4th 551, 557–67 (D.C. Cir. 2023) ("*FLEOA*"); *Fornaro v. James*, 416 F.3d 63, 66–69 (D.C. Cir. 2005), and because the APA does not supply a cause of action for their claims. The APA only authorizes judicial review of "final agency action for which *there is no other adequate remedy in a court.*" 5 U.S.C. § 704 (emphasis added); *see also U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016) ("Even if final, an agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court."). If a plaintiff has an adequate legal remedy, the APA does not provide a cause of action. *See, e.g., Dresser v. Meba Med. & Benefits Plan*, 628 F.3d 705, 709 (5th Cir. 2010) (affirming the dismissal of APA claim because plaintiff had an adequate remedy). In this case, the union Plaintiffs have an adequate remedy because they can proceed as a party before the FLRA and as

1   a representative or intervenor before the MSPB. The APA thus does not supply a cause of action

2   for the union Plaintiffs to maintain their claims for additional relief.

3        Additionally, even if the union Plaintiffs had standing to pursue their notice and comment

4   claim, the CSRA also precludes district court review of that claim as well. *See FLEOA*, 62 F.4th

5   at 562–63. The union Plaintiffs' APA claims are thus likely to fail.

6   **V.  The Union Plaintiffs' Ultra Vires Claim Lacks Merit**

7        Defendants' numerous briefs have shown that the union Plaintiffs' *ultra vires* claim lacks

8   merit. The union Plaintiffs contend that they are likely to succeed on their *ultra vires* claim

9   solely because this Court already ruled in favor of the organizational Plaintiffs. *See* Pls.' Br. at

10  6–7. But the Supreme Court has expressly held that an *ultra vires* cause of action is not available

11  whenever there is another "meaningful and adequate opportunity for judicial review," or "clear

12  and convincing evidence that Congress intended to deny … District Court jurisdiction[.]" *Bd. of*

13  *Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991); *see also*

14  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015).

15       As a preliminary matter, when a plaintiff invokes both APA and *ultra vires* causes of

16  action, a court should first consider the plaintiff's APA claim. *See Chamber of Com. v. Reich*, 74

17  F.3d 1322, 1326–27 (D.C. Cir. 1996). Here the union Plaintiffs' claims sound more under the

18  APA than anything else, as they all challenge the same OPM guidance (which has since been

19  revised). *See* SAC ¶¶ 202–29. That alone should be the end of their *ultra vires* claim. Moreover,

20  the CSRA establishes exclusive procedures for review of employment claims and labor disputes

21  against the federal government. *See, e.g., Elgin*, 567 U.S. at 10. That exclusive review scheme

22  precludes courts from providing supplemental remedies, including through *ultra vires* review.

23  And the CSRA's exclusive review procedures offer the union Plaintiffs a meaningful and

24  adequate opportunity for judicial review of their claims. *See id*. at 21 (finding "constitutional

25  claims can receive meaningful review within the CSRA scheme"). Thus, there is no basis for this

26  Court to entertain their claim for non-statutory *ultra vires* review in this case.

27       Even if the union Plaintiffs could surmount those problems, their *ultra vires* claim would

28  still fail. To prevail on an *ultra vires* claim, a plaintiff must establish that a government official

Defendants' Reply in Support of Their Brief re:
Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

1  "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v.*

2  *FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *accord Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cir.

3  2002) (noting that *ultra vires* action must involve "a plain violation of an unambiguous and

4  mandatory provision of the statute" that "is of a summa or magna quality") (citation omitted).

5  Mere allegations of error (even allegations of constitutional error) do not satisfy that demanding

6  standard. *See Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 68 n.6 (D.D.C. 2019), *aff'd*, 811 F.

7  App'x 669, 670 (D.C. Cir. 2020) ("[A] constitutional claim is separate from an *ultra vires*

8  claim."). Nor do claims that "simply involve a dispute over statutory interpretation." *Lundeen*,

9  291 F.3d at 312 (quoting *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997)). Rather, an

10  officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'"

11  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 n.11 (1984) (citation omitted);

12  *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (suit must allege

13  that official is "not doing the business which the sovereign has empowered him to do"). This is a

14  "very stringent standard," rendering an *ultra vires* claim "essentially a Hail Mary pass" that "in

15  court as in football, … rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d

16  445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).

17      Indeed, "claims simply alleging that the President has exceeded his statutory authority are

18  not 'constitutional' claims[.]" *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the

19  Supreme Court rejected the proposition that "whenever the President acts in excess of his

20  statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id*. at 471.

21  Rather, the Court explained that not "every action by the President, or by another executive

22  official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id*. at

23  472. The Constitution is implicated only if executive officers rely on it as an independent source

24  of authority to act or if the officers rely on an unconstitutional statute. *Id*. at 473 & n.5.

25      The union Plaintiffs cannot meet the high bar to pursue their *ultra vires* claim (or their

26  alternative separation of powers claim) because OPM's revised guidance does not violate any

27  clear statutory restriction on OPM's authority; instead, the revised guidance constitutes a lawful

28  exercise of OPM's well established constitutional and statutory authority, acting under the

direction of the President and Congress, to regulate the federal workforce. *See Ctr. for Bio.*

*Diversity v. Trump*, 453 F. Supp. 3d 11, 51–54 (D.D.C. 2020) (rejecting separation-of-powers

claim based on Appropriations Clause under *Dalton* because "[a]t bottom, this is just an

allegation that [executive officials] exceeded their statutory authority"). OPM was acting within

its authority under the CSRA to revise its guidance to clarify how agencies should carry out the

President's directive in Executive Order 14,210 while still exercising their own authority to hire,

retain, and terminate employees. *See, e.g.*, 5 U.S.C. § 1103(a)(7), (c)(2)(A)(i). This case concerns

"simply" whether Defendants have "exceeded [their] statutory authority" and "no constitutional

question whatever is raised"—"only issues of statutory interpretation." *Dalton*, 511 U.S. at 473–

74 & n.6 (citation omitted). The union Plaintiffs' *ultra vires* and separation of powers claims

thus fail.

## VI. The Union Plaintiffs Fail to Establish Irreparable Harm to Their Organizational Missions

Defendants demonstrated that the union Plaintiffs fail to establish that, absent extending

the preliminary injunction to provide additional relief to them, they will suffer irreparable harm

because existing relief and actions by OPM establish that any future harms are speculative. In

any event, any further preliminary injunctive relief should be limited because the union Plaintiffs

have not identified any harm stemming from terminations at ten Executive Branch agencies.[3]

---

[3] Defendants acknowledge that much of what the union Plaintiffs initially claimed as harms arising from OPM's initial guidance might have been sufficient to show irreparable harm to their members. But now that OPM has issued its revised guidance clarifying that agencies retain the absolute discretion to hire, retain, and terminate their employees, the union Plaintiffs can no longer establish irreparable harm. Moreover, the union Plaintiffs' claim that they "need to respond to these terminations" and that this otherwise "undermine[d] the Unions' ability to effectively assist other represented employees on their rights in circumstances of termination, RIFs, or other adverse actions," Pls.' Br. at 8, is not sufficient to establish ongoing harm. *See PetConnect Rescue, Inc. v. Salinas*, No. 20-cv-527, 2020 WL 12769052, at *3 (S.D. Cal. May 20, 2020) (rejecting the argument for irreparable harm that "Plaintiff had to divert its resources"). As explained in Defendants' various other briefs, this theory of resource diversion is insufficient to establish an injury for standing or irreparable harm. *See* Defs.' Br. at 9 (citing, *e.g.*, *All. for Hippocratic Med.*, 602 U.S. at 370).

Defendants' Reply in Support of Their Brief re:
Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

**A. OPM's Compliance with this Court's Orders and its Revised Guidance Precludes Any Additional Award of Preliminary Injunctive Relief**

Plaintiffs neither allege nor contend that they face the threat of irreparable harm from OPM's revised guidance, *see generally* SAC, Pls.' Br. at 7–9, and their own new allegations show that agencies are, in fact, reinstating previously terminated probationary employees. *See* SAC ¶ 142 (noting the reinstatement of previously terminated employees by NSF). They nevertheless maintain that they face irreparable harm based on past terminations. *See* Pls.' Br. at 7–9.

But OPM's compliance with this Court's orders and its revised guidance precludes any additional award of preliminary injunctive relief under well settled principles of equitable discretion. Even where a defendant's cessation of conduct does not moot the case against it, a plaintiff must still establish that equitable relief is warranted, a showing that requires "more than the mere possibility" of recurrence "which serves to keep the case alive." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953); *see also TRW, Inc. v. FTC*, 647 F.2d 942, 954 (9th Cir. 1981) (discussing difference between standards and burdens of proof). To obtain equitable relief, a plaintiff must establish a "likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). That "requirement … cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again[.]" *Id.* But that is exactly the situation here. Agencies are now free to make their own politically accountable decisions. The union Plaintiffs thus fail to demonstrate they still face irreparable harm from OPM's guidance.

**B. Separate Preliminary Injunctive Relief Issued in *State of Maryland v. U.S. Department of Agriculture* Precludes the Need for Any Additional Relief Here**

Apart from OPM's compliance with this Court's orders, the preliminary injunction issued in *State of Maryland v. U.S. Department of Agriculture*, No. 1:25-cv-748 (D. Md.) ("*Maryland v. USDA*"), highlights that no further relief is necessary. There, the U.S. District Court for the District of Maryland issued a temporary restraining order restraining the removals of probationary/trial period employees at 18 agencies that largely overlap with the agency defendants named in this litigation, *see Maryland v. USDA*, No. 1:25-cv-748, 2025 WL 919507

at *1 (Mar. 13, 2025), further extending its TRO on March 26, 2025. *See* Mem. & Order at 2, *Maryland v. USDA*, *supra* (Mar. 26, 2025), ECF No. 115. And on April 1, 2025, the court issued a preliminary injunction broadening the number of enjoined agencies to 20 (adding OPM and the Department of Defense) but narrowing the scope of the injunction to that 20 states that are parties to that suit, including California. *See Maryland v. USDA*, --- F. Supp. 3d ---, 2025 WL 973159, at *40–41 (April 1, 2025). Thus, at least for the time being, the union Plaintiffs' claimed harms are already being largely if not entirely remedied, and no further preliminary injunctive relief before this Court is necessary.[4]

### C.  To the Extent This Court is Inclined to Extend Its Preliminary Injunction to Additional Defendant Agencies, It Should Limit Its Relief Only to Those Agencies for Which the Union Plaintiffs Have Made Any Claims of Harm

To the extent this Court is inclined to extend its preliminary injunction to additional defendant agencies, it should limit its relief only to those agencies for which the union Plaintiffs have made any claims of harm.

In addition to suing OPM, Plaintiffs have brought suit against twenty-two Executive Branch agencies, including fifteen Departments—Agriculture; Commerce; Defense; Education; Energy; Health and Human Services; Homeland Security; Housing and Urban Development; Justice; the Interior; Labor; State; the Treasury; Transportation; and Veterans Affairs—and seven independent federal agencies—the Environmental Protection Agency; GSA; NASA; NSF; OMB; Small Business Administration; and SSA. *See* SAC ¶¶ 34–77. Plaintiffs allege that they have named each of the twenty-two agency defendants "solely … for the purposes of effectuating complete relief against … OPM[.]" *Id.* ¶ 79.

---

[4] Defendants appealed the district court's TRO and moved for a stay pending appeal, which was denied by the Fourth Circuit. *See* Order Denying Motion to Stay TRO Pending Appeal, *Maryland v. USDA*, No. 25-1248 (4th Cir. Mar. 21, 2025), ECF No. 20. Defendants also appealed the district court's preliminary injunction to the Fourth Circuit on April 1, 2025, *see* Notice of Interlocutory Appeal, *Maryland v. USDA*, *supra* (April 1, 2025), ECF No. 127, and filed motions to stay pending appeal in the district court and the Fourth Circuit, *see* Defs.' Mot. to Stay Prelim. Inj. Pending Appeal, *Maryland v. USDA*, *supra* (D. Md. Apr. 3, 2025), ECF No. 131; Mot. for a Stay Pending Appeal, *Maryland v. USDA*, No. 25-1248 (4th Cir. Apr. 4, 2025), ECF No. 34.

Plaintiffs' declarations, however, fail to identify any harm stemming from terminations at ten Executive Branch agencies—the Departments of Commerce, Homeland Security, Justice, Labor, State, Treasury, or at GSA, NASA, OMB, or SSA. *See* Decls. in Supp. of Pls.' *Ex Parte* Application for Emergency TRO, ECF Nos. 18-3 – 18-20; *see also* Decls. in Supp. of Pls.' Reply in Supp. of *Ex Parte* Application for Emergency TRO, ECF Nos. 39-1 – 39-6. As a result, this Court should decline to extend its preliminary injunction to these ten agencies.

## VII.    The Public Interest Does Not Favor an Injunction

The union Plaintiffs' asserted harms are outweighed by the harm to the government and public interest that would result from the requested relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (noting that the balancing of harms and public interest requirement for emergency injunctive relief merge when "the Government is the opposing party").

In this case, the government has a strong interest in maintaining its authority to manage its own internal affairs. Against this, the union Plaintiffs seek to restore or maintain employment at federal agencies at their preferred level and in their preferred manner. Yet, restoration of employment status relies on the independent judgment of employees (who are not parties in this suit) to accept reinstatement to full duty status, and on agencies' independent decisions about how to deploy reinstated employees in light of agency priorities and the continuing uncertainty about those employees' status.

## VIII.    This Court Should Require Plaintiffs to Provide Security for Preliminary Injunctive Relief

This Court should require Plaintiffs to post a bond for the preliminary injunctive relief that they have already been awarded and for any additional preliminary injunctive relief it might order. Rule 65(c) of the Federal Rules of Civil Procedure provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A bond would be warranted here, in an amount that could appropriately compensate Defendants for the losses caused by a preliminary injunction in the event that Defendants are ultimately found to have

been wrongfully enjoined. Plaintiffs are well-resourced unions, organizations and a State seeking to set aside thousands of employee terminations at 23 Executive Branch agencies, 22 of which were only joined pursuant to Rule 19 of the Federal Rules of Civil Procedure for the purposes of effectuating relief. This Court has already awarded preliminary relief and ordered the reinstatement of thousands of employees across six agencies. It is beyond dispute that such preliminary relief has imposed, and will continue to impose, significant monetary losses during this litigation on each defendant. The Court should thus require Plaintiffs to provide security in an amount commensurate with these costs.

## CONCLUSION

For the foregoing reasons, the Court should decline to extend any additional relief to the union Plaintiffs.

Dated: April 4, 2025

Respectfully submitted,

PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
GREGORY CONNER
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

Defendants' Reply in Support of Their Brief re:
Additional Relief Available to Union Plaintiffs
3:25-cv-1780-WHA

16