Scott A. Kronland (SBN 171693)
Stacey M. Leyton (SBN 203827)
Eileen B. Goldsmith (SBN 218029)
Danielle E. Leonard (SBN 218201)
Robin S. Tholin (SBN 344845)
James Baltzer (SBN 332232)
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Tel. (415) 421-7151
Fax (415) 362-8064
skronland@altber.com
sleyton@altber.com
egoldsmith@altber.com
dleonard@altber.com
rtholin@altber.com
jbaltzer@altber.com

*Attorneys for Plaintiff Organizations*

[Additional Counsel on signature page]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO; AMERICAN FEDERATION OF STATE COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al., <br><br> Defendants. | Case No. 25-cv-01780-WHA <br><br> **PUBLIC-SECTOR UNION PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF FURTHER INJUNCTIVE RELIEF** |

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................................I

TABLE OF AUTHORITIES..........................................................................................................II

INTRODUCTION ........................................................................................................................1

ARGUMENT ...............................................................................................................................2

      I.     This Court Has Already Correctly Resolved That It Has Subject Matter
           Jurisdiction Over the Public-Sector Unions' Claims...................................................2

      II.    The Public-Sector Union Plaintiffs Have Standing........................................................4

      III.   The Public-Sector Union Plaintiffs Are Experiencing Irreparable Harm from
           Defendants' Unlawful Mass Termination of Probationary Employees. ......................9

      IV.   The Unions' Claims Are Not Moot, and Further Injunctive Relief Is
           Required. ...................................................................................................................11

      V.    This Court Should Grant a Further Preliminary Injunction to the Public-
           Sector Union Plaintiffs That Covers Additional Relief Defendants and a
           Broader Time Period..................................................................................................13

      VI.   The Court Need Not Revisit Its Determination that No Security is Required. .........14

CONCLUSION ...........................................................................................................................14

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Federal Cases**

4

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ................................................................................................8

5

6

*Baker v. Carr*,
    369 U.S. 186 (1962) ................................................................................................8

7

8

*Barnes v. Healy*,
    980 F.2d 572 (9th Cir. 1992) ................................................................................11

9

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*,
    944 F.3d 773 (9th Cir. 2019) ..................................................................................4

10

11

*County of Los Angeles v. Davis*,
    440 U.S. 625 (1979) ..............................................................................................11

12

13

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*,
    45 F.4th 846 (5th Cir. 2022) ..................................................................................8

14

*Diaz v. Brewer*,
    656 F.3d 1008 (9th Cir. 2011) ..............................................................................14

15

16

*Driftless Area Land Conservancy v. Valcq*,
    16 F.4th 508 (7th Cir. 2021) ..................................................................................8

17

18

*East Bay Sanctuary Covenant v. Biden*,
    993 F.3d 640 (9th Cir. 2021) ................................................................................10

19

20

*East Bay Sanctuary Covenant v. Garland*,
    994 F.3d 962 (9th Cir. 2020) ........................................................................10, 14

21

*East Bay Sanctuary Covenant v. Trump*,
    349 F.Supp.3d 838 (N.D. Cal. 2018), *aff'd sub nom. East Bay Sanctuary Covenant
    v. Biden*, 993 F.3d 640 (9th Cir. 2021) ...............................................................10

22

23

*F.T.C. v. Affordable Media*,
    179 F.3d 1228 (9th Cir. 1999) ..............................................................................11

24

25

*Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*,
    11 F.4th 68 (2d Cir. 2021) ......................................................................................5

26

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ................................................................................................5

27

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*,
    82 F.4th 664 (9th Cir. 2023) (en banc) ..................................................................4

28

*Garcia v. Lawn*,
   805 F.2d 1400 (9th Cir. 1986) ........................................................................8

*Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*,
   739 F.2d 466 (9th Cir. 1984) .......................................................................11

*Griffin v. HM Florida-ORL, LLC*,
   144 S. Ct. 1 (2023) .......................................................................................7

*Harkrader v. Wadley*,
   172 U.S. 148 (1898) .....................................................................................8

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) .....................................................................................5

*Johnson v. Couturier*,
   572 F.3d 1067 (9th Cir. 2009) .....................................................................14

*Kennedy v. Warren*,
   66 F.4th 1199 (9th Cir. 2023) .......................................................................4

*Mi Familia Vota v. Fontes*,
   129 F.4th 691 (9th Cir. 2025) .......................................................................5

*Nat'l Treasury Emps. Union v. Vought*,
   __ F.Supp.3d __, 2025 WL 942772 (D.D.C. Mar. 28, 2025).........................11

*Paroczay v. Hodges*,
   219 F. Supp. 89 (D.D.C. 1963) .....................................................................8

*Pelicone v. Hodges*,
   320 F.2d 754 (D.C. Cir. 1963) .....................................................................8

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
   2 F.4th 1002 (7th Cir. 2021) .........................................................................5

*Sampson v. Murray*,
   415 U.S. 61 (1974) .......................................................................................8

*Save Strawberry Canyon v. Dept. of Energy*,
   613 F.Supp.2d 1177 (N.D. Cal. 2009)..........................................................10

*In re Sawyer*,
   124 U.S. 200 (1888) .....................................................................................8

*SEIU Healthcare 1199NW v. Community Psychiatric Clinic*,
   2019 WL 3779872 (W.D. Wash. Aug. 12, 2019).........................................11

*U.S. Department of Defense v. American Federation of Government Employees*,
   No. 6:25-cv-119 (W.D. Tex., filed March 27, 2025) .....................................3

*Vitarelli v. Seaton*,
   359 U.S. 535 (1959) ........................................................................................ 8

*Walton v. House of Reps. of Okl.*,
   265 U.S. 487 (1924) ........................................................................................ 8

**Federal Statutes**

5 U.S.C.
   § 705 .............................................................................................................. 7
   § 706 .................................................................................................... 7, 8, 14

28 U.S.C.
   § 1331 ............................................................................................................ 3
   § 1345 ............................................................................................................ 3

1

## INTRODUCTION

2      The Public-Sector Union Plaintiffs[1] have demonstrated that they are entitled to a preliminary

3  injunction, and that injunction should reach not only the relief defendants already subject to this

4  Court's preliminary injunction ruling (Dkt. 132), but also additional departments and agencies where

5  Defendants' unlawful terminations of probationary employees have caused harm to the Public-Sector

6  Union Plaintiffs.

7      This further injunction is all the more important now that the Maryland District Court has

8  limited the relief in that case, granting a preliminary injunction that requires the defendant federal

9  agencies to restore the employment status of only those previously terminated probationary

10  employees who live or work within the plaintiff states.  That order, therefore, does not cover the

11  employees terminated and services cut in other states.  The Public-Sector Unions have demonstrated

12  that all factors support further injunctive relief extending to all of those agencies at which they

13  represent federal employees, as identified in the chart Plaintiffs previously provided the Court,

14  attached again here as Ex. 1 for the Court's convenience (Dkt. 174-3).

15      First, there can no longer be any real doubt that the Public-Sector Union Plaintiffs are likely to

16  succeed on their claims.  Notwithstanding the efforts of Defendants to re-argue, for the third time, the

17  question of this Court's jurisdiction, these Plaintiffs have demonstrated a likelihood of success on

18  their ultra vires and APA claims, for all the reasons previously explained (Dkts. 44, 45, 120, 132) and

19  because the Court has now concluded that those claims are not subject to administrative channeling to

20  the FLRA or MSPB.  Dkt. 153.  Thus, the claims of these Plaintiffs stand on identical footing to the

21  organizational plaintiffs as to which the Court has already ordered injunctive relief.

22      Next, Defendants' challenges to the Public-Sector Union Plaintiffs' standing to sue and their

23  showing of irreparable harm are meritless.  Through the declarations submitted in support of the

24  initial TRO and this further request for injunctive relief, the Plaintiffs have thoroughly demonstrated

25  the harm to themselves and their members (including those who were terminated as well as those

26

27  ─────────────────────
   [1] The list of Public-Sector Union Plaintiffs in Plaintiffs' OSC Response on whose behalf Plaintiffs seek
   a preliminary injunction (Dkt. 161 at 1) inadvertently omitted AFGE Local 2110.  Local 2110 should
28  also be included in the scope of any preliminary injunction ordered by the Court.

who remain, who must do more with less).  Defendants rehash their previous mootness arguments, which are no more persuasive now than when the Court previously rejected them.  Dkt. 88 at 4-5; Dkt. 132.  Defendants do not even contest that the balance of equities and public interest strongly favor expanding the injunction to protect the Public-Sector Union Plaintiffs, as they plainly do.  *See generally* Defs' OSC Response, Dkt. 160; *compare* Pls' OSC Response, Dkt. 161 at 10.

Plaintiffs have identified the specific relief departments and agencies as to which expanded injunctive relief is appropriate, and respectfully request that the Court expand the preliminary injunction to require reinstatement of unlawfully terminated probationary employees at those additional departments and agencies.

## ARGUMENT

### I.    This Court Has Already Correctly Resolved That It Has Subject Matter Jurisdiction Over the Public-Sector Unions' Claims.

Defendants' attempt to re-argue jurisdictional channeling should be summarily rejected.  The parties initially briefed this issue with respect to Plaintiffs' TRO motion.  Dkts. 18 (Motion for TRO and Show Cause Re: PI); 33 (Opp.); 39 (Reply); 45 (TRO Mem. Opinion).  This Court then provided both parties additional opportunity to further brief these issues, Dkts. 148, 149, 150, before resolving the question whether the Public-Sector Unions' claims were channeled.  Dkt. 153.  At each stage of briefing, Defendants have argued the same issue they revisit here—FLRA channeling.  Dkt. 33 at 13; Dkt. 150 at 1 ("Defendants' arguments in that regard remain unchanged: the OSC, MSPB, and FLRA remain the effective and exclusive channels to any challenge the propriety of federal employee removals").

There is no basis for further reconsideration.  This Court correctly rejected Defendants' arguments that the FLRA is the appropriate venue to hear the Public-Sector Unions' ultra vires and APA claims against OPM's government-wide mass terminations.  Dkt. 153 at 3 (rejecting contention that MSPB and FLRA have any special expertise pertaining to these claims); *id.* at 4 (concluding Plaintiffs' claims are "collateral to the types of claims brought before the MSPB or the FLRA"); *id.* at 6-8 (concluding that Plaintiffs' claims cannot be heard by MSPB or FLRA).  Defendants continue to conflate labor disputes against employing agencies with whom these unions have bargaining

agreements (which can be heard by the FLRA *unless they involve government-wide rules*, as this Court correctly noted, Dkt. 153 at 8), with claims against OPM for unlawful government-wide action in excess of statutory authority and contravention of the APA.  The latter kind of claim cannot be heard by the FLRA, as this Court already explained at length.  Dkt. 153 at 2-10.  Plaintiffs' claims here bring the latter sort of claim, not the former.  That OPM's unlawful actions have interfered with the Unions' ability to perform core representative functions—which is undeniably true, given the breadth, timing, scope, lack of transparency, and all-around sloppiness that has characterized Defendants' unlawful termination scheme—does not convert these claims into something they are not.  Defendants cite some new cases involving APA claims that they contend were heard during appeals to the FLRA.  Dkt. 160 at 7-8.  But each of those cases involve APA claims challenging the actions taken by FLRA Administrative Law Judges and arbitrators during the FLRA process, not unlawful government-wide action by OPM.  Dkt. 160 at 7-8.  OPM's *third* bite at this particular apple fares no better than the rest.

Underscoring the speciousness of the argument that this Court lacks jurisdiction over these claims, the Government is now taking a wholly contradictory position in *U.S. Department of Defense v. American Federation of Government Employees*, No. 6:25-cv-119 (W.D. Tex., filed March 27, 2025).  There, the Government seeks a declaratory judgment that a long list of federal agencies may terminate their collective bargaining agreements pursuant to an Executive Order entitled *Exclusions from Federal Labor-Management Relations Programs*, issued the same day the complaint was filed.[2] While the Government here asserts that the FSL-MRS entirely precludes district court jurisdiction over any claims involving agencies' terminations of federal employees, the Government there has pleaded that the Texas district court *has jurisdiction* pursuant to both 28 U.S.C. §§ 1331 and 1345 to

---

[2] That Executive Order, issued on Thursday, March 27, 2025, purports to expand the CSRA's "national security" exception for collective bargaining to the majority of federal agencies, thereby further eliminating the FLRA "channel" Defendants insist on continuing to invoke.  That Order was entered in express retaliation against Plaintiff Public-Sector Unions for challenging the unlawful actions by this Administration.  *See* Fact Sheet, available at: https://www.whitehouse.gov/fact-sheets/2025/03/fact-sheet-president-donald-j-trump-exempts-agencies-with-national-security-missions-from-federal-collective-bargaining-requirements ("Certain Federal unions have declared war on President Trump's agenda.").

declare that federal agencies are now entirely exempt from the FSL-MRS.  The Government cannot have it both ways.

## II.    The Public-Sector Union Plaintiffs Have Standing.

The Court did not address the Public-Sector Union Plaintiffs' standing in the TRO because it found that it lacked subject matter jurisdiction to hear their claims in the first instance.  Dkt. 45 at 11-13.  Having reconsidered that channeling ruling, the Court should also readily find that the Public-Sector Union Plaintiffs have standing to assert those claims.[3]

To establish standing "at this very preliminary stage, plaintiffs may rely on the allegations in their Complaint and whatever other evidence they submitted in support of their preliminary-injunction motion to meet their burden."  *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) (cleaned up).  That record strongly supports both associational standing for the Unions as representatives of their members, and organizational standing for the Unions based on injuries they have suffered in their own right.  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 681-82 (9th Cir. 2023) (en banc).

**A.**  Contrary to Defendants' arguments, the Unions have readily established injury-in-fact on several grounds.  First, the Unions can assert associational standing, because their members at agencies across the government and throughout the country have been harmed by the unlawful probationary employee terminations in the most obvious way, through the loss of their employment, health benefits, and even housing.  Dkt. 161 at 5; *see also* Dkt. 18-6 (identifying agencies with AFSCME bargaining units); Dkt. 161-1 (identifying agencies with AFGE bargaining units).  Further, by saddling probationary employees with terminations that were pretextually based on performance, Defendants have exposed those employees to the kind of reputational harm that is likely to impair their ability to obtain other work and as such is routinely recognized as injury-in-fact.  *See, e.g.*, *Kennedy v. Warren*, 66 F.4th 1199, 1205-06 (9th Cir. 2023); Dkt. 18-10 ¶17; Dkt. 18-17 ¶19; Dkt. 18-5 ¶17; *see also* Dkt. 44 (TRO Hearing Trans. at 66:8-16); Dkt. 120 (PI Hearing Trans. at 50:1-13).

---

[3] Indeed, the Government did not even challenge the Public-Sector Union Plaintiffs' standing in opposition to the TRO.  Dkt. 33 at 12.

The Unions are not improperly trying to bootstrap standing through harms to third parties, as Defendants contend; they are relying on classic associational standing doctrine to assert the rights of their own members.[4]

Second, Defendants' contention that the Unions have not sufficiently demonstrated injury to their core organizational activities wholly disregards the record. As previously explained, *see* Dkt. 161 at 5-6; Dkt. 18-1 at 22-23, the Unions' core organizational activities include representing and providing counseling and assistance to federal government employees. Those functions have been, and will continue to be, severely taxed by Defendants' unlawful mass termination of probationary employees across agencies and around the country. Dkts. 18-5 ¶¶11-16, 23; 18-6 ¶¶5, 12-17; 18-12 ¶¶3, 7-13; 18-17 ¶¶15-22; 18-18 ¶¶7-13. Like in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982), the Defendants' actions have directly and perceptibly impaired the Unions' ability to provide those services, with a consequent drain on their resources. *See also FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024) (reaffirming *Havens* standing when defendant actions impaired organization's ability to provide housing counseling services). This is not a case of the Unions voluntarily spending their way into standing or merely criticizing a policy "they dislike," as Defendants claim. Dkt. 160 at 15; *cf. FDA v. Alliance for Hippocratic Medicine*, 602 U.S. at 394 ("'setback to the organization's abstract social interests'" is insufficient for standing) (quoting *Havens Realty*, 455 U.S. at 379)). The Court should reject this argument as it has before. Dkt. 45 at 14. Further, the loss of bargaining power and dues revenue resulting from the reductions in the bargaining units they represent directly harms the Unions. Dkt. 161 at 6; *see also* Dkts. 18-6 ¶¶20-24; 18-10 ¶19; 18-12 ¶¶14-18; 18-18 ¶¶5, 10-11.

---

[4] Because it is obvious that many members of the Plaintiff Unions have been harmed, there is no need to "name names" of everyone affected at this stage of the litigation. Dkt. 160 at 11-2; *Mi Familia Vota v. Fontes*, 129 F.4th 691, 708 (9th Cir. 2025). *Faculty, Alumni, & Students Opposed to Racial Preferences v. New York Univ.*, 11 F.4th 68 (2d Cir. 2021), and *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1009 (7th Cir. 2021), on which Defendants rely, have no bearing on the standing inquiry here, as those cases concerned whether allegations of a group's generalized interest in engaging in some future activity (submitting a law review article in *Faculty*, or enjoying a river in *Prairie Rivers*), supports associational standing. Here, Plaintiffs are not relying on some potential future generalized harm, but on very specific harms to their members that have already occurred.

1    Third, OPM's argument that Plaintiffs lack standing to pursue procedural injury claims under

2  the APA is premised on a misunderstanding of Plaintiffs' asserted injury.  Plaintiffs do not claim

3  injury to "a right to comment" on "forthcoming RIF notices."  Dkt. 160 at 17.  Rather, Plaintiffs show

4  that OPM's directive to agencies to terminate probationary employees, and to do so using a false

5  template termination notice, and redefinition of "performance" to mean only those employees who

6  OPM approves as mission critical, should have been subject to notice and comment rulemaking but

7  was not, depriving them of their right to participate in that process.  *See* Second Amended Complaint,

8  Dkt. 90 ¶¶214-221; *see also* Dkts. 18-6 ¶25, 18-12 ¶30.

9    **B.**  Defendants rightly do not dispute that these injuries are traceable to Defendants' unlawful

10  activities.  Causation here is obvious.  Probationary employees in the Unions' represented bargaining

11  units have been terminated as a direct result of OPM's unlawful activities across agencies and around

12  the country.  Many of those employees have sought help and support from their unions, and the

13  Unions must expend resources to help them.  Not only does this impose direct costs on the Unions, it

14  is also diverting resources that the Unions would have used for other purposes to support other

15  represented employees.  Dkts. 18-6 ¶¶12-17, 18-12 ¶¶7-13.  Similarly, the unlawful terminations are

16  causing represented bargaining units to shrink, with the result that the Unions have less bargaining

17  strength and fewer financial resources.  Dkts. 18-6 ¶¶20-24, 18-12 ¶¶16-18.  Likewise, the

18  terminations require those members who remain employed to do less with more, and the diversion of

19  resources harms the unions' ability to represent those employees as well.  Dkts. 18-14 ¶8; 18-18

20  ¶¶12-13; 18-8 ¶¶36-37; 18-6 ¶¶12-17; 18-12 ¶¶7-13.

21    **C.**  Defendants' redressability arguments also retread familiar ground.  Dkt. 160 at 12-15.

22  This Court has already correctly rejected these same arguments, and should do so again.  Dkts. 44,

23  45, 120, 132.

24    Defendants argue that the agencies "could have" terminated employees on their own, both

25  before and after the Court's rulings.  Dkt. 160 at 12-13.  The fact that agencies *could have* taken

26  individualized personnel actions with all the proper procedures and notice required by law does not

27  mean that they did.  Nor does it foreclose this Court from redressing the harms caused by these

28

1  entirely *unlawful* mass terminations on the intentionally pretextual basis of "performance."[5]

2  This Court has found that the evidence demonstrated that agencies did *not* decide to terminate

3  probationary employees on their own, even after the Court's TRO. Dkt. 120, 132. As this Court

4  previously explained:

> OPM submits no evidence suggesting that federal agencies — some of which have continued
> to terminate probationers — are now acting at their own discretion. Nor has OPM submitted
> any evidence suggesting that it has rescinded or revised the other communications imparting
> its unlawful directive. Defendants' argument on this point simply asks that the undersigned
> accept OPM's factual contentions — supported only by counsel's say-so — as true. That is
> not enough.

9  Dkt. 88 at 4; 133 at 3-4 (six after-the-fact declarations also "fail to persuade"). The record remains as

10 it was; Defendants have provided this Court with nothing but argument, contrary to the evidence, that

11 agencies are no longer following OPM's direction.

12 Next, Defendants argue that the APA does not authorize reinstatement, even where the

13 unlawful government action at issue directly led to terminations. Dkt. 160 at 12-15. That is specious.

14 There can be no real doubt that, for example, had OPM issued an arbitrary and unlawful order that all

15 federal agencies terminate all women, the courts could immediately order reinstatement to preserve

16 the status quo, under both APA and equitable authority. The APA has long been understood to

17 authorize courts to issue all orders necessary to preserve the status quo pending litigation, and

18 ultimately to fully vacate an unlawful government action. 5 U.S.C. §705 ("On such conditions as

19 may be required and to the extent necessary to prevent irreparable injury, the reviewing court, … may

20 issue all necessary and appropriate process … to preserve status or rights pending conclusion of the

21 review proceedings"); *id.* §706 (courts "shall… hold unlawful and set aside" unlawful agency

22 action); *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1, 2 n.1 (2023) (Mem.) (Kavanaugh, J.,

23 concurring in the denial of the application for stay) (under the APA, courts are empowered to "'set

24

25

26 _____

[5] On this point, Plaintiffs draw the Court's attention to Defendants late-filed February 12, 2025 email,
27 in which OPM instructed federal agencies that they should use the template termination notice, and
specifically told agencies that: *"Employees do not need to have received any particular performance
28 rating previously to be separated."* Dkt. 111-5 (emphasis added).

aside' [unlawful] agency action," which is "more than a mere non-enforcement remedy.").[6]

Defendants' cited case, *Sampson v. Murray*, does not remotely stand for the proposition that a court cannot order reinstatement to protect the status quo or remedy an unlawful act; it recognizes exactly the opposite, if the plaintiffs meet the standard for an injunction, which all Plaintiffs have done here. 415 U.S. 61, 83-84 (1974).[7]

Contrary to Defendants' representations that courts lack authority to order reinstatement as a remedy for unlawful action, numerous federal courts have reinstated federal employees to their positions or prevented their removals from taking effect. *Vitarelli v. Seaton*, 359 U.S. 535, 546 (1959) ("[P]etitioner is entitled to the reinstatement which he seeks."); *Pelicone v. Hodges*, 320 F.2d 754, 757 (D.C. Cir. 1963) (holding that plaintiff was "entitled to reinstatement"); *Paroczay v. Hodges*, 219 F. Supp. 89, 94 (D.D.C. 1963) (holding that, because plaintiff "was never legally separated," the court "will therefore order plaintiff's reinstatement"); s*ee also Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) (district court erred in not forestalling a federal employee's transfer because employee met *Sampson* standard in claiming retaliation for exercise of Title VII rights, which would "have a deleterious effect on the exercise of these rights by others."). And there is no question that federal courts may grant injunctive relief "with respect to violations of federal law by federal officials." *Armstrong v. Exceptional Child Ctr., Inc*., 575 U.S. 320, 327 (2015). None of Defendants' cited cases suggest that this Court lacks authority to restore the status quo here.

---

[6] *See also Data Mktg. P'ship, LP v. U.S. Dep't of Lab*., 45 F.4th 846, 859-60 (5th Cir. 2022) (the "ordinary practice is to vacate unlawful agency action"); "Vacatur [of agency action] retroactively undoes or expunges a past [agency] action. . . . vacatur unwinds the challenged agency action."); *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021). Thus, "[u]nder prevailing precedent, § 706 'extends beyond the mere non-enforcement remedies available to courts that review the constitutionality of legislation, as it empowers courts to "set aside"—i.e., formally nullify and revoke—an unlawful agency action.'" *Data Mktg. P'ship*, 45 F.4th at 859 (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 950 (2018)).

[7] Defendants' other cited cases are inapposite (Dkt. 160 at 13), addressing entirely different circumstances regarding the appointment of state officers. *See, e.g., In re Sawyer*, 124 U.S. 200, 210-12 (1888) (holding, on a writ of habeas corpus, that circuit court lacked authority to direct marshal to hold state officer because, at time, courts of equity were "limited to the protection of rights of property."); *Baker v. Carr*, 369 U.S. 186, 231 (1962) (citing cases about "enjoin[ing] a state proceeding to remove a public officer" in a case challenging apportionment of state legislative offices); *Walton v. House of Reps. of Okl*., 265 U.S. 487, 489-90 (1924) (holding that the district court did not have "jurisdiction over the appointment and removal of state officers"); *Harkrader v. Wadley*, 172 U.S. 148, 165-70 (1898) (declining to enjoin a state criminal proceeding).

Next, Defendants rehash their mootness arguments already rejected by this Court, arguing that Plaintiffs lack standing because OPM's memo revision leaves no further redress available to Plaintiffs. Dkt. 160 at 14. This Court has previously rejected that argument, and that decision applies equally here. Dkt. 88 at 4-5. To the extent that Defendants contend that their revision to the January 20, 2025 OPM memorandum instructing all federal agencies to compile lists of all probationary employees for the purpose of terminating them "cleared up" any "confusion," they are positing an alternative reality divorced from this Court's extensive factual findings. The record reflects no "confusion": OPM ordered these terminations, and made at best a half-hearted attempt to paper over the obvious facts. And as this Court previously concluded, the fact that some agencies jumped to reinstate their employees after this Court's TRO (and also after this Court's preliminary injunction) confirms Plaintiffs' showing that agencies did not make a free choice in the first place. Dkt. 132 at 3.

That the agencies subject to this Court's existing injunction have varied in the extent to which they are fully complying with this Court's orders (as set forth in Plaintiffs' motion to enforce, Dkt. 155) does not mean that Plaintiffs' harms are not redressable by a court order. It means that Defendants have not yet fully complied with this Court's order. This Court certainly should not reward non-compliance by allowing Defendants to convert that conduct into "reaffirmation" of these unlawful terminations.

Finally, it remains true that "the government has wholly failed to argue there is any other way to avoid the irreparable injuries flowing from the unlawful terminations except to reinstate the employees." Dkt. 133 at 2.

### III.    The Public-Sector Union Plaintiffs Are Experiencing Irreparable Harm from Defendants' Unlawful Mass Termination of Probationary Employees.

The Public-Sector Union Plaintiffs also face irreparable harm from the unlawful mass termination of probationary employees, as set forth in detail in Plaintiffs' OSC Response. *See* Dkt. 161 at 7-10. The same injuries to the Unions' core organizational activities that give rise to standing—the impairment of the Unions' ability to support and assist union members because of the overwhelming, sudden, and unanticipated need to support and assist their probationary members who were unlawfully terminated—also pose "ongoing harms to [the unions'] organizational missions" that

1    are irreparable. *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 984 (9th Cir. 2020)

2    (quotation omitted); *see also East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir.

3    2021) (impairment of plaintiff's programs by unlawful government action is irreparable harm).

4    Similarly, the inevitable diminution of the Unions' membership from mass terminations in

5    represented bargaining units impairs the Unions' bargaining power. *Supra* at 5.[8] And equally to the

6    point, the Court has already found irreparable harm to the organizational plaintiffs from service

7    impairments resulting from the unlawful termination of probationary employees. Dkt. 45 at 14-23,

8    Dkt. 132 at 12-13. Members of the Unions face the very same kind of irreparable harm, no less so

9    than the organizational plaintiffs. Dkt. 161 at 9; *see also, e.g.*, Dkt. 18-12 ¶25 (noting that tens of

10   thousands of AFGE members are veterans, who now face impairment of VA services on which they

11   rely); *see also* Dkt. 18-6.

12         Defendants' remaining irreparable harm arguments largely duplicate their standing arguments

13   and fail for the same reasons. First, the Unions are not claiming irreparable harm as to third parties,

14   but as to their own members on whose behalf they are entitled to sue. *See supra* at 4-5.

15         Second, OPM's failure to provide opportunity for notice-and-comment on its final actions (which

16   OPM previously conceded are rules) is itself irreparable harm. *See, e.g.*, *East Bay Sanctuary*

17   *Covenant v. Trump*, 349 F.Supp.3d 838, 865 (N.D. Cal. 2018), *aff'd sub nom. East Bay Sanctuary*

18   *Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021); *Save Strawberry Canyon v. Dept. of Energy*, 613

19   F.Supp.2d 1177, 1187 (N.D. Cal. 2009).

20         Third, the loss of dues revenue to the Unions is irreparable harm because monetary relief is

21   not available for APA claims. Dkt. 161 at 10; *see also East Bay Sanctuary Covenant v. Biden*, 993

22   F.3d at 677.

23         Finally, even the authority on which Defendants rely recognizes that financial injury such as

24

25   _____

[8] The Court should reject Defendants' nonsensical suggestion that a surge in voluntary union
26   membership undermines the Unions' claim of harm. Dkt. 160 at 17. The article on which
     Defendants rely for this argument preceded the probationary employee mass terminations at issue in
27   this case by several days. Moreover, that incumbent federal employees are seeking assistance from
     the Unions for fear of what may come next from this Administration in no way diminishes the impact
28   on the Unions of the loss of thousands of members who were probationary employees and were
     unlawfully terminated.

that experienced both the Unions and by their terminated probationary members "will not constitute irreparable harm *if* adequate compensatory relief will be available in the course of litigation." *Goldie's Bookstore, Inc. v. Superior Ct. of State of Cal.*, 739 F.2d 466, 471 (9th Cir. 1984) (emphasis added).  Defendants do not deny that monetary relief is unavailable in APA cases.  Moreover, the injuries the Unions document go beyond pure monetary harms.  *See Nat'l Treasury Emps. Union v. Vought*, __ F.Supp.3d __, 2025 WL 942772, at *42 (D.D.C. Mar. 28, 2025) (recognizing as irreparable harm the loss of health benefits by employee association members facing unlawful termination); *SEIU Healthcare 1199NW v. Community Psychiatric Clinic*, 2019 WL 3779872, at *4 (W.D. Wash. Aug. 12, 2019) (recognizing loss of employment, medical benefits, and housing as irreparable harm); Dkts. 18-5 ¶¶18-21, 18-6 ¶18, 18-10 ¶16, 18-17 ¶¶20-21.

## IV.    The Unions' Claims Are Not Moot, and Further Injunctive Relief Is Required.

Contrary to Defendants' arguments, their compliance with the Court's limited TRO does not obviate the need for a preliminary injunction.  A defendant's compliance with a TRO cannot possibly foreclose the need for injunctive relief.  *See, e.g.*, *Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992); *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1237 (9th Cir. 1999).  If it were otherwise, virtually every case in which a defendant complies with a TRO would then become moot.

At most, Defendants' claimed corrective action could amount to voluntary cessation.  But "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" unless "it can be said with assurance that there is no reasonable expectation ... that the alleged violation will recur" *and* that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (alteration in original; quotations omitted).  Not only could the only action OPM points to—the revision of the January 20 memo (Dkt. 160 at 4-5, 15-16)—be easily revoked in the future, but Defendants have in no way "completely and irrevocably eradicated the effects" of their unlawful conduct, as they continue to resist full reinstatement of the probationary employees whom they unlawfully terminated *en masse*.  Indeed, this Court already expressly rejected Defendants' argument that the issuance of revised guidance to departments moots this action.  *See* Order Granting

1    Mot. for Leave to Amend, Dkt. 88 at 4-5.

2       Moreover, Defendants' revisions to the January 20 memo are not sufficient to restore the

3    status quo pending this litigation for the Public-Sector Union Plaintiffs any more than it was for the

4    organizational plaintiffs.  Dkt. 88.

5       Defendants' recent actions in response to this Court's preliminary injunction and the

6    Maryland District Court's injunctions do not moot this request for relief either.  This Court's TRO

7    ordered that all "efforts by OPM to direct the termination of employees at NPS, BLM, VA, DOD,

8    SBA, and FWS are unlawful, invalid, and must be stopped and rescinded," and that OPM "provide

9    written notice of [the Court's] order" to those agencies.  Dkt. 45 at 24.  Even after Defendants revised

10   the January 20 memo in response to the TRO, the Court then ordered further, and broader, relief in its

11   preliminary injunction, requiring six departments to reinstate their terminated probationary

12   employees to service.  Dkt. 120 at 52:6-53:25.  Defendants have yet to fully comply.  *See* Dkt. 138,

13   155, 177.

14      Defendants initially rested their showing of compliance with this Court's preliminary

15   injunction largely on evidence previously submitted to the District of Maryland, which failed to

16   establish that the six relief defendants covered by this Court's order were in full compliance because

17   they were reinstating terminated probationary employees only to administrative leave and not to

18   active service.  *Compare* Dkt. 160-1 (Maryland declarations filed March 17, 2025) *with* Dkt. 139-3

19   (same declarations).  Those six relief defendants' more recent progress toward reinstating

20   probationary employees to active service (*see* Dkt. 168) does not moot the need for injunctive relief

21   because Defendants continue to insist they have done nothing wrong, have not yet fully complied,

22   and could readily re-engage in unlawful activity absent a continued and expanded injunction.  And, of

23   course, the current injunction reaches only six departments, not all of the other departments and

24   agencies that also terminated probationary employees as a result of OPM's orders and for which

25   Plaintiffs have shown ongoing harm.  See Dkt. 174-3 (attached again hereto).

26      As with respect to the organizational plaintiffs, restoring the status quo and stopping the

27   ongoing harm to the Public-Sector Union Plaintiffs requires reinstatement of probationary employees

28   who were unlawfully terminated.  That is the only action that could possibly unwind all of

1    Defendants' illegality.  Defendants' position that they have already given all the relief plaintiffs could

2    possibly need utterly fails.

3    **V.    This Court Should Grant a Further Preliminary Injunction to the Public-Sector**
     **Union Plaintiffs That Covers Additional Relief Defendants and a Broader Time**
4    **Period.**

5           As set forth in Plaintiffs' OSC Response (Dkt. 161 at 11-12), reinstatement of unlawfully

6    terminated probationary employees is the appropriate remedy not only with respect to the six relief

7    defendants already enjoined but also as to all departments and agencies where unlawful probationary

8    terminations since January 20, 2025 are causing harm to the Public-Sector Union Plaintiffs:

9    • For Plaintiff AFSCME and its local unions, that includes relief against Defendants

10      Department of Agriculture, Department of Transportation, and Department of Veterans

11      Affairs.

12   • For Plaintiff AFGE and its local unions, that includes relief against Defendants Department of

13      Agriculture, Department of Commerce, Department of Defense, Department of Education,

14      Department of Energy, Department of Health and Human Services, Department of Homeland

15      Security, Department of Housing and Urban Development, Department of Interior,

16      Department of Treasury, Department of Transportation, Department of Veterans Affairs,

17      Environmental Protection Agency, General Services Administration, National Science

18      Foundation, and Small Business Administration.

19   Dkt. 161 at 12-13.

20          Plaintiffs' declaration evidence, identifying the exact agencies at which AFGE and AFSCME

21   represent units of employees across the country (Dkt. 18-6, 161-1), establishes standing and harm

22   with respect to terminations at all of these agencies.  Plaintiffs have confirmed that they do not seek a

23   preliminary injunction with respect to certain of the relief defendant agencies originally named as

24   being on the receiving end of OPM's orders, but for which Defendants have not revealed

25   terminations, or where the Public-Sector Union Plaintiffs do not represent employees (including

26   Justice, Labor, State, NASA, and OMB), so Defendants' arguments regarding those agencies are

27   moot.

28

Further, unlike the Maryland case, there is no basis to limit the Public-Sector Union Plaintiffs' relief to particular geographic areas:  Plaintiffs have provided uncontroverted evidence that these unions represent bargaining units across the country at all of the identified agencies, and the agency-specific injunction previously issued with respect to organizational Plaintiffs is the appropriate scope of relief here as well.  *See also E. Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 987 (9th Cir. 2020) (APA's directive to "'hold unlawful and set aside agency action'" is not limited by "geographic boundaries") (quoting 5 U.S.C. §706(2)(A)).

Finally, this Court's prior injunction targeted terminations that took place on February 13 and 14, in light of the record that was at that time before the Court, and Defendants' failure to reveal the facts regarding who was terminated and when.  Subsequent to the March 13, 2025 injunction, Defendants finally revealed the numbers and dates on which agencies conducted terminations after January 20, 2025.  Plaintiffs therefore ask this Court to issue further injunctive relief that encompasses all of those terminations.

## VI.    The Court Need Not Revisit Its Determination that No Security is Required.

Finally, the Court should deny Defendants' request for security.  Fed. R. Civ. P. 65(c) directs a court, upon granting a preliminary injunction, to set security in the amount the court deems "proper." Thus, "[t]he district court retains discretion 'as to the amount of security required, *if any*.'"  *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) (emphasis in original) (quoting *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)) (affirming district court decision not to require any bond). Here, even though Defendants failed to request security earlier in the preliminary injunction proceedings, the Court has already determined that "security … [is] proper in the amount of $0." Dkt. 132 at 14.  The Defendants make no attempt to show why that determination was an abuse of discretion, or even to suggest an appropriate amount.  These perfunctory arguments give the Court no reason to reconsider its previous conclusion.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter further preliminary injunctive relief to the Public-Sector Union Plaintiffs requiring relief Defendants

1    Department of Agriculture, Department of Commerce, Department of Defense, Department of

2    Education, Department of Energy, Department of Health and Human Services, Department of

3    Homeland Security, Department of Housing and Urban Development, Department of Interior,

4    Department of Treasury,  Department of Transportation, Department of Veterans Affairs,

5    Environmental Protection Agency, General Services Administration, National Science Foundation,

6    and Small Business Administration to offer to reinstate any probationary employees terminated after

7    January 20, 2025, in the jobs they held before being unlawfully fired as a result of OPM's unlawful

8    orders and actions.

9    DATED:  April 4, 2025                          Scott A. Kronland
                                                     Stacey M. Leyton
10                                                   Eileen B. Goldsmith
                                                     Danielle E. Leonard
11                                                   Robin S. Tholin
                                                     James Baltzer
12                                                   ALTSHULER BERZON LLP
                                                     177 Post St., Suite 300
13                                                   San Francisco, CA 94108
                                                     Tel: (415) 421-7151
14

15                                            By: */s/ Danielle Leonard*

16
                                                  *Attorneys for Plaintiff Organizations*
17

18                                                Norman L. Eisen (*pro hac vice*)
                                                  Pooja Chadhuri (SBN 314847)
19                                                STATE DEMOCRACY DEFENDERS
                                                  FUND
20                                                600 Pennsylvania Avenue SE #15180
                                                  Washington, DC 20003
21                                                Tel: (202) 594-9958
                                                  Norman@statedemocracydefenders.org
22                                                Pooja@statedemocracydefenders.org

23

24                                            By: */s/ Norman L. Eisen*

25
                                                  *Attorneys for Plaintiff Organizations*
26
                                                  Rushab Sanghvi (SBN 302809)
27                                                AMERICAN FEDERATION OF GOVERNMENT
                                                  EMPLOYEES
28                                                80 F Street, NW

Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

By: */s/ Rushab Sanghvi*

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson (SBN 226659)
Matthew Blumin (*pro hac vice*)
AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz (SBN 241414)
Cristina Sepe (SBN 308023)
Cynthia Alexander, WA Bar No. 46019 (pro hac vice)
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*