UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Hang Zhang,<br>*Plaintiff,*<br>v.<br>DANIEL DRISCOLL,<br>Secretary, Department of the Army,<br>*Defendant* | SUPPLEMENTAL ARGUMENT IN SUPPORT OF RELATION, FIFTH AMENDMENT REVIEW, AND PRELIMINARY INJUNCTION (AFL-CIO v. OPM, No. 3:25-cv-01780-WHA) |

**SUPPLEMENTAL ARGUMENT IN SUPPORT OF RELATION, FIFTH AMENDMENT REVIEW, AND PRELIMINARY INJUNCTION**

Plaintiff respectfully submits the following expanded argument to further support relation to AFL-CIO v. OPM, Case No. 3:25-cv-01780-WHA, and to clarify why the Fifth Amendment claim warrants expedited adjudication.

**I. A Judicial Vacuum Threatens Constitutional Oversight of OPM's Workforce Directive**

The OPM realignment directive has created a constitutional vacuum in which no actor has both standing and access to judicial review. Federal employees directly harmed by the directive—through coerced reassignments, functional demotions, or structurally downgraded performance systems—are told their claims are precluded by the Civil Service Reform Act (CSRA). Meanwhile, institutional plaintiffs like AFGE, while competent to raise structural claims, lack individualized harm sufficient to support facial or as-applied challenges under Article III. Outside nonprofit organizations also lack standing, as they cannot demonstrate individualized harm sufficient to challenge the directive in court.

In short, the individuals with injury cannot reach a forum, and the entities with a forum cannot show injury—leaving the directive constitutionally unreviewable.

This is precisely the danger the Supreme Court addressed in Free Enterprise Fund v. PCAOB, 561 U.S. 477 (2010), and reaffirmed in Axon Enterprise, Inc. v. FTC, 598 U.S. 175

(2023). The en-banc Fifth Circuit recently applied the same logic in Feds for Medical Freedom v. Biden, 63 F.4th 366 (5th Cir. 2023), holding that the CSRA does not implicitly repeal § 1331 jurisdiction for structural claims. Where no meaningful judicial forum exists to test the constitutionality of an agency directive, district courts must assert jurisdiction to prevent structural claims from becoming unreviewable.

Thunder Basin supplies the governing test. Plaintiff's claim satisfies each factor because it is:

- Wholly collateral to any MSPB proceeding;
- Outside agency expertise (separation of powers and ultra vires questions are "nothing special" to the MSPB); and
- Deprived of meaningful review if channeled into the CSRA.

See Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994).

Elgin v. Treasury, 567 U.S. 1 (2012), is not to the contrary. Elgin involved a constitutional defense to an individual removal—squarely a CSRA-covered personnel action. Plaintiff, by contrast, challenges the legality of a government-wide directive under the Fifth Amendment.

## II. Plaintiff's Title 10 Affiliation Provides Standing and Institutional Insight

Plaintiff is not a generic Title 5 employee. She serves within a Title 10-governed component of the Department of Defense (DoD)—a domain Congress has consistently treated as structurally distinct from the civilian personnel system that OPM administers. See Rumsfeld v. FLRA, 465 U.S. 45, 50–52 (1984); Dep't of the Navy v. FLRA, 962 F.2d 48, 58 (D.C. Cir. 1992). DoD's longstanding insistence on distinct personnel and logistical authority—now reversed by its enforcement of OPM's blanket directive—underscores the directive's systemic reach and requires urgent judicial review.

The inherent distinction between Title 10 and Title 5 agencies—and OPM's attempt to impose a uniform directive across both—warrants judicial examination. Plaintiff's own coerced reassignment, along with many other similar adverse actions observed, provides immediate evidence of operational harm: dilution of specialized linguist expertise and disrupted readiness.

## III. CHRA and CRSA Cannot Neutrally Review OPM's Directive

Internal CSRA review is structurally biased because subordinate entities such as CHRA and CRSA (Civilian Human Resources Agency and Civilian Resources and Services Administration) are tasked with implementing the directive they would be asked to judge. This dual role violates the constitutional guarantee of an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35 (1975); Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009). These entities, by institutional design, have a direct and vested interest in validating the directive's legitimacy, inherently compromising their impartiality. Thus, when an administrative body is both enforcer and adjudicator of a challenged rule, Article III courts must supply the neutral forum.

**IV. Comparative Harm Justifies Limited Constitutional Review**

Irreparable harm in the military-education context must be determined by measurable degradation in defense readiness, rather than mere continuation of baseline functions. Plaintiff is prepared to submit a comparative military-linguist readiness analysis (draft Exhibit A) upon the Court's request, highlighting degradation in DoD's linguist training pipeline versus peer competitors. This underscores strategic harm from centralized civilian control over specialized military instruction, including morale deterioration and increased personnel attrition documented by non-classified open sources.

**V. Summary of Constitutional Issues Warranting Review**

1. Whether OPM possesses lawful authority to impose identical structural changes on Title 10 agencies alongside Title 5 entities under separation-of-powers principles;
2. Whether internal administrative entities like CRSA, tasked with directive enforcement, can constitutionally serve as impartial adjudicators (due process and Article III neutrality);
3. Whether irreparable harm to national defense can be shown through comparative degradation in military readiness (due process and national security considerations).

For these reasons, Plaintiff respectfully requests relation and preservation of the Fifth Amendment claim so the Court can address the structural and constitutional implications of OPM's directive as applied to Title 10 agencies.

Respectfully submitted,

                                        /s/ *Hang Zhang*

                                        Hang Zhang

                                Defense Language Institute
                                Department of the Army
                                  Dated: May 5, 2025