CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

BRETT A. SHUMATE
Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
YURI S. FUCHS
GREGORY CONNER
Trial Attorneys
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' NOTICE OF MOTION AND CROSS-MOTION FOR SUMMARY JUDGMENT; OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION OF CLAIMS I-IV**<br><br>Hearing Date: August 28, 2025<br>Time: 8:00 am<br>Judge: The Hon. William H. Alsup<br>Place: San Francisco Courthouse<br>Courtroom 12 |

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I-IV
3:25-cv-1780-WHA

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

STANDARD OF REVIEW....................................................................................................7

ARGUMENT ......................................................................................................................8

    I.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims.......................8

        A.     Plaintiffs Lack Standing.................................................................8

        B.     Plaintiffs Lack Standing to Raise Their Fifth Claim for Relief............................10

        C.     The CSRA and FSL-MRS Preclude District Court Jurisdiction Over Plaintiffs' Claims ................................................................11

    II.    Defendants Are Entitled to Summary Judgment on Plaintiffs' *Ultra Vires* Claim ...................................................................13

    III.    OPM Did Not Violate Its Statutory Authority in Issuing the Guidance....................16

    IV.    OPM's Guidance Was Not Arbitrary and Capricious ................................................17

    V.    OPM's Guidance Did Not Constitute a Rule Requiring Notice and Comment..........20

    VI.    Plaintiffs' Requests for Relief Are Improper .........................................................24

CONCLUSION....................................................................................................................27

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

1

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of Gov't Emps. v. U.S. Off. of Pers. Mgt.*,
No. 3:25-cv-1780, --- F. Supp. 3d ---, 2025 WL 1150698
(N.D. Cal. Apr. 18, 2025)..........................................................................................*passim*

*Am. Fed'n of Gov't Eemps. v. Sec'y of the Air Force*,
716 F.3d 633 (D.C. Cir. 2013) ..............................................................................12

*Am. Fed'n of Gov't Emps. v. OPM*,
No. 3:25-cv-1780, --- F. Supp. 3d ---, 2025 WL 660053 (N.D. Cal. Feb. 28, 2025)................5

*Am. Sch. of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ..................................................................................................13

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ................................................................................................13

*Arron v. United States*,
113 F.3d 1245 (10th Cir. 1997) .............................................................................12

*Barnes v. U.S. Dep't of Transp.*,
655 F.3d 1124 (9th Cir. 2011) ...............................................................................18

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) .................................................................................25

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ..................................................................................................13

*Block v. Cmty. Nutrition Inst.*,
467 U.S. 340 (1984) ................................................................................................13

*Califano v. Yamasaki*,
442 U.S. 682 (1979) ................................................................................................25

*Chamber of Com. v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ...............................................................................13

*Christianson v. United States*,
706 F. Supp. 3d 1057 (D. Idaho 2023),
*appeal filed*, No. 24-232 (9th Cir. Jan. 16, 2024) ......................................... 17, 22, 23

*Colwell v. Dep't of Health & Hum. Servs.*,
558 F.3d 1112 (9th Cir. 2009) .........................................................................21, 23

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

2

*Ctr. for Biological Diversity v. Gould,*
  150 F. Supp. 3d 1170 (E.D. Cal. 2015) ............................................................7

*Ctr. for Biological Diversity v. Trump,*
  453 F. Supp. 3d 11 (D.D.C. 2020) .................................. 15, 19, 24, 27

*Dalton v. Specter,*
  511 U.S. 462 (1994) ............................................................... 14, 15

*Devon Energy Corp. v. Kempthorne,*
  551 F.3d 1030 (D.C. Cir. 2008) ...........................................................21

*Eagle Tr. Fund v. USPS,*
  365 F. Supp. 3d 57 (D.D.C. 2019),
  *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ........................................14

*Elgin v. Dep't of the Treasury,*
  567 U.S. 1 (2012) .......................................................................... 12, 13

*Fed. Commc'ns Comm'n v. Prometheus Radio Project,*
  592 U.S. 414 (2021) ...........................................................................18

*Fed. L. Enf't Officers Ass'n v. Ahuja,*
  62 F.4th 551 (D.C. Cir. 2023) .............................................................20

*Hindes v. FDIC,*
  137 F.3d 148 (3d Cir. 1998) ...............................................................14

*Hollingsworth v. Perry,*
  570 U.S. 693 (2013) ..........................................................................9

*Kirby Corp. v. Peña,*
  109 F.3d 258 (5th Cir. 1997) ..............................................................14

*Lamb-Weston, Inc. v. McCain Foods, Ltd.,*
  941 F.2d 970 (9th Cir. 1991) ..............................................................25

*Lampon-Paz v. OPM,*
  732 F. App'x 158 (3d Cir. 2018) ..........................................................12

*Larson v. Domestic & Foreign Com. Corp.,*
  337 U.S. 682 (1949) ...........................................................................14

*League of Cal. Cities v. Fed. Commc'ns Comm'n,*
  118 F.4th 995 (9th Cir. 2024) .............................................................21

*Leedom v. Kyne,*
  358 U.S. 184 (1958) ............................................................................13

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

3

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...................................................................................................8, 11

*Lundeen v. Mineta,*
  291 F.3d 300 (5th Cit. 2002) ...............................................................................................14

*Mada-Luna v. Fitzpatrick,*
  813 F.2d 1006 (9th Cir. 1987) ...............................................................................21, 22, 23

*Magadia v. Wal-Mart Assocs., Inc.,*
  999 F.3d 668 (9th Cir. 2021) .................................................................................................9

*McLouth Steel Prods. Corp. v. Thomas,*
  838 F.2d 1317 (D.C. Cir. 1988).........................................................................................21

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
  463 U.S. 29 (1983) ...............................................................................................................18

*Murthy v. Missouri,*
  603 U.S. 43 (2024) .............................................................................................................8, 9

*N.C. Fisheries Ass'n, Inc. v. Gutierrez,*
  518 F. Supp. 2d 62 (D.D.C. 2007) .................................................................................18, 20

*Nasser-Urfi v. Att'y Gen. of U.S.,*
  298 F. App'x 123 (3d Cir. 2008) ...........................................................................................7

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55, (2004) ..............................................................................................................17

*Nuclear Regul. Comm'n, v. Texas,*
  600 U.S. ---, 145 S. Ct. 1762 (2025) ......................................................................13, 14, 15

*Nyunt v. Chairman, Broad. Bd. of Governors,*
  589 F.3d 445 (D.C. Cir. 2009) .............................................................................................14

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
  810 F.3d 631 (9th Cir. 2015) ...............................................................................................27

*Partridge v. Reich,*
  141 F.3d 920 (9th Cir. 1998) .................................................................................................7

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984) ...............................................................................................................14

*Perez v. Mortg. Bankers Ass'n,*
  575 U.S. 92 (2015) .........................................................................................................20, 21

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

4

*Republican Nat'l Comm. v. Burgess*,
   No. 324-cv-198, 2024 WL 3445254 (D. Nev. July 17, 2024)..................................11

*Sacora v. Thomas*,
   628 F.3d 1059 (9th Cir. 2010) ...................................................................18

*Sampson v. Murray*,
   415 U.S. 61 (1974)...................................................................................24

*Saul v. United States*,
   928 F.2d 829 (9th Cir. 1991) ..............................................................12, 25

*Serv. Emps. Int'l Union Loc. 200 United v. Trump*,
   420 F. Supp. 3d 65 (W.D.N.Y. 2019) ...........................................................21

*Shah v. U. S. Citizenship & Immigr. Servs.*,
   No. 18-cv-1345, 2019 WL 6877929 (W.D. Wash. Dec. 17, 2019) ...........................7

*Shalala v. Guernsey Memorial Hospital*,
   514 U.S. 87 (1995).................................................................................20

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ....................................................................7

*Soremekun v. Thrifty Payless, Inc.*,
   509 F.3d 978 (9th Cir. 2007) ......................................................................7

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).................................................................................8

*Stadnicki on Behalf of LendingClub Corp. v. Laplanche*,
   No. 3:16-cv-3072, 2018 WL 4110553 (N.D. Cal. Aug. 29, 2018) ............................7

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994)...............................................................................20

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).................................................................................8

*United States v. Fausto*,
   484 U.S. 439 (1988)...............................................................................12

*United States v. Texas*,
   599 U.S. 670 (2023)...............................................................................10

*U.S. Off. of Pers. Mgt. v. Am. Fed'n of Gov't Emps.*,
   145 S. Ct. 1914 (Mem.) (2025)...........................................................2, 8, 10

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

5

*Veit v. Heckler,*
  746 F.2d 508 (9th Cir. 1984) ...................................................................................12

*Washington v. FDA,*
  108 F.4th 1163 (9th Cir. 2024) .................................................................................10

*Yesler Terrace Cmty. Council v. Cisneros,*
  37 F.3d 442 (9th Cir. 1994) .....................................................................................11

**Statutes**

5 U.S.C. § 551 ...............................................................................................................3

5 U.S.C. § 553 .............................................................................................................20

5 U.S.C. § 701 ...............................................................................................................1

5 U.S.C. § 1103 ................................................................................................4, 15, 16

5 U.S.C. § 3301 ...........................................................................................................15

Civil Reform Service Act, Pub. L. No. 95-454, 92 Stat. 1111 (1978) ..........................3

**Rules**

Fed. R. Civ. P. 56(a) ......................................................................................................7

**Regulations**

5 C.F.R. § 5.3 ..............................................................................................................15

5 C.F.R. § 315.801 ........................................................................................................3

5 C.F.R. § 315.804 ......................................................................................................26

5 C.F.R. § 315.801, 315.802 .........................................................................................3

5 C.F.R. pt. 731 ...........................................................................................................15

**Executive Orders**

Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) .....................................15

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

6

# INTRODUCTION

On January 20, 2025, President Trump instituted a hiring freeze of federal civilian employees and ordered certain agencies to identify ways to reduce the size of the federal government. Admin. Record ("AR") 332–33. The same day, U.S. Office of Personnel Management ("OPM") Acting Director Charles Ezell sent a memorandum to federal agencies, providing guidance "regarding critical potential personnel actions." AR 335. The memorandum explained that "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels." *Id.* And it further instructed that agencies "should identify all employees on probationary periods," and "should promptly determine whether those employees should be retained at the agenc[ies]." *Id.* Thus, the memorandum was consistent with OPM's historical practice and statutory authority, which was to provide guidance to agencies regarding personnel matters. In this case, OPM provided guidance consistent with an Executive Branch wide effort to reduce the federal workforce. Ultimately, agencies decided themselves how they would comply with the President's efforts to reduce the size of the work force, as some agencies chose to retain all of their probationary employees while others chose to terminate only certain probationary employees. Thus, the process embodied both an effort undertaken across the entire Executive Branch and one committed to the discretion of each individual agency. Indeed, OPM's memorandum and subsequent guidance mandated no particular decision by any agency, and OPM revised its guidance to make abundantly clear that each agency had its own purview of whether to terminate an employee. AR 400–02.

Plaintiffs—a group of public sector unions, non-profit organizations, and the State of Washington—first came before this Court in February 2025 arguing that OPM issued a directive to agencies to terminate probationary employees. Plaintiffs now assert that they are entitled to summary judgment on claims that OPM's action was: (i) *ultra vires*; (ii) in excess of OPM's statutory authority under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06; (iii) arbitrary and capricious under the APA; and (iv) a rule issued without the requisite notice-and-comment. *See* Pls' Not. of Mot. & Mot. for Summ. Adj. of Claims I–IV, ECF No. 222 ("Pls.' Br." or "Brief"). While this Court initially granted Plaintiffs preliminary injunctive relief

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

1

on these claims, it is clear with the benefit of the administrative record that Plaintiffs' claims fail on the record evidence and that Defendants are entitled to summary judgment.

At the threshold, Plaintiffs claims fail for lack of subject matter jurisdiction. The Supreme Court held that the organizational Plaintiffs relied on a theory of downstream harm that was insufficient to establish Article III standing, *see U.S. Off. of Pers. Mgt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (Mem.) (2025), but all Plaintiffs lack standing. In addition, while Plaintiffs assert that the parties have not yet argued Claim V of their Second Amended Complaint, *see* Pls.' Second Am. Compl. ¶¶ 223–29, ECF No. 90 ("SAC"), relating to an alleged requirement that federal employees submit email reports to OPM, Plaintiffs fail to allege any kind of injury necessary for standing on this claim. Plaintiffs' Second Amended Complaint also fails because their claims challenging personnel decisions related to federal employees are channeled by statute through the Merit Systems Protection Board ("MSPB") or the Federal Labor Relations Authority ("FLRA").

Even assuming that subject matter jurisdiction lies, Defendants are nonetheless entitled to summary judgment on each of Plaintiffs' claims. Plaintiffs' *ultra vires* claim is not properly brought against OPM as it simply mirrors Plaintiffs' APA claims, and Plaintiffs have not alleged that either OPM's regulations or its statutory authority for promulgating these regulations are themselves unconstitutional and has not alleged that those regulations directly prohibit OPM's January 20, 2025, guidance.

Plaintiffs' APA claims also fail. Plaintiffs contend that OPM issued a directive to federal agencies to terminate probationary employees that exceeded its statutory authority, but the administrative record offers no support for this assertion. The record shows that OPM did not direct federal agencies to terminate probationary employees and repeatedly stated that it would not involve itself in the specifics of whether agencies did, or did not, terminate their probationary employees. Plaintiffs also contend that OPM's actions were arbitrary and capricious, but OPM's guidance had a rational basis for providing advice to agencies on how to carry out a broader Executive Branch-wide effort to reduce the size of the federal workforce. Plaintiffs additionally contend that the guidance constituted a legislative rule subject to a notice-and-comment

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
2

requirement, but OPM's guidance was not "designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency." 5 U.S.C. § 551(4).

Finally, even assuming this Court concludes that summary judgment for Plaintiffs on any claim is appropriate, Plaintiffs' request for relief goes too far as it seeks to improperly entangle the Court in the specifics of each relief defendant agency's personnel decisions—relief that this Court previously held was beyond its equitable powers.

This Court should thus deny Plaintiffs' motion for summary judgment and grant Defendants' motion for summary judgment; or at minimum, to conserve judicial resources, the Court may wish to await further guidance from the Ninth Circuit, which has scheduled oral argument for August 19 on the government's appeals of the Court's preliminary injunctions and will be poised to address the standing and jurisdictional issues presented here.

## BACKGROUND

Historically, employees in the federal civil service have been subject to a probationary or trial period before conversion to permanent appointment, allowing agencies to evaluate a candidate's potential to become a longer-term employee. AR 1–2, 4.[1] Under the current regulations propounded under the Civil Service Reform Act ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (1978), codified in various sections of Title 5, United States Code, the first year or first two years for certain federal employees is a probationary or trial period. *See, e.g.,* 5 C.F.R. § 315.801, 315.802; AR 57. Those regulations further provide that employing agencies are to use the probationary period "as fully as possible to determine the fitness of the employee and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." *Id*. § 315.803(a). When an agency decides to terminate an employee covered by these regulations because his or her work performance or conduct during the probationary or trial period fails to demonstrate fitness or qualifications for continued employment, it must notify the employee and provide "the agency's conclusions as to

---

[1]    Additional statutory background information may be found in Defendants' other briefs. *See, e.g*., Defs. Opp'n to Pl.' Wash. State's Mot. for Prelim. Inj., ECF No. 167.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

3

the inadequacies of his [or her] performance or conduct." *Id.* § 315.804(a). However, various federal entities have issued reports and memoranda in recent years noting that agencies may not be fully using probationary periods to evaluate the fitness of probationary employees for continued employment. *See* AR 3–56, 60–116, 324–25.

As part of its role in "aligning human capital strategies of agencies with the missions, goals, and organizational objectives of those agencies[,]" 5 U.S.C. § 1103(c)(2)(A)(i), OPM has routinely provided agencies with guidance on how agencies should scrutinize probationary employees. In 2023, for example, then OPM Director Kiran A. Ahuja issued a memorandum whereby "OPM advise[d] agencies to periodically remind supervisors and managers about the value of the probationary period … in order to make informed decisions about whether to retain an individual in the agency's permanent workforce." AR 324; *see also* AR 95 (recommending that "OPM … take steps to help supervisors make effective use of the probationary period for new employees").

As relevant to this case, on January 20, 2025, President Trump immediately took steps to optimize the size of the federal workforce and limit hiring to mission-critical positions. AR 332–33. To that end, the President issued an Executive Order ordering a hiring freeze and directing OPM, along with other government agencies, to "submit a plan to reduce the size of the Federal Government's workforce through efficiency improvements and attrition." AR 332. The Executive Order further directed "the heads of executive departments and agencies [to] seek efficient use of existing personnel." AR 333.

Consistent with this Executive-wide plan to streamline the federal workforce, on January 20, 2025, OPM Acting Director Charles Ezell transmitted to Executive Branch agencies a memorandum "providing … guidance … regarding critical potential personnel actions." AR 335–37. Much like prior OPM memoranda, the memorandum explained that "[p]robationary periods are an essential tool for agencies to assess employee performance and manage staffing levels." AR 335. It then advised agencies to "identify all employees on probationary periods," and to "promptly determine whether those employees should be retained at the agenc[ies]." *Id.*

As part of its role in providing guidance to the agencies, OPM fielded calls and emails

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

4

from agencies seeking additional OPM guidance on potential termination of probationary employees and navigation of the hiring freeze. *See, e.g.*, AR 359–63. Consistent with its statutory role, OPM repeatedly conveyed the position that termination decisions were up to the agencies. For instance, in February 11, 2025, emails with agencies, OPM Senior Advisor Noah Peters stated that such decisions were "up to each agency," and that OPM did not "want to be in the weeds of [the agencies'] exemptions." AR 357. Mr. Peters further clarified that "[a]gencies [were] responsible for exempting whomever they want—they are not required to exclude people. We have suggested possible categories of exemptions but are not requiring it." *Id.*[2] Indeed, OPM took no issue with the U.S. Department of Justice exempting all of its probationary employees from termination. AR 359, 382, 386.

On February 12, OPM emailed agency chiefs of staff, noting that "agencies ha[d] worked to review, clean up, and finalize their lists of probationary employees and begin taking action." AR 383. In light of these steps, OPM advised those chiefs of staff to partner with their agency Chief Human Capital Officers ("CHCOs") to "action" those probationary employees that each agency "wish[ed] to separate" by the following day, February 13. *Id.*[3] In this email, OPM further noted that agencies could "keep" probationary employees but asked that the agencies identify for OPM those employees in a probationary employee spreadsheet that OPM maintained. AR 384. Further, OPM advised that, in terminating employees, agencies had to "provide notice of performance deficiencies," per relevant regulations on probationary periods. *Id.* That same day,

---

[2]    Plaintiffs make much of the fact that OPM granted "exemptions," as evidence that OPM was ultimately directing who agencies could and could not fire. *See* Pls.' Br. at 5–6. However, the record highlights that agencies were giving notice of who they would and would not terminate in their "exemptions." As a result, the "exemptions" discussed are better understood as agencies seeking to exempt certain employees from the broader Executive Branch priority to reduce the federal workforce and not from any decision by OPM. Crucially, the record does not show that OPM ever denied exemptions or ordered agencies to fire employees that the agencies wished to retain. While Plaintiffs cite this Court's prior opinions to claim that there is a record of OPM denying exemptions, *id.* at 8 n.9, those opinions do not actually discuss "exemptions" or provide examples of denials. Instead, they involve examples of certain agency personnel individually concluding—without further agency corroboration of their personal opinion—that they were being ordered to terminated employees and had no choice in the matter. *See, e.g., Am. Fed'n of Gov't Emps. v. OPM*, No. 3:25-cv-1780, --- F. Supp. 3d ---, 2025 WL 660053, at *1–3 (N.D. Cal. Feb. 28, 2025) ("*AFGE*").

[3]    Contrary to Plaintiffs' contention, *see* Pls.' Br. at 3 n.4, this email is included in the administrative record. *See* AR 383–84.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

5

OPM—by way of the CHCO Council—sent agencies a draft template letter for terminating probationary period employees while once again noting that agencies would still have to "identify performance or conduct deficiencies in the notice terminating a probationer[.]" AR 369–71.

On February 14, OPM sent an email to agencies to clarify the next steps regarding probationary employees, as agencies themselves were "work[ing] to review, clean up, and finalize theirs lists of probationary employees they wish[ed] to *keep*, and wish[ed] to terminate, and begin taking action." AR 375 (emphasis added). The email noted how agencies had been notifying OPM of the employees that the agencies would exempt from termination, and OPM reminded the agencies to provide an explanation for the exemption. *Id.* However, OPM left any kind of termination decision to the agencies and reiterated that such decisions should be taken "in light of the President's directive to dramatically reduce the size of the federal workforce." *Id.* As with prior emails, OPM attached a "template letter" for reference but did not specifically instruct agencies to use it. *Id.*

On February 24, the CHCO Council again emailed agency CHCOs and Deputy CHCOs, noting that OPM had received numerous questions "[a]s agencies continue to make decisions on whether to retain probationary employees[.]" AR 389. OPM provided a frequently-asked-questions document "[t]o assist agencies in carrying out their decisions[.]" AR 389–94. In that document, OPM advised agencies to engage in their own review of probationers' continued employment based on how a probationer's performance was advancing the agencies' mission. AR 390 (asking "How should agencies evaluate the performance of an employee serving a probationary or trial period?"). Following this lawsuit, OPM sought to reiterate, once again, that termination decisions were up to individual agencies. Thus, on March 4, 2025, OPM issued a revised guidance of its prior January 20 memo to clarify that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees." AR 400–02. OPM emphasized that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." AR 400.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
6

**STANDARD OF REVIEW**

"Generally, judicial review of agency action is limited to review of the record on which the administrative decision was based." *Partridge v. Reich*, 141 F.3d 920, 926 n.4 (9th Cir. 1998) (quotation omitted). Furthermore, "[t]he court's role on motions for summary judgment is not to resolve contested fact questions which may exist in the underlying administrative record, but to determine whether or not, as a matter of law, the evidence in the administrative record permitted the agency to make the decision it did." *Ctr. for Biological Diversity v. Gould*, 150 F. Supp. 3d 1170, 1177 (E.D. Cal. 2015) (quotation omitted). The only exception applicable here is on standing as "a plaintiff moving the district court for summary judgment … must either identify in that [administrative] record evidence sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court[.]" *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002). Because Plaintiffs bear the burden of proof with respect to standing, to obtain summary judgment they must establish that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a)—*i.e.*, they "must affirmatively demonstrate that no reasonable trier of fact could find other than" in their favor on the issue. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Here, Plaintiffs acknowledge that the Court can decide the parties' respective motions for summary judgment purely based on the administrative record and that there is no need for further factual development or proceedings. Pls.' Br. at 2 n.3[4]; *see also Shah v. U. S. Citizenship & Immigr. Servs.*, No. 18-cv-1345, 2019 WL 6877929, at *3 (W.D. Wash. Dec. 17, 2019) ("Courts routinely resolve APA challenges to an agency's administrative decision by summary judgment.").

---

[4] Plaintiffs assert that they are not challenging the administrative record so as to "avoid[] presenting unnecessary disputes to this Court." Pls.' Br. at 2 n.3. But by not challenging the sufficiency of the administrative record, Plaintiffs have therefore waived any contention that more factfinding is necessary. *Nasser-Urfi v. Att'y Gen. of U.S.*, 298 F. App'x 123, 124 (3d Cir. 2008) (finding party waived challenge to sufficiency of administrative record); *Stadnicki on Behalf of LendingClub Corp. v. Laplanche*, No. 3:16-cv-3072, 2018 WL 4110553, at *4 (N.D. Cal. Aug. 29, 2018) ("That […] plaintiffs decided to forgo [a] claim is telling and further indicates … the strategic choices made …").

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**I.  This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims**

    **A.  Plaintiffs Lack Standing**

        At the threshold, Plaintiffs lack standing to maintain this lawsuit. To establish standing, a plaintiff must show: (i) an "injury in fact[,]" that is, a violation of a legally protected interest that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical"; (ii) a causal connection between the injury and the defendant's conduct such that the injury is "fairly … trace[able] to the challenged action"; and (iii) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted).

        As the party invoking federal jurisdiction here, Plaintiffs "bear[] the burden of establishing these elements," and therefore "must clearly … allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotations omitted). "[S]tanding is not dispensed in gross," and "'plaintiffs must demonstrate standing for each claim they press' against each defendant, 'and for each form of relief that they seek.'" *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)).

        As to the organizational Plaintiffs, the Supreme Court has already concluded that the alleged harm to those plaintiffs was too remote and that they lacked standing. *See Off. of Pers. Mgt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (Mem.) ("*OPM*") ("The District Court's injunction was based solely on the allegations of the nine non-profit-organization plaintiffs in this case. But under established law, those allegations are presently insufficient to support the organizations' standing."). This Court also rejected the theory of standing advanced by the organizational plaintiffs when holding that the State of Washington does not have standing based on speculative, downstream injuries flowing from the disruption of certain federal services. *Am. Fed'n of Gov't Emps. v. OPM*, No. 3:25-cv-1780, --- F. Supp. 3d ---, 2025 WL 1150698, at *12 (N.D. Cal. Apr. 18, 2025) ("*AFGE*"). Neither the organizational Plaintiffs nor the State of Washington have come forward with additional allegations or evidence that would warrant

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

8

revisiting this conclusion, so the Court's holding on this theory of standing remains dispositive.

As to the union Plaintiffs and the State of Washington, Plaintiffs argue there is no need to revisit the Court's prior rulings that those entities have standing. Pls.' Br. at 1. However, "[s]tanding must 'persist throughout all stages of [the] litigation.'" *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). Like the organizational Plaintiffs, the remaining Plaintiffs do not set out any new allegations or proffer other admissible evidence demonstrating that they have standing to maintain their challenge.

In initially holding that the union Plaintiffs had representational standing through injury to their members, this Court previously found standing based on the declaration of one Veteran Doe let go from the Foreign Agricultural Service. *See AFGE*, 2025 WL 1150698, at *9–10. However, the union Plaintiffs—despite this Court's request that they substantiate their allegations of harm to members—have failed to identify terminated probationers from *each* of the relief Defendant agencies they have named that are union members. *See, e.g.*, Resp. to Court's Inquiry Re: Union Members, at 2, ECF No. 199 ("the Public Sector Union Plaintiffs are unable to identify probationary employee members or to assemble a list of those members through a review of the membership records."). Thus, the union members lack standing to obtain relief as to any of the relief defendant agencies for which they have failed to proffer sufficient evidence of injury. *See Murthy*, 603 U.S. at 61 ("standing is not dispensed in gross") (citation omitted).

The union Plaintiffs also fail to establish an injury to their organizational mission. While this Court tentatively concluded that the union Plaintiffs established a cognizable injury based on the supposed reduction in union dues from terminated employees, *AFGE*, 2025 WL 1150698, at *10, Plaintiffs' assertions are not supported by competent evidence. AFGE, for example, has boasted that it "stands at 321,000 dues-paying members, its highest level ever, and is on track to reach 325,000 dues-paying members by the end of the week." Jory Heckman, AFGE Sees Surge in New Members as its Lawsuits Stall Trump's Federal Workforce Policies, Federal News Network (Feb. 10, 2025), https://perma.cc/F2KW-CKT2.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
                                          9

The State of Washington also lacks standing to asserts the same downstream harms that the Supreme Court rejected in staying the initial preliminary injunction. *See OPM*, 145 S. Ct. 1914 (Mem.). But, apart from an allegation of "financial injury" that Washington allegedly suffered by having to redirect resources to serve the unemployment insurance claims of terminated employees, *AFGE*, 2025 WL 1150698, at *13, this Court has already held that Washington lacked standing with respect to a number of alleged injuries, and Washington has come forward with no additional evidence of an injury. Defendants respectfully submit that Washington's claim of financial injury is still insufficient given the Supreme Court's decision in *United States v. Texas*, that "indirect effects on state revenues or state spending," is still too "attenuated" to confer standing. 599 U.S. 670, 680 n.3 (2023). And while this Court suggested that *Texas* was cabined to standing based on the federal government's prosecutorial decisions, *AFGE*, 2025 WL 1150698, at *13, the Ninth Circuit has read *Texas* much more broadly. Indeed, the Ninth Circuit rejected the state of Idaho's standing based on allegations that "it w[ould] sustain economic injury in the form of downstream medical costs that will borne by the state." *Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024). In doing so, the Ninth Circuit highlighted that this theory of standing was no different than the kind of "indirect effect on state spending," rejected in *Texas*. *Id.* at 1176 (internal citation omitted). The State of Washington's theory of indirect harm is no different that Idaho's and insufficient to confer standing.

## B. Plaintiffs Lack Standing to Raise Their Fifth Claim for Relief

Plaintiffs lack standing to maintain the fifth claim for relief. In their Brief, Plaintiffs only seek summary judgment on Claims I-IV and avoid discussing Claim V other than to briefly assert in a footnote that "[t]he AR prepared by OPM entirely ignores this claim." Pls.' Br. at 2 n.2. As a preliminary matter, Plaintiffs have waived their ability to challenge the sufficiency of the administrative record. *See supra*, at 7 n.4. In any event, there is no need to resolve Claim V by reference to any administrative record because the Court lacks subject matter jurisdiction over this claim. As Plaintiffs recount in their brief, this claim "challenges OPM's new requirement that each federal employee submit a weekly email to OPM detailing five things the employee did during the prior week." Pls.' Br. at 2; *see also* SAC ¶¶ 223–29. However, Plaintiffs cannot

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
10

1    establish standing to bring this tangential claim.

2         Plaintiffs assert an injury based on the claim that "[h]ad OPM followed notice-and-

3    comment procedures required by the APA, Plaintiffs would have provided comments about the

4    OPM Program." SAC ¶ 223. While Plaintiffs thus raise a "procedural injury" claiming they were

5    injured by OPM not "following notice and comment rulemaking," the Ninth Circuit has held that

6    "not every procedural injury will do" for the purposes of standing. *Yesler Terrace Cmty. Council*

7    *v. Cisneros*, 37 F.3d 442, 445–46 (9th Cir. 1994). Rather, "[t]o have standing, a plaintiff must be

8    seeking 'to enforce a procedural requirement the disregard of which could impair a separate

9    concrete interest.'" *Id.* (quoting *Defs. of Wildlife*, 504 U.S. at 572). Even assuming *arguendo* that

10   OPM *required* federal employees to submit email reports to it, Plaintiffs do not allege or identify

11   by competent evidence a separate concrete interest of theirs impaired. *See* Jonthan Landay,

12   Joseph Ax, & Sarah N. Lynch, *Some US agencies tell workers not to reply to Musk's 'What did*

13   *you do last week' email*, Reuters (Feb. 24, 2025), https://perma.cc/X2W7-WQVT (recounting

14   federal workers that were not required to submit email reports); *see also* SAC ¶ 186 (noting

15   OPM's post "that responding to any OPM mass email was 'explicitly voluntary'"). Plaintiffs'

16   SAC fails to allege any separate concrete interest that was harmed either by any supposed

17   requirement by federal employees to submit email reports or by any failure to comment on any

18   such requirement. Moreover, it is unlikely that Plaintiffs could allege such an interest in the first

19   instance as they are not federal employees themselves nor would any additional work

20   requirement for federal employees be sufficient to create an injury-in-fact. *Republican Nat'l*

21   *Comm. v. Burgess*, No. 324-cv-198, 2024 WL 3445254, at *5 (D. Nev. July 17, 2024) (rejecting

22   standing to challenge a requirement "merely because it might create more work"). Defendants

23   are therefore entitled to summary judgment on Claim V of Plaintiffs' SAC.

24        **C.  The CSRA and FSL-MRS Preclude District Court Jurisdiction Over Plaintiffs'**
              **Claims**

25        Plaintiffs cannot bring suit in this forum because the CSRA and the Federal Service

26   Labor-Management Relations Statute ("FSL-MRS") preclude district court subject matter

27   jurisdiction over claims regarding the termination of probationary employees.

28

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

11

As Defendants have argued throughout this litigation, *see* Defs.' Opp'n to Pls.' Mot. for TRO and Order to Show Cause, ECF No. 33; Defs.' Supp. Br. on Admin. Channeling, ECF No. 150 ("Defs.' TRO Opp'n"); Defs.' Br. re: Additional Relief Available to Union Pls., ECF No. 160; Defs.' Opp'n to Pl. Washington State's Mot. for Prelim. Inj., ECF No. 167, the CSRA, which includes the FLS-MRS, provides an "exclusive" scheme for challenges to personnel actions taken against civil service employees and disputes over labor-management relations in the federal workplace. *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 5, 8 (2012). Through the CSRA, "Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims." *Am. Fed'n of Gov't Emps. v. Sec'y of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (alterations and quotation marks omitted). Because this "regime is exclusive," a plaintiff "cannot circumvent [it] by instead bringing suit in district court." *Id.* at 636–37.

Thus, in *United States v. Fausto*, the Supreme Court held that the CSRA precluded review of a Fish and Wildlife Service employee's claim for back pay even though the CSRA provided no remedy. *See* 484 U.S. 439, 440–41 (1988); *see also Arron v. United States*, 113 F.3d 1245 (10th Cir. 1997) (expressly applying the CSRA's exclusive remedial scheme to a probationary employee challenging his termination). Likewise in *Elgin*, the Supreme Court held that, even if a federal employee was raising constitutional claims, the CSRA imposes an "implied preclusion of district court jurisdiction[.]" 567 U.S. at 12; *see also Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991) ("Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce."); *Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984). The CSRA thus "precludes courts from providing supplemental remedies[.]" *Lampon-Paz v. OPM*, 732 F. App'x 158, 161 (3d Cir. 2018).

Nor can the organizational Plaintiffs or the State of Washington avoid the CSRA's exclusive scheme by insisting that Congress did not provide states an opportunity to challenge federal employees' terminations. In authorizing challenges to employment decisions only by

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
12

unions representing federal employees, employees, and applicants for employment, Congress deliberately denied review to anyone else. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340 (1984). These Plaintiffs thus plainly fall within a class of parties to which Congress purposefully denied the opportunity to seek direct review of federal employees' terminations.

This Court thus lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims. *See, e.g.*, Defs'. TRO Opp'n at 13–17.

## II.  Defendants Are Entitled to Summary Judgment on Plaintiffs' *Ultra Vires* Claim

Plaintiffs' *ultra vires* claim fails on the law and the record evidence. Courts have recognized that an equitable cause of action for *ultra vires* review may be available in rare instances where, because Congress has failed to provide a cause of action, "the individual is left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law, and is in violation of the rights of the individual." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 110 (1902); *see also Leedom v. Kyne*, 358 U.S. 184, 189 (1958). However, the Supreme Court has expressly held that an *ultra vires* cause of action is not available whenever there is another "meaningful and adequate opportunity for judicial review," or "clear and convincing evidence that Congress intended to deny … District Court jurisdiction." *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43–44 (1991); *see also Nuclear Regul. Comm'n, v. Texas*, 600 U.S. ---, 145 S. Ct. 1762, 1775–76 (2025); *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327–28 (2015).

*Ultra vires* review is unavailable here. First, Plaintiffs cannot pursue their *ultra vires* claim because it parrots their APA claims. *Compare* SAC ¶¶ 190–201 *with id*. ¶¶ 202–08. Indeed, Plaintiffs contend that OPM exceeded its statutory authority because it "arrogat[e]d to … itself the authority to direct other agencies' employment decisions" and "Congress did not authorize OPM to hire or fire any federal employees by an agency other than OPM itself." Pls.' Br. at 11–12; *see also id.* at 14 (repeating this exact same line of argument as to Plaintiffs' APA claims). However, when a plaintiff invokes both the APA and *ultra vires* causes of action, a court should first consider the plaintiff's APA claim. *See Chamber of Com. v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996). Because Plaintiffs' APA claim is identical to their *ultra vires*

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
13

claim, consideration of their *ultra vires* claims should be avoided. This Court should thus dismiss Plaintiffs' *ultra vires* claims on this basis alone.

Second, even if *ultra vires* review were available, Plaintiffs' *ultra vires* claim would still fail. To prevail on such a claim, a plaintiff must establish that a government official "acted in a blatantly lawless manner or contrary to a clear statutory prohibition." *Hindes v. FDIC*, 137 F.3d 148, 164 (3d Cir. 1998); *see Texas*, 145 S. Ct. at 1775 (holding that "nonstatutory review was available because the agency order at issue was an attempted exercise of power that had been specifically withheld, and the agency's order violated a specific prohibition in the Act") (quotations omitted). Mere allegations of constitutional error do not establish *ultra vires* action. *See Eagle Tr. Fund v. USPS*, 365 F. Supp. 3d 57, 68 n.6 (D.D.C. 2019) (Jackson, J.), *aff'd*, 811 F. App'x 669, 670 (D.C. Cir. 2020) ("[A] constitutional claim is separate from an *ultra vires* claim."). Nor do claims that "simply involve a dispute over statutory interpretation." *Lundeen v. Mineta*, 291 F.3d 300, 312 (5th Cit. 2002)(quoting *Kirby Corp. v. Peña*, 109 F.3d 258, 269 (5th Cir. 1997)). Rather, an officer may be said to act *ultra vires* "only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949) (to prevail, a plaintiff must allege that official is "not doing the business which the sovereign has empowered him to do"). This is a "very stringent standard," rendering *ultra vires* claims "essentially a Hail Mary pass" that "in court as in football, … rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.).

For example, it is well settled that "claims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims[.]" *Dalton v. Specter*, 511 U.S. 462, 473 (1994). In *Dalton*, the Supreme Court rejected the proposition that "whenever the President acts in excess of his statutory authority, he also violates the constitutional separation-of-powers doctrine." *Id.* at 471. Rather, the Court explained that not "every action by the President, or by another executive official, in excess of his statutory authority is *ipso facto* in violation of the Constitution." *Id.* at 472. In reaching this conclusion, the Court carefully "distinguished between claims of constitutional violations and claims that an official has acted in

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
14

excess of his statutory authority." *Id.* (collecting cases). It explained that the Constitution is implicated only if executive officers rely on it as an independent source of authority to act or if the officers rely on an unconstitutional statute. *Id.* at 473 & n.5.

In this case, Plaintiffs do not allege that either OPM's regulations or its statutory authority for promulgating these regulations are themselves unconstitutional; nor have they alleged that those regulations directly prohibit OPM's guidance. *See generally* SAC. *Dalton*'s reasoning thus controls here and refutes any argument that OPM acted *ultra vires*. *See Ctr. for Biological Diversity v. Trump*, 453 F. Supp. 3d 11, 51–54 (D.D.C. 2020) (rejecting separation-of-powers claim based on Appropriations Clause under *Dalton* because "[a]t bottom, this is just an allegation that [executive officials] exceeded their statutory authority"). Indeed, the Supreme Court very recently reiterated *Dalton*'s reasoning in rejecting an attempt to "dress up a typical statutory-authority argument as an *ultra vires* claim." *Texas*, 145 S Ct. at 1776. Like *Texas*, the present matter concerns "simply" whether Defendants have "exceeded [their] statutory authority" and "no constitutional question whatever is raised"—"only issues of statutory interpretation." *Dalton*, 511 U.S. at 473–74 & n.6 (quotation omitted).

Third, the premise of Plaintiffs' *ultra vires* claim—that OPM has no authority to direct other agencies' employment decisions—is incorrect as a matter of law. The CSRA, for example, expressly authorizes OPM to instruct an agency to separate an employee where there is a negative suitability determination. *See* 5 U.S.C. § 3301, 5 C.F.R. § 5.3; 5 C.F.R. pt. 731.

Finally, contrary to Plaintiffs' allegations and contentions, the administrative record shows that OPM in fact did not direct other agencies' employment decisions as part of the January 20, 2025, guidance or through any subsequent step. Rather, OPM merely provided guidance to agencies in light of a presidential directive to reduce the size of the federal government. *See* AR 332–33; *see also* Exec. Order No. 14,210, 90 Fed. Reg. 9669 (Feb. 11, 2025) (clarifying terms of the hiring freeze). OPM was acting well within its authority under the CSRA to provide guidance to clarify how agencies should carry out the President's directive while still exercising their own authority to hire, retain, and terminate employees. *See, e.g.*, 5 U.S.C. § 1103(a)(7), (c)(2)(A)(i). The record further shows agencies retained ultimate

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
15

discretion over who to terminate. For example, on February 14, 2025, OPM stated that it was agencies who were ultimately "work[ing] to review, clean up, and finalize theirs lists of probationary employees they wish[ed] to keep, and wish[ed] to terminate, and begin taking action." AR 375; *see also* AR 357–58.

In fact, Plaintiffs seem to ultimately recognize that it was the agencies responsible for the terminations, arguing elsewhere in the *ultra vires* claim that the relevant provisions of the CSRA "do not permit agencies to terminate probationary employees, immediately and en masse, or for pretextual 'performance' reasons[.]" Pls.' Br. at 12. Yet that is not an argument that OPM acted *ultra vires*, but rather a dispute with whether the *agencies* themselves followed the CSRA in terminating probationary employees. In sum, Plaintiffs cannot sustain an *ultra vires* claim based on the record here.

**III.  OPM Did Not Violate Its Statutory Authority in Issuing the Guidance**

This Court should also grant summary judgment to Defendants on Plaintiffs' second claim alleging that OPM "exceeded its own statutory authority and usurped the authority of other agencies," and thus exceeded its statutory authority under the APA. Pls.' Br. at 14. Plaintiffs' claim finds no support in the record, and neither OPM's guidance (not its other actions) exceeded its statutory authority.

The CSRA authorizes OPM to "advis[e] the President on actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles, including recommending policies relating to the … separation of employees." 5 U.S.C. § 1103(a)(7). The statute also charges OPM with helping to "align[] human capital strategies of agencies with the missions, goals, and organizational objectives of those agencies[.]" *Id.* § 1103(c)(2)(A)(i). OPM's January 20, 2025, guidance and subsequent correspondence with agencies was consistent with its statutory authority, as all it did was give agencies guidance "in light of the President's directive to dramatically reduce the size of the federal workforce." AR 375.

Plaintiffs' primary legal contention is that OPM was not authorized to hire or fire any federal employees outside of OPM. Pls.' Br. at 11–12. But that misses the point, because the

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
16

administrative record shows that OPM did not direct agencies to terminate employees. Rather, the record repeatedly shows that it was up to the agencies to determine which probationary employees to exempt from terminations and that OPM would not "be in the weeds" of those agency's decisions. AR 357 ("Agencies are responsible for exempting whomever they want"). In fact, at least one agency declined to fire *any* of its probationary employees. *See, e.g.*, AR 386–88 (U.S. Department of Justice). And when OPM provided guidance to agencies of next steps to terminate probationary employees, OPM specifically noted that it was the agencies that were "work[ing] to review, clean up, and finalize theirs lists of probationary employees they *wish[ed] to keep*, and wish[ed] to terminate, and begin taking action." AR 375 (emphasis added). In short, the record shows that, at all times, the decisions about terminations of probationary employees were left in the discretion of the individual agencies, which carried out these decisions as part of a broader Executive-wide effort to reduce the federal workforce.

Indeed, Plaintiffs' other arguments essentially admit this fact: Plaintiffs contend that the CSRA "do[es] not permit agencies to terminate probationary employees, immediately and en masse, or for pretextual 'performance' reasons[.]" Pls.' Br. at 12. But this is an argument leveled at the conduct of the agencies, not at OPM or its guidance—which is the sole focus of this lawsuit. *See generally* SAC. Accordingly, this Court should grant summary judgment to Defendants on Claim II.

**IV.  OPM's Guidance Was Not Arbitrary and Capricious**

This Court should grant summary judgment to Defendants on Plaintiffs' third claim that OPM's actions were arbitrary and capricious in violation of the APA.[5]

---

[5]     While Defendants initially conceded that Plaintiffs challenged only final agency action, *see* Defs' Resp. to Mar. 28, 2025, Order Setting Further Br. Sch., at 2, ECF No. 173, with respect to Plaintiffs' challenges to OPM guidance, Plaintiffs' new arguments appear to impermissibly go further. Plaintiffs now assert that they are also challenging OPM's provision of a template termination letter and OPM's "'exemption' decisions." But any claims related to the decisions were never pleaded in Plaintiffs' SAC, and Plaintiffs cannot amend their complaint by way of summary judgment briefing. *Christianson v. United States*, 706 F. Supp. 3d 1057, 1071 (D. Idaho 2023) ("It is impermissible to add a new claim or assert a new legal theory for the first time at the summary judgment stage."), *appeal filed*, No. 24-232 (9th Cir. Jan. 16, 2024). Moreover, by challenging a more sprawling chain of actions taken by OPM beyond the original guidance, it is questionable whether Plaintiffs are challenging final agency action. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64, (2004) ("The [APA's] limitation to discrete agency action precludes … broad programmatic attack[s]").

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

17

Under the APA, an action is arbitrary and capricious only if the agency:

relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "Under the arbitrary and capricious standard, [a court's] review … is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010). Accordingly, a court's "[r]eview under the arbitrary and capricious standard is narrow, and [it does] not substitute [its] judgment for that of the agency," and "[a]n agency decision will be upheld as long as there is a rational connection between the facts found and the conclusions made." *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1132 (9th Cir. 2011); *see also Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021) ("A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision."). "[M]ere policy disagreement is not a basis for a reviewing court to declare agency action unlawful." *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 95 (D.D.C. 2007).

Neither OPM's guidance nor its other actions were arbitrary and capricious. OPM merely provided guidance to agencies regarding how agencies could act "in light of the President's directive to dramatically reduce the size of the federal workforce." AR 375. As part of this process, OPM noted that agencies could ultimately identify which employees they sought to keep and which employees they did not seek to keep. *Id.* And, to aid the agencies who sought to terminate probationary employees, OPM provided them with a "template letter" the agencies *could* choose to use in communicating any termination. AR 369, 375. While Plaintiffs may disagree with the wisdom of OPM's guidance, they cannot say that there was no reasonable basis for OPM to issue it, particularly given the broader Executive-wide effort to reduce the size of the federal workforce. In fact, OPM's guidance reiterated what OPM and other agencies had repeatedly said before: that agencies should use the probationary period to evaluate the fitness of

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
18

1  probationary employees for continued employment. *See* AR 3–56, 60–116, 324–25.

2         Plaintiffs nevertheless cite four OPM actions as purportedly showing that its actions were

3  "based on an unreasoned and pretextual attempt to characterize these terminations uniformly as

4  being based on employees' 'performance.'" Pls.' Br. at 15. Specifically, Plaintiffs contend that

5  OPM acted arbitrarily and capriciously when it supposedly: (1) "directed agencies to send

6  template termination letters with no individualized statements of reasons and with a statement

7  that employees were being terminated for cause that had no factual basis[;]" (2) "categorically

8  directed agencies to terminate all probationary employees for performance[;]" (3) "categorically

9  directed agencies to retain only their 'mission-critical' probationary employees[;]" and (4) used

10  an OPM template letter as "an obvious pretext intended to obstruct appeal and avoid statutory

11  and regulatory reduction-in-force procedures." *Id.* at 16. This Court should reject each of these

12  arguments because, rather than show that OPM somehow lacked a reasoned basis for its

13  decisionmaking, they merely challenge the wisdom of OPM's guidance.

14         Plaintiffs' arbitrary and capricious challenge also fails because their claims are

15  contradicted by the record. Plaintiffs' first two claims start from an incorrect premise, as

16  Plaintiffs believe that the template letters provided by OPM demanded that the agencies

17  specifically issue letters terminating probationary employees and identify "performance" as the

18  basis. The record shows that OPM did no such thing. Rather, the documents that OPM provided

19  to agencies were "[d]raft letters" or "template[s]" and, Plaintiffs point to no evidence in the

20  record that OPM actually required agencies to use these drafts. *Cf.* AR 369, 375. Moreover,

21  OPM specifically stated that "agencies must identify performance or conduct deficiencies in the

22  notice terminating a probationer," AR 369, reflecting OPM's guidance that agencies could use

23  conduct *or* performance as the basis for termination and that agencies had to provide a basis for

24  terminating employees.

25         Plaintiffs' third and fourth claims also fail to find any support in the record. While

26  Plaintiffs claim that "OPM categorically directed agencies to retain only their 'mission-critical'

27  probationary employees," Pls.' Br. at 16, a review of OPM's February 14 guidance contains no

28  such directive. Rather, that letter conveyed that "OPM *believes* 'qualifications for continued

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
                                    19

employment' in the current context means that only the highest-performing probationers in mission-critical areas should be retained." AR 375. OPM simply conveyed its *belief* that mission critical employees should be retained. Nor did OPM say that "only" such employees should be retained. *See id.* (noting agencies had worked to review employees they "wish[ed] to keep[]"). And finally, while Plaintiffs claim that the template letter was a "pretext intended to obstruct appeal and avoid statutory and regulatory reduction-in-force procedures," Pls.' Br. at 16, nothing in the administrative record supports such an assertion. Additionally, the fact that certain agencies chose *not* to terminate probationary employees—and that OPM acknowledged that— further belies the argument that OPM directed a back-end reduction-in-force. This Court should thus grant summary judgment to Defendants on Plaintiffs' arbitrary and capricious claim.

**V.  OPM's Guidance Did Not Constitute a Rule Requiring Notice and Comment**

This Court should grant summary judgment to Defendants on Plaintiffs' fourth claim that "OPM promulgated at least three government-wide 'rules' which, pursuant to 5 U.S.C. §§ 1105 and 1103(b)(1), could only be issued by means of notice-and-comment rulemaking." Pls.' Br. at 18. This claim fails because Plaintiffs cannot show that OPM's *guidance* and any further communications related to it were legislative rules subject to the APA's or the CSRA's notice and comment requirements.[6]

Under the APA, the notice and comment requirement "subsection does not apply … to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice[.]" 5 U.S.C. § 553(b)(4)(A). As a result, courts have routinely held interpretive rules do not require notice and comment rulemaking because they "do not have the force and effect of law." *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) (quoting *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 99 (1995)). So, too, with agency "guidance documents," which do not need to be "promulgated pursuant to the notice-and-comment procedures of the Administrative Procedure Act" unless they are binding on an agency because they have been

---

[6]    In any event, as with Plaintiffs' other claims, their claim that OPM issued a rule that should have gone through notice and comment rulemaking "is 'of the type' Congress intended to channel through the CSRA's exclusive remedial regime." *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 565 (D.C. Cir. 2023) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994)).

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
20

1    "upheld in an agency adjudication" or have been "endorsed in other agency action having the

2    force of law." *Devon Energy Corp. v. Kempthorne*, 551 F.3d 1030, 1034, 1041 (D.C. Cir. 2008).

3    As a result, "unless another statute states otherwise, the notice-and-comment requirement 'does

4    not apply' to 'interpretative rules, general statements of policy, or rules of agency organization,

5    procedure, or practice.'" *Perez*, 575 U.S. at 96 (quoting 5 U.S.C. § 553(b)(A)).

6        In determining whether items like guidance documents are substantive "rules" and have

7    the force of law, the Ninth Circuit has often looked to the "helpful framework" from the D.C.

8    Circuit's decision in *McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1320 (D.C. Cir.

9    1988). *See League of Cal. Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1012 (9th Cir.

10   2024). In distinguishing a substantive rule (subject to notice-and-comment rulemaking) from a

11   general statement of policy (not subject to notice-and-comment rulemaking), the D.C. Circuit has

12   observed that: "[a] policy statement is one that first, does not have a present-day binding effect,

13   that is, it does not impose any rights and obligations, and second, genuinely leaves the agency

14   and its decisionmakers free to exercise discretion." *McLouth Steel Prods.*, 838 F.2d at 1320

15   (quotations omitted). In other words, "[t]he question for purposes of § 533 is whether a statement

16   is a rule of present binding effect; the answer depends on whether the statement constrains the

17   agency's discretion." *Id.* Likewise, the Ninth Circuit has held that "[t]o the extent that [a]

18   directive merely provides guidance to agency officials in exercising their discretionary powers

19   while preserving their flexibility and their opportunity to make individualized determinations, it

20   constitutes a general statement of policy." *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013 (9th

21   Cir. 1987) (cleaned up). To that end, the Ninth Circuit has looked to whether "[g]uidance

22   contains a great deal of language suggesting that its directions are mandatory." *Colwell v. Dep't

23   of Health & Hum. Servs.*, 558 F.3d 1112, 1126 (9th Cir. 2009). As relevant to this Court's

24   inquiry, another court has expressly held that guidance "issued by OPM [that] merely interpret[s]

25   … Executive Orders," does not constitute a substantive rule requiring notice and comment

26   rulemaking. *Serv. Emps. Int'l Union Loc. 200 United v. Trump*, 420 F. Supp. 3d 65, 77

27   (W.D.N.Y. 2019).

28       Under these principles, the OPM guidance was not a substantive rule with the force of

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
                                          21

1   law and was thus not subject to the APA's or the CSRA's notice and comment requirements.

2   OPM's guidance reiterated what OPM had previously advised agencies, which was to use the

3   probationary period "to assess employee performance and manage staffing levels." AR 335

4   (citing AR 3–59); *see also* AR 324. While OPM guidance advised agencies to identify

5   probationary employees, it quite clearly conveyed that it was up to agencies to "determine

6   whether [probationary] employees should be retained at the agency." AR 335. In other words,

7   the guidance stated that agencies had the "flexibility and [the] opportunity to make

8   individualized determinations," about whether or not to retain probationary employees. *Mada-*

9   *Luna*, 813 F.2d at 1013. There was no mandatory directive for agencies to terminate all or even a

10  sub-set of employees, and OPM's subsequent communications with agencies reiterated this

11  point. *See* AR 357 ("Agencies are responsible for exempting whomever they want—they are not

12  required to exclude people. We have suggested possible categories of exemptions but are not

13  requiring it. It might not make sense for each agency.").

14          In arguing otherwise, Plaintiffs assert that "the AR shows that OPM promulgated at least

15  three government-wide 'rules.'" Pls.' Br. at 18. Plaintiffs contend that OPM promulgated rules

16  when it: (1) directed agencies to prepare lists of probationary employees, determine whether to

17  retain them, "and to terminate all but their 'mission-critical' probationers by February 17[;]"

18  (2) "purported to redefine[]" employee fitness and qualifications "by instructing all agencies that

19  'only the highest-performing probationers in mission critical areas' were to be considered fit for

20  continued employment[;]" and (3) "created a novel process by which agencies could secure

21  exemptions from OPM's equally novel mass termination program." *Id.* Plaintiffs once again

22  improperly advance claims never pleaded in their SAC. *See* SAC ¶¶ 214–21; *see also*

23  *Christianson*, 706 F. Supp. 3d at 1071. But even assuming these claims were properly pled, the

24  record does not support Plaintiffs' contentions.

25          First, contrary to Plaintiffs' suggestion, OPM's January 20 guidance simply echoed prior

26  guidance about the importance of the probationary period and assessing agencies' probationary

27  employees. And Plaintiffs' assertion that OPM directed agencies to terminate their mission

28  critical employees on February 14 is not supported by the record. While OPM emailed agencies

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
                                                    22

on February 14 regarding their lists of probationary employees, the record clearly shows that OPM expressly stated that the decision of whether to separate those employees or any employees, at all, was up to the agencies. *See* AR 375 ("agencies have worked to review, clean up, and finalize their lists of probationary employees they wish to keep, and wish to terminate, and begin taking action"). Moreover, OPM did not mandate termination of non-mission-critical employees but rather "asked" for agencies to separate employees it had already identified for termination. *Id.* Like its January 20 guidance, OPM's February 14 guidance was "written in non-mandatory terms." *Colwell*, 558 F.3d at 1125.

Second, Plaintiffs' claim that OPM redefined the meaning of employee "fitness" and "qualifications" finds no support in the record. While Plaintiffs argue that OPM advised agencies that "only the highest performing probationers in mission-critical areas should be retained," Pls.' Br. at 8 (quoting AR 990), the record shows that this was not a substantive rule, but rather what "OPM believes," AR 390. OPM did not "instruct[] all agencies," to follow this belief or mandate that agencies retain only those probationers. *See* AR 375 (noting that agencies had identified "employees they wish to keep[]"). Nor do Plaintiffs identify any record evidence that OPM changed the meaning of any operative regulation. To the contrary, by noting that agencies had to "identify performance or conduct deficiencies in the notice terminating a probationer," AR 369, OPM was following existing regulations, *see* AR 390 (noting this identification was required under 5 C.F.R. § 315.804).

Finally, Plaintiffs' claim that OPM created an exemption process that constitutes a substantive rule finds no support in the record. While OPM used the word "exemptions," when agencies sought OPM's counsel on what probationary employees to terminate, the record does not support Plaintiff's claim that OPM somehow created a binding process for agencies' personnel actions. There is nothing in the record showing that OPM ever overruled an agency's decision not to terminate employees, AR 382, and OPM made clear that it would not "be in the weeds" of whatever employees an agency chose to retain or not retain. AR 357. Those decisions were "up to each agency" and while OPM had "suggested possible categories of exemptions [it did] not require[e] it." *Id.* The record shows that, at all times, agencies retained "flexibility and

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
23

[the] opportunity to make individualized determinations." *Mada-Luna*, 813 F.2d at 1013. Thus, OPM's guidance and subsequent actions were not substantive rules subject to notice and comment requirements.

**VI.  Plaintiffs' Requests for Relief Are Improper**

Defendants have shown that this Court should grant summary judgment to Defendants on each of Plaintiffs' claims. But even assuming *arguendo* that Plaintiffs are entitled to relief on any of their claims, this Court should reject Plaintiffs' requests for relief.

As a preliminary matter, Plaintiffs' request for "declaratory judgment that OPM lacked the authority to direct other agencies to terminate their probationary employees," Pls.' Br. at 18, is entirely unnecessary. The parties have consistently agreed that OPM does not have the authority to direct the mass termination of probationary employees, and OPM's own revised guidance further reiterated this fact. *See, e.g.*, ECF No. 78; ECF No. 167 at 16.

Plaintiffs' remaining requests for a panoply of measures "as is necessary to fully unwind" any alleged "mass termination directive," Pls.' Br. at 19, are also unwarranted. Plaintiffs' requested relief would improperly require the Court to engage in sprawling "corrective actions" that go far beyond vacating the guidance and would inappropriately involve the Court in oversight of  the employment decisions of agencies *other than OPM. Id*. at 20. Among other things, Plaintiffs seek an order of the Court directing: (i) all relief defendant agencies to modify each employee's SF-50s to remove any reference to performance-based terminations; (ii) all relief defendant agencies to modify their previous letters issued to probationary employees as part of the Court's April 18 order; and (iii) the National Oceanic & Atmospheric Administration ("NOAA") to not retroactively terminate its probationary employees. *Id.* at 20–23. Each of these requested remedies goes far beyond unwinding any unlawful action by OPM. Each would instead require this Court to enmesh itself in the personnel affairs of the various relief defendant agencies, which the Court has already rejected. *See* Tr. of Apr. 9, 2025, Hrg. 32:16–17 ("I don't like being in the position where I'm telling an agency to make their personnel decisions."); *id*. 32:22–23 ("So should it go away now that the agency – they know clearly well they have the right to decide, not OPM.").

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

24

First, Plaintiffs' requested relief would improperly disturb the Executive's traditional "latitude in the dispatch of its own internal affairs." *Sampson v. Murray*, 415 U.S. 61, 83 (1974) (citation and internal quotation marks omitted). And courts are generally wary of providing broad injunctive relief that disturbs the personnel decisions of an employer. *See, e.g., Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 865 (9th Cir. 2017) ("[A] former employee has no claim for injunctive relief addressing the employment practices of a former employer absent a reasonably certain basis for concluding he or she has some personal need for prospective relief."); *see also, e.g.*, *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) ("The CSRA's elaborate remedies show that judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief.").

Second, because Plaintiffs' requested relief also does nothing to "unwind" any allegedly unlawful action by OPM, it is therefore burdensome and overbroad. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("injunctive relief should be no more burdensome to the defendants than necessary to provide complete relief to the plaintiffs"); *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991) ("Injunctive relief, however, must be tailored to remedy the specific harm alleged.").

Plaintiffs' request for relief that "the relief defendant agencies … be further ordered to promptly update each terminated probationary employees' personnel files, including employee status change forms called SF-50s, to remove any references to performance-based terminations," Pls.' Br. at 20, highlights this overreach. If probationary employees have remained terminated even after this Court's prior orders and OPM's revised guidance—and as a result have their SF-50s coded as showing terminations—that is clearly a decision reached by the agencies independent of OPM. *See* Tr. of Apr. 9, 2025, Hrg. 32:23–33:1 ("But if the agency decides they're going to fire those people, isn't that the whole point? Rightly or wrongly, the agency – it's not the original lawsuit. The original lawsuit was OPM."). Having the relief defendant agencies alter an employee's SF-50 does not unwind any unlawful decision by OPM. Rather, Plaintiffs' proposed relief would have the Court police the agencies' choices to keep certain probationary employees terminated even after it has become abundantly clear that

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
25

agencies are exercising their own discretion on whether to retain or terminate probationary employees. *See, e.g.*, SAC ¶ 142 (noting that NSF reinstated terminated probationary employees in March 2025).[7]

A similar issue exists with Plaintiffs' requested relief to have "[e]ach relief defendant … required to state in further corrective letters, without hedging or qualification, that … probationary employees were not terminated for performance-based reasons." Pls.' Br. at 22. Once again, Plaintiffs ask the Court to alter decisions made by agencies independent of any decision by OPM. Plaintiffs specifically take issue with some letters issued by agencies to comply with this Court's April 18 order. In particular, some letters informed terminated probationary employees that their terminations were not performance-based while stating that the agency disagreed with the Court's April 18 order. *See, e.g.*, Decl. of Helen Wooden-Aguilar ¶ 4, ECF No. 216-16. Yet, Plaintiffs do not suggest—nor could they—that these agency statements are ultimately attributable to OPM, let alone the OPM guidance initially challenged in this lawsuit. Therefore, altering that language would not unwind anything that Plaintiffs challenge as allegedly unlawful in *this* lawsuit.[8]

Plaintiffs' last request for relief is the furthest afield from the scope of their Second Amended Complaint. Plaintiffs ask the Court to prohibit retroactive terminations of probationary employees by NOAA and make any affected "employees … whole for any out-of-pocket medical expenses incurred as a result of the retroactive terminations." Pls.' Br. at 23. But Plaintiffs seek relief wholly untethered from OPM's original guidance. Instead, they seek to alter independent choices made by one of the relief defendant agencies. Plaintiffs all but admit this

---

[7]    Even assuming their request was proper, Plaintiffs offer no suggestion of what defendant agencies should do in terms of re-coding SF-50s if the probationary employees remain terminated. In fact, agencies may have limited options in how to code a probationary employee's termination in a SF-50. *See* 5 C.F.R. § 315.804 (noting termination of probationary employers may be done either "for unsatisfactory performance or conduct").

[8]    That the agencies chose to use "hedging" language does not violate this Court's April 18 order despite Plaintiffs' assertions to the contrary. Pls.' Br. at 22. The Court's order only required a specific written statement to be conveyed by "relief defendant agencies who used the OPM template termination notice[.]" *AFGE*, 2025 WL 1150698, at *15. It did not go any further, and agency decisions to caveat their statements are understandable given the potential for assertions of liability in any lawsuits brought by terminated probationary employees before the MSPB.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA

26

problem, noting, by use of the passive voice, that the NOAA employees were: "originally terminated on February 27 as part of the mass termination;" "were briefly reinstated effective March 17 in compliance with the TRO in *Maryland v. U.S. Department of Agriculture*;" and "were later re-terminated on April 10, *retroactively to February 27*, after the Fourth Circuit stayed the *Maryland* district court's order." *Id.* at 22. That chain of events demonstrates that the retroactive termination of NOAA employees was the independent judgment of the Commerce Department, not OPM. OPM was not involved with this decision, and Plaintiffs' requested relief does not unwind any unlawful action by OPM. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").

In sum, to the extent that this Court grants any relief, it should be far more limited than that sought by Plaintiffs.

## CONCLUSION

This Court should grant summary judgment for Defendants on Claims I–V of Plaintiffs' Second Amended Complaint and deny Plaintiffs' motion for summary adjudication.

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
27

Dated: July 3, 2025                          Respectfully submitted,

                                             CRAIG H. MISSAKIAN (CABN 125202)
                                             United States Attorney
                                             PAMELA T. JOHANN (CABN 145558)
                                             Chief, Civil Division
                                             KELSEY J. HELLAND (CABN 298888)
                                             Assistant United States Attorney
                                             U.S. ATTORNEY'S OFFICE
                                             450 Golden Gate Avenue, Box 36055
                                             San Francisco, California 94102-3495

                                             BRETT A. SHUMATE
                                             Assistant Attorney General

                                             DIANE KELLEHER
                                             Branch Director

                                             CHRISTOPHER HALL
                                             Assistant Branch Director

                                             s/ Yuri S. Fuchs
                                             JAMES D. TODD, JR.
                                             Senior Trial Counsel
                                             YURI S. FUCHS
                                             GREGORY CONNER
                                             Trial Attorneys
                                             U.S. DEPARTMENT OF JUSTICE
                                             Civil Division, Federal Programs Branch
                                             P.O. Box 883
                                             Washington, DC 20044

                                             *Counsel for Defendants*

Defendants' Notice of Motion and Cross-Motion for Summary Judgment;
Opposition to Plaintiffs' Motion for Summary Adjudication of Claims I–IV
3:25-cv-1780-WHA
                                    28