CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

BRETT A. SHUMATE
Assistant Attorney General
DIANE KELLEHER
Branch Director
CHRISTOPHER HALL
Assistant Branch Director
JAMES D. TODD, JR.
Senior Trial Counsel
GREGORY B. CONNER
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, *et al.*,<br><br>Defendants. | Case No. 3:25-cv-1780-WHA<br><br>**DEFENDANTS' CORRECTED REPLY IN SUPPORT OF THEIR CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: August 28, 2025<br>Time: 8:00 am<br>Judge: The Hon. William H. Alsup<br>Place: San Francisco Courthouse<br>Courtroom 12 |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

I.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims ...................... 2

       A.    Plaintiffs Lack Standing .................................................................... 2

       B.    The CSRA and FSL-MRS Preclude District Court Jurisdiction Over
           Plaintiffs' Claims .................................................................................. 6

II.    Defendants Are Entitled to Summary Judgment on Plaintiffs' *Ultra Vires*
      Claim ...................................................................................................................... 8

III.   OPM Did Not Violate Its Statutory Authority in Issuing the Guidance .................... 11

IV.   OPM's Guidance Was Not Arbitrary and Capricious ................................................ 12

V.    OPM's Guidance Did Not Constitute a Rule Requiring Notice and Comment .......... 14

VI.   Plaintiffs' Requests for Relief Are Improper ............................................................ 16

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Am Fed'n of Gov't Emps. v. Trump,*
   139 F.4th 1020 (9th Cir. 2025) ................................................................... 6, 7, 8

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
   598 U.S. 175 (2023) ......................................................................................... 7

*Biden v. Sierra Club,*
   142 S. Ct. 46 (2021) ..................................................................................... 8, 9

*Bd. of Tr. of Glazing Health & Welfare Tr. v. Chambers,*
   941 F.3d 1195 (9th Cir. 2019) ......................................................................... 12

*Block* v. *Cmty. Nutrition Inst.,*
   467 U.S. 340 (1984) .......................................................................................... 8

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke,*
   889 F.3d 584 (9th Cir. 2018) ........................................................................... 14

*Chamber of Com. v. Reich,*
   74 F.3d 1322 (D.C. Cir. 1996) ......................................................................... 10

*City of Los Angeles v. Lyons,*
   461 U.S. 95 (1983) ............................................................................................ 3

*Cole v. Oroville Union High Sch. Dist.*,
    228 F.3d 1092 (9th Cir. 2000) .................................................................... 3, 4, 5

*Colwell v. Dep't of Health & Human Servs.*,
    558 F.3d 1112 (9th Cir. 2009) .................................................................... 15, 16

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020) ....................................................................................... 13

*Desertrain v. City of Los Angeles*,
    754 F.3d 1147 (9th Cir. 2014) .................................................................... 16

*Duncan v. Bonta*,
    133 F.4th 852 (9th Cir. 2025) ..................................................................... 3

*Elgin v. Dep't of the Treasury*,
    567 U.S. 1 (2012) ....................................................................................... 7

*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022) ..................................................................... 10, 11

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................................... 3

*Graham* v. *Ashcroft*,
    358 F.3d 931 (D.C. Cir. 2004) .................................................................... 8

*Grier v. Dep't of Health & Hum. Servs.*,
    750 F.2d 944 (Fed. Cir. 1984) .................................................................... 6

*Hemp Industries Ass'n v. Drug Enf't Admin.*,
    333 F.3d 1082 (9th Cir. 2003) .................................................................... 14, 15

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ................................................................................... 3

*Jewel v. Nat'l Sec. Agency*,
    856 F. App'x 640 (9th Cir. 2021) ............................................................... 4, 5

*Mada-Luna v. Fitzpatrick*,
    813 F.2d 1006 (9th Cir. 1987) .................................................................... 16

*Magadia v. Wal-Mart Assocs., Inc.*,
    999 F.3d 668 (9th Cir. 2021) ...................................................................... 3

*McDonald v. Lawson*,
    94 F.4th 864 (9th Cir. 2024) ....................................................................... 12

*Michigan v. EPA*,
    576 U.S. 743 (2015) ................................................................................... 13

*Murphy Co. v. Biden*,
    65 F.4th 1122 (9th Cir. 2023) ..................................................................... 8, 9

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ..................................................................................... 5

*N.C. Fisheries Ass'n, Inc. v. Gutierrez,*
   518 F. Supp. 2d 62 (D.D.C. 2007) ................................................................ 13

*Nuclear Reg. Comm'n v. Texas,*
   605 U.S. 665 (2025) ....................................................................................... 10

*Oestereich v. Sel. Serv. System Loc. Bd. No. 11, Cheyenne, Wyo.,*
   393 U.S. 233 (1968) ....................................................................................... 11

*Off. of Pers. Mgmt. v. Am. Fed'n of Gov't Emps.,*
   145 S. Ct. 1914 (2025) .................................................................................... 2

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.,*
   810 F.3d 631 (9th Cir. 2015) ......................................................................... 17

*Sampson v. Murray,*
   415 U.S. 61 (1974) ......................................................................................... 5

*Saul v. United States,*
   928 F.2d 829 (9th Cir. 1991) ......................................................................... 7

*Sierra Club v. Trump,*
   929 F.3d 670 (9th Cir. 2019) ...................................................................... 8, 9

*Sierra Club v. Trump,*
   963 F.3d 874 (9th Cir. 2020) ...................................................................... 8, 9

*Simon v. E. Ky. Welfare Rts. Org.,*
   426 U.S. 26 (1976) ......................................................................................... 5

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ....................................................................................... 5

*State v. Su,*
   121 F.4th 1 (9th Cir. 2024) ............................................................................ 5

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ....................................................................................... 3

*Trump v. Am. Fed'n of Gov't Emps.,*
   606 U.S. ---, 145 S. Ct. 2635 (2025) ......................................................... 6, 8

*Trump v. Boyle,*
   606 U.S. ---, 145 S. Ct. 2653 (2025) .............................................................. 3

*Trump v. Sierra Club,*
   140 S. Ct. 1 (2019) ...................................................................................... 8, 9

*United States v. Fausto,*
   484 U.S. 439 (1988) ....................................................................................... 8

*United States v. Texas,*
   599 U.S. 670 (2023) ....................................................................................... 3

*Veit v. Heckler,*
   746 F.2d 508 (9th Cir. 1984) ......................................................................... 7

*Wash. Env't Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) ............................................................ 4

*Washington v. FDA*,
   108 F.4th 1163 (9th Cir. 2024) .......................................................... 3

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023) .............................................................. 4

**Statutes**

5 U.S.C. § 1103(a)(7).............................................................. 9, 11, 15

5 U.S.C. § 1103(c)(2).............................................................. 9, 11, 15

5 U.S.C. § 1204(a)(2)........................................................................ 7

5 U.S.C. § 7701(g) ............................................................................ 7

28 U.S.C. § 2201 ............................................................................ 17

**Regulations**

5 C.F.R. § 315.803 .................................................................... 14, 15

5 C.F.R. § 315.804 .................................................................... 12, 13

5 C.F.R. § 315.805 .................................................................... 12, 13

Strengthening Probationary Periods in the Federal Service,
   90 Fed. Reg. 26727-01 (June 24, 2025)............................................ 12

**Other Authorities**

U.S. Off. of Pers. Mgmt., "Our Agency," https://perma.cc/EU73-RMJU................................. 15

**INTRODUCTION**

This case concerns whether federal district courts have a role in reviewing Executive Branch agencies' decisions about terminating their federal employees. Apart from limited circumstances concerning employment actions based on prohibited discrimination such as Title VII that are not at issue here, federal district courts generally have no subject matter jurisdiction. Moreover, this Court lacks subject matter jurisdiction over this case because Plaintiffs cannot satisfy Article III's case or controversy requirement. Even if the union Plaintiffs' could satisfy the injury-in-fact prong of standing to establish associational standing on behalf of their members, no Plaintiff can establish standing's causation and redressability prongs, especially because this Court lacks the power to order reinstatement of terminated employees. In addition, this Court also lacks subject matter jurisdiction over Plaintiffs' claims because Congress has expressly channeled complaints about unfair labor practices to the Federal Labor Relations Authority ("FLRA") and challenges to employee terminations to the Merit Systems Protection Board ("MSPB").

Beyond their jurisdictional defects, Plaintiffs' claims lack merit because they find no support in the administrative record or the law. Plaintiffs' claims are based on numerous erroneous assumptions: (i) that a single U.S. Office of Personnel Management ("OPM") guidance document, a handful of emails, a template letter, and two conference calls somehow forced 21 other federal agencies to terminate certain agency probationary employees that the agencies would otherwise have chosen to retain; and (ii) that agencies have no authority to terminate their probationers unless they conduct individualized assessments of each employee's performance. But the record is replete with uncontroverted evidence that: (i) each agency identified those employees it deemed mission critical and those employees that *it* wished to separate and then separated those employees; and (ii) that at least one agency made its own decision not to terminate *any* of its employees. Plaintiffs' assertion that OPM has no role to play in coordinating federal employment policy across the Executive Branch is baseless, and Plaintiffs have identified no statutory or regulatory requirement that an agency can terminate a probationary employee for performance only after conducting an individualized assessment of

that employee's performance. Rather, the Civil Service Reform Act expressly establishes OPM's role in providing guidance to other agencies concerning federal employment, and long-standing OPM regulations have continued a century-old practice of using federal employee probationary or trial periods to determine the employees' fitness and provide for agencies to terminate probationary or trial period employees who do not fully demonstrate their qualifications for continued employment. Against this factual, statutory, and regulatory backdrop, Plaintiffs' constitutional *ultra vires* claim and their Administrative Procedure Act ("APA") contrary-to-law, arbitrary-and-capricious, and notice-and-comment claims all fail.

This Court should thus deny Plaintiffs' motion for summary adjudication and grant Defendants' motion for summary judgment. In the event this Court nevertheless concludes that summary judgment for Plaintiffs on any claim is appropriate, it should still decline to grant any of their requests for relief. Granting such relief would improperly entangle the Court in the specifics of each relief defendant agency's personnel decisions.

## ARGUMENT

## I. This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims

### A. Plaintiffs Lack Standing

Defendants demonstrated that all Plaintiffs in this case fail to establish standing to maintain their claims. *See* Defs.' Not. of Mot. & Cross Mot. for Summ. J.; Opp'n to Pls.' Mot. for Summ. Adjudication of Claims I–IV at 8–10, ECF No. 228 ("Defs.' Mem."). In response, Plaintiffs contend that this Court need only find that one Plaintiff has standing in order to take up the merits of all of Plaintiffs' claims. *See* Pls.' Reply Mem. in Supp. of Mot. for Summ. Adjudication of Claims I–IV; Opp'n to Defs.' Mot. for Summ. J. at 7, ECF No. 238 ("Pls.' Opp'n"). But no Plaintiff has come forward with sufficient evidence to support standing necessary to obtain the injunctive relief that they seek.

With respect to the organizational Plaintiffs, the Supreme Court concluded that their alleged harms were too remote to support standing. *See Off. of Pers. Mgt. v. Am. Fed'n of Gov't Emps.*, 145 S. Ct. 1914 (2025) (Mem.) ("*OPM*"). Plaintiffs' contention that this Court is not bound by the Supreme Court's holding in *OPM*, *see* Pls.' Opp'n at 9 n.6, invites this Court to

commit reversible error. The Supreme Court recently clarified that, "[a]lthough … interim orders are not conclusive as to the merits, they inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653, 2654 (2025); *see also Duncan v. Bonta*, 133 F.4th 852, 873 (9th Cir. 2025) (The Ninth Circuit "do[es] not lightly decline to follow a clear statement by the Supreme Court[,]" and "lower federal court[s] … are advised to follow the Supreme Court's considered dicta.") (citations omitted). In any event, Plaintiffs fail to come forward with any additional evidence that would warrant revisiting the Supreme Court's conclusion. *See* Pls.' Mem. at 7–9. The organizational Plaintiffs thus lack standing.

Plaintiffs also contend there is no need to revisit this Court's prior rulings that Washington State and the union Plaintiffs have standing. *See* Pls.' Opp'n at 7. But a plaintiff must "demonstrate standing separately for each form of relief sought." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 436 (2021) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc*., 528 U.S. 167, 185 (2000)), and "[s]tanding must 'persist throughout all stages of the litigation.'" *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013)). Additionally, a plaintiff seeking injunctive relief must show that it is likely that it will suffer future injury from the conduct that it seeks to enjoin. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983); *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000).

Here, Washington's claim of financial injury is insufficient. *See United States v. Texas*, 599 U.S. 670, 680 n.3 (2023) ("indirect effects on state revenues or state spending," too "attenuated" to confer standing); *Washington v. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024). The union Plaintiffs similarly have established no injury in fact to their organizational missions sufficient to obtain injunctive relief. Plaintiffs fault Defendants for supposedly "ignor[ing] the numerous declarations … this Court identified in its March 24 order," Pls.' Opp'n at 7, but the Court has already found that those "declarations … have by now grown stale," Order on Mot. for Prelim. Inj. by Union Pls. & State of Wash. at 24, ECF No. 202; *see also id*. at 23–24 ("[u]nion [P]laintiffs' contention that they continue to face irreparable organizational harms falls short

[because] there is little on the record to suggest that the unions' core business functions are still being frustrated."); *cf. Cole*, 228 F.3d at 1100. Indeed, no Plaintiff has proffered any additional admissible evidence demonstrating that they have standing to maintain their claims for injunctive relief. *See Jewel v. Nat'l Sec. Agency*, 856 F. App'x 640, 641 (9th Cir. 2021) (unpublished) ("Plaintiffs failed to set forth sufficient evidence of standing for each of their claims to survive the government's motions for summary judgment.").[1]

Plaintiffs additionally fail to establish that their injuries are fairly traceable to OPM's guidance or that their injuries would likely be redressed by an order of this Court. For an injury to be "fairly traceable" to a defendant's conduct, a plaintiff needs to show that the injury was "not the result of the independent action of some third party not before the court." *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023). "[R]edressability analyzes the connection between the alleged injury and requested judicial relief." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013).

In this case, Plaintiffs assert that their injuries were caused by terminations of probationary employees "directed" by OPM. But, at summary judgment, Plaintiffs fail to show that the terminations were "not the result of the independent actions" of each of the relief defendant agencies. *Cf. Windsor*, 62 F.4th at 525. Indeed, the record confirms that, at most, OPM directed federal agencies to "*identify* all employees on probationary periods," and directed agencies to "promptly *determine* whether those employees should be retained." Administrative Record ("AR") 335 (emphasis added). Plaintiffs cannot credibly trace their claims of ongoing harms to the mere identification of agency probationary employees or the direction to each agency that the *agency* should determine whether its probationary employees should be retained. *See id*. Instead, the claimed harms are fairly traceable to the independent termination decisions made by each agency. *See, e.g.,* AR 357 (February 11 OPM email noting decisions were "up to each agency"); AR 375 (February 14 OPM email noting that agencies were "work[ing] to review, clean up, and finalize theirs lists of probationary employees they wish[ed] to *keep*, and

---

[1] Even if the union Plaintiffs can establish an injury in fact on behalf of their members, they still fail to satisfy the traceability and redressability prongs on standing.

wish[ed] to terminate, and begin taking action.") (emphasis added); AR 383 (February 12 email noting that agencies could "keep" probationary employees); AR 389–96 (OPM frequently-asked-questions document designed "[t]o assist agencies in carrying out their decisions[.]"); *see also* AR 386–88 (Department of Justice ("DOJ") decision declining to terminate *any* of its probationary employees). And of course, OPM later revised its guidance to clarify that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees" and that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." AR 400. Plaintiffs thus fail to credibly trace their injuries to OPM based on admissible evidence such that they are entitled to injunctive relief on summary judgment. *Cf. Cole*, 228 F.3d at 110; *Jewel*, 856 F. App'x at 641.

Plaintiffs face even bigger problems with redressability. First, this Court lacks the power to order reinstatement of terminated employees, *see Sampson v. Murray*, 415 U.S. 61, 83 (1974), which is the relief that Plaintiffs seek, *see* Third Am. Compl., Prayer for Relief ¶ 2, ECF No. 243 ("TAC"). Second, an order to reinstate employees terminated "at the direction of OPM" would still leave agencies free to independently decide to terminate those same employees; Plaintiffs therefore cannot show that reinstatement is likely to remedy their claimed harms. *See Murthy v. Missouri*, 603 U.S. 43, 73 (2024) (recognizing a redressability problem where the defendants would "remain free" to implement policies that inflicted injuries on the plaintiffs, even if the plaintiffs prevail); *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 42 (1976).[2]

Finally, even an order that defendant agencies provide terminated employees with letters stating that their terminations were not for performance reasons would remedy only one injury claimed by the union Plaintiffs on behalf of its employee members, *see* TAC ¶ 145, but this is not a remedy sought by Plaintiffs, *see id.*, Prayer for Relief, and would not otherwise remedy any of their claimed harms. Plaintiffs' failure to establish that their injuries are redressable deprives them of standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

---

[2] Plaintiffs overread a footnote in *State v. Su*, 121 F.4th 1, 13 n.5 (9th Cir. 2024), *see* Pls.' Opp'n at 9, which stands only for the unremarkable proposition that a plaintiff with a redressable injury can establish standing.

### B.  The CSRA and FSL-MRS Preclude District Court Jurisdiction Over Plaintiffs' Claims

Defendants demonstrated that Plaintiffs cannot bring suit in this forum because the Civil Service Reform Act ("CSRA") and the Federal Service Labor-Management Relations Statute ("FSL-MRS") preclude district court subject matter jurisdiction over claims regarding the termination of probationary employees. *See* Defs.' Mem. at 11–13. In response, Plaintiffs rely on a divided emergency stay decision that the Supreme Court disagreed with. *See Am Fed'n of Gov't Emps. v. Trump*, 139 F.4th 1020 (9th Cir. 2025) ("*AFGE v. Trump*"), *stayed pending appeal, Trump v. Am. Fed'n of Gov't Emps.*, 606 U.S. ---, 145 S. Ct. 2635 (2025) (Mem.); Pls.' Opp'n at 9. This Court should not be persuaded.

First, the Ninth Circuit holding cited by Plaintiffs was stayed by the Supreme Court. *See Trump v. AFGE*, 145 S. Ct. at 2635 ("The District Court's injunction was based on its view that [the] Executive Order … and a joint memorandum from the Office of Management and Budget and [OPM] implementing that Executive Order are unlawful. Because the Government is likely to succeed on its argument that the Executive Order and Memorandum are lawful—and because the other factors bearing on whether to grant a stay are satisfied—we grant the application"). Plaintiffs again invite error by asking this Court to rely on a decision that the Supreme Court has cast serious doubt on.

Second, *AFGE v. Trump*, is distinguishable. In that case, the plaintiffs challenged 17 agency Reduction in Force ("RIF") and Reorganization Plans (collectively, "ARRPs") to restructure the federal government and eliminate agency positions. *See* 139 F.4th at 1028.[3] The plaintiffs sought and obtained a preliminary injunction prohibiting further implementation of the ARRPs, and the government moved for a stay of the injunction pending appeal. *See id* at 1028–29. In denying the government's motion for a stay—which the Supreme Court later granted—the Ninth Circuit held that the plaintiffs' claims could not be channeled to the MSPB or the FLRA because neither had the authority to address the type of constitutional and statutory claims raised by the plaintiffs, which were centered around a presidential executive order. *See id*. at 1031. In

---

[3] "RIFs are not aimed at removing particular individuals; rather, they are directed solely at positions." *Grier v. Dep't of Health & Hum. Servs.*, 750 F.2d 944, 945 (Fed. Cir. 1984).

reaching this holding, however, the now-stayed Ninth Circuit and district court rulings emphasized that the plaintiffs were *not* challenging employment decisions of the agencies. *See id*. The Ninth Circuit also found that the MSPB and FLRA *were* the appropriate forums to address "at least one claim properly within the unquestioned jurisdiction" of those bodies. *See id*. Finally, it found that the plaintiffs' claims were not "intertwined with or embedded in matters on which the MSPB or FLRA are expert." *Id*. at 1032 (quoting *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 195 (2023)) (alterations in original).

In this case, by contrast, Plaintiffs are challenging the terminations of specific government employees, *see, e.g.,* TAC ¶ 187, and want the Court to reinstate those employees, *see id.*, Prayer for Relief ¶ 2. Thus, unlike the Ninth Circuit's finding in *AFGE v. Trump*, at least one claim in this case *is* properly within the unquestioned jurisdiction of the MSPB and/or the FLRA. Indeed, the Supreme Court has expressly held that "[a] challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 22 (2012). Nor, as the Supreme Court has expressly held, does the fact that Plaintiffs here assert a constitutional claim change the result. *See id*. at 12. Moreover, the *AFGE v. Trump* panel did not overrule existing Ninth Circuit caselaw holding that "Congress is better equipped than we to strike an appropriate balance between employees' interests in remedying constitutional violations and the interests of the government and the public in maintaining the efficiency, morale and discipline of the federal workforce." *Saul v. United States*, 928 F.2d 829, 835–42 (9th Cir. 1991); *see also Veit v. Heckler*, 746 F.2d 508, 510–11 (9th Cir. 1984). *Elgin* and *Saul*, and not *AFGE v .Trump,* control resolution of this case, and Plaintiffs' claims must be channeled to the MSPB and/or the FLRA.

Moreover, unlike a district court, the MSPB can, if Plaintiffs prevail, order the very reinstatement of terminated employees that Plaintiffs seek. *See* 5 U.S.C. § 1204(a)(2), 7701(g). And the FLRA can adjudicate all federal labor disputes, including this one. *See id*. § 7105(a)(2). But even if those bodies could not provide all the relief requested by Plaintiffs here, "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies," that precludes district court jurisdiction; accordingly, even where "the CSRA provides no relief,"

it "precludes other avenues of relief." *Graham* v. *Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (citation omitted); *see also Block* v. *Cmty. Nutrition Inst.*, 467 U.S. 340, 346–47 (1984).[4] This Court thus lacks subject-matter jurisdiction over Plaintiffs' claims.

**II.  Defendants Are Entitled to Summary Judgment on Plaintiffs' *Ultra Vires* Claim**

Defendants demonstrated that Plaintiffs' *ultra vires* claim fails on the law and the record evidence. *See* Defs.' Mem. at 13–16. In response, Plaintiffs cite a number of Ninth Circuit cases that stand for the unremarkable proposition that there can be situations in which a plaintiff may pursue parallel *ultra vires* and APA challenges. *See* Pls.' Opp'n at 11–13 (citing *AFGE v. Trump*, *supra*; *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023); *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *reversed sub nom. Biden v. Sierra Club*, 142 S. Ct. 46 (2021) (Mem.) ("*Sierra Club II*"); *Sierra Club v. Trump*, 929 F.3d 670, 699 (9th Cir. 2019) ("*Sierra Club I*") (denying the defendants' motion to stay pending appeal), *reversed sub nom.*, *Trump v. Sierra Club*, 140 S. Ct. 1 (2019)). Each case, however, is distinguishable or is simply inapposite.

In *AFGE v. Trump*, the Ninth Circuit denied a stay pending appeal of the district court's entry of a preliminary injunction blocking the President's reorganization plan and 17 agency ARRPs, *see* 139 F.4th at 1040, which the Supreme Court then granted, *see Trump v. AFGE*, 145 S. Ct. at 2635, thus clearing the way for those restructurings and RIFs to begin. In reaching its now-stayed decision, the Ninth Circuit held that neither the Constitution nor any federal statute granted the President the authority to direct such a large-scale reorganization. *See id*. at 1033. Highlighting that agency ARRPs required OPM approval, the Ninth Circuit held that OPM lacked statutory authority to direct other agencies to engage in restructuring and large-scale RIFs. *See id*. at 1037. In the present matter, by contrast, Plaintiffs have not challenged the President's directive to reduce the size of the federal workforce, *see generally* TAC, and the administrative

---

[4] Plaintiffs' attempt to distinguish *Block* in the CSRA context, *see* Pls.' Opp'n at 11 n.7, fails because the Supreme Court discussed *Block* at length in concluding that Congress could exclude certain employees from obtaining judicial review. *See United States v. Fausto*, 484 U.S. 439, 448, 452 (1988) ("Here, as in *Block*, we think Congress' intention is fairly discernible, and that "the presumption favoring judicial review … [has been] overcome by inferences of intent drawn from the statutory scheme as a whole." (quoting *Block*, 467 U.S. at 349)) (alterations in original).

record shows that OPM did *not* direct other agencies' employment decisions and that agencies retained ultimate discretion over who to terminate. *See* AR 332–33; AR 357–58; AR 375; AR 386–88. OPM was thus acting well within its authority under the CSRA by merely providing guidance to agencies in light of a presidential directive to reduce the size of the federal government. *See, e.g.*, 5 U.S.C. § 1103(a)(7), (c)(2)(A)(i).

The other cases Plaintiffs cite are also not on point. *Murphy* involved a timber company's challenge to the President's creation of a national monument under the Antiquities Act as *ultra vires*. *See* 65 F.4th at 1125. The court held that the timber company adequately pleaded a constitutional challenge to the President's decisionmaking, but ultimately concluded that the challenged decision was a valid exercise of President's authority under the Antiquities Act. *See id*. at 1132. *Murphy* does not apply here because Plaintiffs here do not challenge Presidential decisionmaking. *See generally* TAC.

In *Sierra Club I* and *II*, the plaintiffs challenged an agency's budget transfers to fund construction of the wall on the southern border of the United States undertaken in response to a Presidential proclamation. *See* 929 F.3d at 675; 963 F.3d at 879. The Ninth Circuit twice held that the statute appropriating the funds at issue did not authorize transfer of the funds to construct the border wall. *See* 929 F.3d at 694; 963 F.3d at 886–87. The court also twice held that the Appropriations Clause of the U.S. Constitution gave rise to an equitable cause of action and held that the plaintiffs could assert an *ultra vires* cause of action to challenge the agency's transfer of funds. *See* 929 F.3d at 695; 963 F.3d at 888–91. In its order denying the government's motion for a stay pending appeal, the court held that the APA does not foreclose other causes of action. *See* 929 F.3d at 699. And in ruling on the appeal, the court held that the APA did not repeal and does not replace *ultra vires* causes of action. *See id*. 963 F.3d at 891–93.

Contrary to Plaintiffs' contention, *Sierra Club I* and *II* do not advance their claims. First, the Supreme Court reserved the Ninth Circuit's order denying the government's motion to stay pending appeal, *see* 140 S. Ct. 1, and then vacated the judgment of the Ninth Circuit. *See* 142 S. Ct. 46. Second, nowhere in its *Sierra Club* rulings did the Ninth Circuit consider, let alone hold, that a plaintiff can maintain an *ultra vires* claim that exactly mirrors its APA claims. *See* 963

F.3d at 879–97. Rather, when a plaintiff invokes both the APA and *ultra vires* causes of action challenging the same conduct, a court should first consider the plaintiff's APA claim under the principles of constitutional avoidance. *See, e.g., Chamber of Com. v. Reich*, 74 F.3d 1322, 1326–27 (D.C. Cir. 1996). Indeed, "*ultra vires* review seeks the intervention of an equity court where Congress has not authorized statutory judicial review," and to sustain a claim, "*ultra vires* claimants must demonstrate that the agency has plainly and openly crossed a congressionally drawn line in the sand." *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022). Moreover, since *Sierra Club I* and *II*, the Supreme Court has expressly held that a plaintiff cannot "dress up a typical statutory-authority argument as an *ultra vires* claim." *Nuclear Reg. Comm'n v. Texas*, 605 U.S. 665, 682 (2025) (also finding that these types of *ultra vires* claims are "a fairly common maneuver when a litigant tries to squeeze its arguments into the *Leedom v. Kyne* box—and is in large part why those claims rarely succeed."). But that is exactly what Plaintiffs do here.

This Court should reject Plaintiffs' attempt to distinguish *Texas, supra*. *See* Pls.' Opp'n at 12. The case did address whether a non-party could assert an *ultra vires* claim on joining a direct review of agency action before the court of appeals. *See id*. But the Supreme Court first held that the intervenors' "statutory argument falls well shy of a meritorious *Leedom v. Kyne* claim," *Texas*, 605 U.S. at 682, and only "alternatively" held that the intervenors had an "alternative path to judicial review," and that allowing a litigant to bring "an *ultra vires* claim in a court of appeals in the first instance" "also … would lead to major anomalies," *id*. The Supreme Court's first holding in *Texas* controls here.[5]

Plaintiffs' attempt to sustain their *ultra vires* claim on the merits fares no better. *See* Pls.' Opp'n at 12. Plaintiffs assert that that OPM "ha[d] no authority, whatsoever, to issue the orders it has here, and has directly defied its own authorizing statute as well as express delegations to other agencies." *Id*. But, as noted above, Plaintiffs' repeated assertions that OPM directed

---

[5] Plaintiffs also take issue with Defendants' reliance on *Armstrong* and *MCorp*, *see* Pls.' Opp'n at 12, but Defendants only cited those cases as examples of when the Supreme Court has found that *ultra vires* claims are unavailable where Congress has made express its intent to deny district court review jurisdiction. *See* Defs.' Mem. at 13.

agencies to terminate probationary employees find no support in the administrative record. Indeed, Plaintiffs' quotations of the record support Defendants' position, not theirs. First, Plaintiffs quote an OPM email that asked agencies to "'*[p]lease* partner with your CHCO to action those *you wish* to separate from by the end of the day tomorrow, 2/23/25, using the attached template letter.'" *Id*. at 4 (quoting AR 383–84) (emphases added). Thus, the record shows that OPM *asked* the agencies *to make their own decisions* by a date-certain and, if they chose to terminate employees, *asked* them to make use of OPM's template letter. Plaintiffs' other record quotations serve them no better—another passage in that same email asked agencies to "'*please* update the previous probationary employee spreadsheet you've sent us'" to include "'[w]hich probationary employees have been terminated and which *you plan to keep*,'" *id*. (quoting AR 384) (emphasis added), again showing that the agencies were making their own choices about employee terminations. Plaintiffs also quote a later OPM email that "'*asked* that you separate probationary employees *that you have not identified as mission-critical* no later than end of the day Monday, 2/17.'" *Id*. (quoting AR 375) (emphases added). The record thus demonstrates that OPM carried out its statutory role of "advising the President on actions which may be taken to promote an efficient civil service and a systematic application of the merit system principles, including recommending policies relating to the … separation of employees," 5 U.S.C. § 1103(a)(7), and "aligning human capital strategies of agencies with the missions, goals, and organizational objectives of those agencies," *id*. § 1103(c)(2)(A)(i). In light of OPM's central role in coordinating human resource functions across the Executive Branch, Plaintiffs' claim that the challenged actions were *ultra vires* falls far short of real claims. *Cf. Fed. Express*, 39 F.4th at 765 (to sustain an *ultra vires* claim, "'[t]he agency overstep must be 'plain on the *record* and *on the face of the [statute*.]'" (quoting *Oestereich v. Sel. Serv. System Loc. Bd. No. 11, Cheyenne, Wyo.*, 393 U.S. 233, 238 n.7 (1968) (alternations in original))) (emphasis added).

**III.  OPM Did Not Violate Its Statutory Authority in Issuing the Guidance**

        Defendants demonstrated that OPM's guidance did not exceed the agency's statutory authority. *See* Defs.' Mem. at 16–17. Plaintiffs respond by re-asserting, based on their mischaracterization of the record, that OPM "directed" agencies to terminate employees. Pls.'

Opp'n at 13. But Plaintiffs fail to address the record evidence cited by Defendants that shows, for example, that OPM repeatedly clarified that "[a]gencies are responsible for exempting whomever they want," AR at 357, from "the President's directive to dramatically reduce the size of the federal workforce," AR 375; *see also* AR 386–88 (DOJ decision declining to terminate *any* of its probationary employees).

Plaintiffs also contend that OPM's guidance was contrary to law because OPM advised agencies to separate employees on grounds that were "incompatible with existing law." Pls.' Opp'n at 13–14 (citing 5 C.F.R. §§ 315.804, 315.805). But Plaintiffs seek injunctive relief (which is forward looking), and, as they admit, *see id.* at 14 n.9, Plaintiffs' cited provisions are no longer in effect. *See* Strengthening Probationary Periods in the Federal Service, 90 Fed. Reg. 26727-01 (June 24, 2025) (repealing §§ 315.804 and 315.805). Thus, even if Plaintiffs might have had a viable claim for injunctive relief before, they are no longer entitled to injunctive relief now; OPM's guidance is not contrary to law, as there is no supposed violation of §§ 315.804 and 315.805 left to enjoin. *Accord Bd. of Tr. of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019) (courts "presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it."); *see also McDonald v. Lawson*, 94 F.4th 864, 870 (9th Cir. 2024). In any event, the record demonstrates that once agencies "identified the highest-performing probationers in mission critical areas," AR 375, they then chose to terminate certain probationers who were not identified as such "by notifying [them] in writing as to why [they were] being separated," 5 C.F.R. § 315.801—*i.e.*, based on their performance. Plaintiffs assert that performance determinations must be "individualized" but point to no law or regulation requiring such a determination. *See* Pls.' Opp'n at 15. Nor could they, because there is none. Plaintiffs' contrary to law claim thus fails.

## IV.  OPM's Guidance Was Not Arbitrary and Capricious

Defendants demonstrated that neither OPM's guidance nor its actions were arbitrary and capricious because they sought to further "the President's directive to dramatically reduce the

size of the federal workforce." Defs.' Mem. at 17–20 (quoting AR 375). That guidance reiterated that agencies should use probationary periods to evaluate the suitability of probationary employees and their fit for continued employment, a point emphasized for years during prior administrations. *See* AR 3–56, 60–116, 324–25. Plaintiffs nevertheless contend that OPM's actions were arbitrary and capricious because the President did not authorize the agency to direct mass terminations on the pretext of performance. *See* Pls.' Opp'n at 15. But Plaintiffs' argument misreads the record. OPM did not direct mass terminations on based on pretext; it directed other agencies to use the probationary period to "identif[y] the highest-performing probationers in mission critical areas." AR 375. It was only after the agencies had identified probationers that were not within that echelon that *the agencies* terminated those employees.

Plaintiffs' invocation of 5 C.F.R. §§ 315.804 and 315.805 is unpersuasive. Plaintiffs claim that Defendants acted arbitrarily and in violation of those provisions by directing agencies to terminate probationary employees except those identified as mission critical and, according to Plaintiffs, "without regard for any individualized assessment of … performance." Pls.' Opp'n at 14–15. First, as noted above, *see supra*, at 11, those provisions are no longer in effect. Second, the record demonstrates that once agencies "identified the highest-performing probationers in mission critical areas," AR 375, they terminated those probationers who were not identified as such "by notifying [them] in writing as to why [they were] being separated," 5 C.F.R. § 315.801—*i.e.*, based on performance. Plaintiffs' belief that OPM should not view the probationary period as a time where the burden is on the probationer "to demonstrate fully his or her qualifications for continued employment," AR 375 (quoting 5 C.F.R. § 315.803), is a "mere policy disagreement" and thus cannot serve a basis for an arbitrary and capricious finding. *See N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 95 (D.D.C. 2007). Indeed, from the outset, OPM made clear that did not want to be "in the weeds" of the agencies' retention or termination decisions. *See* AR 357. That some agencies never terminated probationers, and that the agencies made varied decisions after OPM issued its revised guidance, demonstrates that, at most, OPM merely guided other agencies' "reasoned decisionmaking." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743,

750 (2015)). Third, as noted above, *see supra* at 11, Plaintiffs cannot point to any statute or regulation that requires such assessments to be individualized. Plaintiffs' arbitrary and capricious claim thus fails.

## V. OPM's Guidance Did Not Constitute a Rule Requiring Notice and Comment

Defendants demonstrated that OPM's guidance was not a legislative rule that requires notice-and-comment rulemaking. *See* Defs.' Mem. at 20–24. Plaintiffs respond by contending that OPM's position regarding probationary employees was inconsistent with prior rules, and that mandatory language in OPM's guidance made it a legislative rule. *See* Pls.' Opp'n at 15–17. Plaintiffs' contentions are without merit.

First, Plaintiffs cannot show that OPM's guidance and other actions were "inconsistent with prior rules." *Id.* at 16 (quoting *Hemp Industries Ass'n v. Drug Enf't Admin.*, 333 F.3d 1082, 1088 (9th Cir. 2003)). As a preliminary matter, Plaintiffs fail to identify which rule they believe OPM to have flouted, *see id.* at 16 (citing *id.* at 5–6), and thus waive this argument. *See Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 606 (9th Cir. 2018). In any event, the only potential inconsistency Plaintiffs identify is OPM's explanation to other agencies that it views "qualifications for continued employment" to mean that "only the highest-performing probations in mission-critical areas should be retained." AR 390. But there is nothing inconsistent with that interpretation and the one rule on which Plaintiffs rely, 5 C.F.R. § 315.803, which, prior to its repeal, mandated that agencies "utilize the probationary period … to determine the fitness of the employee *and shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment*." *Id.* (emphasis added).

Nor does *Hemp Industries, supra*, advance Plaintiffs' claim. In that case, the plaintiffs challenged an interpretative rule issued by the Drug Enforcement Administration ("DEA") that found THC included naturally-occurring THC from hemp oil and seeds. *See* 333 F.3d at 1084, 1089. Although the agency had concluded that its new finding was an interpretive rule without the force of law, the Ninth Circuit found that DEA's new interpretation was inconsistent with its other regulations defining THC as synthetic. *See id.* at 1090. The court thus held that the

agency's new interpretation constituted a legislative rule that, absent notice-and-comment, could not be promulgated. *See id.* at 1090. Here, by contrast, Plaintiffs fail to identify an actual inconsistency between OPM's prior rules and its new interpretation. Indeed, they would be hard-pressed to demonstrate one when the rule on which they rely mandated, before its repeal, use of the probationary period to evaluate fitness, put the onus on probationary employees to demonstrate fitness, and instructed agencies to separate employees who have not demonstrated fitness. *See* 5 C.F.R. § 315.803.

Second, Plaintiffs contend that OPM's guidance included a "great deal" of mandatory language to such an extent that it amounts to a rule with the force and effect of the law. But this contention also fails on the facts and on the law. OPM's guidance did not bind other agencies—rather OPM: (i) communicated its *belief* that "'qualifications for continued employment' … means that only the highest-performing probationers in mission-critical areas should be retained," AR 375; (ii) *asked* agencies to separate probationers that did not fit that mold to carry out the President's directive, *see id.*; *see also id.* at 357; (iii) stated that it did not want to be "in the weeds" regarding individual determinations, AR 357; and (iv) clarified that the decisions were "up to each agency," *id.* That the guidance also included some directional language concerning what agencies should or should not do corresponds to OPM's statutory mission of being "the chief human resources agency and personnel policy manager for the Federal Government." OPM, "Our Agency," https://perma.cc/EU73-RMJU; *see also* 5 U.S.C. § 1103(a)(7), (c)(2)(A)(i). But this level of directional language did not transform its request to agencies to make their own decisions into a rule with the force and effect of the law.

Nor do Plaintiffs' claims find support in *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112 (9th Cir. 2009). *See* Pls.' Opp'n at 16. In that case, the plaintiffs challenged agency guidance sent to federal funding recipients concerning limited-English proficiency. *See Cowell*, 558 F.3d at 1116. As a preliminary matter, the Ninth Circuit only held that, in situations where there are aspects of an agency guidance that appeared non-mandatory and other aspects that might be considered mandatory, the dispute was unripe. *See id.* at 1128. Nevertheless, the court explained that, "[t]o the extent that the directive merely provides *guidance* to agency officials in

1    exercising their discretionary power while preserving their flexibility and their opportunity to

2    make 'individualized determination[s],' it constitutes a general statement of policy," not subject

3    to notice-and-comment. *Id.* at 1124 (quoting *Mada-Luna v. Fitzpatrick*, 813 F.2d 1006, 1013–14

4    (9th Cir. 1987)). *Colwell* therefore supports the Defendants' position, not Plaintiffs', as OPM

5    communicated to agencies that it did not want to be "in the weeds" regarding individual

6    determinations, as those decisions were "up to each agency." AR 357.

7           Finally, Plaintiffs say that this Court should not reject their arguments regarding

8    exemption process as improperly raised because the facts regarding that process did not arise

9    until the Noah Peters deposition, with further explanation in the administrative record. *See* Pls.'

10   Opp'n at 17. For that reason, they say, this Court could construe it as a request to amend the

11   complaint. *See id.* But "[s]ummary judgment is not a procedural second chance to flesh out

12   inadequate pleadings." *Hartzell v. Marana Unified Sch. Dist.*, 130 F.4th 71622, 745 (9th Cir.

13   2025) (cleaned up). Plaintiffs' revelation that the exemption process is relevant to the case both

14   demonstrates the prudential value of waiting for the administrative record and undermines their

15   claim that the process was mandatory. *Compare* Pls.' Opp'n at 17 n.11 (asserting that the

16   "exemptions process … as documented in the AR, confirms that OPM's directives to agencies

17   were mandatory rather than mere guidance") *with* AR 357 ("Agencies are responsible for

18   exempting whomever they want"). So while Plaintiffs offer this as a reason to amend their

19   pleadings, amending pleadings to now add these allegations would be futile. *See Desertrain v.*

20   *City of Los Angeles*, 754 F.3d 1147, 1154 (9th Cir. 2014). Plaintiffs' notice-and-comment claim

21   fails.

22   **VI.  Plaintiffs' Requests for Relief Are Improper**

23          Even if Plaintiffs' claims had some merit (which they do not), Plaintiffs' specific requests

24   for relief are nevertheless improper. *See* Defs.' Mem. at 24–27. None of Plaintiffs' responsive

25   arguments changes this conclusion.

26          First, the parties agree that OPM does not have authority to *direct* mass terminations of

27   other agencies' probationary employees, and the Court has repeatedly confirmed as much in its

28   orders. There is no need for a declaratory judgment saying the same thing. Plaintiffs nevertheless

seek a declaratory judgment because OPM disputes that its actions were *ultra vires* and violated the APA, *see* Pls.' Opp'n at 18, but that argument simply confuses OPM's *factual* position about what happened with its *legal* position regarding its authority. However, the purpose of a declaratory judgment is to clarify legal rights and relations, not to resolve immaterial factual disputes that have long-since been rendered moot. *See* 28 U.S.C. § 2201 ("In a *case of actual controversy* within its jurisdiction … any court of the United States … may declare *the rights and other legal relations* of any interested party[.]") (emphases added).

Similarly, Plaintiffs' requests for an order requiring the relief agencies to "update" probationary employees' personnel files to remove references to performance-based terminations, or send "further corrective letters," ignores the fact that this case is limited to terminations (allegedly) directed by OPM. The relief agencies have already complied with this Court's preliminary injunction, as clarified by this Court's July 24 Notice, *see* Notice re: Prelim. Inj. Compl, ECF No. 237, and the content of agency personnel files are the result of each agency's independent decision-making. Nothing in this litigation prohibits non-OPM agencies from independently deciding to terminate their own employees, and therefore there is no basis in this litigation to order those agencies to remove their independent decisions from probationary employees' personnel files.

Finally, Plaintiffs concede that the Department of Commerce was not acting at the direction of OPM when it decided on April 10 to make the terminations of certain National Oceanic and Atmospheric Administration employees retroactive. *See* Pls.' Opp'n at 19. That ends the matter, as Plaintiffs have not challenged and cannot challenge the independent decisions of the Department of Commerce in this lawsuit. *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (court cannot issue injunction based on claims not pled in complaint); Tr. of Apr. 9, 2025, Hrg. at 32:23–33:1, ECF No. 195.

## CONCLUSION

This Court should grant summary judgment for Defendants and deny Plaintiffs' motion for summary adjudication.

Defendants' Corrected Reply in Support of Their Cross-Motion for Summary Judgment
3:25-cv-1780-WHA

Dated: September 30, 2025                    Respectfully submitted,

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
KELSEY J. HELLAND (CABN 298888)
Assistant United States Attorney
U.S. ATTORNEY'S OFFICE
450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495

BRETT A. SHUMATE
Assistant Attorney General

DIANE KELLEHER
Branch Director

CHRISTOPHER HALL
Assistant Branch Director

s/ James D. Todd, Jr.
JAMES D. TODD, JR.
Senior Trial Counsel
GREGORY B. CONNER
Trial Attorney
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044

*Counsel for Defendants*